Justin E. Sterling, State Bar No. 249491
LAW OFFICES OF JUSTIN STERLING
Justin@SterlingDefense.com
15760 Ventura Blvd. Suite 700
Encino, CA 91436
Tel. (818) 995-9452/Fax. (818) 824-3533

Erin Darling, State Bar No. 259724
LAW OFFICES OF ERIN DARLING
Erin@ErinDarlingLaw.com
3435 Wilshire Blvd. Suite 2910
Los Angeles, CA 90010
Tel. (323) 736-2230

Attorneys for Plaintiff Dora Solares

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DORA SOLARES, an individual, | Case No. |
| Plaintiff, | **COMPLAINT FOR DAMAGES FOR VIOLATIONS OF CIVIL RIGHTS UNDER 18 U.S.C. § 1983** |
| v. | |
| RALPH DIAZ, in his official capacity, KENNETH CLARK, in his official capacity, JOSEPH BURNS, in his individual and official capacity, and DOES 1 TO 15, | **DEMAND FOR JURY TRIAL** |
| Defendants. | |

**INTRODUCTION**

1. On or about March 7, 2019, CDCR inmate Luis Romero was transferred from Mule Creek State Prison to California State Prison, Corcoran. Corcoran prison officials ignored the usual protocol required before requiring one inmate to share the cell of another, and rushed to assign Mr. Romero to the same cell as convicted murderer, inmate Jaime Osuna. Mr. Osuna had not had a cellmate at Corcoran prior to this assignment. Corcoran officials had already been put on notice that Mr. Osuna was uniquely unfit to be housed with a cellmate, as he had engaged in multiple acts of

1

violence against fellow inmates, had been charged with attempted murder as a result of one such incident, and had been recommended for placement in a psychiatric ward rather than a prison. On March 8, 2019, despite having received these warnings about Mr. Osuna, and despite taking the unusual step of expediting Mr. Romero's placement, Corcoran prison officials did not follow protocol and failed to conduct regularly scheduled nightly safety checks of Mr. Romero's new cell. Even after a bedsheet was visibly draped along the bars inside this cell, preventing anyone outside from peering in, no Corcoran prison official bothered to conduct a routine safety check during the evening of March 8, 2019. In the early morning hours of March 9, 2019, Corcoran officials finally conducted a safety check and looked on the other side of the bedsheet. At that point, Mr. Romero was found decapitated, and Mr. Osuna was found wearing a necklace made of Mr. Romero's body parts.

## JURISDICTION AND VENUE

2. This case arises under 42 U.S.C. § 1983, the Fourth, Fifth, Eighth, and Fourteenth Amendments of the United States Constitution, and various state-law governmental tort statutes. Jurisdiction in this Honorable Court by 28 U.S.C. §§ 1331 and 1343. Plaintiff's state-law claims are within the Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

3. Venue is proper in Eastern District of California pursuant to 28 U.S.C. § 1391, as the underlying acts, omissions, injuries and related facts occurred in Kings County, California. This is an action for damages and such other and further relief as may be consistent with law pursuant to 42 U.S.C. § 1983, to redress violations of the decedent's rights protected by the United States Constitution, by persons acting under color of law. This is also a survivor's action and one for wrongful death brought pursuant to the Constitution, statutes and/or common law of the State of California.

## PARTIES

4. Plaintiff Dora Solares is the next of kin and the successor-in-interest to Luis Romero, deceased ("the decedent"). She is the mother of the decedent. The

decedent was never married, never had any domestic partner, nor children, and has no other remaining family members or heirs who have standing to bring a cause of action for wrongful death or a section 1983 survivor action. Ms. Solares is a plaintiff in both her individual capacity and as a successor-in-interest, entitled to seek relief as a result of the unlawful and wrongful death of Luis Romero. This action is filed pursuant to CCP §§ 337.60, 377.30, et al and a declaration is filed under CCP 377.32.

