Justin E. Sterling, State Bar No. 249491
LAW OFFICES OF JUSTIN STERLING
Justin@SterlingDefense.com
15760 Ventura Blvd. Suite 700
Encino, CA 91436
Tel. (818) 995-9452/Fax. (818) 824-3533

Erin Darling, State Bar No. 259724
LAW OFFICES OF ERIN DARLING
Erin@ErinDarlingLaw.com
3435 Wilshire Blvd. Suite 2910
Los Angeles, CA 90010
Tel. (323) 736-2230

Attorneys for Plaintiff Dora Solares

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DORA SOLARES, an individual,<br><br>        Plaintiff,<br><br>      v.<br><br>RALPH DIAZ, in his individual capacity, KENNETH CLARK, in his individual capacity, JOSEPH BURNS, in his individual, and DOES 1 TO 15, in their individual capacities<br><br>        Defendants. | Case No. 1:20-cv-00323-NONE-BAM<br><br>**AMENDED COMPLAINT FOR DAMAGES FOR VIOLATIONS OF CIVIL RIGHTS UNDER 18 U.S.C. § 1983**<br><br>**DEMAND FOR JURY TRIAL** |

## INTRODUCTION

1.      On or about March 7, 2019, CDCR inmate Luis Romero was transferred from Mule Creek State Prison to California State Prison, Corcoran. Corcoran prison officials chose to bypass the standardized administrative committee process that is required before forcing one inmate to share the cell of another, and rushed to assign Mr. Romero to the same cell as convicted murderer, inmate Jaime Osuna. Mr. Osuna had not had a cellmate at Corcoran prior to this assignment. Corcoran officials had already been put on notice that Mr. Osuna was uniquely unfit to be housed with a

1

cellmate, as he had engaged in multiple acts of violence against fellow inmates, had been charged with attempted murder as a result of one such incident, and had been recommended for placement in a psychiatric ward rather than a prison. On March 8, 2019, despite having received these warnings about Mr. Osuna, and despite taking the unusual step of expediting Mr. Romero's placement, Corcoran prison officials chose to bypass the standardized process and then failed to conduct regularly scheduled nightly safety checks of Mr. Romero's new cell. Even after a bedsheet was visibly draped along the bars inside this cell, preventing anyone outside from peering in, no Corcoran prison official bothered to conduct a routine safety check during the evening of March 8, 2019. In the early morning hours of March 9, 2019, Corcoran officials finally conducted a safety check and looked on the other side of the bedsheet. At that point, Mr. Romero was found decapitated, and Mr. Osuna was found wearing a necklace made of Mr. Romero's body parts.

### JURISDICTION AND VENUE

2.      This case arises under 42 U.S.C. § 1983, the Fourth, Fifth, Eighth, and Fourteenth Amendments of the United States Constitution, and various state-law governmental tort statutes. Jurisdiction in this Honorable Court by 28 U.S.C. §§ 1331 and 1343. Plaintiff's state-law claims are within the Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

3.      Venue is proper in Eastern District of California pursuant to 28 U.S.C. § 1391, as the underlying acts, omissions, injuries and related facts occurred in Kings County, California. This is an action for damages and such other and further relief as may be consistent with law pursuant to 42 U.S.C. § 1983, to redress violations of the decedent's rights protected by the United States Constitution, by persons acting under color of law. This is also a survivor's action and one for wrongful death brought pursuant to the Constitution, statutes and/or common law of the State of California.

**PARTIES**

4.    Plaintiff Dora Solares is the next of kin and the successor-in-interest to Luis Romero, deceased ("the decedent"). She is the mother of the decedent. The decedent was never married, never had any domestic partner, nor children, and has no other remaining family members or heirs who have standing to bring a cause of action for wrongful death or a section 1983 survivor action. When Luis Romero was three years old, and still living in Guatemala, Dora Solares divorced Luis Romero's father. Since that time, Dora Solares (and Luis Romero) have had no contact with the father. Furthermore, Dora Solares and Luis Romero emigrated to the United States shortly thereafter, and Luis Romero's father remained in Guatemala, and to Plaintiff's knowledge the father never moved to the United States and has never entered the United States. For these reasons it is not feasible to join him. Ms. Solares is a plaintiff in both her individual capacity and as a successor-in-interest, entitled to seek relief as a result of the unlawful and wrongful death of Luis Romero. This action is filed pursuant to CCP §§ 337.60, 377.30, et al and a declaration is filed under CCP 377.32.

