1  XAVIER BECERRA, State Bar No. 118517
Attorney General of California
2  JON S. ALLIN, State Bar No. 155069
Supervising Deputy Attorney General
3  JEREMY DUGGAN, State Bar No. 229854
Deputy Attorney General
4    1300 I Street, Suite 125
P.O. Box 944255
5    Sacramento, CA 94244-2550
Telephone:  (916) 210-6008
6    Fax:  (916) 324-5205
E-mail:  Jeremy.Duggan@doj.ca.gov
7  *Attorneys for Defendants*
*Diaz, Burns and Clark*

8

9                    IN THE UNITED STATES DISTRICT COURT

10                  FOR THE EASTERN DISTRICT OF CALIFORNIA

11                             FRESNO DIVISION

12

13  **DORA SOLARES,**                        Case No. 1:20-cv-00323-NONE-BAM

14                            Plaintiff,     **DEFENDANTS' MEMORANDUM OF
                                             POINTS AND AUTHORITIES IN
15            v.                             SUPPORT OF MOTION TO DISMISS
                                             PLAINTIFF'S FIRST AMENDED
16                                           COMPLAINT**
    **RALPH DIAZ, et al.,**
17                                           Date:        July 28, 2020
                            Defendants.      Judge:       The Honorable Dale A. Drozd
18                                           Trial Date:  Not set
                                             Action Filed:  3/2/2020
19

20  / / /

21  / / /

22  / / /

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

Introduction .................................................................................................................... 1

Allegations ..................................................................................................................... 1

Standard on Motion to Dismiss .................................................................................... 2

Legal Argument ............................................................................................................. 3

I.    Plaintiff Fails to State a Claim for Conditions of Confinement or Failure to Protect. ................................................................................................................ 3

II.   Plaintiff Fails to State a Claim for Supervisory Liability. .................................... 6

III.  Plaintiff Fails to State a Claim for Loss of Familial Relations. ........................... 8

IV.  Plaintiff Fails to State a Claim for Conspiracy. ................................................... 8

V.   Moving Defendants Are Entitled to Qualified Immunity on Plaintiff's Federal Causes of Action. ..................................................................................... 9

      A.   Legal Standard for Qualified Immunity ..................................................... 9

      B.   Defendants Are Entitled to Qualified Immunity. ...................................... 11

VI.  Plaintiff Fails to State a Claim for Negligent Supervision. ................................ 13

      A.   Defendants Diaz and Clark Are Immune from Plaintiff's Negligent Supervision Claim Under Government Code Section 820.8. ................... 13

      B.   Plaintiff Fails to Plead Facts Showing Negligent Supervision by Defendants Diaz and Clark. ...................................................................... 14

      C.   Plaintiff Fails to Plead Recoverable Damages for the Negligent Supervision Claim. ................................................................................... 15

VII.  Plaintiff Fails to State a Claim for Wrongful Death Against Diaz and Clark. ...... 16

      A.   Defendants Diaz and Clark Are Immune from Plaintiff's Wrongful Death Claims Under Government Code Section 820.8. ........................... 16

      B.   Plaintiff Fails to Plead Facts Showing Defendants Diaz and Clark Are Liable. ................................................................................................. 16

VIII. Plaintiff's Remaining State-Law Claims Should Be Dismissed. ........................ 17

IX.  Plaintiff Fails to Join Decedent's Father, a Necessary Party. ............................ 17

Conclusion ................................................................................................................... 18

i

1

**TABLE OF AUTHORITIES**

2

**Page**

3    CASES

4    *Ashcroft v. al-Kidd*
5        563 U.S. 731 (2011) ....................................................................................9

6    *Ashcroft v. Iqbal*
        556 U.S. 662 (2009) .............................................................................. *passim*
7
    *Bell Atlantic Corp. v. Twombly*
8        550 U.S. 544 (2007) .............................................................................. *passim*

9    *Castro v. Cty. of L.A.*
        833 F.3d 1060 (9th Cir. 2016) ...................................................................12
10
    *City and Cnty. of San Francisco, Calif. v. Sheehan*
11        135 S. Ct. 1765 (2015) ..............................................................................10

12   *Clegg v. Cult Awareness Network*
13        18 F.3d 752 (9th Cir. 1994) .........................................................................3

14   *Clement v. Gomez*
        298 F.3d 898 (9th Cir. 2002) .....................................................................10
15
    *Corales v. Bennett*
16        567 F.3d 554 (9th Cir. 2009) .....................................................................14

17   *Doe v. City of San Diego*
18        35 F. Supp. 3d 1214 (S.D. Cal. 2014) .......................................................6, 7

19   *Dredge Corp. v. Penny*
        338 F.2d 456 (9th Cir. 1964) .....................................................................18
20
    *Eastburn v. Reg'l Fire Prot. Auth.*
21        31 Cal. 4th 1175 (Cal. 2003) .....................................................................14

22   *El-Shaddai v. Zamora*
23        No. CV 13-2327 RGK (JC), 2017 U.S. Dist. LEXIS 122680 ....................5

24   *Erickson v. Pardus*
        551 U.S. 89 (2007) ..................................................................................2, 3
25
    *Farmer v. Brennan*
26        511 U.S. 825 (1994) ....................................................................................4

27   *Ford v. Ramirez-Palmer (Estate of Ford)*
28        301 F.3d 1043 (9th Cir. 2002) ...................................................................12

ii

## TABLE OF AUTHORITIES
### (continued)

**Page**

*Franklin v. Fox*
  312 F.3d 423 (9th Cir. 2002)................................................................9

*G.M. v. Poole*
  No. 2:17-cv-02415-TLN-CKD, 2019 U.S. Dist. LEXIS 156259 ...........................18

*Gausvik v. Perez*
  392 F.3d 1006 (9th Cir. 2004).............................................................8

*Griffin v. Breckenridge*
  403 U.S. 88 (1971).......................................................................8

*Hansen v. Black*
  885 F.2d 642 (9th Cir. 1989).............................................................6

*Harlow v. Fitzgerald*
  457 U.S. 800 (1982).....................................................................10

*Hart v. Parks*
  450 F.3d 1059 (9th Cir. 2006)............................................................9

*Hearns v. Terhune*
  413 F.3d 1036 (9th Cir. 2005).........................................................4, 12

*Henry A. v. Willden*
  678 F.3d 991 (9th Cir. 2012)..........................................................5, 7

*Horton v. City of Santa Maria*
  915 F.3d 592 (9th Cir. 2019)............................................................11

*Ivey v. Board of Regents of the University of Alaska*
  673 F.2d 266 (9th Cir. 1982).............................................................3

*Karim-Panahi v. L.A. Police Dep't*
  839 F.2d 621 (9th Cir. 1988).............................................................9

