1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Justin E. Sterling, State Bar No. 249491
LAW OFFICES OF JUSTIN STERLING
Justin@SterlingDefense.com
15760 Ventura Blvd. Suite 700
Encino, CA 91436
Tel. (818) 995-9452/Fax. (818) 824-3533

Erin Darling, State Bar No. 259724
LAW OFFICES OF ERIN DARLING
Erin@ErinDarlingLaw.com
3435 Wilshire Blvd. Suite 2910
Los Angeles, CA 90010
Tel. (323) 736-2230

Attorneys for Plaintiff Dora Solares

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| DORA SOLARES, an individual, | Case No. 1:20-cv-00323-NONE-BAM |
| Plaintiff, | |
| v. | **PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS MOTION TO DISMISS** |
| RALPH DIAZ, in his individual capacity, KENNETH CLARK, in his individual capacity, JOSEPH BURNS, in his individual, and DOES 1 TO 15, in their individual capacities | |
| Defendants. | **Date:**  **July 28, 2020**<br>**Time:**  **1:30 p.m.**<br>**Judge:**  **Hon. Dale A. Drozd** |

# TABLE OF CONTENTS

Page

I.    INTRODUCTION .................................................................................... 1

II.   STANDARD OF REVIEW ...................................................................... 2

III.  THE FIRST AND SEACOND CLAIMS OF THE COMPLAINT ARE
PROPERLY STATED .............................................................................. 2

    A.    The First Cause of Action Identifies Specific
Constitutional Violations .............................................................. 2

    B.    Plaintiff's Second Cause of Action Establishes that
Defendants Clark and Burns Acted with
Deliberate Indifference ................................................................. 6

IV.  THE COMPLAINT PROPERLY STATES § 1983
CLAIMS AGAINST SUPERVISORS CLARK
AND BURNS .......................................................................................... 8

V.   THE FAC STATES A VALID LOSS OF FAMILY
RELATIONS CLAIM ............................................................................. 9

VI.  THE COMPLAINT STATES A VALID CONSPIRACY
CLAIM .................................................................................................... 9

VII.  QUALIFIED IMMUNITY ...................................................................... 9

VIII. DEFENDANTS ARE NOT IMMUNE FROM STATE-LAW
NEGLIGENCE CLAIM ........................................................................ 12

IX.  DECEDENT'S FATHER SHOULD NOT BE JOINED ........................ 12

    A.    Under Rule 19(a), the Elder Mr. Romero is Not Necessary ...... 13

    B.    Under Rule 19(b) it is Not Feasible to Join Mr. Romero ........... 14

        1.    No Personal Jurisdiction ................................................... 14

        2.    Case Can Proceed Without an Indispensable Party ........... 15

X.    CONCLUSION ..................................................................................... 16

i

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)..................................................................................... 2

*Bearchild v. Cobban*,
  947 F.3d 1130 (9th Cir. 2020)...................................................................... 2

*Bell v. Wolfish*,
  441 U.S. 520 (1979)...................................................................................... 2

*Castro v. Cnty. Los Angeles*,
  833 F.3d 1060 (9th Cir. 2016)...........................................................2, 10, 11

*Clem v. Lomeli*,
  566 F.3d 1177 (9th Cir. 2009)..................................................................... 10

*Cortez v. Skol*,
  776 F.3d 1046 (9th Cir. 2015)....................................................................... 3

*Cotta v. Cty. of Kings*,
  No. 1:13-cv-00359-LJO-SMS, 2013 WL 3213075 (E.D. Cal. June 24,
  2013) ............................................................................................................ 11

*Eldredge v. Carpenters 46 Northern California Counties Joint Apprenticeship and*
  *Training Committee*,
  662 F.2d 534 (9th Cir.1981) ........................................................................ 13

*Epstein v. Washington Energy Co.*,
  83 F.3d 1136 (9th Cir. 1999) ......................................................................... 1

*Farmer v. Brennan*,
  511 U.S. 825 (1994).................................................................................. 2, 3

*Estate of Ford v. Ramirez–Palmer*,
  301 F.3d 1043 (9th Cir.2002) ..................................................................... 11

*Hansen v. Black*,
  885 F.2d 642 (9th Cir. 1989) ......................................................................... 8

*International Shoe Co. v. State of Wash., Office of Unemployment Compensation and*
  *Placement*,
  326 U.S. 310 (1945) .................................................................................... 14

# TABLE OF AUTHORITIES

Page(s)

*Lopez v. Smith,*
203 F.3d 1122 (9th Cir. 2000)...........................................................15

*EEOC v. Peabody W. Coal Co.,*
400 F.3d 774 (9th Cir. 2005)..................................................12, 14, 15

*Saucier v. Katz,*
533 U.S. 194 (2001).........................................................................10

*Starr v. Baca,*
652 F.3d 1202 (9th Cir. 2011).............................................................1

