1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DORA SOLARES, | Case No.  1:20-cv-00323-NONE-BAM (PC) |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS REGARDING DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT |
| v. | |
| RALPH DIAZ, *et al.*, | (ECF No. 17) |
| Defendants. | **FOURTEEN (14) DAY DEADLINE** |

**Findings and Recommendations**

I.  __Introduction__

Plaintiff Dora Solares ("Plaintiff") proceeds in both her individual capacity and as the successor-in-interest to Luis Romero, deceased ("Decedent") in this action pursuant to 42 U.S.C. § 1983 and state law.  This action proceeds on Plaintiff's first amended complaint ("FAC") against Defendants Ralph Diaz, Kenneth Clark, and Joseph Burns, ("Defendants") in their individual capacities, and unidentified Doe Defendants 1–15, for claims of conditions of confinement; failure to protect; supervisory liability; loss of familial relations; conspiracy to violate civil rights; negligent supervision, training and staffing; wrongful death; and failure to summon medical care.  (ECF No. 15.)

On June 22, 2020, Defendants filed a motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(b)(7) on the grounds that: (1) Plaintiff fails to allege sufficient facts to

1

1  state a federal-law claim against all Defendants; (2) Defendants are entitled to qualified immunity

2  from Plaintiff's federal-law claims; (3) Plaintiff fails to allege sufficient facts to state a state-law

3  claim against Defendants Diaz and Clark; (4) Defendants Diaz and Clark are entitled to statutory

4  immunity from Plaintiff's state-law claims; (5) Plaintiff fails to plead recoverable damages for the

5  negligent supervision claim; (6) the Court should decline to exercise supplemental jurisdiction

6  over Plaintiff's state-law claims; and (7) Plaintiff has failed to join a required party.  (ECF No.

7  17.)  Plaintiff filed an opposition on July 13, 2020.  (ECF No. 18.)  Defendants filed a reply on

8  July 21, 2020.  (ECF No. 19.)  The motion is deemed submitted.  Local Rule 230(g).

9      For the reasons discussed below, the Court recommends that Defendants' motion to

10  dismiss be granted, and that Plaintiff be permitted leave to amend.

11  **II.**     **Allegations in the First Amended Complaint**

12      Plaintiff Dora Solares is the mother of Decedent Luis Romero.  Decedent was never

13  married, never had any domestic partner or children, and has no other remaining family members

14  or heirs.  When Decedent was three years old, and still living in Guatemala, Plaintiff divorced

15  Decedent's father.  Since that time, Plaintiff and Decedent had no contact with Decedent's father,

16  and shortly thereafter they emigrated to the United States.  Decedent's father remained in

17  Guatemala, and to Plaintiff's knowledge he never moved to the United States and has never

18  entered the United States.  Plaintiff therefore alleges that it is not feasible to join him in this

19  action.

20      On March 7, 2019, Decedent, a then-CDCR inmate, was transferred from Mule Creek

21  State Prison to California State Prison, Corcoran ("Corcoran").  Corcoran prison officials,

22  including Defendant Joseph Burns, CDCR Sergeant, were required to go through a standardized

23  administrative committee process of matching two inmates in one cell.  A committee of prison

24  administrators must determine whether an inmate is fit to have a cellmate.  After making this

25  determination, the committee must find another inmate and deem that inmate an appropriate fit as

26  a cellmate.  The two inmates are introduced to each other, and each inmate must sign forms

27  acknowledging and agreeing to be celled with one another.  Defendant Burns and other Corcoran

28  staff did not follow this process, and placed Decedent in a cell with inmate Jaime Osuna.

2

1    Plaintiff alleges that Defendants were on notice that Osuna posed a threat to other inmates

2    and should not share a cell with anyone.  Jail and prison reports from Osuna's incarceration

3    document his violent misconduct and establish that he was always single-celled.  Plaintiff

4    believes that since his CDCR commitment in 2012, Osuna has never had a cellmate.  CDCR was

5    in possession of documents from Osuna's own lawyers and medical team, warning CDCR of

6    Osuna's propensity for violence, desire to kill, and need to be held in a psychiatric ward, not in a

7    prison with other inmates.  Osuna had been convicted of a 2011 murder, and was charged with

8    attempted murder based on an incident at the Kern County Jail while he was awaiting trial in his

9    original murder case.  Plaintiff alleges that Defendants knew that Osuna posed a danger to anyone

10   he shared a cell with, which is why he had never had a cellmate at Corcoran before.

