| | |
|---|---|
| Justin E. Sterling, State Bar No. 249491<br>LAW OFFICES OF JUSTIN STERLING<br>Justin@SterlingDefense.com<br>15760 Ventura Blvd. Suite 700<br>Encino, CA 91436<br>Tel. (818) 995-9452/Fax. (818) 824-3533. | Erin Darling, State Bar No. 259724<br>LAW OFFICES OF ERIN DARLING<br>Erin@ErinDarlingLaw.com<br>3435 Wilshire Blvd. Suite 2910<br>Los Angeles, CA 90010<br>Tel. (323) 736-2230 |

Attorneys for Plaintiff Dora Solares

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DORA SOLARES, an individual,<br><br>　　　　Plaintiff,<br>　　v.<br>RALPH DIAZ, in his individual capacity, KENNETH CLARK, in his individual capacity, JOSEPH BURNS, in his individual, and DOES 1 TO 15, in their individual capacities<br><br>　　　　Defendants. | Case No. 1:20-cv-00323-NONE-BAM<br><br>**OBJECTIONS TO MAGISTRATE JUDGE'S FINDINGS AND RECOMMENDATIONS**<br><br>**Judge:**　　Hon. Dale A. Drozd |

Plaintiff Dora Solares, on behalf of herself and as successor-in-interest to her son, Luis Romero ("Decedent") hereby files her Objections to the Magistrate Judge's Findings and Recommendations Regarding Defendants' Motion to Dismiss First Amended Complaint Findings and Recommendations. (Dkt. No. 36)

Respectfully submitted,

Dated: August 26, 2021　　　　　LAW OFFICES OF ERIN DARLING

　　　　　　　　　　　　　　By: _____/s/Erin Darling_____
　　　　　　　　　　　　　　　　Erin Darling,
　　　　　　　　　　　　　　　　Attorney for Plaintiff

# **TABLE OF CONTENTS**

Page

I. INTRODUCTION ..................................................................................................1

II. THE FAC ADEQUATELY STATES CLAIMS AGAINST CLARK AND BURNS ..........................................................................................................1

    A. Conditions of Confinement and Failure to Protect Claims ..........................2

        1. The FAC alleges that Defendants Burns and Clark Knew of Incidents Involving Osuna and Had Been Segregated from Other Inmates..........................................................................................2

        2. The FAC alleges that Defendants Burns and Clark Failed to Ensure Routine Cell Checks...............................................................4

    B. Supervisory Liability ....................................................................................5

    C. Loss of Familial Relations ...........................................................................7

    D. Conspiracy Claim Will be Dismissed ..........................................................7

    E. Qualified Immunity ......................................................................................7

III. THE DECEDENT'S FATHER IS NOT A NECESSARY PARTY AND CANNOT BE FEASIBLY JOINED .....................................................................7

    A. Under Rule 19(a), the Elder Mr. Romero is Not Necessary ........................7

        1. First Prong: No Involvement to Merit Protection .............................8

        2. Second Prong: the Statute of Limitations .........................................9

    B. Under Rule 19(b) it is Not Feasible to Join Mr. Romero...........................10

        1. No Personal Jurisdiction ..................................................................11

        2. Case Can Proceed Without an Indispensable Party ........................11

IV. ADDITIONAL STATE LAW CLAIM AFTER TIMELY § 910 CLAIM.............12

V. CONCLUSION ...................................................................................................14

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Ashcroft v. Iqbal*,
　556 U.S. 662 (2009) ...................................................................................................1

*Bell Atl. Corp. v. Twombly*,
　550 U.S. 544 (2007) ...................................................................................................1

*Eldredge v. Carpenters 46 Northern California Counties Joint Apprenticeship and Training Committee*,
　662 F.2d 534 (9th Cir.1981) .......................................................................................8

*Hansen v. Black*,
　885 F.2d 642 (9th Cir. 1989) ......................................................................................6

*International Shoe Co. v. State of Wash., Office of Unemployment Compensation and Placement*,
　326 U.S. 310 (1945) .................................................................................................11

*Johnson v. City of Shelby*,
　574 U.S. 10 (2010) .....................................................................................................2

*Kirkpatrick v. Cnty. of Washoe*,
　843 F.3d 784 (9th Cir. 2016) ......................................................................................8

