UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DORA SOLARES,<br><br>    Plaintiff,<br><br>    v.<br><br>KATHLEEN ALLISON, et al.,<br><br>    Defendants. | No. 1:20-cv-00323-NONE-BAM<br><br><u>ORDER ADOPTING IN PART FINDINGS AND RECOMMENDATIONS AND GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS</u><br><br>(Doc. Nos. 17, 36) |

Plaintiff Dora Solares brings this action in both her individual capacity and as the successor-in-interest to Luis Romero in this action pursuant to 42 U.S.C. § 1983 and state law. The matter proceeds on plaintiff's first amended complaint (Doc. No. 15 ("FAC")) against defendants Ralph Diaz, Kenneth Clark, and Joseph Burns and Does 1–15. In the FAC plaintiff alleges that defendants violated Romero's rights under the Eighth Amendment and state law, and also plaintiff's Fourteenth Amendment rights. Defendants moved to dismiss the FAC pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(b)(7). (Doc. No. 17.) The motion was referred to a United States Magistrate Judge for issuance of findings and recommendations in accordance with 28 U.S.C. § 636(b)(1)(B) and (C). (Doc. No. 28.)

On August 12, 2021, the assigned magistrate judge issued findings and recommendations, which recommended that defendants' motion to dismiss be granted and plaintiff be permitted leave to file a second amended complaint. (Doc. No. 36.) Those findings and recommendations

1

were served on the parties and contained notice that any objections thereto were to be filed within fourteen days after service. (*Id.* at 15.) Plaintiff filed timely objections on August 26, 2021, and defendants responded on September 9, 2021. (Doc. Nos. 37, 38.)

In accordance with the provisions of 28 U.S.C. § 636(b)(1)(c), this court has conducted a *de novo* review of the case. Having carefully reviewed the entire file, including plaintiff's objections and defendants' responses, the court adopts the findings and recommendations in part and declines to adopt them in part.

## RELEVANT BACKGROUND

As relevant to this order, in the FAC plaintiff alleges the following. Plaintiff is Luis Romero's mother. Luis Romero was an inmate in the custody of the California Department of Corrections & Rehabilitation ("CDCR"), and on March 7, 2019, he was transferred to California State Prison-Corcoran ("CSP-Corcoran"). Burns is a CDCR sergeant at CSP-Corcoran with a history of abusing inmates, and Romero had made a personnel complaint against Burns.

The CDCR has a protocol for handling transferred inmates, which includes a process to determine with whom they should be cellmates (if anyone), in part to ensure inmates' safety. Burns and the Doe defendants were involved in the process of placing inmate Romero in a cell. The defendants did not follow that CDCR process in placing Romero in a cell. Rather, Burns and the Doe defendants retaliated against Romero by placing him in a cell with James Osuna.

Osuna is a violent psychopath who was previously convicted of torturing and killing a person. While awaiting trial, Osuna was charged with the attempted murder of an individual in the Kern County Jail. Osuna had repeatedly been found with weapons in his cell; his lawyers and medical team had warned the CDCR not to place him in a cell with other inmates. The CDCR had records documenting this, and defendants were on notice of Osuna's violent tendencies.

Romero was brought to CSP-Corcoran on March 7, 2019. The night of March 8, 2019, a bedsheet was placed over Romero and Osuna's cell window, and guards failed to conduct safety checks and ignored loud noises coming from the cell. During the night, Osuna murdered and dismembered Romero with a homemade weapon in a particularly gruesome fashion.

/////

# ANALYSIS

## A. Eighth Amendment Claims

The findings and recommendations recommended dismissal of plaintiff's Eighth Amendment claims against all defendants with leave to amend for failure to adequately allege that defendants had knowledge of Osuna's propensity for violence, finding that plaintiff's allegations of knowledge and deliberate indifference were conclusory. Plaintiff objects to this finding and cites several paragraphs of the complaint that he argues adequately allege the defendants' knowledge in this regard.

