Justin E. Sterling, State Bar No. 249491
LAW OFFICES OF JUSTIN STERLING
Justin@SterlingDefense.com
15760 Ventura Blvd. Suite 700
Encino, CA 91436
Tel. (818) 995-9452/Fax. (818) 824-3533

Erin Darling, State Bar No. 259724
LAW OFFICES OF ERIN DARLING
Erin@ErinDarlingLaw.com
3435 Wilshire Blvd. Suite 2910
Los Angeles, CA 90010
Tel. (323) 736-2230

Attorneys for Plaintiff Dora Solares

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DORA SOLARES, an individual, | Case No. 1:20-cv-00323-NONE-BAM |
| Plaintiff, | **PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS** |
| v. | |
| RALPH DIAZ, in his individual capacity, KENNETH CLARK, in his individual capacity, JOSEPH BURNES, in his individual, and DOES 1 TO 15, in their individual capacities | **Date:** March 29, 2022<br>**Time:** 9:00 pa.m.<br>**Judge:** Hon. Jennifer L. Thurston |
| Defendants. | |

## I. INTRODUCTION

Within 24 hours of being transferred to California State Prison, Corcoran, Luis Romero was killed. The killing occurred because Defendant Burns chose to bypass the standardized administrative committee process that is required before forcing one inmate to share the cell with another. Defendant Burns was on notice that Jaime Osuna posed a threat to other inmates and should not share a cell with anyone, as jail and prison reports from Osuna's years behind bars document his violent misconduct and establish that he was <u>always</u> single-celled. CDCR documented instances where Osuna was not only assaultive toward jail staff but also toward other inmates. Osuna's own lawyers informed CDCR of his propensity for extreme violence and that he needed to be single celled. While in custody, Osuna attempted to kill another inmate by slashing him multiple times in the face with a razor. After the incident, Osuna requested photos of his victim's injuries so that he could keep the photos as his "trophies."

Defendants' motion to dismiss should be denied because the Second Amended Complaint (SAC), contains allegations "taken as true and construed in the light most favorable to plaintiff," *Epstein v. Washington Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1999), "contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively," and "suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). As described below, Plaintiff has clearly pleaded that the statute of limitations for Decedent's father to bring a claim is long since passed, and Plaintiff states a valid supervisory liability claim against Burns.

## II. STANDARD OF REVIEW

In ruling on a motion to dismiss under Rule 12(b)(6), a court must determine whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads

factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Under Rule 12(b)(6), a court may dismiss a complaint "only if it is clear that no relief can be granted under any set of facts that could be proved consistent with the allegations." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002) (emphasis added).

## III. ALL CLAIMS AGAINST DEFENDANT BURNS SHOULD PROCEED

### A. The Decedent's Mother May Proceed with Her Fourteenth Amendment and Wrongful Death Claim

#### 1. Fourteenth Amendment Claim

In the Ninth Circuit, "[i]t is well established that a parent has a 'fundamental liberty interest' in 'the companionship and society of his or her child' and that '[t]he state's interferences with that liberty interest without due process of law is remediable under [42 U.S.C. §] 1983.'" *Lee v. City of Los Angeles*, 250 F.3d 668, 685 (9th Cir. 2001) (internal quotation omitted). A decedent's parent generally has the right to assert substantive due process claims under the Fourteenth Amendment. *Hayes v. Cnty. San Diego*, 736 F.3d 1223, 1229-30 (9th Cir. 2013). A parent may challenge the severance of a parent-child relationship as interfering with their own individual liberty interests in the companionship and society of their children. *Morrison v. Jones*, 607 F.2d 1269 (9th Cir. 1979). The due process claim by a parent is not the pain experienced by the decedent, **but the loss of companionship the parent feels as a result of death**. *Smith v. Fontana*, 818 F.2d 1411, 1419 (9th Cir. 1987) *overruled on other grounds by Hodgers-Durgin v. de la Vina*, 199 F.3d 1037, 1040 n..1 (9th Cir. 1999).

