1

2

3

4

5

6

7

8              **UNITED STATES DISTRICT COURT**

9              **EASTERN DISTRICT OF CALIFORNIA**

10

11   DORA SOLARES,                          )   Case No.: 1:20-cv-00323 JLT BAM
                                            )
12          Plaintiff,                      )   ORDER DENYING DEFENDANT BURNES'
                                            )   MOTION TO DISMISS WITHOUT PREJUDICE
13          v.                              )   AND DIRECTING PLAINTIFF TO FILE A THIRD
                                            )   AMENDED COMPLAINT
14   RALPH DIAZ, et al.,                    )
                                            )
15          Defendants.                     )   (Doc. 47)
                                            )
16   _____

17          Based on the circumstances surrounding the murder of her son, Luis Romero, at Corcoran State

18   Prison, Dora Solares proceeds in both her individual capacity and as successor-in-interest to Mr.

19   Romero in this action pursuant to 42 U.S.C. § 1983 and state law. This action proceeds on Plaintiff's

20   Second Amended Complaint against California Department of Corrections & Rehabilitation Sergeant

21   Joseph Burnes[1] and Does 1-15 for claims of conditions of confinement; failure to protect; supervisory

22   liability; loss of familial relations; wrongful death; and failure to summon medical care. (Doc. 46.)

23          Burnes seeks dismissal of the SAC pursuant to Rules 12(b)(6) and 12(b)(7) of the Federal

24   Rules of Civil Procedure. (Doc. 47.) Plaintiff opposes dismissal, asserting she states a claim for relief.

25   (Doc. 50.) The Court finds the matter suitable for decision without oral argument pursuant to Local

26   Rule 230(g) and General Order 618. For the reasons set forth below, Burnes' motion to dismiss is

27   _____

28   [1] Plaintiff identifies this Defendant by the last name "Burns". (*See* Doc. 46.) This appears to be in error, as the
     motion to dismiss uses the spelling "Burnes." (*See* Doc. 47.) Accordingly, the Court will do the same.

**DENIED**.

## I.      Background and Allegations

### A.      Mr. Romero's father

Plaintiff Dora Solares is the mother of decedent Luis Romero. (Doc. 46 at ¶ 4.) Mr. Romero was never married, never had a domestic partner or any children, and has no other remaining family members or heirs with standing. (*Id*.) When Mr. Romero was three years old, and still living in Guatemala, Plaintiff divorced Mr. Romero's father. (*Id*. at ¶ 5.) Shortly thereafter, they emigrated to the United States. (*Id*.) Mr. Romero's father remained in Guatemala, and to Plaintiff's knowledge he never moved to the United States and has never entered the United States. (*Id*.) Plaintiff has had no contact with the father since 1977 and she does not know his whereabouts, his date of birth, or any of his family relations. (*Id*.) Plaintiff therefore alleges that it is not feasible to join him in this action. (*Id*.)

### B.      Mr. Romero's cell placement

On March 7, 2019, Mr. Romero, a then-CDCR inmate, was transferred from Mule Creek State Prison to California State Prison, Corcoran. (Doc. 46 at ¶ 14.) Corcoran prison officials, including Defendants, were required to go through a standardized administrative committee process of matching two inmates in one cell. (*Id*.) According to Plaintiff, Defendants chose not to follow this process and placed Mr. Romero in a cell with convicted murderer and single-celled inmate Jaime Osuna. (*Id*.)

Plaintiff alleges that Defendants were on notice that Osuna posed a threat to other inmates and should not share a cell with anyone. (Doc. 46 at ¶ 16.) Jail and prison reports from Osuna's incarceration document his violent misconduct and establish that he was always single-celled. (*Id*.) CDCR was in possession of documents from Osuna's own lawyers and medical team, warning CDCR of Osuna's propensity for violence, desire to kill, and need to be held in a psychiatric ward, not in a prison with other inmates. (*Id*.) CDCR records also reflect that in 2012, a guard caught Osuna with a five-inch metal shank, describing him as a high-risk inmate to be housed in a secured single cell with no inmate contact. (*Id*. at ¶ 17.) Shortly after the 2012 incident, another guard found Osuna with a hatchet-like weapon in his single cell. (*Id*.) A few months later, Osuna made his way into another inmate's cell, where he stabbed and slashed the face of the inmate, resulting in 67 stitches. (*Id*.) Prison reports from 2016 also list Osuna as high-risk staff assaultive and an administrative segregated inmate.

