Justin E. Sterling, State Bar No. 249491
LAW OFFICES OF JUSTIN STERLING
Justin@SterlingDefense.com
15760 Ventura Blvd. Suite 700
Encino, CA 91436
Tel. (818) 995-9452/Fax. (818) 824-3533

Erin Darling, State Bar No. 259724
LAW OFFICES OF ERIN DARLING
Erin@ErinDarlingLaw.com
3435 Wilshire Blvd. Suite 2910
Los Angeles, CA 90010
Tel. (323) 736-2230

Attorneys for Plaintiff Dora Solares

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DORA SOLARES, an individual, <br><br> Plaintiff, <br><br> v. <br><br> RALPH DIAZ, in his individual capacity, KENNETH CLARK, in his individual capacity, JOSEPH BURNS, in his individual, and DOES 1 TO 15, in their individual capacities <br><br> Defendants. | Case No. 1:20-cv-00323-LHR <br><br> **PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS LEONEL PENA AND JESSE GARCIA'S MOTION TO DISMISS** <br><br> **Judge:** Hon. Lee H. Rosenthal |

Plaintiff Dora Solares hereby opposes the Motion to Dismiss filed by Defendants Leonel Pena and Jesse Garcia. *See* Dkt. No. 100, Motion to Dismiss. Plaintiff requests that the Court deny this motion and that Pena and Garcia be held to answer so that discovery as to each of them can commence in earnest.

Respectfully submitted,

Dated: August 23, 2024      LAW OFFICES OF ERIN DARLING

By: _____*/s/Erin Darling*_____
     Erin Darling,
     Attorneys for Plaintiff Dora Solares

## I. INTRODUCTION

Within 48 hours of being transferred to California State Prison, Corcoran, Luis Romero was gruesomely murdered by his cellmate, Jaime Osuna. Osuna had time to decapitate Romero with a razor, turn Romero's body parts into a necklace, and scrawl words in blood across the wall of the cell. Correctional officers on duty, including defendants Jesse Garcia and Leonel Pena, somehow did not notice any of this. Despite a clear rule that forbade inmates from obstructing views into cells, Garcia and Pena did not order Osuna (or Romero) to pull down the bedsheet that blocked the view into their cell, for hours on end. Despite a duty to conduct safety checks at least once an hour, Garcia and Pena failed to comply with this basic job responsibility and failed to even be within earshot or eyeshot of Romero and Osuna. Garcia and Pena should have known that Romero was suffering a barbaric attack by his cellmate and in dire need of immediate care.

## II. STANDARD OF REVIEW

In ruling on a motion to dismiss under Rule 12(b)(6), a court must determine whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Under Rule 12(b)(6), a court may dismiss a complaint "only if it is clear that no relief can be granted under any set of facts that could be proved consistent with the allegations." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002) (emphasis added). Defendants' motion to dismiss should be denied because the FOURTH Amended Complaint (FAC), contain allegations "taken as true and construed in the light most favorable to plaintiff[]," *Epstein v. Washington Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1999), "contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively," and "suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

## III. CALIFORNIA GOVERNMENT CODE § 845.6

California Government Code section 845.6 creates an affirmative duty to summon medical care when a public employee acting within the scope of his employment "knows *or has reason to know* that the prisoner is in need of immediate medical care and he fails to take reasonable action to summon such medical care." Cal. Gov't Code § 845.6 (emphasis added).

"In order to state a claim under § 845.6, a prisoner must establish three elements: (1) the public employee knew or should had reason to know of the need (2) for immediate medical care, and (3) failed to reasonably summon such care." *Jett v. Penner*, 439 F.3d 1091, 1099 (9th Cir. 2006). Ninth Circuit authority is clear: it is enough to allege facts from which it can be inferred that a defendant "reasonably should know" of the prisoner's need for immediate medical care. *Horton by Horton v. City of Santa Maria*, 915 F.3d 592, 605 (9th Cir. 2019) ("[P]rison officials generally cannot be sued for failing to provide medical care to a prisoner, unless the official knows, *or reasonably should know*, that the prisoner requires immediate medical care." (emphasis added)).

