Justin E. Sterling, State Bar No. 249491
LAW OFFICES OF JUSTIN STERLING
Justin@SterlingDefense.com
15760 Ventura Blvd. Suite 700
Encino, CA 91436
Tel. (818) 995-9452/Fax. (818) 824-3533

Erin Darling, State Bar No. 259724
LAW OFFICES OF ERIN DARLING
Erin@ErinDarlingLaw.com
3435 Wilshire Blvd. Suite 2910
Los Angeles, CA 90010
Tel. (323) 736-2230

Attorneys for Plaintiff Dora Solares

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DORA SOLARES, an individual,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>RALPH DIAZ, in his individual capacity, KENNETH CLARK, in his individual capacity, JOSEPH BURNS, in his individual, and DOES 1 TO 15, in their individual capacities<br><br>　　　　Defendants. | Case No. 1:20-cv-00323-LHR<br><br>**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT BRYAN GALLEMORE'S MOTION TO DISMISS**<br><br>**Judge:**　　Hon. Lee H. Rosenthal |

　　　　Plaintiff Dora Solares hereby opposes the Motion to Dismiss filed by Defendant Bryan Gallemore. *See* Dkt. No. 105, Motion to Dismiss, Gallemore. Plaintiff requests that the Court deny this motion and that Defendant Bryan Gallemore be held to answer so that discovery can commence in earnest.

　　　　　　　　　　　　　　　　　Respectfully submitted,

Dated: September 17, 2024　　　LAW OFFICES OF ERIN DARLING

　　　　　　　　　　　　　　　　By: _____/s/Erin Darling_____
　　　　　　　　　　　　　　　　　　Erin Darling,
　　　　　　　　　　　　　　　　　　Attorneys for Plaintiff Dora Solares

## I. INTRODUCTION

Defendant Bryan Gallemore has filed a Motion to Dismiss that is nearly identical to the Motion to Dismiss filed by Defendants Leonel Pena and Jesse Garcia. *See* Dkt. No. 103, Motion to Dismiss, J. Garcia and L. Pena. Plaintiff Dora Solares files this opposition, which is therefore similar to the opposition filed against Defendants Leonel Pena and Jesse Garcia. *See* Dkt. No. 103, Opp. to Defs. Leonel Pena and Jesse Garcia's Motion to Dismiss.

The Fourth Amended Complaint ("FAC") alleges that Defendant Bryan Gallemore, and other defendants, "failed to conduct routine safety check-ups, routine counting of inmates that require a visual inspection of inmates in each cell, and routine visual and auditory monitoring of the cell, even when a bedsheet was impermissibly draped inside the cell." *See* Dkt. No. 97, FAC, at p. 11, ll. 3-6. Defendant Gallemore, and other defendants, "did not enforce the normal rules" that prohibit inmates "from obstructing their view into their cell, and the draping of bedsheets or other materials in such a manner is not permitted." *Id.* at 11, ll. 8-9, 11-12. Defendant Gallemore, and other defendants, "did not order Osuna (or Romero) to take the bedsheets down at any point in the night." *Id.* at 11, ll. 16-17. Defendant Gallemore, and other defendants, failed "to conduct required safety-checks and required count measures and required audio/visual monitoring was so prolonged and pronounced that they heard no sounds that would indicate a violent attack was being committed and that they should in intervene." *Id.* at 11, ll. 18-21. Moreover, Defendant Gallemore, and other defendants, knew Jaime Osuna "had not been celled with another inmate while in administrative segregation unit" and they knew that Jaime Osuna "posed a threat to other inmates." *Id.* at 12, ll. 3-5.

Thus, the FAC alleges that Defendant Gallemore and other defendants, "failed to conduct timely safety checks, failed to order the draped bedsheets obstructing any view into the cell to come down, and failed to be within earshot or eyeshot of Romero and Osuna's cell. In the moments that Mr. Romero was attacked by Osuna, but before Mr. Romero died, Defendant Does failed to provide necessary medical care that would have prevented Mr. Romero's death." *Id.* at 19, l. 25-20, l. 2. As a result, Defendant Gallemore

and other defendants "failed to take reasonable action to summons medical care for Mr. Romero, despite having reason to know that he was in need of immediate medical care, in violation of Cal. Gov't Code § 845.6." *Id.* at 20, ll. 5-8.

