Justin E. Sterling, State Bar No. 249491
LAW OFFICES OF JUSTIN STERLING
Justin@SterlingDefense.com
15760 Ventura Blvd. Suite 700
Encino, CA 91436
Tel. (818) 995-9452/Fax. (818) 824-3533

Erin Darling, State Bar No. 259724
LAW OFFICES OF ERIN DARLING
Erin@ErinDarlingLaw.com
3435 Wilshire Blvd. Suite 2910
Los Angeles, CA 90010
Tel. (323) 736-2230

Attorneys for Plaintiff Dora Solares

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DORA SOLARES, an individual,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>RALPH DIAZ, in his individual capacity, KENNETH CLARK, in his individual capacity, JOSEPH BURNS, in his individual, and DOES 1 TO 15, in their individual capacities<br><br>　　　　Defendants. | Case No. 1:20-cv-00323-LHR-BAM<br><br>**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT LUIS SILVA'S MOTION TO DISMISS**<br><br>**Judge:**　　Hon. Lee H. Rosenthal |

　　　　Plaintiff Dora Solares hereby opposes the Motion to Dismiss filed by Defendant Luis Silva. *See* Dkt. No. 1057 Motion to Dismiss, Silva.  Plaintiff requests that the Court deny this motion and that Defendant Luis Silva be held to answer so that discovery can commence in earnest.

　　　　　　　　　　　　　　　　　Respectfully submitted,

Dated:  September 18, 2024　　　LAW OFFICES OF ERIN DARLING

　　　　　　　　　　　　　　　　By: _____/s/ Erin Darling_____
　　　　　　　　　　　　　　　　　　Erin Darling,
　　　　　　　　　　　　　　　　　　Attorneys for Plaintiff Dora Solares

## I. INTRODUCTION

Plaintiff Dora Solares's Fourth Amended Complaint ("FAC") paints a clear picture of inaction in the face of horror and properly alleges a violation of California Government Code section 845.6. The FAC alleges that Defendant Luis Silva, and other defendants, "failed to conduct routine safety check-ups, routine counting of inmates that require a visual inspection of inmates in each cell, and routine visual and auditory monitoring of the cell, even when a bedsheet was impermissibly draped inside the cell." *See* Dkt. No. 97, FAC, at p. 11, ll. 3-6. Defendant Silva, and other defendants, "did not enforce the normal rules" that prohibit inmates "from obstructing their view into their cell, and the draping of bedsheets or other materials in such a manner is not permitted." *Id.* at 11, ll. 10-14. Defendant Silva, and other defendants, "did not order Osuna (or Romero) to take the bedsheets down at any point in the night." *Id.* at 11, ll. 16-17. Defendant Silva, and other defendants, failed "to conduct required safety-checks and required count measures and required audio/visual monitoring was so prolonged and pronounced that they heard no sounds that would indicate a violent attack was being committed and that they should in intervene." *Id.* at 11, ll. 18-21. Moreover, Defendant Silva, and other defendants, knew Jaime Osuna "had not been celled with another inmate while in administrative segregation unit" and they knew that Jaime Osuna "posed a threat to other inmates." *Id.* at 12, ll. 3-5.

The FAC alleges that Defendant Silva and other defendants, "failed to conduct timely safety checks, failed to order the draped bedsheets obstructing any view into the cell to come down, and failed to be within earshot or eyeshot of Romero and Osuna's cell. In the moments that Mr. Romero was attacked by Osuna, but before Mr. Romero died, Defendant Does failed to provide necessary medical care that would have prevented Mr. Romero's death." *Id.* at 19, l. 25 - p. 20, l. 2. As a result, Defendant Silva and other defendants "failed to take reasonable action to summons medical care for Mr. Romero, despite having reason to know that he was in need of immediate medical care, in violation of Cal. Gov't Code § 845.6." *Id.* at 20, ll. 5-8.

## II. STANDARD OF REVIEW

In ruling on a motion to dismiss under Rule 12(b)(6), a court must determine whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Under Rule 12(b)(6), a court may dismiss a complaint "only if it is clear that no relief can be granted under any set of facts that could be proved consistent with the allegations." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002).

Defendants' motion to dismiss should be denied because the Fourth Amended Complaint (FAC), contain allegations "taken as true and construed in the light most favorable to plaintiff[]," *Epstein v. Washington Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1999), "contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively," and "suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). As described below, the FAC alleges facts that clearly meet the "has reason to know" standard set forth in the plain language of § 845.6.

