IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| DORA SOLARES, | § |
| Plaintiff, | § |
| v. | § CIVIL ACTION NO. 1:20-CV-00323-LHR-BAM |
| RALPH DIAZ, *et al.*, | § |
| Defendant. | § |

**MEMORANDUM AND OPINION**

This grisly case arises out of the murder of Luis Romero, an inmate at Corcoran State Prison, by his cellmate, Jaime Osuna. Romero had been transferred to Corcoran on March 7, 2019, and assigned to share a cell with Osuna the following day. The first night that Osuna and Romero shared a cell, Osuna violently murdered and dismembered Romero late at night. No one checked, heard, or apparently saw any indication of this activity until prison staff discovered Osuna wearing some of Romero's body parts early the next morning.

Romero's mother, Doris Solares, sues Joseph Burnes, a sergeant with the California Department of Corrections & Rehabilitation, and several other Correctional Officers, including Luis Silva, Leonel Pena, Bryan Gallemore, and Jesse Garcia. Ms. Solares sues for unconstitutional conditions of confinement; failure to protect; supervisory liability; loss of familial relations; wrongful death; and failure to summon medical care. (Docket Entry No. 97).

Silva, Pena, Gallemore, and Garcia now move to dismiss the failure to summon medical care claim under Federal Rule of Civil Procedure 12(b)(6). (Docket Entry Nos. 100, 105, 107). Silva and Gallemore have filed separate motions to dismiss, (Docket Entry Nos. 105, 107), while

Pena and Garcia have jointly moved for dismissal, (Docket Entry No. 100). Based on the pleadings, the motion, and the applicable law, the court grants the motions to dismiss Ms. Solares's claims against Silva, Pena, Gallemore, and Garcia for failure to summon medical care under California Government Code § 845.6. This dismissal is without prejudice and with leave to amend. The reasons are set out below.

## I.      Background

Ms. Solares argues that no one, including Romero, should have been housed with Osuna. Osuna had a known history of violently attacking other prisoners and prison staff, and before his incarceration at Corcoran, had previously not been permitted to share a cell. (Docket Entry No. 97 ¶ 14, 16). Ms. Solares asserts that prison officials did not fully perform the standardized administrative committee process required to determine inmate cell assignments before assigning Romero and Osuna to share a cell. (*Id*. ¶ 15). Ms. Solares asserts that normally, this process includes the following steps: (1) a committee of prison administrators must determine whether an inmate is fit to have a cellmate; (2) after making this determination, the committee must find another inmate determined to be an appropriate fit as a cellmate; (3) the committee ensures that the two inmates are introduced to each other; and (4) each inmate signs forms acknowledging and agreeing to be celled with one another. (*Id*.). Ms. Solares asserts that prison officials did not follow each of these steps before putting Romero and Osuna together in the same cell.

Ms. Solares alleges that after Romero was put into the same cell with Osuna, Silva, Pena, Gallemore, and Garcia failed to conduct routine safety checks on the first night that they shared the cell — the night that Osuna killed and dismembered Romero. The officers allegedly failed to count the inmates, which requires a visual inspection of the inmates in each cell, and to conduct routine visual and auditory monitoring of the cell. (*Id*. ¶¶ 20-21). Ms. Solares also alleges that

Silva, Pena, Gallemore, and Garcia failed to order either Osuna or Romero to take down a bedsheet that one of them had draped inside the cell, preventing the officers from seeing inside the cell. (*Id.* ¶ 21). The draping of the bedsheet itself violated prison rules and regulations, but officers allowed it to remain. (*Id.*). The bedsheet prevented the officers from seeing inside of the cell and may have allowed Osuna to kill and cut up Romero undisturbed. (*Id.*).

## II.     The Legal Standard

Rule 12(b)(6) allows dismissal if a plaintiff fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

"Rule 12(b)(6) dismissals are granted based on a plaintiff's failure to plead a cognizable claim. Using this yardstick, a district court analyzes the facts and legal claims in the complaint to determine if the plaintiff has alleged a cause of action." *Stewart v. United States Bancorp*, 297 F.3d 953, 957 (9th Cir. 2002). "A complaint should not be dismissed under Rule 12(b)(6) 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which

3

would entitle him to relief.'" *Tanner v. Heise*, 879 F.2d 572, 576 (9th Cir. 1989) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957)). "All allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." *Id*.

### III.    Analysis

Under California Government Code § 845.6, "[n]either a public entity nor a public employee is liable for injury proximately caused by the failure of the employee to furnish or obtain medical care for a prisoner in his custody." Under a narrow exception, "a public employee . . . is liable if the employee knows or has reason to know that the prisoner is in need of immediate medical care and he fails to take reasonable action to summon such medical care." *Id.* "In order to state a claim under § 845.6, a prisoner must establish three elements: (1) the public employee knew or had reason to know of the need (2) for immediate medical care, and (3) failed to reasonably summon such care." *Jett v. Penner*, 439 F.3d 1099 (9th Cir. 2006). If these elements are not met, a public official is immune from liability under § 845.6. *See Horton v. City of Santa Maria*, 915 F.3d 592, 606 (9th Cir. 2019). "[I]t is enough to allege facts from which it can be inferred that a defendant 'reasonably should know' of the prisoner's need for immediate medical care." *Schmitz v. A. Asman*, 2021 WL 3362811, at *15 (E.D. Cal. Aug. 3, 2021) (citing *Horton*, 915 F.3d at 605).

