1          UNITED STATES DISTRICT COURT

2           SOUTHERN DISTRICT OF TEXAS

3                  -  -  -

4      THE HONORABLE LEE H. ROSENTHAL, JUDGE PRESIDING
   ---------------------------------------------------------
5   DORA SOLARES,              )  No. 1:20-cv-00323
                               )
6          Plaintiff,          )
                               )
7   vs.                        )
                               )
8   RALPH DIAZ, et al.,        )
                               )
9          Defendants.         )
   ---------------------------------------------------------
10              TELEPHONIC CONFERENCE

11      OFFICIAL COURT REPORTER'S CERTIFIED TRANSCRIPT

12                 Houston, Texas

13                 June 26, 2024
   ---------------------------------------------------------
14
   APPEARANCES:
15
   For the Plaintiff:    Erin R. Darling
16                        Law Offices Of Erin Darling

17

18  For the Defendants:   Jeremy Duggan
                          Office Of The Attorney General
19

20

21
   Reported By:   Cheryl L. Cummings, RDR, RMR, CRR, CRC
22                 Certified Realtime Reporter
                   United States District Court
23                 Southern District of Texas

24
   Proceedings recorded by mechanical stenography.
25  Transcript produced by Reporter on computer.

1                          PROCEEDINGS

2       _____

3                              * * *

4        (Proceedings commenced, as follows:)

5              THE COURT:  Are counsel present for the Solares

6     case?

7              MR. DARLING:  Yes, your Honor.  Erin Darling on

8     behalf of plaintiffs.  Good afternoon.

9              THE COURT:  Good afternoon.

10             MR. DUGGAN:  Good afternoon.  Deputy Attorney

11    General Jeremy Duggan on behalf of Defendant Burns.

12             THE COURT:  All right.  Thank you.  Anyone

13    else?

14             MR. DARLING:  I believe that's everyone.

15             THE COURT:  All right.  Very good.  So this

16    case has some pretty awful facts.

17             MR. DARLING:  Indeed.

18             THE COURT:  Looking at the final items and the

19    last items in the docket sheet, we have a joint

20    scheduling report and that is pretty much it.  The first

21    amended, I believe, was filed in April.

22             What has happened since then?

23             MR. DARLING:  There are two cases, your Honor.

24             THE COURT:  Right.

25             MR. DARLING:  In the first case, plaintiff has

1   filed a motion to amend to add additional defendant's.

2   So that motion is pending.  I spoke with Mr. Duggan

3   before.  I'm not certain -- they might --

4          THE COURT:  There's been no response yet.

5          MR. DARLING:  Yeah -- but, yeah.  That hearing

6   is on July 19th.

7          THE COURT:  Yes.  That's when -- yes, is there

8   an opposition to that?

9          MR. DUGGAN:  Your Honor, we likely won't

10  oppose.  Our deadline for opposition is Friday.  We're

11  looking at it, but likely the plan is not to file a

12  statement of nonopposition Friday.

13         THE COURT:  All right.  And that will be

14  granted.  Then what do we do?  Has any discovery been

15  taken?  Does it need to be taken?

16         MR. DARLING:  Yes, your Honor.  The plaintiff

17  has propounded four different rounds of requests for

18  documents, rogatories.  Defendants provided at least

19  4,000 pages.  There are a couple of issues that I think

20  will merit a motion to compel, so --

21         THE COURT:  No motion to compel.  You set a

22  pre-motion discovery conference with me, a notice to the

23  defendant.  You can submit a brief letter outlining the

24  topics to be taken up.

25         MR. DARLING:  Sure.

1          THE COURT:  And the defendant can submit an

2  equally brief response.

3          And we will have a Zoom conference within a

4  couple days after we receive your notice there is a

5  discovery dispute, and we'll resolve it as much as we

6  can by Zoom.  And if additional briefing or submissions

7  are required, we'll identify what needs to be done and

8  when.

9          MR. DARLING:  Thank you.

10         THE COURT:  Much more streamlined procedure

11  than a motion to compel.

12         MR. DARLING:  I appreciate that.  Thank you,

13  your Honor.

14         THE COURT:  All right.  So --

15         MR. DUGGAN:  Your Honor, is that procedure on

16  the Court's website?

17         THE COURT:  Yes, it is.

18         MR. DUGGAN:  And was this -- does this mean

19  that -- previously, I think Judge McCullough was

20  handling discovery disputes on this case.  Is that how

21  going forward to handle them?

22         THE COURT:  I'll handle them until we send it

23  back to California, if that happens.  We're still

24  working this out.  We're just trying to help them catch

25  up on a backlog, and having Judge McCullough handle the

1    cases -- case in part doesn't help with the backlog.  So

2    I will handle any disputes that arise from the

3    discovery.

4              What discovery needs to be done?

5              MR. DARLING:  So, your Honor, a great deal of

6    documents have been produced.  One of the issues is

7    that -- is raised in the proposed amended complaint is

8    that defendants were on notice of the killer, Jaime

9    Osuna's, homicidal ideations before they made the

10   decision to transfer him from being from being

11   single-celled to double-celled.  And, in fact,

12   Mr. Osuna, in his interview and it's recorded, said

13   about one of the proposed defendants, "He knew."

14   Because he was the licensed social worker that he talked

15   to.

16             But defendants have not produced the records

17   from the A-File of Mr. Osuna about his -- his

18   conversations with CDCR staff in which, essentially,

19   these homicidal ideations would have been recorded.

20   They are saying that it's psychological records that are

21   privileged.

22             THE COURT:  And those are conversations before

23   the murder?

24             MR. DARLING:  Yes.  Not only before the murder,

25   but before the decision --

1    THE COURT:  To move.

2    MR. DARLING:  -- from being single-celled to

3    double-celled.

4    THE COURT:  All right.  It seems to me that

5    objection is best handled by a protective order.

6    MR. DARLING:  We have one, your Honor.  Yes.

7    That's been petitioned.

8    THE COURT:  Or do you need a court order

9    compelling disclosure of those records in order to

10    satisfy California or federal HIPPA kinds of laws?

11    MR. DUGGAN:  Correct, your Honor.  It's

12    doctor/patient mental health privilege, which is

13    recognized in federal court.  And, you know, to the

14    extent that Mr. Osuna's statements to his mental health

15    professionals are going to be provided, we would be

16    going exactly into that privilege, his statements to his

17    mental health providers.

18    THE COURT:  Has Mr. Osuna asserted the

19    privilege?  Is he competent to do so?

20    MR. DUGGAN:  I can't speak to his competency.

21    It's his privilege.  It's not our privilege to assert.

22    THE COURT:  Correct.  I think, under the

23    circumstances, a protective order will address the

24    concerns.  And any additional concerns can be addressed

25    by an order compelling the production for the limited

1    purposes of this litigation only; not to be distributed

2    beyond whatever category of people you guys can agree

3    on.

4         If you can get me that order, Mr. Darling,

5    after consulting with Mr. Duggan, then we can get those

6    records produced.

7         MR. DARLING:  Absolutely, your Honor.  Thank

8    you.

9         The second category of items that haven't been

10   produced that I was contemplating a motion to compel

11   were the documents that when the decedent, Luis Romero,

12   arrived at the prison, he's assigned, you know, that

13   day.  But the documents from essentially that first day

14   are very bare.  And I really haven't seen documents that

15   I think would have been available essentially for that

16   decision, once he arrives to go to the cell of Osuna;

17   especially when we know that there were empty cells in

18   the area that was subject to the monitoring by

19   defendants.

20        THE COURT:  So if I understand your position --

21   and, Mr. Darling, if you could move the camera up a

22   little bit.  I can only see the lower part of your face.

23        MR. DARLING:  Oh, really.  I'm sorry.

24        THE COURT:  It's not important.

25        If I understand your position, you've received

 1 │ some documents, but you believe there are more?

 2 │         MR. DARLING:  Yes, your Honor.

 3 │         THE COURT:  Mr. Duggan.

 4 │         MR. DUGGAN:  Yes.  Speaking to the first day, I

 5 │ think we produced what there is.  So Mr. Darling and I

 6 │ maybe can meet and confer on that.  I think we talked

 7 │ about it before and I said, I think you've got what

 8 │ happened on the first day.  I think maybe the disconnect

 9 │ is you don't have a full committee on the first day when

10 │ you get to a new prison.  They do kind of an abbreviated

11 │ procedure, you're housed, and then you go to committee

12 │ within a couple of weeks to find permanent housing.  So

13 │ I think maybe that's what the -- why Mr. Darling thinks

14 │ there should be a committee document or something, but

15 │ there isn't.

16 │         MR. DARLING:  Well --

17 │         THE COURT:  And I gather that the murder

18 │ occurred on the night of the first day.  Is that

19 │ correct?

20 │         MR. DARLING:  It was actually the second day.

21 │ Second day.  Yeah, within 48 hours.

22 │         THE COURT:  It was within the first day period,

23 │ if you will.

24 │         MR. DARLING:  Yes.  And it is an abbreviated

25 │ procedure, and they have produced a document that both

1   Mr. Romero and Mr. Osuna signed.  But policy shows that

2   an inmate doesn't really have the discretion to say no.

3   In fact, they get in trouble if they oppose, you know,

4   being assigned to a cell.  But the question is, and

5   there was no paperwork to this effect, why on earth

6   would the decision be made for Romero to go to Osuna as

7   opposed to anywhere else?  And that has been lacking.

8   Yes, it was an abbreviated procedure, but what was the

9   decision-making to select Osuna over empty cells or

10  other inmates?

11          THE COURT:  Do you have any additional

12  documents responsive to that request, Mr. Duggan?

13          MR. DUGGAN:  Not that I know of, no.  Not

14  withholding anything on that.

15          THE COURT:  Good.  Check with your client just

16  to be sure, and let Mr. Darling know the outcome of that

17  inquiry.

