Rob Bonta, State Bar No. 202668
Attorney General of California
Jon S. Allin, State Bar No. 155069
Supervising Deputy Attorney General
Jeremy Duggan, State Bar No. 229854
Deputy Attorney General
 1300 I Street, Suite 125
 P.O. Box 944255
 Sacramento, CA 94244-2550
 Telephone: (916) 210-6008
 Fax: (916) 324-5205
 E-mail: Jeremy.Duggan@doj.ca.gov
*Attorneys for Defendants
Pena, Gallemore, and Garcia*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

FRESNO DIVISION

| | |
|---|---|
| **DORA SOLARES,** <br><br> Plaintiff, <br><br> v. <br><br> **RALPH DIAZ, et al.,** <br><br> Defendants. | 1:20-CV-00323-LHR <br><br> **DEFENDANTS L. PENA, J. GARCIA, AND B. GALLEMORE'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS** <br><br> Judge: The Honorable Lee H. Rosenthal <br> Action Filed: March 2, 2020 |

**INTRODUCTION**

Plaintiff Solares asserts multiple causes of action against prison staff members relating to the death of her son, Luis Romero, at California State Prison, Corcoran. In her Fifth Amended Complaint (5AC), Solares asserts claims for failure to summon medical care under California Government Code section 845.6 against Defendants Pena, Garcia, and Gallemore. The Court previously dismissed these claims with leave to amend. (ECF No. 130.) Because the 5AC does not plead facts sufficient to state a claim under section 845.6, those claims should be dismissed.

Section 845.6 provides that generally neither a public entity nor a public employee is liable for an injury resulting from the failure an employee to furnish medical care for a prisoner. The statute provides a narrow exception for cases where the employee knows or has reason to know

1

that the prisoner needs immediate medical care and the employee fails to take reasonable action to summon that medical care. The Court previously dismissed Plaintiff's section 845.6 claims from the fourth amended complaint because Plaintiff failed to plead facts showing that the Defendants either knew or had reason to know that decedent needed immediate medical care.

Plaintiff has amended the complaint, but the same problem remains. The 5AC does not allege any facts showing that any Defendant, including Pena, Garcia, and Gallemore knew or had reason to know that Decedent Romero needed immediate medical care. The 5AC has been amended to assert that Defendants heard sounds of yelling and screaming from Decedent's cell but did not respond. Those allegations are insufficient to state a claim. Knowledge of "yelling and screaming" in a cell is not the same as knowledge of a need for immediate medical care. Just as with the fourth amended complaint, the 5AC fails to allege facts showing that Defendants had reason to know that Decedent needed immediate medical care, or indeed that Defendants knew anything all about Plaintiff's medical condition. As stated in the 5AC, Defendants only learned of Decedent's condition after he died. The section 845.6 claims should therefore be dismissed, without leave to amend.

**FACTUAL ALLEGATIONS**

Plaintiff Solares alleges as follows:

Solares is the mother of Decedent Luis Romero. (Pl.'s Fifth Am. Compl. (5AC) ¶ 4, ECF No. 97.) On or about March 7, 2019, Decedent was transferred from Mule Creek State Prison to California State Prison, Corcoran. (5AC ¶ 14.) Corcoran officials did not follow the usual protocol before housing inmates together, and housed Romero in a cell with inmate Jaime Osuna. (*Id.*) Osuna had been convicted of a 2011 murder, and CDCR possessed documents showing he was extremely violent. (5AC ¶¶ 16-17.)

After housing Osuna and Romero together, Corcoran staff, including Defendants Pena, Garcia, and Gallemore, were responsible for conducting nighttime safety checks on the cell. According to the 5AC, staff did not conduct nighttime safety checks, and failed to remove a bedsheet covering the cell window. (5AC ¶ 21.) The 5AC further alleges that Defendants Pena, Garcia, and Gallemore "could not help but hear the unavoidably loud sounds of yelling and

2

Defs.' Pena, Gallemore, and Garcia's Mem. of P. & A. in Support of Mot. to Dismiss  (1:20-CV-00323-LHR)

screaming coming from the Romero/Osuna cell." (5AC ¶ 21.) On the evening of March 8-9, 2019, Osuna murdered Romero. (5AC ¶¶ 21-23.) Staff discovered the murder in the early morning of March 9, 2019. (5AC ¶ 1.)

