Justin E. Sterling, State Bar No. 249491
LAW OFFICES OF JUSTIN STERLING
Justin@SterlingDefense.com
15760 Ventura Blvd. Suite 700
Encino, CA 91436
Tel. (818) 995-9452/Fax. (818) 824-3533

Erin Darling, State Bar No. 259724
LAW OFFICES OF ERIN DARLING
Erin@ErinDarlingLaw.com
3435 Wilshire Blvd. Suite 2910
Los Angeles, CA 90010
Tel. (323) 736-2230

Attorneys for Plaintiff Dora Solares

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DORA SOLARES, an individual,<br><br>    Plaintiff,<br><br>    v.<br><br>RALPH DIAZ, in his individual capacity, KENNETH CLARK, in his individual capacity, JOSEPH BURNS, in his individual, and DOES 1 TO 15, in their individual capacities<br><br>    Defendants. | Case No. 1:20-cv-00323-LHR-BAM<br><br>**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT LUIS SILVA'S MOTION TO DISMISS CLAIM FOR FAILURE TO SUMMON MEDICAL CARE**<br><br>**Judge:**    Hon. Lee H. Rosenthal |

Plaintiff Dora Solares hereby opposes the Motion to Dismiss filed by Defendant Luis Silva. *See* Dkt. No. 138, Motion to Dismiss, Silva. Plaintiff requests that the Court deny this motion and that Defendant Luis Silva be held to answer.

Respectfully submitted,

Dated: March 21, 2025            LAW OFFICES OF ERIN DARLING

By: _____/s/Erin Darling_____
Erin Darling,
Attorneys for Plaintiff Dora Solares

**I.     INTRODUCTION**

The Court's, February 7, 2025, "Memorandum and Opinion" granted Defendant Silva's Motion to Dismiss Plaintiff's claim for violation of California Government Code § 845.6 but granted leave to amend the complaint. *See* Dkt. 130, Memorandum and Opinion, (Feb. 7, 2025). In doing so, the Court pointed out the flaw in the prior § 845.6 allegation: "Ms. Solares has not pled that the guards on duty that evening heard unusual noises coming from the cell that Romero and Osuna shared, or that the guards received reports from other prisoners of an attack occurring in the cell." *Id.* at 7.

Plaintiff Dora Solares's Fifth Amended Complaint ("5AC") responds to this deficiency by alleging the following:

> Defendants Silva [and other defendants] could not help but hear the unavoidably loud sounds of yelling and screaming coming from the Romero/Osuna cell. Not only were these unusual noises but they were loud and reverberated through the cellblock, and could be heard from the control booth and the areas outside the cells where the correctional officers walked. Other inmates within the cellblock could hear the yelling from the Romero-Osuna cell and the inmates themselves yelled out about the attack occurring inside the cell.

*See* Dkt. 134, Plaintiff's 5AC, p. 11, l. 24- p. 12, l. 2.

Additionally, Plaintiff's 5AC alleges that Defendant Silva and other defendants "could hear the loud, unusual noises coming from inside the cell that signaled a violent attack was occurring, and could hear the loud sounds of other inmates commenting on the violence within the Romero/Osuna cell." *See* Dkt. 134, Plaintiff's 5AC, p. 20, ll. 12-15. Despite this, Defendant Silva and other defendants "failed to intervene with the attack occurring inside the cell." *Id.* at p. 20, ll. 18-19. The 5AC also alleges that Defendant Silva and other defendants "failed to take reasonable action to summon medical care for Mr. Romero, despite having reason to know that he was in need of immediate medical care, in violation of Cal. Gov't Code § 845.6." *Id.* at p. 20, ll. 24-27.

## II. STANDARD OF REVIEW

In ruling on a motion to dismiss under Rule 12(b)(6), a court must determine whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Under Rule 12(b)(6), a court may dismiss a complaint "only if it is clear that no relief can be granted under any set of facts that could be proved consistent with the allegations." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002).

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint. *CRV Imperial-Worthington, LP v. Gemini Ins. Co.*, 770 F. Supp. 2d 1070 (S.D. Cal. 2011). A complaint's allegations must be "taken as true and construed in the light most favorable to plaintif." *Epstein v. Washington Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1999). Allegations must "contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively," and "suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

Courts must accept all well-pleaded facts as true and draw all reasonable inferences in favor of the non-moving party. Defendants' motion to dismiss should be denied because the Fifth Amended Complaint (5AC), As described below, the FAC alleges facts that clearly meet the "has reason to know" standard set forth in the plain language of § 845.6.

