Justin E. Sterling, State Bar No. 249491
LAW OFFICES OF JUSTIN STERLING
Justin@SterlingDefense.com
15760 Ventura Blvd. Suite 700
Encino, CA 91436
Tel. (818) 995-9452/Fax. (818) 824-3533

Erin Darling, State Bar No. 259724
LAW OFFICES OF ERIN DARLING
Erin@ErinDarlingLaw.com
3435 Wilshire Blvd. Suite 2910
Los Angeles, CA 90010
Tel. (323) 736-2230

Attorneys for Plaintiff Dora Solares

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DORA SOLARES, an individual,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>RALPH DIAZ, in his individual capacity, KENNETH CLARK, in his individual capacity, JOSEPH BURNS, in his individual, and DOES 1 TO 15, in their individual capacities<br><br>　　　　Defendants. | Case No. 1:20-cv-00323-LHR-BAM<br><br>**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS LEONEL PENA, JESSE GARCIA AND BRYAN GALLEMORE'S MOTION TO DISMISS CLAIM FOR FAILURE TO SUMMON MEDICAL CARE**<br><br>**Judge:**　　Hon. Lee H. Rosenthal |

Plaintiff Dora Solares hereby opposes the Motion to Dismiss Plaintiff's Gov. Code § 845.6 claim filed by Defendants Leonel Pena, Jesse Garcia and Bryan Gallemore. *See* Dkt. No. 140, Motion to Dismiss. Plaintiff requests that the Court deny this motion and that Defendants Leonel Pena, Jesse Garcia and Bryan Gallemore be held to answer.

　　　　　　　　　　　　　　Respectfully submitted,

Dated: March 26, 2025　　LAW OFFICES OF ERIN DARLING

　　　　　　　　　　　　By: ____*/s/ Erin Darling*_____
　　　　　　　　　　　　　　Erin Darling,
　　　　　　　　　　　　　　Attorneys for Plaintiff Dora Solares

## I. INTRODUCTION

The Court's, February 7, 2025, "Memorandum and Opinion" granted Defendants Leonel Pena, Jesse Garcia and Bryan Gallemore Motion to Dismiss Plaintiff's claim for violation of California Government Code § 845.6 but granted leave to amend the complaint. *See* Dkt. 130, Memorandum and Opinion, (Feb. 7, 2025). In doing so, the Court pointed out the flaw in the prior § 845.6 allegation: "Ms. Solares has not pled that the guards on duty that evening heard unusual noises coming from the cell that Romero and Osuna shared, or that the guards received reports from other prisoners of an attack occurring in the cell." *Id.* at 7.

Plaintiff Dora Solares's Fifth Amended Complaint ("5AC") responds to this deficiency by alleging the following:

> Gallemore, Pena, Garcia and Does could not help but hear the unavoidably loud sounds of yelling and screaming coming from the Romero/Osuna cell. Not only were these unusual noises but they were loud and reverberated through the cellblock, and could be heard from the control booth and the areas outside the cells where the correctional officers walked. Other inmates within the cellblock could hear the yelling from the Romero-Osuna cell and the inmates themselves yelled out about the attack occurring inside the cell.

*See* Dkt. 134, Plaintiff's 5AC, p. 11, l. 24- p. 12, l. 2.

Additionally, Plaintiff's 5AC alleges that Defendants Gallemore, Pena, Garcia (and Silva) "could hear the loud, unusual noises coming from inside the cell that signaled a violent attack was occurring, and could hear the loud sounds of other inmates commenting on the violence within the Romero/Osuna cell." *See* Dkt. 134, Plaintiff's 5AC, p. 20, ll. 12-15. Despite this, Defendants Gallemore, Pena, Garcia (and Silva) "failed to intervene with the attack occurring inside the cell." *Id.* at p. 20, ll. 18-19. The 5AC also alleges that Defendants Gallemore, Pena, Garcia (and Silva) "failed to take reasonable action to summon medical care for Mr. Romero, despite having reason to know that he was in need of immediate medical care, in violation of Cal. Gov't Code § 845.6." *Id.* at p. 20, ll. 24-27.

1  **II.   STANDARD OF REVIEW**

2  In ruling on a motion to dismiss under Rule 12(b)(6), a court must determine whether
3  the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief
4  that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.
5  v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads
6  factual content that allows the court to draw the reasonable inference that the defendant is
7  liable for the misconduct alleged." *Id.* Under Rule 12(b)(6), a court may dismiss a complaint
8  "only if it is clear that no relief can be granted under any set of facts that could be proved
9  consistent with the allegations." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002).

