IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DORA SOLARES, § § § Plaintiff, § v. § RALPH DIAZ, *et al*., § § Defendant. § § § | § § CIVIL ACTION NO. 1:20-CV-00323-LHR-BAM |

**MEMORANDUM AND OPINION**

Jaime Osuna, an inmate at the California Department of Corrections and Rehabilitation with a history of violence, killed Luis Romero, another inmate, in a gruesome and cruel fashion during the single night they shared a prison cell. Romero's mother, Dora Solares, has sued a number of defendants, including four correctional officers on duty in that part of the prison the night of the murder. Among other claims, Solares alleges that Luis Silva, Leonel Pena, Bryan Gallemore, and Jesse Garcia are liable under California Government Code § 845.6. for failing to summon medical care to help Romero.

These officers moved to dismiss the claim for failure to summon medical care. (Docket Entry Nos. 100, 105, and 107). Solares had alleged that the officers could clearly see that a bedsheet had been hung in front of the cell that Osuna had previously occupied alone and that he was sharing with Romero that night. (Docket Entry No. 97 ¶¶ 20-21). Hanging the sheet violated prison rules and obscured the officers' ability to see into the cell. (*Id*.). Solares also alleged that the officers knew that Osuna posed a threat to other inmates. (*Id*.). But these allegations did not show that Silva, Pena, Gallemore, and Garcia knew, or should have known, of Romero's urgent need for medical care after he was attacked by Osuna. (Docket Entry No. 130 at 7). The court

found that the allegations of Osuna's violent nature and the presence of the bedsheet supported a failure to protect claim but were insufficient to state a claim for the failure to summon medical care under § 845.6.  (*Id.* at 7).  The court dismissed that claim but granted Solares leave to amend. (*Id.*).

Solares has re-pleaded the claim for failure to summon medical care.  (Docket Entry No. 134).  She now alleges that: (1) the officers directly observed the bedsheet draped in front of the cell Romero and Osuna shared, obscuring the officers' view into the cell, in violation of prison rules; (2) during the night, the officers could hear loud and unusual noises coming from inside the cell, consistent with a violent attack; (3) the officers could hear other inmates talking about the violence going on in Romero's and Osuna's cell;  and (4) Osuna had a known history of extreme violence. (*Id.* ¶ 58).   Solares alleges that given these facts, Silva, Pena, Gallemore, and Garcia knew, or should have known, that Romero needed medical care, and failed to reasonably summon the care he needed.  (*Id.*).

The officers have again moved to dismiss the claim.  (Docket Entry No. 138, 140).  Silva's motion to dismiss argues that the new allegations in the Fifth Amended Complaint — that Silva could hear loud sounds from the cell indicating that Romero was in urgent need of medical care — directly contradict Solares's allegations in the Fourth Amended Complaint. (Docket Entry No. 138 at 5).  In that complaint, Solares alleged that the officers "failed to be within earshot or eyeshot of Romero and Osuna's cell."  (Docket Entry No. 97 ¶ 67).  Silva argues that Solares is "bound" by her "prior judicial admissions" and cannot now allege that the officers did hear sounds of violence from Romero and Osuna's cell.  (Docket Entry No. 138 at 4-5). Pena, Gallemore, and Garcia argue in their joint motion to dismiss that "even with the new allegations regarding yelling and screaming coming from the cell, the [Fifth Amended Complaint] does not plead that

Defendants knew of any facts that would have led them to infer the existence of Decedent's immediate medical need, or regard that immediate medical need as so highly probable as to conduct themselves as if the need did exist." (Docket Entry No. 140-1 at 6). Silva's motion makes the same argument. (Docket Entry No. 138 at 5-6).

