Justin E. Sterling, State Bar No. 249491
LAW OFFICES OF JUSTIN STERLING
Justin@SterlingDefense.com
15760 Ventura Blvd. Suite 700
Encino, CA 91436
Tel. (818) 995-9452/Fax. (818) 824-3533

Erin Darling, State Bar No. 259724
LAW OFFICES OF ERIN DARLING
Erin@ErinDarlingLaw.com
3435 Wilshire Blvd. Suite 2910
Los Angeles, CA 90010
Tel. (323) 736-2230

Attorneys for Plaintiff Dora Solares

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DORA SOLARES, an individual,<br><br>Plaintiff,<br>v.<br><br>RALPH DIAZ, in his individual capacity, KENNETH CLARK, in his individual capacity, JOSEPH BURNS, in his individual, and DOES 1 TO 15, in their individual capacities<br><br>Defendants. | Case No. 1:20-cv-00323-LHR-BAM<br><br>**PLAINTIFF'S OPPOSITION TO CDCR'S MOTION TO QUASH SUBPOENA TO OIG**<br><br>**Judge:**   Hon. Lee H. Rosenthal |

Plaintiff Dora Solares hereby files her response to the California Department of Corrections and Rehabilitation (CDCR) Motion to Quash (Dkt. No. 180) the subpoena that was served on OIG on May 5, 2025.

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. BACKGROUND

On March 13, 2025, Plaintiff served a subpoena on the Office of Inspector General (OIG), which sought written reports and written findings by the OIG pertaining to OIG Case Number 19-0028973-DM. On March 25, 2025, OIG Chief Counsel James Spurling requested an extension of time to respond to the federal subpoena, and Plaintiff's counsel Erin Darling agreed to extend the time to April 14, 2025. On that day, OIG served objections and only one document.

On April 29, 2025, Mr. Darling and Mr. Spurling appeared in front of the Court to address Plaintiff's subpoena to OIG. Following that appearance, Mr. Darling conferred with Mr. Spurling to address his concerns, and on May 5, 2025, Plaintiff served a second subpoena, which included seven requests for documents pertaining to OIG Case Number 19-0028973-DM. *See* Exhibit A, May 5, 2025, "OIG Subpoena." Instead of complying, OIG, but not CDCR sought Court intervention, and on May 21, 2025, the OIG submitted a letter brief that invoked privileges on CDCR's behalf. On May 28, 2025, the parties and the OIG appeared before the Court. OIG and CDCR were ordered to file privilege logs by June 6, 2025. (Dkt. No. 162) As the responsive documents were obtained by the OIG from the CDCR it is CDCR who prepared a privilege log on June 6, 2025, that claimed the attorney-client privilege and attorney work product privilege. (Dkt. No. 167-1) CDCR now moves to quash.

## II. ARGUMENT

**A.     CDCR's Motion to Quash is Late**

Federal Rule of Civil Procedure 45 governs subpoenas duces tecum. Once a nonparty is served with a subpoena, the obligation to respond cannot be delegated to an attorney, especially where the subpoenaed party has control over the documents requested in the subpoena. *Corrales v. Castillo*, 2008 U.S. Dist. LEXIS 108094, 2008 WL 4186233, 1 (D. Nev. 2008). The non-party can object to the subpoena (Fed. R. Civ. P. 45(c)(2)(B)(i), and an objection must be served within fourteen days after service of

1

1 service of the subpoena, or before the time designated in the subpoena, if sooner.
2 *Forsyth v. Brown*, 281 F.R.D. 577, 587 (D. Nev. 2010). "A nonparty's failure to serve
3 timely objections to a Rule 45 subpoena duces tecum generally requires the court to
4 find that any objections have been waived." *Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 636
5 (C.D. Cal. 2006) (citing *In re DG Acquisition Corp.*, 151 F.3d 75, 81 (2d Cir. 1998)). Only
6 unusual circumstances and for good cause will failure to act timely not bar consideration
7 of objections to a Rule 45 Subpoena. *McCoy v. Southwest Airlines Co., Inc.*, 211 F.R.D. 381,
8 385 (C.D. Cal. 2002). Additionally, the party who moves to quash a subpoena has the
9 "burden of persuasion" under Rule 45(c)(3). *Travelers Indem. Co., v. Metropolitan Life Insur.*
10 *Co.*, 229 F.R.D., 111, 113 (D. Conn. 2005).

11     CDCR did not object to the subpoena within 14 days. Rather, it filed its privilege
12 log over a month after service of subpoena. Not only were objections not timely but
13 CDCR's Motion to Quash was not filed until June 27, 2025, almost two months of
14 service of the subpoena. CDCR may argue that it was not itself served with the
15 subpoena, but that does not grant CDCR additional time. The timing problem raises a
16 more substantive problem for CDCR: how can it object to a subpoena to the OIG
17 when there is no attorney-client relationship between OIG and the CDCR.

