```
 1

 2                  IN THE UNITED STATES DISTRICT COURT

 3              FOR THE EASTERN DISTRICT OF CALIFORNIA

 4

 5   DORA SOLARES,                  )
                                    )
 6             Plaintiff,           )   Civil Case No.
                                    )   1:20-cv-00323-LHR-BAM
 7   vs.                            )
                                    )
 8   RALPH DIAZ, et al,             )   Tuesday, June 24, 2025
                                    )
 9             Defendants.          )
     _____

10

11

12              TRANSCRIPT OF MOTION HEARING VIA ZOOM
               HONORABLE LEE H. ROSENTHAL PRESIDING
13                  UNITED STATES DISTRICT COURT

14

15

16

17

18

19

20

21

22

23   Official Court Reporter:      Donna Prather
                                   515 Rusk St., #8004
24                                 Houston, TX  77002

25   Proceedings taken by Certified Stenographic Reporter;
     transcribed using Computer-Assisted Translation
```

```
 1                         A P P E A R A N C E S

 2   For the Plaintiff:        Erin R. Darling
                               Law Offices of Erin Darling
 3                             3435 Wilshire Blvd., Ste 2910
                               Los Angeles, CA 90010
 4
     For Defendant California Department of Corrections and
 5   Rehabilitation:
                               Jeremy Duggan
 6                             Office of Attorney General
                               1300 I Street, Ste 125
 7                             Sacramento, CA 95814

 8                             David E. Kuchinsky
                               California Department of Justice
 9                             1300 I Street, Ste 125
                               Sacramento, CA  95814
10
     For Defendant Silva:      Lynne G. Stocker
11                             Andrada & Associates
                               1939 Harrison St., Ste 612
12                             Oakland, CA  94612

13   Also Present:             James Spurling
                               Office of the Inspector General
14                             10111 Old Placerville Road, Ste 110
                               Sacramento, CA  95827
15

16

17

18

19

20

21

22

23

24

25
```

```
 1         (Proceedings commenced via Zoom at 12:58 PM.)
 2              THE COURT:  All right.  Are we still missing
 3    somebody?
 4              MR. DARLING:  I believe everyone is present.
 5              THE COURT:  All right.  Go ahead and state your
 6    appearances, please.
 7              MR. DARLING:  Good morning.  Erin Darling on behalf
 8    of Plaintiff.
 9              MR. SPURLING:  Excuse me, Your Honor.  Was Lynne
10    Stocker planning on appearing this morning?
11              MS. STOCKER:  I am here.
12              MR. SPURLING:  Oh, there you are.  Sorry.
13              MS. STOCKER:  Thank you, Mr. Spurling.
14              MR. SPURLING:  I didn't see your name and face up in
15    the bar.
16              MS. STOCKER:  Good morning, Your Honor.  Lynne
17    Stocker for Defendant Silva.
18              THE COURT:  Good morning.
19              So I've received a big stack of papers to review in
20    camera.  I've reviewed them.  And I need to have your input on
21    the precise issue I need to resolve.  Clearly, the documents
22    I've reviewed do contain information about Mr. Osuna's
23    communications with mental health providers and information
24    about his mental health.  But it is clearly relevant to the
25    issues in this case, cannot be obtained elsewhere, and appears
```

1    to have been used both by Mr. Osuna in his efforts to -- in

2    the criminal proceedings against him and by the California

3    Department of Corrections in prior litigation relating to

4    Mr. Osuna's mental status.

5         So I fail to see, A, how it's not waived and, B, why

6    the overwhelming need for it in this litigation doesn't factor

7    into the privilege analysis and under federal law clearly

8    provide a basis to overcome the privilege issues.

9         MR. KUCHINSKY:  Your Honor, David Kuchinsky

10   appearing on behalf of CDCR's response to the subpoena.  I

11   received plaintiff's counsel's response to the declaration and

12   to the privilege log and to the issue.  I don't think it's

13   necessary or even accurate to say that the competency

14   proceedings waive this privilege.  There is a statutory scheme

15   in place for how these competency proceedings go forward and

16   how they proceed.  One of those keystones is under 1369.5:

17   Any document that's submitted to a court psychologist or

18   court-appointed psychiatrist during a competency proceeding is

19   presumptively confidential.

20        THE COURT:  Okay.  I think that presumption has been

21   overcome in this case.

22        MR. KUCHINSKY:  And I think I can -- well, let me

23   address a couple of other issues with that.

24        THE COURT:  All right.

25        MR. KUCHINSKY:  I think Mr. Darling's representation

```
 1   that Mr. Osuna, himself, has suggested that he was incompetent
 2   or had put that at issue is, first of all, I don't see a basis
 3   for that.  I don't think it tracks with the procedure for
 4   these competency evaluations in California criminal court.
 5   Osuna's counsel may have suggested that they have reason to
 6   believe that there was a doubt as to his competency.  The
 7   procedure would then be --
 8           THE COURT:  Osuna's counsel speak on behalf of
 9   Mr. Osuna.
10           MR. KUCHINSKY:  But I don't think that's necessarily
11   the case in a competency proceedings because the case law,
12   People v. Burns, and I can provide a cite, talks about
13   instances where counsel believes that the defendant is
14   incompetent and the defendant does not want to proceed with
15   these competency proceedings.  And it talks about defense
16   counsel's ultimate responsibility being to ensure that their
17   client, the criminal defendant, receives due process, which
18   they can't do if they're incompetent.  And so I'm not saying
19   that that definitively rules out --
20           THE COURT:  I'm not sure that --
21           Okay.  Go ahead.  Keep going.
22           MR. KUCHINSKY:  Sorry.  What I am trying to say, I
23   think, is that the fact that his criminal counsel in the
24   criminal proceedings indicated to the judge that he had reason
25   to believe that there was competency issues and the judge
```

1    declared it out and instituted these proceedings, which have a

2    statutory scheme in place to protect this information.  It's

3    in the Penal Code, 1369.  1369.5 talks about this

4    confidentiality.  I think it would be a very different thing

5    than Osuna getting up in the middle of court and yelling, I'm

6    not competent, which isn't really how this happened.  An

7    attorney may, and the Court may also on their own motion, find

8    that there's reason to believe that a defendant in a criminal

9    case is not competent to stand trial.

10            So, I mean, I think at the very least we need to

11    determine -- or there needs to be some factual basis that

12    Osuna put that at issue.

13            The other issue is if a lawyer communicates -- and,

14    again, these proceedings are confidential, but if a lawyer

15    communicates or provides these documents or even if the agency

16    provides the documents for these proceedings under Evidence

17    Code Section 912, and I can pull that up, it does not waive

18    the privilege because of that proceeding.  So there are --

19            THE COURT:  Okay.  This is a federal case.  What is

20    the law of evidence that applies here?

21            MR. KUCHINSKY:  Well, federal law draws from

22    California law when there's not a setup in place.  What we

23    have is a recognition by the United States Supreme Court that

24    this privilege exists.  It's codified in California law under

25    Evidence Code Section 1014.  And then the Penal Code section

1    provides a statutory scheme for the way that these issues are

2    evaluated, the purpose of which is to benefit the criminal

3    defendant to ensure that they have due process when various --

4    any charges, misdemeanor or felony, but certainly in an

5    instance where there are potential capital charges at issue.

