

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

JUL 17 2025
CLERK U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
by _____
DEPUTY CLERK

Jamie Osuna BD0868
CSP-COR
PO BOX 3476
CORCORAN, CA 93212

Non-Party Intervenor/Real
Party in Interest,

     v.
Dora Solares,
          Plaintiff,
     v.
Diaz, et al
          Defendants

No.  1:20-cv-00323-LHR-BAM

**NON-PARTY JAMIE OSUNA'S
EMERGENCY MOTION FOR PROTECTIVE
ORDER UNDER RULE 26(C), TO QUASH
DEPOSITION NOTICE UNDER RULE
45(D), TO VACATE ORDER
COMPELLING TESTIMONY, AND
REQUEST FOR ALTERNATIVE SERVICE**

**NOTICE OF REQUEST FOR ALTERNATIVE SERVICE:**

Mr. Osuna respectfully requests permission to serve and be served
via alternative means as described in Section IV below.

**TO THE HONORABLE COURT:**

     Non-party Jamie Osuna, currently incarcerated at CSP-
Corcoran, respectfully moves this Court for a Protective Order
under Rule 26(c) and to quash a deposition notice under Rule
45(d), and to vacate any order purporting to allow his compelled
participation without notice or hearing.

I. INTRODUCTION

     Mr. Osuna does not raise these issues to impugn counsel, but
to ensure his constitutional and privacy rights are protected in
a highly sensitive and parallel criminal context.

     On June 16, 2025, the Court granted leave to depose Mr.
Osuna (ECF, *Dckt*. 170). Mr. Osuna was never served with the

1

1    underlying motion or given any opportunity to be heard. The first
2    time he became aware of the Court's decision was after its entry.
3    This constitutes a violation of Mr. Osuna's procedural due
4    process rights under *Mullane v. Central Hanover Bank & Trust Co.*,
5    339 U.S. 306 (1950). The deposition is pending, and the urgency
6    of this motion is heightened.

7        **Pending Appeal Context:** Mr. Osuna has a related
8    interlocutory appeal pending in the Ninth Circuit concerning
9    prior compelled disclosures of privileged records/improper waiver
10   of privileges. Although that appeal does not explicitly address
11   the deposition now sought, the issues are intertwined. The appeal
12   challenges the same pattern of discovery abuse, lack of notice,
13   and disregard for constitutional protections that this motion
14   seeks to prevent from recurring or expanding.

15                **II. LEGAL GROUNDS FOR PROTECTIVE RELIEF**
16   **A. NO NOTICE OR OPPORTUNITY TO BE HEARD**

17       Point of Authority: <u>Mullane v. Central Hanover Bank & Trust</u>
18   <u>Co.</u>, 339 U.S. 306 (1950) (notice and opportunity to be heard are
19   fundamental to due process); *Goldberg v. Kelly*, 397 U.S. 254
20   (1970) (procedural due process requires meaningful opportunity to
21   be heard before rights are affected); Fed. R. Civ. P.
22   45(d)(3)(A)(iii) (court must quash or modify subpoena that
23   requires disclosure of privileged or protected matter if no
24   exception or waiver applies).

25       Non-parties can only be compelled to testify via subpoena
26   under Fed. R. Civ. P. 45 and must be afforded notice and a chance
27   to object. Mr. Osuna was not given notice or served. As a result,
28   the order authorizing the deposition lacks legal effect as to him

                                    2

1   and violates the fundamental fairness standard set in *Goldberg v.*
2   *Kelly*, 397 U.S. 254 (1970).

3   **B. IMPROPER "ATTORNEY'S EYES ONLY" ARGUMENT**

4       Point of Authority: *Seattle Times Co. v. Rhinehart*, 467 U.S.
5   20, 35-36 (1984) (protective orders do not eliminate the risk of
6   reputational harm from sensitive disclosures); In *re Roman*
7   *Catholic Archbishop of Portland*, 661 F.3d 417, 425 (9th Cir.
8   2011) (once discovery materials enter public record, irreparable
9   harm may follow); *Jaffee v. Redmond*, 518 U.S. 1, 15-18 (1996)
10  (mental health communications protected by federal privilege that
11  is not easily overridden).

