

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

Jamie Osuna BD0868
CSP-COR
PO BOX 3476
CORCORAN, CA 93212

Non-Party Intervenor/Real Party in Interest,

v.

Dora Solares,
        Plaintiff,

v.

Diaz, et al
        Defendants

No. 1:20-cv-00323-LHR-BAM

**REPLY TO DEFENDANTS' RESPONSE TO NON-PARTY OSUNA'S MOTION FOR PROTECTIVE ORDER; MOTION TO PERMANENTLY QUASH DEPOSITION; REQUEST FOR ALTERNATIVE SERVICE**

**RE: DCKT. 200**

**NOTICE OF REQUEST FOR ALTERNATIVE SERVICE:**

Mr. Osuna respectfully requests permission to serve and be served via alternative means as described in Section VIII below.

    **I. Reply to Defendants' Response to Non-Party Osuna's Motion for Protective Order, To Permanently Quash Deposition, And for Alternative Service to the Honorable Court:**

    Non-party Jamie Osuna respectfully replies to the Response filed by Defendants on July 31, 2025 (ECF No. 200), addressing Osuna's pending motion for protective relief (ECF No. 198). For the reasons below, the Response fails to address the core constitutional, procedural, and jurisdictional concerns raised in the motion, and relies heavily on standing arguments and form over substance—while conceding several relevant facts.

    **II. No Contest of Core Factual Allegations**

Defendants' response notably does not contest or address:

- That Osuna was never served with the motion or notice seeking his deposition;
- That the June 16, 2025 deposition order was issued without hearing or service;

- That privileged psychiatric and legal records have been sought, disclosed, or used without due process;
- That Plaintiff's counsel contacted Osuna's capital case attorneys proposing a cooperation-for-leniency exchange;
- That discovery is being disproportionately and prejudicially directed at Osuna as a third party, while actual defendants are shielded.

Moreover, if Osuna's testimony is allegedly "crucial" to the case—as the Attorney General stated—then it is contradictory that the same parties rely on unproven assertions of Osuna's guilt, including statements from Defendant Burnes and/or other defendants. The civil suit was not initiated to relitigate Osuna's criminal charges, nor is Osuna a defendant or proper party in this action. It was brought to address the conduct of correctional staff and institutional failures surrounding the death of Mr. Romero. To now divert discovery almost entirely toward a third party—based on accusations from the very individuals being sued—undermines the foundational claims and turns the case into a collateral attack on Osuna, not a pursuit of justice for constitutional violations committed by government actors.

### III. Attorney General Lacks Standing to Oppose Non-Party Motion in Favor of Plaintiff

The Attorney General's response supports a deposition sought by Plaintiff's counsel, not the Defendants represented by the AG's office. The AG's role is to represent CDCR officers—not to endorse or expand a third-party's private discovery tactics. The fact that Defendants do not oppose Osuna's motion does not imply consent to the deposition. Moreover, the AG offers no argument why its own clients (CDCR) require Osuna's deposition or records.

Indeed, while purporting to represent only its own clients, the Attorney General's office benefits materially from Plaintiff's increasingly invasive discovery campaign. The CDCR defendants represented by the AG—some of whom are witnesses or self-declared victims in the pending criminal trial—now have access, via civil discovery, to records and statements that may be used in their defense or to undermine Osuna's credibility at trial. This entanglement raises

structural due process concerns and blurs the lines between adversarial parties, allowing the state to indirectly leverage discovery tools it could not otherwise access under criminal procedure protections.

### IV. Pending Interlocutory Appeal Reinforces the Need for a Stay

The Attorney General's brief fails to acknowledge the pending interlocutory appeal concerning privilege waivers and improper disclosures related to Osuna. Continuing with discovery—especially a deposition—risks jurisdictional overlap and moots appellate review.

Furthermore, Defendants' own brief acknowledges the inherent risk of constitutional conflict posed by deposing Mr. Osuna at this time. In footnote 1, they admit that "if, at the deposition, Osuna invokes his Fifth Amendment rights such that the parties' ability to present their cases are unduly prejudiced, the Court may stay this matter until Osuna's criminal case is resolved." This admission illustrates the exact concern Mr. Osuna raises: that proceeding with discovery now—particularly deposition—would expose him to constitutional peril and could undermine both the civil and criminal proceedings. Rather than inviting this harm and delay, the Court should proactively grant protective relief.

### V. Osuna's Status as a Third-Party Pre-Trial Capital Defendant Justifies Protective Relief

Osuna remains an unrepresented, mentally impaired individual subject to a pending capital trial. The risk of compelled statements, prejudicial disclosures, and confusion of criminal proceedings is profound. Under California Evidence Code § 930, a criminal defendant has the right not to be called to testify against themselves. By contrast, other witnesses do not have a general privilege against being subpoenaed to testify. See Evidence Code § 911 and Penal Code § 1331. Instead, they must appear and invoke the Fifth Amendment privilege in response to specific questions. See *People v. Sisneros* (2009) 174 Cal.App.4th 142, 151.

