

1

**UNITED STATES DISTRICT COURT** SEP 17 2025
**EASTERN DISTRICT OF CALIFORNIA**

2
CLERK U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

3
BY_____
DEPUTY CLERK

4
**Jamie Osuna BD0868**
PO Box 3476          No. 1:20-cv-00323-LHR-BAM
CSP-COR

5
Corcoran, CA 93212

6
Non-Party Intervenor/Real
Party in Interest.

7
                    v.

8
Dora Solares,          **THIRD-PARTY OBJECTION AND MOTION**
**TO QUASH SUBPOENAS AND FOR**

9
          Plaintiff,          **PROTECTIVE ORDER: IMPROPER**
**ATTEMPT TO COMPEL SEALED**

10
     v.          **CRIMINAL AND MENTAL HEALTH**
**RECORDS IN VIOLATION OF**

11
Diaz, et al          **CONSTITUTIONAL RIGHTS**

12
          Defendants.

RECEIVED

13

14
SEP 17 2025

15
CLERK U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

     Third party Mr. Osuna, by and through his filings and

16
BY_____
DEPUTY CLERK

17
objections, respectfully challenges Plaintiff's counsel's attempt

18
to compel disclosure of his privileged mental health records in

19
this wrongful death civil action.

20
     **I. INTRODUCTION**

21
     Plaintiff's attorney, Erin Darling, contends that Mr. Osuna

22
waived his psychotherapist-patient privilege via the filings of

23
unrelated §1983 action. On that basis, Darling now seeks to use

24
or compel disclosure of Osuna's mental health records in this

25
separate wrongful death case.

26
     This argument is unfounded. The privilege belongs solely to

27
Osuna, who is not a party to this litigation. Osuna has filed

28
multiple objections, notices, and requests regarding his

1  privilege, which the Court has docketed but disregarded,

2  continuing to make rulings on his confidential records without

3  allowing him to participate.

4      Moreover, the Office of the Inspector General (OIG) and the

5  Office of Internal Affairs (OIA) remain bound by sealing orders

6  entered in the parallel criminal proceedings. Federal courts have

7  no authority to compel state agencies to disregard such criminal

8  court orders. See *Younger v. Harris*, 401 U.S. 37, 43-44 (1971)

9  (federal courts must refrain from interfering in state criminal

10 proceedings); *United States v. Nixon*, 418 U.S. 683, 691-92 (1974)

11 (valid judicial orders control disclosure of sensitive

12 materials). Accordingly, OIG and OIA may lawfully decline to

13 comply with subpoenas in this matter where compliance would

14 contravene the state court's sealing orders. Such obedience

15 cannot constitute contempt. See *United Mine Workers v. Bagwell*,

16 330 U.S. 258, 294 (1947) (contempt requires violation of a valid

17 and applicable order).

18     Compounding the problem, Osuna is currently facing capital

19 homicide prosecution. His defense team is actively relying on the

20 mental health records at issue here as potential mitigation

21 evidence and protected work product. Disclosure in this civil

22 case would irreparably prejudice his constitutional rights.

23                    **II. LEGAL STANDARD**

24 • **Psychotherapist-Patient Privilege:** Recognized under federal

25   common law. *Jaffee v. Redmond*, 518 U.S. 1, 15 (1996).

26 • **Waiver:** Only the privilege holder may waive. *United States*

27   *v. Amlani*, 169 F.3d 1189, 1195 (9th Cir. 1999). <u>Waiver is</u>

28   <u>not global</u> and must be construed narrowly. *Bittaker v.*

1      *Woodford*, 331 F.3d 715, 720-21 (9th Cir. 2003) (en banc).

2  • **Due Process:** Individuals whose rights are adjudicated must

3      be given notice and an opportunity to be heard. *Mathews v.*

4      *Eldridge*, 424 U.S. 319, 333 (1976).

5  • **Protective Orders:** Courts may restrict discovery to protect

6      non-parties from prejudice. Fed. R. Civ. P. 26(c).

7  **III. ARGUMENT**

8      **A. Privilege Belongs Exclusively to Osuna**

9      The Supreme Court has made clear that the psychotherapist-

10 patient privilege belongs to the patient, not to opposing counsel

11 or other litigants. *Jaffee v. Redmond*, 518 U.S. at 15. Erin

12 Darling cannot waive Osuna's privilege on his behalf.

13     Osuna has not authorized waiver in this wrongful death

14 matter. To the contrary, he has consistently asserted his

15 privilege through objections and notices. Under binding

16 precedent, only Osuna can waive, and he has not done so. *Amlani*,

17 169 F.3d at 1195.

