Justin E. Sterling, State Bar No. 249491
LAW OFFICES OF JUSTIN STERLING
Justin@SterlingDefense.com
15760 Ventura Blvd. Suite 700
Encino, CA 91436
Tel. (818) 995-9452/Fax. (818) 824-3533

Erin Darling, State Bar No. 259724
LAW OFFICES OF ERIN DARLING
Erin@ErinDarlingLaw.com
3435 Wilshire Blvd. Suite 2910
Los Angeles, CA 90010
Tel. (323) 736-2230

Attorneys for Plaintiff Dora Solares

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DORA SOLARES, an individual,<br><br>Plaintiff,<br>v.<br><br>RALPH DIAZ, in his individual capacity, KENNETH CLARK, in his individual capacity, JOSEPH BURNS, in his individual, and DOES 1 TO 15, in their individual capacities<br><br>Defendants. | Case No. 1:20-cv-00323-LHR-BAM<br><br>**PLAINTIFF'S BRIEF RE: WAIVER OF PSYCHOTHERAPIST-PATIENT PRIVILEGE**<br><br>Judge:   Hon. Lee H. Rosenthal |

Plaintiff Dora Solares hereby files her Brief Re: Waiver of Psychotherapist-Patient Privilege as it relates to Jamie Osuna's litigation in E.D. Cal. Case No. 24-cv-793, and pursuant to the Court's Order on September 12, 2025. (Dkt. No. 69). Osuna waived the privilege when he: (1) placed his mental health at issue; (2) placed communication between himself and LCSW K. Kyle directly at issue; (3) explicitly referenced the contents of his one-on-one conversations with Kyle.

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. BACKGROUND

On November 14, 2024, Jamie Osuna filed a "Complaint for Declaratory and Injunctive Relief, Compensatory and Punitive Damages." *See* E.D. Cal. Case No. 1:24-cv-00793-KES, ECF Docket Entry No. 22 ("Complaint" and "Dkt. No. 22").

On April 7, 2025, Magistrate Judge Stanley A. Boone issued the "Findings and Recommendations Recommending Dismissal of Certain Claims." *See* E.D. Cal. Case No. 1:24-cv-00793-KES, ECF Docket Entry No. 24 ("Dkt. No. 24").

On April 14, 2025, Osuna filed a "Motion: To Grant Written Objections to Magistrate Judge's Recommendation of Denial of Some Claims." *See* E.D. Cal. Case No. 1:24-cv-00793-KES, ECF Docket Entry No. 25 ("Dkt. No. 25").

On September 12, 2025, this Court issued a minute order for the parties to file briefs "explaining what, if any, effect Osuna's litigation in Case No. 24-cv-793 (E.D. Cal.) has on Osuna's psychotherapist-patient privilege, including whether he waived that privilege." *See* E.D. Cal. Case No. 1:20-cv—323-KHR, ECF Docket Entry No. 69.

On September 15, 2025, in E.D. Cal. Case No. 1:24-cv-00793-KES, District Judge Kirk E. Sherriff ruled that Osuna had "stated a cognizable claim for deliberate indifference to his safety against defendants" including J. Burnes and K. Kyle, as well as a "cognizable retaliation claim against defendants" including J. Burnes. *See* E.D. Cal. Case No. 1:24-cv-00793-KES, ECF Docket Entry No. 26 at 3 ("Dkt. No. 26"). Sheriff addressed Osuna's various objections and summarized that he "contends that defendants were aware of his various mental health and physical conditions." *Id.* at 2.

On September 16, 2025, Magistrate Judge Stanley A. Boone issued an "Order Finding Service of Complaint Appropriate and Ordering Service," directing e-service on defendants, including certain defendants in this case, Burnes, Kyle-Maytubby, Pena, and Loza. *See* E.D. Cal. Case No. 1:24-cv-00793-KES, ECF Docket Entry No. 27. ("Dkt. No. 27") Osuna may now proceed with his case. His allegations hinge on patient-psychotherapist interactions, the ensuing improper classification, and fatal double-cell.

## II.     STATEMENT OF FACTS

### A.     Osuna's Complaint (ECF Docket No. 22)

Paragraph 8 of Osuna's Complaint, in which he is the only plaintiff, alleges: "Due to Pl.'s intellectual hardship of being under a continual PC 2602 grievance order, schizophrenic-type mental illness, SHU.RHU housing, alleging ongoing retaliation, Pl. requested and received help in the transcribing/writing of this complaint." *See* Dkt. No. 22, Para. 8.

