UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
FRESNO DIVISION

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

DORA SOLARES,                          1:20-CV-00323-LHR-FRS

        Plaintiff,

VS.


RALPH DIAZ, et al.,

        Defendants.              SEPTEMBER 12, 2025

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

DORA SOLARES,                          1:21-CV-01349-LHR-BAM

        Plaintiff,


VS.


JOSEPH BURNS, et al.,

        Defendants.              SEPTEMBER 12, 2025


\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

        TRANSCRIPT OF ZOOM DISCOVERY HEARING PROCEEDINGS
        HEARD BEFORE THE HONORABLE LEE H. ROSENTHAL
                UNITED STATES DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
APPEARANCES:

FOR THE PLAINTIFF:              MR. ERIN R. DARLING
                                Law Offices of Erin Darling
                                3435 Wilshire Boulevard
                                Suite 2910
                                Los Angeles, CA 90010

        Proceedings recorded by mechanical stenography,
transcript produced via computer.

FOR THE DEFENDANTS           MR. JEREMY DUGGAN
JOSEPH BURNS, ET AL.,         Office of the Attorney General
and RESPONDENT               1300 I Street
CALIFORNIA DEPARTMENT         Suite 125
OF CORRECTIONS AND            Sacramento, CA 95814
REHABILITATION:


FOR THE RESPONDENT           MR. DAVID E. KUCHINSKY
CALIFORNIA DEPARTMENT         California Department of
OF CORRECTIONS AND              Justice
REHABILITATION:              1300 I Street
                             Suite 125
                             Sacramento, California 95814


FOR THE DEFENDANTS           MS. LYNNE G. STOCKER
LUIS SILVA and ERIK BEAM:     Andrada & Associates
                             1939 Harrison Street
                             Suite 612
                             Oakland, California 94612


FOR THE RESPONDENT           MR. JAMES C. SPURLING
CALIFORNIA OFFICE OF THE      MR. JARED RENFRO
INSPECTOR GENERAL:           California Office of the
                                Inspector General
                             10111 Old Placerville Road
                             Suite 110
                             Sacramento, California 95827


Official Court Reporter:     Lanie M. Smith, CSR, RMR, CRR
                             Official Court Reporter
                             United States District Court
                             Southern District of Texas
                             515 Rusk
                             Room 8004
                             Houston, Texas 77002

**P R O C E E D I N G S**

THE COURT:  Go ahead and state your appearances, please.

MR. DARLING:  Good afternoon.  Erin Darling on behalf of the plaintiff.

MR. DUGGAN:  Good afternoon, Your Honor.  Deputy Attorney General Erin Duggan on behalf some defendants and nonparty CDCR.

THE COURT:  Thank you.

MS. STOCKER:  Good afternoon, Your Honor. Lynne Stocker on behalf of Defendant Silva and Defendant Beam.

THE COURT:  Very good.

MR. SPURLING:  Good afternoon, Your Honor. James Spurling and Jared Renfro from the California Office of the Inspector General.

THE COURT:  Okay.  Thank you.

So I've gone through, with the help of the very able law clerk, the issues raised by the privilege claims and work product protection claims of those who have received the discovery requests in this case.  So I propose that we just march through those and discuss them as needed.

I want to compliment the attorneys who were producing the documents on being very careful, and I think accurate, in the redactions that they have made.  I think the right balance has largely been achieved, that the plaintiff is

getting the materials that are not subject to privilege or work product protection claims and is getting what he needs.

At the same time the lawyers have done a good job of identifying what needs to be withheld because of the protections and privileges that are at issue.

So with that overview, let me start with the OIG privilege log. Having gone through the documents and the redactions, I think they are appropriate and judicious.

Document 1 is ordered to be produced to the extent it contains a factual recitation of the events leading up to the murder and just the observations of the crime scene and the redactions of the mental impressions that would require work product protections are appropriately done.

MR. SPURLING:  Thank you, Your Honor.

THE COURT:  Document 2 has a lot of communications between the OIG attorneys, the CDCR attorneys and the investigatory staff.  Most of those communications are witness statements and similar documents.  They don't include attorneys' mental impressions -- some do; and the parties' redactions, again, I think have appropriately been focused on the contents that contains legal advice, attorney mental impressions, or privileged information about the privileged mental health information.

So the OIG documents should be produced as redacted.

MR. SPURLING:  Thank you, Your Honor.  It will be done.

THE COURT:  All right.  Thank you.

All right.  Silva's motion to quash.

There is a qualified privilege at federal common law for, quote, official information.  Most of the documents that were provided to the Court in June of this year on behalf of Silva don't have any direct relevance to the Solares case.  They're procedural disputes about the litigation that was pending in California relating to Mr. Silva's position.

There's information about a consulting expert that Silva retained but did not use as far as I can tell and I don't believe that the requirements under 26(b)(4)(D)(ii) for the compelled disclosure of a consulting expert have been met.

So Documents 1, 2, 3 and 4 and 5 don't need to be produced.  They are either irrelevant or privileged.

Interrupt if there are questions, please.

MS. STOCKER:  Not so far, Your Honor.

THE COURT:  All right.  Thank you.

CDCR's motion to squash, just so the record is clear, the OIG privilege log -- I'm sorry -- Silva's motion to quash was Docket Entry Number 185, and that's granted to the extent stated on the record.

CDCR's privilege log and its motion to quash, the motion to quash is Docket Entry Number 180.  I'm going to grant that in part.  The CDCR has to produce the documents with the

redactions that it submitted.  Again, I thought that those were appropriately made.  But it also has to produce Document Number 7 with redactions for the psychotherapist-patient privilege.

I think that that's enough of a description to enable you to figure out what needs to be redacted.

Most of these documents are memos from the CDCR Vertical Advocate -- I don't know where you guys come up with these names -- about the legally appropriate adverse employment action against the officers who were subject to disciplinary proceedings for their role in the decedent's death.

These were communications that conveyed legal advice and were subject to the attorney-client privilege.  For the remaining documents, CDCR has redacted to the extent that the documents contain legal advice; attorney mental impressions; or privileged health information; and, again, information about VA -- that stands for vertical advocate -- Morgan's consulting expert is also not discoverable.  There are no exceptional circumstances present.

Docket Entry Number 7 on CDCR's privilege log, however, is a little bit different.  It's a summary of the factual information presented by a case investigator to the warden to make a determination or contribute to the determination of whether misconduct had occurred or whether further investigation was needed.  There's no apparent legal

advice in the memo.  There is an attorney who apparently was copied along with a bunch of other people, but I don't think that's enough to cloak it in privilege.  So it does need to be produced.

Solares has raised objections, the CDCR timely opposed.  This is a discovery dispute that is the subject of a lot of careful negotiations, if that's the right word, about the limits of privileges and protections in the context of this case.  The fact that OIG has privileged communications that CDCR produced doesn't mean that CDCR waived them.  I think there's a common interest between the two entities and California law compels disclosure from CDCR to the OIG, as I understand it, and that makes the production involuntary and not the subject of a voluntary waiver.

And I don't think that the fact that OIG published findings waives CDCR's privilege because California law compels the OIG to conduct investigations and to disclose the documents that make up the investigation or are discovered in the investigation to disclose them to the CDCR -- I'm sorry -- to the OIG.

So going down just the list, there are a number of memoranda regarding potential staff misconduct.  These are legal memoranda created for the purpose of litigation before the State Personnel Board, not subject to production.

There are investigative reports, so that's 1

through 5; 6 and 7 are memoranda, one involving -- that were questions for the investigator that were generated for the purpose of the litigation before the Personnel Board and another was a summary of the factual investigator to the warden to make a determination on whether the misconduct had occurred. That's Number 7.  That has to be produced.

MR. DUGGAN:  With redactions first?

THE COURT:  Yes.  Limited.

8 is privileged.  It's a legal memoranda created for the purposes of litigation before the State Personnel Board.

9, 10, 11 and 12 all have to be produced with redactions, however, to protect the limited amounts of psychotherapist-patient privilege content.

12, produce with redactions for attorney-client privilege work product and, again, the psychotherapist-patient privilege.

13 and 14 are memoranda for the purposes of the State Personnel Board litigation.  They are privileged.

15 is a memoranda about potential staff misconduct.  It includes some discussion of communications from an attorney named Morgan.  This needs to be produced with redactions to protect attorney-client privilege and attorney work product.

16 is privileged.  It's a letter from the CDCR

attorney to others -- I'm sorry.  It is from an attorney -- from someone from the office of Internal Affairs to a CDCR attorney and it contains privileged communications made for the purpose of seeking legal advice about the staff discipline proceedings.

17 is from the -- is from the warden of the substance abuse treatment facility to an associate director of the Division of Adult Institutions.  This needs to be produced with redactions, and the redactions that have been made are appropriate to protect the limited amounts of material covered by the psychotherapist-patient privilege.

18 and 19 are privileged.  They are legal memoranda created for the purpose of the State Personnel Board litigation.

20 needs to be produced with redactions.  It contains attorney work product that is appropriately redacted, but the rest needs to be produced.

21, it is from the acting chief deputy warden at the facility -- at the prison to a CDCR confidential file dealing with the staff misconduct.  It's properly redacted, but it needs to be produced subject to the redactions.

Same thing for 22 and 23:  Produce subject to the redactions.

24 and 25 relate to a consultant -- consulting expert that apparently was retained but not used, and there are

no exceptional circumstances that warrant disclosure of a consulting expert.

So I think that takes care of the OIG information in the CDCR motions.

Mr. Osuna moved for a protective order.

What happened, Mr. Darling, in the state court hearing?

MR. DARLING:  Your Honor, a few things to update.

So we went out -- Osuna specifically requested civil counsel and that was denied.  He has two able counsel for the death penalty case and so the civil discovery is not so special that he needed distinct civil counsel; so he keeps his counsel.

There was no order on the mental health records. It's becoming a theme and this complicated bureaucratic thing where people are, like, "Well, ask the other person"; so there's that.

But then I think what I just learned -- like, just, just learned -- I think is significant, which is that Osuna himself has placed his mental health at issue in federal court by filing a complaint for declarative and injunctive relief in November of last year.  And I could give you the case number and docket; but in that --

THE COURT:  Yeah, I do want that.

MR. DARLING:  Yes.

THE COURT:  I think everybody on the call wants that.

MR. DARLING:  Well, and this is the thing, Your Honor. We've been talking about this for some time and it's significant that the first two named defendants in this federal lawsuit in the Eastern District of California for injunctive relief are against Burns and Kyle.

And so I'm not impugning any individual lawyer here, but the Cal DOJ certainly knew because they opposed this and filed, I believe, a motion to dismiss; but in that complaint, Osuna brings up being schizophrenic, being subject to anti-psychotropic medication and subject to retaliation by Kyle and Burns for complaints that he made and that the decision to single-cell him was made basically in retaliation.

THE COURT:  To single-cell him or double-cell him?

MR. DARLING:  Double-cell him.  Remove him from being single-celled to being double-celled.

THE COURT:  That makes more sense.

MR. DARLING:  And so there's very parallel allegations. Certainly they're different, but they certainly overlap.  But squarely he is placing his mental health at issue in that.

And then the motion to dismiss, I believe, is granted and then Osuna then files in this year an objection. And in that -- so the magistrate judge grants and then he files a response and then he again brings up his mental health issue in this motion to grant written objections to a magistrate

judge's recommendations.

And I'm not making any comment on the procedural -- whether this is correct, what this *pro se* prisoner is doing; but my point is in November of '24 and in April of '25, Osuna is affirmatively bringing a case and bringing up the mental health treatment he received and that he was receiving antipsychotic medication and was being negatively treated as a result.

THE COURT:  So I'm a little confused.  Is his theory that he was retaliated against by being double-celled because he was taking mental health medications?

MR. DARLING:  Well, it's that he is being treated; that he has made complaints about Kyle and Burns; and that because he has made complaints, that they -- and that he has repeatedly asked for mental health care, that he then is double -- he is doubled-celled in retaliation.

Then there's other allegations that don't have to do with mental health, that have to do with him being reclassified as a Sureños gang member, even though he says he's a dropout, and that Burns makes threats against him and also alleges that he's being placed with a guy who wants to beat him up because there's allegations of being a sex offender.

So there's a bunch of other allegations that don't have to do with mental health; but he clearly -- in Paragraph 8, he talks about having a schizophrenic-type mental

illness; in Paragraph 37, he says they're clearing plaintiff's mental health status for purposes of assigning to a double cell; they placed plaintiff under extreme mental health conditions and that Kyle expressed her anger at basically him filing a grievance.

And so I'm kind of -- at this point, this is very newly learned by me; but I'm kind of waving my hands and saying:  Wait a second.  As opposed to loss of briefing that we've already done and loss of issues that remain unresolved in state court that we're going to go back in October for, for the Court to look at again, but, again, kicking the can down the road, just here we have in the Eastern District back in just November of '24 and April of '25, Osuna putting his mental health at issue and not in some abstract way, but as it relates to his classification prior to the murder of Romero.

THE COURT:  And what is it that you want me to do with this information?

MR. DARLING:  Instead of us focusing on the state court and getting records that the Court could then review to determine that Osuna has waived his mental health because he put his mental health at issue in the criminal court about competency back in 2019 -- and I'm happy to go down that road if need be, because I think it's clear that he did -- but I think things could get a lot simpler if the Court just reviews the Eastern District case that Osuna filed where his mental

health is definitely at issue and he himself affirmatively references in this case -- it's 1:24-cv-793.

And, again, this is not far afield.  The first two named defendants in Osuna's motion are my defendants in Solares I, which is Burns and Kyle.

And, again, I'm not impugning any individual lawyer here, but the Cal DOJ knew about this, they opposed this, they've been litigating this.  And I get how big institutions get siloed, but we've been -- I think we've been spinning our wheels on one issue when this other issue, I think, could be dispositive.

MR. KUCHINSKY:  Your Honor, could I just be heard on that briefly?

THE COURT:  Of course.

MR. KUCHINSKY:  I don't know where Mr. Darling is getting the idea that we've opposed it.  I pulled up the docket in Lexis and it looks like the Court was actually *sua sponte* screening the complaints that Mr. Osuna was filing.  I don't see an appearance entered by any member of the DOJ, I don't see that any service has been authorized.  What I see is that the Court was conducting the screening of a *pro se* prisoner complaint, which it's required to do under 1915, and that it's still in that stage and no defendant has been served.