5. Defendant Ralph Diaz ("Diaz"), is the Secretary of the California Department of Corrections and Rehabilitation ("CDCR"), and at the time of the incident was the Acting Secretary of the CDCR. He is sued in his official capacity.

6. Defendant Kenneth Clark ("Clark"), is the Warden of California State Prison, Corcoran. He is sued in his official capacity.

7. Defendant Joseph Burns ("Burns"), is a CDCR Sergeant who was working at the California State Prison, Corcoran at the time of the incident. He is sued in his official capacity.

8. At all relevant times, Defendants Diaz and Clark, and each of them, possessed the power and authority to adopt policies and prescribe rules, regulations, and practices affecting all facets of the training, supervision, control, employment, assignment and removal of individual employees of the CDCR, including those individuals charged with protecting the health and safety of inmates at the California State Prison, Corcoran, including decedent Luis Romero, and to assure that said actions, policies, rules, regulations, customs, practices and procedures of the CDCR and its employees and agents complied with the laws and constitutions of the United States and the State of California.

9. Plaintiff is informed and believes, and thereupon alleges, that at all times mentioned herein Defendants Burns, and Does 1 through 15, inclusive, worked and resided in Kings County, State of California. Plaintiff is informed and believes, and thereupon alleges, that at all times mentioned herein Defendants Burns and Does 1 through 15, inclusive, were employees, agents and/or servants of the CDCR, employed

1  at the California State Prison, Corcoran, and acted within the course and scope of said
2  employment, agency and/or service, and acted under color of state law.
3       10.    Plaintiff is ignorant of the true names and capacities of defendants sued
4  herein as Does 1 through 15, inclusive, and therefore sues these defendants by such
5  fictitious names. Plaintiff is informed, believes and alleges that each of the fictitiously
6  named defendants is legally responsible, intentionally, negligently, or in some other
7  actionable manner, for the events and happenings hereinafter referred to and described,
8  and thereby illegally caused the injuries, damages, and violations and/or deprivations of
9  rights hereinafter alleged. Plaintiff will seek leave of Court to amend this Complaint and
10 state the true names and/or capacities of said fictitiously named defendants when the
11 same have been ascertained.
12      11.    The reason why Plaintiff is ignorant of the true names and capacities of
13 Defendants sued herein as Does, inclusive, is that same have been unascertainable as of
14 the date of filing of this complaint, as many of these Does may be CDCR officers,
15 sergeants, ,lieutenants, captains, associate wardens, chief deputy wardens and/or
16 civilian employee agents, policy makers and representatives of the CDCR, or
17 employees, agents and representatives of the CDCR, and as such many of their records
18 are protected by state statute and can only reasonably be ascertained through the
19 discovery process.
20      12.    The individual defendants were at all times mentioned herein duly
21 appointed, qualified and acting officers of the CDCR, acting within the course and
22 scope of such employment with the CDCR, and acted under color of the statutes,
23 ordinances, regulations, policies, customs and usages of the State of California.

**EXHAUSTION OF ADMINISTRATIVE REMEDIES**

25      13.    Pursuant to Government Code § 910, Plaintiff presented a timely
26 appropriate claim for damages on or around September 3, 2019, less than six months
27 after the incident. On September 12, 2019, the State of California cashed the $25 check,
28 representing the government tort claim fee. This action is timely.

# FACTS

## A. The Decision to Place Luis Romero in Jaime Osuna's Cell

14. On or about March 7, 2019, CDCR inmate Luis Romero (Inmate # H56733) was transferred from Mule Creek State Prison to California State Prison, Corcoran (hereinafter, "Corcoran"). Corcoran prison officials, including defendant CDCR Sergeant Joseph Burns, and Does, ignored the usual protocol required before placing one inmate in the cell of another, and placed Mr. Romero with convicted murderer and single-celled inmate Jaime Osuna.