5.    Defendant Ralph Diaz ("Diaz"), is the Secretary of the California Department of Corrections and Rehabilitation ("CDCR"), and at the time of the incident was the Acting Secretary of the CDCR. He is sued in his individual capacity.

6.    Defendant Kenneth Clark ("Clark"), is the Warden of California State Prison, Corcoran. He is sued in his individual capacity.

7.    Defendant Joseph Burns ("Burns"), is a CDCR Sergeant who was working at the California State Prison, Corcoran at the time of the incident. He is sued in his individual capacity.

8.    At all relevant times, Defendants Diaz and Clark, and each of them, possessed the power and authority to adopt policies and prescribe rules, regulations, and practices affecting all facets of the training, supervision, control, employment, assignment and removal of individual employees of the CDCR, including those individuals charged with protecting the health and safety of inmates at the California

State Prison, Corcoran, including decedent Luis Romero, and to assure that said actions, policies, rules, regulations, customs, practices and procedures of the CDCR and its employees and agents complied with the laws and constitutions of the United States and the State of California.

9. Plaintiff is informed and believes, and thereupon alleges, that at all times mentioned herein Defendants Burns, and Does 1 through 15, inclusive, worked and resided in Kings County, State of California. Plaintiff is informed and believes, and thereupon alleges, that at all times mentioned herein Defendants Burns and Does 1 through 15, inclusive, were employees, agents and/or servants of the CDCR, employed at the California State Prison, Corcoran, and acted within the course and scope of said employment, agency and/or service, and acted under color of state law.

10. Plaintiff is ignorant of the true names and capacities of defendants sued herein as Does 1 through 15, inclusive, and therefore sues these defendants by such fictitious names, in their individual capacities. Plaintiff is informed, believes and alleges that each of the fictitiously named defendants is legally responsible, intentionally, negligently, or in some other actionable manner, for the events and happenings hereinafter referred to and described, and thereby illegally caused the injuries, damages, and violations and/or deprivations of rights hereinafter alleged. Plaintiff will seek leave of Court to amend this Complaint and state the true names and/or capacities of said fictitiously named defendants when the same have been ascertained.

11. The reason why Plaintiff is ignorant of the true names and capacities of Defendants sued herein as Does, inclusive, is that same have been unascertainable as of the date of filing of this complaint, as many of these Does may be CDCR officers, sergeants, ,lieutenants, captains, associate wardens, chief deputy wardens and/or civilian employee agents, policy makers and representatives of the CDCR, or employees, agents and representatives of the CDCR, and as such many of their records are protected by state statute and can only reasonably be ascertained through the discovery process. The individual defendants were at all times mentioned herein duly

appointed, qualified and acting officers of the CDCR, acting within the course and scope of such employment with the CDCR, and acted under color of the statutes, ordinances, regulations, policies, customs and usages of the State of California.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

12.     Pursuant to Government Code § 910, Plaintiff presented a timely appropriate claim for damages and a $25 check for the required tort claim fee, on or around September 3, 2019, less than six months after the incident. On September 12, 2019, the State of California cashed the $25 check, representing the government tort claim fee. This action is timely.

## FACTS

### A.    Defendants Bypass Standard Procedure and Place Luis Romero in Jaime Osuna's Cell

13.     On or about March 7, 2019, CDCR inmate Luis Romero (Inmate # H56733) was transferred from Mule Creek State Prison to California State Prison, Corcoran (hereinafter, "Corcoran"). Corcoran prison officials, including defendant CDCR Sergeant Joseph Burns, and Does, were required to go through a standardized administrative committee process of matching two inmates in one cell, a process that is described in Paragraph 15. Defendant Burns and Does chose to not follow this standardized administrative committee process, and rushed to place Mr. Romero with convicted murderer and single-celled inmate Jaime Osuna, despite knowing that Osuna was a danger to anyone around him, as described in Paragraphs 16 and 17.

14.     Normally, a committee of prison administrators must determine whether an inmate is fit to have a cellmate. After making this determination, the committee must find another inmate, and deem that inmate an appropriate fit as a cellmate. At that point, the committee ensures the two inmates are introduced to each other, and then has each inmate must sign forms acknowledging and agreeing to be celled with one another. Based on information and belief, CDCR never followed the standardized administrative committee process with regards to housing Romero and Osuna together.