*Leer v. Murphy*
  844 F.2d 628 (9th Cir. 1988).............................................................4

*Lemire v. Cal. Dep't of Corr. & Rehab.*
  726 F.3d 1062 (9th Cir. 2013)............................................................8

*Mattos v. Agarano*
  661 F.3d 433 (9th Cir. 2011)............................................................10

# TABLE OF AUTHORITIES
### (continued)

**Page**

*May v. Baldwin*
 109 F.3d 557 (9th Cir. 1997)................................................................10

*Moreland v. Las Vegas Metro. Police Dep't*
 159 F.3d 365 (9th Cir. 1998.)............................................................18

*Mullenix v. Luna*
 136 S. Ct. 305 (2015)..........................................................................11

*Navarro v. Block*
 250 F.3d 729 (9th Cir. 2001)................................................................2

*Pearson v. Callahan*
 555 U.S. 223 (2009).........................................................................9, 10

*Quiroz v. Seventh Ave. Ctr.*
 140 Cal. App. 4th 1256 (Cal. App. 2006)............................................16

*Rise v. Oregon*
 59 F.3d 1556 (9th Cir. 1995)................................................................6

*Ruttenberg v. Ruttenberg*
 53 Cal. App. 4th 801 (Cal. App. 1997).................................................18

*Saucier v. Katz*
 533 U.S. 194 (2001)............................................................................10

*Taylor v. Barkes*
 135 S. Ct. 2042 (2015)........................................................................10

*Toler v. Paulson*
 551 F. Supp. 2d 1039 (E.D. Cal. 2008)..................................................8

*Vander Lind v. Superior Court*
 146 Cal.App.3d 358 (1983)................................................................15

*Wardell v. Nollette*
 No. C05–0741RSL, 2006 WL 1075220.................................................6

*Weaver By and Through Weaver v. State*
 63 Cal. App. 4th 188 (Cal. App. 1998)...........................................13, 16

*Wright v. State of Calif.*
 122 Cal. App. 4th 659 (Cal. App. 2004).............................................13

iv

# TABLE OF AUTHORITIES
### (continued)

**Page**

*Ziglar v. Abbassi*
  137 S. Ct. 1843 (2017) ...................................................................................9, 10, 11

**STATUTES**

28 U.S.C.
  § 1367(c)(3) ........................................................................................................17

42 U.S.C.
  § 1983 ..........................................................................................................*passim*
  § 1985 ...............................................................................................................8, 9
  § 1988 ..................................................................................................................8

California Civil Code
  § 1714 ............................................................................................................13, 14

California Code of Civil Procedure
  § 377.30 et seq. ..................................................................................................15
  § 377.34 ..............................................................................................................15
  § 377.60 .........................................................................................................15, 16
  § 377.60(a) ..........................................................................................................17

California Government Code
  § 810 ...................................................................................................................13
  § 820.8 ....................................................................................................13, 14, 16
  § 844.6 .................................................................................................................13
  § 844.6(d) ............................................................................................................13

California Probate Code
  § 6402(b) ........................................................................................................17, 18

**CONSTITUTIONAL PROVISIONS**

United States Constitution
  Eighth Amendment ....................................................................................3, 6, 7, 8
  Fourteenth Amendment ........................................................................................8

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

**COURT RULES**

Federal Rule of Civil Procedure

§ 4(f)....................................................................................................................18
§ 8...................................................................................................................3, 14
§ 8(a)(2)................................................................................................................2
§ 12(b)(6) .........................................................................................................2, 3
§ 12(b)(7)............................................................................................................18
§ 19.....................................................................................................................17
§ 19(a)(1)(B) ......................................................................................................17

**INTRODUCTION**

Plaintiff Dora Solares asserts that R. Diaz, the Secretary of the California Department of Corrections and Rehabilitation (CDCR), K. Clark, the warden at California State Prison, Corcoran (Corcoran), and J. Burns, a sergeant at California State Prison, Corcoran, are liable for the death of her son, Luis Romero.

The federal claims against all Defendants should be dismissed for failure to state facts sufficient to support a claim. The first amended complaint (FAC) consists mainly of formulaic recitations of the elements of each cause of action, and does not plead facts showing that any Defendant knew of, and disregarded a serious risk to Decedent. Further, Defendants are entitled to qualified immunity as to Plaintiff's federal claims.

The FAC also fails to plead facts showing state-law liability for Defendants Clark and Diaz, who are alleged to have supervised Sergeant Burns and others. Diaz and Clark are liable only for their own conduct, and are statutorily immune from liability for injuries caused by others. The FAC does not plead any facts showing their conduct caused Decedent's injuries, and therefore fails to state a state-law claim. Plaintiff also fails to plead any recoverable damages for the state-law negligent-supervision claim.

Moreover, because the federal claims should be dismissed, the Court should decline to exercise supplemental jurisdiction over remaining state-law claims, and instead dismiss the entire matter. Lastly, Plaintiff has not joined a necessary party for these claims, namely Decedent's father. The complaint should be dismissed in its entirety.

**ALLEGATIONS**

Plaintiff Solares alleges as follows:

Plaintiff Solares is the mother of Decedent Luis Romero. (Pl.'s First Am. Compl. ¶ 4 (FAC), ECF No. 15.) On or about March 7, 2019, Decedent was transferred from Mule Creek State Prison to California State Prison, Corcoran. (FAC ¶ 13.) Corcoran officials, including Defendant Burns, did not follow the usual protocol before housing inmates together, and housed Romero in a cell with inmate Jaime Osuna. (*Id.*) Osuna had been convicted of a 2011 murder, and CDCR possessed documents showing he was extremely violent. (FAC ¶ 15.) Osuna had also

1

1    been charged with attempted murder based on an incident that occurred at Kern County Jail while

2    Osuna was awaiting trial in 2011.  (FAC ¶ 15.)  In 2012, Osuna had found his way into another

3    inmate's cell and stabbed that inmate.  (FAC ¶ 16.)  Plaintiff believes Osuna had never previously

4    been assigned a cellmate since his CDCR commitment in 2012.  (FAC ¶ 15.)

5         After housing Osuna and Romero together, Corcoran staff did not conduct hourly safety

6    checks on the cell and failed to remove a bedsheet covering the cell window.  (FAC ¶ 20.)  On the

7    evening of March 8, 2019, Osuna murdered Romero and dismembered Romero's body.  (FAC ¶

8    21.)  Staff discovered the murder in the early morning of March 9, 2019.  (FAC ¶ 1.)

9         Plaintiff claims that, as the warden at Corcoran, Clark was responsible for ensuring that

10   proper procedures were followed, but he failed to properly supervise his subordinates, and

11   approved the decision to house Romero and Osuna together.  (FAC ¶ 19.)  Further, according to

12   Plaintiff, Defendants Clark and Diaz failed to establish a procedure to document and track

13   inmates' agreements to be housed together, and failed to properly supervise subordinates with

14   regard to inmates' sharing cells.  (FAC ¶ 19.)