*Swierkiewicz v. Sorema N.A.,*
534 U.S. 506 (2002)...........................................................................2

*Torres v. City of Madera,*
648 F.3d 1119 (9th Cir. 2011).............................................................9

*Watkins v. City of Oakland,*
145 F.3d 1087 (9th Cir. 1998).............................................................8

*White v. Univ. of Cal.,*
765 F.3d 1010 (9th Cir.2014)...........................................................12

*Wilk v. Nevin,*
956 F.3d 1143 (9th Cir. 2020)..........................................................10

*Wilson v. Layne,*
526 U.S. 603 (1999).........................................................................10

**State Cases**

*Andersen v Barton Memorial Hospital, Inc.,*
166 Cal.App.3d 678 (1985) .........................................................13, 15

*Cross v. Pacific Gas & Elec. Co.,*
60 Cal. 690 (1964) ...........................................................................13

*Washington v. Nelson*
(1979) 100 Cal.App.3d 47 ................................................................15

*Estate of Riccomi,*
185 Cal. 458 (1921) .........................................................................13

# TABLE OF AUTHORITIES

Page(s)

*Rowland v. Christian*,
    69 Cal. 2d 108 (Cal. 1968) ............................................................... 11

*Sanders v. Fuller*
    (1975) 45 Cal.App.3d 994 ............................................................... 15

**Federal Statutes**

Civil Code of Procedure Section 377.34 l.................................................. 12

**State Statutes**

Cal. Gov. Code, § 911.2(a) ................................................................. 13

Cal. Gov. Code § 945.4 .................................................................... 13

Cal. Civil Code § 1714 ................................................................. 11, 12

Cal. Government Code § 844.6 .......................................................... 11, 12

Cal. Tort Claims Act ....................................................................... 13

**Rules & Regulations**

Fed. R. Civ. P. 12(b)(6) ............................................................... 2, 11, 15

Fed. R. Civ. P. 19 ................................................................... *passim*

**Constitutional Provisions**

U.S. Const. Amend. VIII ............................................................. 2, 3, 6, 10

U.S. Const. Amend. XIV .................................................................... 2

iv

## I.    INTRODUCTION

Within 24 hours of being transferred to California State Prison, Corcoran, Luis Romero was killed. The killing occurred because Corcoran prison officials, including defendants Burns and Clark, chose to bypass the standardized administrative committee process that is required before forcing one inmate to share the cell of another, and rushed to assign Mr. Romero to the same cell as convicted murderer, inmate Jaime Osuna. Defendants were on notice that Jaime Osuna posed a threat to other inmates and should not share a cell with anyone, as jail and prison reports from Osuna's years behind bars document his violent misconduct and establish that he was always single-celled.

Burns decided, and Clark approved, an extraordinary move to bypass the normal administrative procedure for placing one inmate in the cell of another inmate, despite being aware of the threat that Osuna posed to anyone with whom he shared a cell. After taking the unusual step of expediting Mr. Romero's placement, and bypassing the standardized process, Clark, Burns and Does failed to ensure regularly scheduled nightly safety checks of Mr. Romero's new cell by not staffing the area in which Romero was held. Even after a bedsheet was visibly draped along the bars inside this cell, preventing anyone outside from peering in, no Corcoran prison official bothered to conduct a routine safety check during the evening. Hours passed, and in the morning, Mr. Romero was found decapitated.

Defendants' motion to dismiss should be denied because the First Amended Complaint (FAC), contain allegations "taken as true and construed in the light most favorable to plaintiff[]," *Epstein v. Washington Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1999), "contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively," and "suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

## II.    STANDARD OF REVIEW

In ruling on a motion to dismiss under Rule 12(b)(6), a court must determine whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Under Rule 12(b)(6), a court may dismiss a complaint "only if it is clear that no relief can be granted under any set of facts that could be proved consistent with the allegations." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002) (emphasis added).

## III.    THE FIRST AND SEACOND CLAIMS OF THE COMPLAINT ARE PROPERLY STATED

### A.    The First Cause of Action Identifies Specific Constitutional Violations

"Prisoner Eighth Amendment challenges generally fall into three broad categories," one of which is a "prisoners' challenges to their conditions of confinement." *Bearchild v. Cobban*, 947 F.3d 1130, 1140 (9th Cir. 2020). Inmates who are not yet convicted may sue jail officials for injuries suffered while in custody under the Fourteenth Amendment's Due Process Clause. *Bell v. Wolfish*, 441 U.S. 520, 535, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). Whether under the Eighth or Fourteenth Amendment, a plaintiff must show the prison official acted with "deliberate indifference" test. *Castro v. Cnty. Los Angeles*, 833 F.3d 1060, 1068 (9th Cir. 2016). The standard under the Eighth Amendment to prove deliberate indifference for individual defendants is well established:  "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "In other words, the official must demonstrate a subjective awareness of the risk of harm." To do so, it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm. *Id.* at 842.