11   According to CDCR records, in 2012, a guard caught Osuna with a five-inch metal shank.

12   The same report describes Osuna as a high-risk inmate to be housed in a secured single cell with

13   no inmate contact.  Shortly after the 2012 incident, another guard found Osuna with a hatchet-like

14   weapon in his single cell.  A few months after that, despite being single-celled, Osuna found his

15   way into another inmate's cell, where Osuna stabbed and slashed the face of the inmate, resulting

16   in 67 stitches.  Prison reports from 2016 also list Osuna as high-risk staff assaultive and an

17   administrative segregated inmate.

18   Plaintiff alleges that Defendant Burns and Corcoran staff chose to ignore the known risk

19   posed by Osuna and chose to not follow the administrative committee process for Decedent's

20   placement.  Plaintiff further alleges that as the warden of Corcoran, Defendant Clark did not

21   ensure that his subordinates followed the proper procedure for placing an inmate in the cell of

22   another inmate, and failed to properly supervise Defendant Burns and other Corcoran staff to

23   ensure that the standardized administrative committee process was followed in this instance, and

24   instead approved and allowed the out-of-protocol decision to go forward.  Further, Defendants

25   Clark and Diaz failed to establish a procedure to document and track when inmates agree in

26   writing to be housed with one another, and failed to supervise subordinates to ensure that a

27   violent inmate never otherwise permitted to share a cell was actually prevented from sharing a

28   cell.

On the evening of March 8, 2019, after Decedent was housed with inmate Osuna, Defendants Clark, Burns, and Corcoran staff failed to conduct routine nightly safety check-ups at least every hour and failed to remove a bedsheet draped over the cell window.  Defendants did not make any safety checks for at least four hours, did not order Osuna or Decedent to take the bedsheets down at any point in the night, the guard station on the cell-block was empty during this time, and no correctional officer responded to the loud noises.  During the delay in nighttime safety checks, using a small razor, Osuna had time to decapitate Decedent, dismember Decedent's body, and cover the cell in blood.

Plaintiff alleges that Defendants Clark and Burns failed to supervise Doe Defendants responsible for conducting routine night-time safety checks, failed to require Doe Defendants to actually conduct routine night-time safety checks on the first night that Decedent was in a cell with Osuna, who they knew had never been celled with another inmate while in CDCR custody and who they knew posed a threat to other inmates, and failed to establish a system that would ensure night-time safety checks were actually conducted.  Plaintiff further alleges that Defendants Diaz, Clark, and Burns also failed to train on these above-issues, were aware of the deficiencies in training of the correctional officers tasked with enforcing night-time safety checks and the rule against permitting inmates to obstruct viewing into their cells.

Plaintiff alleges that Defendants Clark, Burns, and Does were deliberately indifferent to a substantial risk of serious harm to which Decedent was exposed, and their subjective awareness of such risk includes: choosing to ignore the proper administrative procedure for placing one inmate with another, despite having been put on notice that Osuna was a violent psychopath; affirmatively placing Decedent in a cell with Osuna, even though Osuna had not shared a cell with anyone before at Corcoran because he had been identified as a violent psychopath who posed a danger to fellow inmates; failing to ensure regular night-time security checks of the cell housing Decedent and Osuna, despite Osuna having been identified as a violent killer who posed a danger to fellow inmates; and for Burns and the Doe Defendants who were the correctional officers on shift over the night, failing to make regular checks despite a bedsheet draped inside Decedent and Osuna's cell that evening, which visibly prevented proper monitoring and would

1   have required the inmates to take it down, under the facility's own rules.