*Kramer v. Autobytel, Inc.*,
　759 F.Supp.2d 1165 (N.D. Cal. 2010) ........................................................................5

*Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*,
　507 U.S. 163 (1993) ................................................................................................1, 2

*Lehr v. Robertson*,
　463 U.S. 248 (1983) ...................................................................................................8

*Lopez v. Smith*,
　203 F.3d 1122 (9th Cir. 2000) ..................................................................................13

*Mayfield v. Cnty. of Merced*,
　(E.D. Cal. Nov. 10, 2014) ...........................................................................................1

*Wheeler v. City of Santa Clara*,
　894 F.3d 1046 (9th Cir. 2018) ....................................................................................8

# TABLE OF AUTHORITIES

Page(s)

*White v. Univ. of Cal.*,
   765 F.3d 1010 (9th Cir.2014) ........................................................................... 7

**State Cases**

*Andersen v Barton Memorial Hospital, Inc.*,
   166 Cal.App.3d 678 (1985) ....................................................................... 10, 12

*Cross v. Pacific Gas & Elec. Co.*,
   60 Cal. 690 (1964) ............................................................................................ 9

*Cross v. Pacific Gas & Elec. Co.*,
   *supra.*, 60 Cal.2d at p. 692 ............................................................................ 11

*Washington v. Nelson*
   (1979) 100 Cal.App.3d 47 .............................................................................. 11

*Estate of Riccomi*,
   185 Cal. 458 (1921) .......................................................................................... 9

*Sanders v. Fuller*
   (1975) 45 Cal.App.3d 994 .............................................................................. 11

**State Statutes**

Cal. Gov. Code, § 911.2(a) .................................................................................... 10

Cal. Gov. Code § 945.4 ......................................................................................... 10

Cal. P. Code § 647.9 .............................................................................................. 12

Cal. Tort Claims Act ............................................................................................. 10

**Rules & Regulations**

Fed. Rule. Civ. Proc. 8(a)(2) ................................................................................... 2

Fed. R. Civ. Proc. 9 ................................................................................................. 1

Fed. R. Civ. Proc. 12(b)(6) .............................................................................. 13, 14

Fed. R. Civ. Proc. 15(d) .................................................................................... 1, 12

Fed. R. Civ. Proc. 19 ..................................................................................... 7, 8, 10, 11

# TABLE OF AUTHORITIES

Page(s)

**Constitutional Provisions**

U.S. Const. Amend. VIII ................................................................................................. 2, 4

U.S. Const. Amend. XIV ............................................................................................ 8, 9, 10

## I. INTRODUCTION

As described herein, Plaintiff objects to the Magistrate Judge's Findings and Recommendations Regarding Defendants' Motion to Dismiss First Amended Complaint Findings and Recommendations. (Dkt. No. 36, hereinafter referred to as "Findings and Recommendations"). In particular, the Plaintiff objects to the finding that the First Amended Compliant ("FAC") (Dkt. No. 15) contains merely conclusory allegations that do not support individual § 1983 claims against Defendants Clark, Burns and Does 1-15, and therefore does not support a supervisory liability claim, a loss of familial relations claim, and that since there are no federal claims, the Court should not exercise supplemental jurisdiction over state claims. Additionally, Plaintiff objects to the finding that Decedent's father is a necessary party and can feasibly be joined. Plaintiff objects that the FAC should be dismissed and requests that Defendants be held to answer. Last, Plaintiff would call the Court's attention to additional claims that arise from facts learned since the filing of the FAC, namely, that gruesome photographs of Decedent's mutilated body were published online, and Plaintiff requests to file a Supplemental Pleading pursuant to Fed. R. Civ. P. 15(d) to bring a claim pursuant to Cal. Penal Code § § 647.9, which was enacted in 2020.