The undersigned sees no need to revisit in detail the conclusions reached in the pending findings and recommendations with respect to defendants Diaz (the Secretary of CDCR) and Clark (the Warden of CSP-Corcoran). Among other things, as the findings and recommendations indicate, the operative complaint fails to allege concrete facts that, if proven, would indicate (or permit an inference) that defendants Diaz and Clark personally accessed records on file with CDCR that allegedly indicated Osuna had a propensity for extreme violence. (*See* Doc. No. 36 at 7.) The findings and recommendations will therefore be adopted as to the allegations made against these defendants.

However, the allegations of the FAC as to defendant Burns and the Doe defendants merit closer evaluation. The findings and recommendations conclude that the FAC contains only "[c]onclusory allegations that each defendant was on notice" of the danger posed by Osuna. (Doc. No. 36 at 7.) While it is true that conclusory allegations are insufficient, "[w]hether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, . . .and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Farmer v. Brennan*, 511 U.S. 825, 842 (1994) (citations omitted). Here, the FAC alleges that defendant Burns and the Doe defendants "were responsible for implementing the standardized administrative committee process" for cell selection and assignment. (FAC ¶ 18.) This allegation is insufficient on its own because it does not indicate or even imply any knowledge of past housing decisions concerning inmate Osuna, as it is not alleged that these

3

defendants served in the administrative segregation unit at the time any housing decisions about inmate Osuna were implemented. However, the FAC also alleges that defendant Burns and the Doe defendants were "aware of the fact that Osuna had not been permitted to share a cell with anyone before." (*Id.*, ¶ 21.) In addition, the FAC attaches a photograph of inmate Osuna that certainly could, if presented to a finder of fact, help support an inference that he was an obvious risk to others.[1] Finally, in the FAC plaintiff further alleges that defendant Burns and others "colluded to ensure a number of highly unusual omissions" on the night in question, including failing to make any routine safety checks for at least four hours; failing to order that the bedsheet be removed from the cell window; and leaving the guard station on that cellblock empty, ensuring that no one could respond to a loud noise coming from the cell where Romero was housed with Osuna. All this taken together compels the undersigned to conclude that there are sufficient circumstantial facts alleged in the FAC indicating that the officers on the ground in that cellblock—defendant Burns and the Doe defendants—had sufficient knowledge of inmate Osuna's seriously dangerous tendencies and in fact drew the inference that he was extremely dangerous.

Viewing the allegations of the FAC in a light most favorable to plaintiff, it is plausible to infer from this set of alleged facts that those corrections officers on the ground responsible for the day-to-day implementation of cellmate selection decisions[2] were aware that inmate Osuna should not be celled with another inmate and, relatedly, that this was because he posed a serious danger

---

[1] Including this photograph, which depicts inmate Osuna a court hearing exhibiting an arguably disturbing expression and numerous facial tattoos, including what appears to be an inverted pentagram on his forehead, is a somewhat unusual pleading maneuver. The undersigned acknowledges that "[p]risons, by definition, are places of involuntary confinement of persons who have a demonstrated proclivity for antisocial criminal, and often violent, conduct." *Hudson v. Palmer*, 468 U.S. 517, 526 (1984); *accord Berg v. Kincheloe*, 794 F.2d 457, 461 (1986) (observing prison environment is "at best, tense[,]" "sometimes explosive," and "always potentially dangerous"). However, at the pleading stage—particularly given that Romero, one of the primary witnesses to Osuna's behavior, is deceased—the court will draw all possible inferences from the attachment of this photograph to the FAC in favor of plaintiff.

[2] The court notes that the FAC alleges only that defendant Burns and the Doe defendants were responsible for implementing cellmate selection decisions made by the administrative committee, not that any of them were members of the committee(s). (*See* FAC ¶ 18.)

4

1  to others. Thus, plaintiff has plausibly alleged that defendant Burns and the Doe defendants were
2  aware of the dangers Romero faced by being celled with inmate Osuna. Therefore, the court
3  declines to adopt the findings and recommendations to the extent it was concluded therein that the
4  allegations of the FAC failed to state a cognizable claim against defendants Burns and the Doe for
5  being deliberately indifferent to a substantial risk of serious harm to Romero.