The fundamental interest that Dora Solares had in the companionship of her son, knowing that he was alive and that she could visit him and hear him on the telephone, is her right alone, which exists independently of anyone else. The only § 1983 claim brought by Dora Solares that Defendant challenges is the Fourteenth Amendment claim, which exists as her own right to pursue. For this reason alone Defendant's challenge to this

individual claim makes no sense. Moreover, as described in Section B below, the Decedent's father is time-barred.

### 2. Wrongful Death Claim

Standing to bring claims under the Fourteenth Amendment are addressed distinctly from standing to assert wrongful death claims under California state law. *See Hayes* at 1228-29 (standing to assert survival claims under Cal. Code Civ. Proc. §§ 377.30, 377.60 addressed in a distinct analysis from alleged Fourteenth Amendment violations, and distinct from each other). A wrongful death claim under California law is governed by Cal. Code Civ. Proc. § 377.60. When a decedent dies without a surviving issue or spouse, a person who "would be entitled to the property of the decedent by intestate succession" may sue. Cal. Code Civ. Proc. § 377.60. Cal. Probate Code § 6452 provides that:

> (a) a parent does not inherit from or through a child on the basis of the parent and child relationship if any of the following apply: …
>   (3) The parent left the child during the child's minority without an effort to provide for the child's support or without communication from the parent, for at least seven consecutive years that continued until the end of the child's minority, with the intent on the part of the parent to abandon the child. The failure to provide support or to communicate for the prescribed period is presumptive evidence of an intent to abandon.

Cal. Probate Code § 6452(a).

Defendant's argument regarding wrongful death is foreclosed by Cal. Probate Code § 6452: Decedent's father is not entitled to anything via intestate succession because he abandoned the decedent and offered no child support or communication for decades, since 1977. *See* Dkt. No. 46 at 3, l. 24. As the father is not entitled to any property via intestate succession he would not qualify for purposes of Cal. Code Civ. Proc. § 377.60, leaving on Dora Solares to bring the wrongful death claim by herself.

## B. The Decedent's Father is Barred by the Statute of Limitations

The Court's January 11, 2022, order stated that Plaintiff:

> [Ma]y be able to plead additional facts establishing that joinder is not feasible, for example by alleging facts establishing that the statute of limitations has expired and

| | |
|---|---|
| 1 | or that service of process on the father is not feasible. If joinder is not feasible and the statute of limitations as to any claim of the father's has run, then the action may proceed without him. |
| 2 | |
| 3 | |

*Id.* at 13. The Court then permitted Plaintiff to amend to allege facts why joinder is not required in this case. *Id.* at 13-14.

Plaintiff's Second Amended Complaint explicitly states:

> **Luis Romero's father never filed a timely tort claim form (Cal. Gov't. Code § 910).** Furthermore, in the almost-two-years since this action has been filed Luis Romero's father has made no effort to be a part of this lawsuit, has made no effort to contact Ms. Solares or her counsel, and has made no effort to have any contact with the United States as a forum. Indeed, Ms. Solares has had no contact with Luis Romero's father since 1977 and she is not aware of anyone who knows his whereabouts. Luis Romero's father has filed no claims related to the case and any claims he could bring would be barred by the statute of limitations: Mr. Romero's death at Corcoran Prison occurred on or around March 7, 2019. **Almost three years have passed** since then and Luis Romero's father has made zero contact with Ms. Solares, zero contact with the state of California, zero contact with the United States federal court system, and zero contact with the United States; put another way, Mr. Romero's father has made zero claims of his own, or on behalf of his deceased son, and therefore any claims that he could conceivably bring are barred by the applicable statutes of limitations.

*See* Dkt. No. 46, Second Amended Complaint, at 3-4.