1    (*Id.*)

2          According to Plaintiff, Defendants, who were responsible for implementing the administrative

3    committee process, and Burnes, who was responsible for supervising and approving the decision,

4    chose to ignore the known risk posed by Osuna and placed Mr. Romero in a cell with him within 24

5    hours of Mr. Romero's arrival at Corcoran. (Doc. 46 at ¶ 19.) Plaintiff further alleges that Burnes

6    failed to properly supervise the Doe Defendants to ensure that the standardized administrative

7    committee process was followed and instead approved and allowed the out-of-protocol decision to go

8    forward. (*Id.*)

9          **C.      Mr. Romero's murder**

10         On the evening of March 8, 2019, after Mr. Romero was housed with Osuna, Plaintiff alleges

11   that Defendants did not make any nighttime safety checks and did not order Osuna or Mr. Romero to

12   remove the bedsheets that had been placed over their cell window. (Doc. 46 at ¶ 21.) Their absence

13   was so "prolonged and pronounced," Defendants heard no sounds that would indicate a violent attack

14   was occurring behind the sheets and Osuna had time to decapitate Mr. Romero, make a necklace of his

15   body parts, and cover the cell walls in blood, all with a small razor. (*Id.*) Additionally, Plaintiff alleges

16   that Burnes and Does 11-15 failed to supervise Does 1-10 responsible for conducting the safety

17   checks, failed to require that they conduct safety checks on the first night Mr. Romero was celled with

18   Osuna, and failed to establish a system that would ensure nighttime safety checks were conducted.

19   (*Id.*) Plaintiff further alleges that Burnes and Does 11-15 failed to train on these issues, knowing the

20   deficiencies in correctional officers' training. (*Id.*)

21         **D.      Procedural history**

22         Plaintiff asserts that Defendants were deliberately indifferent to a substantial risk of serious

23   harm to which Mr. Romero was exposed, and based upon these allegations, filed the instant action on

24   behalf of herself and as successor-in-interest to Mr. Romero, asserting 42 U.S.C. § 1983 claims and

25   pendent state law claims against Defendants in their individual capacities. (Doc. 2.) Plaintiff originally

26   asserted claims against Ralph Diaz, former CDCR Secretary, and Kenneth Clark, Warden of

27   California State Prison, Corcoran in addition to Burnes and Does 1-15. (*See* Docs. 2, 15.) Defendants

28   moved to dismiss Plaintiff's First Amended Complaint, (Doc. 17), and the matter was referred to the

magistrate judge for issuing findings and recommendations. (Doc. 28.) The magistrate judge recommended Defendants' motion be granted and Plaintiff be permitted leave to file an amended complaint. (Doc. 36.) The findings and recommendations were adopted in part and the Court ordered Plaintiff to file a SAC curing the noted deficiencies, as discussed more below. (Doc. 44.)

Plaintiff filed a SAC on February 9, 2022. (Doc. 46.) On February 23, 2022, Burnes filed a second motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(b)(7) on the grounds that Plaintiff fails to (1) join a required party; and (2) allege sufficient facts to state a claim for relief for supervisory liability. (Doc. 47.) Plaintiff filed an opposition on March 15, 2022, (Doc. 50,) to which Burnes replied on March 21, 2022. (Doc. 51.)