Whether a public employee or entity knows or has reason to know of a prisoner's need for immediate care is an objective standard. *Lucas v. Cty. of Los Angeles*, 47 Cal.App.4th 277, 288 (1996); see also *Johnson v. Cty. of Los Angeles*, 143 Cal.Appl.3d 298 (1983) (concluding the phrase "has reason to know" is the equivalent of an objective standard). Defendants' argument (that they did not actually observe anything to indicate Romero had a serious medical need) focuses on their subjective knowledge, but this standard was rejected in *Lucas*:

> Respondents argue that the phrase 'reason to know,' as used in Government Code section 845.6, requires a subjective determination of whether defendants had the requisite degree of knowledge of a serious medical condition. They base this assertion on *Watson*'s statement that "[l]iability is limited to those situations where the public entity intentionally or unjustifiably fails to furnish immediate medical care.' (21 Cal.App.4th 836, 841.) We are not persuaded that *Watson* meant to declare a subjective standard. To the contrary, the phrase 'has reason to know' is the equivalent of an objective standard.

*Lucas*, 47 Cal.App.4th. at 288.

2

The knowledge element can be satisfied when an officer on duty "had reason to know of [the decedent's urgent health] condition because of their obligation to perform timely safety-checks." *Medina v. Cty. of Los Angeles*, No. 19-cv-3808-GHW, 2020 U.S. Dist. LEXIS 130732, 2020 WL 3964793, at *16 (C.D. Cal. Mar. 9, 2020) (denying summary judgment). The Ninth Circuit has held that pre-trial detainees do have the right to direct-view safety checks "sufficient to determine whether their presentation indicates the need for medical treatment." *Gordon v. Cty. of Orange*, 6 F4th 961, 973 (9th Cir. 2021).

Defendants do not argue two of the three elements of § 845.6 and identified in *Jett*, that Romero was in need of immediate medical care and that Garcia and Pena failed to summon such care. *Jett*, 439 F.3d at 1099. Instead, Defendants hang their hat on the argument that the FAC does not allege facts that Garcia and Pena observed that Romero had a serious medical need. That ignores the constructive knowledge that the FAC clearly alleges.

First, the FAC alleges that correctional officer defendants "were supposed to conduct nightly safety checks of each cell at least every hour." *See* Dkt. 97, FAC at p. 11, ll. 7-8. The FAC also alleges that defendants, including defendants Garcia and Pena, "did not conduct any nighttime safety checks" (*id.* at p. 11, ll. 15-16), "did not order Osuna (or Romero) to take the bedsheets down at any point in the night" (*id.* at p. 11, ll. 16-17), and failed to make regular checks "despite a bedsheet draped inside Romero and Osuna's cell that evening, which visibly prevented proper monitoring and would have required the inmates to take it down, under Corcoran's own rules." *Id.* at p. 12, ll. 24-27. The FAC meets the objective standard established in *Lucas*: Garcia and Pena *should have known* that Romero required immediate medical care, but their "failure to conduct required safety checks and required count measures…was so prolonged and pronounced that they heard no sounds that would indicate a violent attack was being committed." *Id.* at p. 11, ll. 18-20. In addition, Garcia and Pena "failed to be within earshot or eyeshot of Romero and Osuna's cell." *Id.* at p. 19, ll. 25-26. The FAC alleges facts that establish that Garcia and Pena had constructive knowledge regarding Romero's immediate need for medical care

3

while being attacked by Osuna, in that they should have known and should have intervened if they were following Corcoran's rules regarding safety checks and obstruction of views into the cells of inmates. As in *Medina*, Defendants Garcia and Pena had reason to know of Romero's emergency need for medical help because of their obligation to conduct timely safety checks. *See Medina*, 2020 WL 3964793 at *16.

Defendants Garcia and Pena's abject failure to comply with basic job functions constitute constructive notice under Section 845.6.

## IV. CONCLUSION

For the foregoing reasons, Defendants' Rule 12(b)(6) motion should be denied, and they should be ordered to answer Plaintiff's Complaint. Alternatively, Plaintiff respectfully requests leave to amend.

Respectfully submitted,

Dated: August 23, 2024        LAW OFFICES OF JUSTIN STERLING

By: _____/s/ *Justin Sterling*_____
    Justin E. Sterling,
    Attorneys for Plaintiff
    Dora Solares

LAW OFFICES OF ERIN DARLING

By: _____/s/*Erin Darling*_____
    Erin Darling,
    Attorneys for Plaintiff
    Dora Solares

4