Defendant's motion attempts to muddy a clear description of a failure to provide immediate care. Defendant Gallemore failed to comply with this basic job responsibility and failed to even be within earshot or eyeshot of Romero and Osuna, when he should have known that Romero was suffering a barbaric attack by his cellmate and in dire need of immediate care.

## II. STANDARD OF REVIEW

In ruling on a motion to dismiss under Rule 12(b)(6), a court must determine whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Under Rule 12(b)(6), a court may dismiss a complaint "only if it is clear that no relief can be granted under any set of facts that could be proved consistent with the allegations." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002) (emphasis added).

Defendants' motion to dismiss should be denied because the Fourth Amended Complaint (FAC), contain allegations "taken as true and construed in the light most favorable to plaintiff[]," *Epstein v. Washington Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1999), "contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively," and "suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). As described below, the FAC alleges facts that clearly meet the "has reason to know" standard set forth in the plain language of § 845.6.

## III. CALIFORNIA GOVERNMENT CODE § 845.6

California Government Code section 845.6 creates an affirmative duty to summon medical care when a public employee acting within the scope of his employment "knows *or has reason to know* that the prisoner is in need of immediate medical care and he fails to take reasonable action to summon such medical care." Cal. Gov't Code § 845.6 (emphasis added).

"In order to state a claim under § 845.6, a prisoner must establish three elements: (1) the public employee knew or should had reason to know of the need (2) for immediate medical care, and (3) failed to reasonably summon such care." *Jett v. Penner*, 439 F.3d 1091, 1099 (9th Cir. 2006). Ninth Circuit authority is clear: it is enough to allege facts from which it can be inferred that a defendant "reasonably should know" of the prisoner's need for immediate medical care. *Horton by Horton v. City of Santa Maria*, 915 F.3d 592, 605 (9th Cir. 2019) ("[P]rison officials generally cannot be sued for failing to provide medical care to a prisoner, unless the official knows, *or reasonably should know*, that the prisoner requires immediate medical care." (emphasis added)).

Whether a public employee or entity knows or has reason to know of a prisoner's need for immediate care is an objective standard. *Lucas v. Cty. of Los Angeles*, 47 Cal.App.4th 277, 288 (1996); see also *Johnson v. Cty. of Los Angeles*, 143 Cal.Appl.3d 298 (1983) (concluding the phrase "has reason to know" is the equivalent of an objective standard). Defendant Gallemore's argument (that he did not actually observe anything to indicate Romero had a serious medical need and therefore had no duty to act) focuses on his subjective knowledge, but this standard was rejected by the Ninth Circuit in *Lucas*:

> Respondents argue that the phrase 'reason to know,' as used in Government Code section 845.6, requires a subjective determination of whether defendants had the requisite degree of knowledge of a serious medical condition. They base this assertion on *Watson*'s statement that '[l]iability is limited to those situations where the public entity intentionally or unjustifiably fails to furnish immediate medical care.' (21 Cal.App.4th 836, 841.) We are not persuaded that *Watson* meant to declare a subjective standard. To the contrary, the phrase 'has reason to know' is the equivalent of an objective standard.

*Lucas*, 47 Cal.App.4th. at 288.