## III. CALIFORNIA GOVERNMENT CODE § 845.6

California Government Code section 845.6 creates an affirmative duty to summon medical care when a public employee acting within the scope of his employment "knows *or has reason to know* that the prisoner is in need of immediate medical care and he fails to take reasonable action to summon such medical care." Cal. Gov't Code § 845.6 (emphasis added).

"In order to state a claim under § 845.6, a prisoner must establish three elements: (1) the public employee knew or should had reason to know of the need (2) for immediate medical care, and (3) failed to reasonably summon such care." *Jett v. Penner*, 439 F.3d 1091, 1099 (9th Cir. 2006). Ninth Circuit authority is clear: it is enough to allege facts from which it can be inferred that a defendant "reasonably should know" of the prisoner's need for

2

immediate medical care. *Horton by Horton v. City of Santa Maria*, 915 F.3d 592, 605 (9th Cir. 2019) ("[P]rison officials generally cannot be sued for failing to provide medical care to a prisoner, unless the official knows, *or reasonably should know*, that the prisoner requires immediate medical care." (emphasis added)).

Whether a public employee or entity knows or has reason to know of a prisoner's need for immediate care is an objective standard. *Lucas v. Cty. of Los Angeles*, 47 Cal.App.4th 277, 288 (1996); see also *Johnson v. Cty. of Los Angeles*, 143 Cal.Appl.3d 298 (1983) (concluding the phrase "has reason to know" is the equivalent of an objective standard). Defendant Silva's argument (that he was not aware of Romero's need for medical help and therefore had no duty to act) focuses on his subjective knowledge. However, this standard was rejected in *Lucas*:

> Respondents argue that the phrase 'reason to know,' as used in Government Code section 845.6, requires a subjective determination of whether defendants had the requisite degree of knowledge of a serious medical condition. They base this assertion on *Watson*'s statement that '[l]iability is limited to those situations where the public entity intentionally or unjustifiably fails to furnish immediate medical care.' (21 Cal.App.4th 836, 841.) We are not persuaded that *Watson* meant to declare a subjective standard. To the contrary, the phrase 'has reason to know' is the equivalent of an objective standard.

*Lucas*, 47 Cal.App.4th. at 288.

The objective standard of the "knows or has reason to know" element in § 845.6 includes constructive knowledge. *Id.*; *see also Parenti v. City of Monterey*, 14-cv-5481-BLF (N.D. Cal. Apr. 6, 2018) 2018 U.S. Dist. LEXIS 59352, 2018 WL 1697110 , at *52 ("Courts have construed the 'knows or has reason to know' element in 845.6 to include constructive notice.") The knowledge element can be satisfied when an officer on duty "had reason to know of [the decedent's urgent health] condition because of their obligation to perform timely safety-checks." *Medina v. Cty. of Los Angeles*, No. 19-cv-3808-GHW, 2020 U.S. Dist. LEXIS 130732, 2020 WL 3964793, at *16 (C.D. Cal. Mar. 9, 2020) (denying summary judgment). Additionally, the Ninth Circuit has held that pre-trial detainees do have the right to direct-view safety checks "sufficient to determine whether

3

their presentation indicates the need for medical treatment." *Gordon v. Cty. of Orange*, 6 F4th 961, 973 (9th Cir. 2021).

In *Medina*, like here, defendants argued they did not know or had reason to know Decedent needed immediate medical care, and specifically could not know Decedent was experiencing the toxic effects of drug use. *Medina*, 2020 U.S. Dist. LEXIS 130732, at *36. The district court in *Medina* addressed both the subjective and objective nature of knowledge, holding:

> Though these Defendants summoned medical care once they obtained *actual* knowledge of Decedent's choking/inability to breathe, their failure to do so at a time - if the conflict in the evidence about the timing of Decedent's condition is resolved in favor of Plaintiffs, as is required on this motion - when they had *reason to know* of that condition because of their obligation to perform timely safety-checks, demonstrates that Plaintiffs can at a minimum demonstrate the existence of a triable issue of fact with respect to each of the three elements required for Section 845.6 claim.

*Id.* at *39.