Silva, Pena, Gallemore, and Garcia assert that Ms. Solares's claim fails because she alleges no facts establishing that they had actual or constructive knowledge that Mr. Romero had an immediate need for medical care. (Docket Entry No. 105-1 at 4; Docket Entry No 107 at 5; Docket Entry No 100-1 at 4). Silva argues that the facts alleged in Ms. Solares's complaint necessarily imply that they could not have known of Romero's need for medical care: "the allegations demonstrate that [the guards] neither knew nor had reason to know of any such need because, as alleged, [they] did not conduct nighttime safety checks, did not remove a bedsheet that blocked

4

visibility, and did not properly monitor Romero or Osuna in the cell." (Docket Entry No. 107 at 6).

Ms. Solares argues that district courts in California have found that the constructive knowledge element is satisfied when a public employee fails to comply with a requirement to perform regular safety checks, as Ms. Solares alleges occurred. (Docket Entry No. 109 at 4). District courts within the Ninth Circuit generally find that a public employee had constructive knowledge of an immediate need for medical care when the need was "obvious," based on "affirmative statements and direct observations of the person in need." *See Schmitz*, 2021 WL 3362811, at *15 (collecting cases); *see, e.g.*, *M.D. v. Cnty. of San Bernardino*, 2023 WL 6194291, at *10 (C.D. Cal. Sept. 6, 2023) (denying a motion to dismiss a failure to summon medical care claim when the plaintiff alleged that deputies delayed providing medical aid after receiving multiple calls from decedent's cell and from surrounding cells stating that decedent had been attacked, which was sufficient to establish actual or constructive knowledge*); Bock v. Cnty. of Sutter*, 2012 WL 3778953, at *17 (E.D. Cal. Aug. 31, 2012) (allegations gave rise to an inference that officers had "reason to know" of the need to summon immediate medical care when at least two officers "observed [the decedent] banging himself against his cell door, yelling about or at people who did not exist, describing various hallucinations, and refusing his psychiatric medication.").

Ms. Solares relies on California district court cases rejecting claims for immunity under § 845.6, finding the knowledge element satisfied by alleged facts showing that the prison deputies who were on duty "had reason to know of [the need for immediate medical care] because of their obligation to perform timely safety-checks." *Medina v. Cnty. of Los Angeles*, 2020 WL 3964793, at *15 (C.D. Cal. Mar. 9, 2020); *see also Borges v. City of Eureka*, 2017 WL 363212 (N.D. Cal.

Jan. 25, 2017). Ms. Solares relies on these cases to support the knowledge element of her failure to summon medical care claim. Silva, Pena, Gallemore, and Garcia distinguish *Medina* on the basis that the decedent in that case was a pre-trial detainee, whose legal rights meaningfully differ from those of Romero, who had already been convicted of a crime and was serving a sentence in state prison. These cases are distinguishable on this basis because pre-trial detainees have an established right to direct-view safety checks. *Hyde v. City of Willcox*, 23 F.4th 863, 873 (9th Cir. 2022). The court is unaware of case law clearly establishing the same right for prisoners like Mr. Romero who have already been convicted of a crime.

Garcia and Pena argue that Ms. Solares "pleads no facts showing that [they] observed anything showing them that [Mr. Romero] needed [] immediate medical care." (Docket Entry No. 100-1 at 5). Ms. Solares's complaint alleges that Silva, Pena, Gallemore, and Garcia observed the bedsheet hung up in Mr. Romero and Osuna's shared cell. (See Docket Entry No. 97 ¶ 21 ("Defendants Silva, Gallemore, Pena, [and] Garcia … did not order Osuna (or Romero) to take the bedsheets down at any point in the night.")). Ms. Solares alleges that prison officials and staff knew that Osuna had engaged in acts of sadistic violence both before and during his incarceration. He had committed a "torture-killing" of a woman, stabbed another inmate, and assaulted a prison guard. (*Id*. ¶¶ 16-17). And Ms. Solares asserts that the facility did not allow prisoners to obscure the view into their cells, including by using bedsheets or some other covering. The presence of the bedsheet hung over the front of the cell, obscuring the guards' view of the cell was itself a sign that something was amiss. Once the guards observed the bedsheet draped to cover the cell, they had substantial reason to suspect that Osuna was engaged in some form of wrongdoing, that, given Osuna's propensity for violence, could result in harm Romero. But these allegations do not show

6

that the guards knew that Romero needed immediate medical care, as required for liability to attach under California Government Code § 845.6.

Ms. Solares has pleaded that: (1) the officers directly observed that a bedsheet was draped in front of the cell shared by Romero and Osuna, obscuring the view into the cell in violation of prison rules; and (2) given Osuna's known history of extreme violence, the presence of the bedsheet should have indicated to Silva, Pena, Gallemore, and Garcia that their intervention was needed. But these allegations fall just short of pleading that Silva, Pena, Gallemore, and Garcia either knew, or should have known, that Romero needed urgent medical care. Ms. Solares does not allege when the officers noticed the bedsheet, or when it was first placed in front of the cell. Ms. Solares has not pled that the guards on duty that evening heard unusual noises coming from the cell that Romero and Osuna shared, or that the guards received reports from other prisoners of an attack occurring in the cell. The pleadings of Osuna's violent nature and the presence of the bedsheet support a failure to protect claim but are not sufficient to state a claim for failure to summon medical care under California Government Code § 845.6.

## IV. Conclusion

Leonel Pena's and Jesse Garcia's joint motion to dismiss the failure to summon medical care claim is granted. (Docket Entry No. 100). Bryan Gallemore's motion to dismiss the failure to summon medical care claim is granted. (Docket Entry No. 5). Luis Silva's motion to dismiss the failure to summon medical care claim is granted. (Docket Entry No. 107). Ms. Solares may amend her complaint no later than March 15, 2025 to re-plead her failure to summon medical care claim under California Government Code § 845.6. All other claims against the defendants remain.

SIGNED on February 6, 2025, at Houston, Texas.

_____
Lee H. Rosenthal
Senior United States District Judge