18          MR. DUGGAN:  Okay.

19          THE COURT:  What else, Mr. Darling?

20          MR. DARLING:  For the second case, which is the

21  publication of the --

22          THE COURT:  Right.

23          MR. DARLING:  -- the documents, plaintiff has

24  propounded RFA's, interrogatories, RFP's.  We expect

25  responses.  I just want to flag for the Court's

1  attention, then at that point we would be moving to add

2  new defendants to that second case because right now

3  only Burns is the named defendant on that second case.

4          MR. DUGGAN:  And, your Honor, I asked

5  Mr. Darling for an extension of time on the written

6  discovery that he served last week because I've been in

7  trial in July.

8          MR. DARLING:  Of course.

9          THE COURT:  All right.  That's fine.  Very

10 good.

11         So both of these cases are going to have

12 amended complaints.  And on the basis of your stated

13 nonopposition, I can jump ahead to Friday, Mr. Duggan.

14 I would grant the motion for leave to amend in the 323

15 case.

16         MR. DUGGAN:  That's okay.

17         THE COURT:  Okay.  Fine.

18         And where do we -- I'm trying to look to see.

19 We have a May 29th order -- stipulation, rather, that I

20 think has some deadlines that currently control.  No,

21 actually they don't.  So looking at the scheduling order

22 that applies in the case --

23         MR. DARLING:  I believe, your Honor, it's

24 Docket Entry 67.

25         THE COURT:  Yes, it is.  Which was entered in

1    October of 2023.  And it was a very leisurely pace.

2              MR. DARLING:  Indeed.

3              THE COURT:  I think we can tighten it up.

4              MR. DARLING:  We filed this before COVID.  The

5    delay has been pretty remarkable.  I guess that's the

6    Eastern District for you.  And we've been diligent with

7    discovery since it opened, but we would prefer an

8    earlier trial date.

9              THE COURT:  You're going to amend your

10   pleadings, and I've given you leave to do that.

11             MR. DARLING:  Thank you, your Honor.

12             THE COURT:  So have you filed initial

13   disclosures?

14             MR. DARLING:  Excuse me?

15             THE COURT:  Did you file initial disclosures?

16             MR. DARLING:  Yeah, we exchanged initial

17   disclosures.

18             THE COURT:  Experts.  Experts.

19             MR. DARLING:  Yes.

20             THE COURT:  Do you need until February of 2025?

21             MR. DARLING:  No, plaintiff does not.  We can

22   proceed earlier.

23             MR. DUGGAN:  Your Honor, I think before we

24   reset the whole schedule, I want to consider we won't --

25   it's likely that we won't be representing all the

1   defendants.  There's going to likely have to be conflict

2   counsel in this case.  So they'll want to have a say

3   about the schedule, too, once the amended complaint is

4   filed.

5           THE COURT:  Okay.  They may but I don't

6   think -- I think we can move the dates up somewhat

7   without making it too difficult for them to be added to

8   the case since that's going to happen apparently on

9   short order.  Correct?  Will you accept service if there

10  are additional guards, which I gather there are.

11          MR. DUGGAN:  Not for the ones that are

12  conflicting out.  We haven't completed our conflict

13  analysis.  So Mr. Darling and I have talked about that,

14  and I will be following up with him about some that we

15  can accept service for.

16          THE COURT:  All right.  Is there going to be --

17  do you anticipate dispositive motions on qualified

18  immunity?

19          MR. DUGGAN:  Yes.  Certainly for

20  Sergeant Burns, that I represent now, yes.

21          THE COURT:  Okay.  For some of the defendants,

22  perhaps.

23          MR. DUGGAN:  Yes.

24          THE COURT:  Perhaps not all.

25          MR. DUGGAN:  We'll have to see how the -- how

1  discovery -- what develops from discovery.

2  THE COURT:  Right.  All I have now, of course,

3  is the allegations in the proposed second amended

4  complaint.

5  All right.  So instead of February 28th of

6  2025, when do you propose bringing in these additional

7  parties, Mr. Darling?

8  MR. DARLING:  Oh, if, you know, leave to amend

9  is granted --

10  THE COURT:  This week.

11  MR. DARLING:  -- and they can get served, so if

12  Mr. Duggan can kind of separate who he's accepting

13  service on and then for those who aren't, then I'd serve

14  those people asap and we'll be off to the races.

15  THE COURT:  In which case, I think we could

16  have expert disclosure deadline, and I assume your

17  experts will be along the lines of guidelines, who

18  should be assigned to the same cell in the type of

19  facility that the plaintiff was in.

20  MR. DARLING:  Yes, as well as procedures.

21  Monitoring, conducting safety checks, and at night how

22  to keep inmates safe.

23  THE COURT:  Monitoring.

24  MR. DARLING:  Monitoring.  Exactly.

25  THE COURT:  All right.  So if we had the

1    plaintiff's expert disclosure requirement on

2    October 11th.

3                MR. DARLING:  That's good.

4                MR. DUGGAN:  Yeah, that's not leaving a great

5    deal of time for fact discovery for all these new

6    defendants.

7                THE COURT:  It appears to me that the fact

8    discovery is going to be a series of depositions on,

9    What did you see?  What were your duties?  What were you

10   tasked?  What did you do?  When did you first become

11   aware that someone had been dismembered in a cell on

12   whatever block it was.  What did you -- what kind of

13   cell assignment procedures.  It doesn't sound like the

14   depositions are going to go in unexpected ways or be

15   overly long.  Maybe I'm misjudging.

16               MR. DUGGAN:  That's fine.  I can see some of

17   the depositions going like that, yes.

18               But how many new defendants?  I think six new

19   defendants and --

20               THE COURT:  All right.  How about November 1st?

21   I'll give you a little bit more time, but I think that

22   will be enough time for the new defendants.

23               Are these new defendants going to also be

24   prison guards?

25               MR. DARLING:  Yes, your Honor.  In fact, some

1   of them have been subject to an administrative

2   investigation.  Some have even had counsel in that

3   process.  So this is certainly not a new item or

4   something that hasn't been flagged for these

5   individuals.

6            THE COURT:  All right.  November 1st will be

7   expert disclosure.  What is --

8            MR. DUGGAN:  They're all prison staff, but

9   there's a licensing social worker, there's lieutenants,

10  higher-ranking people.

11           THE COURT:  But they're all prison employees?

12           MR. DUGGAN:  Yes.

13           THE COURT:  What is meant by supplemental

14  expert disclosure, which is over a year after that.

15           MR. DUGGAN:  That should be rebuttal expert.

16           THE COURT:  Okay.  Well, the rebuttal expert I

17  would assume would be -- usually it's 30 days after, but

18  we can certainly extend that in this case.  So we can

19  make that deadline be how about January 10th?

20           MR. DARLING:  That works for plaintiff.

21           THE COURT:  Past the holidays.

22           MR. DARLING:  Yes.  That's fine for plaintiff.

23           THE COURT:  All right.  Nonexpert discovery

24  cut-off we can also -- it's now January 31st.

25           Expert discovery cut-off I'm going to make

1    February 28th.

2            Pretrial motion filing and you did say you were

3    going to assert qualified immunity on some of the

4    defendants at least.

5            MR. DUGGAN:  Yes.

6            THE COURT:  I think we can make that March --

7    sorry?

8            MR. DUGGAN:  The expert discovery cut-off on

9    February 28th, 2025, I have a trial that's scheduled for

10   that week.

11           THE COURT:  That's expert disclosure.

12           MR. DUGGAN:  Yeah, expert -- expert --

13           THE COURT:  Disclosure.

14           MR. DUGGAN:  2025 is expert disclosure.

15           THE COURT:  February 28th is expert -- I'm

16   sorry, that's the expert discovery cut-off.  Expert

17   discovery cut-off.

18           The pretrial motion deadline is March 28th.

19           MR. DUGGAN:  All right.  Yeah.  I'll just --

20   yeah, I'll just flag for Mr. Darling I'm in trial that

21   expert discovery -- that expert discovery cut-off week,

22   so there's going to be an expert deposition probably due

23   the week before.

24           MR. DARLING:  Absolutely.

25           THE COURT:  That's fine.  I'm sure you can work

1  out an arrangement.

2  　　　　　MR. DARLING:  Right.

3  　　　　　THE COURT:  And so that will work.

4  　　　　　All right.  So there is a pretrial conference

5  set for October 27th of 2025.  I think we can make that

6  conference -- pretrial motion filing deadline is

7  March 28th, so we can make that May 23rd of 2025.

8  　　　　　And I'm not sure how the sharing of work

9  between the Eastern District of California and the

10 Southern District of Texas will ultimately play out.

11 But if I try the case, I'll come to California to try

12 it, and it would probably be at the beginning of June of

13 next year.

14 　　　　　MR. DARLING:  Sounds good.

15 　　　　　THE COURT:  All right.  But the final pretrial

16 conference will be May 23rd.

17 　　　　　MR. DARLING:  Thank you.

18 　　　　　THE COURT:  And now we'll have to make take a

19 look at the schedule for the second case because it has

20 different issues.

21 　　　　　MR. DARLING:  Exactly.

22 　　　　　THE COURT:  All right.  So is there a

23 scheduling order in place?  I don't see one.  Have I

24 missed one?

25 　　　　　MR. DUGGAN:  No, your Honor.  We filed a joint

1   scheduling report, but that was vacated.

2            THE COURT:  Okay.  That's Docket Entry No. 32.

3   And I don't have that in front of me.

4            Let's put a scheduling order in place.  It's

5   sort of a tail-and-dog relationship between these cases.

6   I know they're very different claims, but --

7            MR. DARLING:  And depending on Burns' discovery

8   responses, there may be other overlapping defendants,

9   but there may not be.

10            THE COURT:  Right now your only defendants

11   are --

12            MR. DARLING:  It's Burns, yeah.  And Burns, who

13   is the supervisor, he's the main person in charge of

14   this block.