## PLAINTIFF'S CAUSES OF ACTION

Plaintiff asserts five causes of action against Defendants Pena, Garcia, and Gallemore for: (1) Conditions of Confinement; (2) Failure to Protect Inmate; (3) Loss of Familial Relations; (4) Wrongful Death; and (5) Failure to Summon Medical Care under section 845.6. (5AC 15-20.) Plaintiff further asserts a cause of action for Supervisory Liability against Defendant Burnes only. (5AC 17-18.)

## STANDARD ON MOTION TO DISMISS

A dismissal under Rule 12(b)(6) is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557.) The interpretation of Federal Rule of Civil Procedure 8 in *Twombly* governs all civil actions, including claims based on state law, in federal court. *Iqbal*, 556 U.S. 662, 684 (2009).

Conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss. *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004); *see also Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) ("[A]llegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively."). Similarly, vague allegations of official participation in civil rights violations are not sufficient to

3

1  defeat a motion to dismiss. *Ivey v. Board of Regents of the Univ. of Alaska*, 673 F.2d 266, 268
2  (9th Cir. 1982); *Pena v. Gardner*, 976 F.2d 469, 471 (9th Cir. 1992). "The plaintiff must 'allege
3  with at least some degree of particularity overt acts which defendants engaged in' that support
4  plaintiff's claim." *Jones v. Community Redevelopment Agency*, 733 F.2d 646, 649 (9th Cir. 1984)
5  (citations omitted).

### I.   PLAINTIFF FAILS TO STATE A CLAIM FOR FAILURE TO SUMMON MEDICAL CARE.

#### A.   Plaintiff Fails to State Facts Showing Defendants Knew of a Need for Immediate Medical Care.

California Government Code section 845.6 provides that neither a public entity nor a public employee is liable for injury resulting from "the failure of [a public] employee to furnish or obtain medical care for a prisoner in his custody." Cal. Gov. Code 845.6. The statute, however, provides an exception "if the employee knows or has reason to know that the prisoner is in need of immediate medical care and he fails to take reasonable action to summon such medical care." *Id.*

The section 845.6 exception is a narrow one. *See Castaneda v. Dep't of Corr. & Rehab.*, 212 Cal. App. 4th 1051, 1071 (2013) ("A narrow reading of [the section 845.6 exception] is compelled as a matter of statutory interpretation.") "[T]he duty to summon is presented as the exception to the broad, general immunity for failing to furnish or provide medical care" and the section "imposes the duty to summon on 'public employees' generally [who] do not have the medical training to know whether a prisoner's medical condition has been properly diagnosed and treated." *Id.* Therefore, "[l]iability under section 845.6 is limited "to serious and obvious medical conditions requiring immediate care." *Watson v. State of California*, 21 Cal.App.4th 836, 841 (1993). For liability to attach, a public employee must know or have reason to know that the prisoner is in need of immediate medical care. Cal. Gov. Code § 845.6.

Plaintiff has not alleged facts showing that Defendants Pena, Garcia, and Gallemore knew that Decedent had a serious and obvious condition requiring immediate medical care. (*See generally* 5AC.) Indeed, the 5AC alleges that prison staff did not see Decedent's condition until

4

Defs.' Pena, Gallemore, and Garcia's Mem. of P. & A. in Support of Mot. to Dismiss  (1:20-CV-00323-LHR)

"the early morning hours of March 9, 2019," at which point Decedent had already died. (5AC ¶ 1.)

Nor does the 5AC plead facts supporting that Pena, Garcia, and Gallemore had reason to know of Decedent's serious and obvious medical condition. The 5AC does not plead any facts showing that Defendants observed that Decedent had a serious medical need before his death. (*See generally* 5AC.) Accordingly, Defendants had no reason to know that Decedent needed immediate medical care. *See Jack v. Cty. of Stanislaus*, No. 1:17-CV-0520 AWI SAB, 2017 U.S. Dist. LEXIS 150367, at *41 (E.D. Cal. Sep. 15, 2017) ("If Pearson and Gunsolley did not actually see these symptoms or Jack's condition, then they neither knew or nor did they have reason to know that Jack needed immediate medical care.")