## III. FED. R. CIV. P. 8 PERMITS SUCCESSIVE PLEADINGS THAT MAKE INCONSISTENT ALLEGATIONS

Defendant Silva argues the 5AC that defendants heard noises from the Osuna-Romero cell cannot be reconciled with judicial admissions that defendants failed to be within earshot due to their failure to conduct safety checks. This argument goes nowhere. First, as a matter of black-letter law, Federal Rule of Civil Procedure allows parties to plead

2

1 inconsistent factual allegations. Fed. R. Civ. P. 8(d)(2) ("A party may set out 2 or more
2 statements of a claim or defense alternatively or hypothetically, either in a single count or
3 defense or in separate ones. If a party makes alternative statements, the pleading is sufficient
4 if any one of them is sufficient.") The Ninth Circuit affirmed this principle in *PAE Gov't*
5 *Servs. v. MPRI, Inc.*, 514 F.3d 856 (9th Cir. 2007), holding, "there is nothing in the Federal
6 Rules of Civil Procedure to prevent a party from filing successive pleadings that make
7 inconsistent or even contradictory allegations. Unless there is a showing that the party acted
8 in bad faith…inconsistent allegations are simply not a basis for striking the pleading. *Id.* at
9 860; see also *Morgan Tire of Sacramento, Inc. v. Goodyear Tire & Rubber Co.*, 60 F.Supp.3d 1109,
10 1115 (E.D. Cal. 2014); Wagstaffe Prac. Guide: Fed. Civil Proc. Before Trial § 22-XI (2025).
11 There is no basis to strike pleadings unless there is a showing of bad faith, which can only
12 be determined after the party is given an opportunity to respond under Rule 11 procedures.
13 *PAE Gov't Servs.*, 514 F.3d at 859-60. District courts have affirmed the principle that a party
14 may plead alternative theories of liability, even if those theories are inconsistent or
15 independently sufficient, and that a party "may allege inconsistent factual allegations." *See*
16 *e.g. Cellars v. Pacific Coast Packaging, Inc.*, 189 F.R.D. 575, 578 (N.D. Cal. Dec. 22, 1999); *Rowell*
17 *v. Zamora* , No. 2:14-cv-1888-KJ (E.D. Cal. Mar. 15, 2018), 2018 U.S. Dist. LEXIS 42935.
18     Here, no defendant has made the hyperbolic claim that an Rule 11 violation has
19 occurred because there is no evidence to support that Plaintiff makes any allegation in bad
20 faith. Based on independent investigation, Plaintiff has pleaded contradictory facts regarding
21 what Defendant Silva heard from the Romero-Osuna cell during the night of the murder.
22 That is not a "judicial admission" but a permissible set of inconsistent factual allegations to
23 support alternative theories of liability, 42 U.S.C. § 1983, and California Government Code
24 § 845.6, respectively. Plaintiff's 5AC includes permissible additional allegations, and those
25 state sufficient facts under § 845.6.
26 //
27
28

3

## IV. THE 5AC PROPERLY ALLEGES A VIOLATION OF CALIFORNIA GOVERNMENT CODE § 845.6

California Government Code section 845.6 creates an affirmative duty to summon medical care when a public employee acting within the scope of his employment "knows *or has reason to know* that the prisoner is in need of immediate medical care and he fails to take reasonable action to summon such medical care." Cal. Gov't Code § 845.6 (emphasis added).

"In order to state a claim under § 845.6, a prisoner must establish three elements: (1) the public employee knew or should had reason to know of the need (2) for immediate medical care, and (3) failed to reasonably summon such care." *Jett v. Penner*, 439 F.3d 1091, 1099 (9th Cir. 2006). Section 845.6 "creates liability" and "an obligation to help." *Lawson v. Superior Court*, 180 Cal.App.4th 1372, 1384 n. 11 (2010). To be clear, the obligation for the public employee is to summon medical care, not deliver quality medical care, and where defendants failed to "call a doctor or other trained health care provider for a prisoner, a § 845.6 claim may proceed. *Johnson v. Cnty. of Los Angeles*, 143 Cal. App. 3d. 298, 317 (1983) (reversing a grant of demurrer on plaintiffs' § 845.6 claim).

Ninth Circuit authority is clear: it is enough to allege facts from which it can be inferred that a defendant "reasonably should know" of the prisoner's need for immediate medical care. *Horton by Horton v. City of Santa Maria*, 915 F.3d 592, 605 (9th Cir. 2019). Whether a public employee or entity knows or has reason to know of a prisoner's need for immediate care is an objective standard. *Lucas v. Cty. of Los Angeles*, 47 Cal.App.4th 277, 288 (1996); see also *Johnson*, 143 Cal.App.3d at 317.