10  A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims
11  asserted in the complaint. *CRV Imperial-Worthington, LP v. Gemini Ins. Co.*, 770 F. Supp. 2d
12  1070 (S.D. Cal. 2011). A complaint's allegations must be "taken as true and construed in the
13  light most favorable to plaintif." *Epstein v. Washington Energy Co.*, 83 F.3d 1136, 1140 (9th Cir.
14  1999). Allegations must "contain sufficient allegations of underlying facts to give fair notice
15  and to enable the opposing party to defend itself effectively," and "suggest an entitlement
16  to relief, such that it is not unfair to require the opposing party to be subjected to the expense
17  of discovery and continued litigation." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

18  Courts must accept all well-pleaded facts as true and draw all reasonable inferences
19  in favor of the non-moving party. Defendants' motion to dismiss should be denied because
20  the Fifth Amended Complaint (5AC), As described below, the 5AC alleges facts that clearly
21  meet the "has reason to know" standard set forth in the plain language of § 845.6.

22  **III.   THE 5AC PROPERLY ALLEGES A VIOLATION OF CALIFORNIA
23       GOVERNMENT CODE § 845.6**

24  California Government Code section 845.6 creates an affirmative duty to summon
25  medical care when a public employee acting within the scope of his employment "knows *or*
26  *has reason to know* that the prisoner is in need of immediate medical care and he fails to take
27  reasonable action to summon such medical care." Cal. Gov't Code § 845.6 (emphasis added).

28

1  "In order to state a claim under § 845.6, a prisoner must establish three elements: (1)
2  the public employee knew or should had reason to know of the need (2) for immediate
3  medical care, and (3) failed to reasonably summon such care." *Jett v. Penner*, 439 F.3d 1091,
4  1099 (9th Cir. 2006). Section 845.6 "creates liability" and "an obligation to help." *Lawson v.*
5  *Superior Court*, 180 Cal.App.4th 1372, 1384 n. 11 (2010). To be clear, the obligation for the
6  public employee is to summon medical care, not deliver quality medical care, and where
7  defendants failed to "call a doctor or other trained health care provider for a prisoner, a §
8  845.6 claim may proceed. *Johnson v. Cnty. of Los Angeles*, 143 Cal. App. 3d. 298, 317 (1983)
9  (reversing a grant of demurrer on plaintiffs' § 845.6 claim).

10  In *Est. of Spratt v. Cnty. of Riverside*, Case No. 23-cv-2096-JGB, 2024 U.S. Dist. LEXIS
11  35716 (C.D. Cal. Feb. 29, 2024), plaintiffs alleged that decedent was being beaten and
12  assaulted and that there were "prior alerts from other inmates who heard the assault." *Id.* at
13  * 16. Assessing defendants' motion to dismiss plaintiffs' claim for violation of § 845.6, "the
14  question here is whether [defendants[ *promptly* summoned medical care for Decedent." *Id.* at
15  * 15 (emphasis added). Taking those allegations as true, the court in *Estate of Spratt* held that
16  opening a cell door without adequate medical personnel was sufficient and denied
17  defendants' motion to dismiss as to that claim. *Id.* at * 18.

18  In *Est. of Abdollahi v. Cnty. of Sacramento*, 405 F. Supp. 2d 1194 (E.D. Cal. 2005), the
19  court held that circumstantial evidence showing a defendant's knowledge that decedent
20  inmate was a potential suicide risk and the circumstances of the cell check of the decedent
21  inmate's cell were enough to survive a motion for summary judgment on a claim for failure
22  to summon medical care. *Id.* at 1216. Such circumstantial evidence included "a darkened cell
23  light and a torn sheet around [decedent's] neck and shoulders, put [defendant[ that
24  [decedent] was suffering severe distress." *Id.*

25  Applied here, *Jett*'s three-prong analysis hinges on the first prong, as there is no doubt
26  that Romero was in need of immediate medical care when being attacked by Osuna (second
27  prong) or that defendants failed to summon medical care (third prong). Regarding the first
28  prong, the 5AC does allege that defendants knew or should have had reason to know about

3

the need for care. The 5AC alleges that Defendants Gallemore, Pena, Garcia "could not help but hear the unavoidably loud sounds of yelling and screaming coming from the Romero/Osuna cell." *See* Dkt. 134, Plaintiff's 5AC at p. 11, ll. 24-26. As in *Estate of Spratt*, the 5AC alleges that "other inmates within the cellblock could hear the yelling…and the inmates themselves yelled out about the attack occurring inside the cell." *Id.* at p. 11, l. 28-p. 12, l. 2. Hearing the sounds and the yelling of inmates about the attack in the cell were enough to put defendants on notice of the need for medical care.