The allegations in the Fifth Amended Complaint that the officers could hear loud noises from Romero and Osuna's shared cell are inconsistent with the allegations in the Fourth Amended Complaint that the officers were not within earshot or eyeshot of Romero's and Osuna's cell. However, the court disagrees that Solares is barred by these "judicial admissions" from taking an inconsistent position in her latest amended pleading. Some Ninth Circuit panels have held that a party cannot amend pleadings to contradict allegations made in earlier pleadings, while others have taken the opposite view. The prevailing approach among district courts in the Eastern District of California has been to adopt the Ninth Circuit's holding in *PAE Government Servs. v. MPRI, Inc.*, 514 F.3d 856 (9th Cir. 2017). *See Est. of Mann v. Cnty. of Stanislaus*, No. 1:21-CV-01098-DC-JDP, 2025 WL 973998, at *4 (E.D. Cal. Apr. 1, 2025); *Kanaan v. Yaqub*, No. 21-CV-09591-BLF, 2022 WL 3357834, at *4 (N.D. Cal. Aug. 15, 2022); *Morrelli v. Corizon Health, Inc.*, No. 1:18-CV-1395-LJO-SAB, 2019 WL 918210, at *7 (E.D. Cal. Feb. 25, 2019). In *PAE*, the Ninth Circuit held that without a finding of bad faith, "there is nothing in the Federal Rules of Civil Procedure to prevent a party from filing successive pleadings that make inconsistent or even contradictory allegations." *PAE*, 514 F.3d at 860. Other panels of the Ninth Circuit have affirmed this approach. *See Allen v. City of Arcata*, 691 F. App'x 461, 463 (9th Cir. 2017); *Steward v. Pfeiffer*, No. 20-15804, 2020 WL 13662497, at *1 (9th Cir. Sept. 17, 2020). The court declines to strike, or otherwise disregard, Solares's allegations in the Fifth Amended Complaint supporting her failure to summon medical care claim.

3

The court next turns to the argument that the allegations still do not state a claim for failure to summon medical care. As the court discussed in its prior opinion, "[i]n order to state a claim under § 845.6, a prisoner must establish three elements: (1) the public employee knew or had reason to know of the need (2) for immediate medical care, and (3) failed to reasonably summon such care." *Jett v. Penner*, 439 F.3d 1099 (9th Cir. 2006). If these elements are not met, a public official is immune from liability under § 845.6. *See Horton v. City of Santa Maria*, 915 F.3d 592, 606 (9th Cir. 2019) (applying California law). "[I]t is enough to allege facts from which it can be inferred that a defendant 'reasonably should know' of the prisoner's need for immediate medical care." *Schmitz v. Asman*, 2021 WL 3362811, at *15 (E.D. Cal. Aug. 3, 2021) (citing *Horton*, 915 F.3d at 605). "Courts typically rely on affirmative statements and direct observations of the person in need, not silence or unseen behavior." *Id.*

Solares's Fifth Amended complaint allegations are sufficient to state a claim for a failure to summon medical care. Solares alleges that the prison officers put Romero into Osuna's cell despite their knowledge that Osuna posed a threat of harm to other inmates. (Docket Entry No. 134 ¶ 21). Osuna's history included "torture-killing" a woman, stabbing another inmate, and assaulting a prison guard. (*Id.* ¶¶ 16-17). Solares also alleges that the officers heard "loud sounds" coming from the cell, consistent with a violent attack, and heard other inmates talking about those sounds and speculating about what was happening behind the sheet hung over the front of the cell. (*Id.* ¶ 58). These sounds of violence, combined with the bedsheet draped over the front of the cell that obscured the guards' view of the cell, in violation of prison policies, should have been an immediate red flag to the officers that Romero was being attacked and would need immediate medical care.

In the court's prior memorandum and opinion on this claim, the court found that Solares's allegations had "fall[en] just short of pleading" that the officers knew, or should have known, that Romero urgently needed life-saving medical care. (Docket Entry No. 130 at 7). Solares's amended claim, asserting that the officer defendants could hear sounds of a violent attack in the cell Romero and Osuna shared, corrects those deficiencies.

The motions to dismiss, (Docket Entry Nos. 138, 140), are denied.

SIGNED on May 5, 2025, at Houston, Texas.

_____
Lee H. Rosenthal
Senior United States District Judge