18 **B.    CDCR Cannot Preclude OIG's Production**

19     Plaintiff served a subpoena on OIG, and OIG does not deny being in possession
20 of responsive documents. However, OIG pointed the finger at CDCR and argued that
21 Plaintiff should seek CDCR records, "directly from the owners and creators of that
22 record." *See* Exhibit B, James Spurling letter to Court, May 21, 2025. That objection
23 missed the mark because Plaintiff's subpoena explicitly sought documents that OIG
24 either prepared, or that **OIG relied upon to make the written findings in OIG Case**
25 **Number 19-0028973-DM**. *See* Exhibit A, OIG Subpoena, May 5, 2025. Only OIG can
26 identify and provide documents it relied on to make a finding in an OIG case. Mr.
27 Spurling's May 21, 2025, letter argued that creating a detailed privilege log for 1,544
28 pages of records was unreasonable. *See* Ex. B at 2.

However, even if CDCR is best suited to sift through the documents and identify privilege, that process does not give CDCR standing to assert independent objections to a subpoena on OIG. Simply put, the job of identifying documents and privileges does not grant CDCR power to insert its own privileges that cannot apply to the OIG. Specifically, any document created by an attorney for CDCR does not create an attorney-client privilege with OIG, the subpoenaed party. OIG cannot itself assert attorney-client privilege over documents it received from CDCR in making OIG's own determination.

Plaintiff seeks to storm the castle of OIG to obtain documents that the OIG relied upon for OIG's legal conclusions. Plaintiff should not be forced then to scale an additional wall of CDCR's privilege that cannot apply to OIG. Although CDCR spills much ink on California statutory protections it supposedly enjoys it never explains how it has standing to assert privilege that cannot apply to an independent state agency.

### D.  "Attorney Work Product" Should Not Preclude Production

The attorney work product privilege is not absolute and, like other qualified privileges, may be waived. *United States v. Nobles*, 422 U.S. 225 (1975). When a party withholds information otherwise discoverable by claiming that the information is protected by the work product doctrine, that party has the burden of establishing the document's eligibility for protection. *Carlin v. DairyAmerica, Inc.*, No. 1:09-cv-430-AWI, 2017 U.S. Dist. LEXIS 144231 at *9 (E.D. Cal. 2017) (citing Fed. R. Civ. P. 26(b)(5)(A)). Fact work opinion product enjoys only qualified immunity and can be discovered if the party seeking discovery demonstrates a "substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." *Id.* (citing Fed. R. Civ. P. 26(b)(3)(A)(ii)); *see Upjohn Co. v. United States*, 449 U.S. 383, 396 (1981) ("[T]he protection of the privilege extends only to communications and not to facts."). Fact work product includes material prepared in anticipation of litigation, but does not include an attorney's impressions, conclusions, opinion, or legal theories. Fed. R. Civ. P. 26(b)(3). In this case, Plaintiff cannot obtain documents that the OIG

3

1 relied upon in making its written findings without requesting them from the OIG itself.
2 The facts upon which OIG made its findings are especially key because OIG found
3 that CDRC's conduct was "POOR" in regards to certain individual defendants.
4 Plaintiff is pursuing claims against these same individual defendants, regarding the same
5 underlying conduct prior to the killing of Romero. These facts are therefore highly
6 relevant, and the need is compelling. Plaintiff cannot provide more of a description of
7 relevance because she does not know what the withheld documents include. What is
8 significant is the daylight between the OIG and CDCR in the administrative discipline
9 that individual CDCR employee defendants received. At minimum this suggests factual
10 evidence of wrongdoing by these individual defendants.

11 The Court should be skeptical of the broad sweep CDCR proposes for two
12 additional reasons. First, as the legal conclusions that the attorney work product would
13 contemplate have, in fact, been expressly published by the OIG. The factual, detailed
14 bases of these legal conclusions should not be considered privilege when the legal
15 conclusions have already been made public. Second, some of these documents do not
16 appear to be prepared by any attorney (M. Miller, Office of Internal Affairs (Nos. 12,
17 16), Warden K. Clark (No. 15), S. Sherman, the warden of the Substance Abuse
18 Treatment Facility (No. 17), and the unnamed "Acting Chief Deputy Warden, Corcoran
19 State Prison" (Nos. 20-24)). CDCR goes to great lengths to extend the umbrella of
20 attorney-client privilege and work product to documents that were perhaps created to
21 insulate CDCR from litigation (such as this very case) but were not prepared in the
22 course of litigation

23 Also significant is that CDCR never identified these documents before. In
24 CDCR's defense that is defensible: Plaintiff's subpoena to OIG seeks documents that
25 OIG relied on, not CDCR. On the other hand, Plaintiff sought documents pertaining
26 to individual defendants and the Internal Affairs investigation, CDCR produced some
27 Internal Affairs documents about the administrative discipline that individual
28 employees faced but withheld documents without identifying them in a privilege log.