6            So, I mean, I think that we need to look at whether

7    that -- first of all, whether Osuna put that issue or his

8    lawyer put it at issue, which I think is generally how they

9    go.  But there is also Evidence Code Section 912 which talks

10   about a waiver by one person does not indicate a waiver by the

11   patient himself.  And so I think we really -- I think this is

12   why additional briefing may be beneficial -- or may have been

13   beneficial.

14           But at this point what the law says is proceedings

15   that are initiated in this context and documents that are

16   submitted are confidential, they're presumptively

17   confidential, unless waived.  And there isn't any evidence

18   that Osuna intended to waive or waived the right to privacy

19   that he had.

20           THE COURT:  It's a little bit ironic to see the

21   State working so hard to keep these really important,

22   important in a relevant sense, documents from being made a

23   part of the record in this federal case that does not have as

24   an issue or goal the protection of Mr. Osuna's privacy.

25           I mean, there are steps that the Court has ordered

1   be put into place, including confidentiality requirements on

2   all parties with respect to these records, including a

3   requirement that their use be limited to this case, that they

4   be maintained under seal.  All of those steps, I think,

5   address the privacy interest that you have identified while at

6   the same time recognizing the importance to the substantive

7   issues in this case of the evidence at issue, which is what

8   Mr. Osuna said before he was housed with the victim in the

9   facility that would have been available to those making the

10  classification and housing decisions on the night in question.

11              MR. KUCHINSKY:  But, Your Honor, and I hate to

12  interrupt, I don't think that that assumption is correct that

13  that classification staff in non-mental health positions are

14  reviewing these records.

15              THE COURT:  That's the question.  That's exactly the

16  question.  Who had access to these records that contained

17  Mr. Osuna's own statements about his -- about whether he had

18  impulses to violent activity, homicidal ideations, or similar

19  disorders prior to the night when he was given a roommate?

20  That's exactly the issue.

21              MR. KUCHINSKY:  And --

22              MR. DARLING:  Your Honor, if I could be heard on

23  that issue.  That is the issue that actually came up in the

24  deposition of Maytubby, Kyle.  Because I wasn't allowed to ask

25  questions because of this invoked privilege.  So it really is

```
 1    a perfect circle for Defendants, because you can't make any

 2    headway on that issue.

 3            But the Court, I think, hit it on the head when it

 4    talks about the privacy measures in place.  I just want to

 5    point out that the CDCR relied on court privacy protections in

 6    the Kings County case where they then produced records to

 7    these two experts in the waiver, because it's double waiver.

 8    It's Osuna waiving and the CDCR waiving.  And so it is ironic

 9    that CDCR did turn over records and did rely on privacy

10    protections in state court, where here in federal court when

11    it's more at issue and the protections are even stronger that

12    they're changing their tack.

13            MR. KUCHINSKY:  I just -- I have to respond to that,

14    Your Honor, because that's incorrect.  There is a Penal Code

15    statute, a Penal Code section that is directly on point that

16    that says that disclosure of these documents in a competency

17    proceeding is confidential.  I don't understand how that can

18    be then inferred as to CDCR following that statute and

19    following a court order to produce these records has somehow

20    waived Osuna's right to claim privilege over these documents.

21    That's not what the law says.

22            THE COURT:  He hasn't claimed a privilege.  He is --

23            MR. KUCHINSKY:  He hasn't been notified of this

24    proceeding or asked.

25            THE COURT:  Well, fine.  We can notify him, but the
```

1    point is that on the record now I don't think he has a -- he

2    has an interest that is not protected sufficiently by what the

3    Court has put in place to warrant keeping them confidential

4    given their high relevance and sense of importance.

5            MR. KUCHINSKY:  With all respect, Your Honor --

6            THE COURT:  I understand your position.

7    Mr. Kuchinsky, I understand your position.  I understand that

8    whether it is on behalf of a concern for Mr. Osuna's privacy

9    or whether it is a desire to keep from the record evidence

10   that does not on its face appear to be useful to the

11   department or favorable to the department doesn't really

12   matter.  The fact is, yes, you're right; there is a statutory

13   protection scheme.  Its goals were met when Mr. Osuna was

14   allowed to put his mental state at issue for the purpose of

15   the state proceedings, and the department was allowed to take

16   a position on the -- on the ability to produce records, its

17   records, relating to his mental state and the information

18   about his mental state in that proceeding.

19           Though, I think that we're -- to the extent you're

20   asking for a California statute to be read as a blanket and

21   permanent unrefutable basis for keeping these records -- this

22   information unavailable to the plaintiff and unavailable to

23   the Court and the finder of fact, I think that's a step too

24   far.

25           So there is a relevance analysis.  They're,

 1   obviously, highly relevant.  There is a privacy interest and a

 2   confidentiality interest met by the measures that this Court

 3   has put in place to ensure strong limits on the use and

 4   ability to disseminate any of this information.  So I think

 5   that both of the goals that you identified have been met.  But

 6   Mr. Darling has not yet had an opportunity to respond, and I'm

 7   going to give him that, and then you can reply to his

 8   response.

 9          MR. DARLING:  Unless the Court has a question, I

10   think the Court just articulated Plaintiff's position.  And I

11   think -- I just ultimately want to add this has been

12   well-litigated, and the Court has already issued multiple

13   orders to allow it.  And so they've had multiple bites at the

14   apple.  I get, as a lawyer, you always want to get the last

15   word in.  You're riled up; so I want Mr. Kuchinsky to have the

16   proverbial last word.  But I think we've gone down this road.

17   It's very clear.  I just want another order, and I want them

18   to produce it.  And I want to get the show on the road and go

19   back to deposing Kyle Maytubby.  And, yeah, it's just because

20   they don't like the content doesn't mean they just keep

21   reiterating these arguments.

22          THE COURT:  All right.  Ms. Stocker, did you have

23   anything you wanted to add or Mr. Duggan or Mr. Spurling?

24          MR. DUGGAN:  No, Your Honor.

25          MS. STOCKER:  No, Your Honor.

1          MR. KUCHINSKY:  May I respond, Your Honor, just

2    briefly?

3          THE COURT:  Yes, sir, of course.

4          MR. KUCHINSKY:  I'd like to first state, I am not

5    trying to hide anything.  I am not trying to play games with

6    evidence.  I'm not trying to do any of that.  I, quite

7    frankly, don't appreciate the suggestion.  I'm not riled up.

8    What I am doing is being a lawyer for my client.

9          THE COURT:  No, I understand that.

10         MR. KUCHINSKY:  I just would like to respond because

11   I've been told multiple times I'm trying to hide something.

12   I'm not trying to hide anything.  What I am trying to do is

13   read the law, as I understand it, which is a supreme court

14   case that says these communications are privileged, take into

15   account the fact that Mr. Osuna is not able to appear by

16   himself.  He's locked up.  He can't assert these arguments

17   himself.  I'm not saying we're asserting them on his behalf.

18   But taking into account the fact that the very obvious step

19   hasn't happened.  No one has asked Osuna whether or not it's

20   okay if these records are disclosed.  But without that

21   information, all I'm trying to do is make an argument so that

22   these proceedings follow the law as I interpret it and

23   understand it.