12      Darling has contended through multiple filings that any
13  sensitive materials would remain confidential via for "attorney's
14  eyes only." However, labeling such materials "attorney's eyes
15  only" offers Mr. Osuna no meaningful protection. As a third party
16  to his civil litigation and an incarcerated criminal defendant in
17  a pending capital case, Mr. Osuna cannot review or respond to
18  AEO-designated documents, nor use them to challenge civil
19  allegations or correct misrepresentations. Meanwhile, counsel
20  gains access to privileged mental health and custodial records
21  for strategic purposes. AEO status does not preserve privilege—it
22  merely prevents the person whose rights are at stake from
23  defending those rights, while enabling selective and potentially
24  prejudicial use by others. Despite Darling's contention of AEO-
25  designation:

26    1. Darling quoted and referenced such materials in *Dckt.* 137
27       and other filings;

28    2. The case has garnered public attention from media, including

3

1     Courthouse News, KGET17, and others, who echoed Darling's

2     allegations, language, and filings;

3  3. The Supreme Court in *Seattle Times Co. v. Rhinehart*, 467

4     U.S. 20 (1984), and the Ninth Circuit in *In re Roman*

5     *Catholic Archbishop of Portland*, 661 F.3d 417 (9th Cir.

6     2011), held that **protective orders are not substitutes** for

7     respecting fundamental privileges, particularly when prior

8     conduct suggests intent to publicize or leak.

9

10     Moreover, because Plaintiff does not bear the burden of

11  proof beyond a reasonable doubt in this civil matter, the volume

12  and intrusiveness of discovery aimed at Mr. Osuna—a third party

13  facing capital charges—exceeds what is proportional or necessary

14  under Rule 26(b)(1).

15     Courts have repeatedly emphasized that discovery mechanisms

16  cannot be repurposed to bypass the protections of a parallel

17  criminal case. See *United States v. Kordel*, 397 U.S. 1 (1970);

18  *United States v. Stringer*, 535 F.3d 929, 937-39 (9th Cir. 2008).

19  Unlike typical civil discovery burdens, compelled psychiatric

20  disclosures or custodial depositions here create unrecoverable

21  constitutional harm—jeopardizing Mr. Osuna's Fifth and Sixth

22  Amendment rights in a pending capital prosecution.

23  **C. USE OF DISCOVERY FOR IMPROPER PURPOSES**

24     Point of Authority: Fed. R. Civ. P. 26(b)(1) (discovery must

25  be proportional and relevant); *Roadway Express, Inc. v. Piper*,

26  447 U.S. 752, 763-64 (1980) (courts have inherent power to guard

27  against abuse of judicial process); ABA Model Rules 4.4(a),

28  8.4(c), California Rules of Professional Conduct 4.1, 4.4(a)

1    (lawyers must avoid misleading or prejudicial conduct).

2        Plaintiff's counsel, Erin Darling, is using discovery to:

3

4    1. **Force a waiver of privileges or create conflict** with Mr.

5        Osuna's defense in *People v. Osuna*, Kings County Sup. Ct.

6        Case No. 19CM-1882;

7    2. **Frame silence or objection as guilt** to sway jurors;

8    3. **Gain access to protected materials** under the pretense of

9        discovery/deposition.

10

11       Darling has presented contested interpretations of the

12   record, referred to Mr. Osuna using inflammatory language in

13   filings. This pattern raises serious questions about potential

14   abuse of process (see *Dckts*. 119, 133, 137, 150, 177) and

15   publicly referenced sealed psychiatric content. These filings

16   include parsed quotations from protected mental health

17   evaluations and alleged sealed interrogations. Simultaneously, he

18   contacted Mr. Osuna's criminal counsel offering to advocate for a

19   life sentence in exchange for civil cooperation. This arguably is

20   abuse of process and arguably violates California Rules of

21   Professional Conduct 4.1, 4.4(a), and ABA Model Rules 8.4(c).

22   **D. IMPROPER CONTACT IN CRIMINAL CASE**

23       Point of Authority: CA Rules of Professional Conduct 1.7(b),

24   8.4(d) (avoid conflicts of interest and prejudicial conduct); ABA

25   Model Rules 4.3, 4.4(a); Sixth Amendment (right to counsel); Fed.

26   R. Civ. P. 17(c)(2) (court must appoint guardian ad litem for an

27   unrepresented, mentally impaired person in appropriate cases).

28       Darling contacted prosecution and defense teams in Osuna's

1   capital case (*People v. Osuna*, 19CM-1882) proposing Osuna's help
2   and cooperation in exchange for advocacy against the death
3   penalty, as relayed to Osuna around April 2025. This back-channel
4   communication raises ethical issues under CA RPC 1.7(b), 8.4(d)
5   and violates Sixth Amendment safeguards. No guardian ad litem was
6   appointed, despite clear mental health concerns. See Fed. R. Civ.
7   P. 17(c)(2).