However, Jamie Osuna is not a mere witness—he is the charged defendant in a parallel capital criminal proceeding arising from the same incident. As such, he falls within the scope of Evidence Code § 930 and the Fifth and Sixth Amendments, and has the constitutional right not to be called to testify—either directly or indirectly—through a civil deposition that may prejudice

his defense. Forcing a pretrial capital defendant into civil testimony undermines both due process and the privilege against self-incrimination.

Courts have repeatedly ruled that civil discovery cannot be used to undermine criminal protections. See *Estelle v. Smith*, 451 U.S. 454 (1981); *Kordel*, 397 U.S. 1 (1970); *Stringer*, 535 F.3d 929 (9th Cir. 2008).

Moreover, Federal Rule 17(c)(2) and due process require appointment of a guardian ad litem before compelling participation from a person in Osuna's position.

**This case has repeatedly overridden Mr. Osuna's constitutional and procedural rights without notice, representation, or meaningful opportunity to be heard**. Orders have been issued compelling privileged materials, psychiatric records, and deposition testimony without proper service or compliance with due process. The cumulative effect is the erosion of foundational protections afforded to even the most vulnerable defendants—particularly one facing a capital trial while incarcerated, mentally impaired, and without counsel in these civil proceedings. This systemic disregard underscores the need for judicial intervention to restore fairness and legal safeguards pending the resolution of the interlocutory appeal. **Without such relief, this case will continue to undermine Mr. Osuna's fundamental rights and institutional integrity.**

In the alternative, Mr. Osuna requests that no future discovery or deposition be permitted without first obtaining leave of court based on: (1) an evidentiary basis demonstrating proportionality and necessity; and (2) explicit findings that any such attempt would not violate constitutional or statutory protections.

Moreover, even beyond the pendency of the capital trial, any compelled deposition of Mr. Osuna would remain legally improper. His psychiatric and legal impairments, the risk of misuse of statements made in custodial conditions, and his non-party status in this civil matter warrant a permanent prohibition against deposition. Civil litigants may not bypass the fundamental protections of privilege and self-incrimination through discovery mechanisms, especially where mental health issues and past due process violations persist. Therefore, Mr. Osuna respectfully asks that any deposition, now or in the future, be **permanently barred** under Rule 26(c) and Rule

45(d) as inconsistent with law, fairness, and constitutional limits.

Additionally, the Attorney General alternatively requested a stay of deposition until the conclusion of the criminal proceedings, suggesting that self-incrimination concerns would then be moot. However, this misstates the scope of Fifth Amendment protections. The privilege against self-incrimination survives conviction so long as the individual is pursuing an appeal or retains the right to file one. See *People v. Fonseca* (1995) 36 Cal.App.4th 631. The privilege only expires when the time to file an appeal has passed without one being lodged. See *People v. Sisneros* (2009) 174 Cal.App.4th 142, 151; *People v. Lopez* (1999) 71 Cal.App.4th 1550, 1554. It also remains active if the statute of limitations has not yet run on any potentially implicated offense. See *Blackburn v. Superior Court* (1993) 21 Cal.App.4th 414, 428. Therefore, any claim that Osuna could safely be deposed after his criminal trial—without violating his constitutional rights—is legally inaccurate and unsupported.

Moreover, the Attorney General's conduct actively undermines the authority of the criminal court by facilitating the release of sealed or privileged records into public federal court filings—records that the state criminal court explicitly warned must remain confidential to avoid prejudicing Osuna's right to a fair trial and tainting the jury pool. Now, materials obtained through this civil suit—some of which have been filed on the public docket—are accessible to the same CDCR defendants who are likely to testify against Osuna and/or have already filed charges against him (including Sgt. Burnes). These disclosures risk contaminating the criminal proceedings and amount to an end-run around the criminal court's protective orders. Any testimony Osuna is compelled to give in the civil case may later be deemed inadmissible or compromised in his defense. This raises serious Fifth, Sixth, and Fourteenth Amendment concerns, especially given that Sgt. Burnes and other CDCR officials have a direct stake in the outcome of the criminal trial. The strategy of extracting testimony or discovery from Osuna while circumventing constitutional limits is not only improper—it threatens to erode public trust in both judicial systems.

## VI. Conclusion

For these reasons, Osuna respectfully asks the Court to:

1. Quash the June 16, 2025 order compelling deposition **and prohibit any future attempt to depose Mr. Osuna, regardless of the timing of his criminal proceedings;**
2. Enter a protective order prohibiting further discovery absent notice, hearing, and proof of necessity;
3. Confirm that no waiver of privilege may be deemed valid absent hearing and service;
4. Order alternative service for all future filings;
5. Defer any rulings pending the resolution of the interlocutory appeal.

## VII. Request for Remedial Relief or Sanctions

Because Plaintiff's counsel has persistently diverted discovery toward a mentally ill third party—rather than the actual named defendants—and has repeatedly violated procedural, ethical, and constitutional boundaries, Mr. Osuna respectfully requests that the Court consider whether:

(a) all discovery efforts directed at Mr. Osuna should be permanently barred;

(b) any claims or factual contentions based on Osuna's records or statements should be stricken;

Such relief is necessary not only to protect Mr. Osuna, but to preserve judicial integrity and prevent ongoing misuse of the discovery process.