18     **B. Limited Disclosure in a Separate Case Does Not Create**

19 **Global Waiver**

20     The Ninth Circuit has rejected "global waiver" theories,

21 holding that waiver must be limited "to the extent fairness

22 requires." *Bittaker*, 331 F.3d at 720-21.

23     Darling's attempt to use any disclosure in one case to erase

24 privilege in a wholly different lawsuit is legally impermissible.

25     **C. Osuna Has Been Denied a Meaningful Opportunity to Be**

26 **Heard**

27     Although Osuna has filed multiple objections regarding his

28 privilege, the Court has continued to issue rulings on his

3

1   confidential records without affording him standing or meaningful

2   participation. This violates due process. *Mathews v. Eldridge*,

3   424 U.S. at 333.

4       Courts cannot adjudicate an individual's privilege rights

5   behind his back. Doing so undermines the integrity of the

6   proceedings and deprives Osuna of the protections guaranteed

7   under law.

8       **D. The Parallel Capital Case Demands Heightened Protection**

9       Osuna is a defendant in a pending capital prosecution. His

10  defense team is actively relying on the mental health records at

11  issue here as potential mitigation evidence and protected work

12  product. Disclosure in this civil case risks:

13  • Tainting the jury pool in the criminal trial (*Sheppard v.*

14      *Maxwell*, 384 U.S. 333, 362-63 (1966));

15  • Revealing defense strategy in violation of the Sixth

16      Amendment (*Weatherford v. Bursey*, 429 U.S. 545, 554 n.4

17      (1977)); and

18  • Creating structural error requiring reversal if prosecution

19      gains access to privileged defense materials (*Bittaker*, 331

20      F.3d at 722).

21      The Attorney General has already acknowledged this risk by

22  requesting that the civil matter be stayed until after the

23  criminal trial. Yet the Court has disregarded this and proceeded,

24  compounding the prejudice.

25      **E. Protective Relief Is Necessary**

26      Given these circumstances, the Court should issue a

27  protective order under Rule 26(c) to:

28  1. Confirm that any waiver in the unrelated §1983 case does not

4

1    extend to this wrongful death matter;

2    2. Prohibit Plaintiff's counsel from seeking or using Osuna's

3    privileged mental health records here;

4    3. Seal any privileged records already filed in this action;

5    and

6    4. Stay further rulings on Osuna's records until resolution of

7    his parallel criminal case 19CM-1882.

8    **F. Civil Discovery Is Being Misused to Undermine**

9    **Osuna's Criminal Defense**

10    This civil action has become a vehicle for improper

11    intrusion into Mr. Osuna's criminal defense. One of the

12    defendants in this case, Defendant Burnes, is also a State

13    witness against Osuna in his pending capital trial, and an

14    alleged victim in another felony charge. By pressing for

15    disclosure of privileged OIG/OIA records, interrogation

16    notes, and mitigation materials in this civil forum, Burnes

17    and other prison officials would gain premature access to

18    defense information that is not discoverable in the criminal

19    felony proceedings.

20    This tactic operates in effect as a trial by proxy,

21    using civil discovery to circumvent criminal discovery

22    protections. The Constitution forbids such end-runs. See

23    *Weatherford v. Bursey*, 429 U.S. 545, 554 n.4 (1977)

24    (recognizing Sixth Amendment violation where State intrudes

25    into defense strategy); *Bittaker v. Woodford*, 331 F.3d 715,

26    722 (9th Cir. 2003) (waiver in one case cannot prejudice

27    defense in another).

28    **G. Premature Access by Witness Burnes, Who Also Claims**

5

1    **Victim Status in a Separate Felony Case**

2          Defendant Burnes is not only a party to this civil

3    action but also a State witness in Osuna's pending capital

4    prosecution and the alleged victim in a separate felony

5    case. Allowing him to review OIG/OIA reports, interrogation

6    notes, or mitigation-related materials through this civil

7    proceeding would provide access to defense information

8    across two criminal cases in which his roles are directly

9    adverse to Osuna.

10          This creates an intolerable risk of witness

11    contamination and unfair prejudice. See *Napue v. Illinois*,

12    360 U.S. 264, 269 (1959); *Geders v. United States*, 425 U.S.