Paragraph 37 goes on to allege that "Defs. J. Burnes and K. Kyle held a special committee with only Defs. J. Burnes and K. Kyle in attendance for the purpose of clearing Pl.'s mental health status, which enabled Pl. to meet the criteria for double-cell clearance. *See* Dkt. No. 22, Para. 37.

Paragraph 39 further details Kyle's mental health care  treatment provided to Osuna, as well as communications between the psychologist and patient: "Def. K. Kyle had before/during that time placed Pl. under extreme mental health restrictions – Pl. was not allowed to have razors, containers due to Pl.'s CDCR-documented ongoing self-mutilations…Previously, Def. had rebuffed, mocked to Pl. RBGG's letter to CSP-COR regarding a necessary but withheld elevation of mental health care/transfer of Pl. Def. would express her anger at Pl..'s grievance being added to her permanent record, and for Pl. contacting Def.'s supervisors over Def. K. Kyl's misconduct, including Def. K. Kyle's alleged cover-up/complicity with Def. J. Burnes." *See* Dkt. No. 22, Para. 39.

Paragraph 45 further details waived communications between psychotherapist and patient, and apparently, correctional officer: "On or around 01/27/19, Def. J. Burnes came to Pl.'s cell and said, 'So, you're writing grievances again?' and that, 'That's the word. I got ears everywhere." Pl. asked, "Is that what Kyle [Def. K. Kyle] told you after my one-on-one? 'Cause she's the only one I told...'" *See* Dkt. No. 22, Para. 45.

Paragraph 76 further describes one-on-ones between psychologist and patient: "On or around 07/20/29, Pl. had a one-on-one with Def. K. Kyle. She asked Pl. if he had any remorse for 'what he did to his first victim[.]'" *See* Dkt. No. 22, Para. 76.

2

Additionally, the complaint references Osuna's classification to be double celled, which was based on his mental health status. In Paragraph 83, in describing a retaliation claim, Osuna brings up the alleged improper classification. *See* Dkt. No. 22, Para. 83. Similarly, Paragraph 88 alleges that Burnes retaliated against Osuna "when he double cell cleared" both Romero and Osuna. *Id.* at Para. 83. Significantly, the Complaint details actions of defendant Kyle in her treatment of Osuna, specifically "producing/signing the inaccurate new 128-G Chrono so that Pl. then met the criteria for double-cell clearance" and that that "resulted in unnecessary, wanton infliction of pain/injury." *Id.* at Para. 90. The complaint's theme is clear and his mental health is central to it: "Pl. repeatedly asked for medical/mental health help, but no care was provided." *See* Dkt. No. 22, Para. 63.

**B.    Magistrate Judge Findings and Recommendations (ECF Docket No. 24)**

Here is Magistrate Judge Stanley A. Boone's summary of Osuna's Factual Allegations: "Defendant J. Burnes and K. Kyle held a special committee with only them in attendance for the purpose of clearing Plaintiff's mental health status, which enabled Plaintiff to meet the criteria to be double-celled." *See* Dkt. No. 24 at 3, l. 13-15. " It was brought to Plaintiff's attention that Defendant K. Kyle, as mental health supervisor, had the authority to draft reporting/advocate for Plaintiff to be on temporary single-cell status but chose not to do so. Defendant Kyle had before/during that time placed Plaintiff under extreme mental health restrictions—Plaintiff was not allowed to have razors or containers due to documented ongoing self-mutilations." *Id.* at 3, ll. 19-23.

**C.    Osuna's Motion (ECF Docket No. 25)**

Osuna continued to put his mental health at issue on the very issue of classification for double celling in Dkt. No. 25.

In "Objection 2 to Retaliation" on page 3, Osuna details his mental health condition: "The adverse action caused damages and physical injuries to Pl., such as decompensation, psychotic episodes with self-injurious behavior," which included "hundreds of cut wounds." *See* Dkt. No. 25 at p. 3, l. 26 to p. 4, l. 1.