So maybe I'm looking at the wrong case.  I typed in that case number; but as I look at the docket, that's the

status of it and so as a first issue to say that DOJ knew about it and our lawyers have filed it off, I don't see any basis for that. I certainly wasn't aware of this pending action.

I would like -- if we're going to use this as a basis to find a waiver, I think we should have some opportunity to look at what the claims are, whether -- I mean, it looks like he may not even be stating a claim just based on my first review of the docket.

So I think we should take an examination of what the claims are and whether there's actually his mental health treatment at issue, not just the fact that he's saying he's a mental health prisoner who was retaliated against.

THE COURT: So a couple of things: I think the clear takeaway and the easy one is we all need to look at these documents, Number 1.

Number 2, if the California courts are doing the same thing that we do and -- was he represented in the Eastern District case putting his mental health at issue?

MR. DARLING: No.

THE COURT: Okay. So that's it.

MR. DARLING: And I will agree with Mr. Kuchinsky and so it was -- I don't know about service, but there's no appearance by the DOJ. And it was just my assumption that DOJ knows about cases, but I do not -- I get Mr. Kuchinsky's point about they don't necessarily --

THE COURT:  So they may not; and under 1915(e), the federal court will assume the up-front obligation to screen a *pro se* complaint filed by a prisoner in order to see if there are any nonfrivolous claims before taking any further steps, including requiring service and an answer to be filed.

So I suspect that's the procedural posture that led to what you've described and that would result in Burns and Kyle perhaps not even knowing that they had been sued.

MR. KUCHINSKY:  And, Your Honor, I can tell you from looking at this docket -- and I think this would have been something -- you know, Mr. Darling and I talked yesterday and we probably could have talked through this a bit more; but looking at the docket, the Court is issuing findings and recommendations dismissing certain claims prior to authorizing service.

There are 25 docket entries.  I mean, I'm looking at this in the last three or four minutes and I can clearly see no service has been authorized, no defendant has waived service or returned waivers unexecuted.  So I do think that is the procedural status of the case is that it's in a pre-service screening posture, which would explain why it wasn't either served on defendants or brought to our office's attention.

But I don't disagree that in an ideal world we would know about every filing that every inmate of interest knew, but I just wanted to correct that because there was a

couple of comments made about us knowing about this and there's no basis for that.

THE COURT:  All right.

MR. DARLING:  I acknowledge that, that that's my misunderstanding.

THE COURT:  And I don't think that matters.  I think the issue is whether in these pleadings or other filings he has put his mental health at issue in a way that would enable us to say that he has waived any objection to the disclosure of his mental health provider communications in this case.

MR. DARLING:  Yes.  That's exactly my position, Your Honor.

THE COURT:  All right.  So let's look at them.

MR. DARLING:  Great.

THE COURT:  Can you put a package together that you can submit to me and to others?

MR. DARLING:  I mean it's --

THE COURT:  It's just the filings, right?

MR. DARLING:  It's on the docket.  I mean, should we do this now or we all pull up the docket on ECF?  It's mean, it's number --

THE COURT:  Yes, tell me which docket entry number it is.

MR. DARLING:  His second amended complaint is 22 and then the findings by the MJ is 24 and then he responds to that

at 25.

Those are the three that I've seen.

THE COURT:  All right.  Yes, go ahead.

MR. DARLING:  I just want to be clear.  This is, like, fresh, like, oh, my god, I can't believe I didn't know about this and so here I am.

THE COURT:  So the keyword there is "fresh."  I don't want to just do an off-the-cuff ruling on the basis of looking at this stuff for the first time on the fly.

MR. DARLING:  Fair enough.

THE COURT:  So at the risk of adding yet another hearing to our saga, I think it would be prudent for us, now that you've brought it to everyone's attention, for everybody to pull it and let me give you each -- you tell me how much time -- one week, two weeks -- to give me a two- or three-page submission on what impact, if any, you think this has on the issues that we're dealing with including waiver.

MR. DARLING:  I would just say one week, Your Honor.

THE COURT:  That's fine.  And I think we can do simultaneous filings on that.

MR. DARLING:  I think we'll just have different takes on it.

THE COURT:  We might.

MS. STOCKER:  Your Honor, if I may be excused for one second to go get my calendar.

THE COURT:  Sure.

(Brief pause in the proceedings.)

MS. STOCKER:  Thank you, Your Honor.

THE COURT:  No problem.

All right.  So a week from today would be the 19th.  Is that okay with everybody?

MR. DARLING:  That works for plaintiffs, Your Honor.

MS. STOCKER:  Yes, Your Honor.

THE COURT:  Okay.  Very good.

MS. STOCKER:  Would that be at 1:00 your time, Your Honor?

THE COURT:  Well, I would like your written takes first so I can look at those and then we can have a hearing --

MR. KUCHINSKY:  I don't mean to interrupt; but just in terms of scheduling, I absolutely could file and I believe Jeremy and I will probably divide this up.  But whoever would file, could file something on the 19th.  I am not available on the 19th until --

THE COURT:  That's fine.

MR. KUCHINSKY:  And then the following week, actually Mr. Duggan and I both are starting a trial in Fresno starting the 23rd.  That should be the 23rd, 24th, 25th, and hopefully over by then, but potentially into the 26th.  We would potentially maybe have the 22nd, but the 29th, we should for sure be done.

THE COURT:  The 29th?

MS. STOCKER:  Your Honor, I am supposed to show up for jury duty starting the week of the 29th of September.  I don't know what's going to happen.

THE COURT:  Take your iPad with you, and I'm sure they have good Wi-Fi.

MS. STOCKER:  Okay.

THE COURT:  Okay.

MS. STOCKER:  How about later in the week of the 29th if that's possible?

THE COURT:  Okay.  Well, then you get into --

MR. DARLING:  At this point, Your Honor, then we're in a whole different month.

MS. STOCKER:  Okay.  Well, I'll do my best.

THE COURT:  All right.  So what time do you have to show up for jury duty?

MS. STOCKER:  I have to call every night, you know, the night before; so I don't know where I'm supposed to go or when I'm supposed to be there.  I will start calling on the 26th. So I should have some information by the 29th.

THE COURT:  All right.  So let's take a flier.  So on the 29th, 11 o'clock my time, 9:00 your time.

MR. DARLING:  Yes, Your Honor.

MR. KUCHINSKY:  That works for me at least.  I don't know about Mr. Duggan.

THE COURT:  Very good.  All right.

MR. SPURLING:  Your Honor, just a quick interruption. James Spurling for the OIG.

The OIG takes no issue, has no position with respect to Mr. Osuna's records; so there's no reason for us to participate in that hearing, is there?

THE COURT:  Your presence is optional.  You're invited, but not required to attend.

MR. SPURLING:  Thank you, Your Honor.

THE COURT:  All right.  I think that does all we can do today on the waiver question.

MR. DARLING:  I think so, Your Honor.

THE COURT:  All right.

MS. STOCKER:  May I ask a clarifying question, Your Honor?

THE COURT:  Sure.

MS. STOCKER:  On the 19th, after we've had an opportunity to review this newly discovered lawsuit, then we should submit our response to the Court as to whether there has been a waiver.  Is that the focus?

THE COURT:  Yes.  What impact you think, if any, the filing of the lawsuit and the allegations Mr. Osuna makes in it about his own mental health has on the assertion of waiver -- or his assertion of a privilege and whether it has been waived.

MR. DARLING:  Your Honor, if I may, just could I also --

THE COURT:  Yes.

MR. DARLING:  -- say that the standard is on also whether Osuna has placed his mental health at issue.

THE COURT:  Yes.  No, I agree.  I agree.

Okay.  With that, Lieutenant Beam's privilege log in Solares II.  Just to keep myself straight, there were only two documents at issue.

MS. STOCKER:  Two groups of documents.  There's --

THE COURT:  The case conference notes.

MS. STOCKER:  That's a two-page document --

THE COURT:  And official personnel file.

MS. STOCKER:  And that is several pages.

THE COURT:  Yes, yes.

MS. STOCKER:  Okay.

MR. DARLING:  Your Honor, if it's just two documents then --

THE COURT:  Two categories of documents.  It's not thick.

MR. DARLING:  Okay.  Because it's my understanding based on the privilege log by CDCR, that as it relates to the response to plaintiff's subpoena and it has, you know, various categories -- I believe it's 11 categories -- and I've conferred with Mr. Kuchinsky on this so he could correct me I'm

wrong -- but that any assertion of privilege is being made by Beam, not CDCR.  And if it's Beam asserted privilege and it's just this narrower category, I don't know where that leaves us then as to all the other documents that have been identified in the privilege log if it all hangs on Beam.

THE COURT:  I'm not sure what it is you are raising, but let's talk about it in the specific context of these documents.

So the case --

MR. DARLING:  Okay.  Sorry.

THE COURT:  Sorry?

MR. DARLING:  Just so I'm clear, on these documents, I'm referencing the CDCR privilege log that has 16 entries.

THE COURT:  I'm looking at Beam's privilege log.

MS. STOCKER:  Right.

THE COURT:  That has two entries.

MR. DARLING:  And I guess that is my confusion.

THE COURT:  So there's probably an overlap here because I think Beam's files might be contained in the CDCR files.

MR. DARLING:  Correct.

MS. STOCKER:  And --

MR. KUCHINSKY:  I apologize, Ms. Stocker.  I didn't mean to interrupt.

MS. STOCKER:  Go ahead.

MR. KUCHINSKY:  I think what may have happened is

procedurally the subpoena was first served on Beam and then with Reese was served on CDCR separately and I think there were a couple of objections made by Beam, but one was as to custody, control, possession.  And then there was a privilege objection made.

We got -- CDCR got a subpoena in June and then identified an entire set that we believed Beam had objected to. And so there are, I think, it's 16 individual documents, not categories, but 16 documents that were identified.  They all are under the report number, the Investigative Affairs Report Number 395-19A, which was for Beam.

And then I don't know if there's been a subsequent narrowing down of that.  I know I missed the last hearing, but I don't know if Ms. Stocker has sort of limited that or not.  I'm not sure if I over-included withheld documents if that's the situation we're in.

But the response did indicate we identified them and they were subject to a pending objection by Beam, which is why we withheld.

THE COURT:  Okay.  So the documents that I am specifically referring to, the first is a set of case conference notes dated 6/21/19.

MS. STOCKER:  That's a two-page document, Your Honor.

THE COURT:  Right.

And it's a little unclear who authored this.  It

appears to be Mr. -- I don't know if that's "Mr." or "Ms." C. Rodriguez, who was an employee relations officer, not an attorney.

MS. STOCKER:  I don't know.  I see that there is -- the name of the Employee Relations Officer Rodriguez is in attendance, but also the warden is also in attendance.

THE COURT:  That's fine.  Not an attorney.

MS. STOCKER:  Correct.  I'm not necessarily claiming attorney-client privilege, Your Honor.  If you notice on my privilege log, I'm referring to confidential personnel records and I will -- as I understand, the Court has reviewed this document *in camera* --

THE COURT:  Yes.

MS. STOCKER:  -- and there are documents that -- this is a -- I have to be careful here.  This is -- my understanding is that there was an investigation at Salinas Valley State Prison.

THE COURT:  Okay.

MS. STOCKER:  You can see that the case number has the Salinas Valley State Prison case ID number.  And my understanding is that that investigation was merged into this Corcoran investigation, which we've been talking about, the COR 395.  My understanding is that the investigation went nowhere at the Salinas Valley State Prison.  But there are references to some personnel matters in that two-page document

that have nothing to do with this case whatsoever and it's a private, privileged personnel matter.

THE COURT: Well, not all --

MS. STOCKER: Pardon me?

THE COURT: There are two questions. One is relevance.

Refresh my recollection. Do the parties have a confidentiality order in this case?

MS. STOCKER: We have a protective order.

THE COURT: Yes, that's what I thought.

So to the extent your objection is towards relevance, the document recounts allegations of Beam's inappropriate behavior. It is far too early to rule on whether this is 404(b) or could come in on some similar kind of basis. I don't know. But this is discovery, this is not admissibility.

Given the protective order that's in place, I think that there is sufficient protection against the concerns that producing personnel file information can generate. I don't know if in prior productions you've done things like redact Social Security numbers. That's fine if you want to do that, but I think this should be produced.

MS. STOCKER: We're talking about this two-page document here, right?

THE COURT: Right. I don't know if there's a Social Security number on it or not. I don't have it right in front

of me, but I have my summary notes.

MS. STOCKER:  Correct.  I don't think there's anything of a private nature in there.

THE COURT:  Fine.  Produce it.

And the personnel file for Lieutenant Beam comes from various custodians.  Most of this is going to be irrelevant.  There is an allegation Number 3 in the August 10, 2018, memorandum that is relevant.

MS. STOCKER:  I'm sorry?  The something memorandum?

THE COURT:  August 10, 2018.

MS. STOCKER:  That precedes the Osuna event?

THE COURT:  Yes, it does.

MS. STOCKER:  Okay.  I'm sorry.  What does the Court wish to have done with that memo?

THE COURT:  Produce the redacted version.

All right?

MS. STOCKER:  Yes, Your Honor.

THE COURT:  Thank you.

Okay.  The OIG privilege log, there are two documents.  One is three pages and the second is 50 pages.

On the first, the documents have properly been redacted.  The first one is not redacted as I recall.  It's the factual content, essentially a transcript of what happened in the cell, of observations.  Produce that.

And on Number 2, the internal case notes, the

50-page document, there are a lot of entries of fact that are witness statements that are not tied up with attorneys mental impressions.  There certainly are appropriate redactions, and I think they've been made appropriately for attorney-client communications, work product that contains mental impressions of attorneys and the psychotherapist-patient privilege; so produce the redacted version.

MR. SPURLING:  Understood.

THE COURT:  Okay.  Are we ready for Mr. Silva?

MS. STOCKER:  What about Mr. Silva?

THE COURT:  He filed a motion to quash, Docket Entry Number 185.

MS. STOCKER:  I thought we already discussed that.

THE COURT:  We've done that?

MS. STOCKER:  Yes, Your Honor.