15. Normally, a committee of prison administrators must determine whether an inmate is fit to have a cellmate. After making this determination, the committee must find another inmate, and deem that inmate an appropriate fit as a cellmate. At that point, the committee ensures the two inmates are introduced to each other, and then has each inmate must sign forms acknowledging and agreeing to be celled with one another. Based on information and belief, CDCR never followed this protocol with regard to housing Romero and Osuna together.

16. Defendants were on notice that Jaime Osuna posed a threat to other inmates and should not share a cell with anyone. Jail and prison reports from Osuna's years behind bars document his violent misconduct and establish that he was always single-celled. It is believed that since his CDCR commitment in 2012, Osuna has never had a cellmate. Plaintiff is also informed that CDCR was in possession of documents from Jaime Osuna's own lawyers and medical team, warning CDCR of Osuna's propensity for extreme violence, insatiable desire to kill, and need to be held in a psychiatric ward, not in a prison with other inmates. Furthermore, defendants were on notice of Osuna's violent behavior while incarcerated at the Kern County Jail awaiting trial in his original murder case, including one incident that resulted in Osuna being charged with attempted murder. Defendants were on notice that Osuna was serving a no-parole sentence for torture killing of a Bakersfield woman in 2011.

17. According to CDCR records, in 2012, a guard caught Jaime Osuna with a

five-inch metal shank. That same report describes Osuna has a high-risk inmate to be housed in a secured single cell with no inmate contact. Shortly after the 2012 incident, another guard found Jaime Osuna with a hatchet like weapon in his single cell and a few months after that, despite being single celled, Jamie Osuna found his way into another inmate's cell where Osuna stabbed and slashed the face of the inmate, resulting in 67 stitches. When prison officials requested to photograph the inmate's injuries, he declined, noting that he didn't want to risk Osuna getting copies of the photos and adding them to his collection of "trophies." Prison reports from 2016 also list Osuna as high-risk staff assaultive and an administrative segregated inmate.

18. Defendants were on notice that Jaime Osuna had mental health issues and could be prone to violence:



19. Despite being put on notice that Osuna would kill again and despite glaring evidence that Osuna was an inmate who should not be housed with any other inmate, defendants either rushed or ignored the normal administrative committee process, and placed Luis Romero in a cell with Jaime Osuna within 24 hours of Romero arriving at Corcoran jail. As the warden of Corcoran, defendant Kenneth Clark is responsible for ensuring that his subordinates follow the proper procedure for placing an inmate in the cell of another inmate. Defendant Clark was on notice of the particular violent nature of Jaime Osuna but took no steps to ensure that Osuna remained single-celled. Defendant Clark failed to properly supervise defendants, including defendant Burns, and thus permitted Burns and Does to ignore the proper administrative procedure for placing one inmate in the cell of another inmate. Furthermore, Defendants Clark and Diaz failed to establish a procedure to document and track when inmates agree in writing to be housed with another, and failed to supervise subordinates to ensure that a violent inmate never otherwise permitted to share a cell was actually prevented from sharing a cell.

**B.     The Failure to Conduct Safety Checks**

20. After placing Luis Romero in harm's way by forcing him to share a cell with Osuna, defendants then failed to conduct routine safety check-ups, even when a bedsheet was impermissibly draped inside the cell. Normally, a corrections officer is supposed to conduct nightly safety checks of each cell at least every hour. And normally, inmates are prohibited from obstructing the view into their cell, and the draping of bedsheets or other materials in such a manner is not permitted.

21. On the evening of March 8, 2019, however, defendants did not enforce the normal rules, despite being put on notice of danger Osuna posed to other inmate in general, and despite being aware of the fact that Osuna had not been permitted to share a cell with anyone before. Doe defendants, correctional officers at Corcoran assigned to the cellblock that Romero and Osuna were housed on the evening of March 8, 2019,

7

did not conduct any night-time safety checks. These Doe defendants did not order Osuna (or Romero) to take the bedsheets down at any point in the night. Doe defendants' absence from required safety-checks was so prolonged and pronounced that they heard no sounds that would indicate a violent attack was being committed and that they should in intervene. The delay of nighttime safety checks was so severe that Osuna had time to decapitate Romero, make a necklace of Romero's body parts, and cover the cell in blood, all with a small razor. The prosecutor assigned to Mr. Romero's murder calls it "probably the most unusual and gruesome case that I've had in my career."[1] Defendants Clark and Diaz also failed to supervise Doe defendants responsible for conducting routine night-time safety checks, failed to establish a system that would ensure crucial nighttime safety checks are conducted, and as a result, hours passed.