15.      Defendants, including Burns, Clark and Diaz, were on notice that Jaime Osuna posed a threat to other inmates and should not share a cell with anyone. Jail and prison reports from Osuna's years behind bars document his violent misconduct and establish that he was always single-celled. It is believed that since his CDCR commitment in 2012, Osuna has never had a cellmate. Plaintiff is also informed that CDCR was in possession of documents from Jaime Osuna's own lawyers and medical team, warning CDCR of Osuna's propensity for extreme violence, insatiable desire to kill, and need to be held in a psychiatric ward, not in a prison with other inmates. Furthermore, defendants were on notice of Osuna's violent behavior while incarcerated at the Kern County Jail awaiting trial in his original murder case, including one incident that resulted in Osuna being charged with attempted murder. Defendants were on notice that Osuna was serving a no-parole sentence for torture killing of a Bakersfield woman in 2011. Defendants knew that Osuna posed a danger to anyone he shared a cell, which is why he had never had a cell-mate at Corcoran before.

16.      According to CDCR records, in 2012, a guard caught Jaime Osuna with a five-inch metal shank. That same report describes Osuna has a high-risk inmate to be housed in a secured single cell with no inmate contact. Shortly after the 2012 incident, another guard found Jaime Osuna with a hatchet like weapon in his single cell and a few months after that, despite being single celled, Jamie Osuna found his way into another inmate's cell where Osuna stabbed and slashed the face of the inmate, resulting in 67 stitches. When prison officials requested to photograph the inmate's injuries, he declined, noting that he didn't want to risk Osuna getting copies of the photos and adding them to his collection of "trophies." Prison reports from 2016 also list Osuna as high-risk staff assaultive and an administrative segregated inmate. Thus, Osuna posed an objectively homicidal risk to anyone with whom he shared a cell, and Defendants, including Burns, Clark and Diaz, were on notice of this prior to Mr. Romero being assigned to share a cell with Osuna. If Clark and Burns followed the administrative committee process for inmates sharing a cell, and had ensured routine night-time safety

6

checks, especially after being put on notice of the danger posed by Osuna, they would not have sent Romero to share a cell with Osuna overnight unprotected by correctional officers, and Romero would not have been killed on March 8, 2019.

17.     Defendants were on notice that Jaime Osuna had mental health issues and was prone to violence:



18.     Despite being put on notice that Osuna would kill again if placed in close proximity to another inmate, and despite glaring evidence that Osuna was an inmate who should not be housed with any other inmate, Defendant Burns and the Doe defendants who also were responsible for implementing the standardized administrative committee process, as well as Defendant Clark who was responsible for supervising and approving the decisions of the administrative committee process, chose to ignore the known risk of Osuna and placed Luis Romero in a cell with Jaime Osuna

within 24 hours of Romero arriving at Corcoran jail. Plaintiff alleges, based upon information and belief, that Luis Romero had filed personnel complaints against Burns and other Corcoran guards, including Does, and Burns' and Does' decision to not follow the administrative committee process was animated in part to retaliate against Mr. Romero. Upon information and belief, Plaintiff alleges that Defendant Burns is one of the leaders in a gang of correctional officers at Corcoran known as "the Greenwall," and other Doe defendant correctional officers answer to him, and are referred to as "goons." Defendant Burns has history of coordinating inmate abuse, for instance, extracting an inmate from a cell and hitting him over the head until the inmate bled, and arranging for inmates to fight each other as correctional officers looked on. In this case, Burns acted with others, the decision to bypass the normal committee process could not have been made by one person alone, and defendant Does, along with Burns, chose to ignore the known risk posed by Osuna and chose to not follow the administrative committee process for Romero's placement.

19. As the warden of Corcoran, defendant Kenneth Clark is responsible for ensuring that his subordinates follow the proper procedure for placing an inmate in the cell of another inmate. In this case, Clark did not do so, instead, Clark effectively "rubber-stamped" a dangerous decision he reasonably should have known would lead to deprivations of Romero's Eighth Amendment rights. As described in Paragraphs 16-17, Defendant Clark was on notice of the particular violent nature of Jaime Osuna but took no steps to ensure that Osuna remained single-celled. Defendant Clark failed to properly supervise defendants, including defendant Burns, to ensure that the standardized administrative committee process was followed in this instance, and instead approved and allowed the out-of-protocol decision to go forward. Defendant Clark thus permitted Burns and Does to not follow the proper administrative procedure for placing one inmate in the cell of another inmate, despite being put on notice of the threat that Osuna posed to anyone with whom he shared a cell. Furthermore, Defendants Clark and Diaz failed to establish a procedure to document

and track when inmates agree in writing to be housed with another, and failed to supervise subordinates to ensure that a violent inmate never otherwise permitted to share a cell was actually prevented from sharing a cell.