15        Plaintiff asserts seven causes of action against Defendants Diaz, Clark, and Burns, for: (1)

16   Conditions of Confinement; (2) Failure to Protect Inmate; (3) Supervisory Liability; (4) Loss of

17   Familial Relations; (5) Conspiracy to Violate Civil Rights; (6) Negligent Supervision; and

18   (7) Wrongful Death.  (FAC 10-16.)  Plaintiff further asserts an eighth case of action for failure to

19   summon medical care against unidentified Doe defendants only.  (FAC 19-20.)

20                          **STANDARD ON MOTION TO DISMISS**

21        A motion to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) tests the

22   sufficiency of the complaint.  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  A complaint

23   must set forth "a short and plain statement of the claim showing that the pleader is entitled to

24   relief."  Fed. R. Civ. P. 8(a)(2).  "Specific facts are not necessary; the statement need only 'give

25   the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"

26   *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S.

27   544, 555 (2007)).

28

1    Dismissal is proper where the complaint does not contain enough factual allegations, when

2    taken as true, to establish "plausible," as opposed to merely "possible" or "speculative,"

3    entitlement to relief. *Bell Atlantic Corp.*, 550 U.S. at 555. Although detailed factual allegations

4    are not required, Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me

5    accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A pleading that offers 'labels and

6    conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does

7    a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.*

8    (quoting *Bell Atlantic Corp.*, 550 U.S. at 555, 557).

9    In evaluating a motion to dismiss under Rule 12(b)(6), a court must assume the truth of the

10    facts presented and construe all inferences from them in the light most favorable to the

11    nonmoving party. *Erickson*, 551 U.S. at 94. However, courts should not "supply essential

12    elements of the claim that were not initially pled." *Ivey v. Board of Regents of the University of*

13    *Alaska*, 673 F.2d 266, 268 (9th Cir. 1982). Additionally, courts "are not required to accept legal

14    conclusions cast in the form of factual allegations if those conclusions cannot reasonably be

15    drawn from the facts alleged." *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir.

16    1994).

17    **LEGAL ARGUMENT**

18    I.    **PLAINTIFF FAILS TO STATE A CLAIM FOR CONDITIONS OF CONFINEMENT OR
         FAILURE TO PROTECT.**

19

20    Plaintiff's first and second causes of action are for "Conditions of Confinement" and

21    "Failure to Protect Inmate" under the Eighth Amendment against Defendants Clark, Burns and

22    Does 1-15. (FAC at 12-13.) The two causes of action are redundant, as both allege that

23    Defendants failed to protect Decedent from attack by another inmate under the Eighth

24    Amendment. *Compare* FAC ¶ 31 (asserting that Defendants were "deliberately indifferent to a

25    substantial risk of serious harm to Decedent), *with* FAC ¶ 36 (asserting that Defendants' failure to

26    "abate the substantial risk of serious harm" to Decedent "constituted deliberate indifference.").

27

28

3

1    To establish a constitutional violation based on a failure to protect an inmate from attacks

2    by another inmate, a plaintiff must show: (1) that officials exposed Decedent to an objectively

3    substantial risk of serious harm; and (2) that the officials were deliberately indifferent to that risk

4    — that is, that they knew of the substantial risk, but disregarded it.  *See Hearns v. Terhune*, 413

5    F.3d 1036, 1040 (9th Cir. 2005).  "[T]he official must both be aware of facts from which the

6    inference could be drawn that a substantial risk of serious harm exists, and he must also draw the

7    inference."  *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).  Further, liability under § 1983

8    requires a showing that a defendant's personal involvement or failure to perform legally required

9    duties caused the plaintiff's constitutionally protected rights to be violated.  *Leer v. Murphy*, 844

10    F.2d 628, 633 (9th Cir. 1988).

11    Here, Plaintiff pleads no facts showing that Defendants Burns and Clark knew of, and

12    disregarded, a substantial risk of serious harm to Decedent.  Against Burns, Plaintiffs first assert

13    that he "chose not to follow [the] standardized administrative committee process" before housing

14    Osuna and Decedent together.  (FAC ¶ 13.)  According to Plaintiff, the usual protocol was to

15    determine whether two inmates are an appropriate fit as cellmates, then have each inmate sign

16    forms agreeing to be celled together.  (FAC ¶ 14.)  The assertion that Burns ignored that protocol

17    does not show that Burns knew of a substantial risk of serious harm to Decedent, and disregarded

18    it.  Rather it shows only that Burns did not follow the usual protocol.  Moreover, the allegations

19    do not show that there would have been a different result if the protocol were followed.

20    Accordingly, the pleading does not show the required element of causation.  *See Leer*, 844 F.2d at

21    633.

22    Plaintiff also alleges that Defendants "were on notice that Jaime Osuna posed a threat to

23    other inmates and should not share a cell with anyone."  (FAC ¶ 15.)  Without factual support,

24    those generic allegations are nothing more than a "formulaic recitation of the elements" of the

25    cause of action.  *See Twombly*, 550 U.S. at 555.  That type of "naked assertion" devoid of "further

26    factual enhancement" is insufficient to state a claim in federal court.  *Id.* at 557.  While Plaintiff

27    alleges that Osuna was dangerous, and that non-defendant "CDCR" was in possession of

28

4

1  documents showing the danger (FAC ¶ 15), the complaint does not plead facts showing that

2  Burns was aware of any of the documents or incidents cited.  (FAC ¶¶ 15-16.)

3     Next, Plaintiff asserts that Burns is "one of the leaders of a gang of correctional officers at

4  Corcoran."  (FAC ¶ 18.)  Those allegations have nothing to do with Decedent, and do not show

5  that Burns knew of, and disregarded a substantial risk of serious harm to Decedent's safety.

6     Plaintiff then asserts that Burns "affirmatively worked to ensure that correctional officers

7  did not conduct any night-time safety checks" on the evening of March 8, 2019.  (FAC ¶ 21.)

8  According to Plaintiff, safety checks are "supposed to occur at least every hour."  (*Id.*)  Again, the

9  assertion does not show that Burns knew of, and disregarded a substantial risk of serious harm to

10 Decedent.  Rather it shows only that Burns did not follow the usual protocol.

11    As to Defendant Clark, the FAC alleges that he "approved" the decision to house Osuna

12 and Decedent together.  (FAC ¶ 19.)  The FAC does not allege that Clark was involved in the

13 decision regarding cell safety checks.  (FAC ¶ 21.)  As with Defendant Burns, the FAC does not

14 plead facts showing that Clark knew of, and disregarded a substantial risk of serious harm to

15 Decedent.  The allegation that Clark was "on notice that Jaime Osuna posed a threat to other

16 inmates and should not share a cell with anyone" (FAC ¶ 15) is a "formulaic recitation of the

17 elements" of the cause of action insufficient to state a claim.  *See Twombly*, 550 U.S. at 555.  The

18 allegation that Clark "approved" the housing decision does not show that Clark knew the decision

19 would put Decedent at a substantial risk of serious harm.  (*See* FAC ¶ 19.)