Plaintiff's first claim, that defendants violated decedent's Eighth Amendment rights regarding conditions of confinement, is addressed in the Ninth Circuit Model Jury Instruction 9.27, and is distinct from the Eighth Amendment failure to protect claim, which is addressed in the Ninth Circuit Model Jury Instruction 9.28. The comment to Instruction 9.27 lays out the applicable standard of this distinct claim:

> In addition, **prison officials have a duty to protect prisoners from violence at the hands of other prisoners**. *Farmer*, 511 U.S. at 833; see, e.g., *Cortez v. Skol*, 776 F.3d 1046, 1050-53 (9th Cir. 2015) (holding that mother of prisoner who suffered severe brain damage after being attacked by two fellow inmates raised genuine issues on Eighth Amendment § 1983 claim in light of evidence that one prison official escorted three hostile, half-restrained, high-security prisoners through isolated prison passage in contravention of prison policy and practice). "A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Id.* at 828 (citing *Helling v. McKinney*, 509 U.S. 25 (1993); *Wilson v. Seiter*, 501 U.S. 294 (1991); and *Estelle v. Gamble*, 429 U.S. 97 (1976)). "While *Estelle* establishes that deliberate indifference entails something more than mere negligence, **the cases are also clear that it is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result**." *Id.* at 835.

*See* 9th Cir. Model Civ. Jury Instr. 9.27 (2019) (emphasis added)

Under Ninth Circuit Model Civil Jury Instruction 9.27, when a plaintiff asserts that defendant failed to provide safe conditions of confinement, the plaintiff must prove: 1. the plaintiff faced a substantial risk of serious harm; 2. the defendant was deliberately indifferent to that risk, that is, the defendant knew of it and disregarded it by failing to take reasonable measures to address it; and 3. the act[s] or failure to act of the defendant caused harm to the plaintiff. "Deliberate indifference" is the conscious choice to disregard the consequences of one's acts or omissions. *See* 9th Cir. Model Civ. Jury Instr. 9.27 (2019).

Defendant Clark and Defendant Burns violated Luis Romero's Eighth Amendment rights regarding his conditions of confinement.

For the first element, the FAC states three specific ways that Mr. Romero "faced a substantial risk of serious harm": "when he was forced by Defendants Clark, Burns and Doe defendants to share a cell overnight with Osuna and when they failed to ensure that routine

3

cell-checks were conducted, and failed to enforce rules against bedsheets in the cells to prevent visibility from the outside." (Dkt. No. 15, FAC, at 12:27-13:2). For the second element, Defendants Burns and Clark were "deliberately indifferent to a substantial risk of serious harm to which Luis Romero was exposed while in the same cell as Osuna, in that they knew of it and disregarded it by failing to take reasonable measures to address it." *Id.* at 13, ll. 3-6. In addition, Defendants Burns and Clark "put Romero in the same cell as Osuna and fail[ed] to act to protect him once in that cell." *Id.* at 13, ll. 7-8.

Plaintiff clearly pleaded facts showing that Defendants Burns and Clark knew of a substantial risk of serious harm to Decedent. Paragraph 15 explicitly states the known risk:

> Defendants, including Burns, Clark and Diaz, were on notice that Jaime Osuna posed a threat to other inmates and should not share a cell with anyone. Jail and prison reports from Osuna's years behind bars document his violent misconduct and establish that he was always single-celled. It is believed that since his CDCR commitment in 2012, Osuna has never had a cellmate. Plaintiff is also informed that CDCR was in possession of documents from Jaime Osuna's own lawyers and medical team, warning CDCR of Osuna's propensity for extreme violence, insatiable desire to kill, and need to be held in a psychiatric ward, not in a prison with other inmates. Furthermore, defendants were on notice of Osuna's violent behavior while incarcerated at the Kern County Jail awaiting trial in his original murder case, including one incident that resulted in Osuna being charged with attempted murder. Defendants were on notice that Osuna was serving a no-parole sentence for torture killing of a Bakersfield woman in 2011. Defendants knew that Osuna posed a danger to anyone he shared a cell, which is why he had never had a cell-mate at Corcoran before.

*Id.* at 6, ll. 1-4.

Plaintiff's FAC clearly alleges how Defendants Burns and Clark disregarded the risk:

> Despite being put on notice that Osuna would kill again if placed in close proximity to another inmate, and despite glaring evidence that Osuna was an inmate who should not be housed with any other inmate, Defendant Burns and the Doe defendants who also were responsible for implementing the standardized administrative committee process, as well as Defendant Clark who was responsible for supervising and approving the decisions of the administrative committee process, chose to ignore the known risk of Osuna and placed Luis Romero in a cell with Jaime Osuna within 24 hours of Romero arriving at Corcoran jail.