2          Plaintiff seeks general, exemplary, and punitive damages, as well as attorneys' fees.

3   **III.    Defendants' Motion to Dismiss**

4          A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a claim, and

5   dismissal is proper if there is a lack of a cognizable legal theory or the absence of sufficient facts

6   alleged under a cognizable legal theory. *Conservation Force v. Salazar*, 646 F.3d 1240, 1241–42

7   (9th Cir. 2011) (quotation marks and citations omitted). To survive a motion to dismiss, a

8   complaint must contain sufficient factual matter, accepted as true, to state a claim that is plausible

9   on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*,

10  550 U.S. 544, 555 (2007)) (quotation marks omitted); *Conservation Force*, 646 F.3d at 1242;

11  *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).

12         In considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6),

13  the court must accept as true the allegations of the complaint in question, *Erickson v. Pardus*, 551

14  U.S. 89 (2007), and construe the pleading in the light most favorable to the plaintiff. *Jenkins v.*

15  *McKeithen*, 395 U.S. 411, 421 (1969); *Meek v. Cty. of Riverside*, 183 F.3d 962, 965 (9th Cir.

16  1999). However, the Court need not credit "naked assertions," "labels and conclusions" or "a

17  formulaic recitation of the elements of a cause of action." *See Twombly*, 550 U.S. at 555–57.

18         Pursuant to Federal Rule of Civil Procedure 8, a complaint must contain "a short and plain

19  statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2).

20  Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause

21  of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678

22  (citation omitted). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a

23  claim to relief that is plausible on its face.' " *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S.

24  at 570). While factual allegations are accepted as true, legal conclusions are not. *Id.*; *see also*

25  *Twombly*, 550 U.S. at 556–57.

26         **A.      Conditions of Confinement and Failure to Protect Claims**

27         Defendants argue that Plaintiff's first and second causes of action, for "Conditions of

28  Confinement" and "Failure to Protect Inmate" under the Eighth Amendment against Defendants

1   Clark, Burns, and Does 1–15, are redundant, as both allege that Defendants failed to protect

2   Decedent from attack by another inmate under the Eighth Amendment.  (ECF No. 17-1, p. 10.)

3   Further, Plaintiff fails to allege facts showing that Defendants Burns or Clark knew that Decedent

4   was at a substantial risk of serious harm, and that they disregarded that risk.  Rather, Plaintiff sets

5   forth generalized and conclusory allegations that Defendants were "on notice" that Osuna should

6   not be double-celled, which are insufficient to state a cognizable claim under the Eighth

7   Amendment.  (*Id.* at 12–13.)

8           In opposition, Plaintiff contends that the first two causes of action are distinct, relying on

9   Ninth Circuit Model Jury Instructions 9.27 (Particular Rights – Eighth Amendment – Convicted

10  Prisoner's Claim Re Conditions of Confinement/Medical Care) and 9.28 (Particular Rights –

11  Eighth Amendment – Convicted Prisoner's Claim of Failure to Protect), and that the elements of

12  each claim are specifically pleaded in the FAC.

13          Prison officials have a duty under the Eighth Amendment to protect prisoners from

14  violence at the hands of other prisoners because being violently assaulted in prison is simply not

15  part of the penalty that criminal offenders pay for their offenses against society.  *Farmer v.*

16  *Brennan*, 511 U.S. 825, 833 (1994); *Clem v. Lomeli*, 566 F.3d 1177, 1181 (9th Cir. 2009); *Hearns*

17  *v. Terhune*, 413 F.3d 1036, 1040 (9th Cir. 2005).  Furthermore, "a prison official can violate a

18  prisoner's Eighth Amendment rights by failing to intervene."  *Robins v. Meecham*, 60 F.3d 1436,

19  1442 (9th Cir. 1995).  However, prison officials are liable under the Eighth Amendment only if

20  they demonstrate deliberate indifference to conditions posing a substantial risk of serious harm to

21  an inmate; and it is well settled that deliberate indifference occurs when an official acted or failed

22  to act despite his knowledge of a substantial risk of serious harm.  *Farmer*, 511 U.S. at 834, 841;

23  *Clem*, 566 F.3d at 1181; *Hearns*, 413 F.3d at 1040.