## II. THE FAC ADEQUATELY STATES CLAIMS AGAINST CLARK AND BURNS

Federal courts may not apply "heightened pleading" to § 1983 claims. *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163 (1993). The Supreme court in *Bell Atl. Corp. v. Twombly* affirmed that, "we do not apply any 'heightened' pleading standard, nor do we seek to broaden the scope of Federal Rule of Civil Procedure 9, which can only be accomplished 'by the process of amending the Federal Rules, and not by judicial interpretation,' [internal citations omitted.])" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 569, n. 14 (2007). Some courts questioned *Leatherman* following the Supreme Court's decisions in *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). See, e.g., *Mayfield v. Cnty. of Merced*, No. 1:13-cv-01619-LJO, 2014 WL 5822913, at *2

n.3 (E.D. Cal. Nov. 10, 2014). However, the Supreme Court subsequently affirmed the *Leatherman* notice-pleading rule in *Johnson v. City of Shelby*, 574 U.S. 10, 11 (2010).[1]

## A. Conditions of Confinement and Failure to Protect Claims

The Findings and Recommendations states: "Plaintiff does not allege factual support that either Defendant Burns or Clark knew of the incidents or records referenced when they placed Decedent in a cell with Osuna, failed to ensure routine cell-checks were conducted, or failed to enforce rules against bedsheets preventing visibility into cells." (Dkt. 36 at 7) As described below, the FAC does adequately allege that Defendants Burns and Clark: (1) knew of incidents and records when they placed Decedent in Osuna's cell; (2) failed to ensure routine cell-checks were conducted and did not enforce rules against preventing visibility into cells.

### 1. The FAC alleges that Defendants Burns and Clark Knew of Incidents Involving Osuna and Had Been Segregated from Other Inmates

The Findings and Recommendations states that "Plaintiff fails to allege facts showing that Defendants Burns or Clark knew that Decedent was at a substantial risk of serious harm, and that they disregarded that risk. Rather, Plaintiff sets forth generalized and conclusory allegations that Defendants were 'on notice' that Osuna should not be double-celled, which are insufficient to state a cognizable claim under the Eighth Amendment. (*Id.* at 12–13.)"

---

[1] The Court in *Johnson* stated: "Federal pleading rules call for a 'short and plain statement of the claim showing that the pleader is entitled to relief,' Fed. Rule. Civ. Proc. 8(a)(2); they do not countenance dismissal of a complaint for imperfect statements of the legal theory supporting the claim asserted. See Advisory Committee Report of October 1955, reprinted in 12A C. Wright, A. Miller, M. Kane, R. Markus, & A. Steinman Federal Practice and Procedure 644 (2014) (Federal Rules of Civil Procedure 'are designed to discourage battles over mere form of statements'); 5 C. Wright & A. Miller, Federal Practice and Procedure § 1215, p. 172 (3d ed. 2004) (Rule 8(a)(2) 'indicates that a basic objective of the rules is to avoid civil cases turning on technicalities'). In particular, no heightened pleading rule requires plaintiffs seeking damages for violations of constitutional rights to invoke § 1983 expressly in order to state a claim. See *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,* 507 U.S. 163, 164, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993)."

Plaintiff respectfully disagrees. Plaintiff's allegations regarding defendants Clark and Burns are not conclusory and specifically allege how each man was on notice.

First, the FAC sets forth specific allegations as to how Burns and Clark were on notice. Paragraph 15 of the FAC, starts with a sentence, "Burns, Clark and Diaz, were on notice that Jaime Osuna posed a threat to other inmates and should not share a cell with anyone," (Dkt. 15 at 6, ll. 1-2). The remaining portion of Paragraph 15 then describes the particular details about how Burns, Clark and Diaz were on notice: "jail and prison reports" warning of Osuna's "propensity for extreme violence, insatiable desire to kill, and need to be held in a psychiatric ward, not in a prison with other inmates," (*id.* at 6, ll. 7-8); "Osuna's violent behavior while incarcerated at the Kern County Jail awaiting trial in his original murder case, including one incident that resulted in Osuna being charged with attempted murder," (*id.* at 6, ll. 9-11); "Osuna was serving a no-parole sentence for torture killing of a Bakersfield woman in 2011," (*id.* at 6, ll. 12-13); "Osuna posed a danger to anyone he shared a cell, which is why he had never had a cell-mate at Corcoran before." *Id.* at 6, ll. 13-14. Rather than state general allegations, Paragraph 15 describes the incidents of which Defendants Burns, Clark and Diaz were on notice.