6  Defendants further argue that defendant Burns is entitled to qualified immunity on the
7  grounds that the unconstitutionality of his alleged conduct was not clearly established. (Doc. No.
8  17-1 at 18–19.) This argument relies on an assumption that Burns was not aware of Osuna's
9  potential dangerousness to others. (*Id.*) The court has concluded that plaintiff has adequately
10 alleged that defendant Burns was sufficiently aware of the risk of placing Romero in a cell with
11 Osuna. Defendants make no arguments specifically concerning the Doe defendants.
12 Accordingly, the court will deny defendant's motion to dismiss plaintiff's Eighth Amendment
13 claim brought against defendant Burns on qualified immunity grounds.[3]

14 **B.   Loss of Familial Relations**

15 Defendants argue that plaintiff's claim for loss of familial relations should be dismissed
16 because plaintiff has failed to adequately allege an Eighth Amendment claim. (Doc. No. 17-1 at
17 15.) Having found that plaintiff has stated a cognizable Eighth Amendment claim, the court will
18 deny this aspect of the motion to dismiss.

19 **C.   Conspiracy**

20 In her objections to the findings and recommendations, plaintiff has provided notice that
21 she will no longer pursue her claim for conspiracy. (Doc. No. 37 at 12.) Accordingly, the court
22 will dismiss this claim.

23 /////
24 /////

---

[3] The claim is sufficiently alleged to survive a motion to dismiss and this issue is therefore more appropriately addressed by way of motion for summary judgment. *See Keates v. Koile*, 883 F.3d 1228, 1240 (9th Cir. 2018) ("Our denial of qualified immunity at this stage of the proceedings does not mean that this case must go to trial" because "[o]nce an evidentiary record has been developed through discovery, defendants will be free to move for summary judgment based on qualified immunity.") (quoting *O'Brien v. Welty*, 818 F.3d 920, 936 (9th Cir. 2016)).

**D.     Negligent Supervision**

"Plaintiff's claims for negligence and negligent supervision require [her] to show that [defendant Clark] breached a legal duty to use due care which was the proximate or legal cause of [her] injury." *Moncrief v. Cal. Dep't of Corr.*, No. 2:12-CV-0414 MCE AC, 2013 WL 4679684, at *4 (E.D. Cal. Aug. 30, 2013), *report and recommendation adopted*, 2013 WL 5587575 (E.D. Cal. Oct. 9, 2013) (citing *Truong v. Nguyen,* 156 Cal. App. 4th 865, 875 (2007) (elements of negligence), and *Thompson v. Sacramento City Unified Sch. Dist.,* 107 Cal. App. 4th 1352, 1370 (2003) (to establish a claim of negligent supervision, a plaintiff must prove the traditional elements of actionable negligence)). Defendants argue that plaintiff fails to state a claim for negligent supervision against defendant Clark because (1) he is immune under California Government Code § 820.8; (2) plaintiff failed to allege he breached any duty; and (3) plaintiff does not plead any recoverable damages. (Doc. No. 17-1 at 21–23.)[4]

1.     California Government Code § 820.8

With respect to the first argument, § 820.8 states: "Except as otherwise provided by statute, a public employee is not liable for an injury caused by the act or omission of another person. Nothing in this section exonerates a public employee from liability for injury proximately caused by his own negligent or wrongful act or omission." Defendants argue that the claim brought against defendant Clark is based solely on others' actions—namely, others' alleged failure to follow rules and procedures when placing inmate Osuna and Romero together. (Doc. No. 17-1 at 21–22.)

"Section 820.8 has been held to be inapplicable to claims against a supervisor for his own improper or negligent supervision and training." *J.M. v. Parlier Unified Sch. Dist.*, No. 1:21-CV-0261-AWI-BAM, 2021 WL 5234770, at *6 (E.D. Cal. Nov. 10, 2021) (citing *Rodriguez v. County of L.A.*, 891 F.3d 776, 799 (9th Cir. 2018)); *accord Est. of Jackson v. City of Modesto*, No. 1:21-CV-0415-AWI-EPG, 2021 WL 4819604, at *21 (E.D. Cal. Oct. 14, 2021) (same);

---

[4] In the FAC plaintiff brought this claim against defendant Diaz as well, but plaintiff's opposition to the motion to dismiss did not oppose dismissal of the claim as to defendant Diaz. (*See* FAC ¶ 59; Doc. No. 18 at 17.)