A party whose claims are barred by the statute-of-limitations may be necessary but is not indispensable under Rule 19(b). See *A.D. v. Cal. Highway Patrol,* 2009 WL 733872, at *4-5 (N.D. Cal. Mar. 17, 2009) *(*"[F]ederal courts have held that absent heirs are 'necessary' parties . . . [but] where an absent heir's claim would be barred by the statute of limitations, the absent heir is not indispensable."). Here, the Court identified that the problem with the First Amended Complaint was that it, "requires the court to make factual assumptions not contained specifically in the complaint, such as whether the father filed a timely claim under the Government Claims Act." *See* Dkt. No. 44 at 11. Plaintiff has corrected that defect by explicitly stating the failure of Mr. Romero's father to comply with the Government Claims Act. As the Court noted, "[t]he Government Claims Act has a specific statute of limitations

4

and statutory tolling provision, and equitable tolling does not apply." *See* Dkt. No. 44 at 11, n. 7 (citing *Willis v. City of Carlsbad*, 48 Cal. App. 5th 1104, 1121 (2020)).

Defendants seek to sidestep the obvious statute of limitations problem with a sleight of hand, that the Fourteenth Amendment and wrongful death claims accrued when plaintiff knew or had reason to know of the injury. *See* Dkt. 47-1 at 8. Defendant cites to *Bagley v. CMC Real Estate Corp.*, 923 F.2d 758, 760 (9th Cir. 1991). For one, *Bagley* is easily distinguishable as it primarily focused on habeas proceedings and ultimate reversal of a criminal conviction. Neither of which are the operative issues before this Court. More importantly, Defendants are wrong as a matter of law. As described below, a survival action by definition accrues at the time the decedent was still alive, not when an additional survivor learns of the action.

The Ninth Circuit has indicated that § 1983 claims accrue prior to a decedent's death. See 42 U.S.C. § 1988(a); *George v. Morris*, 736, F.3d 829, 833, n. 6 (9th Cir. 2013); *Tatum v. City & Cty. San Francisco*, 441 F.3d 1090, 1093 n. 2 (2006); *Moreland v. Las Vegas Metro Police Dep't.*, 159 F3d 365, 369 (9th Cir. 1998). The focus for purposes of accrual is generally on what **the decedent** knew or should have known. *Estate of Jackson v. City of Modesto*, *21-22, U.S. District LEXIS 199638, 2021 WL 4819604, 1:21-cv-04150-AWI-EPG (Oct. 14, 2021 E.D. CA); see *Lawson v. Okmulgee County Criminal Justice Authority*, 726 F.Ap'x 685, 691 (10th Cir. 2018); *Miller v. Philadelphia Geriatric Ctr.*, 463 F.3d 266, 276 (3d Circ. 2006).

Thus, if the time of accrual occurred prior to decedent's death, then the statute of limitations has run, and the inquiry is not into what decedent's father knew or should have known.

**C.     Alternatively: Leave to Amend to Show that Joinder is Not Feasible**

The statute of limitations has run and the Second Amended Complaint dispositively articulates this. However, in the event the Court is not convinced, Plaintiff requests that it be granted leave to amend to show how it is not feasible to join Decedent's father because service on him is not possible. *See* Dkt. 44 at 13. The Ninth Circuit, "in a line of cases stretching back nearly 50 years, [has] held that in dismissing for failure to state a claim under

5

Rule 12(b)(6), a district court should grant leave to amend . . . unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (internal quotations and citations omitted).

In this case, as the declarations of Dora Solares and investigator Christina Duran makes clear that Plaintiff does not know whether Victor Gonzalez is still alive, and if he is, Plaintiff is unable to locate him for service of process. The parties do not even have the requisite identifying information to conduct an investigation as to his whereabouts, or whether he is alive. Plaintiff has retained Ms. Duran, a private investigator who has also consulted with investigators in Guatemala regarding the plausibility of finding an individual 45 years after their disappearance. Unfortunately, without requisite identifying information, namely a date of birth for Victor Gonzalez, investigators are in agreement that any attempt to locate Victor Gonzalez would be both futile, if not impossible. *See* Declaration of Christina Duran; Declaration of Dora Solares.