## II.     Motion to Dismiss under Rule 12(b)(6)

### A.     Legal Standard

A Rule 12(b)(6) motion "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal of a claim under Rule 12(b)(6) is appropriate when "the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). Thus, under Rule 12(b)(6), "review is limited to the complaint alone." *Cervantes v. Porterville of San Diego*, 5 F.3d 1273, 1274 (9th Cir. 1993).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Supreme Court explained,

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Iqbal*, 556 U.S. at 678 (internal citations omitted). "The issue is not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). The Court "will dismiss any claim that, even when

4

construed in the light most favorable to plaintiff, fails to plead sufficiently all required elements of a cause of action." *Student Loan Marketing Assoc. v. Hanes*, 181 F.R.D. 629, 634 (S.D. Cal. 1998). To the extent pleading deficiencies can be cured by the plaintiff alleging additional facts, leave to amend should be granted. *Cook, Perkiss & Liehe, Inc. v. Northern Cal. Collection Serv.*, 911 F.2d 242, 247 (9th Cir. 1990) (citations omitted).

**B.    Discussion**

Burnes argues that Plaintiff fails to state a claim for supervisory liability because it is "near-identical" to her prior claim, which the findings and recommendations found had failed to state a claim and which the Court "apparently adopted" in its prior order. (Doc. 47-1 at 10.)

On January 11, 2022, District Judge Dale A. Drozd adopted in part the findings and recommendations that Plaintiff's FAC be dismissed under Federal Rules of Civil Procedure 12(b)(6) and 12(b)(7). (Doc. 44.) As to Plaintiff's Eighth Amendment claims, the Court declined to adopt the findings and recommendations "to the extent it was concluded therein that the allegations of the FAC failed to state a cognizable claim against defendants Burns and the Doe for being deliberately indifferent to a substantial risk of serious harm to Romero." (*Id*. at 5.) Burnes asserts, without support, that because Judge Drozd declined to adopt "only to the extent" Plaintiff failed to allege Burnes had knowledge of a substantial risk of serious harm to Mr. Romero, this did not include Plaintiff's Eighth Amendment supervisory liability claim. (Doc. 47-1 at 10.) The Court finds no basis for such a conclusion.

In analyzing Plaintiff's supervisory liability claim, the findings and recommendations ultimately found that even taking all allegations as true, Plaintiff "failed to allege factual support that either defendant had knowledge of a substantial risk of serious harm to Decedent in placing him in a cell with inmate Osuna. Plaintiff therefore fails to state a cognizable claim for relief based on Defendants' supervisory conduct." (Doc. 36 at 8-9.) This is precisely the finding Judge Drozd declined to adopt. (*See* Doc. 44 at 5.) The SAC's allegations against Burnes are largely unchanged, if not more supportive of a claim.[2] Therefore, the Court need not revisit the issue. The Court has found that

---

[2] The only notable difference is that in the SAC, the claim is stated against Burnes and Does 11-15 only, with Defendant Clark having been dismissed in the Court's prior order. If nothing else, the new allegations against

5

1  Plaintiff plausibly alleges Burnes and the Does 11-15 were aware of the dangers Mr. Romero faced by

2  being celled with Osuna. Burnes' motion to dismiss under Rule 12(b)(6) is **DENIED**.

3  **III.   Motion to Dismiss under Rule 12(b)(7)**

4      **A.   Legal Standard**

5      Federal Rule of Civil Procedure 12(b)(7) authorizes the Court to dismiss an action if a plaintiff

6  has failed "to join a party under Rule 19." Federal Rule of Civil Procedure 19(a) provides, *inter alia,*

7  that a person "must be joined as a party" if "in that person's absence, the court cannot accord complete

8  relief among existing parties." If that required person cannot be joined, then "the court must determine

9  whether, in equity and good conscience, the action should proceed among the existing parties or

10  should be dismissed." Fed. R. Civ. P. 19(b).