3

| | |
|---|---|
| 1 | The knowledge element can be satisfied when an officer on duty "had reason to |
| 2 | know of [the decedent's urgent health] condition because of their obligation to perform |
| 3 | timely safety-checks." *Medina v. Cty. of Los Angeles*, No. 19-cv-3808-GHW, 2020 U.S. Dist. |
| 4 | LEXIS 130732, 2020 WL 3964793, at *16 (C.D. Cal. Mar. 9, 2020) (denying summary |
| 5 | judgment). The Ninth Circuit has held that pre-trial detainees do have the right to direct- |
| 6 | view safety checks "sufficient to determine whether their presentation indicates the need |
| 7 | for medical treatment." *Gordon v. Cty. of Orange*, 6 F4th 961, 973 (9th Cir. 2021). |
| 8 | Defendant Gallemore does not argue two of the three elements of § 845.6 identified |
| 9 | in *Jett*, that Romero was in need of immediate medical care and that he failed to summon |
| 10 | such care. *Jett*, 439 F.3d at 1099. Instead, Defendant Gallemore argues that the FAC does |
| 11 | not allege facts that he observed that Romero had a serious medical need. That ignores the |
| 12 | constructive knowledge that the FAC indeed alleges. |
| 13 | First, the FAC alleges that correctional officer defendants "were supposed to |
| 14 | conduct nightly safety checks of each cell at least every hour." *See* Dkt. 97, FAC at p. 11, ll. |
| 15 | 7-8. The FAC also alleges that defendants, including Defendant Gallemore, "did not |
| 16 | enforce the normal rules" (*Id.* at 11, ll. 8-9, 11-12) and "did not order Osuna (or Romero) |
| 17 | to take the bedsheets down at any point in the night." *Id.* at 11, ll. 16-17. Defendant |
| 18 | Gallemore, and other defendants, failed "to conduct required safety-checks and required |
| 19 | count measures and required audio/visual monitoring was so prolonged and pronounced |
| 20 | that they heard no sounds that would indicate a violent attack was being committed and |
| 21 | that they should in intervene." *Id.* at 11, ll. 18-21. Defendants, including Gallemore, "did |
| 22 | not conduct any nighttime safety checks" (*id.* at p. 11, ll. 15-16), "did not order Osuna (or |
| 23 | Romero) to take the bedsheets down at any point in the night" (*id.* at p. 11, ll. 16-17), and |
| 24 | failed to make regular checks "despite a bedsheet draped inside Romero and Osuna's cell |
| 25 | that evening, which visibly prevented proper monitoring and would have required the |
| 26 | inmates to take it down, under Corcoran's own rules." *Id.* at p. 12, ll. 24-27. |
| 27 | The FAC meets the objective standard established in *Lucas*: Defendant Gallemore |
| 28 | *should have known* that Romero required immediate medical care, but the "failure to conduct |

required safety checks and required count measures…was so prolonged and pronounced that they heard no sounds that would indicate a violent attack was being committed." *Id.* at p. 11, ll. 18-20. In addition, Gallemore "failed to be within earshot or eyeshot of Romero and Osuna's cell." *Id.* at p. 19, ll. 25-26. Thus, the FAC alleges facts that establish that Gallemore had constructive knowledge regarding Romero's immediate need for medical care while being attacked by Osuna, in that he and other defendants should have known what was going on inside Osuna's cell because he should have followed Corcoran's rules against the obstruction of views into the cells of inmates.

Anticipating Defendant Gallemore's reply, Plaintiff looks to the reply by Defendants Garcia and Pena to Plaintiff's opposition. *See* Dkt. No. 106 at 5. In that reply, Defendants Garcia and Pena attempt some spin of "known unknowns" and offer the following word salad: "An official who does not know facts that would lead to an inference of the ultimate fact, does not have 'reason to know' that ultimate fact." *See* Dkt. No. 106 at 5. The legal standard at issue here does not require an ontological exercise but a simple objective test, whether defendant "reasonably should know" of the prisoner's need for immediate medical care. *Horton by Horton*, 915 F.3d at 605. Defendant's subjective ignorance of key facts does not relieve him of responsibility when he had a duty to enforce rules against obstructing views because he did have a "reason to know" what was going on inside Osuna's cell. Defendant Gallemore cannot escape the objective nature of the "reason to know" standard: had he enforced policy about obstructed views he would have had "actual knowledge that the prisoner is in need of *immediate* medical care.'" *Lucas,* 47 Cal. App. 4th at 288 (emphasis in original) (quoting *Watson*, 21 Cal, App. 4th at 841). Gallemore did not. His failure to comply with that policy may have meant he lacked subjective knowledge of Romero's suffering, but that does relieve him of his objective duty to order Osuna to remove the obstructing bedsheet. There's no complicated inference necessary, had that requirement been met then Defendant correctional officers, including Gallemore, would have known of the carnage inside that cell and that Romero was in immediate need of medical care prior to his death.

Defendant Gallemore's abject failure to comply with his basic job functions constitutes constructive notice under Section 845.6 because he indeed should have known (but did not) of the need for medical care.

## IV.	CONCLUSION

For the foregoing reasons, Defendant Gallemore's Rule 12(b)(6) motion should be denied, and he should be ordered to answer Plaintiff's Fourth Amended Complaint. Alternatively, Plaintiff respectfully requests leave to amend.

Respectfully submitted,

Dated: September 17, 2024			LAW OFFICES OF JUSTIN STERLING

By: _____/s/ *Justin Sterling*_____
	Justin E. Sterling,
	Attorneys for Plaintiff
	Dora Solares

LAW OFFICES OF ERIN DARLING

By: _____*/s/ Erin Darling*_____
	Erin Darling,
	Attorneys for Plaintiff
	Dora Solares