Thus, the failure to comply with an obligation to perform safety checks can establish the "reason to know" constructive knowledge standard of § 845.6. Similarly, in *Borges v City of Eureka*, 15-cv-846-YGR, 2017 U.S. Dist. LEXIS 10721, 2017 WL 363212 (N.D. Cal. Jan. 25, 2017) jail policy required direct visual observation of inmates held in sobering cells every 15 minutes and officers were required to check the inmate's breathing during cell checks. Even with undisputed evidence the officers did check the sobering cell every 15 minutes, the district court found a triable issue as to the quality of the checks and whether the checks were "long enough for an officer to determine that [Decedent's] breathing was regular." *Borges,* 2017 U.S. Dist. LEXIS 10721, at *42. Where a jury could find that officers failed to follow policy as to quality of safety checks then summary judgment was denied because a violation of § 845.6 could be established as to whether these officers "knew of or should have known of [Decedent's] immediate need for medical care, but failed to summon medical care." *Borges,* 2017 U.S. Dist. LEXIS 10721, *50.

The district courts in *Medina* and *Borges* applied the objective standard to the "reason to know" language set forth in § 845.6 in holding that a failure to comply with policy of conducting safety checks can establish constructive knowledge. Defendant Silva does not grapple with the failure to conduct requisite safety checks, which constitutes the "reason to know" of a medical emergency. Silva's purported subjective ignorance is not a valid excuse under the objective standard. Silva repeatedly cites *Jack v. Cty. of Stanislaus*, 2018 WL 4123930 (E.D. Cal. Sept. 15, 2017), a case where § 845.6 claims were dismissed when no officers "actually saw" the inmate's symptoms. That line of argument ignores the ample constructive knowledge that the FAC indeed alleges. First, the FAC alleges that correctional officer defendants, including Silva, "were supposed to conduct nightly safety checks of each cell at least every hour." *See* Dkt. 97, FAC at p. 11, ll. 7-8. The FAC also alleges that defendants, including Defendant Silva, "did not enforce the normal rules" (*Id.* at 11, ll. 8-9, 11-12) and "did not order Osuna (or Romero) to take the bedsheets down at any point in the night." *Id.* at 11, ll. 16-17. Defendant Silva, and other defendants, failed "to conduct required safety-checks and required count measures and required audio/visual monitoring was so prolonged and pronounced that they heard no sounds that would indicate a violent attack was being committed and that they should in intervene." *Id.* at 11, ll. 18-21. Defendants, including Silva, "did not conduct any nighttime safety checks" (*id.* at p. 11, ll. 15-16), "did not order Osuna (or Romero) to take the bedsheets down at any point in the night" (*id.* at p. 11, ll. 16-17), and failed to make regular checks "despite a bedsheet draped inside Romero and Osuna's cell that evening, which visibly prevented proper monitoring and would have required the inmates to take it down, under Corcoran's own rules." *Id.* at p. 12, ll. 24-27.

The FAC meets the objective standard established in *Lucas*: Defendant Silva *should have known* that Romero required immediate medical care, but the "failure to conduct required safety checks and required count measures…was so prolonged and pronounced that they heard no sounds that would indicate a violent attack was being committed." *Id.* at p. 11, ll. 18-20. In addition, Defendant Silva "failed to be within earshot or eyeshot of

Romero and Osuna's cell." *Id.* at p. 19, ll. 25-26. Thus, the FAC alleges facts that establish that Silva had constructive knowledge regarding Romero's immediate need for medical care while being attacked by Osuna, in that he and other defendants should have known what was going on inside Osuna's cell because he should have followed Corcoran's rules against the obstruction of views into the cells of inmates.

Defendant Silva offers an absurd argument (which the Defense puts in bold font) that there is no duty for "silence or unseen behavior." *See* Dkt. 107 at 6. The FAC sets forth facts describing Osuna's brutal murder of Romero, one that was loud and long and conducted with a tiny razor blade. Silva's argument that Romero's murder was silent or unseen is not supported by the FAC itself, and ignores the obvious point that the slow-moving disaster of the gruesome murder could have been seen or heard had Silva and the other defendants conducted regular safety checks and enforced basic policy. The FAC describes Defendant Silva's abject failure to comply with his basic job functions and how it constitutes constructive notice under Section 845.6.

## IV. CONCLUSION

For the foregoing reasons, Defendant Silva's Rule 12(b)(6) motion should be denied, and he should be ordered to answer Plaintiff's Fourth Amended Complaint. Alternatively, Plaintiff respectfully requests leave to amend.

Respectfully submitted,

Dated: September 18, 2024        LAW OFFICES OF JUSTIN STERLING

By: _____*/s/ Justin Sterling*_____
   Justin E. Sterling,
   Attorneys for Plaintiff Dora Solares

LAW OFFICES OF ERIN DARLING

By: _____*/s/ Erin Darling*_____
   Erin Darling,
   Attorneys for Plaintiff Dora Solares

6