15            THE COURT:  Would you need any other

16   defendants?

17            MR. DARLING:  Potentially.

18            THE COURT:  Why would you need other

19   defendants?

20            MR. DARLING:  If there were other correctional

21   officers who took photos or shared photos or texted

22   photos with, say, nonCDCR staff.  Because it's our

23   understanding that ultimately photos were taken by CDCR

24   and sent to nonCDCR and then were published online.

25            THE COURT:  I think I asked a somewhat

1    different question not very artfully.  I understand why

2    you could add more defendants.  My question was whether

3    you needed to.

4          MR. DARLING:  That's a good question.  I don't

5    know what I don't know.  I haven't seen the responses so

6    that very well may be the case.

7          THE COURT:  All right.  Well, when would you be

8    ready to decide if you are going to add new parties?

9          MR. DARLING:  Well, I'll flag to the Court I

10    requested Burns' cell phone records so I can find out

11    who he texted.  We would, of course, stipulate for a

12    protective order.  But if defendants take as long and

13    fight this issue, it just depends when plaintiff

14    receives actual responses.  But, look, these images did

15    not just end up on the Internet by magic.  Some CDCR

16    official had to have taken them and had to have shared

17    them.  So if it's not Burns, it was someone else.

18          THE COURT:  All right.  So would you be ready

19    to add any new parties by the end of August?

20          MR. DARLING:  I would hope so.  I don't want --

21    I kind of would want a little bit more time just

22    given --

23          THE COURT:  All right.  How about September?

24          MR. DARLING:  That's fine, your Honor.

25          THE COURT:  September 27th.  That will also be

1    your deadline for amending pleadings.

2              MR. DARLING:  Okay, your Honor.  And I

3    appreciate the Court talking about the process in lieu

4    of a motion to compel, and it sounds like plaintiff may

5    have to use that process depending on responses.

6              THE COURT:  What kind of -- are you going to

7    need an expert on prison policies for this case as well?

8              MR. DARLING:  I don't think so.  It might be a

9    facial violation, and so I don't think so.

10             THE COURT:  Even if there's evidence of a

11   prison rule, you wouldn't need an expert --

12             MR. DARLING:  Right.

13             THE COURT:  -- to prove that.

14             MR. DARLING:  Right.

15             THE COURT:  All right.  So Mr. Duggan, would

16   you need any experts?

17             MR. DUGGAN:  I don't want to rule it out.

18             THE COURT:  Well, there's a difference between

19   ruling it out and baking in the next several months to

20   allow for expert discovery.  So I'm not going to -- I'm

21   going to simply enter -- not put in a date because no

22   experts are required -- no experts are needed at this

23   time.  That leaves you opportunity, wiggle room if you

24   do need to name an expert to file a motion requesting

25   leave to do so, and we can adjust the scheduling order.

1      MR. DUGGAN:  Your Honor, just thinking about it

2   now, I mean, I think it's certainly likely we would want

3   a forensic expert.

4      THE COURT:  Why?

5      MR. DUGGAN:  One of the issues would be are the

6   photos that went online the same as the photos that CDCR

7   officials took or were they taken unofficially?  In

8   other words --

9      THE COURT:  What do you mean "unofficially"?

10      MR. DUGGAN:  Well, I think there are

11   allegations in the complaint that photos were taken on

12   cell phones.

13      THE COURT:  Right.

14      MR. DUGGAN:  And the evidentiary photos would

15   have been taken on a CDCR camera by ISU officially for

16   the crime scene.  So if there are photos taken on cell

17   phones, then we probably would want a forensic expert to

18   show the providence of those photos.

19      THE COURT:  Mr. Darling.

20      MR. DARLING:  I don't know, but I have to ask

21   what difference would it make if it's the sharing of the

22   photos?  That's the issue.  Because certainly if it's a

23   CDCR camera that takes photos and then is impermissibly

24   shared, that is certainly, you know, something that

25   would establish liability as opposed to a cell phone

1    which would also be impermissible.  So it's six of one,

2    half a dozen of the other.

3              THE COURT:  I think that's right, sir.

4              MR. DUGGAN:  We still have to prove what

5    happened.

6              THE COURT:  Well, I guess the proof of that

7    will first come from the fact witnesses and the photos

8    themselves.  And if there's no difference between the

9    images that were on the Internet as opposed to images

10   that may have been physically -- I don't know if they

11   printed off copies, hard copies and shared them that way

12   or shared them electronically.

13             Mr. Darling, I don't know if you know at this

14   time.

15             MR. DARLING:  I do not.

16             MR. DUGGAN:  On the Internet was a picture of

17   another screen, so --

18             THE COURT:  Of a telephone?

19             MR. DUGGAN:  Say that again.

20             THE COURT:  Of a telephone screen?

21             MR. DUGGAN:  Likely, yeah.

22             THE COURT:  Again, I'm not sure -- I'll tell

23   you what, I'm not going to bake in the time now.  But if

24   you think you need a forensic expert after you take the

25   fact witness discovery, by all means ask me, and I will

 1   more than likely grant it and give you enough time to
 2   present it.
 3            MR. DUGGAN:  Thank you.
 4            THE COURT:  All right.  Mediation.  What
 5   efforts have been made to try to resolve these two
 6   cases?
 7            MR. DARLING:  I would characterize it as
 8   defendants have made zero offer to try to settle this.
 9            THE COURT:  Nothing has happened.
10            MR. DARLING:  Nothing has happened.
11            THE COURT:  My question --
12            MR. DARLING:  Slowly produce documents.
13            THE COURT:  I don't want to require a mediation
14   if it's simply going to waste your time, if there's no
15   reasonable likelihood that it can succeed.  If there is
16   some basis to believe it could succeed, I could assign
17   you to go to a magistrate for taxpayer-provided
18   mediation.
19            MR. DUGGAN:  Your Honor, I would disagree
20   slightly with Mr. Darling's characterization.  Before we
21   started discovery, we asked if plaintiffs would like to
22   go to mediation.  They said they wanted to do some
23   discovery first, and we've provided the documents now.
24   So now would be a good time for mediation.
25            THE COURT:  Mr. Darling, do you agree?

1          MR. DARLING:  Yes.  As plaintiff's counsel, I

2    would never say no to mediation.  If defendants have

3    signaled an interest in settling it, this is the first

4    time of hearing of that.  Obviously, damages in this

5    case are significant, but if they know that and they

6    want to go to mediation, I would be interested either in

7    a magistrate or even a private mediation if there was

8    some signal that it would be worth it.

9          THE COURT:  I think you just got that signal.

10          MR. DARLING:  I did, indeed.

11          THE COURT:  So would you prefer a magistrate

12    judge in California?  Would you prefer a private

13    mediator in California?  Give me some guidance here.

14          MR. DARLING:  Sure.  Maybe we can take a

15    belt-and-suspender approach and start with a magistrate

16    and then open to a private mediator, like ADR.

17          THE COURT:  All right.  Let me call Judge

18    McCullough and talk to her about how mediation might

19    best be handled.

20          MR. DARLING:  Yeah.  I think one of the

21    issues -- not just this case but just generally, CDCR

22    cases and the few cases I've had against CDCR, a lot of

23    the cases that the CDCR defends are against pro se

24    plaintiffs.  And the valuation is kind of, in my

25    opinion, low, especially coming from the Central

1    District in LA where there are lots of lawsuits against

2    the County of Los Angeles.  So there's a big gulf in

3    numbers that even the magistrate judges within the

4    Eastern District are used to seeing.

5            But, of course, I'm not opposed to, you know,

6    trying, you know, a free mediator before paying for one.

7            THE COURT:  Yeah.  So I would propose -- do you

8    want to mediate the two cases separately?

9            MR. DUGGAN:  We would prefer to do those

10   together.  I'll give you reasoning.

11           THE COURT:  I don't know what kind of damages

12   you're asking for in what I'll call the photo-sharing

13   case.  But it does seem to me, as I said, it does look

14   like a tail, it might be a big tail in your opinion, but

15   the other case is still the dog.

16           MR. DARLING:  Absolutely.

17           MR. DUGGAN:  From our perspective, yeah, we

18   would like the get both the tail and the dog off our

19   plate if we go to mediation.

20           THE COURT:  I think the tail is sufficiently

21   attached to the dog that they ought to be mediated

22   together.

23           MR. DARLING:  From defendants' perspective, I

24   understand that.  If they want a global settlement --

25           THE COURT:  How can you argue against global

1    peace?

2            MR. DARLING:  Of course.

3            THE COURT:  So what would be a mediation

4    deadline that would work for both cases?  And I'm going

5    to make a suggestion that in my part of the world

6    usually works sometime in mid-December.

7            MR. DARLING:  The proverbial end-of-the-year

8    holiday special.

9            THE COURT:  Exactly.  Exactly.  But it seems to

10   work with the calendar.

11           MR. DARLING:  I'm just looking here.  It would

12   also kind of be convenient as to potentially before

13   depositions of experts is to begin.  Makes sense.

14           THE COURT:  How about December 13th as the

15   deadline by which you have to complete mediation for

16   both cases.

17           MR. DARLING:  That's agreeable.

18           THE COURT:  Good.  And we could also make that

19   the discovery deadline for this case.

20           Do you think, Mr. Duggan, you'll be filing

21   dispositive motions in this case?

22           MR. DUGGAN:  Yes, your Honor.  At least on

23   behalf of Sergeant Burns.

24           THE COURT:  Again, that makes sense.  How about

25   deadline for filing that will be January 10th.