**B.    The New Facts Pled in the 5AC Do Not Save the Complaint.**

Defendants previously moved to dismiss the section 845.6 claims from Plaintiff's fourth amended complaint, and the Court granted the motion. (Mem. and Op., ECF No. 130.) Specifically, the Court found that the allegations that Osuna was a violent inmate and there was a bedsheet draped in front of the cell "do not show that the guards knew that Romero needed immediate medical care, as required for liability to attach under Government Code § 845.6." (*Id.* at 6-7.)

In the 5AC, Plaintiff attempts to save the claims by asserting that Defendants Pena, Garcia, and Gallemore heard "loud sounds of yelling and screaming coming from the Romero/Osuna cell" and that other inmates "yelled about the attack occurring inside the cell." (5AC ¶ 21.) Even taking Plaintiff's unlikely story as true, the 5AC does not state a claim under section 845.6. Knowledge of yelling and screaming in a cell is not the same as knowledge of a need for immediate medical care.

To state a claim Plaintiff must plead facts showing that Defendants had "reason to know" of Decedent's need for immediate medical care. Cal. Gov. Code § 845.6. The California Supreme Court defines constructive knowledge under the reason to know standard as follows:

> in determining whether an actor was in possession of the constructive knowledge described by the 'reason to know' standard, we ask whether, after examining the facts in the actor's possession, a reasonable person of ordinary intelligence—or, in the

5

> particular circumstance, a person of superior intelligence—would have inferred the existence of the ultimate fact at issue or regarded its existence as so highly probable as to conduct himself or herself as if it did exist.

*Doe v. City of L.A.*, 42 Cal. 4th 531, 547, (2007); *see also John B. v. Superior Court,* 38 Cal. 4th 1177, 1191 (2006) (the reason to know standard does not impute knowledge of facts to the actor).

> A 'reason to know' standard does not require proof that a person must have inferred the existence of the ultimate fact but only, under the circumstances described above, that a person would have inferred the existence of the ultimate fact or would have regarded the existence of the ultimate fact as so highly probable as to have behaved in conformity with that belief.

*Doe,* 42 Cal. 4th at 547.

Here, even with the new allegations regarding yelling and screaming coming from the cell, the 5AC does not plead that Defendants knew of any facts that would have led them to infer the existence of Decedent's immediate medical need, or regard that immediate medical need as so highly probable as to conduct themselves as if the need did exist. (*See generally* 5AC.) While the supposed yelling and screaming, as with the draped bedsheet alleged in the 4AC, could lead to the inference that some form of wrongdoing was happening in the cell, it does not show that the officers knew that Romero needed immediate medical care. (*See* Mem. and Op. at 6, ECF No. 130.) Indeed, the 5AC does not allege facts showing that any Defendant knew anything about Romero's medical condition until the next morning, when Romero had died. (*See* 5AC ¶ 1 ("In the early morning hours of March 9, 2019, Corcoran officials finally looked on the other side of the bedsheet.").) Because the 5AC fails to allege facts showing that Defendants had "reason to know" that Decedent needed immediate medical care, or indeed anything about Romero's medical condition, the section 845.6 claims should be dismissed.

/ / /

/ / /

/ / /

6

Defs.' Pena, Gallemore, and Garcia's Mem. of P. & A. in Support of Mot. to Dismiss  (1:20-CV-00323-LHR)

## CONCLUSION

This is not a case of failure to summon medical care. As alleged in the 5AC, Defendants did not know, and did not have reason to know, that Decedent needed immediate medical care. While Plaintiff may state a claim for other causes of action, the section 845.6 claims fail, and should be dismissed without leave to amend.

Dated: March 12, 2025

Respectfully submitted,

ROB BONTA
Attorney General of California
JON S. ALLIN
Supervising Deputy Attorney General

***/s/ Jeremy Duggan***
JEREMY DUGGAN
Deputy Attorney General
*Attorneys for Defendants*
*Pena, Gallemore, and Garcia*

SA2019101902
38320373.docx

7

Defs.' Pena, Gallemore, and Garcia's Mem. of P. & A. in Support of Mot. to Dismiss  (1:20-CV-00323-LHR)