The 5AC alleges facts that Defendant Silva knew, and also had reason to know that Romero needed medical help, including, that he "could hear the loud, unusual noises coming from inside the cell that signaled a violent attack was occurring, and could hear the loud sounds of other inmates commenting on the violence within the Romero/Osuna cell." *See* Dkt. 134, Plaintiff's 5AC, p. 20, ll. 12-15. These loud, unusual noises, noises that signaled a violent attack were enough to put Silva on notice that someone inside the cell was being attacked and would need medical care.

4

### A.    CDCR Inmates Are Entitled to Timely Welfare Safety Checks

As described above, the 5AC properly states a claim under § 845.6 on the basis of the loud sounds of a violent attack coming from the Romero-Osuna cell. Plaintiff has also alleged that defendants should have been on notice but failed to view in the cell, despite an explicit requirement to conduct timely welfare safety checks.

The Court's Order (Dkt. 130) offered a distinction between pre-trial detainees, who have a right to direct-view safety checks, and prisoners who have already been convicted of a crime: "These cases are distinguishable on this basis because pre-trial detainees have an established right to direct-view safety checks. *Hyde v. City of Willcox*, 23 F.4 th 863, 873 (9th Cir. 2022). The court is unaware of case law clearly establishing the same right for prisoners like Mr. Romero who have already been convicted of a crime." *See* Dkt. 130, Memorandum and Opinion, at 6.

Plaintiff must clarify a few matters: The Order's language appears to be the "clearly established" standard of a qualified immunity analysis. For one, Plaintiff must note that this analysis is not the standard for analyzing the § 845.6 claim, which arises under California law, not 42 U.S.C. § 1983. For purposes of this Opposition, Plaintiff will refrain from a Qualified Immunity analysis under § 1983 and focus on California litigation.

Second, CDCR inmates are entitled to direct-view welfare checks pursuant to orders from the ongoing class action, *Coleman v. Newsom* (E.D. Cal. Case No. 2:90-cv-520-KJM) concerning services provided to CDCR inmates. As part of that class action, the *Coleman* court appointed a Special Master to "monitor compliance" with injunctive relief. *Coleman v. Wilson*, 912 F.Supp.1282, 1324 E.D. Cal. 1995). As stated by the Ninth Circuit in *Rico v. Ducart*, 980 F.3d 1291 (9th Cir. 2020):

> In the late 2000's, the *Coleman* court issued a serios of orders requiring CDCR officials to implement certain measures…Since 2013, these measures included directive to correctional officers to conduct welfare checks on inmates in Security Housing Units every half hour. To ensure that prison officials conducted these welfare checks at the required frequency, the Guard One system was implemented

5

in 2014…Every half hour, an officer must touch the end of a hand-held metal 'pipe' or 'wand' to a metal disc attached to each cell door as the officer peers inside to assess the inmate's welfare…This tracking data is reviewed daily to verify that correctional officers are completing the required welfare checks every half hour.

*Rico v. Ducart*, 980 F.3d 1292, 1295 (9th Cir. 2020)

In *Rico*, the Secretary of the CDCR defended the manner in which court-ordered welfare checks were conducted against an inmate's condition-of-confinement claim for sleep deprivation under the Eighth Amendment (which stemmed from the alleged excessive noise caused by the "pipe" checks.) *Id.* at 1297. Simply put, CDCR is subject to court order and requires its employees to conduct timely visual welfare checks.

Thus, the failure to comply with an obligation to perform safety checks can establish the "reason to know" constructive knowledge standard of § 845.6, since CDCR officers did know they had to conduct timely welfare checks. The 5AC describes how Defendant Silva was put on notice, first, by unmistakable sounds of violence that he could hear, and second, by visual welfare checks that he had a duty to conduct but did not. The first type of failure (audible) establishes actual notice, and the second type of failure (visual) constitutes constructive notice under Section 845.6.

## V. CONCLUSION

For the foregoing reasons, Defendant Silva's Rule 12(b)(6) motion should be denied, and he should be ordered to answer Plaintiff's 5AC.

Respectfully submitted,

Dated: March 21, 2025

LAW OFFICES OF ERIN DARLING

By: _____*/s/Erin Darling*_____
    Erin Darling,
    Attorneys for Plaintiff Dora Solares

6