Ninth Circuit authority is clear: it is enough to allege facts from which it can be inferred that a defendant "reasonably should know" of the prisoner's need for immediate medical care. *Horton by Horton v. City of Santa Maria*, 915 F.3d 592, 605 (9th Cir. 2019). Whether a public employee or entity knows or has reason to know of a prisoner's need for immediate care is an objective standard. *Lucas v. Cty. of Los Angeles*, 47 Cal.App.4th 277, 288 (1996); see also *Johnson*, 143 Cal.App.3d at 317. Even circumstantial notice that an inmate is in severe distress is enough to trigger § 845.6 liability. *See Est. of Abdollahi*, 405 F. Supp. 2d at 1216.

The 5AC alleges facts that Defendants Gallemore, Pena, and Garcia knew and had reason to know that Romero needed medical help, and alleges that they "could hear the loud, unusual noises coming from inside the cell that signaled a violent attack was occurring, and could hear the loud sounds of other inmates commenting on the violence within the Romero/Osuna cell." *See* Dkt. 134, Plaintiff's 5AC, p. 20, ll. 12-15. These loud, unusual noises, noises that signaled a violent attack were enough to put Gallemore, Pena, and Garcia on notice that someone inside the cell was being attacked and/or under severe distress and would need medical care.

### A.   CDCR Inmates Are Entitled to Timely Welfare Safety Checks

As described above, the 5AC properly states a claim under § 845.6 on the basis of the loud sounds of a violent attack coming from the Romero-Osuna cell. Plaintiff has also alleged that defendants should have been on notice but failed to view in the cell, despite an explicit requirement to conduct timely welfare safety checks.

4

  The Court's Order (Dkt. 130) offered a distinction between pre-trial detainees, who have a right to direct-view safety checks, and prisoners who have already been convicted of a crime: "These cases are distinguishable on this basis because pre-trial detainees have an established right to direct-view safety checks. *Hyde v. City of Willcox*, 23 F.4 th 863, 873 (9th Cir. 2022). The court is unaware of case law clearly establishing the same right for prisoners like Mr. Romero who have already been convicted of a crime." *See* Dkt. 130, Memorandum and Opinion, at 6.

  Plaintiff must clarify a few matters: The Order's language appears to be the "clearly established" standard of a qualified immunity analysis. For one, Plaintiff must note that this analysis is not the standard for analyzing the § 845.6 claim, which arises under California law, not 42 U.S.C. § 1983. For purposes of this Opposition, Plaintiff will refrain from a Qualified Immunity analysis under § 1983 and focus on California litigation.

  Second, CDCR inmates are entitled to direct-view welfare checks pursuant to orders from the ongoing class action, *Coleman v. Newsom* (E.D. Cal. Case No. 2:90-cv-520-KJM) concerning services provided to CDCR inmates. As part of that class action, the *Coleman* court appointed a Special Master to "monitor compliance" with injunctive relief. *Coleman v. Wilson*, 912 F.Supp.1282, 1324 E.D. Cal. 1995). As stated by the Ninth Circuit in *Rico v. Ducart*, 980 F.3d 1291 (9th Cir. 2020):

> In the late 2000's, the *Coleman* court issued a serios of orders requiring CDCR officials to implement certain measures…Since 2013, these measures included directive to correctional officers to conduct welfare checks on inmates in Security Housing Units every half hour. To ensure that prison officials conducted these welfare checks at the required frequency, the Guard One system was implemented in 2014…Every half hour, an officer must touch the end of a hand-held metal 'pipe' or 'wand' to a metal disc attached to each cell door as the officer peers inside to assess the inmate's welfare…This tracking data is reviewed daily to verify that correctional officers are completing the required welfare checks every half hour.

*Rico v. Ducart*, 980 F.3d 1292, 1295 (9th Cir. 2020)

In *Rico*, the Secretary of the CDCR defended the manner in which court-ordered welfare checks were conducted against an inmate's condition-of-confinement claim for sleep deprivation under the Eighth Amendment (which stemmed from the alleged excessive noise caused by the "pipe" checks.) *Id.* at 1297. Simply put, CDCR is subject to court order and requires its employees to conduct timely visual welfare checks.

Thus, the failure to comply with an obligation to perform safety checks can establish the "reason to know" constructive knowledge standard of § 845.6, since CDCR officers did know they had to conduct timely welfare checks. The 5AC describes how Defendant was put on notice, first, by unmistakable sounds of violence that he could hear, and second, by visual welfare checks that he had a duty to conduct but did not. The first type of failure (audible) establishes actual notice, and the second type of failure (visual) constitutes constructive notice under Section 845.6.

## IV. CONCLUSION

For the foregoing reasons, Defendants Gallemore, Pena, and Garcia's Rule 12(b)(6) motion should be denied, and he should be ordered to answer Plaintiff's 5AC.

Respectfully submitted,

Dated: March 26, 2025

LAW OFFICES OF ERIN DARLING

By: _____/s/ *Erin Darling*_____
      Erin Darling,
      Attorneys for Plaintiff Dora Solares

6