4

Plaintiff was only apprised of these new documents in CDCR's response to a subpoena to OIG. Plaintiff requests that this discrepancy be explained during the *in camera* review.

### III.  CONCLUSION

For the following reasons the OIG should produce documents responsive to Plaintiff's Subpoena.

Respectfully submitted,

Dated: July 1, 2025         LAW OFFICES OF ERIN DARLING

By: _____*/s/ Erin Darling*_____
Erin Darling,
Attorney for Plaintiff

5

# Exhibit A

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
for the
Eastern District of California

Dora Solares )
*Plaintiff* )
v. ) Civil Action No. 1:20-CV-00323-LHR
Ralph Diaz, et al. )
)
*Defendant* )

**SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION**

To: Amarik K. Singh, Office of the Inspector General (10111 Old Placerville Road, Suite 110; Sacramento, CA 95827)

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: see Attached

| Place: mail to 3435 Wilshire Blvd., Ste. 2910, LA, CA 90010 email to: Erin@ErinDarlingLaw.com; Justin@SterlingDefense.com | Date and Time: May 31, 2025 by 1:00 p.m. |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 5/5/2025

*CLERK OF COURT*

OR

_____     _____
*Signature of Clerk or Deputy Clerk*              *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* Plaintiff Dora Solares , who issues or requests this subpoena, are:
Erin Darling, 34353 Wilshire Blvd., Ste. 2910, Los Angeles, CA 90010; (323) 736-2230; Erin@ErinDarlingLaw.com

**Notice to the person who issues or requests this subpoena**
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

*Dora Solares v. Joseph Burnes, et al.*
Case No. 1:21-cv-01349-LHR-BAM
United States District Court – Eastern District of California
Subpoena for Production of Records
Office of the Inspector General (OIG)

## ATTACHMENT TO SUBPOENA

### **Records to be Produced**

1. Any and all written documents prepared by the OIG that detail why and/or how the OIG came to the written finding in OIG Case Number 19-0028973-DM that the "Office of Internal Affairs' performance in investigating allegations of employee misconduct was poor because the special agent did not interview several key witnesses suggested by the department attorney and the OIG, and did not investigate the appropriateness of the incarcerated persons' housing assignments."

2. Any and all documents that the OIG relied upon to make the written finding in OIG Case Number 19-0028973-DM that the "Office of Internal Affairs' performance in investigating allegations of employee misconduct was poor because the special agent did not interview several key witnesses suggested by the department attorney and the OIG, and did not investigate the appropriateness of the incarcerated persons' housing assignments."

3. Any and all written documents prepared by the OIG that detail why and/or how the OIG came to the written finding in OIG Case Number 19-0028973-DM that the "performance in determining its findings for alleged misconduct was poor because the department delayed conducting the investigative and disciplinary findings conference, and delayed serving the disciplinary actions until 66 and 76 days after the decision and 36 and 46 days after policy requires, and entered into settlement agreements reducing the penalties without identifying any new evidence, flaws, or risks justifying the reductions."

4. Any and all documents that the OIG relied upon to make the written finding in OIG Case Number 19-0028973-DM that the "performance in determining its findings for alleged misconduct was poor because the department delayed conducting the investigative and disciplinary findings conference, and delayed serving the disciplinary actions until 66 and 76 days days after the decision and 36 and 46 days after policy requires, and entered into settlement agreements

    reducing the penalties without identifying any new evidence, flaws, or risks justifying the reductions."

5. Any and all written documents prepared by the OIG that detail why and/or how the OIG came to the written finding in OIG Case Number 19-0028973-DM that the CDCR's "attorney's performance in providing legal advice to the Office of Internal Affairs and the hiring authority was poor because the department attorney should have requested additional investigation regarding the appropriateness of the housing assignments and should have recommended that the hiring authority dismiss the first officer based on the severity of the misconduct."

6. Any and all documents that the OIG relied upon to make the written finding in OIG Case Number 19-0028973-DM that the "CDCR's "attorney's performance in providing legal advice to the Office of Internal Affairs and the hiring authority was poor because the department attorney should have requested additional investigation regarding the appropriateness of the housing assignments and should have recommended that the hiring authority dismiss the first officer based on the severity of the misconduct."

7. Any and all written documents prepared by the OIG that detail why and/or how the OIG came to the written finding in OIG Case Number 19-0028973-DM that the OIF did not concur with CDCR entering "into settlement agreements pursuant to which the hiring authority reduced the first officer's dismissal to a nine-month suspension and reduced the second officer's salary reduction to 5 percent for 24 months."