24         I just don't understand any sort of basis to say I'm

25   hiding anything.  I've identified records that were responsive

1   to a subpoena.  I've identified legal authority that, in my

2   opinion from my analysis as a lawyer acting in good faith,

3   think that these records are privileged.  And the case law I

4   look up, the penal code section I look up, all of them are

5   contradictory to what Mr. Darling is saying.

6           The last thing I want to note is that we know -- all

7   of us in this courtroom right now know that this case is going

8   to a trial.  It's going to be a public trial.  I don't see any

9   situation in which the Court's limitation right now in

10  discovery will extend into that trial.  These will become

11  public record in a trial.  Mr. Osuna has not had a chance to

12  be heard on this issue.  I don't even believe he's been given

13  notice.  And so, yes, the Court has put protections in place

14  for right now.  But, this is going to be a public trial.  The

15  Court has mentioned multiple times how tough of a trial this

16  is going to be both on us and on the jurors, and the public is

17  going to know about it.  So we need to understand that these

18  are going to become public if the Court orders disclosure.

19  And the Court is doing that without Osuna having any

20  opportunity to even make a statement.

21          So with that, I'll submit.  I understand the Court's

22  rulings.

23          THE COURT:  All right.  So the Court's rulings, I

24  think, were clear.  The only thing I would note is that for

25  someone whose privacy rights the State is raising a concern

1   about, Mr. Osuna has been the subject of a whole lot of very

2   public media attention focusing on the aspects of his mental

3   health that -- and the jury is going to hear the same stuff

4   when this case gets tried.  This is not its first time in the

5   public arena.  Far from it.  I think it's been the subject of

6   various well-distributed media coverage.

7            So first and foremost, if the concern is his mental

8   health information being disclosed, that horse is long since

9   out of this barn or any barn.

10           Number 2, the reason that the Court is ordering

11  this, the reason it's relevant here, is not because of the

12  mental health information it contains; it is because the issue

13  is what did the correctional department officials know about

14  his mental health and his own statements to mental health

15  professionals and other correctional officials about his

16  ideation, his violent thoughts, when at the time he was given

17  a roommate?  That's the question.

18           So I think the focus, Mr. Kuchinsky, is not on

19  exposing details for the first time of Mr. Osuna's condition;

20  it's exposing the details of what the officials knew about his

21  condition when the classification decision at issue, which was

22  a one-night decision, as it turned out, was made.

23           So with respect for your obligations as an attorney

24  and your good faith in carrying them out, full respect.  I'm

25  going to stand by my orders and require you to disclose the

1    material that you have identified as privileged subject to the

2    strict conditions I have imposed under dissemination and use.

3         MR. KUCHINSKY:  May I ask to clarify the questions

4    on the order in terms of the scope?

5         THE COURT:  Sure.

6         MR. KUCHINSKY:  The subpoena requested statements

7    made by Mr. Osuna, and that was what was identified, and that

8    was what was provided to the Court in camera as opposed to --

9         THE COURT:  And the people he made them to or had

10   access to them.

11        MR. KUCHINSKY:  Right.  But the substance underlying

12   his communications that were made by him and, then, whether

13   they were referenced or referred to.  As the Court

14   contemplated, that I essentially turn over the documents that

15   were provided in camera, is that essentially the scope of what

16   we're doing?

17        THE COURT:  I think that's what you identified as

18   responsive and that you had privilege concerns about.  So the

19   answer to that is, yes, having reviewed the documents in

20   camera as I was given the opportunity to do, yes.

21        MR. KUCHINSKY:  Okay.  And then the only other

22   clarification question there is I did not redact anything from

23   the documents that I provided to the Court.  There's a whole

24   host of information that is not statements that Mr. Osuna

25   made.  And so I'm not quite sure if -- you know, I'm going to,

1    obviously, redact things that would need to be redacted

2    privacy-wise.  Obviously, the statements, the substance of

3    those are not going to be redacted.  But if there's unrelated

4    information to that, you know, information that is not a

5    statement by Osuna, but other information, that would need to

6    be redacted, I would assume, just based on the scope of the

7    subpoena.

8              THE COURT:  Mr. Darling.

9              MR. DARLING:  Your Honor, I'm concerned that the

10   power of redaction is the power of obviating the Court's

11   order.  And given the protection that we've talked about and

12   given really everything that the Court has already ruled on, I

13   would urge not to have redaction.

14             THE COURT:  Yeah.  I share the concern,

15   Mr. Kuchinsky.  I meant to have, subject to production,

16   statements that different employees of the correctional

17   department -- and if I'm mangling the official titles, you

18   know what I'm referring to, your client -- may have made about

19   information they heard from other employees about what

20   Mr. Osuna had said or expressed.

21             MR. KUCHINSKY:  Right.  Right.

22             THE COURT:  I meant to cover all of that.  So, no, I

23   don't see -- and I will add that I did not see anything else

24   in the materials that you provided that should be redacted.

25             MR. KUCHINSKY:  Okay.  I understand the Court's

1   order.  So we are ordered to produce the document -- the

2   documents that were identified.  No redacting whatsoever.  And

3   the basis of that is Osuna put his mental health at issue in

4   the criminal competency proceeding and thereby waived any

5   future assertion of privilege over those documents.

6            THE COURT:  That is one basis, but it is not the

7   only basis.  There are independent bases for finding that any

8   privilege he might have asserted has been overcome.

9            MR. KUCHINSKY:  Okay.  Understood.

10           THE COURT:  Okay.  All right.

11           MR. KUCHINSKY:  And is the Court going to have

12  Mr. Darling -- I'm sorry.  I don't mean to frustrate

13  Mr. Darling.

14           MR. DARLING:  I'm not saying anything.

15           THE COURT:  Keep going, Mr. Kuchinsky.  You have the

16  floor.

17           MR. KUCHINSKY:  I'm getting head rolls and eye

18  rolls.

19           THE COURT:  The joys of Zoom.  There are no eyes are

20  being rolled.  That's a court order or at least a finding.

21           MR. KUCHINSKY:  It just takes longer when I have to

22  wonder if Mr. Darling can't hear me or not.

23           The only other question -- now I lost my train of

24  thought.

25           Oh, is the Court going to have Mr. Darling prepare a

1    proposed order laying out the bases, or is the Court going to

2    issue that?  I'm just wondering because I just haven't had

3    this type in camera proceeding where we don't have a formal

4    motion written; so I just want to understand the procedure

5    that we're going to do.

6            I'm not trying to delay anything.  It can be

7    tomorrow if the Court wants.  I just want to understand what

8    are we going to get in terms of an order that lays out the

9    reasons that privilege was waived.

10           THE COURT:  Okay.  I have found, A, that it was

11   waived; B, that the need for the information and the inability

12   to access the information from any other source is a critical

13   factor in requiring it to be produced under the strict

14   confidentiality limitations I have imposed.

15           And I made Mr. Darling go through all the hoops of

16   subpoenaing the proper department that had the documents and

17   getting them produced in camera, reviewing them in camera.

18           So, Mr. Darling, one more hoop.  Prepare a form of

19   order, if you haven't already.  If you have, send me the one

20   that you have proposed.  Make sure that Mr. Kuchinsky at least

21   has the opportunity to agree or disagree as to form, and we'll

22   get it signed.