8        Importantly, once Mr. Osuna refused to cooperate or
9   participate in the proposed exchange, Plaintiff's counsel
10  escalated his tactics—pursuing increasingly aggressive discovery
11  efforts targeting Osuna's psychiatric, legal, and privileged
12  records. As the docket shows, through 2025, filings by Darling
13  became more focused on compelling Osuna's deposition, referencing
14  sealed evaluations, and repackaging KGET17 media statements from
15  inmate Marcus Hume (CDCR #AM7003), whose prior testimony/
16  interviews have been subject to credibility challenges/
17  impeachment in other proceedings and/or media. Darling has a
18  pending hearing to unseal Osuna's 2021 incompetency records with
19  Kings County Superior Court [August 2025]. This demonstrates a
20  coordinated effort to access protected mental health material
21  across jurisdictions. This shift coincides with Mr. Osuna's
22  refusal to cooperate and may reflect a departure from neutral
23  civil discovery practices. Moreover, because Plaintiff does not
24  bear the burden of proof beyond a reasonable doubt in this civil
25  matter, the intensity and scope of discovery directed at Osuna—a
26  third party—exceeds what is proportional or necessary under Rule
27  26(b).

28        This post-refusal escalation raises serious concerns that

1  discovery is being used not for fact-finding but as a retaliatory
2  tool, inconsistent with the principles of proportionality and
3  fairness under Rule 26(b) and the ethical duties imposed by Rule
4  4.4(a).

5  **E. RETALIATORY USE OF CEASE-AND-DESIST LETTER**

6      Point of Authority: California Constitution Art. I, §
7  3(b)(1) (protection from government retaliation for petitioning);
8  CA RPC 3.4(e), ABA Rule 8.4(d) (prohibiting filing frivolous or
9  retaliatory pleadings); *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-
10  46 (1991) (courts may sanction bad faith or abusive conduct in
11  litigation).

12      Darling received a cease-and-desist letter from Osuna on
13  July 9, 2025. Around within an hour of receiving it, he filed it
14  publicly on the docket (*Dckt.* 194), without proof of service or
15  explanation. This act appears retaliatory, in violation of
16  California Constitution Art. I, § 3(b)(1) (right to petition
17  without retaliation), CA RPC 3.4(e), and ABA Rule 8.4(d).

18  **F. IMPROPER MOTIVES AND DISCOVERY ABUSE**

19      Point of Authority: Fed. R. Civ. P. 26(g)(1)(B) (discovery
20  must not be interposed for improper purpose, such as to harass or
21  needlessly increase cost); *Hardrick v. Legal Services Corp.*, 96
22  F.R.D. 617, 619 (D.D.C. 1983) (court may limit or deny discovery
23  if purpose appears abusive or harassing).

24      Darling relies on a speculative theory that decedent Luis
25  Romero filed a grievance naming Defendant Sgt. Burns. In fact,
26  records indicate no such grievance exists and has not been
27  produced. The actual grievance and 42 U.S.C. § 1983 against
28  Defendant Sgt. [Burnes] was filed by Osuna in February 2019

1   (*Asuna v. Brown*, E.D. Cal.) Using this false/frivolous narrative
2   to pursue Osuna's records violates discovery standards under Fed.
3   R. Civ. P. 26(b)(1).

4   **G. MEDIA COORDINATION AND BAD FAITH TACTICS**

5       Point of Authority: *Gentile v. State Bar of Nevada*, 501 U.S.
6   1030 (1991) (attorney speech in pending cases is subject to
7   regulation if it risks prejudice); Model Rule 3.6(a) (lawyers
8   shall not make extrajudicial statements that materially prejudice
9   proceedings); *Yick Wo v. Hopkins*, 118 U.S. 356 (1886) (facially
10  neutral actions applied discriminatorily violate Equal
11  Protection).

12      While this motion makes no claim of formal coordination
13  between Plaintiff's counsel and media outlets, it highlights an
14  ongoing public dynamic where Plaintiff and/or her family actively
15  shape press narratives—often omitting crucial facts. Darling's
16  filings closely mirror the public reporting by KGET17 and Olivia
17  LaVoice, whose coverage:

18

19  • Echoes language from Darling's filings;
20  • Publishes materials closely tracking confidential and sealed
21      filings;
22  • Presents a one-sided account omitting the decedent Luis
23      Romero's violent background—including prior assaults on
24      fellow inmates and conviction for the homicide of a minor.
25  • Bases discovery off KGET17/LaVoice's podcast and reporting
26      that his own client was featured on/in; and even cites
27      KGET17 as his source of information on Osuna. (*Dckt*.96);
28  • Includes commentary and imagery that may shape public

1    perception in a prejudicial manner toward Mr. Osuna while
2    obscuring the fact that Romero was not due for parole for at
3    least ten more years (2025) due to his ongoing violence
4    against others.