## VIII. Request For Alternative Service

Due to Mr. Osuna's current incarceration at CSP–Corcoran and his pro se status, traditional methods of service are impractical and often result in unreasonable delay. Additionally, it is frequently difficult for Mr. Osuna to locate or rely upon others who are willing and able to sign or verify traditional proof of service forms. Authorizing alternative service via court-facilitated ECF entry will ensure transparency, timeliness, and reliability of notice to all parties without imposing unrealistic burdens on an incarcerated, unrepresented litigant.

Furthermore, Mr. Osuna faces ongoing institutional barriers that further prevent meaningful access to regular service procedures. At present, CSP–Corcoran staff—particularly the Litigation Coordinator/staff [R. Laber; P. Williams; Dan]—have refused to process or forward legal documents on his behalf, including but not limited to filings, subpoenas, and trust account statements required for federal or state court submissions. This refusal has effectively denied Mr. Osuna access to basic litigation functions and imposed unconstitutional barriers to participation in

legal proceedings affecting his rights. These obstructions, combined with the prison's inconsistent mail procedures and limited access to legal assistance, make it functionally impossible for Mr. Osuna to satisfy traditional service requirements.

Accordingly, Mr. Osuna respectfully requests that the Court authorize alternative service under Fed. R. Civ. P. 5(b)(2)(E) and any applicable local rules. He requests permission to effect service, and receive service, by mailing all filings via United States Postal Service (USPS) to the Clerk of the Court, who will then docket the filings into the CM/ECF system. Once filed, the ECF system will automatically serve all parties of record pursuant to the Court's standard electronic service procedures. This ensures proper and timely service to all parties, accommodates institutional constraints, and avoids undue delay or prejudice due to Osuna's inability to use electronic filing systems.

### IX. Request for Judicial Restraint and Deference to Parallel Criminal Proceedings

Third-party Osuna respectfully moves this Court to restrain itself from issuing any further orders, subpoenas, or findings that compel the disclosure of privileged records or testimony—including waivers of constitutional rights—as detailed throughout this motion. In addition to the due process, Fifth Amendment, and procedural violations outlined above, Mr. Osuna has also filed multiple motions with the Kings County Superior Court in his parallel capital prosecution (People v. Osuna, 19CM-1882), requesting further protective orders, judicial subpoenas, and contempt proceedings against individuals alleged to have violated sealing orders, statutes, and ethical obligations.

Osuna respectfully asks that this Court, the Defendants, and Plaintiff's representatives respect the required procedural avenues and jurisdictional boundaries that apply to records and evidence implicated in an active capital case. These parties must first obtain appropriate relief from the criminal court—rather than sidestepping protections by way of civil discovery. The premature or unauthorized release of privileged or sealed materials—especially those affecting Osuna's ability to invoke the Fifth Amendment and avoid self-incrimination—constitutes a constitutional violation and risks tainting the criminal trial and jury pool.

Further, any compelled deposition or testimony by Osuna risks violating *Estelle v. Smith*,

451 U.S. 454 (1981), and *Miranda v. Arizona*, 384 U.S. 436 (1966), by allowing statements to be extracted from a pretrial defendant in a custodial setting without adequate safeguards. The Attorney General, who represents CDCR defendants also acting as potential witnesses or self-declared victims in Osuna's pending criminal case, is fully aware that any statement Osuna makes under civil compulsion could be used against him in the capital proceeding or in support of new criminal charges—thus nullifying his Fifth Amendment protections and creating a dangerous pretext for sanctions based on silence, or deemed inadmissible or compromised in his defense.

Osuna therefore respectfully urges the Court to:

- Refrain from issuing any orders compelling Osuna's deposition or testimony;
- Require Plaintiff and Defendants to comply with proper state court procedures and orders before seeking records or discovery related to the criminal case;
- Defer further action until the Kings County Superior Court has ruled on Osuna's pending motions for protective orders, subpoenas, and contempt proceedings.

Respectfully submitted,

Dated: August 1, 2025

*[signature]*

*p.p.* Jamie Osuna

# CERTIFICATE OF SERVICE

**Case Name:** *Dora Solares v. Ralph Diaz, et al.*

No. 1:20-CV-00323-LHR

I hereby certify that on August 1, 2025, I provided the following documents to the Clerk of the Court via U.S. Postal Service Certified Mail:

REPLY TO DEFENDANTS' RESPONSE TO NON-PARTY OSUNA'S MOTION FOR PROTECTIVE ORDER; MOTION TO PERMANENTLY QUASH DEPOSITION; REQUEST FOR ALTERNATIVE SERVICE

In the filing, I also requested that the Court permit alternative service through the Clerk via CM/ECF pursuant to Fed. R. Civ. P. 5(b)(2)(E), due to institutional limitations on traditional service.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct, and that this declaration was executed on August 1, 2025.

*[signature]*

Declarant Signature
p.p. Jamie Osuna BD0868