13    80, 89 (1976); *Sheppard v. Maxwell*, 384 U.S. 333, 362-63

14    (1966). By compelling disclosure here, the Court risks

15    granting Burnes unauthorized access to materials sealed in

16    criminal court, undermining Osuna's rights in both

17    prosecutions.

18          Moreover, although Burnes remains a CDCR employee, he

19    has no legitimate access to OIG or OIA investigative

20    reports, interrogation records, or mitigation materials.

21    Those documents are protected by privilege, protective

22    orders, and sealing orders in the criminal case. The only

23    avenue by which Burnes could review them is through this

24    civil discovery process--an end-run around criminal

25    protections.

26          Granting such access would also enable Burnes and other

27    defendants, all named as parties in this civil action

28    arising from the same incident underlying the criminal

proceedings, to collaborate and study privileged defense
materials. This coordinated access is tantamount to
providing prosecution witnesses with sealed criminal
discovery in advance of trial. Such a result violates due
process and the constitutional guarantee of a fair trial.
See *Phillips v. General Motors Corp.*, 307 F.3d 1206, 1211
(9th Cir. 2002); *Kelly v. City of San Jose*, 114 F.R.D. 653,
660 (N.D. Cal. 1987).

**H. Burnes and Other Defendants Cannot Obtain OIG/OIA**
**Records Through Employment or Criminal Discovery**

Although Burnes remains a CDCR employee, he has no
lawful access to OIG or OIA investigative reports,
interrogation records, or mitigation materials. Those
documents are protected by criminal court sealing orders,
privileges, and protective orders. The only way Burnes could
review them is through this civil litigation, making the
discovery requests here a transparent end-run around
criminal protections.

Granting such access would also allow Burnes and other
civil defendants, all connected to the incident underlying
the criminal case, to collaborate and study privileged
defense materials. This coordinated access amounts to giving
prosecution witnesses and potential adversaries early and
**unauthorized discovery** of sealed criminal evidence.

Courts have consistently held that protective orders
and law enforcement privileges cannot be circumvented in
this way. *Phillips v. General Motors Corp.*, 307 F.3d 1206,
1211 (9th Cir. 2002) (protective orders must be enforced);

7

1    *Kelly v. City of San Jose*, 114 F.R.D. 653, 660 (N.D. Cal.

2    1987) (law enforcement investigatory privilege bars civil

3    access to sensitive investigative files).

4         This Court should not permit civil discovery to provide

5    State witnesses and alleged victims with access to materials

6    that even their employment and criminal discovery rules

7    forbid.

8    **I. Ineffective Federal Protective Orders and Trial by**

9    **Proxy Through Media Exposure**

10        Plaintiff's counsel Erin Darling has argued that the

11   federal court has gone over and beyond to protect the

12   disputed OIG/OIA records through civil protective orders. In

13   practice, however, those protective orders fall far short of

14   the protections imposed by the criminal court's seal.

15        Unlike true sealing orders, which bar public access,

16   the protective orders in this civil case merely designate

17   materials as "attorneys' eyes only" while still allowing

18   filings and descriptions to appear on PACER, accessible to

19   the media and the public. As a result, sensitive content

20   from criminal investigative materials, including Osuna's

21   interrogation interview, has been described, interpreted,

22   and disseminated in public filings. Both Plaintiff's counsel

23   and the Attorney General have openly discussed the contents

24   of such materials, effectively placing them in the public

25   record.

26        Indeed, outlets such as Courthouse News Service have

27   reported on this case, quoting Darling's statements about

28   Osuna and amplifying prejudicial interpretations of

1    privileged or sealed materials. This media-dissemination

2    demonstrates that the current protective order regime is

3    insufficient to safeguard Osuna's constitutional rights.

4        The Supreme Court has repeatedly warned that

5    prejudicial publicity and improper disclosure can deprive a

6    defendant of a fair trial. *Sheppard v. Maxwell*, 384 U.S.

7    333, 362-63 (1966) (courts must prevent publicity that

8    compromises the fairness of criminal trials). Here, the

9    civil forum is being used as a vehicle to conduct a trial by

10   proxy, with Darling and others using public filings to

11   disseminate prejudicial information that would remain sealed

12   in the criminal case.

13       This civil discovery has been applied in a manner

14   inconsistent with protective orders violates Osuna's rights

15   under the Sixth and Fourteenth Amendments. Allowing public

16   access through PACER, and media amplification of the

17   contents of privileged records, directly undermines the

18   impartiality of the future criminal jury pool and

19   contaminates Osuna's ability to receive a fair trial.