3

1    In "Objection 3 to Denial of Medical/Mental Health Treatment", Osuna opens
2 up about his mental health treatment, describing how "correctional officers were aware
3 Pl. was on antipsychotic/psychotropic medications and Pl.. suffered tardive dyskinesia,
4 tremors, other serious side effects from either taking or not taking medications." *Id.* at
5 4, ll. 23-24. Similarly, Osuna alleges that "Defs. Were aware of Pl.'s serious mental
6 illness, and the side effects of his antipsychotic/psychotropic medications, and Pl.'s
7 mental illness that disrupts his daily living activities." *Id.* at 5, l. 7-9.

## III.   ARGUMENT

9    Osuna has waived his privilege in the federal lawsuit that he filed because he has:
10 (1) placed his mental health at issue; (2) placed communication between himself and
11 LCSW K. Kyle directly at issue; (3) explicitly referenced the contents of his one-on-one
12 conversations with Kyle.

13    A party waives the privilege when he places his mental condition at issue. *Thomas-*
14 *Young v. Sutter Cent. Valley Hosps.*, 2013 U.S. Dist. LEXIS 85377, *12, 2013 WL 3054167
15 (E.D. Cal. June 17, 2013). In the Eastern District of California, the broad approach to
16 waiver has been held to apply even when no specific emotional injury claimed when
17 emotional damages formed the crux of plaintiff's claim. *See EEOC v. Cal. Psychiatric*
18 *Transitions*, 258 F.R.D. 391, 400 (E.D. Cal. 2009) (waiver even though no specific
19 emotional injury claimed since emotional distress "the crux of Plaintiff's claim"); *I.R. v.*
20 *City of Fresno*, 2014 U.S. Dist. LEXIS 52094, *11-12 (E.D. Cal. Apr. 11, 2014) (privilege
21 waived by Plaintiff whose complaint made generic allegations of emotional distress and
22 protective order was in place).

23    First, Osuna has placed his mental health at issue. His complaint alleges that
24 defendant K. Kyle placed him "under extreme mental health restrictions…due to Pl.'s
25 CDCR-documented ongoing self-mutilations." *See* Dkt. No. 22, Para. 39. Moreover, as
26 a result of the alleged violations, Osuna says he experienced "psychotic episodes with
27 self-injurious behavior," which included "hundreds of cut wounds." *See* Dkt. No. 25 at
28 p. 3, l. 26 to p. 4, l. 1.  Osuna explicitly describes his mental health issues, and that it

4

was known to others: "correctional officers were aware Pl. was on antipsychotic/psychotropic medications and Pl. suffered tardive dyskinesia, tremors, other serious side effects from either taking or not taking medications." *Id.* at 4, ll. 23-24. Indeed, a basis for his claims is that others knew about his illness and medications, and the problem is not that they knew privileged medical information but that they did not treat him accordingly: "Defs. were aware of Pl.'s serious mental illness, and the side effects of his antipsychotic/psychotropic medications, and Pl.'s mental illness that disrupts his daily living activities." *Id.* at 5, l. 7-9.

Additionally, Osuna placed communication between himself and Kyle directly at issue in that he references mental health records, and that Kyle produced/signed "the inaccurate new 128-G Chrono so that Pl. then met the criteria for double-cell clearance." *See* Dkt. No. 22, Para. 90. The double-cell clearance is central to Osuna's claim because it "resulted in unnecessary, wanton infliction of pain/injury." *Id.*

Moreover, Kyle explicitly references his one-on-one communications with Kyle, thus waiving them in that instance. Osuna states, "On or around 07/20/29, Pl. had a one-on-one with Def. K. Kyle. She asked Pl. if he had any remorse for 'what he did to his first victim[.]'" *See* Dkt. No. 22, at Para. 76. Additionally, Osuna describes how he waived his privilege when speaking to Burnes about what he discussed with Kyle: "Is that what Kyle [Def. K. Kyle] told you after my one-on-one? 'Cause she's the only one I told...'" *Id.* at Para. 45. Osuna waived what privileged communication with Kyle when he told Burnes, and then Osuna waived again by describing it in his complaint.

### IV. CONCLUSION

Osuna should be deemed to have waived the psychotherapist-patient privilege.

Respectfully submitted,

Dated: September 19, 2025  LAW OFFICES OF ERIN DARLING

By: _____*/s/Erin Darling*_____
Erin Darling,
Attorney for Plaintiff

5