THE COURT:  And --

MR. DARLING:  I believe we're on the CDCR --

THE COURT:  Yes.  That's Docket Entry Number 180, and its privilege log is Docket Entry Number 167; so it's a motion to quash and the related privilege log.

MR. DUGGAN:  We already went over that one as well, Your Honor.

THE COURT:  Right.  Anything else on either of those?

MS. STOCKER:  No, Your Honor.

MR. DARLING:  I believe we went over Solares II

privilege log.

THE COURT:  I'm sorry.  We've done --

MR. DARLING:  We did I, not Solares II.

THE COURT:  We did Solares I for Mr. Beam.

MS. STOCKER:  Solares II for Mr. Beam.

THE COURT:  I'm sorry.  Solares II for Mr. Beam -- Lieutenant Beam.

Hang on one second.  Let me make sure I've got my notes in order.

MR. DARLING:  I think there's confusion on my end because the privilege log has Solares I case number, but --

MS. STOCKER:  That's true, Mr. Darling, but it also has Solares versus Burns at the top.

MR. DARLING:  Right.  Exactly.

THE COURT:  So Solares versus Diaz is what we have left to do, correct?

MR. DARLING:  In terms of the privilege logs.

THE COURT:  Yes.

MR. DARLING:  Okay.

THE COURT:  So hang on one second.

My law clerk tells me we've done everything.  I can't believe that since this has been a record-fast hearing for our pattern; but if he's right, I'm happy to declare victory.

MR. DARLING:  Well, there's a larger issue, which is

there's a whole list of documents that, for instance, they use the term "Skelly decision."  I noticed the Court kind of referenced the CDCR language is itself kind of funny, but there's a whole host of things -- Skelly recommendation, Skelly notes, Skelly decision --

THE COURT:  You're talking about personnel-related matters?

MR. DARLING:  As relates to Beam.

THE COURT:  Yes.

MR. DARLING:  So Solares II is Beam.

In Solares I, those were produced as to other individual defendants.  So I have this universe of documents where I know the kind of documents CDCR creates when doing an investigation.  And I've sent a letter to defense counsel.  I've listed out the type of documents that they're titled.

And so as an example, Defendant Pena, all these documents we have for Pena.  And so now Beam is saying, "No, we can't turn these things over," when these things have already been turned over in Solares I.

And I get the redactions as it relates to attorney-client privilege; but as they relate to the procedural aspect of an administrative proceeding and a decision made in an administrative hearing, not necessarily arguments made by counsel or communication between an attorney and counsel, why would that set of materials not be produced?

THE COURT:  Are they being withheld or have they been -- I'm a little unclear because there's this overlap that you've identified.

MS. STOCKER:  May I respond, Your Honor?

THE COURT:  Yes, but hang on.

In your response, if you can enlighten me as to whether we're talking about material that's been withheld from production in any of the cases -- either of the cases or material that was produced in one case, but not another.

MR. DARLING:  It is material that was produced in Solares I as to Pena that is being withheld in Solares II as to Beam, but the titles of which, at least in the privilege log, alert me are the same titles that have been produced by Pena.

THE COURT:  Now I'm following you.

MS. STOCKER:  Okay.  May I, Your Honor?

THE COURT:  Please.

MS. STOCKER:  At the last hearing, the Court kindly granted me leave to review the documents.

THE COURT:  Right.

MS. STOCKER:  And I did and then I submitted the privilege log as to Lieutenant Beam and submitted the documents for *in camera* review, which we've already gone over.

Now, I cannot speak to any privileges that the CDCR is asserting as to any other documents that are on the CDCR privilege log.  I have no comment on that, but I just

wanted to give the Court an update about the fact that I asked for leave to review them, I reviewed them, I submitted a privilege log, and any other privileges are those held by the CDCR at their attorneys' discretion.

THE COURT:  But we've addressed the CDCR issues, correct?

MS. STOCKER:  I thought we addressed the CDCR issues as to the subpoena to OIG.

THE COURT:  Correct.

MR. DARLING:  But that's the distinction, Your Honor. This is not the subpoena to OIG, this is the subpoena in Solares II as to the records of Beam and so --

THE COURT:  Well, I have Lieutenant Beam's privilege log in Solares II.

MR. DARLING:  Right.  And there, as Ms. Stocker just indicated, she did a privilege log.  That was ruled on. Understood.

THE COURT:  Right.

MR. DARLING:  That was a much narrower set and her client's privilege to invoke than the broader set of privileges invoked by CDCR, where CDCR is invoking privileges that are actually Beam's, not CDCR's.

And in that process of identifying documents in that privilege log, it parallels the documents that have already been produced by CDCR as to another defendant, Pena, in

Solares I.

THE COURT:  Okay.  So this is a question for CDCR?

MR. DARLING:  Yes.

THE COURT:  Okay.

MR. KUCHINSKY:  Your Honor, again, Mr. Darling and I spoke about this yesterday.  This is why I went over the procedural history of the subpoena.

So there was a request made to Beam.  Beam objected on relevance grounds; on control, possession and custody grounds and on privilege grounds.

Then the same subpoena seeking the same documents was served on CDCR.  I went through and identified every document that was responsive to the request and noted the ones I withheld and put that on the privilege log.

The way that was phrased, and what Mr. Darling and I spoke about yesterday was that -- and I don't know if the Court has these responses.  Generally it would probably be more efficient for you to have them -- but as we noted in the response, we are identifying these documents, but Defendant Beam has a pending objection, which has not yet been ruled on; and so, therefore, we are withholding these documents, and we lay out exactly what the documents are in the privilege log.

THE COURT:  So where am I going to find the privileges that Beam asserted that the CDCR is using to avoid responding

to the subpoena served on it?

MR. KUCHINSKY:  Well, I don't think we're trying to avoid anything.  What we're trying to do --

THE COURT:  I'm not suggesting that.  I just want to know what to look at to go through with everyone so that we can resolve it.

MR. KUCHINSKY:  I think what we should look to -- well, first -- and this is a question I have is if the universe of documents that Ms. Stocker is objecting to has changed, what I wanted to do was make sure that I wasn't violating any objection before it was ruled on and I stepped on someone's toes essentially that way.

But there was an objection raised, I believe, in the initial responses to that subpoena from Ms. Solares to Beam directly and I think that's where the objections were made and then there wasn't a finding or ruling on that because we had several of the pre-motion conferences and some back and forth.

I'll try to pull them up if I can.

THE COURT:  That would be helpful.  What docket entry number will I find this on?

MR. DARLING:  Excuse me.  This is my understanding, and I'll just address everyone.

It's my understanding now that the Court has ruled on the Beam asserted privileges, then I'm still looking at the CDCR privilege and saying, "Hey, these don't really

apply because Beam isn't asserting this stuff anymore. Beam's objections have already been ruled on."

So then can we just get clarification so that Mr. Kuchinsky can, I guess, have his marching orders as to what he can safely produce because CDCR itself is not asserting the privileges. They're saying this is, you know, pending objections by Beam.

THE COURT: Okay. What document am I going to look at to identify the CDCR objections to production that are derivative of Beam's?

MR. DARLING: I think this is the confusion because I didn't receive it until recently because I didn't see it on the docket and I didn't receive a copy of it. So I don't know if it's on the docket.

THE COURT: I don't have anything of that category.

MR. KUCHINSKY: Sorry. I didn't mean to interrupt, Your Honor.

THE COURT: That's fine.

MR. KUCHINSKY: I think what maybe the confusion here is that this was sort of done in between, I think, some of the pre-motion conferences. I don't believe Mr. Darling ever brought it to the Court's attention, but it was sort of tied in with Beam's objections.

So I think what had happened was there was mostly an objection -- mostly an objection and it sounded like a

primary objection was Beam saying, "I don't have custody, control or possession of these documents; but I'm also asserting my privilege over them."

And so that, I think, was what spurred the subpoena directly to CDCR to get around or to try to resolve who has custody, control, possession of it.

When we got that subpoena, I was under the understanding that there had been a pending objection. I don't think Mr. Darling was trying to go around the objection. I think we were trying to resolve who had custody of it, and he sent us some communication confirming that.

So I think what has happened is that there is an OIA file. It's 395-19A. That is the investigative file number. And there was a request for all those documents made directly to Beam, Beam asserted he didn't have them, and so it was made to CDCR. I identified in a supplemental response every document that was responsive and then I laid out and explained explicitly in the response that Beam had a pending objection and so on that basis, we're withholding them.

THE COURT: Okay.

MR. KUCHINSKY: If that objection changed or narrowed, I'm happy to produce. I don't want to step on anyone's pending objection while it's happening.

THE COURT: So if we have already ruled on Beam's objections -- and I thought we had -- then CDCR, having no

independent objections, can produce consistent with the rulings on Beam's objections.

MR. KUCHINSKY:  I think that's what occurred today is that and that was sort of what we were waiting for.

THE COURT:  So go for it.

MR. KUCHINSKY:  That's what I tried to explain to Mr. Darling yesterday.  That's what I've been waiting on.

THE COURT:  Good.

MR. KUCHINSKY:  If there's a pending objection, I'm not going to undercut the judge's ability to control litigation by producing things.

MR. DARLING:  We're good now.

THE COURT:  All right.  I think that's the official ruling:  "We're good now."

MR. KUCHINSKY:  So I will be producing, other than the documents that Ms. Stocker identified, everything else in our privilege log that was identified, we'll produce.

THE COURT:  What are the deadlines for production? Have we addressed that?

MR. DARLING:  We have not, Your Honor.

THE COURT:  How much time do you-all need now that we have provided marching orders?

MR. KUCHINSKY:  I could probably -- my staff members are out today and Monday; so I could probably do it by Wednesday or Thursday.

THE COURT:  Really?  Is California running out of money?

MR. KUCHINSKY:  I think so.  I think a lot of places are running out of money unfortunately.

So I think if the Court -- let me just check one thing on my schedule, but I think I can probably send them over by the 17th, I could get them over.

THE COURT:  All right.  Can we set that date as the deadline -- why don't we do it on the 19th, just a week from today?  Make it clean.

Can everybody who has been ordered to produce subject to redactions or not meet that deadline?

MR. SPURLING:  The OIG can, Your Honor, yes.

THE COURT:  Great.

MR. KUCHINSKY:  And CDCR can as well.

MS. STOCKER:  Yes, Your Honor.

THE COURT:  Very good.  All right.  Have we run through the agenda for today?

MS. STOCKER:  No, Your Honor.

THE COURT:  What else do we need to take up?

MS. STOCKER:  We have scheduling orders that need to be revised.

MR. DARLING:  But before we get to the scheduling order, because I've been the squeaky wheel here on this, but we also have filed a stipulated amended complaint and that hasn't

been ruled on, I don't think.  So if that new amended order -- I mean, amended complaint --

THE COURT:  Give me the docket entry.

Hang on one second.  Let me see if I have it.

MR. DARLING:  Solares II.

THE COURT:  The docket entry of the request for me to rule on the stipulation.

MR. DARLING:  I believe it's 67.

THE COURT:  All right.  I will attend to that.

MR. DARLING:  I guess then the question is some courts will deem it filed automatically, others will grant leave for the plaintiff to affirmatively file the amended complaint.

THE COURT:  I don't know what the practice is in the Eastern District, if there is a consistent one across the judges.

MR. DUGGAN:  It's usually a separate filing.  You have to file the amended complaint separately.

THE COURT:  All right.  Is there a form of order that you provided consistent with the Eastern District practice?  That would be helpful.

MR. DARLING:  I did submit an order.

THE COURT:  Then if there's no objection, I will sign that order.

MR. DARLING:  Great.  Thank you.

And so then, I guess, the question, you know, if

I could turn around and file that today or tomorrow or Monday --

THE COURT:  Last time I checked, CM/ECF was 24/7.

MR. DARLING:  No, I'll do it today.  I don't want to hesitate.  I want to get this filed.

But then the question is, to address Ms. Stocker, the calendaring issues, would the Court prefer the parties to then confer and submit --

THE COURT:  A proposed scheduling order.

MR. DARLING:  -- a proposed scheduling order?

THE COURT:  Yes, I think that makes the most sense.

MR. DARLING:  Okay.  And then I think --

THE COURT:  Again, can you get the proposal back to me on the 19th with an indication of where, if anywhere, there is disagreement?

MR. DARLING:  I love it.  Yes, absolutely.

MS. STOCKER:  And to be clear, Your Honor, this is both Solares I and Solares II?

THE COURT:  They should march in tandem.

MR. DARLING:  But then there is one issue.  For Solares II, that makes sense.  Solares I, I believe, Your Honor, plaintiff's position on discovery and the timing needed for discovery --

THE COURT:  It could be far longer.

MR. DARLING:  Because of the pending -- the unresolved

issues as relates to the mental health.

THE COURT:  Right.

MR. DARLING:  Yeah.

THE COURT:  And I'm not sure that we can speed those up because of some of the underlying questions and information we're waiting for.

MR. DARLING:  So I guess --

THE COURT:  So let's make them as consistent with each other as possible.  I think there may be some -- we could structure it so that for Solares I, there were deadlines that might be -- I think there's just going to be a lot more discovery needed and some additional discovery uncertainty with Solares I than there will be with Solares II.  Solares II is the tail, it's not the dog.

MR. DARLING:  Yes.

MR. DUGGAN:  Just to point out, Your Honor, though, Solares II, with the amended complaint, is adding a whole new party and so that party's counsel will have to get up to speed on the case.

THE COURT:  True.  True.

MR. DARLING:  That's news to me that that would be a new counsel as opposed to --

MR. DUGGAN:  We don't have any new information.  We don't know.

MR. DARLING:  Because I think that's another factor is

if it's the same counsel, then I think the timing would be --

THE COURT:  And it also depends on how demanding in terms of discovery or other aspects the amended added aspects of the complaint are going to be.

MR. DARLING:  I will note, Your Honor, that similar to Beam, that the new defendant, Fugate or Fugate -- I don't know how his last name is pronounced -- but that it's similar in that the documents that plaintiff will seek will basically be in possession of CDCR and, if anything, many of the documents CDCR has already produced, which is how I was able to identify him in the first place.

And, of course, his counsel, whether it's Mr. Duggan or a new lawyer, needs time, of course.  But I do not think from plaintiff's perspective that we're going to have to reinvent the wheel here in terms of timing.