22.    Defendants were deliberately indifferent to a substantial risk of serious harm to which Luis Romero was exposed. Such indifference includes: ignoring the proper administrative procedure for placing one inmate with another, despite having been put on notice that Jaime Osuna was a violent psychopath; affirmatively placing Mr. Romero in a cell with Jaime Osuna, even though Mr. Osuna had not shared a cell with anyone before at Corcoran because he had been identified as a violent psychopath who posed a danger to fellow inmates; failing to ensure regular, night-time security checks of the cell that housed Mr. Romero and Mr. Osuna, despite a bedsheet draped inside to prevent proper monitoring, and despite Mr. Osuna having been identified as a violent killer who posed a danger to fellow inmates.

23.    A March 13, 2019 autopsy cited a litany of injuries. According to the medical examiner, Luis Romero's spine was severed in the area of its first two segments. The cut-line was irregular and the surrounding skin showed scattered abrasions, scratches, and clusters of superficial stab wounds averaging a quarter inch in length. Romero's right ear was removed by Jamie Osuna. Romero's eyes were forcibly

---

[1] *Available at* https://abc30.com/5271416/

detached by Osuna, and Romero's left eye had been stabbed. Superficial scratches were seen on the right side of Romero's face. Prominent lacerations extended laterally from Romero's right and left side of his mouth approximately two and a half inches. A square-shaped incision was made to Romero's left upper chest cavity measuring four inches by three inches. The underlying rib segment was removed and Romero's left lung was removed in two parts. Crime scene photos taken prior to Romero being removed from the cell showed Romero's body had been posed in a way that if possible, made the full decapitation even more shocking. Jamie Osuna had made a necklace for himself using Romero's body parts and organs. Osuna was found with the murder weapon believed to have been manufactured from a razor with a string around it.

**DAMAGES**

24. As a direct and proximate result of aforesaid acts and omissions, and the customs, practices, policies and decisions of the defendants alleged in this complaint, Plaintiff suffered and will continue to suffer great emotional, mental and physical pain and injuries, anguish, fright, nervousness, anxiety, shock, humiliation, indignity, embarrassment, harm to reputation, and apprehension, which have caused and will continue to cause, Plaintiff to sustain general damages in a sum to be determined at trial.

25. As a direct and proximate result of the aforesaid acts, omissions, customs, practices, policies and decisions of the aforementioned Defendants, Plaintiff suffered the denial of her fundamental constitutional rights guaranteed by the Fourteenth Amendments of the United States Constitution, which have caused Plaintiff to sustain damages in a sum to be determined at trial.

26. As a further direct and proximate result of the aforesaid acts, omissions, customs, practices, policies and decisions of the aforementioned Defendants, Plaintiff incurred and/or will continue to incur medical expenses, including psychological treatment.

27. As a further direct and proximate result of the aforesaid acts, omissions,

customs, practices, policies and decisions of the aforementioned Defendants, Plaintiff suffered past and future losses of income that have caused her to sustain economic damages in a sum to be determined at trial.

28. Defendant Burns and individual Doe defendants acted in a manner that was willful, wanton, malicious and oppressive, with reckless disregard of or in deliberate indifference to and with the intent to deprive the decedent of his constitutional rights, and did in fact violate the aforementioned rights, entitling Plaintiff to exemplary and punitive damages in an amount to be proven at the trial in this matter. Plaintiff also seeks attorneys' fees.