**B.    Defendants Fail to Conduct Safety Checks**

20.    After placing Luis Romero in harm's way by forcing him to share a cell with Osuna, defendants Clark, Burns and Does then failed to conduct routine safety check-ups, even when a bedsheet was impermissibly draped inside the cell. Normally, a corrections officer is supposed to conduct nightly safety checks of each cell at least every hour, and normally every twenty minutes. In addition, rules at Corcoran -- which correctional officers are supposed to enforce -- prohibit inmates from obstructing the view into their cell, and the draping of bedsheets or other materials in such a manner.

21.    On the evening of March 8, 2019, however, defendants Clark, Burns and Does did not enforce the normal rules, despite being put on notice of the danger that Osuna posed to other inmates in general, and despite being aware of the fact that Osuna had not been permitted to share a cell with anyone before. Moreover, Burns and Doe defendants, correctional officers at Corcoran assigned to the cellblock that Romero and Osuna were housed on the evening of March 8, 2019, affirmatively worked together to ensure that correctional officers did not conduct any night-time safety checks. Routine safety checks are supposed to occur at least every hour, and normally every twenty minutes, and a guard station is located around 100 feet of the cell that held Romero and Osuna. On March 8, 2019, Does, who are supervised by Burns, colluded to ensure a number of highly unusual omissions: they never made any safety checks for at least four hours; they did not order Osuna (or Romero) to take the bedsheets down at any point in the night; the guard station on the cell-block was empty during this time and no correctional officer responded to the loud noises. Doe defendants' absence from required safety-checks was so prolonged and pronounced that they heard no sounds that would indicate a violent attack was being committed and that they should in intervene, despite the loud noises in the cell that came from the

gruesome murder of Romero. The delay of nighttime safety checks was so severe that Osuna had time to decapitate Romero, make a necklace of Romero's body parts, and cover the cell in blood, all with a small razor. The prosecutor assigned to Mr. Romero's murder calls it "probably the most unusual and gruesome case that I've had in my career."[1] Defendants Clark and Burns also failed to supervise Doe defendants responsible for conducting routine night-time safety checks, failed to require Doe defendants to actually conduct routine night-time safety checks on the first night that Romero was in a cell with Osuna, whom they knew had never been celled with another inmate while in CDCR custody and who they knew posed a threat to other inmates, and failed to establish a system that would ensure crucial nighttime safety checks were actually conducted. Defendants Diaz, Clark and Burns also failed to train on these above-issues, and were aware of the deficiencies in the training of the correctional officers tasked with enforcing night-time safety checks and the rule against permitting inmates to hang sheets in their cells to obstruct viewing into such cells. As a result, hours passed without any CDCR official conducting any routine safety check, and in this vacuum, Mr. Romero was brutally murdered.

22.    Defendants Clark, Burns and Does were deliberately indifferent to a substantial risk of serious harm to which Luis Romero was exposed. Such indifference to which they were subjectively aware includes: choosing to ignore the proper administrative procedure for placing one inmate with another, despite having been put on notice that Jaime Osuna was a violent psychopath; affirmatively placing Mr. Romero in a cell with Jaime Osuna, even though Mr. Osuna had not shared a cell with anyone before at Corcoran because he had been identified as a violent psychopath who posed a danger to fellow inmates; failing to ensure regular, night-time security checks of the cell that housed Mr. Romero and Mr. Osuna, despite Mr. Osuna having been identified as a violent killer who posed a danger to fellow inmates; and for Burns and the Doe defendants who were the correctional officers on shift over the night, failing to make

---

[1] *Available at* https://abc30.com/5271416/

regular checks despite a bedsheet draped inside Romero and Osuna's cell that evening, which visibly prevented proper monitoring and would have required the inmates to take it down, under Corcoran's own rules.