20    To state a viable § 1983 claim, Plaintiff must, "at a minimum, allege facts which

21 demonstrate the <u>specific</u> acts each <u>individual</u> defendant did and how that individual's alleged

22 misconduct <u>specifically</u> violated plaintiff's constitutional rights."  *El-Shaddai v. Zamora*, No. CV

23 13-2327 RGK (JC), 2017 U.S. Dist. LEXIS 122680, at *19 (C.D. Cal. Aug. 3, 2017) (emphasis in

24 original) (citing *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002)); *see also Henry A. v.*

25 *Willden*, 678 F.3d 991, 1004 (9th Cir. 2012) (rejecting allegations referring only to "Defendants"

26 as insufficiently specific).  There are no facts alleged showing that Burns or Clark knew that

27 Romero was at substantial risk of serious harm, and that they disregarded that risk.  (FAC ¶¶ 1-

28 23.)  Plaintiff's generalized and conclusory allegations that Defendants "were on notice" that

5

1   Osuna should not be double-celled are insufficient to state a cognizable claim for "conditions of

2   confinement" or failure to protect, and Plaintiff's Eighth Amendment claims should be dismissed.

3   **II.    PLAINTIFF FAILS TO STATE A CLAIM FOR SUPERVISORY LIABILITY.**

4       Plaintiff's third cause of action is for supervisory liability against Diaz, Clark, Burns, and

5   Does 11-15.  But under § 1983, "[g]overnment officials may not be held liable for the

6   unconstitutional conduct of their subordinates under a theory of *respondeat superior*."  *Ashcroft v.*

7   *Iqbal*, 556 U.S. 662, 676 (2009).  The Supreme Court has rejected liability on the part of

8   supervisors for "knowledge and acquiescence" in subordinates' wrongful discriminatory acts.  *Id.*

9   at 677 ("[R]espondent believes a supervisor's mere knowledge of his subordinate's

10  discriminatory purpose amounts to the supervisor's violating the Constitution.  We reject this

11  argument.")  Supervisors may be liable for playing "an affirmative part in the alleged deprivation

12  of constitutional rights."  *Rise v. Oregon*, 59 F.3d 1556, 1563 (9th Cir. 1995) (internal quotation

13  marks omitted).  A defendant may be held liable as a supervisor under § 1983 "if there exists

14  either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient

15  causal connection between the supervisor's wrongful conduct and the constitutional violation."

16  *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989).  "The cases in which supervisors have been

17  held liable under a failure to train/supervise theory involve conscious choices made with full

18  knowledge that a problem existed." *Wardell v. Nollette*, No. C05–0741RSL, 2006 WL 1075220,

19  at *3 (W.D. Wash. Apr. 20, 2006).  "[A] supervisor must have knowledge of pervasive and

20  widespread conduct posing an unreasonable risk of constitutional injury before supervisory

21  liability can attach."  *Doe v. City of San Diego*, 35 F. Supp. 3d 1214, 1228-29 (S.D. Cal. 2014).

22      Here, Plaintiff asserts that Defendant Burns "knew that his subordinates did not follow

23  protocol" with regard to the call safety checks.  (FAC ¶ 45.)  As explained above, the alleged

24  failure to conduct safety checks does not show that Burns knew of a substantial risk of serious

25  harm to Decedent, and disregarded that risk.  (*See supra* § I.)  The additional assertion that Burns

26  knew that that his subordinates were not performing cell checks does not change the equation.

27  No facts are alleged showing that Burns knew of an unreasonable risk of constitutional injury,

28

6

1    and disregarded that risk.  Accordingly, the supervisory liability claims against Burns should be

2    dismissed.

3        As to Defendant Clark, the FAC makes the same allegations regarding supervisory liability

4    as for the Eighth Amendment claim, namely that Defendant Clark "approved" the decision to

5    house Osuna and Decedent together "thereby knowingly refusing to terminate acts of his

6    subordinates (Burns and unidentified Does) that he knew or reasonably should have known would

7    cause the subordinates to deprive Romero of his eighth amendment rights."  (FAC ¶ 44.)  Again,

8    those assertions are simply conclusory allegations reciting the elements of the claim, and are not

9    sufficient to defeat a motion to dismiss.  *See Twombly*, 550 U.S. at 555.  The allegations do not

10   show that Clark knew of, and disregarded a serious risk to Decedent.  Moreover, the FAC pleads

11   only a single incident, and therefore fails to plead facts showing that Clark had the requisite

12   knowledge for supervisory liability.  *See City of San Diego*, 35 F. Supp. 3d at 1228-29.

13       The FAC further asserts that Defendants Diaz, Clark, and Burns "disregarded the known or

14   obvious consequences that deficiencies in training correctional officers to conduct regularly-

15   scheduled night-time cell checks . . . would cause their subordinates to violate [Decedent's]

16   constitutional rights."  (FAC ¶ 46.)  But the FAC pleads no facts regarding the supposedly faulty

17   training, Defendants' knowledge of the supposedly faulty training, and the impact of the

18   supposedly faulty training on officers' conduct.  (*See* FAC ¶¶ 1-23.)  Indeed, the FAC does not

19   plead that any Defendant knew before this incident that their subordinates were not performing

20   cell checks, or that there was a risk of constitutional injury from their subordinates' conduct.  (*Id.*)

21   Plaintiff therefore fails to state a claim for supervisory liability.  *See City of San Diego*, 35 F.

22   Supp. 3d at 1229 ("[O]rdinarily, the plaintiff cannot satisfy his burden of proof by pointing to a

23   single incident or isolated incidents."  (internal quotation marks omitted)); *see also Henry A. v.*

24   *Willden*, 678 F.3d 991, 1004 (9th Cir. 2012) (affirming dismissal of supervisory claims that did

25   "not allege that [supervisors] had any personal knowledge of the specific constitutional violations

26   that led to Plaintiffs' injuries, or that they had any direct responsibility to train or supervise the

27   [subordinates accused of direct constitutional violations]").