*Id.* at 7, l. 22 – 8, l. 1.

4

Regarding placement of Romero with Osuna, Section A of the FAC's alleged facts includes specific and not formulaic descriptions of what Defendants Burns and Clark did around March 7, 2019. Defendant Burns made "the decision to bypass the normal committee process" and "chose to ignore the known risk posed by Osuna and chose to not follow the administrative committee process for Romero's placement." *Id.* at 8, ll. 11-14. Regarding Defendant Clark, "[a]s the warden of Corcoran, defendant Kenneth Clark is responsible for ensuring that his subordinates follow the proper procedure for placing an inmate in the cell of another inmate." *Id.* at 8, l. 15-16. Specifically, Clark "took no steps to ensure that Osuna remained single-celled," (*id.* at 8, l. 21) "approved and allowed the out-of-protocol decision to go forward… placing one inmate in the cell of another inmate, despite being put on notice of the threat that Osuna posed to anyone with whom he shared a cell," (*id.* at 8, l. 25-27) "failed to establish a procedure to document and track when inmates agree in writing to be housed with another, and failed to supervise subordinates to ensure that a violent inmate never otherwise permitted to share a cell was actually prevented from sharing a cell." *Id.* at 8, l. 28-9, l. 3.

Similarly, Section B of the FAC's alleged facts portion sets forth how Defendants Burns and Clark failed to "enforce the rules" of "routine safety checks." *Id.* at para. 20-21. Specifically, on the evening of March 8, 2019, Burns, "affirmatively worked together to ensure that correctional officers did not conduct any night-time safety checks." *Id.* at 9, ll. 17-19. In addition:

> Defendants Clark and Burns also failed to supervise Doe defendants responsible for conducting routine night-time safety checks, failed to require Doe defendants to actually conduct routine night-time safety checks on the first night that Romero was in a cell with Osuna, whom they knew had never been celled with another inmate while in CDCR custody and who they knew posed a threat to other inmates, and failed to establish a system that would ensure crucial nighttime safety checks were actually conducted.

*Id.* at 10, ll. 5-11.

The FAC provides a litany of details regarding deliberate indifference, none of which are conclusory. Defendants Clark and Burns:

[C]ho[se] to ignore the proper administrative procedure for placing one inmate with another, despite having been put on notice that Jaime Osuna was a violent psychopath; affirmatively plac[ed] Mr. Romero in a cell with Jaime Osuna, even though Mr. Osuna had not shared a cell with anyone before at Corcoran because he had been identified as a violent psychopath who posed a danger to fellow inmates; fail[ed] to ensure regular, night-time security checks of the cell that housed Mr. Romero and Mr. Osuna, despite Mr. Osuna having been identified as a violent killer who posed a danger to fellow inmates; and for Burns and the Doe defendants who were the correctional officers on shift over the night, fail[ed] to make regular checks despite a bedsheet draped inside Romero and Osuna's cell that evening, which visibly prevented proper monitoring and would have required the inmates to take it down, under Corcoran's own rules.

*Id.* at 10:19-11:3.

Thus, the FAC contains allegations that describe how Defendants Clark and Burns were deliberately indifferent, as applicable to both the first and second claims.

**B.    Plaintiff's Second Cause of Action Establishes that Defendants Clark and Burns Acted with Deliberate Indifference**

Plaintiff' Second Cause of Action alleges that Defendants Clark and Burns violated plaintiff's Eighth Amendment rights by failing to intervene and protect Luis Romero. The Ninth Circuit Model Civil Jury Instruction 9.29 sets forth the elements:

1. The defendant made an intentional decision with respect to the conditions under which the plaintiff was confined;
2. Those conditions put the plaintiff at substantial risk of suffering serious harm; 3. The defendant did not take reasonable available measures to abate that risk, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and
4. By not taking such measures, the defendant caused the plaintiff's injuries.

With respect to the third element, the defendant's conduct must be both objectively unreasonable and done with a subjective awareness of the risk of harm. In other words, the defendant must have known facts from which an inference could be drawn that there was a substantial risk of serious harm, and the defendant must have actually drawn that inference.

*See* 9th Cir. Model Civ. Jury Instr. 9.28 (2019).

6

Each of these elements was specifically pleaded. Regarding an intentional decision with respect to the conditions which plaintiff was confined, the FAC states, inter alia:

> Clark and Burns and Doe defendants were aware of the risk that Osuna posed to any other inmate in close proximity to him, and chose to ignore standard administrative procedure in placing Romero in a cell with him, and that very first evening, failed to ensure that routine cellchecks were conducted, and failed to enforce rules against bedsheets in the cells to prevent visibility from the outside.

*See* Dkt. No. 15, FAC, at 14, ll. 3-8.