24          First, it is apparent to the Court that Plaintiff is attempting to bring Eighth Amendment

25  claims related to three specific actions taken or failures to act by Defendants Burns and Clark:

26  (1) forcing Decedent to share a cell with Osuna; (2) failing to ensure that routine cell-checks were

27  conducted; and (3) failing to enforce rules against bedsheets preventing visibility into cells.  (*See*

28  ECF No. 18, pp. 8–9.)  It is also clear that Plaintiff may bring claims related to a prison official's

6

1 failure to protect a prisoner by either failing to prevent a harm from occurring, *Farmer*, 511 U.S.

2 at 833, or failing to intervene in a harm that is taking place, *Robins*, 60 F.3d at 1442.  However, it

3 is not necessary to determine which action or failure to act falls under which type of Eighth

4 Amendment claim, as the Court finds that the allegations against Defendants Burns and Clark are

5 too conclusory to state cognizable claims against them in their individual capacities.

6        Plaintiff alleges that Defendants Burns and Clark were both "on notice" of the threat

7 Osuna posed to other inmates, because jail and prison reports from Osuna's years behind bars

8 documented his violent misconduct and establish that he was always single-celled, and CDCR

9 was in possession of documents from Osuna's own lawyers and medical team warning of Osuna's

10 propensity for extreme violence, insatiable desire to kill, and need to be held in a psychiatric

11 ward.  (ECF No. 15, p. 6.)  However, Plaintiff does not allege factual support that either

12 Defendant Burns or Clark knew of the incidents or records referenced when they placed Decedent

13 in a cell with Osuna, failed to ensure routine cell-checks were conducted, or failed to enforce

14 rules against bedsheets preventing visibility into cells.  Conclusory allegations that each

15 defendant was on notice are insufficient. Even assuming that such records were in the possession

16 of CDCR and were accessible by Defendants, the FAC fails to allege that Defendants had

17 *personally* accessed those records or were otherwise knew of the risk of harm posed by placing

18 another inmate in a cell with Osuna or failing to monitor the cell throughout the evening.

19 Plaintiff, therefore, fails to allege that Defendants had knowledge of a substantial risk of serious

20 harm to Decedent, and fails to state a cognizable claim against them under the Eighth

21 Amendment.

22        **B.     Supervisory Liability**

23        Insofar as Plaintiff is attempting to sue Defendant Diaz, Burns or Clark, or any other

24 defendant, based solely upon their supervisory role, he may not do so. Liability may not be

25 imposed on supervisory personnel for the actions or omissions of their subordinates under the

26 theory of respondeat superior. I*qbal*, 556 U.S. at 676–77; *Simmons v. Navajo Cty., Ariz.,* 609 F.3d

27 1011, 1020–21 (9th Cir. 2010); *Ewing v. City of Stockton*, 588 F.3d 1218, 1235 (9th Cir. 2009).

28 "A supervisor may be liable only if (1) he or she is personally involved in the constitutional

1    deprivation, or (2) there is a sufficient causal connection between the supervisor's wrongful

2    conduct and the constitutional violation." *Crowley v. Bannister*, 734 F.3d 967, 977 (9th Cir.

3    2013) (citation and quotation marks omitted); accord *Lemire v. Cal. Dep't of Corrs. & Rehab.*,

4    726 F.3d 1062, 1074–75 (9th Cir. 2013); *Lacey v. Maricopa Cty.*, 693 F.3d 896, 915–16 (9th Cir.

5    2012) (en banc).  "Under the latter theory, supervisory liability exists even without overt personal

6    participation in the offensive act if supervisory officials implement a policy so deficient that the

7    policy itself is a repudiation of constitutional rights and is the moving force of a constitutional

8    violation." *Crowley*, 734 F.3d at 977 (citing *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989))

9    (internal quotation marks omitted).

10        "A supervisor can be liable in his individual capacity for his own culpable action or

11   inaction in the training, supervision, or control of his subordinates[.]"  *Starr v. Baca*, 652 F.3d

12   1202, 1208  (9th Cir. 2011).  However, a failure to train theory can be the basis for a supervisor's

13   liability in only limited circumstances, such as where the failure amounts to deliberate

14   indifference to the rights of persons with whom the subordinates are likely to come into contact.