Additionally, the FAC explicitly describes in Paragraph 13 that Paragraphs 16-17 applies to Defendant Burns: "Defendant Burns and Does chose to not follow this standardized administrative committee process, and rushed to place Mr. Romero with convicted murderer and single-celled inmate Jaime Osuna, **despite knowing that Osuna was a danger to anyone around him, as described in Paragraphs 16 and 17**." (Dkt. 15 at 5, ll. 18-21) (emphasis added). Similarly, Paragraph 19 of the FAC states that: "As described in **Paragraphs 16-17**, **Defendant Clark was on notice** of the particular violent nature of Jaime Osuna but took no steps to ensure that Osuna remained single-celled." (Dkt. 15 at 8, ll. 19-21) (emphasis added).

Paragraph 16 sets forth *how* Defendant Burns and Defendant Clark were on notice: "According to CDCR records, in 2012, a guard caught Jaime Osuna with a five-inch metal shank. That same report describes Osuna has a high-risk inmate to be housed in a secured

3

single cell with no inmate contact," (Dkt. 15 at 6, ll. 15-17); "[s]hortly after the 2012 incident…Osuna stabbed and slashed the face of the inmate, resulting in 67 stitches," (*id.* at 6, ll. 20-21); "[p]rison reports from 2016 also list Osuna as high-risk staff assaultive and an administrative segregated inmate." *Id.* at 6, ll. 23-24. The FAC does not just state that these gory details are in CDCR files, it explicitly states that Defendant Burns and Clark were on notice of these gory details, and the Osuna was "an administrative segregated inmate." *Id.*

Paragraph 18 emphasizes how Defendants Clark and Burns were on notice in the context of explaining how the two officials made their decision to place Romero in Osuna's cell: "**Despite being put on notice** that Osuna would kill again if placed in close proximity to another inmate, and despite glaring evidence that Osuna was an inmate who should not be housed with any other inmate, Defendant Burns and the Doe defendants who also were responsible for implementing the standardized administrative committee process, as well as Defendant Clark who was responsible for supervising and approving the decisions of the administrative committee process, chose to ignore the known risk of Osuna and placed Luis Romero in a cell with Jaime Osuna within 24 hours of Romero arriving at Corcoran jail." (Dkt. 15 at 7, l. 22 -8, l. 1)

Thus, Plaintiff has adequately alleged that Defendants Clark and Burns had knowledge of the substantial risk of serious harm to Decedent by placing him in a cell with Osuna.

2. **The FAC alleges that Defendants Burns and Clark Failed to Ensure Routine Cell Checks**

The Findings and Recommendations states that Plaintiff does not allege factual support that Defendants Burns and Clark "failed to ensure routine cell-checks were conducted or failed to enforce rules against bedsheets preventing visibility into cells." (Dkt. 36 at 7)

Paragraph 20 of the FAC alleges that Defendants Burns and Clark "failed to conduct routine safety check-ups, even when a bedsheet was impermissibly draped inside the cell." (Dkt. 15 at 9, ll. 6-7) Plaintiff submit that in alleging that something did not happen (safety

4

checks), she is not required to prove a negative; to allege that something was not done it suffices to say Defendants did not do that thing. Yet, the FAC does indeed provide more factual support. Paragraph 21 alleges: "On the evening of March 8, 2019, however, defendants Clark, Burns and Does did not enforce the normal rules, despite being put on notice of the danger that Osuna posed." (Dkt. 15 at 9, ll. 6-7)

Paragraph 21 then describes how rules were not enforced, that Burns ensured that routine safety checks did not happen for at least four hours, did not order bedsheets down, and making sure the guard station was empty:

> Burns and Doe defendants, correctional officers at Corcoran assigned to the cellblock that Romero and Osuna were housed on the evening of March 8, 2019, affirmatively worked together to ensure that correctional officers did not conduct any night-time safety checks. Routine safety checks are supposed to occur at least every hour, and normally every twenty minutes, and a guard station is located around 100 feet of the cell that held Romero and Osuna. On March 8, 2019, Does, who are supervised by Burns, colluded to ensure a number of highly unusual omissions: they never made any safety checks for at least four hours; they did not order Osuna (or Romero) to take the bedsheets down at any point in the night; the guard station on the cell-block was empty during this time and no correctional officer responded to the loud noises.