1  *Aldrich v. Romo*, No. 5:20-CV-00974-MCS-KK, 2020 WL 6305461, at *5 (C.D. Cal. Oct. 5,
2  2020) (citing cases); *Schmitz v. Asman*, No. 2:20-CV-00195-JAM-CKD (PS), 2020 WL 6728226,
3  at *19 (E.D. Cal. Nov. 16, 2020), *report and recommendation adopted*, 2020 WL 7624963 (E.D.
4  Cal. Dec. 22, 2020) (same).  Thus, if plaintiff has properly alleged that defendant Clark was
5  negligent himself, § 820.8 will not provide defendant with immunity.

6                    2.      Breach of Duty

7        Defendants' second argument is, effectively, that plaintiff has not adequately alleged that
8  defendant Clark breached any duty.  (Doc. No. 17-1 at 21–22.)  Specifically, defendants argue
9  that plaintiff does not plead facts showing that defendant Clark knew that Romero and inmate
10 Osuna would be housed together or that the procedures for cell assignments would not be
11 followed.  Defendants further argue that defendant Clark had a right to expect that his
12 subordinates would act with reasonable care and follow the required procedure.  Plaintiff
13 contends that she alleged a causal connection between defendant Clark's supervisory actions and
14 Romero's foreseeable death.  Neither party cites to any case law authority addressing facts similar
15 to those alleged here.

16        In support of their argument that defendant Clark had a right to expect that his
17 subordinates would act with reasonable care and follow the required procedure, defendants cite to
18 Judicial Council of California Civil Jury Instructions ("CACI") No. 411 which provides: "Every
19 person has a right to expect that every other person will use reasonable care [and will not violate
20 the law], unless that person knows, or should know, that the other person will not use reasonable
21 care [or will violate the law]." (brackets in original).  "The principle it espouses is essentially that
22 a defendant will not be liable for harm caused by a third party's negligent or criminal conduct,
23 unless the third party's conduct was foreseeable." *People v. Elder*, 11 Cal. App. 5th 123, 135
24 (2017); *accord Celli v. Sports Car Club of Am., Inc.*, 29 Cal. App. 3d 511, 523 (1972) ("[E]very
25 person has a right to presume that every other person will perform his duty and obey the law and
26 in the absence of reasonable ground to think otherwise, it is not negligence to assume that he is
27 not exposed to danger which could come to him only from violation of law or duty by such other
28 person[.]"). The crucial question here is whether plaintiff has adequately alleged that the alleged

negligence of defendant Burns and the Doe defendants was foreseeable. *See Elder*, 11 Cal. App. 5th at 135.

In this regard, plaintiff in the FAC alleges as follows. Defendant Clark, as warden, was responsible for ensuring that his subordinates followed procedures for housing inmates together and for supervising and approving the decisions of the administrative committee process. (FAC ¶¶ 18–19.) Instead of ensuring that the procedures were followed, "Clark effectively 'rubber-stamped' a dangerous decision he reasonably should have known would lead to deprivations of Romero's Eighth Amendment rights." (*Id.* ¶ 19.) Clark also failed to establish a procedure to document and track inmates who agreed to be housed together and failed to supervise his subordinates. (*Id.*) In addition, Clark failed to supervise and require the Doe defendants to conduct routine nighttime safety checks, which were supposed to happen at least every hour and normally every 20 minutes. (*Id.* ¶¶ 20–21.)

These allegations do not establish foreseeability. Plaintiff alleges, generally, that there are procedures that would have prevented Romero and inmate Osuna from being housed together and that would have prevented inmate Osuna from committing murder. Plaintiff further alleges that defendant Burns and the Doe defendants side-stepped those procedures and that Clark failed to enforce the procedures. However, Clark was permitted to assume the other defendants would follow the proper procedures unless their failure to follow them was foreseeable. *See Elder*, 11 Cal. App. 5th at 135. Moreover, plaintiff does not allege any facts that would establish the foreseeability of Clark's subordinates' varying from the procedures. Plaintiff does not allege, for instance, that Clark knew or had reason to believe that the procedures were regularly avoided or that he had any information indicating that the governing procedures would be avoided in this instance. Accordingly, plaintiff has failed to adequately allege a claim for negligent supervision.