## IV. THE SECOND AMENDED COMPLAINT STATES A VALID SUPERVISORY LIABILITY CLAIM

Defendant's motion to dismiss relies heavily on a recommendation from the Magistrate Judge that the District Court declined to follow. Since Defendant has chosen to beat a dead horse, Plaintiff will demonstrate why Plaintiff's supervisory liability claim against Defendant Burns should proceed.

A supervisor can be held liable if there is "sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Hansen v. Black*, 885 F.2d 642, 645-46 (9th Cir. 1989). To that end, "[a] supervisor can be liable in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others." *Watkins v. City of Oakland*, 145 F.3d 1087, 1093 (9th Cir. 1998) (internal quotation marks omitted).

The SAC alleges Burns, "failed to properly supervise Doe defendants to ensure that the standardized administrative committee process was followed in this instance, and

instead approved and allowed the out-of-protocol decision to go forward." *See* Dkt. No. 46 at 8, ll. 11-13.

The SAC also alleges

> Defendants Burns and Does 11-15 also failed to supervise Doe defendants 1-10 responsible for conducting routine night-time safety checks, failed to require Doe defendants to actually conduct routine night-time safety checks on the first night that Romero was in a cell with Osuna, whom they knew had never been celled with another inmate while in CDCR custody and who they knew posed a threat to other inmates, and failed to establish a system that would ensure crucial nighttime safety checks were actually conducted. Defendants Burns and Does 11-15 also failed to train on these above-issues, and were aware of the deficiencies in the training of the correctional officers tasked with enforcing night-time safety checks and the rule against permitting inmates to hang sheets in their cells to obstruct viewing into such cells. As a result, hours passed without any CDCR official conducting any routine safety check, and in this vacuum, Mr. Romero was brutally murdered.

*See* Dkt. No. 46 at 10, ll. 10-21.

Defendant Burns "knew that his subordinates (Does) were engaging in these acts to place Romero in Osuna's cell, and also Defendant Burns knew that his subordinates (Does) were engaging in acts to place Romero in Osuna's cell and knew or reasonably should have known that the subordinate' conduct would deprive Romero of these rights." *See* Dkt. No. 46 at 15, ll. 23-27. Additionally, the SAC alleges that Burns supervised Does, "correctional officers on shift the night that Romero was murdered," and that Burns "knew that his subordinates did not follow protocol and knew that they did not conduct regular, scheduled safety checks of the inmates' cells during the night, and did not enforce the rules against sheets being hung up inside cells to obstruct viewing into said cells, and therefore Burns knew or reasonably should have known that the subordinates' conduct would deprive Romero of his Eighth Amendment rights." *See* Dkt. No. 46 at 16, ll. 1-6.

The allegations against Burns are not conclusory, they detail specific conduct that established a causal connection between the supervisors' conduct approving a highly

7

dangerous, out-of-protocol cell transfer, and Romero's foreseeable death at the hands of Osuna.

## V. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss should be denied, and he should be ordered to answer Plaintiff's Second Amended Complaint.

In balancing what is fair and just, the Court should allow this matter to proceed without joinder of decedent's father. Plaintiff's son died a brutal and horrific way while in the custody and care of the Defendants. Credible evidence exists that Defendants orchestrated the circumstances which led to an inmate's murder. It would be a miscarriage of justice to deprive Plaintiff of her remedy at law.

Respectfully submitted,

Dated: March 15, 2022.

        LAW OFFICES OF JUSTIN STERLING

        By: _____*/s/ Justin Sterling*_____
            Justin E. Sterling,
            Attorneys for Plaintiff
            Dora Solares

        LAW OFFICES OF ERIN DARLING

        By: _____*/s/Erin Darling*_____
            Erin Darling,
            Attorneys for Plaintiff
            Dora Solares