11      **B.   Discussion**

12      Burnes seeks dismissal of the SAC because, contrary to the Court's prior order (Doc. 44),

13  Plaintiff failed to either join Mr. Romero's father as a necessary party or amend her complaint to plead

14  facts indicating that joinder is not required. (Doc. 47-1 at 5-9.)[3] Plaintiff argues that the father is not

---

16  Burnes only strengthen Plaintiff's supervisory liability claim. Paragraph 44 of the FAC reads as follows:

17      ***Defendants Clark*** and Does 11-15 knew of the decision to place Romero in Osuna's
18      cell and approved it, thereby knowingly refusing to terminate acts of his subordinates
       (Burn[e]s and Does) that he knew or reasonably should have known would cause the
19      subordinates to deprive Romero of his eighth amendment rights, and furthermore,
       ***Defendant Clark*** knew that his subordinates (Burn[e]s and Does) were engaging in
20      these acts to place Romero in Osuna's cell, and also ***Defendant Clark*** knew that his
       subordinates (Clark and Does) were engaging in acts to place Romero in Osuna's cell
21      and knew or reasonably should have known that the subordinate'[s] conduct would
       deprive Romero of these rights.

22  (Doc. 15 at ¶ 44.) The same paragraph in the SAC alleges:

23      ***Defendants Burn[e]s*** and Does 11-15 knew of the decision to place Romero in
       Osuna's cell and approved it, thereby knowingly refusing to terminate acts of
24      subordinates (Does 1-10) that he knew or reasonably should have known would cause
       the subordinates to deprive Romero of his Eighth amendment rights, and furthermore,
25      ***Defendant Burn[e]s*** knew that his subordinates (Does) were engaging in these acts to
       place Romero in Osuna's cell, and also ***Defendant Burn[e]s*** knew that his subordinates
26      (Does) were engaging in acts to place Romero in Osuna's cell and knew or reasonably
       should have known that the subordinate' conduct would deprive Romero of these
       rights.

27  (Doc. 46 at ¶ 44.)

28  [3] Elsewhere in his motion, Burnes seeks dismissal of the wrongful death and Fourteenth Amendment claims,
   (Doc. 47-1 at 5), but does not adequately explain how Rule 19 applies to Plaintiff's Fourteenth Amendment

necessary, and his joinder is not feasible because his claims are barred by the statute of limitations. (Doc. 50 at 4-5.) District Judge Dale A. Drozd previously provided the three-part test for compulsory joinder:

> First, the court must determine whether a nonparty should be joined under Rule 19(a). That nonparty (or "absentee") is now referred to as a "person required to be joined if feasible." If an absentee meets the requirements of Rule 19(a), the second stage is for the court to determine whether it is feasible to order that the absentee be joined. Finally, if joinder is not feasible, the court must determine at the third stage whether the case can proceed without the absentee or whether the action must be dismissed.

(Doc. 44 at 9-10 (*quoting E.E.O.C. v. Peabody W. Coal Co.*, 610 F.3d 1070, 1078 (9th Cir. 2010))) (footnote omitted).)

### 1.      Necessary

Burnes argues that under California Code of Civil Procedure § 377.60, Mr. Romero's father is a necessary party. (Doc. 47-1 at 5.) Plaintiff contends the father is "not entitled to any property via intestate succession" because he abandoned Mr. Romero as a child. (Doc. 50 at 4.)

As Judge Drozd previously indicated, "'[a]n heir who files a wrongful death action is required to properly join all known heirs in that action.'" (Doc. 44 at 10 (quoting *Corder v. Corder*, 41 Cal. 4th 644, 652 n.3 (2007)).) To the extent Plaintiff argues the father is not a necessary party because he is not entitled to property under § 377.60, this argument is unavailing. "It is the party's *claim* of a protectible interest that makes its presence necessary," and an absentee party is "entitled to be heard" on the issue of whether its claim is viable. *Am. Greyhound Racing, Inc. v. Hull*, 305 F.3d 1015, 1024 (9th Cir. 2002). Mr. Romero's father is entitled to be heard on the issue of whether he has a protectable interest, making him a necessary party.