1    Joint pretrial order and motion in limine
2    deadline on this will be March 10th.
3    Docket call, final pretrial conference will be
4    March 24th.
5    MR. DUGGAN:  This case is getting ahead of the
6    other case.
7    THE COURT:  It is, but it's a much simpler
8    case.  We can coordinate them.
9    MR. DARLING:  Yeah, I'm just speculating here,
10   but there might be both factual issues and maybe even --
11   maybe even preclusion issues.  Again, I'm speculating.
12   It seems to me that because the facts alleged in the
13   second case occurred after --
14   THE COURT:  Right.
15   MR. DARLING:  I would just propose that the
16   trial would be after the first trial.
17   THE COURT:  That makes sense.  That makes
18   sense.  So we would bump it to -- I'm going to keep the
19   dispositive motions deadline the same because it's
20   different, but I will make the joint pretrial order be
21   the same as in the first case.
22   Final pretrial conference we said was May 23rd,
23   so it's going to be May 23rd, 2025.
24   And for the final pretrial conference and the
25   joint pretrial order would be due -- I don't think I set

1    a trial date.

2        MR. DUGGAN:  You said for the first case the

3    beginning of June.

4        THE COURT:  Correct.  I'm trying to decipher my

5    notes.  Yeah, depending how Judge McCullough and I work

6    that out.  So the final -- the joint pretrial order in

7    both cases then would be May 9th.

8        Okay.  All right.  I think we have schedules.

9        MR. DARLING:  Thank you, your Honor.

10       THE COURT:  We'll have attorney's fees issues

11   as well; correct?

12       MR. DARLING:  Yes.  This is a 1983.

13       THE COURT:  Do the parties agree to submit the

14   attorney's fees determination to the Court after the

15   other issues are resolved?  That would avoid the need

16   for experts on attorney's fees.

17       Do you need to ask your clients, Mr. Duggan?

18       MR. DUGGAN:  Yeah, I need to ask my supervisor

19   and my clients about that, yes.

20       THE COURT:  That's fine.  Let me know as

21   quickly as you can.

22       MR. DUGGAN:  Okay.

23       THE COURT:  All right.  And if you -- if that

24   agreement doesn't apply to these cases, then your expert

25   disclosures I presume under California -- in California

1    would also have to include experts on attorney's fees.

2         The practice that we have here is that if the

3    Court is going to determine attorney's fees, you can;

4    but you need not have an expert on the reasonableness of

5    those fees.  If it's going to go to the jury, you have

6    to have that added testimony.

7         MR. DARLING:  Okay.

8         THE COURT:  I don't know if that is your

9    practice in California.

10        MR. DARLING:  Oftentimes, after liability is

11   established and after damages, if a jury returns

12   damages, then it's a motion with, you know, expert

13   declarations.  And then it's just -- there will be a

14   hearing, but it won't be necessarily -- it's a

15   declaration from someone with expertise, but it's not an

16   expert per se.

17        THE COURT:  And it would be submitted to the

18   Court?

19        MR. DARLING:  Yes, your Honor.

20        THE COURT:  And that's what I'm suggesting.

21   Under my practice, it's helpful if you agree in advance

22   to that, and then we bake it into the scheduling order.

23   But Mr. Duggan, I understand, needs to make sure his

24   clients are on board with that.

25        MR. DUGGAN:  Yes.

1        MR. DARLING:  Thank you, your Honor.

2        THE COURT:  All right.  Well, I will prepare

3   these orders with everything but that final point, and

4   I'll get these to you as quickly as possible.

5        MR. DARLING:  We filed these before COVID, so

6   I'm just really glad that the Eastern District has

7   appointed you to move this case along.

8        THE COURT:  Well, this was one of the cases

9   that was assigned to a district named No District Judge.

10  They really are under water so it's a pleasure to help.

11       All right.  I will talk to Judge McCullough and

12  make sure she knows what we've done.  And if you want to

13  mediate before in California, that she can -- that might

14  be -- she might want to do that.  Or if she's going to

15  have more pretrial management in the case, she might not

16  want to do that.

17       MR. DARLING:  Good.

18       THE COURT:  Okay.  More to follow, I'm sure.

19  Thank you very much.

20       MR. DARLING:  Thank you very much, your Honor.

21       MR. DUGGAN:  Thank you.

22       THE COURT:  Have a good rest of the summer.

23       MR. DARLING:  You, too.

24     (Proceedings adjourned.)

25

1        <u>TELEPHONIC OR VIDEO CONFERENCE CERTIFICATE</u>

2

3            I, Cheryl L. Cummings, RDR, RMR, CRR, CRC,

4     certify that as an Official Court Reporter in the

5     United States District Court, Southern District of

6     Texas, I have transcribed the telephonic/video

7     conference hearing of the foregoing entitled case to

8     the best of my ability; that any indiscernible

9     designations are because of audio interference that

10    precluded me from understanding the words spoken; and

11    that the foregoing typewritten matter contains a

12    full, true and correct transcript of my understanding

13    of the aforesaid proceedings as recorded to the best

14    of my skill and ability.

15

16

17    Certified on December 15, 2024.

18

19

20    <u>/s/ Cheryl L. Cummings</u>
      Cheryl L. Cummings, RDR, RMR, CRR, CRC
21    Official Court Reporter

22

23

24

25

**/**

/s [1] - 31:14

**1**

10th [3] - 15:19, 26:25, 27:2
11th [1] - 14:2
13th [1] - 26:14
1983 [1] - 28:12
19th [1] - 3:6
1:20-cv-00323 [1] - 1:5
1st [2] - 14:20, 15:6

**2**

2023 [1] - 11:1
2024 [2] - 1:13, 31:10
2025 [7] - 11:20, 13:6, 16:9, 16:14, 17:5, 17:7, 27:23
23rd [4] - 17:7, 17:16, 27:22, 27:23
24th [1] - 27:4
26 [1] - 1:13
27th [2] - 17:5, 19:25
28 [1] - 31:4
28th [6] - 13:5, 16:1, 16:9, 16:15, 16:18, 17:7
29th [1] - 10:19
2:18 [1] - 2:4

**3**

30 [1] - 15:17
31st [1] - 15:24
32 [1] - 18:2
323 [1] - 10:14

**4**

4,000 [1] - 3:19
48 [1] - 8:21

**5**

5 [1] - 31:10

**6**

67 [1] - 10:24

**7**

753 [1] - 31:5

**9**

9th [1] - 28:7

**A**

A-File [1] - 5:17
abbreviated [3] - 8:10, 8:24, 9:8
absolutely [3] - 7:7, 16:24, 25:16
accept [2] - 12:9, 12:15
accepting [1] - 13:12
actual [1] - 19:14
add [5] - 3:1, 10:1, 19:2, 19:8, 19:19
added [2] - 12:7, 29:6
additional [6] - 3:1, 4:6, 6:24, 9:11, 12:10, 13:6
address [1] - 6:23
addressed [1] - 6:24
adjust [1] - 20:25
administrative [1] - 15:1
ADR [1] - 24:16
advance [1] - 29:21
afternoon [3] - 2:8, 2:9, 2:10
agree [4] - 7:2, 23:25, 28:13, 29:21
agreeable [1] - 26:17
agreement [1] - 28:24
ahead [2] - 10:13, 27:5
al [1] - 1:8
allegations [2] - 13:3, 21:11
alleged [1] - 27:12
allow [1] - 20:20
amend [4] - 3:1, 10:14, 11:9, 13:8
amended [5] - 2:21, 5:7, 10:12, 12:3, 13:3
amending [1] - 20:1
analysis [1] - 12:13
Angeles [1] - 25:2
anticipate [1] - 12:17
APPEARANCES [1] - 1:14
applies [1] - 10:22
apply [1] - 28:24
appointed [1] - 30:7
appreciate [2] - 4:12, 20:3
approach [1] - 24:15
April [1] - 2:21
area [1] - 7:18
argue [1] - 25:25
arise [1] - 5:2
arrangement [1] - 17:1
arrived [1] - 7:12
arrives [1] - 7:16
artfully [1] - 19:1
asap [1] - 13:14
assert [2] - 6:21, 16:3
asserted [1] - 6:18
assign [1] - 23:16
assigned [4] - 7:12, 9:4, 13:18, 30:9
assignment [1] - 14:13

assume [2] - 13:16, 15:17
attached [1] - 25:21
attention [1] - 10:1
Attorney [2] - 1:18, 2:10
attorney's [5] - 28:10, 28:14, 28:16, 29:1, 29:3
August [1] - 19:19
available [1] - 7:15
avoid [1] - 28:15
aware [1] - 14:11
awful [1] - 2:16

**B**

backlog [2] - 4:25, 5:1
bake [2] - 22:23, 29:22
baking [1] - 20:19
bare [1] - 7:14
basis [2] - 10:12, 23:16
become [1] - 14:10
begin [1] - 26:13
beginning [2] - 17:12, 28:3
behalf [3] - 2:8, 2:11, 26:23
belt [1] - 24:15
belt-and-suspender [1] - 24:15
best [2] - 6:5, 24:19
between [4] - 17:9, 18:5, 20:18, 22:8
beyond [1] - 7:2
big [2] - 25:2, 25:14
bit [3] - 7:22, 14:21, 19:21
block [2] - 14:12, 18:14
board [1] - 29:24
brief [2] - 3:23, 4:2
briefing [1] - 4:6
bringing [1] - 13:6
bump [1] - 27:18
Burns [7] - 2:11, 10:3, 12:20, 18:12, 19:17, 26:23
Burns' [2] - 18:7, 19:10

**C**

calendar [1] - 26:10
California [10] - 4:23, 6:10, 17:9, 17:11, 24:12, 24:13, 28:25, 29:9, 30:13
camera [3] - 7:21, 21:15, 21:23
case [32] - 2:6, 2:16, 2:25, 4:20, 5:1, 9:20, 10:2, 10:3, 10:15, 10:22, 12:2, 12:8, 13:15, 15:18, 17:11, 17:19, 19:6, 20:7, 24:5, 24:21, 25:13, 25:15, 26:19, 26:21, 27:5, 27:6, 27:8, 27:13, 27:21, 28:2, 30:7, 30:15
cases [14] - 2:23, 5:1, 10:11, 18:5, 23:6, 24:22, 24:23, 25:8, 26:4, 26:16, 28:7, 28:24, 30:8
catch [1] - 4:24
category [2] - 7:2, 7:9
CDCR [9] - 5:18, 18:23, 19:15, 21:6, 21:15, 21:23, 24:21, 24:22, 24:23