For all requests, reference is made to OIG Case Summary OIG Case Number 19-0028973-DM, which OIG has already provided to Plaintiff.

Civil Action No. 1:20-CV-00323-LHR

## PROOF OF SERVICE

*(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❏ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

❏ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

  **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
   **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
   **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
     **(i)** is a party or a party's officer; or
     **(ii)** is commanded to attend a trial and would not incur substantial expense.

  **(2)** *For Other Discovery.* A subpoena may command:
   **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
   **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

  **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

  **(2)** *Command to Produce Materials or Permit Inspection.*
   **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
   **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
     **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
     **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

  **(3)** *Quashing or Modifying a Subpoena.*
   **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
     **(i)** fails to allow a reasonable time to comply;
     **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
     **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
     **(iv)** subjects a person to undue burden.
   **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
     **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
     **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
   **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
     **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
     **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

  **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
   **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
   **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
   **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
   **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

  **(2)** *Claiming Privilege or Protection.*
   **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
     **(i)** expressly make the claim; and
     **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
   **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

---

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

# Exhibit B

**STATE of CALIFORNIA**
**OIG | OFFICE of the INSPECTOR GENERAL**
Independent Prison Oversight

Amarik K. Singh, *Inspector General*
Shaun Spillane, *Chief Deputy Inspector General*

*Regional Offices*
Sacramento
Bakersfield
Rancho Cucamonga

May 21, 2025

VIA EMAIL

The Honorable Lee H. Rosenthal
United States District Court Judge (Senior)
United States District Court for the Southern District of Texas

Re: Solares v. Diaz, et al. USDC Case No.1:20-cv-00323-LHR

Dear Judge Rosenthal:

Following our April 29, 2025, status conference regarding the subpoena Plaintiff initially issued to the OIG, Erin Darling and I met on May 1, 2025, to discuss revising it to clarify the precise records he seeks from the OIG. Plaintiff subsequently issued a revised subpoena on May 5, 2025, a copy of which is attached to this letter. In the OIG's view, the revised subpoena is far too broad and unduly burdensome insofar as it seeks CDCR records that came into the OIG's possession as part of our oversight and discipline monitoring functions.

The records responsive to the seven separate requests for records fall into two distinct categories. First, in response to Request Nos. 2, 4, and 6, there is an approximate total of 1,544 pages of records spread across 83 electronic files. These records are the documents the OIG received directly from CDCR in the course of our monitoring in OIG Case No. 19-0028973-DM. Each of these records were generated by CDCR staff during the course of their investigation and provided to the OIG for purpose of providing contemporary oversight of CDCR's internal affairs process. The second set of records, responsive to Request Nos. 1, 3, 5, and 7, by comparison is 56 pages spread across four electronic files. These records contain the notes, observations, assessments, and analyses of the OIG attorneys who monitored OIG Case No. 0028973-DM. The writings in these records, however, are based on and include information derived from the privileged records the OIG received from CDCR to perform its monitoring work and are themselves statutorily protected from disclosure.

The OIG does not have the authority to disclose CDCR's records to the public or any third party, nor did CDCR waive any of its rights or privileges with respect to those documents by virtue of having provided them to the OIG as they were statutorily required to do. The privileged and confidential records provided by CDCR remain privileged and confidential.

In our view, the CDCR records Plaintiff seeks from the OIG should be sought directly from the owners and creators of those records, namely, the defendants and CDCR. They should be given

Gavin Newsom, *Governor*



10111 Old Placerville Road, Suite 110
Sacramento, California 95827
Telephone: (916) 288-4212
www.oig.ca.gov

The Honorable Lee H. Rosenthal
May 21, 2025
Page 2

the opportunity to assert their privileges. Moreover, the burden imposed on the OIG of creating a detailed privilege log for 1,544 pages of records that belong to CDCR is unreasonable, overly burdensome, and contrary to Rule 26 principles. Record review and redaction is more appropriately placed on the party who holds the privileges, especially in this case, where the burden will pose a significant and undue hardship on the OIG's Legal Unit, which consists of one part-time, retired annuitant acting as Chief Counsel (me), one staff attorney, and one legal analyst.

The OIG recognizes Plaintiff's right to propound discovery, even to a non-party like us. However, discovery should be limited to nonprivileged matters, should be proportionate to the needs of the case, and should not be permitted when it is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive. Plaintiff has ample opportunity to obtain the CDCR records in the normal course of discovery in the action. Accordingly, we submit Plaintiff's subpoena should be limited to OIG documents.

Thank you for considering our concerns.

Respectfully submitted,

JAMES C. SPURLING
Chief Counsel (A)
CA Office of the Inspector General

Attachment