23           MR. DARLING:  Okay.  On that issue, I'm a little

24   confused.  Because I've submitted other orders that the Court

25   has signed, and we're here again.  And so it feels a little

 1  like Groundhog Day.  And the Court has stated its record.  I

 2  honestly think the Court has its written order.

 3          Yeah, the Court --

 4          THE COURT:  I want an order that not only -- I want

 5  an order that includes the fact that we had this hearing at

 6  which Mr. Kuchinsky made the arguments, I found them

 7  unpersuasive or insufficient, ordered the production, and to

 8  have a date and time for the production to you to be

 9  completed.

10          MR. DARLING:  Okay.  And I will say, given that the

11  production has already occurred to the Court in camera --

12          THE COURT:  Right.

13          MR. DARLING:  -- it's -- I'm going to say --

14          THE COURT:  It can be tomorrow.

15          MR. DARLING:  -- 48 hours.  Yeah.

16          THE COURT:  I agree.  But I just need that form of

17  order.

18          MR. DARLING:  Sure.

19          THE COURT:  I understand Mr. Kuchinsky is trying to

20  protect his record.

21          MR. DARLING:  Sure.

22          THE COURT:  And that's his job.

23          MR. DARLING:  Okay.  Yeah, I get that.  Okay.  Cool.

24  I will submit that today, Your Honor.

25          THE COURT:  Okay.  What else do we need to do today?

1           MR. DARLING:  Well, just given the Court's order via

2  the CDCR, I want to bring the Court's attention to --

3           THE COURT:  Yeah.

4           MR. DARLING:  -- the OIG issue, which I think

5  dovetails with this a bit.

6           But I give you the floor, Mr. Spurling.

7           MR. SPURLING:  As Your Honor knows, the OIG gave you

8  all the documents that we are withholding on the various

9  grounds, various privileges we've asserted for in camera

10  review.  I trust that Your Honor has had an opportunity to vet

11  that information.

12           THE COURT:  I have.

13           MR. SPURLING:  I have nothing else in the way of any

14  argument, unless the Court has questions.  I'm prepared to

15  accept your order.

16           THE COURT:  Let's produce your documents subject to

17  the same confidentiality and dissemination limitations.

18           MR. SPURLING:  I have not yet availed myself the

19  opportunity to review it to determine whether or not any

20  redactions are necessary.  May I do that, or do you just want

21  them produced as is?

22           THE COURT:  I -- again, I didn't see any other parts

23  of the documents that would need to be redacted.

24           MR. SPURLING:  Very well, Your Honor.

25           THE COURT:  So, both sets of records produced --

1    this is Tuesday?

2            MR. SPURLING:  Yes, Your Honor.

3            THE COURT:  Can you do it by Friday so we at least

4    have it done in the month of June?

5            MR. SPURLING:  I think so, yeah.

6            May I ask of you, Your Honor, and Mr. Darling, that

7    he include that aspect of your order into the document that he

8    is preparing?

9            THE COURT:  Which aspect?  The confidentiality

10   provisions?

11           MR. SPURLING:  No, the fact that, Your Honor,

12   further ruled that the OIG is to produce the documents that it

13   reviewed in camera.

14           THE COURT:  Yeah.  I understand you both need court

15   orders --

16           MR. SPURLING:  Right.

17           THE COURT:  -- to give your client.

18           MR. SPURLING:  I'm thinking it would simplify

19   matters if Mr. Darling can the roll on that into the one that

20   he's already going to prepare.

21           THE COURT:  That's fine.  Right.  He can make that

22   change.

23           MR. DARLING:  One order that applies to both CDCR

24   and OIG.

25           THE COURT:  Right.

1          MR. SPURLING:  Thank you, Counsel.

2          THE COURT:  Yeah, that's very helpful.

3          Mr. Duggan, you look like you need to say something.

4          Okay.  Now we can hear your.  Okay.  Now you're

5     okay.

6          MR. DUGGAN:  I'm assuming that the order that the

7     Court made with regard to OIG doesn't apply to CDCR.  We've

8     also provided a privilege log.  It's documents that CDCR has

9     placed on its privilege log are its internal records mostly

10    written by its attorney, Thomas Morgan.  After there was an

11    investigation into staff misconduct, the officer can appeal

12    the findings with regard to staff misconduct and appeal due to

13    now what's called a State Personnel Board proceeding, which is

14    a litigation before an administrative law judge.

15         THE COURT:  Right.  And I've looked at those.

16         MR. DUGGAN:  So a lot of these documents were

17    prepared in preparation for that litigation.  And those are

18    privileged, and the privilege hasn't been waived by disclosure

19    to the OIG.  CDCR is required to provide documents to the OIG,

20    and, in fact, it's a misdemeanor for CDCR not to do that.  And

21    so the production to OIG is coerced, and there's a statute

22    that says production to the OIG shall not result in waiver of

23    any privilege.  So the privilege is -- that existed with

24    regard to Mr. Morgan writings of the attorney-client privilege

25    and work product communications continue to exist after

 1  disclosing it to the OIG, and, therefore, these documents are

 2  privileged, and the privilege should be maintained.

 3          MR. DARLING:  I'm sorry, this -- Mr. Duggan is now

 4  making the argument that OIG just made and lost, and they're

 5  having a second layer.  And this is the identical argument,

 6  and I think we have a ruling on this.

 7          THE COURT:  Okay.  I think we do, too, Mr. Duggan.

 8  The personnel issue, the documents you're talking about, was

 9  the dismissal of the officer who did not report the presence

10  or take steps to address the presence of the sheet hanging

11  over the cell that allowed -- and the failure to respond to

12  the noises in the cell that were, in fact, Mr. Osuna chopping

13  up his roommate.  So, I think they are directly related to the

14  allegations in this case and to the issues that we've been

15  addressing.  I don't think that the privilege arguments stand

16  up any better with respect to those communications.

17          Again, they are being ordered produced to the extent

18  they include information about what these officers were told,

19  directly or indirectly, through Mr. Osuna's communications

20  with mental health professionals or others about his homicidal

21  ideations before the roommate assignment was made, so.