6    This selective media narrative contributes to public
7    prejudice against Mr. Osuna, while Plaintiff's counsel
8    simultaneously claims discovery is purely for private legal use.
9    The Court should consider that Darling's filings have already
10   influenced public commentary, thereby undermining any assertion
11   that sensitive discovery will remain confidential.
12   Importantly, while Romero's history of violence is never
13   mentioned, Osuna—a third-party—is labeled a "killer" and
14   "psychopath" and cast as the central figure of this litigation,
15   overshadowing the official Defendants. This asymmetry is not just
16   misleading, it is discriminatory: it privileges the reputational
17   interests of government actors while vilifying a minority,
18   mentally ill, unrepresented inmate.
19   Courts have consistently warned against litigation that
20   manipulates public forums or relies on selective enforcement.
21   When advocacy leverages inflammatory details about a third
22   party's background while omitting materially relevant conduct by
23   others, the risk of improper influence grows. See *Gentile*, 501
24   U.S. at 1075.
25   For these reasons, the Court should scrutinize Plaintiff's
26   selective narratives and ensure that discovery, privilege, and
27   media conduct remain properly balanced and constitutionally
28   constrained.

9

**H. FIFTH AMENDMENT SELF-INCRIMINATION RISK**

Point of Authority: *Estelle v. Smith*, 451 U.S. 454, 468-69 (1981) (statements made without Miranda warnings or defense counsel present may violate Fifth and Sixth Amendments); *Campbell v. Gerrans*, 592 F.2d 1054 (9th Cir. 1979); *Miranda v. Arizona*, 384 U.S. 436 (1966); *United States v. Kordel*, 397 U.S. 1 (1970) (civil discovery may not be used to circumvent constitutional rights in a related criminal case).

Osuna's testimony risks direct or indirect self-incrimination. He is an active defendant in a capital case. *Estelle v. Smith*, 451 U.S. 454 (1981), *Campbell v. Gerrans*, 592 F.2d 1054 (9th Cir. 1979), and *Miranda v. Arizona*, 384 U.S. 436 (1966), emphasize the need for protection when compelling statements from incarcerated, mentally ill individuals.

**I. PSYCHOTHERAPIST-PATIENT PRIVILEGE APPLIES**

Point of Authority: *Jaffee v. Redmond*, 518 U.S. 1 (1996) (federal recognition of psychotherapist-patient privilege); California Evidence Code §§ 1014, 1018 (privileged communications between patient and psychotherapist).

Darling seeks mental health and competency records. These are protected by California Evidence Code §§ 1014, 1018 and federal common law. *Jaffee v. Redmond*, 518 U.S. 1 (1996), established an absolute federal privilege protecting such communications, which cannot be waived casually or without clear notice and consent.

**J. UNDUE BURDEN AND SECURITY RISKS**

Point of Authority: *United States v. Kordel*, 397 U.S. 1, 11-13 (1970); *United States v. Stringer*, 535 F.3d 929, 937-39 (9th

10

1  Cir. 2008) (civil discovery cannot be used to bypass criminal

2  procedure); *Baxter v. Palmigiano*, 425 U.S. 308 (1976) (inmates

3  retain Fifth Amendment protections); *Estelle v. Smith*, 451 U.S.

4  at 470-71 (involuntary custodial testimony is constitutionally

5  suspect).

6      Osuna is a Level IV inmate. The logistical demands and

7  coercive environment for any deposition involve CDCR officers,

8  many of whom are expected to testify against him in 19CM-1882.

9  This overlap makes any compelled deposition presumptively

10  coercive. See *United States v. Kordel*, 397 U.S. 1 (1970), *United*

11  *States v. Stringer*, 535 F.3d 929 (9th Cir. 2008).

12  **K. DARLING'S PUBLIC PERSONA VS. ACTUAL CONDUCT**

13      Point of Authority: ABA Model Rule 8.4(c) (lawyer shall not

14  engage in conduct involving dishonesty, fraud, deceit or

15  misrepresentation); CA RPC 8.4(c); Model Rule 1.2(d) (lawyer must

16  not use legal process to harass or maliciously injure another).