20       Further, Plaintiff's counsel has referred to Osuna in

21   public filings and proceedings as a "psychopath," and has

22   made other statements that risk prejudicing the presumption

23   of innocence outside the confines of a criminal trial. Such

24   labels and assertions, when amplified through PACER access

25   and media coverage, erode the presumption of innocence

26   guaranteed to every criminal defendant. See *Estelle v.*

27   *Williams*, 425 U.S. 501, 503 (1976); *Gentile v. State Bar of*

28   *Nevada*, 501 U.S. 1030, 1074-75 (1991).

1    The danger is heightened because filings from this
2    civil case were referenced during Plaintiff's counsel
3    Darling's competency-related proceedings in the criminal
4    court. This demonstrates how Darling's civil litigation
5    tactics have already caused crossover into the criminal
6    forum, underscoring the risk that dissemination of
7    privileged or sealed materials through PACER undermines both
8    the impartiality of the future jury pool and the fairness of
9    related judicial proceedings.

10    The Constitution requires that criminal guilt be
11    determined in a court of law, not in the media or through
12    civil litigation filings. The use of civil discovery and
13    public filings to brand Osuna, prejudge guilt, and expose
14    privileged materials constitutes a trial by proxy, in direct
15    violation of his rights under the Sixth and Fourteenth
16    Amendments. See *Sheppard v. Maxwell*, 384 U.S. 333, 362–63
17    (1966).

18    Plaintiff's counsel has even gone so far as to suggest
19    that the federal court went over and beyond in attempting to
20    protect the disputed records, while at the same time blaming
21    that court for seeking materials and claiming it directed
22    him to pursue them. These arguments reflect a fundamental
23    failure to respect the jurisdictional boundaries between
24    civil and criminal proceedings. The sealing orders entered
25    by the criminal court control these records; this Court
26    cannot override them by rebranding disclosure as a civil
27    discovery matter. See *Younger v. Harris*, 401 U.S. 37 (1971)
28    (federal courts must respect the jurisdiction of state

1    criminal proceedings).

2        Moreover, by making these statements in public filings,

3    Darling has again exposed prejudicial content and

4    interpretations to PACER and to the media, which is

5    inconsistent with the standards of true criminal court

6    sealing orders. Unlike a genuine seal, the federal

7    protective orders here have allowed Darling to describe

8    records on the public docket, thereby compounding prejudice.

9    **J. The Civil Case Should Be Postponed Until Completion**

10   **of the Criminal Trial to Prevent Jury Pool Contamination**

11       This Court should give due consideration to postponing

12   the civil proceedings until Osuna's capital criminal case

13   has concluded. The risk of prejudice is acute because both

14   cases draw from the same local jury pool. By allowing

15   premature release and public discussion of OIG/OIA reports,

16   interrogation materials, and other privileged records in

17   this civil case, Plaintiff's counsel Darling has already

18   caused, and will continue to cause, serious prejudice to

19   Osuna's right to an impartial jury in his pending

20   prosecution.

21       Although materials may be designated for "attorneys'

22   eyes only," Darling has repeatedly described their contents

23   in open court, in filings accessible on PACER, and before

24   media outlets. Any future jury empaneled in this civil

25   matter will hear Darling's interpretations of privileged

26   criminal materials, further amplifying prejudicial

27   narratives. At the same time, those same jurors will be

28   drawn from the pool Osuna must rely upon for his capital

11

1   case.

2       Darling and Defendants cannot dismiss this prejudice by

3   suggesting Osuna may seek a change of venue in the criminal

4   case. Such a motion is not guaranteed to succeed, and courts

5   may deny transfer requests. See *Skilling v. United States*,

6   561 U.S. 358, 381-82 (2010) (change of venue not automatic

7   even with extensive publicity). Moreover, even if granted,

8   widespread and persistent media coverage risks contaminating

9   jury pools beyond the local county, undermining Osuna's

10   rights regardless of venue. See *Rideau v. Louisiana*, 373

11   U.S. 723, 726-27 (1963) (due process violated where

12   pervasive pretrial publicity prejudiced jury pool).

13       This overlap creates an impermissible risk that Osuna's

14   jury will be exposed, directly or indirectly, to prejudicial

15   interpretations of sealed materials before his trial even

16   begins. Such premature exposure impedes Osuna's Sixth

17   Amendment right to a fair and impartial jury. See *Sheppard*

18   *v. Maxwell*, 384 U.S. 333, 362-63 (1966).