THE COURT:  No, I agree with that; and I also continue -- Solares I is a much more significant case, I think.

MR. DARLING:  Yes.  I mean, I think --

THE COURT:  And deserving of more time.

MR. DARLING:  Sure.  I think that's right.

I think that given similar cases, Your Honor, famously the widow of Koby Bryant, who brought a very similar claim in terms of seeing images -- knowing that the images were -- knowing here that these were seeing actual images versus knowing the images have been dispersed.  I mean, I think

the damages can be significant; but in terms of the complexity of the discovery --

THE COURT:  Exactly.  Yes, that's my point.

All right.  So you're going to confer on the scheduling order, get me a proposed amended scheduling order by the 19th when the other materials are going to be filed.

MR. DARLING:  Yes.

THE COURT:  Anything else for today other than having me sign the order allowing you to file the complaint?

MR. DARLING:  No, just other than to note this is lots of twist and turns.  So thank you to everyone, thank you to the Court for this.  This has been a journey, and it will continue to be; so thank you.

THE COURT:  It certainly is -- I think the appropriate word is one that we don't use correctly often -- notorious.

MR. DUGGAN:  Nothing more from us, Your Honor.  Thank you to you and the clerk for the preparedness on all of these privilege logs.

MR. DARLING:  Thank you.

THE COURT:  Thank you all very much.

MS. STOCKER:  Thank you, Your Honor.

MR. SPURLING:  Thank you, Your Honor.

THE COURT:  Thank you.  Have a good weekend.

(The proceedings were adjourned.)

* * * *

REPORTER'S CERTIFICATE

I, Lanie M. Smith, CSR, RMR, CRR, Official Court Reporter, United States District Court, Southern District of Texas, do hereby certify that the foregoing is a true and correct transcript, to the best of my ability and understanding, from the record of the proceedings in the above-entitled and numbered matter.


___/s/ Lanie M. Smith_____
Official Court Reporter

**'**

**'24** [2] - 12:4, 13:13
**'25** [2] - 12:5, 13:13

**/**

**/s** [1] - 44:6

**1**

**1** [4] - 4:9, 5:14, 7:25, 15:15
**10** [3] - 8:12, 27:8, 27:10
**10111** [1] - 2:16
**11** [3] - 8:12, 20:22, 22:24
**110** [1] - 2:16
**12** [4] - 1:8, 1:15, 8:12, 8:15
**125** [2] - 2:2, 2:7
**13** [1] - 8:18
**1300** [2] - 2:2, 2:7
**14** [1] - 8:18
**15** [1] - 8:20
**16** [4] - 8:25, 23:13, 24:8, 24:9
**167** [1] - 28:19
**17** [1] - 9:6
**17th** [1] - 38:7
**18** [1] - 9:12
**180** [2] - 5:24, 28:18
**185** [2] - 5:21, 28:12
**19** [1] - 9:12
**1915** [1] - 14:22
**1915(e** [1] - 16:1
**1939** [1] - 2:11
**19th** [7] - 19:6, 19:17, 19:18, 21:17, 38:9, 40:14, 43:6
**1:00** [1] - 19:10
**1:20-CV-00323-LHR-FRS** [1] - 1:4
**1:21-CV-01349-LHR-BAM** [1] - 1:10
**1:24-cv-793** [1] - 14:2

**2**

**2** [4] - 4:15, 5:14, 15:16, 27:25
**20** [1] - 9:15
**2018** [2] - 27:8, 27:10
**2019** [1] - 13:22
**2025** [2] - 1:8, 1:15
**21** [1] - 9:18
**22** [2] - 9:22, 17:24
**22nd** [1] - 19:24
**23** [1] - 9:22
**23rd** [2] - 19:22
**24** [2] - 9:24, 17:25
**24/7** [1] - 40:3
**24th** [1] - 19:22
**25** [3] - 9:24, 16:16, 18:1
**25th** [1] - 19:22
**26(b)(4)(D)(ii** [1] - 5:12
**26th** [2] - 19:23, 20:19

**2910** [1] - 1:23
**29th** [6] - 19:24, 20:1, 20:3, 20:9, 20:20, 20:22

**3**

**3** [2] - 5:14, 27:7
**3435** [1] - 1:22
**37** [1] - 13:1
**395** [1] - 25:23
**395-19A** [2] - 24:11, 36:13

**4**

**4** [1] - 5:14
**404(b** [1] - 26:13

**5**

**5** [2] - 5:14, 8:1
**50** [1] - 27:20
**50-page** [1] - 28:1
**515** [1] - 2:21

**6**

**6** [1] - 8:1
**6/21/19** [1] - 24:22
**612** [1] - 2:11
**67** [1] - 39:8

**7**

**7** [4] - 6:3, 6:20, 8:1, 8:6
**77002** [1] - 2:22

**8**

**8** [2] - 8:9, 12:25
**8004** [1] - 2:21

**9**

**9** [1] - 8:12
**90010** [1] - 1:23
**94612** [1] - 2:12
**95814** [2] - 2:3, 2:8
**95827** [1] - 2:17
**9:00** [1] - 20:22

**A**

**ability** [2] - 37:10, 44:3
**able** [3] - 3:18, 10:10, 42:10
**above-entitled** [1] - 44:4
**absolutely** [2] - 19:15, 40:16
**abstract** [1] - 13:14
**abuse** [1] - 9:7
**accurate** [1] - 3:24
**achieved** [1] - 3:25

**acknowledge** [1] - 17:4
**acting** [1] - 9:18
**action** [2] - 6:10, 15:3
**actual** [1] - 42:24
**added** [1] - 42:3
**adding** [2] - 18:11, 41:17
**additional** [1] - 41:12
**address** [2] - 34:22, 40:6
**addressed** [3] - 32:5, 32:7, 37:19
**adjourned** [1] - 43:24
**administrative** [2] - 30:22, 30:23
**admissibility** [1] - 26:15
**Adult** [1] - 9:8
**adverse** [1] - 6:9
**advice** [5] - 4:21, 6:13, 6:15, 7:1, 9:4
**Advocate** [1] - 6:8
**advocate** [1] - 6:17
**Affairs** [2] - 9:2, 24:10
**affirmatively** [3] - 12:5, 14:1, 39:12
**afield** [1] - 14:3
**afternoon** [4] - 3:4, 3:6, 3:10, 3:13
**agenda** [1] - 38:18
**agree** [4] - 15:21, 22:6, 42:16
**ahead** [3] - 3:2, 18:3, 23:24
**al** [2] - 1:7, 1:14
**AL** [1] - 2:1
**alert** [1] - 31:13
**allegation** [1] - 27:7
**allegations** [6] - 11:18, 12:17, 12:22, 12:23, 21:22, 26:11
**alleges** [1] - 12:21
**allowing** [1] - 43:9
**amended** [9] - 17:24, 38:25, 39:1, 39:2, 39:12, 39:17, 41:17, 42:3, 43:5
**amounts** [2] - 8:13, 9:10
**AND** [2] - 2:3, 2:6
**Andrada** [1] - 2:10
**Angeles** [1] - 1:23
**anger** [1] - 13:4
**answer** [1] - 16:5
**anti** [1] - 11:11
**anti-psychotropic** [1] - 11:11
**antipsychotic** [1] - 12:7
**apologize** [1] - 23:22
**apparent** [1] - 6:25
**appearance** [2] - 14:19, 15:23
**APPEARANCES** [1] - 1:20
**appearances** [1] - 3:2
**apply** [1] - 35:1
**appropriate** [5] - 4:8, 6:9, 9:10, 28:3, 43:14
**appropriately** [5] - 4:13, 4:20, 6:2, 9:16, 28:4
**April** [2] - 12:5, 13:13
**arguments** [1] - 30:23
**aspect** [1] - 30:22
**aspects** [2] - 42:3
**asserted** [4] - 23:2, 33:25, 34:24, 36:15

**asserting** [4] - 31:24, 35:1, 35:5, 36:3
**assertion** [3] - 21:23, 21:24, 23:1
**assigning** [1] - 13:2
**associate** [1] - 9:7
**Associates** [1] - 2:10
**assume** [1] - 16:2
**assumption** [1] - 15:23
**attend** [2] - 21:8, 39:9
**attendance** [2] - 25:6
**attention** [3] - 16:22, 18:13, 35:22
**Attorney** [2] - 2:1, 3:7
**attorney** [18] - 4:21, 6:13, 6:15, 7:1, 8:15, 8:22, 8:23, 9:1, 9:2, 9:3, 9:16, 25:3, 25:7, 25:9, 28:4, 30:21, 30:24
**attorney-client** [6] - 6:13, 8:15, 8:23, 25:9, 28:4, 30:21
**attorneys** [5] - 3:22, 4:16, 28:2, 28:6
**attorneys'** [2] - 4:19, 32:4
**August** [2] - 27:8, 27:10
**authored** [1] - 24:25
**authorized** [2] - 14:20, 16:18
**authorizing** [1] - 16:14
**automatically** [1] - 39:11
**available** [1] - 19:17
**avoid** [2] - 33:25, 34:3
**aware** [1] - 15:3

## B

**balance** [1] - 3:25
**based** [2] - 15:7, 22:22
**basis** [6] - 15:2, 15:5, 17:2, 18:8, 26:13, 36:19
**BEAM** [1] - 2:10
**Beam** [33] - 3:11, 23:2, 23:5, 24:1, 24:3, 24:7, 24:11, 24:18, 27:5, 29:4, 29:5, 29:6, 29:7, 30:8, 30:10, 30:17, 31:12, 31:21, 32:12, 33:8, 33:20, 33:25, 34:14, 34:24, 35:1, 35:7, 36:1, 36:15, 36:18, 42:6
**Beam's** [11] - 22:7, 23:14, 23:19, 26:11, 32:13, 32:22, 35:1, 35:10, 35:23, 36:24, 37:2
**beat** [1] - 12:21
**becoming** [1] - 10:15
**BEFORE** [1] - 1:18
**behalf** [4] - 3:4, 3:7, 3:11, 5:6
**behavior** [1] - 26:12
**best** [2] - 20:14, 44:3
**between** [4] - 4:16, 7:11, 30:24, 35:20
**big** [1] - 14:8
**bit** [2] - 6:21, 16:12
**Board** [5] - 7:24, 8:3, 8:11, 8:19, 9:13
**Boulevard** [1] - 1:22
**Brief** [1] - 19:2
**briefing** [1] - 13:8
**briefly** [1] - 14:13
**bringing** [2] - 12:5, 12:6
**brings** [2] - 11:10, 11:24

**broader** [1] - 32:20
**brought** [4] - 16:22, 18:13, 35:22, 42:22
**Bryant** [1] - 42:22
**bunch** [2] - 7:2, 12:23
**bureaucratic** [1] - 10:15
**BURNS** [2] - 1:14, 2:1
**Burns** [7] - 11:6, 11:12, 12:13, 12:20, 14:5, 16:7, 29:13

## C

**CA** [2] - 1:23, 2:3
**Cal** [2] - 11:8, 14:7
**calendar** [1] - 18:25
**calendaring** [1] - 40:7
**CALIFORNIA** [4] - 1:1, 2:2, 2:6, 2:14
**California** [12] - 2:6, 2:8, 2:12, 2:15, 2:17, 3:14, 5:9, 7:12, 7:16, 11:5, 15:16, 38:1
**camera** [2] - 25:12, 31:22
**cannot** [1] - 31:23
**care** [2] - 10:3, 12:15
**careful** [3] - 3:23, 7:7, 25:15
**case** [26] - 3:20, 5:7, 6:22, 7:9, 10:11, 10:22, 12:5, 13:25, 14:2, 14:24, 14:25, 15:18, 16:20, 17:10, 22:11, 23:9, 24:21, 25:19, 25:20, 26:1, 26:7, 27:25, 29:11, 31:9, 41:19, 42:17
**cases** [4] - 15:24, 31:8, 42:21
**categories** [4] - 22:19, 22:24, 24:9
**category** [2] - 23:3, 35:15
**CDCR** [43] - 3:8, 4:16, 5:25, 6:7, 6:14, 7:5, 7:10, 7:12, 7:19, 8:25, 9:3, 9:19, 10:4, 22:22, 23:2, 23:13, 23:19, 24:2, 24:6, 28:17, 30:3, 30:13, 31:24, 31:25, 32:4, 32:5, 32:7, 32:21, 32:25, 33:2, 33:12, 33:25, 34:25, 35:5, 35:9, 36:5, 36:16, 36:25, 38:15, 42:9, 42:10
**CDCR's** [5] - 5:19, 5:23, 6:20, 7:16, 32:22
**cell** [6] - 11:13, 11:14, 11:15, 13:3, 27:24
**celled** [4] - 11:16, 12:10, 12:16
**certain** [1] - 16:14
**certainly** [6] - 11:8, 11:19, 15:3, 28:3, 43:14
**CERTIFICATE** [1] - 44:1
**certify** [1] - 44:3
**changed** [2] - 34:9, 36:21
**check** [1] - 38:5
**checked** [1] - 40:3
**chief** [1] - 9:18
**circumstances** [2] - 6:19, 10:1
**civil** [3] - 10:10, 10:11, 10:12
**claim** [2] - 15:7, 42:23
**claiming** [1] - 25:8
**claims** [7] - 3:18, 3:19, 4:2, 15:6, 15:10, 16:4, 16:14
**clarification** [1] - 35:3