**FIRST CLAIM FOR RELIEF**

**Deliberate Indifference to Serious Safety Needs – 8th and 14th Amendment**

**(42 U.S.C. § 1983)**

**(Against Defendants Burns and Does 1 through 15)**

29. Plaintiff incorporates by reference each and every allegation contained in the foregoing paragraphs as if re-alleged herein.

30. Defendant Burns and Doe defendants were deliberately indifferent to a substantial risk of serious harm to which Luis Romero was exposed. Defendant Burns and Doe defendants above-alleged misconduct and their failure to take any steps or measures to account for the clear and known risk to which Luis Romero was subjected constituted deliberate indifference Romero's serious safety needs.

31. As a direct and proximate result of Defendants' conduct, plaintiff was damaged as alleged herein above.

32. The aforementioned misconduct of the named defendants was of such an egregious nature that it entitles the plaintiffs to an award of exemplary and punitive damages according to proof and as permitted by law.

///

///

## SECOND CLAIM FOR RELIEF

## Violation of Civil Rights – 42 U.S.C. § 1983

## Failure to Intervene to Protect Pre-Trial Detainee in Custody

## (Against All Defendants)

33. Plaintiff incorporates by reference each and every allegation contained in the foregoing paragraphs as if re-alleged herein.

34. The individual and Doe defendants, while acting under color of law, deprived Luis Romero, Plaintiff's son, of his civil rights under the Eighth and Fourteenth Amendments to the United States Constitution. At all times relevant here, the individual defendants and Doe defendants 1 through 15 were present and were charged with the constitutional duties of protection of Luis Romero and were charged with the duty to not knowingly, with wanton disregard, cause his life, health and safety to be placed in danger by intentionally and/or deliberately ignoring the known dangers to Luis Romero that their actions and/or omissions placed him in.

35. The individual and Doe defendants, while acting under color of law, deprived Luis Romero, Plaintiff's son, of his civil rights under the Eight and Fourteenth Amendments to the United States Constitution when they made an intentional decision with respect to the conditions under which Romero was confined, as described above.

36. At all times relevant here, the individual defendants and Doe defendants 1 through 15 did not take reasonable available measures to abate that risk, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved, which made the consequences of individual and Doe defendants' conduct obvious.

37. As a proximate result of the conduct of the individual defendants and Doe defendants 1 through 15, in particular, by not taking such measures as described above, Plaintiff suffered injuries and damages set forth herein, including great physical pain and emotional distress up to the time of his death, loss of enjoyment of life, loss

11

of life, and loss of earning capacity.

38. The conduct of the individual defendants and Doe defendants 1 through 15 was willful, wanton, malicious, and done with reckless disregard for the rights and safety of decedent and therefore warrants the imposition of exemplary and punitive damages as to Defendants.

39. The individual defendants and Doe defendants 1 through 15 are liable to Plaintiff for the decedent's injuries and death, either because they were integral participants in the wrongful actions that led to Luis Romero being placed alone in a cell, unsupervised, with a violent psychopath.

40. Plaintiff brings this claim both individually and as a successor-in-interest to decedent. Plaintiff seeks survival damages, including for the nature and extent of decedent's injuries, pre-death pain and suffering, emotional distress, and loss of life and enjoyment of life, as well as wrongful death damages under this claim. Plaintiff also seeks attorney's fees.

### THIRD CLAIM FOR RELIEF
**Supervisory Liability**
**(42 U.S.C. § 1983; 8th and 14th Amendments)**
**(Against Defendants Diaz, Clark, Burns and Does 11-15)**

41. Plaintiff incorporates by reference each and every allegation contained in the foregoing paragraphs as if re-alleged herein.

42. Defendants Diaz, Clark, Burns and Does 11-15 acted in a supervisory capacity under color of law.

43. The acts and failures of Diaz, Clark, Burns and Does 11-15 were a cause of the murder of Luis Romero, which deprived Plaintiff and Luis Romero of their particular rights under the Eighth and Fourteenth Amendments, as alleged above.