23.    The autopsy performed around March 13, 2019, cited a litany of injuries, which Luis Romero suffered even before his death. According to the medical examiner, Luis Romero's spine was severed in the area of its first two segments. The cut-line was irregular and the surrounding skin showed scattered abrasions, scratches, and clusters of superficial stab wounds averaging a quarter inch in length. Romero's right ear was removed by Jamie Osuna. Romero's eyes were forcibly detached by Osuna, and Romero's left eye had been stabbed. Superficial scratches were seen on the right side of Romero's face. Prominent lacerations extended laterally from Romero's right and left side of his mouth approximately two and a half inches. A square-shaped incision was made to Romero's left upper chest cavity measuring four inches by three inches. The underlying rib segment was removed and Romero's left lung was removed in two parts. Crime scene photos taken prior to Romero being removed from the cell showed Romero's body had been posed in a way that if possible, made the full decapitation even more shocking. Jamie Osuna had made a necklace for himself using Romero's body parts and organs. Osuna was found with the murder weapon believed to have been manufactured from a razor with a string around it.

**DAMAGES**

24.    As a direct and proximate result of aforesaid acts and omissions, and the customs, practices, policies and decisions of the defendants alleged in this complaint, Plaintiff suffered and will continue to suffer great emotional, mental and physical pain and injuries, anguish, fright, nervousness, anxiety, shock, humiliation, indignity, embarrassment, harm to reputation, and apprehension, which have caused and will continue to cause, Plaintiff to sustain general damages in a sum to be determined at trial. Luis Romero suffered greatly before his eventual death at the hands of Osuna, and his estate is entitled to damages stemming from pre-death pain and suffering.

25.     As a direct and proximate result of the aforesaid acts, omissions, customs, practices, policies and decisions of the aforementioned Defendants, Plaintiff suffered the denial of her fundamental constitutional rights guaranteed by the Fourteenth Amendments of the United States Constitution, which have caused Plaintiff to sustain damages in a sum to be determined at trial.

26.     As a further direct and proximate result of the aforesaid acts, omissions, customs, practices, policies and decisions of the aforementioned Defendants, Plaintiff incurred and/or will continue to incur medical expenses, including psychological treatment.

27.     As a further direct and proximate result of the aforesaid acts, omissions, customs, practices, policies and decisions of the aforementioned Defendants, Plaintiff suffered past and future losses of income that have caused her to sustain economic damages in a sum to be determined at trial.

28.     Defendant Burns and individual Doe defendants acted in a manner that was willful, wanton, malicious and oppressive, with reckless disregard of or in deliberate indifference to and with the intent to deprive the decedent of his constitutional rights, and did in fact violate the aforementioned rights, entitling Plaintiff to exemplary and punitive damages in an amount to be proven at the trial in this matter. Plaintiff also seeks attorneys' fees.

**FIRST CLAIM FOR RELIEF**

**Violation of Civil Rights – 42 U.S.C. § 1983**

**Conditions of Confinement – 8th Amendment**

**(Against Defendants Clark, Burns and Does 1 through 15)**

29.     Plaintiff incorporates by reference each and every allegation contained in the foregoing paragraphs as if re-alleged herein.

30.     Luis Romero faced substantial risk of serious harm when he was forced by Defendants Clark, Burns and Doe defendants to share a cell overnight with Osuna,

1  and when they failed to ensure that routine cell-checks were conducted, and failed to

2  enforce rules against bedsheets in the cells to prevent visibility from the outside.

3    31.    Defendants Clark, Burns and Doe defendants were deliberately indifferent

4  to a substantial risk of serious harm to which Luis Romero was exposed while in the

5  same cell as Osuna, in that they knew of it and disregarded it by failing to take

6  reasonable measures to address it.

7    31.    As a direct and proximate result of Defendants' conduct, in acting to put

8  Romero in the same cell as Osuna and failing to act to protect him once in that cell,

9  Clark, Burns and Doe defendants caused harm to Romero and plaintiff was damaged as

10  alleged herein above.

11    32.    The aforementioned misconduct of the named defendants was of such an

12  egregious nature that it entitles the plaintiffs to an award of exemplary and punitive

13  damages according to proof and as permitted by law.

**SECOND CLAIM FOR RELIEF**

**Violation of Civil Rights – 42 U.S.C. § 1983**

**Failure to Protect Inmate – Eighth Amendment**

**(Against Defendants Clark, Burns and Does 1 through 15)**

18    33.    Plaintiff incorporates by reference each and every allegation contained in

19  the foregoing paragraphs as if re-alleged herein.