28

1    Plaintiff fails to plead facts showing that Defendants' supervisory conduct violated

2    Decedent's constitutional rights.  The claims for supervisory liability should be dismissed.

3    **III.    PLAINTIFF FAILS TO STATE A CLAIM FOR LOSS OF FAMILIAL RELATIONS.**

4        Plaintiff's fourth cause of action is for loss of familial relations against all Defendants.

5    (FAC ¶¶ 49-52.)  Parents and children may assert a Fourteenth Amendment substantive due

6    process claim if they are deprived of a liberty interest in the companionship and society of their

7    child or parent through official conduct.  *Lemire v. Cal. Dep't of Corr. & Rehab.*, 726 F.3d 1062,

8    1075 (9th Cir. 2013).  Although a Fourteenth Amendment substantive due process claim is

9    technically distinct from an Eighth Amendment claim, where the claim is predicated upon other

10   conduct that is alleged to be unconstitutional, a finding that the other conduct was constitutional

11   generally will preclude recovery for interference with familial relationship.  *See, e.g., Gausvik v.*

12   *Perez*, 392 F.3d 1006, 1008 (9th Cir. 2004).  Here, Plaintiffs' Fourteenth Amendment claim is

13   based on the assertions of constitutional violations in the first, second, and third causes of action.

14   (FAC ¶ 50.)  Accordingly, for the reasons stated above, the fourth cause of action should be

15   dismissed as well.  *See supra* §§ I-II.

16   **IV.    PLAINTIFF FAILS TO STATE A CLAIM FOR CONSPIRACY.**

17       Plaintiff's fifth cause of action asserts a claim for conspiracy to violate civil rights under 42

18   U.S.C. §§ 1983, 1985, and 1988.  (FAC ¶ 54.)

19       Section 1988 addresses the applicability of common law, as well as availability of

20   attorneys' fees and expert fees, in certain civil actions.  It does not create a separate cause of

21   action.  (*See* 42 U.S.C. § 1988.)  Accordingly, Plaintiff's conspiracy claims based on §1988

22   should be dismissed.

23       A claim based on § 1985(3) must allege that defendants acted from "racial, or perhaps

24   otherwise class-based, invidiously discriminatory animus" in conspiring to deprive plaintiff of

25   equal protection of the laws.  *Griffin v. Breckenridge*, 403 U.S. 88, 102-03 (1971); *see also Toler*

26   *v. Paulson*, 551 F. Supp. 2d 1039, 1048 (E.D. Cal. 2008).  Plaintiff alleges no such animus, and

27   does not allege any equal protection violation.  Accordingly, Plaintiff's conspiracy claims based

28   on § 1985 should be dismissed.

8

Moreover, "[a] claim under [§ 1985] must allege facts to support the allegation that defendants conspired together. A mere allegation of conspiracy without factual specificity is insufficient." *Karim-Panahi v. L.A. Police Dep't*, 839 F.2d 621, 626 (9th Cir. 1988). Here, Plaintiff's assertions with regard to conspiracy generically recite the elements of the claim as to all Defendants, without pleading any facts as to the alleged conspiracy. (FAC ¶ 55.) Accordingly, even if a § 1985 conspiracy claim were appropriate here, Plaintiff has not pled sufficient facts to state a claim for conspiracy. *See Iqbal*, 556 U.S. at 678 (a pleading that offers only a "formulaic recitation of the elements" of a cause of action fails to state a claim).

In order to allege a conspiracy under § 1983, a plaintiff must plead facts showing "an agreement or 'meeting of the minds' to violate constitutional rights." *Franklin v. Fox*, 312 F.3d 423, 441 (9th Cir. 2002). The complaint pleads no facts showing such an agreement. Plaintiff uses the term "meeting of the minds" but only as a generic recitation of the elements of the claim. (FAC ¶ 55.) Such a "naked assertion" does not meet the requirements for proper pleading. *See Iqbal,* 556 U.S. at 678. Accordingly Plaintiff fails to plead facts sufficient to state a conspiracy claim, and the conspiracy claim should be dismissed.

Further, a conspiracy claim under § 1983 claim requires "an actual deprivation of constitutional rights." *Hart v. Parks*, 450 F.3d 1059, 1071 (9th Cir. 2006). As set forth above, Plaintiff has not properly pled a constitutional violation. (*See supra* §§ I-III.) Plaintiff's conspiracy claim should be dismissed for that reason as well.

## V.    MOVING DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY ON PLAINTIFF'S FEDERAL CAUSES OF ACTION.

### A.    Legal Standard for Qualified Immunity

Qualified immunity shields government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). The doctrine protects "all but the plainly incompetent or those who knowingly violate the law." *Ziglar v. Abbassi*, 137 S. Ct. 1843, 1867 (2017) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)); *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) (same). The rule permits officials to

9

1    undertake their responsibilities without fear that they will be held liable for damages for actions

2    that appear reasonable at the time but are later held to violate statutory or constitutional rights.

3    *Harlow v. Fitzgerald*, 457 U.S. 800, 819 (1982); *Mattos v. Agarano*, 661 F.3d 433, 440 (9th Cir.

4    2011) (en banc).  Thus, qualified immunity prohibits second-guessing prison officials, even where

5    it is plausible that the situation could have been handled differently.  *See Ziglar*, 117 S. Ct. at

6    1866 (stating that qualified immunity gives officials "the breathing room to make reasonable but

7    mistaken judgments"); *City and Cnty. of San Francisco, Calif. v. Sheehan*, 135 S. Ct. 1765, 1777

8    (2015) (quoting *Roy v. Inhabitants of City of Lewiston*, 42 F.3d 691, 695 (1st Cir. 1994)).

9    Qualified immunity is also intended to free government officials from the concerns of litigation,

10   including "avoidance of disruptive discovery."  *Iqbal*, 556 U.S. at 685.  Because the "driving

11   force" behind qualified immunity is a desire to ensure that insubstantial claims against

12   government officials will be resolved before discovery, the Supreme Court has stressed the

13   importance of resolving immunity questions at the earliest possible stage in litigation.  *Pearson*,

14   555 U.S. at 231-32.

15       Courts analyze qualified immunity under a two-prong test: (1) whether the alleged facts

16   constitute a constitutional violation and (2), if so, whether the constitutional right at issue was

17   clearly established at the time of the violation.  *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  Courts

18   may decide which of the two prongs to analyze first based on the circumstances of the case.

19   *Pearson*, 555 U.S. at 236. "The proper inquiry focuses on whether 'it would be clear to a

20   reasonable officer that [the defendant's] conduct was unlawful in the situation confronted' . . . or

21   whether the state of the law [at the relevant time] gave 'fair warning' to the officials that their

22   conduct was unconstitutional.'"  *Clement v. Gomez*, 298 F.3d 898, 906 (9th Cir. 2002) (citing

23   *Hope v. Pelzer*, 536 U.S. 730, 731 (2002)).  To overcome qualified immunity, "existing precedent

24   must have placed the statutory or constitutional question beyond debate." *Taylor v. Barkes*, 135

25   S. Ct. 2042, 2044 (2015) (per curiam) (quoting *al-Kidd*, 563 U.S. at 741).  Plaintiff bears the

26   burden of demonstrating that the constitutional right in question was clearly established at the

27   time officials acted.  *May v. Baldwin*, 109 F.3d 557, 561 (9th Cir. 1997).