There are myriad ways the FAC shows how Burns and Clark did not take reasonable measures, despite being *subjectively* aware of the risk. "Burns, Clark and Diaz, were on notice that Jaime Osuna posed a threat to other inmates and should not share a cell with anyone." *Id.* at 6, ll. 1-2. Defendants Clark and Burns also failed to supervise and failed to require "routine night-time safety checks on the first night that Romero was in a cell with Osuna, whom they knew had never been celled with another inmate while in CDCR custody and who they knew posed a threat to other inmates." *Id.* at 10, ll. 7-9. That same paragraph (FAC ¶ 16) then lists myriad reports of which defendants were aware that Osuna was a homicidal maniac. Burns' decision "to not follow the administrative committee process was animated in part to retaliate" (*id.* at 8, ll. 3-4) against Romero for having filed complaints earlier, and Burns "chose to ignore the known risk posed by Osuna and chose to not follow the administrative committee process for Romero's placement," and affirmatively placed Burns with Osuna. *Id.* at 8, ll. 13-14. Likewise, Clark appreciated the high risk to Romero posed by Osuna, ("put on notice of the threat that Osuna posed to anyone with whom he shared a cell" (*id.* at 8, ll. 26-27) but permitted Burns to "not follow the proper administrative procedure for placing one inmate in the cell of another inmate." *Id.* at 8, ll. 25-26. Both Clark and Burns "did not enforce the normal rules" for "obstructing the view" into the cell and ensuring safety checks every twenty minutes. *Id.* at 9, ll. 8-12. Last, the risk and causation elements are clearly stated:

> If Clark and Burns followed the administrative committee process for inmates sharing a cell, and had ensured routine night-time safety checks, especially after being put on notice of the danger posed by Osuna, they would not have sent

7

Romero to share a cell with Osuna overnight unprotected by correctional officers, and Romero would not have been killed on March 8, 2019. *Id.* at 6:27-8:3.

## IV. THE COMPLAINT PROPERLY STATES § 1983 CLAIMS AGAINST SUPERVISORS CLARK AND BURNS

Regarding the third claim, for supervisory liability, defendants implausibly argue that the allegations against Clark are conclusory that no facts are alleged "showing that Burns knew of an unreasonable risk of constitutional injury." *See* Dkt. No. 17-1 at 6, l. 27.

A supervisor can be held liable if there is "sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Hansen v. Black*, 885 F.2d 642, 645-46 (9th Cir. 1989). To that end, "[a] supervisor can be liable in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others." *Watkins v. City of Oakland*, 145 F.3d 1087, 1093 (9th Cir. 1998) (internal quotation marks omitted).

The causal connection here is clear. The FAC alleges Burns "affirmatively worked together [with Does] to ensure that correctional officers did not conduct any night-time safety checks." *See* Dkt. No. 15, FAC, at 9, ll. 17-19. As a result, safety checks that were supposed to take place every twenty minutes did not occur over the course of the night, during which time Osuna decapitated Romero. In addition, to retaliate for complaints made against him, Burns made a "decision to bypass the normal committee process could not have been made by one person alone, and defendant Does, along with Burns, chose to ignore the known risk posed by Osuna and chose to not follow the administrative committee process for Romero's placement." *Id.* at 8, ll. 11-14.

Regarding Clark, he "was responsible for supervising and approving the decisions of the administrative committee process," (*id.* at 7, l. 26-27) and he himself "approved and allowed the out-of-protocol decision to go forward," (*id.* at 8, l. 24), and as a result, placed

8

1    "one inmate in the cell of another inmate, despite being put on notice of the threat that
2    Osuna posed to anyone with whom he shared a cell." (*Id.* at 8, ll. 26-27).

3        Thus, the allegations against Clark and Burns are not conclusory, they detail specific
4    conduct that established a causal connection between the supervisors' conduct approving
5    a highly dangerous, out-of-protocol cell transfer, and Romero's foreseeable death at the
6    hands of Osuna.

7    **V.    THE FAC STATES A VALID LOSS OF FAMILY RELATIONS CLAIM**

8        Defendants concede that Plaintiff may bring a loss of familial relations claim but
9    argue the fourth claim fails because the first three claims fails. *See* Dkt. No. 17-1 at 8, l. 12-
10   13. As stated in Sections III, IV, and V, the first three claims are properly pleaded.

11   **VI.   THE COMPLAINT STATES A VALID CONSPIRACY CLAIM**

12       The fifth cause of action, the conspiracy claim, states that the claim arises under
13   Section 1983, 1985 and 1988. *See* Dkt. No. 15, FAC, at 9, at 17, l. 11. As set forth above,
14   the FAC describes how Burns could not have acted alone but conspired with Does and
15   "chose to ignore the known risk posed by Osuna and chose to not follow the administrative
16   committee process for Romero's placement," (see Dkt. No. 15, FAC, at 8, ll. 13-14) and
17   instead placed Romero in a cell with Osuna "within 24 hours of Romero arriving at
18   Corcoran." *Id.* at 8, l. 1. Besides placement of Romero in Osuna's cell, the FAC describes
19   how Burns conspired with others to ensure no regular night-time safety checks were
20   conducted: Burns "affirmatively worked together [with Does] to ensure that correctional
21   officers did not conduct any night-time safety checks." *See* Dkt. No. 15, FAC, at 9, ll. 17-
22   19.