15   *See Canell v. Lightner*, 143 F.3d 1210, 1213–14 (9th Cir. 1998).  To impose liability under a

16   failure to train theory, a plaintiff must demonstrate the subordinate's training was inadequate, the

17   inadequate training was a deliberate choice on the part of the supervisor, and the inadequate

18   training caused a constitutional violation.  *Id.* at 1214; *see also City of Canton, Ohio v. Harris*,

19   489 U.S. 378, 391 (1989); *Lee v. City of Los Angeles*, 250 F.3d 668, 681 (9th Cir. 2001).  "A

20   pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to

21   demonstrate deliberate indifference for purposes of failure to train."  *Connick v. Thompson*, 563

22   U.S. 51, 61 (2011) (citation omitted).

23        As noted in Defendants' reply brief, Plaintiff has failed to defend her supervisory liability

24   claim against Defendant Diaz, as well as any claim related to a failure to train theory.  As to her

25   supervisory liability claims against Defendants Burns and Clark, those also fail for the reasons

26   previously discussed.  Even taking as true that Defendant Burns decided by bypass the normal

27   committee process for cell placements and affirmatively worked with Doe Defendants to ensure

28   that night-time safety checks were not conducted, and that Defendant Clark himself approved and

8

1   allowed the out-of-protocol cell placement to go forward, Plaintiff has failed to allege factual

2   support that either defendant had knowledge of a substantial risk of serious harm to Decedent in

3   placing him in a cell with inmate Osuna.  Plaintiff therefore fails to state a cognizable claim for

4   relief based on Defendants' supervisory conduct.

5           **C.     Loss of Familial Relations**

6           The Ninth Circuit has recognized that parents have a constitutionally protected liberty

7   interest in the companionship and society of their children.  *Wheeler v. City of Santa Clara*, 894

8   F.3d 1046, 1057 (9th Cir. 2018); *Chaudhry v. City of Los Angeles*, 751 F.3d 1096, 1106 (9th Cir.

9   2014); *Porter*, 546 F.3d at 1136.  "Parents and children may assert Fourteenth Amendment

10  substantive due process claims if they are deprived of their liberty interest in the companionship

11  and society of their child or parent through official conduct."  *Lemire v. Cal. Dep't. of Corrs. &*

12  *Rehab.*, 726 F.3d 1062, 1075 (9th Cir. 2013).  "[T]he substantive component of the Due Process

13  Clause is violated by executive action only when it 'can properly be characterized as arbitrary, or

14  conscience shocking, in a constitutional sense.'"  *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 847

15  (1998); *see also Porter v. Osborn*, 546 F.3d 1131, 1137 (9th Cir. 2008) ("only official conduct

16  that 'shocks the conscience' is cognizable as a due process violation.").  "[O]nly the most

17  egregious official conduct can be said to be arbitrary in a constitutional sense."  *Brittain v.*

18  *Hansen*, 451 F.3d 982, 990 (9th Cir. 2006) (quoting *Lewis*, 523 U.S. at 846).

19          In evaluating claims of interference with familial relations, it is the same allegations of

20  violations of the decedent's rights that provide the basis for the substantive due process claim.

21  *Smith v. City of Fontana*, 818 F.2d 1411, 1420 (9th Cir. 1987), *overruled on other grounds by*

22  *Hodgers-Durgin v. de la Vina*, 199 F.3d 1037 (9th Cir. 1999); *Crowe v. Cty. of San Diego*, 608

23  F.3d 406, 441 (9th Cir. 2010).  Where a claim for interference with familial relationships that is

24  integrally predicated upon, or entwined with, other conduct that is alleged to be unconstitutional,

25  the finding that the other conduct is constitutional generally will preclude recovery for

26  interference with familial relationship.  *See Gausvik v. Perez*, 392 F.3d 1006, 1008 (9th Cir.

27  2004).