(Dkt. 15 at 9, ll. 15-25)

The FAC adequately alleges that Defendants Burns made sure that what was required to happen per normal procedure did not actually happen. Plaintiff does not have to describe what particular words were uttered or context of each message to his subordinates. See e.g. *Kramer v. Autobytel, Inc.*, 759 F.Supp.2d 1165, 1172 (N.D. Cal. 2010) (In context of allegation of unlawful unsolicited commercial telemarketing via mass texts, "notice pleading standards do not require a plaintiff to allege details at the pleading stage about the time and context of every text message.")

## B. Supervisory Liability

A supervisor can be held liable in his or her individual capacity under § 1983 only if (1) he or she personally participated in the constitutional violation, or (2) there is a "sufficient

5

causal connection between the supervisor's wrongful conduct and the constitutional violation." *Hansen v. Black*, 885 F.2d 642, 645-46 (9th Cir. 1989).

Ninth Circuit model jury instruction 9.4 "Section 1983 Claims Against Supervisory Defendant in Individual Capacity – Elements and Burden of Proof" set for the elements Plaintiff must establish at trial: (1) the supervisory defendant acted under color of state law; (2) the [act[s]] [failure to act] of the supervisory defendant's subordinate[s] [*name[s]*] deprived the plaintiff of [his] [her] particular rights under [the United States Constitution] as explained in later instructions; 3. [the supervisory defendant directed [his] [her] subordinate[s] in the [act[s]] [failure to act] that deprived the plaintiff of these rights;] o*r* [the supervisory defendant set in motion a series of acts by [his] [her] subordinate[s], or knowingly refused to terminate a series of acts by [his][her] subordinate[s], that [he] [she] knew or reasonably should have known would cause the subordinate[s] to deprive the plaintiff of these rights;]… and 4. The supervisory defendant's conduct was so closely related to the deprivation of the plaintiff's rights as to be the moving force that caused the ultimate injury."[2] Manual of Model Civil Jury Instructions, 9.4 (2018).

The supervisory liability claim raised in the FAC is not just a failure to train. Paragraph 21 of the FAC alleges that: "Burns and Doe defendants, correctional officers at Corcoran assigned to the cellblock that Romero and Osuna were housed on the evening of March 8, 2019, affirmatively worked together to ensure that correctional officers did not conduct any night-time safety checks." (Dkt. 15 at 9, l. 15-19)

The FAC alleges each of these elements. The Findings and Recommendations states, "Plaintiff has failed to allege factual support that either defendant had knowledge of a substantial risk of serious harm to Decedent in placing him in a cell with inmate Osuna." (Dkt. 36 at 9) As described above, the FAC does allege how Defendants Burns and Clark had knowledge of the substantial risk of serious harm posed to Decedent were he to share a cell with Osuna.

---

[2] *Available at:* https://www.ce9.uscourts.gov/jury-instructions/node/141

Read together, Paragraphs 13, 15, 16, 18, 20 and 21 set forth how Burns and Clark were on notice, not just the mere fact that they were on notice. (Dkt. 15 at 3-7, 9)

C. **Loss of Familial Relations**

The Findings and Recommendations states, "[a]s discussed above, the FAC sets forth only conclusory allegations that Defendants Burns and Clark had knowledge of a substantial risk of serious harm to Decedent, and therefore Plaintiff's claim for loss of familial relations fails." (Dkt. 36 at 10) Again, Plaintiff objects to this and submits that a review of Paragraphs 13, 15, 16, 18, 20 and 21 of the FAC demonstrates how Burns and Clark were on notice, not just the mere fact that they were on notice.

D. **Conspiracy Claim Will be Dismissed**

Plaintiff will dismiss the Conspiracy claim.

E. **Qualified Immunity**

The Findings and Recommendations states, "[b]ecause the Court finds that the first prong of the qualified immunity inquiry is not satisfied, it need not reach the first." (Dkt. 36 at 11) Plaintiff objects to the finding that the first prong has not been met. As described above in Section II.A., the FAC details the alleged constitutional violation and how Defendants Clark and Burns were on notice. If the Court were to address the second prong of the Qualified Immunity analysis, Plaintiff's Opposition to the Motion to Dismiss details how the law is clearly established at the time of Mr. Romero's murder. (Dkt. 18 at 9-11)

III. **THE DECEDENT'S FATHER IS NOT A NECESSARY PARTY AND CANNOT BE FEASIBLY JOINED**

A. **Under Rule 19(a), the Elder Mr. Romero is Not Necessary**

Rule 19(a) provides a two-prong inquiry for determining whether a party is necessary. *White v. Univ. of Cal.*, 765 F.3d 1010, 1026 (9th Cir.2014). A party is necessary if (1) "in that person's absence, the court cannot accord complete relief among existing parties" or (2) "that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may ... impair or impede the person's ability to protect the interest; or leave an existing party subject to a substantial risk

of incurring double, multiple, or otherwise inconsistent obligations because of the interest." Fed. R. Civ. P. 19(a).