**E.     Wrongful Death**

Defendants also argue that plaintiff's wrongful-death cause of action brought against Diaz and Clark fails for the same reasons as the negligent-supervision claim fails. (Doc. No. 17-1 at 23–24.) Plaintiff does not independently address this argument advanced in support of the pending motion to dismiss. Because the undersigned has found this argument persuasive in the

negligent-supervision context, and because plaintiff does not contest dismissal of this claim independently, the court will also grant defendants' motion to dismiss with respect to plaintiff's wrongful-death claim brought against defendants Diaz and Clark only.

**F.     Remaining State-Law Claims**

Defendants next argue that the court should dismiss plaintiff's remaining state-law claims because the federal claims are insufficiently alleged and the court should decline to exercise supplemental jurisdiction over the state law claims. (Doc. No. 17-1 at 24.) Because, for the reasons explained above, the court is not dismissing all of the federal claims at this time, this argument for dismissal of plaintiff's state law claims is unpersuasive and will be rejected.

**G.     Required Party**

Defendants argue that Romero's father, who was absent from Romero's life since age three and has never entered the United States, is a necessary party whose absence requires dismissal of this action. (Doc. No. 17-1 at 24–25.) According to defendants, survivors may bring an action under § 1983 if state law permits it, and state law requires all heirs—including the father—to be joined in this action. (*Id.*) Plaintiff argues that the father is not a necessary party, that his joinder is not feasible, and his presence is not indispensable. (Doc. No. 18 at 18–20.)

      1.     Legal Standards Under Rule 19

Under Federal Rule of Civil Procedure 19 courts apply a three-part test to determine whether a party must be joined in an action. *E.E.O.C. v. Peabody W. Coal Co.*, 610 F.3d 1070, 1078 (9th Cir. 2010). In this regard, the Ninth Circuit has stated as follows:

> First, the court must determine whether a nonparty should be joined under Rule 19(a). That nonparty (or "absentee") is now referred to as a "person required to be joined if feasible." If an absentee meets the requirements of Rule 19(a), the second stage is for the court to determine whether it is feasible to order that the absentee be joined. Finally, if joinder is not feasible, the court must determine at the third stage whether the case can proceed without the absentee or whether the action must be dismissed.

/////

/////

/////

9

1  *Id.*[5]

2  Rule 19(b) applies only if a party is necessary and it is not feasible to join them. Fed. R. Civ. P. 19(b) (applying when "a person who is required to be joined if feasible cannot be joined"); *Deschutes River All. v. Portland Gen. Elec. Co.*, 1 F.4th 1153, 1163 (9th Cir. 2021) ("If joinder is not feasible, Rule 19(b) requires dismissal when the action cannot proceed 'in equity and good conscience' without the required party."); *Supergard Canada, Ltd. v. Toughguard, Inc.*, No. CIV. 00-1677-AS, 2001 WL 34047034, at *1 (D. Or. July 19, 2001), *report and recommendation adopted*, 2001 WL 34042633 (D. Or. Aug. 21, 2001) ("Rule 19(a) defines those persons who should be joined as parties to the action, and Rule 19(b) supplies the result when joinder of such a party is not feasible." (citing C. Wright, A. Miller & M. Kane, Federal Practice and Procedure, Civ. § 1604)).

### 2. Application

The parties' arguments as to Rule 19 focus only on California Code of Civil Procedure § 377.60, and the court will confine its analysis to that statute.[6] Defendants argue that under that statute, Romero's father is a necessary party. (Doc. No. 17-1 at 24–25.) Indeed, "[a]n heir who files a wrongful death action is required to properly join all known heirs in that action." *Corder v. Corder*, 41 Cal. 4th 644, 652 n.3 (2007). Plaintiff contends Rule 19 does not require joinder in this instance, notwithstanding the requirements in § 377.60, because the father is not a required party, joinder is not feasible, and he is not indispensable. (Doc. No. 18 at 18–19.)