### 2.      Feasible

As stated in the prior order, "there are three instances when joinder is not feasible: 'when venue is improper, when the absentee is not subject to personal jurisdiction, and when joinder would

---

claim for loss of familial relations. The authority he relies upon concerns wrongful death and/or survival claims brought on behalf of the decedent, not by the plaintiff for the deprivation of her own rights. (*See id.* at 6.) Furthermore, Burnes confines his argument to California Code of Civil Procedure § 377.60, California's wrongful death statute. Thus, the Court will also limit its discussion to the wrongful death claim.

destroy subject matter jurisdiction.'" (Doc. 44 at 12 (quoting *E.E.O.C.*, 400 F.3d at 779).) In its

opposition to the first motion to dismiss, Plaintiff argued the father was not within the court's personal

jurisdiction. (*See id.*) The Court rejected this argument:

> Rule 19(a) is concerned with whether the father is "subject to service of
> process," not whether the court has personal jurisdiction over him. Fed.
> R. Civ. P. 19(a)(1). As defendants note, Romero's father is subject to
> service of process. Fed. R. Civ. P. 4(f) (rule for serving an individual in
> a foreign country); *see also SAT Int'l Corp. v. Great White Fleet (US)
> Ltd.*, No. 03 CIV. 7481 (KNF), 2006 WL 661042, at *15 (S.D.N.Y. Mar.
> 16, 2006) (service of process of an individual in Guatemala is possible
> under Rule 4(f)(2)). Plaintiff has not otherwise shown that the father is
> not "subject to service of process," Federal Rule of Civil Procedure
> 19(a), and plaintiff has the obligation to plead as to that matter, Federal
> Rule of Civil Procedure 19(c). Accordingly, the court finds on the
> present record that service on the father is feasible.

(*Id.*) Notwithstanding these findings, the Court afforded Plaintiff an opportunity to join the father or

allege additional facts indicated that service of process on the father is not feasible. (*See* Doc. 44 at 12-

14.) In comparing the SAC to FAC considered by Judge Drozd, the Court identifies the following

additional allegations related to the feasibility of service on the father in the SAC:

> [Plaintiff] has had no contact with Luis Romero's father since 1977 and
> she is not aware of anyone who knows his whereabouts. Moreover,
> [Plaintiff] does not know the exact birthday of Luis Romero's father,
> and he left shortly after Luis Romero was born and never saw the family
> again. Luis Romero's father is not subject to process as his location
> within Guatemala is unknown, his birthday is unknown, and any family
> relations are unknown. Joinder of Luis Romero's father is not feasible
> because [Plaintiff], nor anyone she knows, has had no contact with him
> since 1977, she does not know his birthday, or whereabouts or family
> relations to even find out his whereabouts.

(Doc. 46 at ¶ 5.)

Burnes argues the additional allegations that Plaintiff does not know the father's date of birth

and has not had contact with the father since 1977 do not address the issue raised in the Court's order.

(Doc. 47-1 at 8.) Indeed, the standard is not whether it is difficult or burdensome, or if Plaintiff has

otherwise been successful at locating Mr. Romero's father. The standard is whether he is subject to

service of process. Fed. R. Civ. P. 4; *Solares v. Allison*, 2022 WL 102216, at *7 (E.D. Cal. Jan. 11,

2022).

Federal Rule of Civil Procedure 4(f) provides that an individual may be served in a foreign

country by any of the following means:

(1) by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents;

(2) if there is no internationally agreed means, or if an international agreement allows but does not specify other means, by a method that is reasonably calculated to give notice:

    (A) as prescribed by the foreign country's law for service in that country in an action in its courts of general jurisdiction;

    (B) as the foreign authority directs in response to a letter rogatory or letter of request; or

    (C) unless prohibited by the foreign country's law, by:

        (i) delivering a copy of the summons and of the complaint to the individual personally; or

        (ii) using any form of mail that the clerk addresses and sends to the individual and that requires a signed receipt; or

(3) by other means not prohibited by international agreement, as the court orders.