**cell** [9] - 7:16, 9:4, 13:18, 14:11, 14:13, 19:10, 21:12, 21:16, 21:25
**celled** [4] - 5:11, 6:2, 6:3
**cells** [2] - 7:17, 9:9
**Central** [1] - 24:25
**certain** [1] - 3:3
**certainly** [6] - 12:19, 15:3, 15:18, 21:2, 21:22, 21:24
**CERTIFIED** [1] - 1:11
**Certified** [2] - 1:22, 31:10
**certify** [1] - 31:4
**characterization** [1] - 23:20
**characterize** [1] - 23:7
**charge** [1] - 18:13
**check** [1] - 9:15
**checks** [1] - 13:21
**Cheryl** [3] - 1:21, 31:14, 31:14
**circumstances** [1] - 6:23
**claims** [1] - 18:6
**client** [1] - 9:15
**clients** [3] - 28:17, 28:19, 29:24
**Code** [1] - 31:5
**coming** [1] - 24:25
**commenced** [1] - 2:4
**committee** [3] - 8:9, 8:11, 8:14
**compel** [5] - 3:20, 3:21, 4:11, 7:10, 20:4
**compelling** [2] - 6:9, 6:25
**competency** [1] - 6:20
**competent** [1] - 6:19
**complaint** [4] - 5:7, 12:3, 13:4, 21:11
**complaints** [1] - 10:12
**complete** [1] - 26:15
**completed** [1] - 12:12
**computer** [1] - 1:25
**concerns** [2] - 6:24
**conducting** [1] - 13:21
**confer** [1] - 8:6
**conference** [8] - 3:22, 4:3, 17:4, 17:6, 17:16, 27:3, 27:22, 27:24
**CONFERENCE** [1] - 1:10
**conflict** [2] - 12:1, 12:12
**conflicting** [1] - 12:12
**consider** [1] - 11:24
**consulting** [1] - 7:5
**contemplating** [1] - 7:10
**control** [1] - 10:20
**convenient** [1] - 26:12
**conversations** [2] - 5:18, 5:22
**coordinate** [1] - 27:8
**copies** [1] - 22:11
**correct** [7] - 6:11, 6:22, 8:19, 12:9, 28:4, 28:11, 31:6
**correctional** [1] - 18:20
**counsel** [4] - 2:5, 12:2, 15:2, 24:1
**County** [1] - 25:2
**couple** [3] - 3:19, 4:4, 8:12
**course** [5] - 10:8, 13:2, 19:11, 25:5, 26:2
**COURT** [122] - 1:1, 1:11, 2:5, 2:9, 2:12,

2:15, 2:18, 2:24, 3:4, 3:7, 3:13, 3:21, 4:1, 4:10, 4:14, 4:17, 4:22, 5:22, 6:1, 6:4, 6:8, 6:18, 6:22, 7:20, 7:24, 8:3, 8:17, 8:22, 9:11, 9:15, 9:19, 9:22, 10:9, 10:17, 10:25, 11:3, 11:9, 11:12, 11:15, 11:18, 11:20, 12:5, 12:16, 12:21, 12:24, 13:2, 13:10, 13:15, 13:23, 13:25, 14:7, 14:20, 15:6, 15:11, 15:13, 15:16, 15:21, 15:23, 16:6, 16:11, 16:13, 16:15, 16:25, 17:3, 17:15, 17:18, 17:22, 18:2, 18:10, 18:15, 18:18, 18:25, 19:7, 19:18, 19:23, 19:25, 20:6, 20:10, 20:13, 20:15, 20:18, 21:4, 21:9, 21:13, 21:19, 22:3, 22:6, 22:18, 22:20, 22:22, 23:4, 23:9, 23:11, 23:13, 23:25, 24:9, 24:11, 24:17, 25:7, 25:11, 25:20, 25:25, 26:3, 26:9, 26:14, 26:18, 26:24, 27:7, 27:14, 27:17, 28:4, 28:10, 28:13, 28:20, 28:23, 29:8, 29:17, 29:20, 30:2, 30:8, 30:18, 30:22
**court** [2] - 6:8, 6:13
**Court** [7] - 1:22, 19:9, 20:3, 28:14, 29:3, 29:18, 31:15
**Court's** [2] - 4:16, 9:25
**COVID** [2] - 11:4, 30:5
**CRC** [2] - 1:21, 31:14
**crime** [1] - 21:16
**CRR** [2] - 1:21, 31:14
**Cummings** [3] - 1:21, 31:14, 31:14
**cut** [6] - 15:24, 15:25, 16:8, 16:16, 16:17, 16:21
**cut-off** [6] - 15:24, 15:25, 16:8, 16:16, 16:17, 16:21

# D

**damages** [4] - 24:4, 25:11, 29:11, 29:12
**darling** [13] - 7:4, 7:21, 8:5, 8:13, 9:16, 9:19, 10:5, 12:13, 13:7, 16:20, 21:19, 22:13, 23:25
**Darling** [3] - 1:15, 1:16, 2:7
**DARLING** [83] - 2:7, 2:14, 2:17, 2:23, 2:25, 3:5, 3:16, 3:25, 4:9, 4:12, 5:5, 5:24, 6:2, 6:6, 7:7, 7:23, 8:2, 8:16, 8:20, 8:24, 9:20, 9:23, 10:8, 10:23, 11:2, 11:4, 11:11, 11:14, 11:16, 11:19, 11:21, 13:8, 13:11, 13:20, 13:24, 14:3, 14:25, 15:20, 15:22, 16:24, 17:2, 17:14, 17:17, 17:21, 18:7, 18:12, 18:17, 18:20, 19:4, 19:9, 19:20, 19:24, 20:2, 20:8, 20:12, 20:14, 21:20, 22:15, 23:7, 23:10, 23:12, 24:1, 24:10, 24:14, 24:20, 25:16, 25:23, 26:2, 26:7, 26:11, 26:17, 27:9, 27:15, 28:9, 28:12, 29:7, 29:10, 29:19, 30:1, 30:5, 30:17, 30:20, 30:23
**darling's** [1] - 23:20
**date** [3] - 11:8, 20:21, 28:1
**dates** [1] - 12:6

**days** [2] - 4:4, 15:17
**deadline** [12] - 3:10, 13:16, 15:19, 16:18, 17:6, 20:1, 26:4, 26:15, 26:19, 26:25, 27:2, 27:19
**deadlines** [1] - 10:20
**deal** [2] - 5:5, 14:5
**decedent** [1] - 7:11
**December** [3] - 26:6, 26:14, 31:10
**decide** [1] - 19:8
**decipher** [1] - 28:4
**decision** [5] - 5:10, 5:25, 7:16, 9:6, 9:9
**decision-making** [1] - 9:9
**declaration** [1] - 29:15
**declarations** [1] - 29:13
**defendant** [3] - 3:23, 4:1, 10:3
**Defendant** [1] - 2:11
**defendant's** [1] - 3:1
**defendants** [22] - 3:18, 5:8, 5:13, 5:16, 7:19, 10:2, 12:1, 12:21, 14:6, 14:18, 14:19, 14:22, 14:23, 16:4, 18:8, 18:10, 18:16, 18:19, 19:2, 19:12, 23:8, 24:2
**Defendants** [2] - 1:9, 1:18
**defendants'** [1] - 25:23
**defends** [1] - 24:23
**delay** [1] - 11:5
**deposition** [1] - 16:22
**depositions** [4] - 14:8, 14:14, 14:17, 26:13
**Deputy** [1] - 2:10
**determination** [1] - 28:14
**determine** [1] - 29:3
**develops** [1] - 13:1
**DIAZ** [1] - 1:8
**difference** [3] - 20:18, 21:21, 22:8
**different** [5] - 3:17, 17:20, 18:6, 19:1, 27:20
**difficult** [1] - 12:7
**diligent** [1] - 11:6
**disagree** [1] - 23:19
**disclosure** [8] - 6:9, 13:16, 14:1, 15:7, 15:14, 16:11, 16:13, 16:14
**disclosures** [4] - 11:13, 11:15, 11:17, 28:25
**disconnect** [1] - 8:8
**discovery** [25] - 3:14, 3:22, 4:5, 4:20, 5:3, 5:4, 10:6, 11:7, 13:1, 14:5, 14:8, 15:23, 15:25, 16:8, 16:16, 16:17, 16:21, 18:7, 20:20, 22:25, 23:21, 23:23, 26:19
**discretion** [1] - 9:2
**dismembered** [1] - 14:11
**dispositive** [3] - 12:17, 26:21, 27:19
**dispute** [1] - 4:5
**disputes** [2] - 4:20, 5:2
**distributed** [1] - 7:1
**DISTRICT** [2] - 1:1, 1:2
**district** [1] - 30:9
**District** [9] - 1:22, 1:23, 11:6, 17:9, 17:10, 25:1, 25:4, 30:6, 30:9