22          MR. DUGGAN:  Your Honor, I'm not focusing on the

23  patient privilege here.  Our argument is about the

24  attorney-client privilege for Attorney Morgan's --

25          THE COURT:  No, I understand.

```
 1              MR. DUGGAN:  -- impression and in communications

 2    with his client.

 3              THE COURT:  That's fine.  If you want to identify to

 4    me the core work product that you think is at issue and not

 5    sufficiently addressed by the requirements that I have

 6    identified, fine.  But I haven't seen -- I have your -- I have

 7    the in camera documents, but they are voluminous, and it's

 8    unclear -- if you want to -- I'm not interested in the direct

 9    attorney-client communications here or the attorney work

10    product.  What I'm interested in is the information about what

11    these officers and employees knew or had access to before they

12    put Mr. Romero in Mr. Osuna's cell.

13              MR. DARLING:  And the issue I want to focus on,

14    Your Honor, just to follow up on that, is that Plaintiff

15    subpoenas OIG.  OIG says, we got all these documents.  We

16    don't know how to make heads or tails, and so, then, let's

17    have CDCR help.  And so this issue has been litigated.  We've

18    briefed it.  And now CDCR is invoking documents that are

19    essentially -- we're not requesting.  CDCR isn't the one to,

20    at this point, prevent OIG from turning over the documents

21    that are responsive to Plaintiff's subpoena to OIG.  And so

22    it's just, I guess, zealous advocacy here.  But I actually

23    think just as the Court has ruled on nonredacted, you know,

24    turning over within 48 hours of the -- you know, or I will put

25    in the order relates to OIG and CDCR that these are turned
```

 1    over.  I don't want to open up a new wave of litigation here
 2    where they get another bite at the apple.
 3            THE COURT:  I want to make it clear.  I am not
 4    mandating the production of attorney work product or
 5    attorney-client communications unless it includes information
 6    about what information the officers had or had access to about
 7    Osuna's mental health ideations and his -- his own statements
 8    about them to officers and employees before the night in
 9    question.  It's very limited.
10            And I would note, just to clear up the record --
11    thank goodness for my alert case manager -- but in December of
12    2024, at Docket Entry 117, Mr. Osuna did file an objection to
13    the production of the information accusing Mr. Darling's
14    client of wanting only to produce it to the news media and not
15    for any legitimate litigation or other purpose.  So Mr. Osuna
16    has been heard from, but I find his own arguments
17    unpersuasive.
18            MR. DARLING:  Thank you.
19            Your Honor, just one wrinkle on this is that the
20    subpoena to OIG isn't just focused on the mental health
21    records or statements of Osuna, per se, but that the documents
22    OIG relied on in coming to its public conclusions; so I just
23    think --
24            THE COURT:  I agree with that.  And I accept that.
25            MR. DARLING:  Thank you.

1          THE COURT:  Okay.

2          MS. STOCKER:  Your Honor.

3          MR. DUGGAN:  Hold on.

4          Go ahead.

5          MS. STOCKER:  No, go ahead.

6          THE COURT:  Somebody go ahead.

7          MR. DUGGAN:  I'd like to -- first, the earlier point

8   that Mr. Darling, I think, was making was that CDCR shouldn't

9   object to OIG's production.  I'm not objecting to OIG's

10  production.  At the last pre-motion hearing like this, we

11  agreed the procedure would be the documents that originated

12  with CDCR, CDCR would provide a privilege log and object to.

13          So what I'm understanding now the Court's ruling is

14  with regard to the 25 documents that CDCR listed on its

15  privilege log is that the attorney-client privilege and work

16  product objections are upheld and that we should produce the

17  documents from which we objected on; is that accurate?

18          MR. DARLING:  No.  That is not what I understood the

19  Court's order at all.

20          THE COURT:  Yeah, I didn't understand it that way

21  either, Mr. Duggan.

22          MR. DUGGAN:  Okay.  Let's clarify, then.  I've only

23  objected on -- so the documents I've objected on are

24  attorney-client privilege only, Mr. Morgan's impressions of

25  the -- Mr. Morgan's impressions with regard to the State

1    Personnel Board proceedings, which is a litigation in front of

2    an administrative law judge.

3            THE COURT:  No, I understand that.  The only

4    thing --

5            MR. DUGGAN:  The only thing with the client with

6    regard to that proceeding --

7            THE COURT:  I don't want his mental impressions

8    about anything.  I want to know what his client in that

9    administrative proceeding knew or had access to about

10   Mr. Osuna's own statements and the information made available

11   to employees of CDCR about his mental health homicidal

12   ideations the night -- on the night that he was assigned a

13   roommate.  Okay?

14           It's pretty limited.  But, to the extent those

15   records in the administrative proceeding include statements

16   about what the officers in charge that night had access to,

17   the information they knew or had access to, they are relevant

18   and they need to be produced.

19           MR. DARLING:  Your Honor, I just want to just add

20   that the OIG specific subpoena goes to OIG as to what

21   documents it relied on in finding -- in making these public

22   findings that the CDCR's handling of this was poor.  And so I

23   just want to note, then, that it's not just that reliance on

24   the mental health records as it relates to the OIG subpoena

25   and that it's because the OIG has received documents from CDCR

```
 1   and OIG has made an opinion that their document -- that CDCR's
 2   handling was poor as it relates to various performance.
 3            And so it's my understanding that the Court has
 4   ruled that, yes, these have been produced, I have reviewed
 5   them in camera, and they are to be produced.  And so there's
 6   no redaction; these are to be produced.  It's that simple.
 7   And we're not going to start a new wave of litigation on this
 8   privilege that we've already briefed as it relates to attorney
 9   work product.
10            THE COURT:  I didn't see, Mr. Duggan, and if you
11   want to point them out to me the specific documents by page,
12   at least, that contain a clear example of what you think can
13   be withheld under your -- to address your concerns, fine.
14   I'll hear that.  But a blanket assertion of a vague
15   attorney -- or a vague core work product objection without the
16   specifics --
17            MR. DUGGAN:  Well, no, Your Honor.  I would suggest
18   we do a breakout room, then, and we can go over the documents
19   that you've got in camera.
20            THE COURT:  That's fine.  That's fine.
21            MR. DUGGAN:  There are core work product documents
22   and there are core attorney-client privilege documents in our
23   privilege log, and that's why we've asserted the privilege.
24            THE COURT:  Well, you've asserted it pretty
25   generally and pretty globally.
```

```
 1              MR. DUGGAN:  Well, communications from an attorney

 2    to a client, yes, that's a privileged document.

 3              MR. DARLING:  And, Your Honor, I mean, just in

 4    anticipation of any examination --

 5              THE COURT:  Go ahead.

 6              MR. DARLING:  -- the plaintiff has briefed this and

 7    the OIG's -- in response to OIG at page 3 and 4.  You know,

 8    this privilege is not absolute.  Not only can it be waived,

 9    but there is, you know, occasions that it be extended only to

10    communications, not to facts.  And so I think the Court has

11    zeroed in on that these mental impressions at issue are

12    compelling.  The Court has looked at them.

13              You know, it really seems like Mr. Duggan is raising

14    an issue that was already submitted on the papers.  And so if

15    we're going to do it again, I just want to turn the Court's

16    attention as it relates to Plaintiff's position, page 3 to 5

17    in our briefing at Docket 171.

18              THE COURT:  I have them.  And I'm looking, again, at

19    the documents that the OIG submitted for in camera review.

20              MR. DUGGAN:  These would be the ones that CDCR

21    submitted for in camera review.

22              THE COURT:  Not OIG.

23              MR. DUGGAN:  Right.

24              THE COURT:  Okay.

25              MR. DARLING:  I'm sorry.  I'm confused.  I thought
```

1    this is -- Mr. Duggan's response is to OIG's subpoena and

2    that -- but they're CDCR-originated documents.

3            I understood everything that -- because that's what

4    the request is.  But they're still in the possession of OIG

5    because they've been turned over by the CDCR to OIG.

6            MR. DUGGAN:  Right.

7            MR. SPURLING:  Right.  But if I may be heard on

8    that.  Those were returned to the department.  They're the

9    department's records.  The department should be subject to

10   that production if that is what the Court is ordering.