17      Publicly, Darling brands himself as a civil rights attorney

18  advocating for marginalized groups, including racial minorities

19  and victims of law enforcement misconduct. However, in this case:

20

21      • He treats CDCR correctional officers and staff, the actual

22  Defendants, with professional neutrality;

23      • While he aggressively targets third party Osuna—an

24  indigent Hispanic inmate—with invasive discovery and dehumanizing

25  language; while simultaneously blocking Osuna's rights on all

26  fronts, including opposing Osuna's interlocutory appeal, failing

27  to give any service regarding the dozens of motions, filings and

28  other proceedings, that seek Osuna's privileged materials, to

1    compel his cross-examination, inter alia.

2        • Darling has failed to file and/or equally aggressively

3    pursue any *Pitchess* motion to obtain Defendants'—law/correctional

4    enforcement—background, even referring to it in one docket entry

5    as a "lower priority," unlike unrepresented third-party Osuna's

6    confidential/privileged records, inter alia.

7        • Uses inflammatory language, derogatory references to and

8    unverified/unofficial derogatory framing of Osuna's background as

9    if Osuna were the defendant while never referencing the actual

10   Defendants' backgrounds, characters, inter alia.

11

12        Instead, Darling focuses almost exclusively and

13   discriminatorily on Osuna, demonstrating a prejudicial,

14   scapegoating litigation approach, shielding government actors

15   while vilifying a minority third party who lacks counsel and

16   procedural protections. This asymmetry is ethically troubling and

17   results in a litigation posture that reinforces a media narrative

18   rather than focuses solely on the civil claims at issue.

19

20   **Examples of Differential and Discriminatory Treatment of Osuna:**

21     1. **Darling uses inflammatory, dehumanizing language** to describe

22        Osuna—calling him a "killer" or "psychopath" and focusing on

23        his alleged past violence—while entirely ignoring the

24        conduct histories of government actors named as the

25        Defendants, despite ample authority to request those

26        records; this also includes the Decedent's violent

27        background against inmates and killing of a minor;

28     2. **The media mirrors this narrative,** reinforcing the image of

                                    12

1    Osuna as a public threat while omitting the fact that Romero

2    was not due for parole for another 10 years and had a

3    significant documented record of violence within the

4    institution.

5    3. **Plaintiff's discovery demands disproportionately target**

6    **Osuna,** a non-party, while excusing or soft-pedaling

7    inquiries into the actual Defendants' conduct, motivations,

8    or backgrounds.

9    4. **Osuna's privacy, psychiatric, and legal rights are**

10    **consistently disregarded,** while protective orders and

11    procedural respect are afforded to institutional parties.

12    5. **Media coordination** (explicit or implicit) centers public

13    narratives around Osuna's criminal charges rather than the

14    alleged civil rights violations by correctional staff.

15    6. **No guardian ad litem has been requested or appointed,**

16    despite Osuna's mental health diagnoses, while Darling

17    appears to orchestrate indirect negotiations with criminal

18    counsel outside of formal safeguards.

19    7. Plaintiff's counsel included a highly publicized photograph

20    of Mr. Osuna—unrelated to these civil allegations—in the

21    original and some amended complaints and described him as a

22    "psychopath." This tactic emphasized Mr. Osuna's criminal

23    identity in a way that may be perceived as prejudicial and

24    reinforced a prejudicial narrative while omitting any

25    corresponding context, photographs, or misconduct history of

26    the actual Defendants or the Decedent. It exemplifies the

27    discriminatory pattern of dehumanizing Osuna while shielding

28    institutional actors from scrutiny.

13

1
2    **Legal and Ethical Concern:**
3    **Discriminatory litigation strategies that exploit the**
4    **vulnerable status of a racial minority, incarcerated, mentally**
5    **impaired individual, while shielding state actors from scrutiny,**
6    not only **undermine the credibility of civil rights litigation—**
7    they **raise serious constitutional concerns under the Equal**
8    **Protection Clause and due process doctrine.**
9         Courts have recognized in *Yick Wo v. Hopkins*, 118 U.S. 356
10   (1886), that facially neutral rules or litigation strategies can
11   become unlawful when enforced in a deliberately unequal or
12   targeted manner. When a civil rights plaintiff privileges the
13   reputation and interests of government agents over those of a
14   Hispanic third party—while leveraging inflammatory discovery,
15   sealed documents, and public narratives to stigmatize that third
16   party—courts must intervene.
17                      **III. RELIEF REQUESTED**
18        Mr. Osuna requests that this Court stay any deposition
19   pending an evidentiary hearing on privilege, necessity, and
20   protective protocols.
21        Mr. Osuna respectfully requests that the Court:
22   1. **Quash or vacate** the June 16, 2025 order authorizing his
23        deposition;
24   2. **Enter a protective order** under Rule 26(c) prohibiting any
25        deposition or discovery from Osuna without:
26             a. Proper notice, hearing, and subpoena;
27             b. Opportunity to be heard on privilege and
28                constitutional rights;