19       For these reasons, principles of due process and

20   fundamental fairness require that this civil action be

21   postponed until after the criminal proceedings have

22   concluded, so that the jury pool for Osuna's trial remains

23   uncontaminated.

24   **K. Plaintiff Has Not Put Osuna's Mental Health at Issue**

25       Across multiple amended complaints, Plaintiff's counsel

26   Erin Darling has never alleged that Osuna's mental health

27   was a basis for liability in this wrongful death action.

28   Instead, he has repeatedly described Osuna merely as a

1  "psychopath." That is not a medical or psychiatric

2  diagnosis.

3      Indeed, "psychopathy" is not recognized as a mental

4  disorder in the Diagnostic and Statistical Manual of Mental

5  Disorders (DSM-5), the controlling psychiatric

6  classification. See also *United States v. Stitt*, 250 F.3d

7  878, 884 (4th Cir. 2001) (recognizing psychopathy as

8  distinct from mental illness). Darling's own framing

9  confirms that Osuna's mental health has not been put at

10  issue and thus his privilege remains intact.

11      **L. The Romero Grievance Confirms Mental Health Is**

12  **Irrelevant Here**

13      Plaintiff has also alleged that Romero filed a

14  grievance but has not produced it or connected it to Osuna's

15  mental health. This omission underscores that the civil case

16  is not about Osuna's psychiatric condition but about the

17  conduct of prison officials. Thus, privilege cannot be

18  deemed waived in this matter.

19      **M. Obedience to Criminal Court Seals Cannot Be Punished**

20  **as Contempt**

21      OIG and CDCR are bound by the criminal court's sealing

22  orders. Compliance with those orders cannot subject them to

23  contempt in this civil action. See *United Mine Workers*, 330

24  U.S. at 294 (contempt requires violation of a valid,

25  applicable order). Here, the only valid and controlling

26  orders are those of the criminal court.

27      To hold these agencies liable for honoring the criminal

28  court's seals would violate principles of comity and exceed

13

1    this Court's authority. See *Younger v. Harris*, 401 U.S. 37

2    (1971).

3    **N. Plaintiff's Counsel's Tactics Constitute Improper**

4    **Circumvention and Threaten Constitutional Rights**

5        By seeking in this civil matter what he could not

6    obtain from the criminal court, Plaintiff's counsel Erin

7    Darling is attempting an impermissible end-run around

8    established criminal protections. This tactic risks

9    contaminating the criminal trial, providing State witnesses

10   with access to sealed materials, and intruding on defense

11   strategy, all in violation of the Sixth and Fourteenth

12   Amendments. See *Weatherford*, 429 U.S. at 554 n.4; *Bittaker*,

13   331 F.3d at 722.

14       Darling's approach risks intruding upon criminal

15   evidence and interfering with the integrity of witnesses

16   under the guise of civil discovery, risking due process

17   violations in a pending capital case.

18       Plaintiff's counsel's position also improperly shifts

19   blame to the federal court, portraying it as the source of

20   authority to pursue sealed criminal materials, when in fact

21   jurisdiction lies solely with the criminal court that issued

22   the seal. Any attempt to sidestep those orders in this civil

23   forum disregards the limits of federal jurisdiction and

24   intrudes upon criminal proceedings where Osuna's liberty and

25   constitutional rights are at stake.

26   **O. Escalation to Appellate, Criminal, and Civil**

27   **Remedies**

28       If this Court persists in compelling disclosure of

14

sealed OIG/OIA, mental health, inter alia records, Mr. Osuna

will have no choice but to seek immediate relief from higher

courts, including the Ninth Circuit through mandamus or

interlocutory appeal, as well as from the state criminal

court that issued the sealing orders. See *Bauman v. U.S.*

*Dist. Court*, 557 F.2d 650, 654 (9th Cir. 1977).

Further, Mr. Osuna expressly reserves his right to

pursue separate civil actions against any parties who

knowingly attempt to circumvent criminal court orders or

intrude upon his constitutionally protected privileges. Such

conduct may give rise to claims under 42 U.S.C. § 1983 for

violation of due process, Sixth Amendment rights, and

unlawful interference with the criminal defense process.

**P. Plaintiff's Counsel Has Failed to Justify Waiver of**
**Privileges Over Third-Party Constitutional Rights**

Plaintiff's counsel Erin Darling has never explained,

nor could he, how forcing waiver of Osuna's privileges could

outweigh Osuna's constitutional rights to a fair and

impartial jury trial in his pending capital prosecution.