**clarifying** [1] - 21:14
**classification** [1] - 13:15
**clean** [1] - 38:10
**clear** [6] - 5:20, 13:23, 15:13, 18:4, 23:12, 40:17
**clearing** [1] - 13:1
**clearly** [2] - 12:24, 16:17
**clerk** [3] - 3:18, 29:21, 43:17
**client** [6] - 6:13, 8:15, 8:23, 25:9, 28:4, 30:21
**client's** [1] - 32:20
**cloak** [1] - 7:3
**CM/ECF** [1] - 40:3
**comment** [2] - 12:2, 31:25
**comments** [1] - 17:1
**common** [2] - 5:4, 7:11
**communication** [2] - 30:24, 36:11
**communications** [8] - 4:15, 4:17, 6:12, 7:9, 8:21, 9:3, 17:10, 28:5
**compelled** [1] - 5:13
**compels** [2] - 7:12, 7:17
**competency** [1] - 13:22
**complaint** [12] - 10:21, 11:10, 14:22, 16:3, 17:24, 38:25, 39:2, 39:12, 39:17, 41:17, 42:4, 43:9
**complaints** [4] - 11:12, 12:13, 12:14, 14:18
**complexity** [1] - 43:1
**complicated** [1] - 10:15
**compliment** [1] - 3:22
**computer** [1] - 1:25
**concerns** [1] - 26:17
**conditions** [1] - 13:4
**conduct** [1] - 7:17
**conducting** [1] - 14:21
**confer** [2] - 40:8, 43:4
**conference** [2] - 22:11, 24:22
**conferences** [2] - 34:17, 35:21
**conferred** [1] - 22:25
**confidential** [2] - 9:19, 25:10
**confidentiality** [1] - 26:7
**confirming** [1] - 36:11
**confused** [1] - 12:9
**confusion** [4] - 23:17, 29:10, 35:11, 35:19
**consistent** [4] - 37:1, 39:14, 39:19, 41:8
**consultant** [1] - 9:24
**consulting** [5] - 5:10, 5:13, 6:18, 9:24, 10:2
**contain** [1] - 6:15
**contained** [1] - 23:19
**contains** [5] - 4:10, 4:21, 9:3, 9:16, 28:5
**content** [2] - 8:14, 27:23
**contents** [1] - 4:21
**context** [2] - 7:8, 23:7
**continue** [2] - 42:17, 43:12
**contribute** [1] - 6:23

**control** [5] - 24:4, 33:9, 36:2, 36:6, 37:10
**conveyed** [1] - 6:12
**copied** [1] - 7:2
**copy** [1] - 35:13
**COR** [1] - 25:23
**Corcoran** [1] - 25:22
**correct** [10] - 12:3, 16:25, 22:25, 23:20, 25:8, 27:2, 29:16, 32:6, 32:9, 44:3
**CORRECTIONS** [2] - 2:3, 2:6
**correctly** [1] - 43:15
**counsel** [11] - 10:10, 10:12, 10:13, 30:14, 30:24, 41:18, 41:22, 42:1, 42:12
**couple** [3] - 15:13, 17:1, 24:3
**course** [3] - 14:14, 42:12, 42:13
**COURT** [139] - 1:1, 3:2, 3:9, 3:12, 3:16, 4:15, 5:2, 5:18, 8:8, 10:24, 11:1, 11:14, 11:17, 12:9, 13:16, 14:14, 15:13, 15:20, 16:1, 17:3, 17:6, 17:13, 17:15, 17:18, 17:22, 18:3, 18:7, 18:11, 18:19, 18:23, 19:1, 19:4, 19:9, 19:12, 19:19, 20:1, 20:5, 20:8, 20:11, 20:15, 20:21, 21:1, 21:7, 21:10, 21:13, 21:16, 21:21, 22:3, 22:6, 22:11, 22:13, 22:15, 22:19, 23:6, 23:11, 23:14, 23:16, 23:18, 24:20, 24:24, 25:7, 25:13, 25:18, 26:3, 26:5, 26:9, 26:24, 27:4, 27:10, 27:12, 27:15, 27:18, 28:9, 28:11, 28:14, 28:16, 28:18, 28:23, 29:2, 29:4, 29:6, 29:15, 29:18, 29:20, 30:6, 30:9, 31:1, 31:5, 31:14, 31:16, 31:19, 32:5, 32:9, 32:13, 32:18, 33:2, 33:4, 33:24, 34:4, 34:19, 35:8, 35:15, 35:18, 36:20, 36:24, 37:5, 37:8, 37:13, 37:18, 37:21, 38:1, 38:8, 38:14, 38:17, 38:20, 39:3, 39:6, 39:9, 39:13, 39:18, 39:22, 40:3, 40:9, 40:11, 40:13, 40:19, 40:24, 41:2, 41:4, 41:8, 41:20, 42:2, 42:16, 42:19, 43:3, 43:8, 43:14, 43:20, 43:23
**court** [6] - 10:6, 10:21, 13:10, 13:18, 13:21, 16:2
**Court** [24] - 2:19, 2:19, 2:20, 5:6, 13:11, 13:19, 13:24, 14:17, 14:21, 16:13, 21:19, 25:11, 27:13, 30:2, 31:17, 32:1, 33:17, 34:23, 38:5, 40:7, 43:12, 44:2, 44:6
**Court's** [1] - 35:22
**courts** [2] - 15:16, 39:10
**covered** [1] - 9:10
**created** [3] - 7:23, 8:9, 9:13
**creates** [1] - 30:13
**crime** [1] - 4:11
**criminal** [1] - 13:21
**CRR** [2] - 2:19, 44:2
**CSR** [2] - 2:19, 44:2
**cuff** [1] - 18:8
**custodians** [1] - 27:6
**custody** [5] - 24:3, 33:10, 36:1, 36:6, 36:10

# D

**damages** [1] - 43:1
**DARLING** [75] - 1:21, 3:4, 10:8, 10:25, 11:2, 11:15, 11:18, 12:12, 13:18, 15:19, 15:21, 17:4, 17:11, 17:14, 17:17, 17:19, 17:24, 18:4, 18:10, 18:18, 18:21, 19:7, 20:12, 20:23, 21:12, 22:1, 22:4, 22:17, 22:21, 23:10, 23:12, 23:17, 23:20, 28:17, 28:25, 29:3, 29:10, 29:14, 29:17, 29:19, 29:25, 30:8, 30:10, 31:10, 32:10, 32:15, 32:19, 33:3, 34:21, 35:11, 37:12, 37:20, 38:23, 39:5, 39:8, 39:10, 39:21, 39:24, 40:4, 40:10, 40:12, 40:16, 40:20, 40:25, 41:3, 41:7, 41:15, 41:21, 41:25, 42:5, 42:18, 42:20, 43:7, 43:10, 43:19
**darling** [3] - 10:6, 14:15, 16:11
**Darling** [8] - 1:22, 3:4, 29:12, 33:5, 33:15, 35:21, 36:9, 37:7
**date** [1] - 38:8
**dated** [1] - 24:22
**DAVID** [1] - 2:5
**deadline** [2] - 38:9, 38:12
**deadlines** [2] - 37:18, 41:10
**dealing** [2] - 9:20, 18:17
**death** [2] - 6:11, 10:11
**decedent's** [1] - 6:11
**decision** [4] - 11:13, 30:2, 30:5, 30:22
**declarative** [1] - 10:21
**declare** [1] - 29:23
**deem** [1] - 39:11
**defendant** [4] - 14:23, 16:18, 32:25, 42:6
**Defendant** [4] - 3:11, 30:16, 33:20
**DEFENDANTS** [2] - 2:1, 2:10
**Defendants** [2] - 1:8, 1:15
**defendants** [6] - 3:7, 11:4, 14:4, 16:22, 30:12
**defense** [1] - 30:14
**definitely** [1] - 14:1
**demanding** [1] - 42:2
**denied** [1] - 10:10
**DEPARTMENT** [2] - 2:2, 2:6
**Department** [1] - 2:6
**deputy** [2] - 3:6, 9:18
**derivative** [1] - 35:10
**described** [1] - 16:7
**description** [1] - 6:5
**deserving** [1] - 42:19
**determination** [3] - 6:23, 6:24, 8:5
**determine** [1] - 13:20
**Diaz** [1] - 29:15
**DIAZ** [1] - 1:7
**different** [4] - 6:21, 11:19, 18:21, 20:13
**direct** [1] - 5:7
**directly** [3] - 34:15, 36:5, 36:15
**director** [1] - 9:7
**disagree** [1] - 16:23
**disagreement** [1] - 40:15

**disciplinary** [1] - 6:10
**discipline** [1] - 9:5
**disclose** [2] - 7:17, 7:19
**disclosure** [4] - 5:13, 7:12, 10:1, 17:9
**discoverable** [1] - 6:18
**discovered** [2] - 7:18, 21:18
**discovery** [10] - 3:20, 7:6, 10:11, 26:14, 40:22, 40:23, 41:12, 42:3, 43:2
**DISCOVERY** [1] - 1:18
**discretion** [1] - 32:4
**discuss** [1] - 3:21
**discussed** [1] - 28:13
**discussion** [1] - 8:21
**dismiss** [2] - 11:9, 11:21
**dismissing** [1] - 16:14
**dispersed** [1] - 42:25
**dispositive** [1] - 14:11
**dispute** [1] - 7:6
**disputes** [1] - 5:8
**distinct** [1] - 10:12
**distinction** [1] - 32:10
**District** [10] - 2:20, 2:20, 11:5, 13:12, 13:25, 15:18, 39:14, 39:19, 44:2
**DISTRICT** [3] - 1:1, 1:1, 1:19
**divide** [1] - 19:16
**Division** [1] - 9:8
**DIVISION** [1] - 1:2
**Docket** [5] - 5:21, 5:24, 28:11, 28:18, 28:19
**docket** [16] - 6:20, 10:23, 14:16, 14:25, 15:8, 16:10, 16:13, 16:16, 17:19, 17:20, 17:22, 34:19, 35:13, 35:14, 39:3, 39:6
**Document** [3] - 4:9, 4:15, 6:2
**document** [10] - 22:12, 24:23, 25:12, 25:25, 26:11, 26:23, 28:1, 33:13, 35:8, 36:17
**documents** [45] - 3:23, 4:7, 4:18, 4:24, 5:5, 5:25, 6:7, 6:14, 6:15, 7:18, 15:15, 22:9, 22:10, 22:17, 22:19, 23:4, 23:8, 23:12, 24:8, 24:9, 24:16, 24:20, 25:14, 27:20, 27:21, 30:1, 30:12, 30:13, 30:17, 31:18, 31:21, 31:24, 32:23, 32:24, 33:11, 33:19, 33:22, 34:9, 36:2, 36:14, 37:16, 42:8, 42:9
**Documents** [1] - 5:14
**dog** [1] - 41:14
**DOJ** [6] - 11:8, 14:7, 14:19, 15:1, 15:23
**done** [11] - 4:3, 4:13, 5:1, 13:9, 19:25, 26:19, 27:14, 28:14, 29:2, 29:21, 35:20
**DORA** [2] - 1:4, 1:10
**double** [6] - 11:14, 11:15, 11:16, 12:10, 12:15, 13:2
**double-cell** [2] - 11:14, 11:15
**double-celled** [2] - 11:16, 12:10
**doubled** [1] - 12:16
**doubled-celled** [1] - 12:16
**down** [4] - 7:21, 13:11, 13:22, 24:13
**dropout** [1] - 12:20
**DUGGAN** [8] - 2:1, 3:6, 8:7, 28:21,

39:16, 41:16, 41:23, 43:16
**Duggan** [4] - 3:7, 19:21, 20:25, 42:13
**duty** [2] - 20:3, 20:16

## E

**early** [1] - 26:12
**Eastern** [6] - 11:5, 13:12, 13:25, 15:17, 39:14, 39:19
**EASTERN** [1] - 1:1
**easy** [1] - 15:14
**ECF** [1] - 17:20
**efficient** [1] - 33:18
**either** [4] - 5:15, 16:21, 28:23, 31:8
**employee** [1] - 25:2
**Employee** [1] - 25:5
**employment** [1] - 6:9
**enable** [2] - 6:6, 17:8
**end** [1] - 29:10
**enlighten** [1] - 31:6
**entered** [1] - 14:19
**entire** [1] - 24:7
**entities** [1] - 7:11
**entitled** [1] - 44:4
**entries** [4] - 16:16, 23:13, 23:16, 28:1
**entry** [4] - 17:22, 34:19, 39:3, 39:6
**Entry** [6] - 5:21, 5:24, 6:20, 28:11, 28:18, 28:19
**ERIK** [1] - 2:10
**ERIN** [1] - 1:21
**Erin** [3] - 1:22, 3:4, 3:7
**essentially** [2] - 27:23, 34:12
**ET** [1] - 2:1
**et** [2] - 1:7, 1:14
**event** [1] - 27:11
**events** [1] - 4:10
**exactly** [4] - 17:11, 29:14, 33:22, 43:3
**examination** [1] - 15:9
**example** [1] - 30:16
**exceptional** [2] - 6:19, 10:1
**excuse** [1] - 34:21
**excused** [1] - 18:24
**expert** [5] - 5:10, 5:13, 6:18, 9:25, 10:2
**explain** [2] - 16:21, 37:6
**explained** [1] - 36:18
**explicitly** [1] - 36:18
**expressed** [1] - 13:4
**extent** [4] - 4:10, 5:22, 6:14, 26:10
**extreme** [1] - 13:3

## F

**facility** [2] - 9:7, 9:19
**fact** [5] - 7:9, 7:15, 15:11, 28:1, 32:1
**factor** [1] - 41:25
**factual** [4] - 4:10, 6:22, 8:4, 27:23
**fair** [1] - 18:10
**famously** [1] - 42:22
**far** [5] - 5:11, 5:17, 14:3, 26:12, 40:24

**fast** [1] - 29:22
**federal** [4] - 5:4, 10:20, 11:4, 16:2
**few** [1] - 10:8
**Fi** [1] - 20:6
**figure** [1] - 6:6
**file** [13] - 9:19, 19:15, 19:17, 22:13, 26:18, 27:5, 36:13, 39:12, 39:17, 40:1, 43:9
**filed** [10] - 11:9, 13:25, 15:2, 16:3, 16:5, 28:11, 38:25, 39:11, 40:5, 43:6
**files** [4] - 11:22, 11:23, 23:19
**filing** [6] - 10:21, 13:5, 14:18, 16:24, 21:22, 39:16
**filings** [3] - 17:7, 17:18, 18:20
**findings** [3] - 7:16, 16:13, 17:25
**fine** [6] - 18:19, 19:19, 25:7, 26:20, 27:4, 35:18
**first** [13] - 8:7, 11:4, 14:3, 15:1, 15:7, 18:9, 19:12, 24:1, 24:21, 27:21, 27:22, 34:8, 42:11
**flier** [1] - 20:21
**fly** [1] - 18:9
**focus** [1] - 21:20
**focused** [1] - 4:20
**focusing** [1] - 13:18
**following** [2] - 19:20, 31:14
**FOR** [5] - 1:21, 2:1, 2:5, 2:10, 2:14
**foregoing** [1] - 44:3
**form** [1] - 39:18
**forth** [1] - 34:17
**four** [1] - 16:17
**fresh** [2] - 18:5, 18:7
**FRESNO** [1] - 1:2
**Fresno** [1] - 19:21
**front** [2] - 16:2, 26:25
**Fugate** [2] - 42:6
**funny** [1] - 30:3