44. Defendants Diaz, Clark, Burns and Does 11-15 knew and had been put on notice that their subordinates Does were engaging in conduct in violation of written

12

policy and knew or reasonably should have known that his conduct would deprive Plaintiff of these rights.

45. Defendants Diaz, Clark, Burns and Does 11-15 failed to act to prevent Does 1-10, their subordinates, from engaging in such conduct.

46. The known or obvious consequence of training deficiencies and the failures to enforce written policies would be to cause subordinates like Does 1-10 to violate Plaintiff's constitutional rights. Defendants Diaz, Clark, Burns and Does 11-15 disregarded this consequence.

47. These training deficiencies and the failures to enforce written policies resulted in the deprivation of Plaintiff's rights by Does 1-10

48. Defendants Diaz, Clark, Burns and Does 11-15 engaged in conduct that showed a reckless or callous indifference to the deprivation by their subordinates of the rights of others.

**FOURTH CLAIM FOR RELIEF**

**Loss of Familial Relations**

**(42 U.S.C. § 1983; 14th Amendment)**

**(Against All Defendants)**

49. Plaintiff incorporates by reference each and every allegation contained in the foregoing paragraphs as if re-alleged herein.

50. The individual defendants each violated Plaintiff's constitutional rights by committing the misconduct set forth hereinabove in Claims for Relief One through Three. The defendants' above-alleged misconduct constituted deliberate indifference of Luis Romero's serious safety needs.

51. As a direct and proximate result of the aforementioned actions and omissions, Plaintiff was deprived of her son and suffered the injuries and damages as alleged herein above. The liberty interests Plaintiff as a mother is well-recognized as Fourteenth Amendment substantive due process rights.

52. The conduct of the individual defendants and Doe defendants 1 through 15 was willful, wanton, malicious, and done with reckless disregard for the rights and safety of decedent and therefore warrants the imposition of exemplary and punitive damages as to Defendants.

## FIFTH CLAIM FOR RELIEF

**Conspiracy to Violate Civil rights**

**42 U.S.C. § 1983**

**(Against All Individual Defendants and Does 1-15)**

53. Plaintiff incorporates by reference each and every allegation contained in the foregoing paragraphs as if re-alleged herein.

54. This cause of action arises under United States Code, Title 42, Sections 1983, 1985, and 1988, wherein Plaintiff seeks to redress a deprivation under color of law of a right, privilege or immunity secured by the Eighth and Fourteenth Amendments to the United States Constitution.

55. Individual Defendants and Does 1-15, and each of them:

    (a) had a joint and simultaneous duty to make sure that Luis Romero was physically safe while incarcerated at Corcoran;

    (b) had joint and simultaneous knowledge that Luis Romero was at risk of being harmed by another inmate;

    (c) with such duty, knowledge and a meeting of the minds, defendants took action at the same time and in the same place to collaborate to refuse to protect Luis Romero from Jaime Osuna. Thus, forming a 'pact of denial' such that not a single one of them did anything to intervene on Mr. Romero's behalf or prevent the harm of which was plainly foreseeable by Osuna's past record of violence;

    (d) acted as described herein above, in conspiracy with, and with the agreement permission, ratification, and approval of, each other to violate Mr. Romero's and Plaintiff's civil rights as stated herein.

56. As a direct and proximate result of the aforementioned acts, omissions and deliberate indifference of each of the defendants, Plaintiff and Luis Romero were harmed.

57. Plaintiff brings this claim both individually and as a successor-in-interest to decedent. Plaintiff seeks survival damages, including for the nature and extent of decedent's injuries, pre-death pain and suffering, emotional distress, and loss of life and enjoyment of life, as well as wrongful death damages under this claim. Plaintiff also seeks attorney's fees.

## SIXTH CLAIM FOR RELIEF

**Negligent Supervision, Training and Staffing**

**Cal. Civil Code 1714, Cal. Gov. Code § 844.6(d)**

**(Against All Individual Defendants and Does 1-15)**

58. Plaintiff incorporates by reference each and every allegation contained in the foregoing paragraphs as if re-alleged herein.