20    34.    Defendants Clark, Burns and Doe defendants, while acting under color of

21  law, deprived Luis Romero, Plaintiff's son, of his civil rights under the Eighth

22  Amendments to the United States Constitution.

23    35.    Defendants Clark, Burns and Doe defendants, while acting under color of

24  law, deprived Luis Romero, Plaintiff's son, of his civil rights under the Eight

25  Amendment to the United States Constitution when they made intentional decisions

26  with respect to the conditions under which Romero was confined, as described above.

27  These decisions put Romero in substantial risk of suffering serious harm.

28    36.    At all times relevant here, Defendants Clark, Burns and Doe defendants

did not take reasonable available measures to abate the substantial risk of harm to Romero. These defendants knew of the high degree of risk that Romero faced while in the same cell as Osuna, and disregarded it. Indeed, Clark and Burns and Doe defendants were aware of the risk that Osuna posed to any other inmate in close proximity to him, and chose to ignore standard administrative procedure in placing Romero in a cell with him, and that very first evening, failed to ensure that routine cell-checks were conducted, and failed to enforce rules against bedsheets in the cells to prevent visibility from the outside. The consequences of each of these decisions was obvious and constituted deliberate indifference Romero's serious safety needs.

37.    As a proximate result of the conduct of Clark and Burns and Doe defendants 1 through 15, in particular, by not taking such measures as described above, Plaintiff suffered injuries and damages set forth herein, including great physical pain and emotional distress up to the time of his death, loss of enjoyment of life, loss of life, and loss of earning capacity.

38.    The conduct of Clark, Burns and Doe defendants 1 through 15 was willful, wanton, malicious, and done with reckless disregard for the rights and safety of decedent and therefore warrants the imposition of exemplary and punitive damages as to Defendants.

39.    Defendants Clark and Burns and Doe defendants 1 through 15 are liable to Plaintiff for the decedent's injuries and death, either because they were integral participants in the wrongful actions that led to Luis Romero being placed alone in a cell, unsupervised, with a violent psychopath.

40.    Plaintiff brings this claim both individually and as a successor-in-interest to decedent. Plaintiff seeks survival damages, including for the nature and extent of decedent's injuries, pre-death pain and suffering, emotional distress, and loss of life and enjoyment of life, as well as wrongful death damages under this claim. Plaintiff also seeks attorney's fees.

**THIRD CLAIM FOR RELIEF**

**Supervisory Liability**

**(42 U.S.C. § 1983; 8th and 14th Amendments)**

**(Against Defendants Diaz, Clark, Burns and Does 11-15)**

41.    Plaintiff incorporates by reference each and every allegation contained in the foregoing paragraphs as if re-alleged herein.

42.    Defendants Clark, Burns and Does 11-15 acted in a supervisory capacity under color of law.

43.    The acts and failures of Clark, Burns and Does 11-15 were a cause of the murder of Luis Romero, which deprived Luis Romero of his rights under the Eighth Amendment, as alleged above.

44.    Defendants Clark and Does 11-15 knew of the decision to place Romero in Osuna's cell and approved it, thereby knowingly refusing to terminate acts of his subordinates (Burns and Does) that he knew or reasonably should have known would cause the subordinates to deprive Romero of his eighth amendment rights, and furthermore, Defendant Clark knew that his subordinates (Burns and Does) were engaging in these acts to place Romero in Osuna's cell, and also Defendant Clark knew that his subordinates (Clark and Does) were engaging in acts to place Romero in Osuna's cell and knew or reasonably should have known that the subordinate' conduct would deprive Romero of these rights.

45.    Defendants Burns and Does 11-15, as supervisors for other Does, the correctional officers on shift the night that Romero was murdered, knew that his subordinates did not follow protocol and knew that they did not conduct regular, scheduled safety checks of the inmates' cells during the night, and did not enforce the rules against sheets being hung up inside cells to obstruct viewing into said cells, and therefore Burns knew or reasonably should have known that the subordinates' conduct would deprive Romero of his Eighth Amendment rights.

46.    Defendants Diaz, Clark and Burns and Does 11-15, as supervisors,

1  disregarded the known or obvious consequences that deficiencies in training

2  correctional officers to conduct regularly scheduled night-time cell checks and

3  enforcing the rule against sheets hung up inside a cell to obstruct views into it, and

4  these deficiencies in night-time safety checks would cause their subordinates to violate

5  the Romero's constitutional rights.