28

10

Defs.' Mem. of P. & A. in Support of Mot. to Dismiss (1:20-cv-00323-NONE-BAM)

1  The right at issue must be framed specifically to appropriately assess whether it was clearly

2  established that the alleged conduct was unconstitutional. *Mullenix v. Luna*, 136 S. Ct. 305, 308

3  (2015). The focus of the inquiry is "whether the violative nature of *particular* conduct is clearly

4  established," and whether the unlawfulness of the official's conduct was apparent. *Ziglar*, 137 S.

5  Ct. at 1866 (citing *Mullenix* and *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)) (emphasis in

6  original).

7  **B.    Defendants Are Entitled to Qualified Immunity.**

8  Qualified immunity applies unless, given the available case law at the time, and knowing

9  what defendant knew, every reasonable officer would have understood that the alleged act or

10 failure to act was unconstitutional. *Horton v. City of Santa Maria*, 915 F.3d 592, 600 (9th Cir.

11 2019).

12 Here, Plaintiff alleges Defendant Diaz was the Secretary of CDCR, but does not allege facts

13 showing that he knew that Romero and Osuna were going to be housed together, or that he knew

14 of any danger to Romero. (FAC ¶¶ 1-23.) Accordingly, as to Diaz, to avoid qualified immunity,

15 Plaintiff must show that it was clearly established that prison officials with no knowledge of an

16 inmate housing situation are constitutionally required to act to prevent the risk caused by two

17 particular inmates being housed together.

18 No case law clearly established such an obligation. Indeed, as stated above, it was clearly

19 established that officials are not responsible for the acts of their subordinates of which they have

20 no knowledge. *See Iqbal*, 556 U.S. at 676. Diaz is entitled to qualified immunity as to Plaintiff's

21 claims.

22 As to Defendant Burns, Plaintiff asserts he "ignored the usual protocol" to determine to

23 determine whether two inmates are an appropriate fit as cellmates, then have each inmate sign

24 forms agreeing to be celled together. (FAC ¶¶ 13-14.) And as to Defendant Clark, the FAC

25 alleges he approved that decision. But the complaint does not allege facts showing that either

26 Burns or Clark knew of a danger to Romero. (*See* FAC ¶¶ 1-23.)

27 Therefore, to avoid qualified immunity as to Burns and Clark, Plaintiff must show that it

28 was clearly established that a prison employee violates an inmate's constitutional rights when he

1    places that inmate in a cell with another inmate without using the usual protocol that Plaintiff

2    alleges, despite being unaware of any danger.

3        Again, no case law clearly establishes that conduct is a constitutional violation.  As stated

4    above, for a deliberate indifference claim, Plaintiff must meet that subjective requirement that

5    Defendant knew of, and disregarded, a serious risk of substantial harm.  *Hearns*, 413 F.3d at

6    1040.  In *Estate of Ford,* the Ninth circuit found an officer accused of housing two inmates

7    together without following the proper protocol was entitled to qualified immunity because a

8    reasonable officer "would not necessarily have suspected that celling [the inmates together] posed

9    an excessive or intolerable risk of serious injury."  *Ford v. Ramirez-Palmer (Estate of Ford)*, 301

10   F.3d 1043, 1052 (9th Cir. 2002).  Specifically, the Ninth Circuit found "it would not be clear to a

11   reasonable prison official when the risk of harm from double-celling psychiatric inmates with one

12   another changes from being *a* risk of *some* harm to a *substantial* risk of *serious* harm."  *Id.* at

13   1051.  Even if the allegations in the complaint were true, it would not have been clear to every

14   reasonable prison warden and correctional sergeant that they were violating an inmate's

15   constitutional rights by not following the housing protocol, because they were not aware of a

16   substantial risk of serious harm.  Accordingly, Burns and Clark are entitled to qualified immunity

17   to Plaintiff's claims.

18       As to Burns, the FAC also alleges that he "affirmatively worked" to ensure that nighttime

19   safety checks were not conducted on Romero's cell.  (FAC ¶ 21.)  So, to avoid qualified

20   immunity as to those allegations, Plaintiff must show that it was clearly established that a prison

21   employee violates an inmate's constitutional rights when he does not conduct regular nighttime

22   cell checks, despite being unaware of any danger.  No case clearly establishes such a right.

23   Indeed, the Ninth Circuit in *Castro v. Cty. of L.A.*, 833 F.3d 1060, 1076 (9th Cir. 2016) expressly

24   stated that a faulty cell check practice is insufficient to show a constitutional violation.  Rather,

25   "[a] plaintiff must also demonstrate that the custom or policy was adhered to with deliberate

26   indifference."  *Id.* (internal quotation marks omitted).  That is, there must be a showing that

27   Defendant knew of, and disregarded a serious risk of substantial harm.  Here, no facts are pled

28   showing Burns had such knowledge, and accordingly Burns is entitled to qualified immunity.

12

Defs.' Mem. of P. & A. in Support of Mot. to Dismiss (1:20-cv-00323-NONE-BAM)

1  **VI.    PLAINTIFF FAILS TO STATE A CLAIM FOR NEGLIGENT SUPERVISION.**

2      Plaintiff's sixth cause of action is for "Negligent Supervision, Training and Staffing" under

3  Civil Code section 1714 and Government Code section 844.6(d).  (FAC 18.)

4      Section 1714 is a general tort provision stating that "[e]veryone is responsible, not only for

5  the result of his or her willful acts, but also for an injury occasioned to another by his or her want

6  of ordinary care or skill in the management of his or her property or person."  (Cal. Civ. Code §

7  1714.)  Government code section 844.6 states that "[n]othing in this section exonerates a public

8  employee from liability for injury caused by his negligent or wrongful omission."  (Cal. Gov't

9  Code § 844.6.)  The conduct Plaintiff asserts for this cause of action is that Defendants "failed to

10  supervise" the nighttime safety check process, and "failed to impress upon their subordinates of

11  the high-risk placement [sic]," and "failed to ensure that their subordinates conducted regular

12  safety checks."  (FAC ¶ 59.)