23   **VII.  QUALIFIED IMMUNITY**

24       Regarding qualified immunity, for the law to be clearly established, the Ninth Circuit
25   or Supreme Court need not have ruled on a case with identical facts. "[O]fficials can ...
26   have 'fair warning' that their conduct violates established law 'even in novel factual
27   circumstances.'" *Torres v. City of Madera*, 648 F.3d 1119, 1129 (9th Cir. 2011) (quoting *Hope
28   v. Pelzer*, 536 U.S. 730, 741 (2002)). In order to give an officer sufficient notice that her

conduct is legal or illegal, existing case law need only establish the "contours of the right" at issue. *Saucier v. Katz*, 533 U.S. 194, 202 (2001); *Wilson v. Layne*, 526 U.S. 603, 614-15 (1999) ("[T]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent.")

"The Supreme Court need not catalogue every way in which one inmate can harm another for us to conclude that a reasonable official would understand that his actions violated [the Eighth Amendment]." *Castro v. County of Los Angeles*, 833 F.3d 1060, 1067 (9th Cir. 2016). Once an official is subjectively aware of a substantial risk of serious harm, "clearly established" law requires "only that the [official] take reasonable measures to mitigate the substantial risk." *Id.*

As of 2009 the Ninth Circuit has addressed a § 1983 claim for an Eighth Amendment violation stemming from an inmate's placement in a cell with a dangerous fellow inmate. In *Clem v. Lomeli*, a state prison inmate sued under § 1983 against prison officials after he was forced to remain in a cell with a violent and drunk cell-mate and severely beaten. *Clem v. Lomeli*, 566 F.3d 1177, 1180 (9th Cir. 2009). The Ninth Circuit noted that Eighth Amendment violations can occur when a prison official acts but also when a prison official fails to act, and that the failure to act to prevent ongoing placement in a cell with a violent inmate amounts to "deliberate indifference." *Id.* at 1182. Relying on *Clem*, the Ninth Circuit recently held that with regards to an Eighth Amendment failure to protect claim, where a prison official is present at a classification meeting in which a dangerous inmate is discussed, a reasonable jury can find that official subjectively aware of a substantial risk than such an inmate would pose to the plaintiff inmate, and the prison official could be held liable for permitting the two inmates to share a same cell. *Wilk v. Nevin*, 956 F.3d 1143, 1149 (9th Cir. 2020).

Defendants' reliance on *Estate of Ford v. Ramirez–Palmer*, 301 F.3d 1043, 1049–50 (9th Cir.2002) at this stage of the proceedings is not well taken. "The *Ford* court evaluated the applicability of qualified immunity in the course of a summary judgment motion after discovery had more fully revealed specific facts and circumstances on which the prison officials had reasonably relied in reaching their decision to permit Ford to share a cell with the inmate who killed him." *Cotta v. Cty. of Kings*, No. 1:13-cv-00359-LJO-SMS, 2013 WL 3213075, at *11 (E.D. Cal. June 24, 2013). In *Cotta*, the Eastern District found a prison official not entitled to qualified immunity for purposes of a Rule 12(b)(6) motion in a case in which a prison official knew of substantial risks to inmate's safety and still approved that inmate sharing a cell with the plaintiff. *Id.*

The Ninth Circuit has addressed the need to monitor of an inmate's cell. Oddly, Defendants cite to *Castro*, despite it being favorably applicable to the present case, albeit in the context of a *Monell* claim: "Had the entity defendants provided consistent monitoring, or had the entity defendants required Castro and his attacker to be housed in different locations, which were available, Gonzalez' attack on Castro could have been averted." *Castro*, 833 F.3d at 1075-76. Thus, prison officials can be held deliberately indifferent for failure to monitor a cell. Similarly, the withdrawal of staff from a portion of a prison for hours on end can create an objectively substantial risk of harm to unsupervised inmates. *Lemire v. California Dept. of Corrections and Rehabilitation*, 726 F.3d 1062, 1076 (9th Cir. 2013). In Lemire, the Ninth Circuit vacated summary judgment as to claims against individual prison officials who withdrew officers from a prison building for a period of time in which an inmate committed suicide. In assessing Eighth Amendment claim, the Ninth Circuit held that it was a triable issue whether prison officials were aware of risks posed by withdrawing all floor officers from building for over three hours, as to whether any risk of harm could have been prevented with adequate supervision. *Id.*

Thus, in the light of applicable Ninth Circuit authority, defendants' effort to dispose of this case on qualified immunity grounds at the motion to dismiss phase should be denied.