28  ///

1    As discussed above, the FAC sets forth only conclusory allegations that Defendants Burns

2    and Clark had knowledge of a substantial risk of serious harm to Decedent, and therefore

3    Plaintiff's claim for loss of familial relations fails.

4         **D.    Conspiracy**

5    Plaintiff alleges a claim for conspiracy pursuant to 42 U.S.C. §§ 1983, 1985, and 1988.

6    First, § 1988 does not create an independent cause of action. *See Moor v. Alameda Cty.*,

7    411 U.S. 693, 702 (1973).  With respect to the § 1985 claim, the Court agrees that dismissal is

8    appropriate.  To state a claim under 42 U.S.C. § 1985(3), Plaintiff must allege that Defendants

9    acted from "some racial, or perhaps otherwise class-based, invidiously discriminatory animus" in

10   conspiring to deprive Plaintiff of equal protection of the laws.  *Griffin v. Breckenridge*, 403 U.S.

11   88, 102–03 (1971).  The Ninth Circuit has "extended [section 1985(3)] beyond race only when

12   the class in question can show that there has been a governmental determination that its members

13   require and warrant special federal assistance in protecting their civil rights."  *Schultz v.*

14   *Sundberg*, 759 F.2d 714, 718 (9th Cir. 1985) (internal quotation marks omitted).  Plaintiff fails to

15   allege any animus on the part of any Defendants, or that Plaintiff or Decedent were members of

16   any class warranting special protections.  Finally, as noted by Defendants, Plaintiff has failed to

17   defend her conspiracy claims under §§ 1988 or 1985, or against Defendant Clark under any

18   statute.

19   As to the remaining § 1983 conspiracy claim against Defendant Burns, "[c]onspiracy is

20   not itself a constitutional tort under § 1983," and it "does not enlarge the nature of the claims

21   asserted by the plaintiff, as there must always be an underlying constitutional violation."  *Lacey v.*

22   *Maricopa Cty.*, 693 F.3d 896, 935 (9th Cir. 2012) (en banc).  To establish a conspiracy, Plaintiff

23   allege specific facts showing "an agreement or meeting of the minds to violate constitutional

24   rights.  To be liable, each participant in the conspiracy need not know the exact details of the

25   plan, but each participant must at least share the common objective of the conspiracy."  *Franklin*

26   *v. Fox*, 312 F.3d 423, 441 (9th Cir. 2002) (internal citations and quotation marks omitted).  The

27   mere conclusory statement that defendants "conspired" together is not sufficient to state a

28   cognizable claim.  *Woodrum v. Woodward Cty.*, 866 F.2d 1121, 1126 (9th Cir. 1989).

1    Plaintiff's conspiracy claim against Defendant Burns lacks factual allegations

2    demonstrating a meeting of the minds to violate constitutional rights.  Plaintiff's conclusory

3    statement that Defendants had "knowledge and a meeting of the minds," without pleading

4    specific facts showing that such an agreement or meeting of the minds was reached, is not

5    sufficient to state a cognizable claim.  *Woodrum*, 866 F.2d at 1126.  Furthermore, and as

6    discussed previously, Plaintiff has failed to plead an underlying constitutional violation because

7    she has failed to allege that Defendant Burns had the requisite knowledge of a substantial risk of

8    serious harm to Decedent, such that he could disregard that risk.

9         **E.    Qualified Immunity**

10   Qualified immunity protects "government officials . . . from liability for civil damages

11   insofar as their conduct does not violate clearly established statutory or constitutional rights of

12   which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

13   When considering an assertion of qualified immunity, the court makes a two-pronged inquiry:

14   (1) whether the plaintiff has alleged the deprivation of an actual constitutional right and

15   (2) whether such right was clearly established at the time of defendant's alleged misconduct.  *See*

16   *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (quoting *Saucier v. Katz*, 535 U.S. 94, 201

17   (2001)).  Lower courts have discretion to decide which of the two prongs of the qualified

18   immunity analysis to tackle first.  *See Pearson*, 555 U.S. at 236.

19   As the Court has repeatedly explained, Plaintiff has failed to allege a violation of a

20   constitutional right in the FAC.  Because the Court finds that the first prong of the qualified

21   immunity inquiry is not satisfied, it need not reach the first.