### 1. First Prong: No Involvement to Merit Protection

The first prong of the rule is concerned only with "relief as between the persons already parties, not as between a party and the absent person whose joinder is sought." *Eldredge v. Carpenters 46 Northern California Counties Joint Apprenticeship and Training Committee*, 662 F.2d 534, 537 (9th Cir.1981) (quoting 3A Moore's Federal Practice P 19.07-1(1), at 19-128 (2d ed. 1980). The court can accord complete relief among the existing parties, Dora Solares is the only heir with any connection to the decedent and thus the only heir who sustained a loss, and as described below, the elder Mr. Romero would not be entitled to damages under state or federal law.

Regarding federal claims, the FAC alleges facts that establish that Decedent's absentee father did not sustain a loss for purposes of the Fourteenth Amendment. In *Wheeler v. City of Santa Clara*, 894 F.3d 1046, 1058 (9th Cir. 2018), the Ninth Circuit addressed an absentee parent's ability to bring Fourteenth Amendment claims for loss of companionship. Citing the Supreme Court's holding in *Lehr v. Robertson*, 463 U.S. 248 (1983), the Ninth Circuit outlined the limits to a biological parent's ability to bring claims pursuant to the Fourteenth Amendment:

> In the context of parent-child relationships specifically, the Supreme Court has emphasized that the rights of parents are a counterpart of the responsibilities they have assumed: **"the mere existence of a biological link does not merit equivalent constitutional protection."** *Lehr*, 463 U.S. at 261. Judicially enforceable Fourteenth Amendment interests require enduring relationships reflecting an assumption of parental responsibility and "stem[] from the emotional attachments that derive from the intimacy of daily association, and from the role it plays in promoting a way of life through the instruction of children." Id. at 256–61; see also *Kirkpatrick v. Cnty. of Washoe*, 843 F.3d 784, 789 (9th Cir. 2016) (discussing the Fourteenth Amendment rights of an unwed biological father).
> […]
> **In sum, even biological parents must maintain consistent involvement in a child's life and participation in child-rearing activities for their relationship to be entitled to the Fourteenth Amendment protections at issue here.**

*Wheeler*, 894 F.3d at 1058 (emphasis added).

8

A decedent's parents generally have the right to assert substantive due process claims under the Fourteenth Amendment. *Hayes v. Cnty. San Diego*, 736 F.3d 1223, 1229-30 (9th Cir. 2013). The due process claim by a parent is not the pain experienced by the decedent, but the loss of companionship the parent feels as a result of death; these claims can be asserted even after a child reaches the age of majority. *Smith v. Fontana*, 818 F.2d 1411, 1419 (9th Cir. 1987) *overruled on other grounds by Hodgers-Durgin v. de la Vina*, 199 F.3d 1037, 1040 n..1 (9th Cir. 1999).

In this case, the FAC alleges that the Decedent had no contact with his biological father since he was three years old, and as far as is known has never entered the United States. (FAC 15 at 3) The mere biological link, as the Supreme Court in *Lehr* described, does not automatically merit constitutional protection, and given the lack of a relationship, **the biological father would not be entitled to Fourteenth Amendment protections for loss of familial relations if he had not familial relations with the Decedent.**

Regarding state claims, the biological father cannot obtain recovery if he did not sustain a loss for a relationship he did not have: "Although recovery under section 377 is in the form of a 'lump sum,' the amount is determined in accordance with the various heirs' separate interests in the deceased's life and the loss suffered by each by reason of the death, and no recovery can be had by an heir who did not sustain a loss." *Cross v. Pacific Gas & Elec. Co.*, 60 Cal. 690, 692 (1964). Recovery in a wrongful death case is determined in accordance with the various heirs' separate interests in the deceased's life and the loss suffered by each by reason of the death, and no recovery can be had by an heir who did not sustain a loss. *Estate of Riccomi*, 185 Cal. 458, 461 (1921).