#### a. *Rule 19(a)*

Rule 19(a) states that a party is necessary if:

---

[5] "As of December 1, 2007, Rule 19 no longer refers to 'necessary' or 'indispensable' parties. Instead, it refers to 'persons required to be joined if feasible' and persons in whose absence, if they cannot be joined, the action should not proceed." *Id.* at 1077 n.1. The court will use these terms interchangeably.

[6] California Code of Civil Procedure § 377.60 applies only to wrongful-death claims. Other survivors' claims—such as § 1983 claims and plaintiff's other state-law torts—come within the requirements of California Code of Civil Procedure § 377.30. *See Hayes v. Cnty. of San Diego*, 736 F.3d 1223, 1229 (9th Cir. 2013) (reversing a grant of summary judgment against a survivor bringing a § 1983 action for Fourth Amendment violations where the district court applied the requirements of § 377.60 instead of those under § 377.30).

10

>> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
>
>> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>
>>> (i) as a practical matter impair or impede the person's ability to protect the interest; or
>
>>> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1).

Here, plaintiff argues that the father is not required under both Rule 19(a)(1)(A) and (B) because the statute of limitations as to the father's wrongful-death claim has run and therefore the father has no legally protected interest in this action. (Doc. No. 18 at 18–19.) In reply, defendants argue that the statute of limitations may be tolled as to the father but cite no authority in support of that contention. (Doc. No. 19 at 10.)[7]

The authority identified by the court indicates that a party whose claims are barred by the statute-of-limitations may be necessary under Rule 19(a) but is not indispensable under Rule 19(b). *Chipman v. Nelson*, No. 2:11-CV-2770-TLN-EFB, 2015 WL 5330143, at *12 (E.D. Cal. Sept. 11, 2015), *subsequently aff'd on other grounds*, 848 F. App'x 753 (9th Cir. 2021) (citing *Backer v. United States,* 2014 WL 4267500, at *2–3 (E.D. Cal. Aug. 29, 2014)); *Est. of Burkhart v. United States,* 2008 WL 4067429, at *7–8 (N.D. Cal. Aug. 26, 2008); *A.D. v. Cal. Highway Patrol,* 2009 WL 733872, at *4–5 (N.D. Cal. Mar. 17, 2009)) ("[F]ederal courts have held that absent heirs are 'necessary' parties . . . [but] where an absent heir's claim would be barred by the statute of limitations, the absent heir is not indispensable."). Here, however, plaintiff's statute-of-

---

[7] Any authority upon which defendants rely in this regard may well be weak. As noted, defendants' argument is based on § 377.60, which applies only to state-law wrongful-death claims. Because this action is proceeding against state government actors, the Government Claims Act applies to the state-law claims. The Government Claims Act has a specific statute of limitations and statutory tolling provision, and equitable tolling does not apply. *See Willis v. City of Carlsbad*, 48 Cal. App. 5th 1104, 1121 (2020), *reh'g denied* (May 29, 2020), *review denied* (July 22, 2020) ("the doctrine of equitable tolling cannot be invoked to suspend section 911.2's six-month deadline for filing a prerequisite government claim.").

11

limitations argument requires the court to make factual assumptions not contained specifically in the complaint, such as whether the father filed a timely claim under the Government Claims Act claim. *See Est. of Vela v. Cnty. of Monterey*, No. 16-CV-02375-BLF, 2018 WL 1510213, at *4 (N.D. Cal. Mar. 27, 2018) (where only some survivors filed a wrongful-death claim against the government, the applicable statute of limitations could bar other survivors from being indispensable parties). The court is therefore unable to determine on the present record whether the statute of limitations interplays with Rule 19 in this case.