Fed. R. Civ. P. 4(f). With respect to effecting service in Guatemala, *SAT International Corporation v. Great White Fleet (US) Ltd.*, 2006 WL 661042 (S.D.N.Y. Mar. 16, 2006) is particularly instructive:

Guatemala has never ratified or signed the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents. The parties have not informed the Court of any other international agreement governing the proper service of process between the United States and Guatemala that is applicable, and the Court is unaware of any. Therefore, absent such an agreement, the Court finds that the plaintiff was free to employ any of the four alternative methods of service, provided for in Fed.R.Civ.P. 4(f), to effect service on [the defendant].

*Id*. at *15.

Similarly, the parties have not informed the Court of any international agreement governing service of process in Guatemala, and the Court is unaware of any. Thus, Plaintiff may effect service by any of the four alternative means. Rule 4(f)(3), for example, permits service of process provided it is court-ordered, "comport[s] with the constitutional notions of due process," and is not prohibited by an international agreement. *Rio Properties, Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1015-16 (9th Cir. 2002). Plaintiff is not limited to personal service on Mr. Romero's father. *See id*. (collecting cases to demonstrate the "wide variety" of alternative methods trial courts have authorized under Rule 4(f)(3)).

Accordingly, the Court finds that, as alleged, Mr. Romero's father is subject to service of process and thus, his joinder is feasible.

### 3.  Indispensable

As was the case in the prior order, the Court need not reach the issue of dispensability under Rule 19(b). (*See* Doc. 44 at 12 ["Rule 19(b) applies only if a party is necessary and it is not feasible to join them."].) Similarly, discussion of whether Mr. Romero's claims are barred by the statute of limitations is not warranted at this stage. (*See id*. ["The authority identified by the court indicates that a party whose claims are barred by the statute-of-limitations may be necessary under Rule 19(a) but is not indispensable under Rule 19(b)."] (citing *Chipman v. Nelson*, 2015 WL 5330143, at *12 (E.D. Cal. Sept. 11, 2015), *subsequently aff'd*, 848 F. App'x 753 (9th Cir. 2021); *Est. of Burkhart v. United States*, 2008 WL 4067429, at *7-8 (N.D. Cal. Aug. 26, 2008); *A.D. v. Cal. Highway Patrol*, 2009 WL 733872, at *4-5 (N.D. Cal. Mar. 17, 2009)).)

### C.  Further Proceedings

Burnes seeks dismissal of the SAC on the ground that the father, a necessary party, has not been joined. (Doc. 47-1 at 9.) However, dismissal is premature. *See Biagro W. Sales Inc. v. Helena Chem. Co.*, 160 F. Supp. 2d 1136, 1141 (E.D. Cal. 2001) ("[A] court should grant a 12(b)(7) motion to dismiss only if the court determines that joinder would destroy jurisdiction and the nonjoined party is necessary and indispensable.") Moreover, the burden of proof on a motion to dismiss for failing to join a necessary party lies with the moving party. *Id*. Burnes fails to address the factors relevant to the Court's determination whether the action may proceed without Mr. Romero's father under Rule 19(b). *Id.* at 1142-43. Thus, Burnes' motion to dismiss under Rule 12(b)(7) is **DENIED**.

Nonetheless, in balancing the viability of Plaintiff's claims and the father's potential interests to be protected, the Court directs Plaintiff to file a Third Amended Complaint that either joins Mr. Romero's father or alleges additional facts establishing why joinder is not required. Fed. R. Civ. P. 19(a)(2), (c).

## IV.  Conclusion and Order

For the reasons set forth above, the Court **ORDERS**:

1.  Defendant Burnes' motion to dismiss (Doc. 47) is **DENIED WITHOUT PREJUDICE**.

2.      Plaintiff **SHALL** file any Third Amended Complaint within **30 days** of the date of service of this order. **If Plaintiff fails to file an amended complaint, the action may be dismissed without prejudice for failure to prosecute and failure to obey the Court's order**.

IT IS SO ORDERED.

Dated:   **May 30, 2023**

UNITED STATES DISTRICT JUDGE