**docket** [2] - 2:19, 27:3
**Docket** - 10:24, 18:2
**doctor/patient** [1] - 6:12
**document** [2] - 8:14, 8:25
**documents** [10] - 3:18, 5:6, 7:11, 7:13, 7:14, 8:1, 9:12, 9:23, 23:12, 23:23
**dog** [4] - 18:5, 25:15, 25:18, 25:21
**done** [3] - 4:7, 5:4, 30:12
**DORA** [1] - 1:5
**double** [2] - 5:11, 6:3
**double-celled** [2] - 5:11, 6:3
**dozen** [1] - 22:2
**due** [2] - 16:22, 27:25
**DUGGAN** [47] - 2:10, 3:9, 4:15, 4:18, 6:11, 6:20, 8:4, 9:13, 9:18, 10:4, 10:16, 11:23, 12:11, 12:19, 12:23, 12:25, 14:4, 14:16, 15:8, 15:12, 15:15, 16:5, 16:8, 16:12, 16:14, 16:19, 17:25, 20:17, 21:1, 21:5, 21:10, 21:14, 22:4, 22:16, 22:19, 22:21, 23:3, 23:19, 25:9, 25:17, 26:22, 27:5, 28:2, 28:18, 28:22, 29:25, 30:21
**Duggan** [12] - 1:18, 2:11, 3:2, 7:5, 8:3, 9:12, 10:13, 13:12, 20:15, 26:20, 28:17, 29:23
**duties** [1] - 14:9

## E

**earth** [1] - 9:5
**Eastern** [4] - 11:6, 17:9, 25:4, 30:6
**effect** [1] - 9:5
**efforts** [1] - 23:5
**either** [1] - 24:6
**electronically** [1] - 22:12
**employees** [1] - 15:11
**empty** [2] - 7:17, 9:9
**end** [3] - 19:15, 19:19, 26:7
**end-of-the-year** [1] - 26:7
**enter** [1] - 20:21
**entered** [1] - 10:25
**Entry** [2] - 10:24, 18:2
**equally** [1] - 4:2
**Erin** [3] - 1:15, 1:16, 2:7
**especially** [2] - 7:17, 24:25
**essentially** [3] - 5:18, 7:13, 7:15
**establish** [1] - 21:25
**established** [1] - 29:11
**et** [1] - 1:8
**evidence** [1] - 20:10
**evidentiary** [1] - 21:14
**exactly** [5] - 6:16, 13:24, 17:21, 26:9
**exchanged** [1] - 11:16
**excuse** [1] - 11:14
**expect** [1] - 9:24
**expert** [29] - 13:16, 14:1, 15:7, 15:14, 15:15, 15:16, 15:25, 16:8, 16:11, 16:12, 16:14, 16:15, 16:16, 16:21, 16:22, 20:7, 20:11, 20:20, 20:24, 21:3,

21:17, 22:24, 28:24, 29:4, 29:12, 29:16
**expertise** [1] - 29:15
**experts** [9] - 11:18, 13:17, 20:16, 20:22, 26:13, 28:16, 29:1
**extend** [1] - 15:18
**extension** [1] - 10:5
**extent** [1] - 6:14

## F

**face** [1] - 7:22
**facial** [1] - 20:9
**facility** [1] - 13:19
**fact** [7] - 5:11, 9:3, 14:5, 14:7, 14:25, 22:7, 22:25
**facts** [2] - 2:16, 27:12
**factual** [1] - 27:10
**February** [5] - 11:20, 13:5, 16:1, 16:9, 16:15
**federal** [2] - 6:10, 6:13
**fees** [6] - 10:8, 28:14, 28:16, 29:1, 29:3, 29:5
**few** [1] - 24:22
**fight** [1] - 19:13
**file** [3] - 3:11, 11:15, 20:24
**File** [1] - 5:17
**filed** [7] - 2:21, 3:1, 11:4, 11:12, 12:4, 17:25, 30:5
**filing** [4] - 16:2, 17:6, 26:20, 26:25
**final** [7] - 2:18, 17:15, 27:3, 27:22, 27:24, 28:6, 30:3
**fine** [7] - 10:9, 10:17, 14:16, 15:22, 16:25, 19:24, 28:20
**first** [15] - 2:20, 2:25, 7:13, 8:4, 8:8, 8:9, 8:18, 8:22, 14:10, 22:7, 23:23, 24:3, 27:16, 27:21, 28:2
**flag** [4] - 9:25, 16:20, 19:9
**flagged** [1] - 15:4
**follow** [1] - 30:18
**following** [1] - 12:14
**follows** [1] - 2:4
**foregoing** [1] - 31:5
**forensic** [3] - 21:3, 21:17, 22:24
**forward** [1] - 4:21
**four** [1] - 3:17
**free** [1] - 25:6
**Friday** [3] - 3:10, 3:12, 10:13
**front** [1] - 18:3
**full** [1] - 8:9

## G

**gather** [2] - 8:17, 12:10
**General** [2] - 1:18, 2:11
**generally** [1] - 24:21
**given** [2] - 11:10, 19:22
**glad** [1] - 30:6
**global** [2] - 25:24, 25:25

**grant** [2] - 10:14, 23:1
**granted** [2] - 3:14, 13:9
**great** [2] - 5:5, 14:4
**guards** [2] - 12:10, 14:24
**guess** [2] - 11:5, 22:6
**guidance** [1] - 24:13
**guidelines** [1] - 13:17
**gulf** [1] - 25:2
**guys** [1] - 7:2

## H

**half** [1] - 22:2
**handle** [4] - 4:21, 4:22, 4:25, 5:2
**handled** [2] - 6:5, 24:19
**handling** [1] - 4:20
**hard** [1] - 22:11
**health** [3] - 6:12, 6:14, 6:17
**hearing** [3] - 3:5, 24:4, 29:14
**help** [3] - 4:24, 5:1, 30:10
**helpful** [1] - 29:21
**hereby** [1] - 31:4
**higher** [1] - 15:10
**higher-ranking** [1] - 15:10
**HIPPA** [1] - 6:10
**holiday** [1] - 26:8
**holidays** [1] - 15:21
**homicidal** [2] - 5:9, 5:19
**Honor** [26] - 2:7, 2:23, 3:9, 3:16, 4:13, 4:15, 5:5, 6:6, 6:11, 7:7, 8:2, 10:4, 10:23, 11:11, 11:23, 14:25, 17:25, 19:24, 20:2, 21:1, 23:19, 26:22, 28:9, 29:19, 30:1, 30:20
**HONORABLE** [1] - 1:4
**hope** [1] - 19:20
**hours** [1] - 8:21
**housed** [1] - 8:11
**housing** [1] - 8:12
**Houston** [1] - 1:12

## I

**ideations** [2] - 5:9, 5:19
**identify** [1] - 4:7
**images** [3] - 19:14, 22:9
**immunity** [2] - 12:18, 16:3
**impermissible** [1] - 22:1
**impermissibly** [1] - 21:23
**important** [1] - 7:24
**include** [1] - 29:1
**indeed** [3] - 2:17, 11:2, 24:10
**individuals** [1] - 15:5
**initial** [3] - 11:12, 11:15, 11:16
**inmate** [1] - 9:2
**inmates** [2] - 9:10, 13:22
**inquiry** [1] - 9:17
**instead** [1] - 13:5
**interest** [1] - 24:3

**interested** [1] - 24:6
**Internet** [3] - 19:15, 22:9, 22:16
**interrogatories** [1] - 9:24
**interview** [1] - 5:12
**investigation** [1] - 15:2
**issue** [2] - 19:13, 21:22
**issues** [9] - 3:19, 5:6, 17:20, 21:5, 24:21, 27:10, 27:11, 28:10, 28:15
**ISU** [1] - 21:15
**item** [1] - 15:3
**items** [3] - 2:18, 2:19, 7:9

## J

**Jaime** [1] - 5:8
**January** [3] - 15:19, 15:24, 26:25
**Jeremy** [2] - 1:18, 2:11
**joint** [6] - 2:19, 17:25, 27:1, 27:20, 27:25, 28:6
**Judge** [6] - 4:19, 4:25, 24:17, 28:5, 30:9, 30:11
**judge** [1] - 24:12
**JUDGE** [1] - 1:4
**judges** [1] - 25:3
**July** [2] - 3:6, 10:7
**jump** [1] - 10:13
**June** [3] - 1:13, 17:12, 28:3
**jury** [2] - 29:5, 29:11

## K

**keep** [2] - 13:22, 27:18
**killer** [1] - 5:8
**kind** [8] - 8:10, 13:12, 14:12, 19:21, 20:6, 24:24, 25:11, 26:12
**kinds** [1] - 6:10
**knows** [1] - 30:12

## L

**LA** [1] - 25:1
**lacking** [1] - 9:7
**last** [2] - 2:19, 10:6
**Law** [1] - 1:16
**laws** [1] - 6:10
**lawsuits** [1] - 25:1
**least** [3] - 3:18, 16:4, 26:22
**leave** [4] - 10:14, 11:10, 13:8, 20:25
**leaves** [1] - 20:23
**leaving** [1] - 14:4
**LEE** [1] - 1:4
**leisurely** [1] - 11:1
**letter** [1] - 3:23
**liability** [2] - 21:25, 29:10
**licensed** [1] - 5:14
**licensing** [1] - 15:9
**lieu** [1] - 20:3
**lieutenants** [1] - 15:9

**likelihood** [1] - 23:15
**likely** [7] - 3:9, 3:11, 11:25, 12:1, 21:2, 22:21, 23:1
**limine** [1] - 27:1
**limited** [1] - 6:25
**lines** [1] - 13:17
**litigation** [1] - 7:1
**look** [4] - 10:18, 17:19, 19:14, 25:13
**looking** [4] - 2:18, 3:11, 10:21, 26:11
**Los** [1] - 25:2
**low** [1] - 24:25
**lower** [1] - 7:22
**Luis** [1] - 7:11