11           THE COURT:  Right.  So I have two stacks.  I have a

12   privilege log that is pretty short.  It includes two specific

13   items that are both internal case notes that have been

14   submitted for in camera review.

15           MR. SPURLING:  By the OIG; correct?

16           THE COURT:  Correct.  That's exactly right.

17           MR. SPURLING:  And it's my understanding that the

18   Court has ordered that they be produced without redaction.

19           THE COURT:  Yes.

20           MR. SPURLING:  That's fine.

21           THE COURT:  That is correct.

22           Now, I have a big stack of documents that contain

23   the Department of Corrections mental health notes

24   documentation, and I have ordered that to be produced.

25           So we have two separate issues, but I think I've

 1    addressed -- or two separate sources of objection --

 2            MR. DUGGAN:  There is a third.

 3            THE COURT:  -- and I think I've addressed both of

 4    them.

 5            MR. DUGGAN:  Well, there should be a third stack of

 6    documents, I'm sorry to say, Your Honor, and that is the ones

 7    that originated with OIG but the CDCR is now objecting to on

 8    mostly attorney-client privilege and work product, and those

 9    would be numbered 1 to 25.

10            MS. STOCKER:  And there's also a stack on behalf of

11    Officer Silva's privilege log.  Small stack.

12            THE COURT:  Right.  Yeah.  Well, I reviewed

13    everything that was presented for in camera inspection.  And I

14    do not find a basis in the privileges asserted to withhold

15    them from production, again, subject to the very strict

16    restrictions I have imposed.

17            MS. STOCKER:  Your Honor.

18            THE COURT:  We started this hearing -- yeah.  We

19    started this hearing -- now you can redact and present to me

20    for separate review core attorney-client communications or

21    mental health -- or mental health -- work product

22    communications to be separately considered.

23            I'm looking at them right now.  I have the CDCR's

24    privilege log regarding the Office of Inspector General

25    records.  Okay.  And I've reviewed Plaintiff's response as

```
 1    well, which sets out the limits of the psychotherapist patient
 2    privilege and the records -- the legal authorities supporting
 3    the production in this case.
 4              MR. DUGGAN:  All right.  So as to the 25 --
 5              THE COURT:  So I've looked at that; so those records
 6    need to be produced.  Again, I find a sufficient basis to have
 7    them produced.  They are relevant -- they are very important
 8    in a relevant sense.  They are not available from any other
 9    source.  And the Court finds that the need for the information
10    outweighs the protections and privileges asserted.
11              MR. DUGGAN:  What's the basis for overcoming
12    attorney-client privilege and memos from Mr. Morgan to his
13    client?
14              THE COURT:  I have said that the -- that the parts
15    of these documents that are specifically -- I'm looking at
16    them -- that are not summaries.  The summaries in these cases,
17    it's the same factual reports that were disclosed elsewhere in
18    official interviews that were the basis of the disciplinary
19    proceeding as well as the internal investigation, so.
20              MR. DUGGAN:  Your Honor, I'd like to request a
21    breakout room so that we can talk about specific documents so
22    I can understand --
23              THE COURT:  Are you asking me to look at the blue
24    binder that has the documents relating to the privilege log of
25    the CDCR regarding the OIG records?
```

1         MR. DUGGAN:  Yes.

2         THE COURT:  Okay.

3         MS. STOCKER:  I'm making the same request,

4    Your Honor.  I have not yet had an opportunity to be heard.

5         THE COURT:  Well, I have your notice and privilege

6    log that -- and you've made redactions in what you have

7    submitted to me.  But what you have submitted to me is an

8    order that was entered by the State Personnel Board, which is

9    an official proceeding on Mr. Silva's employment issues, his

10   effort not to be discharged based on the events of the night

11   in question.

12        Is that what you're referring to, Ms. Stocker?

13        MS. STOCKER:  That's part of what I'm referring to,

14   Your Honor.  And there is nothing in these documents that have

15   anything to do with what the correctional officers knew or

16   didn't know before the classification assignment was made.  I

17   have asserted --

18        THE COURT:  They do bear on the failure to properly

19   conduct security checks during the brief period of shared

20   incarceration.

21        MS. STOCKER:  Not the documents that I have provided

22   to the Court for in camera review.  And I'd be happy to

23   discuss it with the Court in a separate breakout room.

24        THE COURT:  We can do that, but -- I mean, yes,

25   these have -- these were presented for a different purpose,

1    but they do contain information about the people who are --

2    have knowledge about the classification at issue.

3              MS. STOCKER:  No.

4              THE COURT:  Well, it identifies who those people

5    are, among other things, and the specific information that

6    they propose to testify about in the administrative

7    proceeding.

8              MS. STOCKER:  Correct.

9              MR. DARLING:  Your Honor, I also want to point out

10   that Silva's specific documents were produced already.  So the

11   idea that Silva's allowed to be in a black box when an IA

12   investigation and administrative proceedings -- like, those

13   have been produced, which is how I know of Silva's identity in

14   the first place.  And so, yeah, I think --

15             MS. STOCKER:  It's not --

16             MR. DARLING:  And it's not -- especially as it

17   relates to Silva, it's not just about a classification that

18   has been made of him not fulfilling his duties.

19             MS. STOCKER:  Okay.  But, Your Honor, these

20   documents have not -- the documents that I have identified in

21   the privilege log have not been produced to the plaintiff.

22   This is not an IA-investigation document.

23             THE COURT:  These are State Personnel Board

24   documents.

25             MS. STOCKER:  Correct.

```
 1              THE COURT:  So what is the status --
 2              MR. DUGGAN:  Before we discuss the content of the
 3    documents --
 4              THE COURT:  I'm not discussing the content; I'm
 5    discussing the source.
 6              MR. DUGGAN:  All right.  I think we should do this
 7    in a breakout room.
 8              THE COURT:  We can, but I think Mr. Darling does
 9    have the right to know at least the category and source of the
10    very few documents we're talking about.
11              MS. STOCKER:  I've identified the source in the
12    privilege log.
13              MR. DARLING:  I appreciate that.  Well, hang on.  I
14    would also appreciate this, because Ms. Stocker didn't provide
15    any briefing as it relates to Silva.  So especially as we're
16    talking about documents that don't have briefing, I certainly
17    would -- wouldn't want the basis -- and to be heard.  But,
18    yeah, I don't -- I'm not sure how the Court wants to proceed
19    other than -- I just want to caution.  It really does sound
20    like Mr. Duggan is trying to get a second bite at the apple
21    when the Court has ruled and, then, 2, that Ms. Stocker is
22    trying to be heard on an issue that's new to me but has not
23    been briefed.
24              THE COURT:  Okay.  So you have all exposed the limit
25    of a less formal and, hopefully, more efficient approach to
```

1    resolving discovery disputes.  We have hit the issues that are

2    going to need a more traditional approach.  And I was

3    reluctant to engage that approach because, again, this case

4    goes back to 2020.  It's an old case.

5            I'm handling it because it is so old and because the

6    California judges in Fresno have been overwhelmed.  And that's

7    the only reason this case was assigned to me.  And -- but it

8    does appear that we need to have some formal briefing on the

9    basis for withholding not just the redacted version of the

10   CDCR documents or the OIG documents in the possession of the

11   CDCR or CDCR documents in the possession of OIG.  And if we

12   need to do that, fine.  I have one question, though, that may

13   be helpful, at least certainly will to me.