                            14

1          c. Proof of necessity and relevance;

2    3. **Declare any prior waiver of Osuna's privileges as invalid**

3       absent notice and hearing;

4    4. **Bar any public filing or discussion** of Osuna's psychiatric

5       or sealed materials;

6    5. **Grant any other relief** this Court deems just and proper.

7    6. That this Court **take judicial notice** of the pending

8       interlocutory appeal and refrain from issuing rulings that

9       may create jurisdictional overlap or duplicative prejudice.

10

11                   **IV. REQUEST FOR ALTERNATIVE SERVICE**

12          Due to Mr. Osuna's current incarceration at CSP-Corcoran and

13   his pro se status, traditional methods of service are impractical

14   and often result in unreasonable delay. Additionally, it is

15   frequently difficult for Mr. Osuna to locate or rely upon others

16   who are willing and able to sign or verify traditional proof of

17   service forms. Authorizing alternative service via court-

18   facilitated ECF entry will ensure transparency, timeliness, and

19   reliability of notice to all parties without imposing unrealistic

20   burdens on an incarcerated, unrepresented litigant.

21          Furthermore, Mr. Osuna faces ongoing institutional barriers

22   that further prevent meaningful access to regular service

23   procedures. At present, CSP-Corcoran staff—particularly the

24   Litigation Coordinator/staff [R. Laber; P. Williams; Dan]—have

25   refused to process or forward legal documents on his behalf,

26   including but not limited to filings, subpoenas, and trust

27   account statements required for federal or state court

28   submissions. This refusal has effectively denied Mr. Osuna access

                                    15

1 | to basic litigation functions and imposed unconstitutional
2 | barriers to participation in legal proceedings affecting his
3 | rights. These obstructions, combined with the prison's
4 | inconsistent mail procedures and limited access to legal
5 | assistance, make it functionally impossible for Mr. Osuna to
6 | satisfy traditional service requirements.

7 | Accordingly, Mr. Osuna respectfully requests that the Court
8 | authorize alternative service under Fed. R. Civ. P. 5(b)(2)(E)
9 | and any applicable local rules. He requests permission to effect
10 | service, and receive service, by mailing all filings via United
11 | States Postal Service (USPS) to the Clerk of the Court, who will
12 | then docket the filings into the CM/ECF system. Once filed, the
13 | ECF system will automatically serve all parties of record
14 | pursuant to the Court's standard electronic service procedures.
15 | This ensures proper and timely service to all parties,
16 | accommodates institutional constraints, and avoids undue delay or
17 | prejudice due to Osuna's inability to use electronic filing
18 | systems.

20 | Respectfully submitted July 15, 2025,

p.p. Jamie Osuna (CDCR BD0868)

16

**PROOF OF SERVICE**

I, Jamie Osuna, CDCR No. BD0868, declare:

I am a self-represented third party for this case, currently
incarcerated at California State Prison-Corcoran (CSP-COR),
located at P.O. Box 3476, Corcoran, CA 93212.

July 15, 2025, I served the attached:

**NON-PARTY JAMIE OSUNA'S MOTION FOR PROTECTIVE ORDER UNDER RULE
26(C), TO QUASH DEPOSITION NOTICE UNDER RULE 45(D), TO VACATE
ORDER COMPELLING TESTIMONY, AND REQUEST FOR ALTERNATIVE SERVICE**

Served to:

**Clerk of the Court**

U.S. District Court
Eastern District of California
2500 Tulare Street, Suite 1501
Fresno, CA 93721

Due to my current incarceration and pro se status, I am unable
to effect service directly on counsels of record. I therefore
respectfully request that the Clerk docket this filing and serve
it via CM/ECF in accordance with the Court's standard procedures
for filings received by mail from incarcerated parties.

I declare under penalty of perjury under the laws of the United
States that the foregoing is true and correct.

Jamie Osuna
CDCR No. BD0868
California State Prison – Corcoran
P.O. Box 347.6
Corcoran, CA 93212