Courts have consistently held that privileges, particularly

the psychotherapist-patient privilege, are absolute and not

subject to balancing against generalized civil discovery

interests. *Jaffee v. Redmond*, 518 U.S. 1, 17 (1996).

Even if Darling could argue relevance, Osuna is not a

party to this civil action. His privileged mental health

records are relied upon in his criminal defense, and

disclosure here would irreparably taint that process. See

*Bittaker v. Woodford*, 331 F.3d 715, 720-22 (9th Cir. 2003)

15

1    (waiver must be narrowly confined, not global).

2    **Q. Darling's Tactics Constitute Impermissible Fishing**

3    **Expeditions**

4    Darling repeatedly argues that because others have seen

5    documents, including OIG reports, he should be entitled to

6    comb through them as well, even absent any showing of need.

7    This is improper. The Supreme Court has held that discovery

8    cannot be used as a tool for harassment or for wide-ranging

9    fishing expeditions. *Seattle Times Co. v. Rhinehart*, 467

10   U.S. 20, 34 (1984); *Oppenheimer Fund, Inc. v. Sanders*, 437

11   U.S. 340, 351 (1978).

12   Civil discovery rules do not authorize blind combing

13   through sealed criminal investigative files merely on the

14   theory that something might be there.

15   **R. Misrepresentations and Shifting Allegations Confirm**

16   **Abuse**

17   Darling has also engaged in evolving and inconsistent

18   claims to justify his discovery tactics:

19   • He alleged Osuna had a lot of in-cell violence, yet cited

20   only a single incident from 2012 in county jail, far removed

21   from CDCR's jurisdiction and inconsistent with his broad

22   claims.

23   • He has repeatedly referenced a grievance by Romero but has

24   failed to produce it, later attempting to shift his

25   narrative when it did not support his claims.

26   This conduct demonstrates an abuse of the discovery

27   process. Courts have inherent authority to sanction such bad

28   faith tactics. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46

1    (1991); *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 766

2    (1980).

3    **S. Civil Discovery Cannot Undermine Constitutional**

4    **Rights**

5    Darling's pattern of misuse seeks to leverage civil

6    discovery to obtain materials shielded in a criminal

7    proceeding, thereby undermining Osuna's Sixth and Fourteenth

8    Amendment rights. Civil litigants' interest in combing

9    through documents cannot outweigh a defendant's right to a

10   fair trial and impartial jury in a capital case. See

11   *Sheppard v. Maxwell*, 384 U.S. 333, 362-63 (1966);

12   *Weatherford v. Bursey*, 429 U.S. 545, 554 n.4 (1977).

13   **IV. CONCLUSION**

14   For the foregoing reasons, Osuna respectfully objects to

15   Plaintiff's counsel's claim of global waiver and requests that

16   the Court:

17   1. Recognize that Osuna retains his psychotherapist-patient

18      privilege;

19   2. Reject Plaintiff's counsel's attempt to compel disclosure;

20   3. Enter a protective order preserving privilege and sealing

21      any records already filed; and

22      September 16, 2025,

23      Respectfully submitted,

24

25

26

27      p.p. Jamie Osuna

28

## Certificate of Service

**THIRD-PARTY OBJECTION AND MOTION TO QUASH SUBPOENAS AND FOR PROTECTIVE ORDER: IMPROPER ATTEMPT TO COMPEL SEALED CRIMINAL AND MENTAL HEALTH RECORDS IN VIOLATION OF CONSTITUTIONAL RIGHTS**

I, Jamie Osuna, declare:

1. I am an incarcerated, pro se non-party at CSP–Corcoran, and I am not a registered CM/ECF participant.
2. Prison officials have refused to e-process legal filings beyond original conditions of confinement complaints. I therefore cannot serve parties directly by e-filing.
3. On September 16, 2025, this filing was addressed and sent through USPS to the United States District Court, Eastern District of California, for docketing.
4. Pursuant to Fed. R. Civ. P. 5(b)(2)(D) and Local Rule 135, I respectfully request that the Clerk of Court serve all registered CM/ECF participants in this case through the Court's electronic filing system, as I cannot effectuate service otherwise.
5. I previously filed motions requesting alternative service through the Clerk and CM/ECF, which remain pending. This certificate is submitted to preserve my rights and ensure service through the Court's system.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

September 16, 2025,

Respectfully submitted,

Jamie Osuna, BD0868
CSP–Corcoran
P.O. Box 3476
Corcoran, CA 93212