## G

**gang** [1] - 12:19
**General** [4] - 2:1, 2:15, 3:7, 3:15
**GENERAL** [1] - 2:15
**generally** [1] - 33:17
**generate** [1] - 26:18
**generated** [1] - 8:2
**given** [2] - 26:16, 42:21
**god** [1] - 18:5
**grant** [3] - 5:24, 11:25, 39:11
**granted** [3] - 5:21, 11:22, 31:18
**grants** [1] - 11:23
**great** [3] - 17:14, 38:14, 39:24
**grievance** [1] - 13:5
**grounds** [3] - 33:9, 33:10
**groups** [1] - 22:10
**guess** [5] - 23:17, 35:4, 39:10, 39:25, 41:7
**guy** [1] - 12:21
**guys** [1] - 6:8

## H

**hands** [1] - 13:7
**hang** [4] - 29:8, 29:20, 31:5, 39:4
**hangs** [1] - 23:5
**happy** [3] - 13:22, 29:23, 36:22
**Harrison** [1] - 2:11
**health** [25] - 4:23, 6:16, 10:14, 10:20, 11:20, 11:24, 12:6, 12:11, 12:15, 12:18, 12:24, 13:2, 13:3, 13:14, 13:20, 13:21, 14:1, 15:10, 15:12, 15:18, 17:8, 17:10, 21:23, 22:5, 41:1
**HEARD** [1] - 1:18
**heard** [1] - 14:12
**HEARING** [1] - 1:18
**hearing** [8] - 10:7, 18:12, 19:13, 21:6, 24:14, 29:22, 30:23, 31:17
**held** [1] - 32:3
**help** [1] - 3:17
**helpful** [2] - 34:19, 39:20
**hereby** [1] - 44:3
**hesitate** [1] - 40:5
**himself** [2] - 10:20, 14:1
**history** [1] - 33:7
**Honor** [49] - 3:6, 3:10, 3:13, 4:14, 5:1, 5:17, 10:8, 11:2, 14:12, 16:9, 17:12, 18:18, 18:24, 19:3, 19:7, 19:8, 19:11, 20:2, 20:12, 20:23, 21:2, 21:9, 21:12, 21:15, 22:1, 22:17, 24:23, 25:9, 27:17, 28:15, 28:22, 28:24, 31:4, 31:15, 32:10, 33:5, 35:17, 37:20, 38:13, 38:16, 38:19, 40:17, 40:22, 41:16, 42:5, 42:21, 43:16, 43:21, 43:22
**HONORABLE** [1] - 1:18
**hopefully** [1] - 19:22
**host** [1] - 30:4
**Houston** [1] - 2:22

## I

**ID** [1] - 25:20
**idea** [1] - 14:16
**ideal** [1] - 16:23
**identified** [9] - 23:4, 24:7, 24:9, 24:17, 31:3, 33:12, 36:16, 37:16, 37:17
**identify** [2] - 35:9, 42:10
**identifying** [3] - 4:4, 32:23, 33:19
**ll** [15] - 22:8, 28:25, 29:3, 29:5, 29:6, 30:10, 31:11, 32:12, 32:14, 39:5, 40:18, 40:21, 41:13, 41:17
**illness** [1] - 13:1
**images** [4] - 42:23, 42:24, 42:25
**impact** [2] - 18:16, 21:21
**impressions** [6] - 4:12, 4:19, 4:22, 6:16, 28:3, 28:5
**impugning** [2] - 11:7, 14:6
**inappropriate** [1] - 26:12
**include** [1] - 4:18
**included** [1] - 24:15
**includes** [1] - 8:21

**including** [2] - 16:5, 18:17
**independent** [1] - 37:1
**indicate** [1] - 24:17
**indicated** [1] - 32:16
**indication** [1] - 40:14
**individual** [4] - 11:7, 14:6, 24:8, 30:12
**information** [13] - 4:22, 4:23, 5:5, 5:10, 6:16, 6:17, 6:22, 10:3, 13:17, 20:20, 26:18, 41:5, 41:23
**initial** [1] - 34:14
**injunctive** [2] - 10:21, 11:5
**inmate** [1] - 16:24
**INSPECTOR** [1] - 2:15
**Inspector** [2] - 2:15, 3:15
**instance** [1] - 30:1
**instead** [1] - 13:18
**Institutions** [1] - 9:8
**institutions** [1] - 14:9
**interest** [2] - 7:11, 16:24
**Internal** [1] - 9:2
**internal** [1] - 27:25
**interrupt** [4] - 5:16, 19:14, 23:23, 35:16
**interruption** [1] - 21:2
**investigation** [8] - 6:25, 7:18, 7:19, 25:16, 25:21, 25:22, 25:23, 30:14
**investigations** [1] - 7:17
**Investigative** [1] - 24:10
**investigative** [2] - 7:25, 36:13
**investigator** [3] - 6:22, 8:2, 8:4
**investigatory** [1] - 4:17
**invited** [1] - 21:7
**invoke** [1] - 32:20
**invoked** [1] - 32:21
**invoking** [1] - 32:21
**involuntary** [1] - 7:13
**involving** [1] - 8:1
**iPad** [1] - 20:5
**irrelevant** [2] - 5:15, 27:7
**issue** [19] - 4:5, 10:20, 11:20, 11:24, 13:14, 13:21, 14:1, 14:10, 15:1, 15:11, 15:18, 17:7, 17:8, 21:4, 22:5, 22:9, 29:25, 40:20
**issues** [7] - 3:18, 13:9, 18:17, 32:5, 32:7, 40:7, 41:1
**issuing** [1] - 16:13
**itself** [2] - 30:3, 35:5

## J

**JAMES** [1] - 2:14
**James** [2] - 3:14, 21:3
**JARED** [1] - 2:14
**Jared** [1] - 3:14
**Jeremy** [1] - 19:16
**JEREMY** [1] - 2:1
**job** [1] - 4:3
**JOSEPH** [2] - 1:14, 2:1
**journey** [1] - 43:12

**judge** [1] - 11:23
**JUDGE** [1] - 1:19
**judge's** [2] - 12:1, 37:10
**judges** [1] - 39:15
**judicious** [1] - 4:8
**June** [2] - 5:6, 24:6
**jury** [2] - 20:3, 20:16
**Justice** [1] - 2:6

## K

**keep** [1] - 22:8
**keeps** [1] - 10:12
**keyword** [1] - 18:7
**kicking** [1] - 13:11
**kind** [6] - 13:6, 13:7, 26:13, 30:2, 30:3, 30:13
**kindly** [1] - 31:17
**knowing** [5] - 16:8, 17:1, 42:23, 42:24, 42:25
**knows** [1] - 15:24
**Koby** [1] - 42:22
**KUCHINSKY** [22] - 2:5, 14:12, 14:15, 16:9, 19:14, 19:20, 20:24, 23:22, 23:25, 33:5, 34:2, 34:7, 35:16, 35:19, 36:21, 37:3, 37:6, 37:9, 37:15, 37:23, 38:3, 38:15
**Kuchinsky** [3] - 15:21, 22:25, 35:4
**Kuchinsky's** [1] - 15:24
**Kyle** [6] - 11:6, 11:12, 12:13, 13:4, 14:5, 16:8

## L

**laid** [1] - 36:17
**language** [1] - 30:3
**Lanie** [3] - 2:19, 44:2, 44:6
**largely** [1] - 3:25
**larger** [1] - 29:25
**last** [6] - 10:22, 16:17, 24:13, 31:17, 40:3, 42:7
**Law** [1] - 1:22
**law** [5] - 3:18, 5:5, 7:12, 7:17, 29:21
**lawsuit** [3] - 11:5, 21:18, 21:22
**lawyer** [3] - 11:7, 14:7, 42:13
**lawyers** [2] - 4:3, 15:2
**lay** [1] - 33:22
**leading** [1] - 4:10
**learned** [3] - 10:18, 10:19, 13:7
**least** [2] - 20:24, 31:12
**leave** [3] - 31:18, 32:2, 39:11
**leaves** [1] - 23:3
**led** [1] - 16:7
**LEE** [1] - 1:18
**left** [1] - 29:15
**legal** [8] - 4:21, 6:12, 6:15, 6:25, 7:23, 8:9, 9:4, 9:12
**legally** [1] - 6:9
**letter** [2] - 8:25, 30:14
**Lexis** [1] - 14:17

**Lieutenant** [5] - 22:7, 27:5, 29:7, 31:21, 32:13
**limited** [4] - 8:8, 8:13, 9:10, 24:14
**limits** [1] - 7:8
**list** [2] - 7:21, 30:1
**listed** [1] - 30:15
**litigating** [1] - 14:8
**litigation** [7] - 5:8, 7:23, 8:3, 8:10, 8:19, 9:14, 37:10
**log** [25] - 4:7, 5:20, 5:23, 6:20, 22:7, 22:22, 23:5, 23:13, 23:14, 25:10, 27:19, 28:19, 28:20, 29:1, 29:11, 31:12, 31:21, 31:25, 32:3, 32:14, 32:16, 32:24, 33:14, 33:23, 37:17
**logs** [2] - 29:17, 43:18
**look** [9] - 13:11, 14:25, 15:6, 15:14, 17:13, 19:13, 34:5, 34:7, 35:8
**looking** [7] - 14:24, 16:10, 16:13, 16:16, 18:8, 23:14, 34:24
**looks** [2] - 14:17, 15:6
**Los** [1] - 1:23
**loss** [2] - 13:8, 13:9
**love** [1] - 40:16
**LUIS** [1] - 2:10
**Lynne** [1] - 3:11
**LYNNE** [1] - 2:10

## M

**magistrate** [2] - 11:23, 11:25
**march** [2] - 3:21, 40:19
**marching** [2] - 35:4, 37:22
**material** [4] - 9:10, 31:7, 31:9, 31:10
**materials** [3] - 4:1, 30:25, 43:6
**matter** [2] - 26:2, 44:4
**matters** [3] - 17:6, 25:25, 30:7
**mean** [12] - 7:10, 15:6, 16:16, 17:17, 17:19, 17:20, 19:14, 23:23, 35:16, 39:2, 42:18, 42:25
**mechanical** [1] - 1:24
**medication** [2] - 11:11, 12:7
**medications** [1] - 12:11
**meet** [1] - 38:12
**member** [2] - 12:19, 14:19
**members** [1] - 37:23
**memo** [2] - 7:1, 27:14
**memoranda** [7] - 7:22, 7:23, 8:1, 8:9, 8:18, 8:20, 9:13
**memorandum** [2] - 27:8, 27:9
**memos** [1] - 6:7
**mental** [31] - 4:12, 4:19, 4:21, 4:23, 6:15, 10:14, 10:20, 11:20, 11:24, 12:6, 12:11, 12:15, 12:18, 12:24, 12:25, 13:2, 13:3, 13:13, 13:20, 13:21, 13:25, 15:10, 15:12, 15:18, 17:8, 17:10, 21:23, 22:5, 28:2, 28:5, 41:1
**merged** [1] - 25:21
**met** [1] - 5:13
**might** [3] - 18:23, 23:19, 41:11
**minutes** [1] - 16:17

**misconduct** [5] - 6:24, 7:22, 8:5, 8:21, 9:20
**missed** [1] - 24:13
**misunderstanding** [1] - 17:5
**MJ** [1] - 17:25
**Monday** [2] - 37:24, 40:2
**money** [2] - 38:2, 38:4
**month** [1] - 20:13
**Morgan** [1] - 8:22
**Morgan's** [1] - 6:18
**most** [5] - 4:17, 5:5, 6:7, 27:6, 40:11
**mostly** [2] - 35:24, 35:25
**motion** [13] - 5:3, 5:19, 5:20, 5:23, 5:24, 11:9, 11:21, 11:25, 14:4, 28:11, 28:19, 34:17, 35:21
**motions** [1] - 10:4
**moved** [1] - 10:5
**MR** [115] - 1:21, 2:1, 2:5, 2:14, 2:14, 3:4, 3:6, 3:13, 4:14, 5:1, 8:7, 10:8, 10:25, 11:2, 11:15, 11:18, 12:12, 13:18, 14:12, 14:15, 15:19, 15:21, 16:9, 17:4, 17:11, 17:14, 17:17, 17:19, 17:24, 18:4, 18:10, 18:18, 18:21, 19:7, 19:14, 19:20, 20:12, 20:23, 20:24, 21:2, 21:9, 21:12, 22:1, 22:4, 22:17, 22:21, 23:10, 23:12, 23:17, 23:20, 23:22, 23:25, 28:8, 28:17, 28:21, 28:25, 29:3, 29:10, 29:14, 29:17, 29:19, 29:25, 30:8, 30:10, 31:10, 32:10, 32:15, 32:19, 33:3, 33:5, 34:2, 34:7, 34:21, 35:11, 35:16, 35:19, 36:21, 37:3, 37:6, 37:9, 37:12, 37:15, 37:20, 37:23, 38:3, 38:13, 38:15, 38:23, 39:5, 39:8, 39:10, 39:16, 39:21, 39:24, 40:4, 40:10, 40:12, 40:16, 40:20, 40:25, 41:3, 41:7, 41:15, 41:16, 41:21, 41:23, 41:25, 42:5, 42:18, 42:20, 43:7, 43:10, 43:16, 43:19, 43:22
**MS** [50] - 2:10, 3:10, 5:17, 18:24, 19:3, 19:8, 19:10, 20:2, 20:7, 20:9, 20:14, 20:17, 21:14, 21:17, 22:10, 22:12, 22:14, 22:16, 23:15, 23:21, 23:24, 24:23, 25:4, 25:8, 25:14, 25:19, 26:4, 26:8, 26:22, 27:2, 27:9, 27:11, 27:13, 27:17, 28:10, 28:13, 28:15, 28:24, 29:5, 29:12, 31:4, 31:15, 31:17, 31:20, 32:7, 38:16, 38:19, 38:21, 40:17, 43:21
**murder** [2] - 4:11, 13:15