59. Defendants Diaz, Clark and Burns failed to supervise the process by which it was determined that Luis Romero should be placed in a cell with Jaime Osuna, and failed to supervise the process by which routine, nighttime safety checks of Luis Romero's cell were to be conducted. These defendants allowed Romero to be housed with Osuna, failed to impress upon their subordinates of the high-risk placement, and failed to ensure that their subordinates conducted regular safety checks, as normally required.

60. Individual defendants and Does 1-15 herein, agents, servants, and/or employees of County, and within the course and scope of such agency, service, and/or employment, and under color of authority, were negligent in regards to Luis Romero's health, safety and welfare, and breached that duty of care.

61. As a result, Luis Romero was injured and killed. Plaintiff brings this claim both individually and as a successor-in-interest to decedent.

15

## SEVENTH CLAIM FOR RELIEF

### Wrongful Death

### (California Code of Civil Procedure 377.60 et seq.)

### (Against All Individual Defendants and Does 1-15)

62. Plaintiff incorporates by reference each and every allegation contained in the foregoing paragraphs as if re-alleged herein.

63. The named defendants have committed intentional or negligent misconduct that caused the untimely and wrongful death of decedent Luis Romero and deprived Plaintiff of her son.

64. As a direct and proximate result of this misconduct, Plaintiff suffered the injuries and damages as alleged hereinabove

65. These injuries and damages are compensable under California law.

## EIGHTH CLAIM FOR RELIEF

### Failure to Summon Medical Care

### Cal. Gov't. Code § 845.6

### (Against Defendant Does 1-15)

66. Plaintiff incorporates by reference each and every allegation contained in the foregoing paragraphs as if re-alleged herein.

67. While in the cell he was forced to share with Jaime Osuna, Luis Romero was violently attacked. Defendant Does failed to conduct timely safety checks, failed to order the draped bedsheets obstructing any view into the cell to come down, and failed to be within earshot or eyeshot of Romero and Osuna's cell. In the moments that Mr. Romero was attacked by Osuna, but before Mr. Romero died, Defendant Does failed to provide necessary medical care that would have prevented Mr. Romero's death.

68. Doe defendants, herein agents, servants, and employees of the CDCR, and within the course and scope of that agency, service, and/or employment, and under color of authority, failed to take reasonable action to summons medical care for

16

Mr. Romero, despite having reason to know that he was in need of immediate medical care, in violation of Cal. Gov't Code § 845.6.

69. As a result, plaintiff's injuries worsened, and without timely medical treatment, he died.

70. As a result, Mr. Romero sustained the injuries and damages alleged herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief as follows against defendants:

1. General and Special damages, including both survival and wrongful death damages, in an amount according to proof;
2. Exemplary and punitive damages against each individual and Doe defendant, but not against the entity defendants, in amounts according to proof;
4. Cost of suit, including attorneys' fees, under 42 U.S.C. § 1988; and
5. Such other relief as may be warranted or as is just and proper.

**LAW OFFICES OF JUSTIN STERLING**

DATED: March 2, 2020

By:   */s/ Justin Sterling*
     Justin Sterling
     Attorney for Plaintiff,
     DORA SOLARES

DATED: March 2, 2020

**LAW OFFICES OF ERIN DARLING**

By:   */s/ Erin Darling*
      Erin Darling
      Attorney for Plaintiff,
      DORA SOLARES

## JURY DEMAND

Plaintiff Dora Solares hereby demands trial by jury on all issues so triable.

**LAW OFFICES OF JUSTIN STERLING**

DATED: March 2, 2020

By:   */s/ Justin Sterling*
      Justin Sterling
      Attorney for Plaintiff,
      DORA SOLARES

**LAW OFFICES OF ERIN DARLING**

DATED: March 2, 2020

By:   */s/ Erin Darling*
      Erin Darling
      Attorney for Plaintiff,
      DORA SOLARES