6    47.    The conduct of Defendants Clark, Burns and Does 11-15, as described

7  above, were so closely related to the deprivation of Romero's constitutional rights as to

8  be the moving force behind permitting Romero to be placed in a cell with Osuna

9  overnight, and for Romero to be left unsupervised and unprotected for the entire night,

10  which culminated in Romero's murder.

11    48.    Defendants Clark, Burns and Does 11-15 engaged in conduct that showed

12  a reckless or callous indifference to the deprivation by their subordinates of the rights

13  of others.

### FOURTH CLAIM FOR RELIEF

### Loss of Familial Relations

### (42 U.S.C. § 1983; 14th Amendment)

### (Against All Defendants)

18    49.    Plaintiff incorporates by reference each and every allegation contained in

19  the foregoing paragraphs as if re-alleged herein.

20    50.    The individual defendants each violated Plaintiff's constitutional

21  rights by committing the misconduct set forth hereinabove in Claims for Relief One

22  through Three. The defendants' above-alleged misconduct constituted deliberate

23  indifference of Luis Romero's serious safety needs.

24    51.    As a direct and proximate result of the aforementioned actions and

25  omissions, Plaintiff was deprived of her son and suffered the injuries and damages as

26  alleged herein above. The liberty interests Plaintiff as a mother is well-recognized as

27  Fourteenth Amendment substantive due process rights.

28    52.    The conduct of the individual defendants and Doe defendants 1 through

15 was willful, wanton, malicious, and done with reckless disregard for the rights and safety of decedent and therefore warrants the imposition of exemplary and punitive damages as to Defendants.

**FIFTH CLAIM FOR RELIEF**

**Conspiracy to Violate Civil rights**

**42 U.S.C. § 1983**

**(Against Defendants Clark, Burns and Does 1-15)**

53.    Plaintiff incorporates by reference each and every allegation contained in the foregoing paragraphs as if re-alleged herein.

54.    This cause of action arises under United States Code, Title 42, Sections 1983, 1985, and 1988, wherein Plaintiff seeks to redress a deprivation under color of law of a right, privilege or immunity secured by the Eighth and Fourteenth Amendments to the United States Constitution.

55.    Defendants Clark, Burns and Does 1-15, and each of them:

(a) had a joint and simultaneous duty to make sure that Luis Romero was physically safe while incarcerated at Corcoran;

(b) had joint and simultaneous knowledge that Luis Romero was at risk of being harmed by another inmate;

(c) with such duty, knowledge and a meeting of the minds, defendants took action at the same time and in the same place to collaborate to refuse to protect Luis Romero from Jaime Osuna, in particular, by bypassing normal procedure and placing Romero in a cell with Osuna and then not conducting routine night-time safety checks into that cell. Thus, these defendants formed a 'pact of denial' such that not a single one of them did anything to intervene on Mr. Romero's behalf or prevent the harm of which was plainly foreseeable by Osuna's past record of violence;

(d) acted as described herein above, in conspiracy with, and with the agreement permission, ratification, and approval of, each other to violate

1          Mr. Romero's and Plaintiff's civil rights as stated herein.

2          56.     As a direct and proximate result of the aforementioned acts, omissions

3    and deliberate indifference of each of the defendants, Plaintiff and Luis Romero were

4    harmed.

5          57.     Plaintiff brings this claim both individually and as a successor-in-interest

6    to decedent. Plaintiff seeks survival damages, including for the nature and extent of

7    decedent's injuries, pre-death pain and suffering, emotional distress, and loss of life and

8    enjoyment of life, as well as wrongful death damages under this claim. Plaintiff also

9    seeks attorney's fees.

10                          **SIXTH CLAIM FOR RELIEF**

11              **Negligent Supervision, Training and Staffing**

12               **Cal. Civil Code 1714, Cal. Gov. Code § 844.6(d)**

13                **(Against All Individual Defendants and Does 1-15)**

14         58.     Plaintiff incorporates by reference each and every allegation contained in

15   the foregoing paragraphs as if re-alleged herein.