13      **A.    Defendants Diaz and Clark Are Immune from Plaintiff's Negligent**
        **Supervision Claim Under Government Code Section 820.8.**

14

15      First, Defendants Diaz and Clark are immune from these failure-to-supervise claims under

16  Government Code section 820.8.  Under California law, state employees are not liable for injuries

17  caused by an act or omission of a third party, but only for their own actions.  (Cal. Gov't Code §

18  820.8.)  The immunity provisions of the California Tort Claims Act (Cal. Gov't Code § 810 et

19  seq.) generally prevail over liabilities established by other statutes.  *Wright v. State of Calif.,* 122

20  Cal. App. 4th 659, 671 (Cal. App. 2004).  Thus, direct tort liability for a public employee may not

21  be premised on acts of subordinates or of other government employees.  *Weaver By and Through*

22  *Weaver v. State,* 63 Cal. App. 4th 188, 202 (Cal. App. 1998) (determining that a supervisor was

23  immune under section 820.8 for the actions of his subordinates).

24      Here, Plaintiff asks the Court to find Defendants Diaz and Clark liable based on the actions

25  of others in allegedly failing to follow rules and procedures in placing Osuna and Romero

26  together and conducting safety checks.  (FAC ¶¶ 19-21.)  The FAC does not allege any actions by

27  Clark and Diaz that caused the injuries alleged.  (*See id.*)  Instead the injuries were allegedly

28

13

Defs.' Mem. of P. & A. in Support of Mot. to Dismiss (1:20-cv-00323-NONE-BAM)

1  caused by acts of their subordinates and inmate Osuna.  (*See* FAC ¶ 59.)  Defendants are immune

2  from those allegations under section 820.8.

3      Plaintiff may argue that Government Code section 820.8 provides immunity "[e]xcept as

4  otherwise provided by statute," and that therefore Defendants can be liable under Civil Code

5  section 1714.  However, "direct tort liability of public entities must be based on a specific statute

6  declaring them to be liable, or at least creating some specific duty of care, and not on the general

7  tort provisions of Civil Code section 1714."  *Eastburn v. Reg'l Fire Prot. Auth.*, 31 Cal. 4th 1175,

8  1183 (Cal. 2003).  Section 820.8 immunity applies, and Defendants are immune from Plaintiff's

9  claims for negligent supervision.

10      **B.  Plaintiff Fails to Plead Facts Showing Negligent Supervision by Defendants
Diaz and Clark.**

12      The interpretation of Federal Rule of Civil Procedure 8 in *Twombly* governs all civil

13  actions, including claims based on state law, in federal court.  *Iqbal*, 556 U.S. at 684.  To state a

14  claim for negligent supervision, Plaintiff must plead *facts*, not merely conclusions, showing

15  Defendants were negligent.  *Id.* at 678.

16      Under California law, negligence is stated where a defendant is obligated to conform to a

17  certain standard of conduct to protect others from unreasonable risks (duty); defendant fails to

18  conform to that standard (breach of duty); there is a reasonably close connection between the

19  defendant's conduct and the resulting injuries (proximate cause); and plaintiff suffers actual loss

20  (damages).  *Corales v. Bennett*, 567 F.3d 554, 572 (9th Cir. 2009) (quoting *McGarry v. Sax*, 158

21  Cal. App. 4th 983, 994 (Cal. App. 2008)).

22      As to Defendant Clark, the FAC asserts that he approved his subordinates' procedurally

23  improper decision to place Romero and Osuna together despite being "put on notice" that Osuna

24  was violent.  (FAC ¶ 19.)  But the FAC does not plead facts showing that Clark knew procedures

25  were not followed in this case, or that there was any reason for him to suspect that procedures

26  were not being followed.  (*See* FAC ¶¶ 1-23.)  Instead the FAC pleads only that Clark "rubber-

27  stamped" the decision to house Romero and Osuna together.  (FAC ¶ 19.)  That is insufficient to

28  show that Clark was negligent, because Clark had a right to expect that his subordinates would act

14

1    with reasonable care, and would follow the procedure. (*See* CACI No. 411.) The negligent

2    supervision claims against Clark should be dismissed.

3        The FAC further asserts that Defendants Diaz and Clark "disregarded the known or obvious

4    consequences that deficiencies in training correctional officers to conduct regularly-scheduled

5    night-time cell checks and enforcing the rule against sheets hung up inside a cell to obstruct views

6    into it, and these deficiencies in night-time safety checks would cause their subordinates to violate

7    the Romero's constitutional rights." (FAC ¶ 46.) But no facts are pled regarding the supposed

8    training deficiency, or Diaz and Clark's knowledge of either the deficiency or any consequences

9    of that deficiency. (*See* FAC ¶¶ 1-23.) Indeed, the FAC simply concludes that there were

10    "deficiencies in training" without providing any facts as to Defendants' knowledge of the

11    situation, or their supervisory conduct. (*See id.*) Such conclusory allegations are insufficient to

12    state a claim. *See Twombly*, 550 U.S. at 555.

13        **C.    Plaintiff Fails to Plead Recoverable Damages for the Negligent Supervision**

14        **Claim.**

15        The wrongful death action under California Code of Civil Procedure section 377.60

16    completely occupies the field for an action brought by the heirs for their damages to the exclusion

17    of any other action or remedy. *See Vander Lind v. Superior Court*, 146 Cal.App.3d 358, 364

18    (1983). Accordingly, the negligent supervision claims can be brought only on Decedent's behalf

19    in a representative capacity by Decedent's successor in interest. *See* Cal. Code Civ. Proc. §

20    377.30 et seq.

21        California Code of Civil Procedure Section 377.34 limits damages for a successor in

22    interest to "the loss or damage that the decedent sustained or incurred before death," and

23    specifically precludes recovery for "damages for pain, suffering, or disfigurement." Here,

24    Plaintiff does not seek any damages recoverable on the negligent supervision claim, instead

25    seeking only damages for Solares's "emotional, mental and physical pain and injuries," and

26    Romero's "pain and suffering." (Compl. ¶¶ 24.) Those damages are not recoverable under

27    Plaintiff's sixth cause of action. Plaintiff does not seek injunctive or declaratory relief (*see*

28

15

1  Compl. 17), accordingly Plaintiff's sixth cause of action should be dismissed for failure to state a

2  claim on which relief may be granted.

3  **VII.  PLAINTIFF FAILS TO STATE A CLAIM FOR WRONGFUL DEATH AGAINST DIAZ AND CLARK.**

4

5  For their seventh cause of action, Plaintiff asserts wrongful death under Code of Civil

6  Procedure section 377.60.  (FAC ¶¶ 62-65.)  Plaintiff asserts that Defendants Diaz and Clark

7  "committed intentional or negligent misconduct that caused the untimely and wrongful death of

8  Luis Romero," apparently basing that assertion on the factual allegations of previous paragraphs.

9  (FAC ¶¶ 62-63.)  For similar reasons to those stated above with regard to negligent supervision,

10 Defendants Diaz and Clark are immune from Plaintiff's wrongful death claims, and Plaintiff fails

11 to plead facts supporting those claims.