11

## VIII.  DEFENDANTS ARE NOT IMMUNE FROM STATE-LAW NEGLIGENCE CLAIM

Plaintiff's sixth claim, for general negligence liability, arises under California Civil Code section 1714. The California Supreme Court has ruled that this statute "serves as the foundation of our negligence law." *Rowland v. Christian*, 69 Cal. 2d 108, 112 (Cal. 1968) ("it is clear that in the absence of statutory provision declaring an exception to the fundamental principle enunciated by section 1714 of the Civil Code, no such exception should be made unless clearly supported by public policy.") The FAC cites to California Government Code section 844.6, which specifies exceptions to immunity, including subdivision (d )("Nothing in this section exonerates a public employee from liability for injury proximately caused by his negligent or wrongful act or omission"). Simply put, the sixth claim includes a statutory basis for liability (Cal. Civ. Code § 1714) and an exception to an immunity defense (Cal. Gov't. Code § 844.6). Defendants are wrong that no statute establishes a form of liability.

The FAC shows negligent supervision by Clark: he "took no steps to ensure that Osuna remained single-celled," (*id.* at 8, l. 21) "approved and allowed the out-of-protocol decision to go forward… placing one inmate in the cell of another inmate, despite being put on notice of the threat that Osuna posed to anyone with whom he shared a cell," (*id.* at 8, l. 25-27) "failed to establish a procedure to document and track when inmates agree in writing to be housed with another, and failed to supervise subordinates to ensure that a violent inmate never otherwise permitted to share a cell was actually prevented from sharing a cell." *Id.* at 8, l. 28-9, l. 3.

Plaintiff is proceeding in also as Mr. Romero's successor-in-interest, and has sought damages related to pre-death pain and suffering under Code of Civil Procedure Section 377.34 l.

## IX.  DECEDENT'S FATHER SHOULD NOT BE JOINED

Defendants toss in a final argument – that joinder is necessary – but subdivisions (a) and (b) of Federal Rule of Civil Procedure Rule 19 demonstrate why the argument is unavailing.

## A.     Under Rule 19(a), the Elder Mr. Romero is Not Necessary

Federal Rule of Civil Procedure 19 governs whether joinder of an absent party is essential in a particular case, and it requires a court to engage in "three successive inquiries." *EEOC v. Peabody W. Coal Co.*, 400 F.3d 774, 779 (9th Cir. 2005). First, the court must determine whether the person or party to be joined is "necessary." *Id*. Rule 19(a) provides a two-prong inquiry for determining whether a party is necessary. *White v. Univ. of Cal.*, 765 F.3d 1010, 1026 (9th Cir.2014). A party is necessary if (1) "in that person's absence, the court cannot accord complete relief among existing parties" or (2) "that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may ... impair or impede the person's ability to protect the interest; or leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." Fed.R.Civ.P. 19(a).

The first prong of the rule is concerned only with "relief as between the persons already parties, not as between a party and the absent person whose joinder is sought." *Eldredge v. Carpenters 46 Northern California Counties Joint Apprenticeship and Training Committee*, 662 F.2d 534, 537 (9th Cir.1981) (quoting 3A Moore's Federal Practice P 19.07-1(1), at 19-128 (2d ed. 1980). The court can accord complete relief among the existing parties, Dora Solares is the only heir with any connection to the decedent and thus the only heir who sustained a loss, and as described below, the elder Mr. Romero would not be entitled to damages:

"Although recovery under section 377 is in the form of a 'lump sum,' the amount is determined in accordance with the various heirs' separate interests in the deceased's life and the loss suffered by each by reason of the death, and no recovery can be had by an heir who did not sustain a loss." *Cross v. Pacific Gas & Elec. Co.*, 60 Cal. 690, 692 (1964). Recovery in a wrongful death case is determined in accordance with the various heirs' separate interests in the deceased's life and the loss suffered by each by reason of the death, and no recovery can be had by an heir who did not sustain a loss. *Estate of Riccomi*, 185 Cal. 458, 461 (1921). Applied to the elder Mr. Romero did not sustain a loss.

13

1    Regarding the second prong, Defendants do not face multiple obligations because

2    the statute of limitations for Mr. Romero has run, and Mr. Romero's interest would not be

3    impeded should this case proceed. Under California law, each heir has a personal and

4    separate cause of action against which the applicable statute of limitations will run. *Andersen*

5    *v Barton Memorial Hospital, Inc.*, 166 Cal.App.3d 678, 681 (1985). As a prerequisite for money

6    damages litigation against a public entity, the California Tort Claims Act requires

7    presentation of the claim to the entity. See Cal. Gov. Code § 945.4. A government claim

8    based on causes of action for death and personal injury must be presented to the public

9    entity within six months of the date the cause of action accrued. See Cal. Gov. Code, §

10   911.2(a). Here, the decedent was killed in March 2019, and the six months statute of

11   limitations has long passed and only Dora Solares has filed a § 910 claim and has brought

12   a cause of action. The statute of limitations has run for the senior Mr. Romero to bring a

13   suit under state law. The federal claims brought by Dora Solares under § 1983 are survival

14   claims brought by her as the successor-in-interest, and do not require any other successor-

15   in-interest be included in the same action.