22        **F.    State Law Claims**

23   Pursuant to 28 U.S.C. § 1367(a), in any civil action in which the district court has original

24   jurisdiction, the district court "shall have supplemental jurisdiction over all other claims in the

25   action within such original jurisdiction that they form part of the same case or controversy under

26   Article III," except as provided in subsections (b) and (c).  "The district court may decline to

27   exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has

28   dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(3).  The

Supreme Court has cautioned that "if the federal claims are dismissed before trial, . . . the state claims should be dismissed as well."  *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966).

Here, Plaintiff raises various claims under provisions of California state law, including negligent supervision, wrongful death, and failure to summon medical care.  (ECF No. 15, pp. 18–20.)  As discussed above, the FAC fails to state any cognizable federal claims.  It will therefore be recommended that the Court decline to exercise supplemental jurisdiction over Plaintiff's state law claims.

### G.       Failure to Join Necessary Party

Defendants argue that Plaintiff has failed to join Decedent's father, a necessary party.  Plaintiff argues in opposition that Decedent's father is not a necessary party because he did not sustain a loss such that recovery is warranted, and that Defendants do not face multiple obligations because the statute of limitations for Decedent's father has already run.  Even if the Court finds he is a necessary party, Plaintiff contends that it is not feasible to join Decedent's father because the Court lacks personal jurisdiction and in any event he is not an indispensable party.

#### 1.       Legal Standard

Federal Rule of Civil Procedure19 governs the circumstances under which persons must be joined as parties to the action. "Federal Rule of Civil Procedure 19 imposes a three-step inquiry."  *Salt River Project Agr. Imp. & Power Dist. v. Lee*, 672 F.3d 1176, 1179 (9th Cir. 2012) (footnote and citation omitted).

"Is the absent party necessary (i.e., required to be joined if feasible) under Rule 19(a)?

2. If so, is it feasible to order that the absent party be joined?

3. If joinder is not feasible, can the case proceed without the absent party, or is the absent party indispensable such that the action must be dismissed?"

*Id.*

In the first step, the court asks if the absent party is "necessary . . . under Rule 19(a)."  *Id.*

1    A party may be necessary under Rule 19 if: (1) "in that person's absence, the court cannot accord

2    complete relief among existing parties;" (2) "that person claims an interest relating to the subject

3    of the action . . . and disposing of the action in the person's absence may as a practical matter

4    impair or impede the person's ability to protect the interest;" or (3) "that person claims an interest

5    relating to the subject of the action . . . and resolving the action in the person's absence may

6    leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise

7    inconsistent obligations because of the interest."  Fed. R. Civ. P. 19(a)(1)(A) and (B).

8        If the absent party is necessary, the second step asks whether it is feasible to order that the

9    absent party be joined.  *Salt River*, 672 F.3d at 1179.  If joinder of a necessary party is not

10   feasible, a plaintiff must nevertheless allege the name of the necessary party and the reasons for

11   not joining that person.  Fed. R. Civ. P. 19(c).

12       At the third step, the court then asks if the case can proceed without the absent party, or is

13   the absent party indispensable such that the action must be dismissed.  *Salt River*, 672 F.3d at

14   1179.  The third step of the Rule 19 inquiry is one of "equity and good conscience" that requires a

15   "practical examination of the circumstances" and consideration of at least four interests: (1) the

16   plaintiff's interest in having a forum; (2) the defendant's interest in not proceeding without the

17   required party; (3) the interest of the non-moving party by examining the extent to which the

18   judgment may, as a practical matter, impair or impede its ability to protect its interest in the

19   matter; and (4) the interests of the courts and the public in complete, consistent, and efficient

20   settlement of controversies.  *Paiute-Shoshone Indians of the Bishop Cmty. v. City of Los Angeles*,

21   637 F.3d 993, 997–1000 (9th Cir. 2011).