### 2. Second Prong: the Statute of Limitations

Regarding the second prong, Defendants do not face multiple obligations because the statute of limitations for Mr. Romero has run, and Mr. Romero's interest would not be impeded should this case proceed.

The Recommendations and Findings states: "Plaintiff's arguments as to the Court's lack of personal jurisdiction or the statute of limitations are unpersuasive on both the law

9

and the facts alleged. Decedent's father, if joined in this action, may consent to the Court's personal jurisdiction and may allege facts demonstrating that his claims are not barred by the statute of limitations." (Dkt. 36 at 14) Plaintiff objects to this recommendation and argues that any hypothetical facts that the biological father could raise should not subvert a statute of limitations that has already passed.

The federal claims brought by Dora Solares under § 1983 are survival claims brought by her as the successor-in-interest, and do not require any other successor-in-interest be included in the same action. To the extent that the biological father would attempt to bring claims on behalf of himself (rather than as successor-in-interest) for loss of familial relations, as described above, *Wheeler* and *Lehr*, would counsel against any finding that he be afforded the Fourteenth Amendment protections. Simply put, two years have passed and Plaintiff should not be prevented from pursuing justice on behalf of her murdered son based on a hypothetical, creative argument that could be raised in the unlikely scenario that Decedent's long-gone father appear before this Court.

Under California law, each heir has a personal and separate cause of action against which the applicable statute of limitations will run. *Andersen v Barton Memorial Hospital, Inc.*, 166 Cal.App.3d 678, 681 (1985). As a prerequisite for money damages litigation against a public entity, the California Tort Claims Act requires presentation of the claim to the entity. See Cal. Gov. Code § 945.4. A government claim based on causes of action for death and personal injury must be presented to the public entity within six months of the date the cause of action accrued. See Cal. Gov. Code, § 911.2(a). Here, the decedent was killed in March 2019, and the six months statute of limitations has long passed and only Dora Solares has filed a § 910 claim and has brought a cause of action. The statute of limitations has run for the senior Mr. Romero to bring a suit under state law.

**B.  Under Rule 19(b) it is Not Feasible to Join Mr. Romero**

In the event the Court rules Mr. Romero is necessary, under Rule 19(b) it is not feasible to join him because it has no personal jurisdiction and the case can proceed without an indispensable party.

10

### 1. No Personal Jurisdiction

Regarding the possible joinder of an absentee, a court must first determine "whether it is feasible to order that the absentee be joined." *Peabody W. Coal Co.*, 400 F.3d at 779. There are three circumstances in which joinder is not feasible under Rule 19(a): "when venue is improper, when the absentee is not subject to personal jurisdiction, and when joinder would destroy subject matter jurisdiction." *Id.*; see also Fed. R. Civ. P. 19(a).

In this case, the absentee is not subject to personal jurisdiction. Plaintiff pleaded hat the reason for the father to not be joined: Dora Solares divorced him when the decedent was three years old and moved to the United States while the elder Mr. Romero remained in Guatemala, and "never moved to the United States and has never entered the United States." (Dkt. No. 15 at 3, l. 11-12) This Court does not have personal jurisdiction of the elder Mr. Romero, as he has remained in Guatemala, has no contacts with the forum of the United States. See *International Shoe Co. v. State of Wash., Office of Unemployment Compensation and Placement*, 326 U.S. 310, 316 (1945). Defendants argue that the joinder of the senior Mr. Romero will not deprive the Court of subject matter jurisdiction (Dkt. 17-1 at 18), but that point overlooks something more fundamental, the Court does not have personal jurisdiction over the senior Mr. Romero.