            b.       *Whether Joinder Is Feasible*

There are three instances when joinder is not feasible: "when venue is improper, when the absentee is not subject to personal jurisdiction, and when joinder would destroy subject matter jurisdiction." *E.E.O.C. v. Peabody W. Coal Co.*, 400 F.3d 774, 779 (9th Cir. 2005) (citing Fed. R. Civ. P. 19(a) and *Tick v. Cohen,* 787 F.2d 1490, 1493 (11th Cir. 1986)). Plaintiff argues that the father is not within the court's personal jurisdiction. However, Rule 19(a) is concerned with whether the father is "subject to service of process," not whether the court has personal jurisdiction over him. Fed. R. Civ. P. 19(a)(1). As defendants note, Romero's father is subject to service of process. Fed. R. Civ. P. 4(f) (rule for serving an individual in a foreign country); *see also SAT Int'l Corp. v. Great White Fleet (US) Ltd.*, No. 03 CIV. 7481 (KNF), 2006 WL 661042, at *15 (S.D.N.Y. Mar. 16, 2006) (service of process of an individual in Guatemala is possible under Rule 4(f)(2)). Plaintiff has not otherwise shown that the father is not "subject to service of process," Federal Rule of Civil Procedure 19(a), and plaintiff has the obligation to plead as to that matter, Federal Rule of Civil Procedure 19(c). Accordingly, the court finds on the present record that service on the father is feasible.

            c.       *Indispensability of Father*

Finally, plaintiff argues that the father is not an indispensable party under Rule 19(b). However, Rule 19(b) applies only if the court concludes a party is required but joinder is not feasible. *See* Fed. R. Civ. P. 19(b) (applying when "a person who is required to be joined if feasible cannot be joined"); *Deschutes River All. v. Portland Gen. Elec. Co.*, 1 F.4th 1153, 1163 (9th Cir. 2021) ("If joinder is not feasible, Rule 19(b) requires dismissal when the action cannot

12

proceed 'in equity and good conscience' without the required party."). Because plaintiff has not established that joinder is not feasible, Rule 19(b) does not apply.

### 3. Further Proceedings

Under Rule 19(a)(2), "[i]f a person has not been joined as required, the court must order that the person be made a party." However, plaintiff may be able to plead additional facts establishing that joinder is not feasible, for example by alleging facts establishing that the statute of limitations has expired and or that service of process on the father is not feasible. If joinder is not feasible and the statute of limitations as to any claim of the father's has run, then the action may proceed without him. *See Chipman*, 2015 WL 5330143, at *12 (noting federal courts find absent heirs necessary but not indispensable when the statute of limitations has run).

Although defendants seek dismissal on this ground, (Doc. No. 17-1 at 25), "the nonjoinder of someone described in Rule 19(a) does not result in a dismissal if that person can be made a party to the action." 7 Mary Kay Kane, *Fed. Prac. & Proc. Civ.* § 1611 (3d ed.); *accord Biagro W. Sales Inc. v. Helena Chem. Co.*, 160 F. Supp. 2d 1136, 1141 (E.D. Cal. 2001) ("[A] court should grant a 12(b)(7) motion to dismiss only if the court determines that joinder would destroy jurisdiction and the nonjoined party is necessary and indispensable." (citing *Shermoen v. United States,* 982 F.2d 1312, 1317–18 (9th Cir. 1992))); *Sino-US Inv. & Mgmt. Consultant Ltd. v. Rhee*, No. CV-20-08597-AB-MRW, 2021 WL 5020469, at *8 (C.D. Cal. Mar. 9, 2021) (same, quoting *id.*). The court will therefore direct plaintiff to file a second amended complaint that either joins the father or alleges additional facts establishing why joinder is not required in this case. Fed. R. Civ. P. 19(a)(2), (c). The second amended complaint may also allege additional facts that address the other pleading deficiencies noted in this order.

**CONCLUSION**

Accordingly,

1. The court adopts in part, and declines to adopt in part, the pending findings and recommendations (Doc. No. 36);

2. Defendants' motion to dismiss (Doc. No. 17) is granted in part and denied in part as indicated above;

13

3. Within thirty days, plaintiff is directed to file a second amended complaint addressing the matters noted above; and

4. The Clerk of the Court is directed to now reassign this case to U.S. District Judge Jennifer L. Thurston and to remove the "NONE" designation.

IT IS SO ORDERED.

Dated:   **January 11, 2022**             *Dale A. Drozd*
                                          UNITED STATES DISTRICT JUDGE

14