## M

**magic** [1] - 19:15
**magistrate** [5] - 23:17, 24:7, 24:11, 24:15, 25:3
**main** [1] - 18:13
**management** [1] - 30:15
**March** [5] - 16:6, 16:18, 17:7, 27:2, 27:4
**matter** [1] - 31:7
**McCullough** [5] - 4:19, 4:25, 24:18, 28:5, 30:11
**mean** [3] - 4:18, 21:2, 21:9
**means** [1] - 22:25
**meant** [1] - 15:13
**mechanical** [1] - 1:24
**mediate** [2] - 25:8, 30:13
**mediated** [1] - 25:21
**mediation** [12] - 23:4, 23:13, 23:18, 23:22, 23:24, 24:2, 24:6, 24:7, 24:18, 25:19, 26:3, 26:15
**mediator** [3] - 24:13, 24:16, 25:6
**meet** [1] - 8:6
**mental** [3] - 6:12, 6:14, 6:17
**merit** [1] - 3:20
**mid** [1] - 26:6
**mid-December** [1] - 26:6
**might** [8] - 3:3, 20:8, 24:18, 25:14, 27:10, 30:13, 30:14, 30:15
**misjudging** [1] - 14:15
**missed** [1] - 17:24
**monitoring** [4] - 7:18, 13:21, 13:23, 13:24
**months** [1] - 20:19
**motion** [15] - 3:1, 3:2, 3:20, 3:21, 3:22, 4:11, 7:10, 10:14, 16:2, 16:18, 17:6, 20:4, 20:24, 27:1, 29:12
**motions** [3] - 12:17, 26:21, 27:19
**move** [4] - 6:1, 7:21, 12:6, 30:7
**moving** [1] - 10:1
**MR** [130] - 2:7, 2:10, 2:14, 2:17, 2:23, 2:25, 3:5, 3:9, 3:16, 3:25, 4:9, 4:12, 4:15, 4:18, 5:5, 5:24, 6:2, 6:6, 6:11, 6:20, 7:7, 7:23, 8:2, 8:4, 8:16, 8:20, 8:24, 9:13, 9:18, 9:20, 9:23, 10:4, 10:8, 10:16, 10:23, 11:2, 11:4, 11:11,

11:14, 11:16, 11:19, 11:21, 11:23, 12:11, 12:19, 12:23, 12:25, 13:8, 13:11, 13:20, 13:24, 14:3, 14:4, 14:16, 14:25, 15:8, 15:12, 15:15, 15:20, 15:22, 16:5, 16:8, 16:12, 16:14, 16:19, 16:24, 17:2, 17:14, 17:17, 17:21, 17:25, 18:7, 18:12, 18:17, 18:20, 19:4, 19:9, 19:20, 19:24, 20:2, 20:8, 20:12, 20:14, 20:17, 21:1, 21:5, 21:10, 21:14, 21:20, 22:4, 22:15, 22:16, 22:19, 22:21, 23:3, 23:7, 23:10, 23:12, 23:19, 24:1, 24:10, 24:14, 24:20, 25:9, 25:16, 25:17, 25:23, 26:2, 26:7, 26:11, 26:17, 26:22, 27:5, 27:9, 27:15, 28:2, 28:9, 28:12, 28:18, 28:22, 29:7, 29:10, 29:19, 29:25, 30:1, 30:5, 30:17, 30:20, 30:21, 30:23
**murder** [3] - 5:23, 5:24, 8:17

## N

**name** [1] - 20:24
**named** [2] - 10:3, 30:9
**necessarily** [1] - 29:14
**need** [14] - 3:15, 6:8, 11:20, 18:15, 18:18, 20:7, 20:11, 20:16, 20:24, 22:24, 28:15, 28:17, 28:18, 29:4
**needed** [2] - 19:3, 20:22
**needs** [3] - 4:7, 5:4, 29:23
**never** [1] - 24:2
**new** [10] - 8:10, 10:2, 14:5, 14:18, 14:22, 14:23, 15:3, 19:8, 19:19
**next** [2] - 17:13, 20:19
**night** [2] - 8:18, 13:21
**nonCDCR** [2] - 18:22, 18:24
**nonexpert** [1] - 15:23
**nonopposition** [2] - 3:12, 10:13
**notes** [1] - 28:5
**nothing** [2] - 23:9, 23:10
**notice** [3] - 3:22, 4:4, 5:8
**November** [2] - 14:20, 15:6
**numbers** [1] - 25:3

## O

**objection** [1] - 6:5
**obviously** [1] - 24:4
**occurred** [2] - 8:18, 27:13
**October** [3] - 11:1, 14:2, 17:5
**OF** [1] - 1:2
**offer** [1] - 23:8
**Office** [1] - 1:18
**officers** [1] - 18:21
**Offices** [1] - 1:16
**official** [1] - 19:16
**OFFICIAL** [1] - 1:11
**Official** [1] - 31:15
**officially** [1] - 21:15
**officials** [1] - 21:7

36

**oftentimes** [1] - 29:10
**once** [2] - 7:16, 12:3
**one** [10] - 5:6, 5:13, 6:6, 17:23, 17:24, 21:5, 22:1, 24:20, 25:6, 30:8
**ones** [1] - 12:11
**online** [2] - 18:24, 21:6
**open** [1] - 24:16
**opened** [1] - 11:7
**opinion** [2] - 24:25, 25:14
**opportunity** [1] - 20:23
**oppose** [2] - 3:10, 9:3
**opposed** [4] - 9:7, 21:25, 22:9, 25:5
**opposition** [2] - 3:8, 3:10
**order** [18] - 6:5, 6:8, 6:9, 6:23, 6:25, 7:4, 10:19, 10:21, 12:9, 17:23, 18:4, 19:12, 20:25, 27:1, 27:20, 27:25, 28:6, 29:22
**orders** [1] - 30:3
**Osuna** [7] - 5:12, 5:17, 6:18, 7:16, 9:1, 9:6, 9:9
**Osuna's** [2] - 5:9, 6:14
**ought** [1] - 25:21
**outcome** [1] - 9:16
**outlining** [1] - 3:23
**overlapping** [1] - 18:8
**overly** [1] - 14:15

## P

**p.m** [1] - 2:4
**pace** [1] - 11:1
**pages** [1] - 3:19
**paperwork** [1] - 9:5
**part** [3] - 5:1, 7:22, 26:5
**parties** [4] - 13:7, 19:8, 19:19, 28:13
**past** [1] - 15:21
**paying** [1] - 25:6
**peace** [1] - 26:1
**pending** [1] - 3:2
**people** [3] - 7:2, 13:14, 15:10
**per** [1] - 29:16
**perhaps** [2] - 12:22, 12:24
**period** [1] - 8:22
**permanent** [1] - 8:12
**person** [1] - 18:13
**perspective** [2] - 25:17, 25:23
**petitioned** [1] - 6:7
**phone** [2] - 19:10, 21:25
**phones** [2] - 21:12, 21:17
**photo** [1] - 25:12
**photo-sharing** [1] - 25:12
**photos** [13] - 18:21, 18:22, 18:23, 21:6, 21:11, 21:14, 21:16, 21:18, 21:22, 21:23, 22:7
**physically** [1] - 22:10
**picture** [1] - 22:16
**place** [2] - 17:23, 18:4
**plaintiff** [9] - 2:25, 3:16, 9:23, 11:21, 13:19, 15:20, 15:22, 19:13, 20:4
**Plaintiff** [2] - 1:6, 1:15

**plaintiff's** [2] - 14:1, 24:1
**plaintiffs** [3] - 2:8, 23:21, 24:24
**plan** [1] - 3:11
**plate** [1] - 25:19
**play** [1] - 17:10
**pleadings** [2] - 11:10, 20:1
**pleasure** [1] - 30:10
**point** [2] - 10:1, 30:3
**policies** [1] - 20:7
**policy** [1] - 9:1
**position** [2] - 7:20, 7:25
**possible** [1] - 30:4
**potentially** [1] - 26:12
**Potentially** [1] - 18:17
**practice** [3] - 29:2, 29:9, 29:21
**pre** [1] - 3:22
**pre-motion** [1] - 3:22
**preclusion** [1] - 27:11
**prefer** [4] - 11:7, 24:11, 24:12, 25:9
**prepare** [1] - 30:2
**present** [2] - 2:5, 23:2
**PRESIDING** [1] - 1:4
**presume** [1] - 28:25
**pretrial** [13] - 16:2, 16:18, 17:4, 17:6, 17:15, 27:1, 27:3, 27:20, 27:22, 27:24, 27:25, 28:6, 30:15
**pretty** [3] - 2:16, 2:20, 11:5
**previously** [1] - 4:19
**printed** [1] - 22:11
**prison** [7] - 7:12, 8:10, 14:24, 15:8, 15:11, 20:7, 20:11
**private** [3] - 24:7, 24:12, 24:16
**privilege** [5] - 6:12, 6:16, 6:19, 6:21
**privileged** [1] - 5:21
**pro** [1] - 24:23
**procedure** [5] - 4:10, 4:15, 8:11, 8:25, 9:8
**procedures** [2] - 13:20, 14:13
**proceed** [1] - 11:22
**PROCEEDINGS** [1] - 2:1
**Proceedings** [2] - 1:24, 2:4
**proceedings** [1] - 31:7
**process** [3] - 15:3, 20:3, 20:5
**produce** [1] - 23:12
**produced** [7] - 1:25, 5:6, 5:16, 7:6, 7:10, 8:5, 8:25
**production** [1] - 6:25
**professionals** [1] - 6:15
**proof** [1] - 22:6
**propose** [3] - 13:6, 25:7, 27:15
**proposed** [3] - 5:7, 5:13, 13:3
**propounded** [2] - 3:17, 9:24
**protective** [3] - 6:5, 6:23, 19:12
**prove** [2] - 20:13, 22:4
**proverbial** [1] - 26:7
**provided** [4] - 3:18, 6:15, 23:17, 23:23
**providence** [1] - 21:18
**providers** [1] - 6:17
**psychological** [1] - 5:20

**publication** [1] - 9:21
**published** [1] - 18:24
**purposes** [1] - 7:1
**pursuant** [1] - 31:4
**put** [2] - 18:4, 20:21