14           What is the status of State Personnel Board records

15   that -- in a proceeding long since closed?  Are those subject

16   to public access?  Are they presumptively confidential subject

17   to that confidentiality being overridden by the factors that

18   are outlined in the rules of evidence?  Tell me what the

19   status is of those now.

20           MR. DUGGAN:  For police officers such as those

21   involved here, they are presumptively confidential.

22           THE COURT:  Forever?

23           MR. DUGGAN:  Yes.  Under the penal code.

24           THE COURT:  Okay.  I assume that presumption can be

25   rebutted as most presumptions labeled as such clearly can be.

1           MR. DUGGAN:  For the reasons set forth in the Penal

2  Code.

3           MR. DARLING:  Your Honor.

4           THE COURT:  All right.  Go ahead.

5           MR. DARLING:  Sorry.  We're not talking about

6  Plaintiff's subpoenas to the CDCR by itself.  And we're not

7  talking about Plaintiff's documents that are responsive to

8  Plaintiff's subpoena to OIG that OIG has documents that it can

9  be responsive to.  We're talking about documents that relate

10  to Silva's personnel board.

11           THE COURT:  Yes.

12           MR. DARLING:  Okay.  And because we haven't briefed

13  that, that is what will require an additional round.  But

14  that, obviously -- that inquiry will not preclude the

15  production of the other two piles that we've been discussing

16  at length today between CDCR and OIG.

17           THE COURT:  I agree.  That's a third bucket.  And

18  we're developing a lot of buckets.

19           MR. DARLING:  Okay.  So then, on that, it sounds

20  like the to-do list is I will prepare the order as it relates

21  to the CDCR and OIG subpoena.

22           THE COURT:  Okay.

23           MR. DARLING:  And then Ms. Stocker or Mr. Duggan

24  will produce any briefing that I could respond to as it

25  relates to this third bucket, and then we can just reconvene

```
 1   after briefing on that.
 2           THE COURT:  Right.  And those that -- that third
 3   bucket, to be clear, is the redacted version that has been
 4   produced to the Court for in camera review of the certain
 5   documents that emerged from Mr. Silva's personnel board
 6   proceeding against the CDCR.
 7           MR. DUGGAN:  I'm sorry, the Court has frozen.
 8           MR. DARLING:  You froze.
 9           THE COURT:  Okay.  I'm sorry.
10           MR. DARLING:  I think we lost you.
11           THE COURT:  Okay.  The documents that -- okay.
12   Where did I stop talking?
13           MR. DARLING:  Documents that emerged from Silva's
14   personnel board proceeding, and then we didn't hear the rest.
15           THE COURT:  Yes.
16           MS. STOCKER:  I think the cell phone was -- sorry,
17   Your Honor.
18           THE COURT:  I don't know -- again, the -- I don't
19   know what Mr. Silva's current status is, but he appealed
20   personnel decisions that arose from the incidents -- from the
21   murder of Mr. Romero.
22           MS. STOCKER:  Correct.
23           THE COURT:  And the documents that have been
24   submitted to me for in camera review did have information
25   redacted.  But I am now hearing that the entirety of those
```

1    documents should be withheld from production based on

2    attorney-client privilege and communication and attorney work

3    product.  Is that accurate, Ms. Stocker?

4              MS. STOCKER:  Yes, Your Honor.

5              THE COURT:  All right.  So I need you to file a

6    motion to that effect.

7              MS. STOCKER:  A motion for a protective order,

8    Your Honor?

9              THE COURT:  And the briefs.  That will work.  Or a

10   motion to quash the subpoena to the extent it calls for these

11   documents.

12             MR. DUGGAN:  All right.  And then CDCR --

13             THE COURT:  And then you can submit your legal

14   authorities that support quashing, and Mr. Darling can respond

15   to that.

16             MR. DARLING:  Understood.  Thank you, Your Honor.

17             MR. DUGGAN:  And, Your Honor, CDCR can do the same

18   thing with regard to its two privilege logs that relate to the

19   same issue.

20             THE COURT:  I think I've ruled on those, Mr. Duggan;

21   so I don't think you need to do that.

22             MR. DUGGAN:  All right.  Then I need clarification,

23   then.

24             THE COURT:  I think you're the horse that left the

25   barn.

```
 1              MR. DARLING:  Mr. Duggan, I'm sorry.  It's been very

 2    clear.  I'll state it because I'm going to submit an order; so

 3    I just want to be very clear.  The subpoena as to CDCR and the

 4    subpoena to the OIG as it relates to production by CDCR and by

 5    OIG productions in camera are to be produced and not redacted.

 6    Full stop.

 7              Now, the issue that is to be briefed as a new issue

 8    is as it relates to Miss Stocker's identified documents as it

 9    relates to Mr. Silva's personnel hearing.  Nothing else.

10              So Ms. Stocker can, then, raise these issues that

11    have not been briefed in the motion that she files, and then

12    Mr. Duggan and myself can then respond.

13              MS. STOCKER:  I disagree.

14              MR. DUGGAN:  Yeah.  I'd like to raise a brief on our

15    attorney-client privilege.

16              MR. DARLING:  It's been briefed.

17              MS. STOCKER:  No.

18              MR. DUGGAN:  I submitted a privilege log and a

19    paragraph.  I have not briefed CDCR's attorney-client

20    privilege with respect to --

21              THE COURT:  All right.  Mr. Duggan, I'm going to err

22    on the side -- I'm sure I'm going to regret this.  Mr. Duggan,

23    file your motion to quash and brief.  File it with Ms. Stocker

24    to the extent your arguments overlap.

25              MR. DARLING:  And just so I'm clear, the document
```

```
 1   we're talking about, Mr. Duggan --
 2           THE COURT:  This is the 25-tab binder that is
 3   labeled --
 4           MR. DARLING:  No, no, no.
 5           THE COURT:  -- labeled documents relating to CDCR's
 6   privilege log regarding OIG records.
 7           MR. DARLING:  No.  I thought he said -- I thought
 8   Mr. Duggan was talking about a third.
 9           MR. DUGGAN:  I'm talking about our privilege log,
10   Document 167-1, filed on June 6.
11           MR. DARLING:  Okay.  That's --
12           MR. DUGGAN:  That's the 25-tab binder.
13           MR. DARLING:  How could Mr. Duggan say it hasn't
14   been briefed when they submitted briefing on this?
15           THE COURT:  They just submitted a privilege log.
16           MR. DUGGAN:  There's two matters.  A privilege
17   log --
18           MR. DARLING:  Okay.  There's just so many bites at
19   this apple.  This is a lot.
20           THE COURT:  I know.
21           MS. STOCKER:  Could you mutter louder, Mr. Darling.
22   What?
23           MR. DARLING:  So many bites at the apple; it's a
24   lot.
25           THE COURT:  Okay.  So I have Document Number 166
```

1    that is the declaration of Mr. Buduru at the CDCR relating to

2    the department's objections to the document subpoena.  Okay?

3              MR. DUGGAN:  That one relates to my client.

4              THE COURT:  Right.  I also have -- yes, you are

5    right, it does.