# N

**name** [2] - 25:5, 42:7
**named** [3] - 8:22, 11:4, 14:4
**names** [1] - 6:9
**narrowed** [1] - 36:21
**narrower** [2] - 23:3, 32:19
**narrowing** [1] - 24:13
**nature** [1] - 27:3
**necessarily** [3] - 15:25, 25:8, 30:23
**need** [7] - 5:14, 7:3, 13:23, 15:14, 37:21, 38:20, 38:21

**needed** [5] - 3:21, 6:25, 10:12, 40:23, 41:12
**needs** [9] - 4:2, 4:4, 6:6, 8:22, 9:8, 9:15, 9:17, 9:21, 42:13
**negatively** [1] - 12:7
**negotiations** [1] - 7:7
**new** [6] - 39:1, 41:17, 41:22, 41:23, 42:6, 42:13
**newly** [2] - 13:7, 21:18
**news** [1] - 41:21
**night** [2] - 20:17, 20:18
**nonfrivolous** [1] - 16:4
**nonparty** [1] - 3:8
**note** [2] - 42:5, 43:10
**noted** [2] - 33:13, 33:18
**notes** [6] - 22:11, 24:22, 27:1, 27:25, 29:9, 30:5
**nothing** [2] - 26:1, 43:16
**notice** [1] - 25:9
**noticed** [1] - 30:2
**notorious** [1] - 43:15
**November** [3] - 10:22, 12:4, 13:13
**nowhere** [1] - 25:24
**Number** [13] - 5:21, 5:24, 6:3, 6:20, 8:6, 15:15, 15:16, 24:11, 27:7, 27:25, 28:12, 28:18, 28:19
**number** [12] - 7:21, 10:23, 14:25, 17:21, 17:22, 24:10, 25:19, 25:20, 26:25, 29:11, 34:20, 36:14
**numbered** [1] - 44:4
**numbers** [1] - 26:20

# O

**o'clock** [1] - 20:22
**Oakland** [1] - 2:12
**objected** [2] - 24:7, 33:9
**objecting** [1] - 34:9
**objection** [18] - 11:22, 17:9, 24:4, 24:18, 26:10, 33:20, 34:11, 34:13, 35:25, 36:1, 36:8, 36:9, 36:19, 36:21, 36:23, 37:9, 39:22
**objections** [11] - 7:5, 11:25, 24:3, 34:15, 35:2, 35:7, 35:9, 35:23, 36:25, 37:1, 37:2
**obligation** [1] - 16:2
**observations** [2] - 4:11, 27:24
**occurred** [3] - 6:24, 8:5, 37:3
**October** [1] - 13:10
**OF** [5] - 1:1, 1:18, 2:3, 2:6, 2:14
**off-the-cuff** [1] - 18:8
**offender** [1] - 12:22
**office** [1] - 9:2
**Office** [3] - 2:1, 2:15, 3:14
**OFFICE** [1] - 2:14
**office's** [1] - 16:22
**officer** [1] - 25:3
**Officer** [1] - 25:5
**officers** [1] - 6:10

**Offices** [1] - 1:22
**official** [3] - 5:5, 22:13, 37:13
**Official** [4] - 2:19, 2:19, 44:2, 44:6
**often** [1] - 43:15
**OIA** [1] - 36:13
**OIG** [16] - 4:6, 4:16, 4:24, 5:20, 7:9, 7:12, 7:15, 7:17, 7:20, 10:3, 21:3, 21:4, 27:19, 32:8, 32:11, 38:13
**Old** [1] - 2:16
**one** [19] - 8:1, 14:10, 15:14, 18:15, 18:18, 18:24, 24:3, 26:5, 27:20, 27:22, 28:21, 29:8, 29:20, 31:9, 38:5, 39:4, 39:14, 40:20, 43:15
**ones** [1] - 33:13
**opportunity** [2] - 15:5, 21:18
**opposed** [6] - 7:6, 11:8, 13:8, 14:7, 14:16, 41:22
**optional** [1] - 21:7
**order** [17] - 10:5, 10:14, 16:3, 26:7, 26:8, 26:16, 29:9, 38:24, 39:2, 39:18, 39:21, 39:23, 40:9, 40:10, 43:5, 43:9
**ordered** [2] - 4:9, 38:11
**orders** [3] - 35:4, 37:22, 38:21
**Osuna** [13] - 10:5, 10:9, 10:20, 11:10, 11:22, 12:5, 13:13, 13:20, 13:25, 14:18, 21:22, 22:5, 27:11
**Osuna's** [2] - 14:4, 21:5
**over-included** [1] - 24:15
**overlap** [3] - 11:19, 23:18, 31:2
**overview** [1] - 4:6
**own** [1] - 21:23

# P

**package** [1] - 17:15
**page** [5] - 18:15, 22:12, 24:23, 25:25, 26:22
**pages** [3] - 22:14, 27:20
**Paragraph** [2] - 12:25, 13:1
**parallel** [1] - 11:18
**parallels** [1] - 32:24
**pardon** [1] - 26:4
**part** [1] - 5:25
**participate** [1] - 21:6
**parties** [2] - 26:6, 40:7
**parties'** [1] - 4:19
**party** [1] - 41:18
**party's** [1] - 41:18
**patient** [5] - 6:3, 8:14, 8:16, 9:11, 28:6
**pattern** [1] - 29:23
**pause** [1] - 19:2
**Pena** [5] - 30:16, 30:17, 31:11, 31:13, 32:25
**penalty** [1] - 10:11
**pending** [10] - 5:9, 15:3, 24:18, 33:20, 35:6, 36:8, 36:18, 36:22, 37:9, 40:25
**people** [2] - 7:2, 10:16
**perhaps** [1] - 16:8
**person** [1] - 10:16

**personnel** [7] - 22:13, 25:10, 25:25, 26:2, 26:18, 27:5, 30:6
**Personnel** [5] - 7:24, 8:3, 8:11, 8:19, 9:13
**personnel-related** [1] - 30:6
**perspective** [1] - 42:14
**phrased** [1] - 33:15
**place** [2] - 26:16, 42:11
**placed** [4] - 10:20, 12:21, 13:3, 22:5
**Placerville** [1] - 2:16
**places** [1] - 38:3
**placing** [1] - 11:20
**Plaintiff** [2] - 1:5, 1:11
**plaintiff** [5] - 3:5, 3:25, 13:3, 39:12, 42:8
**PLAINTIFF** [1] - 1:21
**plaintiff's** [4] - 13:1, 22:23, 40:22, 42:14
**plaintiffs** [1] - 19:7
**pleadings** [1] - 17:7
**point** [6] - 12:4, 13:6, 15:24, 20:12, 41:16, 43:3
**position** [4] - 5:9, 17:11, 21:4, 40:22
**possession** [5] - 24:4, 33:9, 36:2, 36:6, 42:9
**possible** [2] - 20:10, 41:9
**posture** [2] - 16:6, 16:21
**potential** [2] - 7:22, 8:20
**potentially** [2] - 19:23, 19:24
**practice** [2] - 39:13, 39:19
**pre** [3] - 16:20, 34:17, 35:21
**pre-motion** [2] - 34:17, 35:21
**pre-service** [1] - 16:20
**precedes** [1] - 27:11
**prefer** [1] - 40:7
**preparedness** [1] - 43:17
**presence** [1] - 21:7
**present** [1] - 6:19
**presented** [1] - 6:22
**primary** [1] - 36:1
**Prison** [3] - 25:17, 25:20, 25:24
**prison** [1] - 9:19
**prisoner** [4] - 12:4, 14:21, 15:12, 16:3
**private** [2] - 26:2, 27:3
**privilege** [50] - 3:18, 4:1, 4:7, 5:4, 5:20, 5:23, 6:4, 6:13, 6:20, 7:3, 7:16, 8:14, 8:16, 8:17, 8:23, 9:11, 21:24, 22:7, 22:22, 23:1, 23:2, 23:5, 23:13, 23:14, 24:4, 25:9, 25:10, 27:19, 28:6, 28:19, 28:20, 29:1, 29:11, 29:17, 30:21, 31:12, 31:21, 31:25, 32:3, 32:13, 32:16, 32:20, 32:24, 33:10, 33:14, 33:23, 34:25, 36:3, 37:17, 43:18
**privileged** [11] - 4:22, 5:15, 6:16, 7:9, 8:9, 8:19, 8:25, 9:3, 9:12, 26:2
**privileges** [9] - 4:5, 7:8, 31:23, 32:3, 32:20, 32:21, 33:24, 34:24, 35:6
**pro** [3] - 12:3, 14:21, 16:3
**problem** [1] - 19:4

**procedural** [6] - 5:8, 12:3, 16:6, 16:20, 30:21, 33:7
**procedurally** [1] - 24:1
**proceeding** [1] - 30:22
**PROCEEDINGS** [1] - 1:18
**proceedings** [5] - 6:11, 9:5, 19:2, 43:24, 44:4
**Proceedings** [1] - 1:24
**process** [1] - 32:23
**produce** [13] - 5:25, 6:2, 8:15, 9:22, 27:4, 27:15, 27:24, 28:7, 35:5, 36:22, 37:1, 37:17, 38:11
**produced** [21] - 1:25, 4:9, 4:24, 5:15, 7:4, 7:10, 8:6, 8:12, 8:22, 9:8, 9:15, 9:17, 9:21, 26:21, 30:11, 30:25, 31:9, 31:10, 31:13, 32:25, 42:10
**producing** [4] - 3:23, 26:18, 37:11, 37:15
**product** [7] - 3:19, 4:2, 4:13, 8:16, 8:24, 9:16, 28:5
**production** [5] - 7:13, 7:24, 31:8, 35:9, 37:18
**productions** [1] - 26:19
**pronounced** [1] - 42:7
**properly** [2] - 9:20, 27:21
**proposal** [1] - 40:13
**propose** [1] - 3:20
**proposed** [3] - 40:9, 40:10, 43:5
**protect** [3] - 8:13, 8:23, 9:10
**protection** [3] - 3:19, 4:2, 26:17
**protections** [3] - 4:5, 4:13, 7:8
**protective** [3] - 10:5, 26:8, 26:16
**provided** [3] - 5:6, 37:22, 39:19
**provider** [1] - 17:10
**prudent** [1] - 18:12
**psychotherapist** [5] - 6:3, 8:14, 8:16, 9:11, 28:6
**psychotherapist-patient** [5] - 6:3, 8:14, 8:16, 9:11, 28:6
**psychotropic** [1] - 11:11
**published** [1] - 7:16
**pull** [3] - 17:20, 18:14, 34:18
**pulled** [1] - 14:16
**purpose** [4] - 7:23, 8:3, 9:4, 9:13
**purposes** [3] - 8:10, 8:18, 13:2
**put** [4] - 13:21, 17:8, 17:15, 33:14
**putting** [2] - 13:13, 15:18

## Q

**qualified** [1] - 5:4
**quash** [6] - 5:3, 5:21, 5:23, 5:24, 28:11, 28:20
**questions** [4] - 5:16, 8:2, 26:5, 41:5
**quick** [1] - 21:2
**quote** [1] - 5:5

## R

**raised** [3] - 3:18, 7:5, 34:13

**raising** [1] - 23:6
**RALPH** [1] - 1:7
**ready** [1] - 28:9
**really** [2] - 34:25, 38:1
**reason** [1] - 21:5
**receive** [2] - 35:12, 35:13
**received** [2] - 3:19, 12:6
**receiving** [1] - 12:7
**recently** [1] - 35:12
**recitation** [1] - 4:10
**reclassified** [1] - 12:19
**recollection** [1] - 26:6
**recommendation** [1] - 30:4
**recommendations** [2] - 12:1, 16:14
**record** [4] - 5:19, 5:22, 29:22, 44:4
**record-fast** [1] - 29:22
**recorded** [1] - 1:24
**records** [5] - 10:14, 13:19, 21:5, 25:10, 32:12
**recounts** [1] - 26:11
**redact** [1] - 26:20
**redacted** [9] - 4:25, 6:6, 6:14, 9:16, 9:20, 27:15, 27:22, 28:7
**redactions** [18] - 3:24, 4:8, 4:12, 4:20, 6:1, 6:3, 8:7, 8:13, 8:15, 8:23, 9:9, 9:15, 9:21, 9:23, 28:3, 30:20, 38:12
**Reese** [1] - 24:2
**referenced** [1] - 30:3
**references** [2] - 14:2, 25:25
**referencing** [1] - 23:13
**referring** [2] - 24:21, 25:10
**refresh** [1] - 26:6
**regarding** [1] - 7:22
**REHABILITATION** [2] - 2:3, 2:7
**reinvent** [1] - 42:15
**relate** [2] - 9:24, 30:21
**related** [2] - 28:20, 30:6
**relates** [5] - 13:14, 22:22, 30:8, 30:20, 41:1
**relating** [1] - 5:9
**relations** [1] - 25:2
**Relations** [1] - 25:5
**relevance** [4] - 5:7, 26:5, 26:11, 33:9
**relevant** [1] - 27:8
**relief** [2] - 10:22, 11:6
**remain** [1] - 13:9
**remaining** [1] - 6:14
**remove** [1] - 11:15
**Renfro** [1] - 3:14
**RENFRO** [1] - 2:14
**repeatedly** [1] - 12:14
**report** [1] - 24:10
**Report** [1] - 24:10
**Reporter** [4] - 2:19, 2:19, 44:2, 44:6
**REPORTER'S** [1] - 44:1
**reports** [1] - 7:25
**represented** [1] - 15:17
**request** [4] - 33:8, 33:13, 36:14, 39:6
**requested** [1] - 10:9

requests [1] - 3:20
require [1] - 4:12
required [2] - 14:22, 21:8
requirements [1] - 5:12
requiring [1] - 16:5
resolve [3] - 34:6, 36:5, 36:10
respect [1] - 21:5
respond [1] - 31:4
RESPONDENT [3] - 2:2, 2:5, 2:14
responding [1] - 33:25
responds [1] - 17:25
response [8] - 11:24, 21:19, 22:23, 24:17, 31:6, 33:19, 36:16, 36:18
responses [2] - 33:17, 34:14
responsive [2] - 33:13, 36:17
rest [1] - 9:17
result [2] - 12:8, 16:7
retained [2] - 5:11, 9:25
retaliated [2] - 12:10, 15:12
retaliation [3] - 11:11, 11:13, 12:16
returned [1] - 16:19
review [6] - 13:19, 15:8, 21:18, 31:18, 31:22, 32:2
reviewed [2] - 25:11, 32:2
reviews [1] - 13:24
revised [1] - 38:22
risk [1] - 18:11
RMR [2] - 2:19, 44:2
road [2] - 13:12, 13:22
Road [1] - 2:16
Rodriguez [2] - 25:2, 25:5
role [1] - 6:11
Romero [1] - 13:15
Room [1] - 2:21
ROSENTHAL [1] - 1:18
rule [2] - 26:12, 39:7
ruled [7] - 32:16, 33:21, 34:11, 34:24, 35:2, 36:24, 39:1
ruling [3] - 18:8, 34:16, 37:14
rulings [1] - 37:1
run [1] - 38:17
running [2] - 38:1, 38:4
Rusk [1] - 2:21