16         59.     Defendants Diaz, Clark and Burns failed to supervise the process by

17   which it was determined that Luis Romero should be placed in a cell with Jaime Osuna,

18   and failed to supervise the process by which routine, nighttime safety checks of Luis

19   Romero's cell were to be conducted. These defendants allowed Romero to be housed

20   with Osuna, failed to impress upon their subordinates of the high-risk placement, and

21   failed to ensure that their subordinates conducted regular safety checks, as normally

22   required. As a result, Romero was forced into a cell with the psychopathic Osuna, left

23   unprotected and unsupervised for an entire night, and was killed as a result.

24         60.     Individual defendants and Does 1-15 herein, agents, servants, and/or

25   employees of County, and within the course and scope of such agency, service, and/or

26   employment, and under color of authority, were negligent in regards to Luis Romero's

27   health, safety and welfare, and breached that duty of care.

28         61.     As a result, Luis Romero was injured and killed. Plaintiff brings this claim

1  both individually and as a successor-in-interest to decedent.

2  **SEVENTH CLAIM FOR RELIEF**

3  **Wrongful Death**

4  **(California Code of Civil Procedure 377.60 et seq.)**

5  **(Against All Individual Defendants and Does 1-15)**

6      62.    Plaintiff incorporates by reference each and every allegation contained in

7  the foregoing paragraphs as if re-alleged herein.

8      63.    The named defendants have committed intentional or negligent

9  misconduct that caused the untimely and wrongful death of decedent Luis Romero and

10  deprived Plaintiff of her son.

11      64.    As a direct and proximate result of this misconduct, Plaintiff suffered the

12  injuries and damages as alleged hereinabove

13      65.    These injuries and damages are compensable under California law.

14  **EIGHTH CLAIM FOR RELIEF**

15  **Failure to Summon Medical Care**

16  **Cal. Gov't. Code § 845.6**

17  **(Against Defendant Does 1-15)**

18      66.    Plaintiff incorporates by reference each and every allegation contained in

19  the foregoing paragraphs as if re-alleged herein.

20      67.    While in the cell he was forced to share with Jaime Osuna, Luis Romero

21  was violently attacked. Defendant Does failed to conduct timely safety checks, failed to

22  order the draped bedsheets obstructing any view into the cell to come down, and failed

23  to be within earshot or eyeshot of Romero and Osuna's cell. In the moments that Mr.

24  Romero was attacked by Osuna, but before Mr. Romero died, Defendant Does failed

25  to provide necessary medical care that would have prevented Mr. Romero's death.

26      68.    Doe defendants, herein agents, servants, and employees of the CDCR,

27  and within the course and scope of that agency, service, and/or employment, and

28  under color of authority, failed to take reasonable action to summons medical care for

1 | Mr. Romero, despite having reason to know that he was in need of immediate medical
2 | care, in violation of Cal. Gov't Code § 845.6.

3 |     69.     As a result, plaintiff's injuries worsened, and without timely medical
4 | treatment, he died.

5 |     70.     As a result, Mr. Romero sustained the injuries and damages alleged herein.

6 | **PRAYER FOR RELIEF**

7 | WHEREFORE, Plaintiff prays for relief as follows against defendants:

8 |     1.     General and Special damages, including both survival and wrongful death
9 | damages, in an amount according to proof;

10 |     2.     Exemplary and punitive damages against each individual and Doe
11 |            defendant, in amounts according to proof;

12 |     4.     Cost of suit, including attorneys' fees, under 42 U.S.C. § 1988; and

13 |     5.     Such other relief as may be warranted or as is just and proper.

**LAW OFFICES OF JUSTIN STERLING**

DATED:  June 8, 2020

By:     _/s/ Justin Sterling_
        Justin Sterling
        Attorney for Plaintiff,
        DORA SOLARES

**LAW OFFICES OF ERIN DARLING**

DATED:  June 8, 2020

By:     _/s/ Erin Darling_
        Erin Darling
        Attorney for Plaintiff,
        DORA SOLARES

20

1

2

**JURY DEMAND**

3

Plaintiff Dora Solares hereby demands trial by jury on all issues so triable.

4

**LAW OFFICES OF JUSTIN STERLING**

5

DATED:  June 8, 2020

6

By:    */s/ Justin Sterling*

7

Justin Sterling
Attorney for Plaintiff,

8

DORA SOLARES

9

10

11

12

**LAW OFFICES OF ERIN DARLING**

13

DATED:  June 8, 2020

14

15

By:    */s/ Erin Darling*

16

Erin Darling
Attorney for Plaintiff,

17

DORA SOLARES

18

19

20

21

22

23

24

25

26

27

28