12   **A.    Defendants Diaz and Clark Are Immune from Plaintiff's Wrongful Death Claims Under Government Code Section 820.8.**

13

14 The factual allegations against Defendants Diaz and Clark in the FAC consist of the

15 allegation that they supervised others who did not follow protocol with regard to housing inmates

16 together, or hourly cell checks (FAC ¶¶ 19, 21), and that Defendant Clark approved Decedent's

17 housing assignment (FAC ¶ 19).

18 As stated above, Defendants are immune from liability under Government Code section

19 820.8.  Direct tort liability for a public employee may not be premised on acts of subordinates or

20 of other government employees.  *Weaver By Weaver,* 63 Cal. App. 4th at 202.  Plaintiff's state-

21 law claims should be dismissed because Defendants are immune under section 820.8.

22   **B.    Plaintiff Fails to Plead Facts Showing Defendants Diaz and Clark Are Liable.**

23

24 A cause of action for wrongful death consists of a tort (negligence or other wrongful act),

25 the resulting death, and the damages suffered by the heirs.  *Quiroz v. Seventh Ave. Ctr.,* 140 Cal.

26 App. 4th 1256, 1263 (Cal. App. 2006).

27 As stated above, the allegations do not show any breach of duty by Diaz and Clark that

28 proximately caused Decedent's death.  (*See supra* § VI.B.)  The conclusory allegations the FAC

16

1    does make are insufficient to state a claim.  *See Twombly*, 550 U.S. at 555.  Accordingly, the FAC

2    fails to state a claim for wrongful death, and the cause of action should be dismissed.

3    **VIII. PLAINTIFF'S REMAINING STATE-LAW CLAIMS SHOULD BE DISMISSED.**

4         As set forth above, all of Plaintiff's federal claims should be dismissed.  (*See supra* §§ I–V.)

5    Once all of the federal claims are dismissed, the Court should decline to exercise supplemental

6    jurisdiction over the state-law claims, and therefore dismiss the eighth cause of action (FAC ¶¶

7    66-70 (asserted only against unserved Doe defendants)), the wrongful death claim against

8    Defendant Burns, and any other remaining state-law claims.  *See* 28 U.S.C. § 1367(c)(3) (A

9    district court may decline to exercise supplemental jurisdiction after dismissing "all claims over

10   which it has original jurisdiction.").

11   **IX.    PLAINTIFF FAILS TO JOIN DECEDENT'S FATHER, A NECESSARY PARTY.**

12        The California wrongful death cause of action may be asserted by a decedent's "surviving

13   spouse, domestic partner, children, and issue of deceased children, or, if there is no surviving

14   issue of the decedent, the persons, including the surviving spouse or domestic partner, who would

15   be entitled to the property of the decedent by intestate succession."  Cal. Code. Civ. Proc. §

16   377.60(a).  Here, Plaintiff asserts there is no surviving spouse or issue.  (Solares Decl. ¶ 2, ECF

17   No. 2-1.)  Accordingly, the cause of action may be asserted by the heirs by intestate succession.

18   *See* Cal. Code. Civ. Proc. § 377.60(a).  Under California law where there is no surviving spouse

19   or issue, the estate passes to "the decedent's parent or parents equally."  Cal. Prob. Code §

20   6402(b).

21        The first amended complaint names only Solares, Decedent's mother, as a Plaintiff.  (FAC

22   ¶ 4.)  According to Plaintiff, Decedent's father has never entered the United States and it is

23   therefore not feasible to join him.  (FAC ¶ 4.)

24        Under Federal Rule of Civil Procedure 19, a "person who is subject to service of process

25   and whose joinder will not deprive the court of subject-matter jurisdiction must be joined" if that

26   person's absence would "impede the person's ability to protect [his] interest," or "leave an

27   existing party subject to substantial risk of incurring double, multiple, or otherwise inconsistent

28   obligations."  Fed. R. Civ. P. 19(a)(1)(B).  Here, Decedent's father is subject to service of process

17

1    under Federal Rule of Civil Procedure 4(f), and his joinder will not deprive the court of subject-

2    matter jurisdiction, as the case arises under 42 U.S.C. § 1983.  (FAC ¶ 2.)

3        Further, Decedent's father is a necessary party under California law, and his absence would

4    both impede his ability to protect his interest, and subject Defendants to risk of multiple or

5    inconsistent obligations.  For a section 1983 claim, survivors can assert a claim on a decedent's

6    behalf if permitted by the law of the state. S*ee Moreland v. Las Vegas Metro. Police Dep't*, 159

7    F.3d 365, 369 (9th Cir. 1998.)  The California wrongful death action is "joint, single, and

8    indivisible." *Ruttenberg v. Ruttenberg*, 53 Cal. App. 4th 801, 807 (Cal. App. 1997) (internal

9    quotation marks omitted).  Heirs have a "mandatory duty to join all known omitted heirs in [a]

10   single action." *Id.* at 808.  "[B]ecause the cause of action for wrongful death is one to be

11   exercised by all the heirs . . . an action by some, but not all, of the heirs is not the action

12   authorized under the statute." *G.M. v. Poole*, No. 2:17-cv-02415-TLN-CKD, 2019 U.S. Dist.

13   LEXIS 156259, at *11-12 (E.D. Cal. Sep. 11, 2019).  A necessary heir must be joined, not merely

14   named as a nominal Defendant, or the case is subject to dismissal.  *Id.* at *10-12; *see also Dredge*

15   *Corp. v. Penny*, 338 F.2d 456, 464 (9th Cir. 1964) (If an indispensable party is not joined, "the

16   action is subject to dismissal.").

17       Here, Mr. Romero Gonzalez is a known, omitted heir who should have been joined in this

18   action.  *See* Cal. Prob. Code § 6402(b).  Because Plaintiff has not joined a necessary party, the

19   complaint should be dismissed under Federal Rule of Civil Procedure 12(b)(7).

20                                   **CONCLUSION**

21       Plaintiff's complaint fails to plead facts showing that Defendants violated Decedent's

22   constitutional rights, and the Court should decline to exercise supplemental jurisdiction over the

23   state-law claims.  Moreover, the FAC should be dismissed for failure to join a necessary party,

24   Decedent's father.  Defendants' motion to dismiss should be granted.

25   / / /

26   / / /

27   / / /

28

1    Dated:  June 22, 2020                          Respectfully Submitted,

2                                                   XAVIER BECERRA
                                                    Attorney General of California
3                                                   JON S. ALLIN
                                                    Supervising Deputy Attorney General
4
                                                    */s/ Jeremy Duggan*
5
                                                    JEREMY DUGGAN
6                                                   Deputy Attorney General
                                                    *Attorneys for Defendants*
7                                                   *Diaz, Burns and Clark*

8    SA2019101902
     34175360.docx
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

19