16   **B.    Under Rule 19(b) it is Not Feasible to Join Mr. Romero**

17   In the event the Court rules Mr. Romero is necessary, under Rule 19(b) it is not

18   feasible to join him because it has no personal jurisdiction and the case can proceed without

19   an indispensable party.

20   **1.    No Personal Jurisdiction**

21   Regarding the possible joinder of an absentee, a court must first determine "whether

22   it is feasible to order that the absentee be joined." *Peabody W. Coal Co.*, 400 F.3d at 779.

23   There are three circumstances in which joinder is not feasible under Rule 19(a): "when

24   venue is improper, when the absentee is not subject to personal jurisdiction, and when

25   joinder would destroy subject matter jurisdiction." *Id.*; see also Fed.R.Civ.P. 19(a).

26   In this case, the absentee is not subject to personal jurisdiction. Plaintiff pleaded hat

27   the reason for the father to not be joined: Dora Solares divorced him when the decedent

28   was three years old and moved to the United States while the elder Mr. Romero remained

14

in Guatemala, and "never moved to the United States and has never entered the United States." (Dkt. No. 15 at 3, l. 11-12) This Court does not have personal jurisdiction of the elder Mr. Romero, as he has remained in Guatemala, has no contacts with the forum of the United States. See *International Shoe Co. v. State of Wash., Office of Unemployment Compensation and Placement*, 326 U.S. 310, 316 (1945). Defendants argue that the joinder of the senior Mr. Romero will not deprive the Court of subject matter jurisdiction (Dkt. 17-1 at 18), but that point overlooks something more fundamental, the Court does not have personal jurisdiction over the senior Mr. Romero.

### 2.    Case Can Proceed Without an Indispensable Party

Defendants' argue that an action by some of the heirs in not permitted by statute. (Dkt. 17-1 at 18). That is incorrect. Under Rule 19(b), it is still possible "for the case to proceed without the joinder of the so-called 'necessary' absentee[s]." *Peabody Western*, 400 F.3d at 779 (emphasis added). California authority makes clear that a nonjoined heir is not an "indispensable party" to a wrongful death action:

> A nonjoined heir is not an indispensable party to a wrongful death action brought by other heirs. (See, e.g., *Washington v. Nelson* (1979) 100 Cal.App.3d 47, 51-52 [160 Cal.Rptr. 644]; *Sanders v. Fuller* (1975) 45 Cal.App.3d 994, 999-1000 [119 Cal.Rptr. 902], and authorities cited therein.) This would seem to make eminent sense where the nonjoined heir's claim is barred by a statute of limitations. Since that heir can assert no claim, the court is not precluded from distributing the proceeds of the action among the heirs whose claims are not barred. (See fn. 4, ante, Cross v. Pacific Gas & Elec. Co., supra., 60 Cal.2d at p. 692.) Therefore, since the nonjoined heir does not preclude the court from granting complete relief the nonjoined heir is not an indispensable party.

*Andersen*, 166 Cal.App.3d at 681, fn. 5.

Simply put, this action can proceed as the elder Mr. Romero is not an indispensable party and even were he to appear his ability to file a claim is time-barred.

## X.    CONCLUSION

For the foregoing reasons, Defendants' Rule 12(b)(6) motion should be denied, and they should be ordered to answer Plaintiff's Complaint.

Alternatively, Plaintiff should be granted leave to amend, or if applicable, permit plaintiff to either add and join Mr. Romero's father or for Plaintiff to be appointed personal representative and bring the claim on behalf of the heirs, should the Court determine any ground of the motion to dismiss to be meritorious. The Ninth Circuit, "in a line of cases stretching back nearly 50 years, [has] held that in dismissing for failure to state a claim under Rule 12(b)(6), a district court should grant leave to amend . . . unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (internal quotations and citations omitted). Plaintiff respectfully requests that should the Court grant any portions of Defendants' motion to dismiss, its order should also grant Plaintiff leave to amended the complaint.

Respectfully submitted,

Dated:  July 13, 2020.              LAW OFFICES OF JUSTIN STERLING

By: _____/s/ *Justin Sterling*_____
                    Justin E. Sterling,
                    Attorneys for Plaintiff
                    Yolanda Sanchez

LAW OFFICES OF ERIN DARLING

By: _____/s/ *Erin Darling*_____
                    Erin Darling,
                    Attorneys for Plaintiff
                    Yolanda Sanchez

16