22       As to Plaintiff's state law claims, California courts have ruled that a non-joined heir to a

23   wrongful death action is not an "indispensable party," and courts have jurisdiction to try a

24   wrongful death action even absent joinder of one or more heirs of the decedent.  *Ruttenberg v.*

25   *Ruttenberg*, 53 Cal. App. 4th 801, 808 (Cal. Ct. App. 1997).  However, while not "indispensable,"

26   omitted heirs are still "necessary parties," in that the plaintiff heirs have a mandatory duty to join

27   all known, omitted heirs in the single action for wrongful death.  *See id.*

28   ///

13

1                    **2.     Decedent's Father is a Necessary Party**

2          On the facts as alleged in the FAC, and pursuant to Federal Rule of Civil Procedure 19

3   and decisions of California courts, the Court finds that Decedent's father is a necessary party

4   because of the claims arising from Decedent's death, and Plaintiff has a mandatory duty to join

5   Decedent's father, a known omitted heir, in this action.  While Plaintiff argues in opposition to

6   the motion to dismiss that Decedent's father has no interest in this action because he has not had

7   contact with Decedent or Plaintiff since Decedent was three years old and therefore has not

8   suffered a loss due to Decedent's passing, Plaintiff has not alleged such facts in the FAC.

9          Plaintiff's arguments as to the Court's lack of personal jurisdiction or the statute of

10  limitations are unpersuasive on both the law and the facts alleged.  Decedent's father, if joined in

11  this action, may consent to the Court's personal jurisdiction and may allege facts demonstrating

12  that his claims are not barred by the statute of limitations.  Finally, it is apparent that resolving

13  this action in the absence of Decedent's father may leave Defendants at substantial risk of

14  incurring multiple or inconsistent obligations if Decedent's father later attempts to bring a

15  separate claim against Defendants, regardless of the outcome of the instant action.

16         At the second step, the Court cannot find that it is not feasible to join Decedent's father to

17  this action.  Plaintiff alleges that after Plaintiff and Decedent moved from Guatemala, Decedent's

18  father "remained in Guatemala, and to Plaintiff's knowledge [he] never moved to the United

19  States and has never entered the United States."  (ECF No. 15, p. 3.)  These allegations alone are

20  not sufficient to demonstrate that it is not feasible for Decedent's father to be joined.  While it

21  may be burdensome for Plaintiff to locate Decedent's father in Guatemala after so many years, it

22  is feasible to join him because he is subject to service of process and his joinder will not deprive

23  the Court of subject matter jurisdiction under 42 U.S.C. § 1983.  *See* Fed. R. Civ. P. 19(a)(1).

24         Even assuming that it is not feasible for Decedent's father to be joined, the parties have

25  not provided enough information regarding the relevant factors for the Court to determine

26  whether this action may proceed in his absence, as required by the third step of Rule 19.  *See* Fed.

27  R. Civ. P. 19(b)(1)–(4) (factors for court to consider); *Paiute-Shoshone Indians*, 637 F.3d at 1000

28  (Rule 19(b) requires us to undertake a "practical examination of [the] circumstances" to

                                                        14

1    determine whether an action may proceed "in equity and good conscience" without the absent

2    party.)

3    **IV.**    <u>**Conclusion and Recommendation**</u>

4        For the reasons stated, the Court finds Plaintiff's first amended complaint fails to state a

5    cognizable federal claim for relief and that Decedent's father is a necessary party to this action.

6    The Court will recommend that Plaintiff be granted leave to file an amended complaint to cure

7    the above-identified deficiencies to the extent she is able to do so in good faith. *Lopez v. Smith*,

8    203 F.3d 1122, 1127 (9th Cir. 2000).

9        Accordingly, IT IS HEREBY RECOMMENDED that:

10    1.  Defendants' motion to dismiss (ECF No. 17), be GRANTED; and

11    2.  Plaintiff be permitted leave to file a second amended complaint.

12                          \* \* \*

13        These Findings and Recommendations will be submitted to the United States District

14    Judge assigned to the case, under 28 U.S.C. § 636(b)(l). Within **fourteen (14) days** after being

15    served with these Findings and Recommendations, the parties may file written objections with the

16    Court. The document should be captioned "Objections to Magistrate Judge's Findings and

17    Recommendations." The parties are advised that failure to file objections within the specified

18    time may result in the waiver of the "right to challenge the magistrate's factual findings" on

19    appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923

20    F.2d 1391, 1394 (9th Cir. 1991)).

21

22    IT IS SO ORDERED.

23      Dated:    **August 12, 2021**             /s/ *Barbara A. McAuliffe*

24                               UNITED STATES MAGISTRATE JUDGE

25

26

27

28