### 2. Case Can Proceed Without an Indispensable Party

Defendants argue that an action by some of the heirs in not permitted by statute. (Dkt. 17-1 at 18). That is incorrect. Under Rule 19(b), it is still possible "for the case to proceed without the joinder of the so-called 'necessary' absentee[s]." *Peabody Western*, 400 F.3d at 779 (emphasis added). California authority makes clear that a nonjoined heir is not an "indispensable party" to a wrongful death action:

> A nonjoined heir is not an indispensable party to a wrongful death action brought by other heirs. (See, e.g., *Washington v. Nelson* (1979) 100 Cal.App.3d 47, 51-52 [160 Cal.Rptr. 644]; *Sanders v. Fuller* (1975) 45 Cal.App.3d 994, 999-1000 [119 Cal.Rptr. 902], and authorities cited therein.) This would seem to make eminent sense where the nonjoined heir's claim is barred by a statute of limitations. Since that heir can

11

assert no claim, the court is not precluded from distributing the proceeds of the action among the heirs whose claims are not barred. (See fn. 4, ante, *Cross v. Pacific Gas & Elec. Co., supra.,* 60 Cal.2d at p. 692.) Therefore, since the nonjoined heir does not preclude the court from granting complete relief the nonjoined heir is not an indispensable party.

*Andersen*, 166 Cal.App.3d at 681, fn. 5.

Defendants would prefer the harsh scenario that the mother who raised the Decedent be prevented from bringing claims until the decades-long absent father appears in this case and makes a clever but not-yet-stated argument to get around the statute of limitations. These contortions are not necessary. The statute of limitations for the federal and state claims are passed and the biological father would not be able to proceed even if he had appeared, which he has not.

## IV. ADDITIONAL STATE LAW CLAIM AFTER TIMELY § 910 CLAIM

Plaintiff objects to the Recommendations and Findings regarding dismissal of state claims. As set forth above, the federal claims should proceed, and so should the state claims. Additionally, Plaintiff calls the Court's attention to additional facts and state claims that have arisen since the filing of the FAC.

California Penal Code § 647.9 was passed after the gruesome photos of Kobe Bryant's body following his fatal helicopter crash were leaked by first responders. Section 647.9 prohibits a first responder from capturing images of a deceased person on an electronic device for any purposes other than law enforcement. Photos of Luis Romero's mutilated body were published on a social media accounts (Facebook and Instagram) and the website *Sword and Scale* (www.swordandscale.com). As inmates do not have access to electronic cameras, these photographs were leaked by CDCR employees who impermissibly took or retrieved these photos.

On March 9, 2021, Plaintiff, through her counsel, submitted a § 910 Government Tort Claim regarding this conduct and has six months to bring additional state claims. Plaintiff intends to bring a new action, or preferably, bring a supplemental claim pursuant

12

| | |
|---|---|
| 1 | to Fed. R. Civ. P 15(d), which permits "a party to serve a supplemental pleading setting out |
| 2 | any transaction, occurrence, or event that happened after the date of the pleading to be |
| 3 | supplemented." Fed. R. Civ. P 15(d). Here, the conduct and the law itself came into effect |
| 4 | after the FAC was filed. Plaintiff has six months from March 9, 2021 to bring these claims. |
| 5 | (Plaintiff notes that although the Magistrate Judge would have the six-month limit |
| 6 | proscribed by § 910 not apply to the Decedent's biological father she must assume the |
| 7 | statute of limitation applies to her own claims in this instance). |

As the conduct is distinct from Mr. Romero's murder, Plaintiff believes the claim can be filed as a supplemental pleading. But to the extent the Court intends to dismiss the FAC and give Plaintiff leave to amend, Plaintiff hereby notifies the Court of this additional claim and requests that she be given leave to amend in time to bring this claim as well. Plaintiff should be granted leave to amend should the Court determine any ground of the motion to dismiss to be meritorious. The Ninth Circuit, "in a line of cases stretching back nearly 50 years, [has] held that in dismissing for failure to state a claim under Rule 12(b)(6), a district court should grant leave to amend . . . unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (internal quotations and citations omitted). Plaintiff respectfully requests that should the Court grant the motion to dismiss, its order should also grant Plaintiff leave to file an amended complaint.

//
//
//
//
//
//
//
//
//

## V. CONCLUSION

For the foregoing reasons, Defendants' Rule 12(b)(6) motion should be denied, and they should be ordered to answer Plaintiff's Complaint.

Respectfully submitted,

Dated: August 26, 2021

LAW OFFICES OF JUSTIN STERLING

By: _____/s/ *Justin Sterling*_____
    Justin E. Sterling,
    Attorneys for Plaintiff
    DORA SOLARES

LAW OFFICES OF ERIN DARLING

By: _____/s/ *Erin Darling*_____
    Erin Darling,
    Attorneys for Plaintiff
    DORA SOLARES