## Q

**qualified** [2] - 12:17, 16:3
**quickly** [2] - 28:21, 30:4

## R

**races** [1] - 13:14
**raised** [1] - 5:7
**RALPH** [1] - 1:8
**ranking** [1] - 15:10
**rather** [1] - 10:19
**RDR** [2] - 1:21, 31:14
**ready** [2] - 19:8, 19:18
**really** [5] - 7:14, 7:23, 9:2, 30:6, 30:10
**Realtime** [1] - 1:22
**reasonable** [1] - 23:15
**reasonableness** [1] - 29:4
**reasoning** [1] - 25:10
**rebuttal** [2] - 15:15, 15:16
**receive** [1] - 4:4
**received** [1] - 7:25
**receives** [1] - 19:14
**recognized** [1] - 6:13
**recorded** [3] - 1:24, 5:12, 5:19
**records** [5] - 5:16, 5:20, 6:9, 7:6, 19:10
**relationship** [1] - 18:5
**remarkable** [1] - 11:5
**report** [2] - 2:20, 18:1
**Reported** [1] - 1:21
**reported** [1] - 31:6
**Reporter** [3] - 1:22, 1:25, 31:15
**REPORTER'S** [1] - 1:11
**represent** [1] - 12:20
**representing** [1] - 11:25
**request** [1] - 9:12
**requested** [1] - 19:10
**requesting** [1] - 20:24
**requests** [1] - 3:17
**require** [1] - 23:13
**required** [2] - 4:7, 20:22
**requirement** [1] - 14:1
**reset** [1] - 11:24
**resolve** [2] - 4:5, 23:5
**resolved** [1] - 28:15
**response** [2] - 3:4, 4:2
**responses** [5] - 9:25, 18:8, 19:5, 19:14, 20:5
**responsive** [1] - 9:12
**rest** [1] - 30:22
**returns** [1] - 29:11
**RFA's** [1] - 9:24

**RFPs** [1] - 9:24
**RMR** [2] - 1:21, 31:14
**rogatories** [1] - 3:18
**Romero** [3] - 7:11, 9:1, 9:6
**room** [1] - 20:23
**ROSENTHAL** [1] - 1:4
**rounds** [1] - 3:17
**rule** [2] - 20:11, 20:17
**ruling** [1] - 20:19

## S

**safe** [1] - 13:22
**safety** [1] - 13:21
**satisfy** [1] - 6:10
**scene** [1] - 21:16
**schedule** [3] - 11:24, 12:3, 17:19
**scheduled** [1] - 16:9
**schedules** [1] - 28:8
**scheduling** [7] - 2:20, 10:21, 17:23, 18:1, 18:4, 20:25, 29:22
**screen** [2] - 22:17, 22:20
**se** [2] - 24:23, 29:16
**second** [9] - 7:9, 8:20, 8:21, 9:20, 10:2, 10:3, 13:3, 17:19, 27:13
**Section** [1] - 31:5
**see** [6] - 7:22, 10:18, 12:25, 14:9, 14:16, 17:23
**seeing** [1] - 25:4
**seem** [1] - 25:13
**select** [1] - 9:9
**send** [1] - 4:22
**sense** [4] - 26:13, 26:24, 27:17, 27:18
**sent** [1] - 18:24
**separate** [1] - 13:12
**separately** [1] - 25:8
**September** [2] - 19:23, 19:25
**Sergeant** [2] - 12:20, 26:23
**series** [1] - 14:8
**serve** [1] - 13:13
**served** [2] - 10:6, 13:11
**service** [3] - 12:9, 12:15, 13:13
**set** [3] - 3:21, 17:5, 27:25
**settle** [1] - 23:8
**settlement** [1] - 25:24
**settling** [1] - 24:3
**several** [1] - 20:19
**shared** [5] - 18:21, 19:16, 21:24, 22:11, 22:12
**sharing** [3] - 17:8, 21:21, 25:12
**sheet** [1] - 2:19
**short** [1] - 12:9
**show** [1] - 21:18
**shows** [1] - 9:1
**signal** [2] - 24:8, 24:9
**signaled** [1] - 24:3
**signed** [1] - 9:1
**significant** [1] - 24:5
**simpler** [1] - 27:7

**simply** [2] - 20:21, 23:14
**single** [2] - 5:11, 6:2
**single-celled** [2] - 5:11, 6:2
**six** [2] - 14:18, 22:1
**slightly** [1] - 23:20
**slowly** [1] - 23:12
**social** [2] - 5:14, 15:9
**Solares** [1] - 2:5
**SOLARES** [1] - 1:5
**someone** [3] - 14:11, 19:17, 29:15
**sometime** [1] - 26:6
**somewhat** [2] - 12:6, 18:25
**sorry** [3] - 7:23, 16:7, 16:16
**sort** [1] - 18:5
**sound** [1] - 14:13
**sounds** [2] - 17:14, 20:4
**SOUTHERN** [1] - 1:2
**Southern** [2] - 1:23, 17:10
**speaking** [1] - 8:4
**special** [1] - 26:8
**speculating** [2] - 27:9, 27:11
**staff** [3] - 5:18, 15:8, 18:22
**start** [1] - 24:15
**started** [1] - 23:21
**statement** [1] - 3:12
**statements** [2] - 6:14, 6:16
**STATES** [1] - 1:1
**States** [2] - 1:22, 31:5
**stenographically** [1] - 31:6
**stenography** [1] - 1:24
**still** [3] - 4:23, 22:4, 25:15
**stipulate** [1] - 19:11
**stipulation** [1] - 10:19
**streamlined** [1] - 4:10
**subject** [2] - 7:18, 15:1
**submissions** [1] - 4:6
**submit** [3] - 3:23, 4:1, 28:13
**submitted** [1] - 29:17
**succeed** [2] - 23:15, 23:16
**sufficiently** [1] - 25:20
**suggesting** [1] - 29:20
**suggestion** [1] - 26:5
**summer** [1] - 30:22
**supervisor** [2] - 18:13, 28:18
**supplemental** [1] - 15:13
**suspender** [1] - 24:15

## T

**tail** [5] - 18:5, 25:14, 25:18, 25:20
**tail-and-dog** [1] - 18:5
**tasked** [1] - 14:10
**taxpayer** [1] - 23:17
**taxpayer-provided** [1] - 23:17
**telephone** [2] - 22:18, 22:20
**TELEPHONIC** [1] - 1:10
**testimony** [1] - 29:6
**TEXAS** [1] - 1:2
**Texas** [3] - 1:12, 1:23, 17:10

**texted** [2] - 18:21, 19:11
**THE** [121] - 1:4, 2:5, 2:9, 2:12, 2:15, 2:18, 2:24, 3:4, 3:7, 3:13, 3:21, 4:1, 4:10, 4:14, 4:17, 4:22, 5:22, 6:1, 6:4, 6:8, 6:18, 6:22, 7:20, 7:24, 8:3, 8:17, 8:22, 9:11, 9:15, 9:19, 9:22, 10:9, 10:17, 10:25, 11:3, 11:9, 11:12, 11:15, 11:18, 11:20, 12:5, 12:16, 12:21, 12:24, 13:2, 13:10, 13:15, 13:23, 13:25, 14:7, 14:20, 15:6, 15:11, 15:13, 15:16, 15:21, 15:23, 16:6, 16:11, 16:13, 16:15, 16:25, 17:3, 17:15, 17:18, 17:22, 18:2, 18:10, 18:15, 18:18, 18:25, 19:7, 19:18, 19:23, 19:25, 20:6, 20:10, 20:13, 20:15, 20:18, 21:4, 21:9, 21:13, 21:19, 22:3, 22:6, 22:18, 22:20, 22:22, 23:4, 23:9, 23:11, 23:13, 23:25, 24:9, 24:11, 24:17, 25:7, 25:11, 25:20, 25:25, 26:3, 26:9, 26:14, 26:18, 26:24, 27:7, 27:14, 27:17, 28:4, 28:10, 28:13, 28:20, 28:23, 29:8, 29:17, 29:20, 30:2, 30:8, 30:18, 30:22
**themselves** [1] - 22:8
**thinking** [1] - 21:1
**thinks** [1] - 8:13
**tighten** [1] - 11:3
**Title** [1] - 31:4
**together** [2] - 25:10, 25:22
**took** [2] - 18:21, 21:7
**topics** [1] - 3:24
**TRANSCRIPT** [1] - 1:11
**transcript** [2] - 1:25, 31:6
**transfer** [1] - 5:10
**trial** [7] - 10:7, 11:8, 16:9, 16:20, 27:16, 28:1
**trouble** [1] - 9:3
**true** [1] - 31:5
**try** [4] - 17:11, 23:5, 23:8
**trying** [4] - 4:24, 10:18, 25:6, 28:4
**two** [3] - 2:23, 23:5, 25:8
**type** [1] - 13:18

## U

**ultimately** [2] - 17:10, 18:23
**under** [4] - 6:22, 28:25, 29:21, 30:10
**unexpected** [1] - 14:14
**UNITED** [1] - 1:1
**United** [2] - 1:22, 31:5
**unofficially** [2] - 21:7, 21:9
**up** [7] - 3:24, 4:25, 7:21, 11:3, 12:6, 12:14, 19:15

## V

**vacated** [1] - 18:1
**valuation** [1] - 24:24
**violation** [1] - 20:9

**vs** [1] - 1:7

## W

**waste** [1] - 23:14
**water** [1] - 30:10
**ways** [1] - 14:14
**website** [1] - 4:16
**week** [5] - 10:6, 13:10, 16:10, 16:21, 16:23
**weeks** [1] - 8:12
**whole** [1] - 11:24
**wiggle** [1] - 20:23
**withholding** [1] - 9:14
**witness** [1] - 22:25
**witnesses** [1] - 22:7
**words** [1] - 21:8
**worker** [2] - 5:14, 15:9
**works** [2] - 15:20, 26:6
**world** [1] - 26:5
**worth** [1] - 24:8
**written** [1] - 10:5

## Y

**year** [3] - 15:14, 17:13, 26:7

## Z

**zero** [1] - 23:8
**Zoom** [2] - 4:3, 4:6