6              And I have your 25-item privilege log related

7    submission for in camera review.

8              MR. DUGGAN:  Yes.

9              THE COURT:  Go ahead.

10             MR. DUGGAN:  Yes, that's the one I'd like to brief.

11             THE COURT:  Right.  And you have submitted that

12   privilege log.  You have not -- and you submitted a paragraph

13   on waiver --

14             MR. DUGGAN:  Honestly, I was anticipating --

15             THE COURT:  -- to which response has already been

16   filed.

17             MR. DUGGAN:  And I was anticipating the fact that

18   these were documents that were written by Mr. Morgan to his

19   client would be enough for attorney-client privilege.  But I

20   will brief it further.

21             THE COURT:  All right.  So not every communication

22   is shielded from discovery, as you know.  There are -- to the

23   extent this is simply a factual description that is contained

24   in lots of publicly available documents and a summary of the

25   investigation steps and the conclusions that resulted in the

```
 1    personnel actions that Mr. Silva then challenged, that's what

 2    you're looking at; correct?

 3                MR. DUGGAN:  I really think if we're going to do

 4    this, it should be in a breakout room, Your Honor.

 5                THE COURT:  Again, I'm just describing the source

 6    and nature.  I'm not describing the substance of the

 7    communications.

 8                MR. DUGGAN:  Well, and that -- the fact that you

 9    have been kind of nonspecific to do that is making it

10    difficult for me to understand which documents you're

11    referring to.

12                MR. DARLING:  Well, I mean --

13                THE COURT:  You've withheld them all on the same

14    ground.

15                MR. DUGGAN:  That's not entirely accurate.

16                THE COURT:  Okay.  You've withheld them all on the

17    grounds that are set out in your privilege log.

18                MR. DUGGAN:  Yes.

19                THE COURT:  Which states over and over that most of

20    these are withheld on a few specified grounds.

21                MR. DUGGAN:  Correct.

22                THE COURT:  And the privilege log doesn't say

23    anything less than what I've said.

24                MR. DUGGAN:  Right.

25                THE COURT:  In fact, it says more.
```

```
1              MR. DUGGAN:  But to discuss the documents in detail,
2     I think we would have to then know which documents we're
3     talking about; so then I would ask for a breakout room for
4     that.
5              MR. DARLING:  So --
6              THE COURT:  I am very reluctant to do that.  Okay.
7              MR. DUGGAN:  Okay.
8              THE COURT:  I've got your declarations.  I've got
9     your briefs.  If you want to brief it further, I'm giving you
10    leave to do so.  But I don't think that -- I think, to the
11    extent possible, we should not add another layer of opacity to
12    the information and issues that we're talking about, and
13    that's what you're asking me to do.
14             MR. DUGGAN:  We'll submit a brief.
15             THE COURT:  All right.  That's fine.
16             Can you do it by this Friday?
17             MR. DUGGAN:  Yes.
18             THE COURT:  All right.  Mr. Darling, can you respond
19    by a week from tomorrow?
20             MR. DARLING:  Yes.  Absolutely.
21             MS. STOCKER:  Your Honor.
22             MR. DARLING:  And just so, as I understand it, we've
23    got the submitting of the order as it relates to the CDCR and
24    OIG, then we're going to have this briefing by Mr. Duggan and
25    Ms. Stocker.
```

1          THE COURT:  Right.

2          MR. DARLING:  And then I'll respond a week later.

3          THE COURT:  Right.

4          MS. STOCKER:  Okay.  Counsel, I really would

5     appreciate the opportunity to address the timing.

6          Your Honor, I start trial on July 1st in the Central

7     District Court in Los Angeles.  As you might imagine, my

8     schedule is pretty booked up between now and then meeting with

9     my client and witnesses.  I don't really see the need for such

10    a rush.  I should be --

11         THE COURT:  I'm just going to refer to the fact that

12    this is a 2020 case.

13         MS. STOCKER:  But this subpoena is new.  This

14    subpoena to the OIG is a new issue that has not been briefed.

15    And all I've done so far on behalf of my client is submit a

16    privilege log, and we haven't had the opportunity --

17         THE COURT:  And you would have had to do the

18    research in order to submit that privilege log.

19         MS. STOCKER:  I beg your pardon?

20         THE COURT:  You would have had to do the research in

21    order to make the privileged assertions.

22         MS. STOCKER:  No.  All I have to do is look at the

23    document and determine that it's privileged.

24         THE COURT:  Right.  But you have to have done

25    sufficient investigation to identify the source and scope of

1    the privilege before you could assert it in compliance with

2    Rule 11.

3              MR. DARLING:  I would also note, Your Honor, that

4    this subpoena was served back in -- on May 5th, so this is

5    certainly not a new issue.

6              MS. STOCKER:  But it just became an issue when it

7    was determined that --

8              THE COURT:  How long will you be in trial,

9    Ms. Stocker?

10             MS. STOCKER:  We should be done by the 3rd of July.

11   The 4th is a holiday.

12             THE COURT:  All right.

13             MS. STOCKER:  May I have until the 7th?

14             THE COURT:  That's fine.  That's fine.

15             All right.  Mr. Darling, you get the corresponding

16   amount of time to respond.

17             MR. DARLING:  Sure.  So what we'll do, then, is

18   we'll have Mr. Duggan on the timetable of next Friday, and

19   I'll respond to that.  And Ms. Stocker can have this extra

20   week.  That makes sense.  I understand.

21             MS. STOCKER:  Okay.  Thank you.

22             THE COURT:  All right.  Anything else today?

23             MR. DARLING:  I think that's it from Plaintiff.

24   Thank you, Your Honor.

25             THE COURT:  Okay.  All right.  Look, I know these

1  repeated proceedings are patience-wearing for everyone, and I

2  appreciate the efforts that everyone has made to respond to

3  efforts to deal with the need for information in a case that

4  goes back, it's almost a decade, and raises serious issues.

5  It's not -- and none of this is going to get any easier, and I

6  think everybody is aware of that.  So thank you for hanging in

7  there, and we will get through these discovery issues so that

8  you-all can focus on getting the case ready to be resolved.

9           MR. DARLING:  Thank you.

10           MR. SPURLING:  Thank you, Your Honor.

11           MR. DUGGAN:  Thank you, Your Honor.

12           MS. STOCKER:  Thank you, Your Honor.

13           THE COURT:  All right.  Ms. Stocker, good luck on

14  your case next week.

15           MS. STOCKER:  Thank you, Your Honor.

16           All right.  Thank you-all very much.  You are all

17  excused.

18      (Proceedings concluded at 2:07 PM.)

19

20

21

22

23

24

25

1                    **REPORTER'S CERTIFICATE**

2

3            I, DONNA J. PRATHER, do hereby certify that the

4    above and foregoing, consisting of the preceding 47 pages,

5    constitutes a true and accurate transcript of my stenographic

6    notes and is a full, true, and complete transcript of the

7    proceedings to the best of my ability.

8            Dated this 30th day of June, 2025.

9

10

11            DONNA J. PRATHER, RMR, CRR, CCP, CBC
             Federal Official Court Reporter

12

13

14

15

16

17

18

19

20

21

22

23

24

25