**S**

Sacramento [3] - 2:3, 2:8, 2:17
safely [1] - 35:5
saga [1] - 18:12
Salinas [3] - 25:16, 25:20, 25:24
scene [1] - 4:11
schedule [1] - 38:6
scheduling [7] - 19:15, 38:21, 38:23, 40:9, 40:10, 43:5
schizophrenic [2] - 11:10, 12:25
schizophrenic-type [1] - 12:25
screen [1] - 16:2
screening [3] - 14:18, 14:21, 16:21
se [3] - 12:3, 14:21, 16:3

second [7] - 13:8, 17:24, 18:25, 27:20, 29:8, 29:20, 39:4
Security [2] - 26:20, 26:25
see [10] - 14:19, 14:20, 15:2, 16:3, 16:17, 25:4, 25:19, 35:12, 39:4
seeing [2] - 42:23, 42:24
seek [1] - 42:8
seeking [2] - 9:4, 33:11
send [1] - 38:6
sense [3] - 11:17, 40:11, 40:21
sent [2] - 30:14, 36:11
separate [1] - 39:16
separately [2] - 24:2, 39:17
September [1] - 20:3
SEPTEMBER [2] - 1:8, 1:15
served [6] - 14:23, 16:22, 24:1, 24:2, 33:12, 34:1
service [7] - 14:20, 15:22, 16:5, 16:15, 16:18, 16:20
set [6] - 24:7, 24:21, 30:25, 32:19, 32:20, 38:8
several [2] - 22:14, 34:17
sex [1] - 12:22
show [2] - 20:2, 20:16
sign [2] - 39:22, 43:9
significant [4] - 10:19, 11:4, 42:17, 43:1
siloed [1] - 14:9
SILVA [1] - 2:10
Silva [5] - 3:11, 5:7, 5:11, 28:9, 28:10
Silva's [3] - 5:3, 5:9, 5:20
similar [6] - 4:18, 26:13, 42:5, 42:7, 42:21, 42:22
simpler [1] - 13:24
simultaneous [1] - 18:20
single [3] - 11:13, 11:14, 11:16
single-cell [2] - 11:13, 11:14
single-celled [1] - 11:16
situation [1] - 24:16
Skelly [4] - 30:2, 30:4, 30:5
Smith [3] - 2:19, 44:2, 44:6
Social [2] - 26:20, 26:24
SOLARES [2] - 1:4, 1:10
Solares [32] - 5:7, 7:5, 14:5, 22:8, 28:25, 29:3, 29:4, 29:5, 29:6, 29:11, 29:13, 29:15, 30:10, 30:11, 30:19, 31:11, 32:12, 32:14, 33:1, 34:14, 39:5, 40:18, 40:21, 41:10, 41:13, 41:17, 42:17
someone [1] - 9:2
sorry [10] - 5:20, 7:20, 9:1, 23:10, 23:11, 27:9, 27:13, 29:2, 29:6, 35:16
sort [4] - 24:14, 35:20, 35:22, 37:4
sounded [1] - 35:25
southern [1] - 2:20
Southern [1] - 44:2
special [1] - 10:12
specific [1] - 23:7
specifically [2] - 10:9, 24:21

speed [2] - 41:4, 41:18
spinning [1] - 14:10
sponte [1] - 14:17
Spurling [2] - 3:14, 21:3
SPURLING [9] - 2:14, 3:13, 4:14, 5:1, 21:2, 21:9, 28:8, 38:13, 43:22
spurred [1] - 36:4
squarely [1] - 11:20
squash [1] - 5:19
squeaky [1] - 38:24
staff [6] - 4:17, 7:22, 8:20, 9:4, 9:20, 37:23
stage [1] - 14:23
standard [1] - 22:4
stands [1] - 6:17
start [2] - 4:6, 20:19
starting [3] - 19:21, 20:3
state [4] - 3:2, 10:6, 13:10, 13:18
State [7] - 7:24, 8:10, 8:19, 9:13, 25:16, 25:20, 25:24
statements [2] - 4:18, 28:2
States [2] - 2:20, 44:2
STATES [2] - 1:1, 1:19
stating [1] - 15:7
status [3] - 13:2, 15:1, 16:20
stenography [1] - 1:24
step [1] - 36:22
stepped [1] - 34:11
steps [1] - 16:4
still [2] - 14:23, 34:24
stipulated [1] - 38:25
stipulation [1] - 39:7
STOCKER [50] - 2:10, 3:10, 5:17, 18:24, 19:3, 19:8, 19:10, 20:2, 20:7, 20:9, 20:14, 20:17, 21:14, 21:17, 22:10, 22:12, 22:14, 22:16, 23:15, 23:21, 23:24, 24:23, 25:4, 25:8, 25:14, 25:19, 26:4, 26:8, 26:22, 27:2, 27:9, 27:11, 27:13, 27:17, 28:10, 28:13, 28:15, 28:24, 29:5, 29:12, 31:4, 31:15, 31:17, 31:20, 32:7, 38:16, 38:19, 38:21, 40:17, 43:21
Stocker [4] - 3:11, 34:9, 37:16, 40:6
stocker [3] - 23:22, 24:14, 32:15
straight [1] - 22:8
Street [3] - 2:2, 2:7, 2:11
structure [1] - 41:10
stuff [2] - 18:9, 35:1
sua [1] - 14:17
subject [12] - 4:1, 6:10, 6:13, 7:6, 7:14, 7:24, 9:21, 9:22, 11:10, 11:11, 24:18, 38:12
submission [1] - 18:16
submit [4] - 17:16, 21:19, 39:21, 40:8
submitted [4] - 6:1, 31:20, 31:21, 32:2
subpoena [12] - 22:23, 24:1, 24:6, 32:8, 32:11, 33:7, 33:11, 34:1, 34:14, 36:5, 36:7
subsequent [1] - 24:13

**substance** [1] - 9:7
**sued** [1] - 16:8
**sufficient** [1] - 26:17
**suggesting** [1] - 34:4
**Suite** [5] - 1:23, 2:2, 2:7, 2:11, 2:16
**summary** [3] - 6:21, 8:4, 27:1
**supplemental** [1] - 36:16
**supposed** [3] - 20:2, 20:18, 20:19
**Sureños** [1] - 12:19
**suspect** [1] - 16:6

## T

**tail** [1] - 41:14
**takeaway** [1] - 15:14
**talks** [1] - 12:25
**tandem** [1] - 40:19
**term** [1] - 30:2
**terms** [6] - 19:15, 29:17, 42:3, 42:15, 42:23, 43:1
**Texas** [3] - 2:20, 2:22, 44:3
**THE** [145] - 1:18, 1:21, 2:1, 2:5, 2:10, 2:14, 2:14, 3:2, 3:9, 3:12, 3:16, 4:15, 5:2, 5:18, 8:8, 10:24, 11:1, 11:14, 11:17, 12:9, 13:16, 14:14, 15:13, 15:20, 16:1, 17:3, 17:6, 17:13, 17:15, 17:18, 17:22, 18:3, 18:7, 18:11, 18:19, 18:23, 19:1, 19:4, 19:9, 19:12, 19:19, 20:1, 20:5, 20:8, 20:11, 20:15, 20:21, 21:1, 21:7, 21:10, 21:13, 21:16, 21:21, 22:3, 22:6, 22:11, 22:13, 22:15, 22:19, 23:6, 23:11, 23:14, 23:16, 23:18, 24:20, 24:24, 25:7, 25:13, 25:18, 26:3, 26:5, 26:9, 26:24, 27:4, 27:10, 27:12, 27:15, 27:18, 28:9, 28:11, 28:14, 28:16, 28:18, 28:23, 29:2, 29:4, 29:6, 29:15, 29:18, 29:20, 30:6, 30:9, 31:1, 31:5, 31:14, 31:16, 31:19, 32:5, 32:9, 32:13, 32:18, 33:2, 33:4, 33:24, 34:4, 34:19, 35:8, 35:15, 35:18, 36:20, 36:24, 37:5, 37:8, 37:13, 37:18, 37:21, 38:1, 38:8, 38:14, 38:17, 38:20, 39:3, 39:6, 39:9, 39:13, 39:18, 39:22, 40:3, 40:9, 40:11, 40:13, 40:19, 40:24, 41:2, 41:4, 41:8, 41:20, 42:2, 42:16, 42:19, 43:3, 43:8, 43:14, 43:20, 43:23
**theme** [1] - 10:15
**theory** [1] - 12:9
**therefore** [1] - 33:21
**they've** [2] - 14:8, 28:4
**thick** [1] - 22:20
**threats** [1] - 12:20
**three** [4] - 16:17, 18:2, 18:15, 27:20
**three-page** [1] - 18:15
**Thursday** [1] - 37:25
**tied** [2] - 28:2, 35:22
**timely** [1] - 7:5
**timing** [3] - 40:22, 42:1, 42:15
**titled** [1] - 30:15
**titles** [2] - 31:12, 31:13

**today** [9] - 19:5, 21:11, 37:3, 37:24, 38:10, 38:18, 40:1, 40:4, 43:8
**toes** [1] - 34:12
**together** [1] - 17:15
**tomorrow** [1] - 40:1
**top** [1] - 29:13
**towards** [1] - 26:10
**TRANSCRIPT** [1] - 1:18
**transcript** [3] - 1:25, 27:23, 44:3
**treated** [2] - 12:8, 12:12
**treatment** [3] - 9:7, 12:6, 15:11
**trial** [1] - 19:21
**tried** [1] - 37:6
**true** [4] - 29:12, 41:20, 44:3
**try** [2] - 34:18, 36:5
**trying** [4] - 34:2, 34:3, 36:9, 36:10
**turn** [2] - 30:18, 40:1
**turned** [1] - 30:19
**turns** [1] - 43:11
**twist** [1] - 43:11
**two** [17] - 7:11, 10:10, 11:4, 14:4, 18:15, 22:9, 22:10, 22:12, 22:17, 22:19, 23:16, 24:23, 25:25, 26:5, 26:22, 27:19
**two-page** [4] - 22:12, 24:23, 25:25, 26:22
**type** [2] - 12:25, 30:15
**typed** [1] - 14:24

## U

**uncertainty** [1] - 41:12
**unclear** [2] - 24:25, 31:2
**under** [6] - 5:12, 13:3, 14:22, 16:1, 24:10, 36:7
**undercut** [1] - 37:10
**underlying** [1] - 41:5
**understood** [2] - 28:8, 32:17
**unexecuted** [1] - 16:19
**unfortunately** [1] - 38:4
**United** [2] - 2:20, 44:2
**UNITED** [2] - 1:1, 1:19
**universe** [2] - 30:12, 34:8
**unresolved** [2] - 13:9, 40:25
**up** [18] - 4:11, 6:8, 7:18, 11:10, 11:24, 12:6, 12:22, 14:16, 16:2, 17:20, 19:16, 20:2, 20:16, 28:2, 34:18, 38:20, 41:4, 41:18
**up-front** [1] - 16:2
**update** [2] - 10:8, 32:1

## V

**VA** [1] - 6:17
**Valley** [3] - 25:16, 25:20, 25:24
**various** [2] - 22:23, 27:6
**version** [2] - 27:15, 28:7
**versus** [3] - 29:13, 29:15, 42:25
**Vertical** [1] - 6:8
**vertical** [1] - 6:17
**via** [1] - 1:25

**victory** [1] - 29:24
**violating** [1] - 34:10
**voluntary** [1] - 7:14
**VS** [2] - 1:6, 1:13

## W

**Wait** [1] - 13:8
**waiting** [3] - 37:4, 37:7, 41:6
**waived** [5] - 7:10, 13:20, 16:18, 17:9, 21:25
**waiver** [6] - 7:14, 15:5, 18:17, 21:11, 21:20, 21:24
**waivers** [1] - 16:19
**waives** [1] - 7:16
**wants** [2] - 11:1, 12:21
**warden** [5] - 6:23, 8:4, 9:6, 9:18, 25:6
**warrant** [1] - 10:1
**waving** [1] - 13:7
**Wednesday** [1] - 37:25
**week** [7] - 18:15, 18:18, 19:5, 19:20, 20:3, 20:9, 38:9
**weekend** [1] - 43:23
**weeks** [1] - 18:15
**whatsoever** [1] - 26:1
**wheel** [2] - 38:24, 42:15
**wheels** [1] - 14:10
**whole** [4] - 20:13, 30:1, 30:4, 41:17
**Wi** [1] - 20:6
**Wi-Fi** [1] - 20:6
**widow** [1] - 42:22
**Wilshire** [1] - 1:22
**wish** [1] - 27:14
**withheld** [7] - 4:4, 24:15, 24:19, 31:1, 31:7, 31:11, 33:14
**withholding** [2] - 33:21, 36:19
**witness** [2] - 4:17, 28:2
**word** [2] - 7:7, 43:15
**works** [2] - 19:7, 20:24
**world** [1] - 16:23
**written** [2] - 11:25, 19:12

## Y

**year** [3] - 5:6, 10:22, 11:22
**yesterday** [4] - 16:11, 33:6, 33:16, 37:7
**you-all** [1] - 37:21

## Z

**ZOOM** [1] - 1:18