ROB BONTA, State Bar No. 202668
Attorney General of California
JON S. ALLIN, State Bar No. 155069
Supervising Deputy Attorney General
DAVID E. KUCHINSKY, State Bar No. 292861
Deputy Attorney General
  1300 I Street, Suite 125
  Sacramento, CA 95814
  Telephone:  (916) 210-7666
  Fax:  (916) 324-5205
  E-mail:  David.Kuchinsky@doj.ca.gov
*Attorneys for Defendants Burnes, Pena, Gamboa,
Garcia, Gallemore, Maytubby, and Munoz*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

FRESNO DIVISION

| | |
|---|---|
| **DORA SOLARES,**<br><br>                                     Plaintiff,<br><br>          **v.**<br><br>**RALPH DIAZ, et al.,**<br><br>                                    Defendants. | 1:20-CV-00323-LHR-FRS<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFF'S APPLICATION FOR RECONSIDERATION**<br><br>Judge:         Hon. Lee H. Rosenthal<br>Trial Date:    Not set<br>Action Filed:  March 2, 2020 |

**INTRODUCTION**

In this case, Plaintiff has repeatedly sought disclosure of privileged mental health communications between third-party inmate Osuna and his mental health treatment providers, asserting conflicting and unsupported theories, citing cases for propositions they do not advance, and ignoring authority that clearly indicates these records are absolutely protected from disclosure.  The Court has already reviewed the records in-camera, heard extensive argument from counsel in both pre-motion conferences and in formal briefing, and held that Osuna's communications with his mental health providers are privileged and that Osuna did not waive that privilege.

1

1    Now, Plaintiff's seeks reconsideration of that ruling.  There is no basis for reconsideration.

2    There is no newly discovered evidence, change in intervening law, or any error in the Court's

3    existing ruling.  The only new development is deposition testimony that, by Plaintiff's own

4    admission, confirms that the privileged communications were, in fact, kept confidential.  Thus,

5    while there has been additional discovery, there has been no change whatsoever in the facts and

6    evidence.  Plaintiff also cites an unredacted portion of a privileged document that was

7    inadvertently disclosed, but which the Court already reviewed in issuing its existing order.

8    Rather than comply with the Federal Rules and the terms of the stipulated protective order in this

9    case by returning or destroying the privileged material, Plaintiff tries to use it as a basis for the

10   Court to reconsider its prior ruling.  But the inadvertently disclosed material is not newly

11   discovered evidence, since the Court already conducted its in-camera review of the unredacted

12   documents and found the material to be privileged and protected from disclosure.

13   Nor has Plaintiff shown any clear error by the Court or an intervening change in case law.

14   Instead, Plaintiff misstates the holdings in *Jaffee, Romo,* and *Chase*, and again tries to argue that

15   the privilege is subject to a balancing test that should give way due to the importance of the

16   material to Plaintiff's case.  Plaintiff misstates the holding in *U.S. v. Chase* and argues that a

17   dangerous-patient exception applies, where *Chase* made clear no such exception applies in the

18   Ninth Circuit.  Plaintiff conflates the potential duty for a psychotherapist to report specific,

19   credible threats to law enforcement with later discovery of those communications in a subsequent

20   civil lawsuit, which *Chase* expressly rejects.

21   The parties have already litigated this issue, and the Court has made a legally correct ruling.

22   The Court should deny Plaintiff's motion and order Plaintiff's counsel to comply with the

23   protective order, and Rule 26(b)(5)(B), and destroy or return all copies of the inadvertently

24   disclosed material, including retrieving any copies he has disclosed to third parties.

25                                      **ARGUMENT**

26   **I.    STANDARD FOR RECONSIDERATION**

27   Reconsideration of a court's order is an "extraordinary remedy, to be used sparingly in the

28   interests of finality and conservation of judicial resources."  *Kona Enters., Inc. v. Estate of*

2

1  *Bishop*, 229 F.3d 877, 890 (9th Cir. 2000) (citation omitted) (discussing reconsideration

2  under Rule 59(e)).  A motion for reconsideration "should not be granted, absent highly unusual

3  circumstances, unless the district court is presented with newly discovered evidence, committed

4  clear error, or if there is an intervening change in controlling law." *Marlyn Nutraceuticals, Inc. v.*

5  *Mucos Pharma GmbH & Co.*, 571 F.3d 873, 880 (9th Cir. 2009) (citation omitted).  The party

6  seeking reconsideration bears the burden of proving reconsideration is proper. See *389 Orange St.*

7  *Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir. 1999) (noting it was the movant's burden "to

8  establish that the district court committed clear error").

9       There are no grounds for the Court to reconsider its previous ruling, which was reached

10  after more than a year of extensive argument and briefing from the parties.  There is no new

11  evidence to discover in this case, as the Court has already reviewed in-camera the documents at

12  issue and found them to be privileged.  The Court correctly applied controlling case law to the

13  evidence in this case, and Plaintiff has continued to misconstrue the findings in multiple cases.

14       Indeed, the only change is that additional discovery has solidified the premise of the

15  existing order and a document referring to communications that were already ruled to be

16  privileged was inadvertently disclosed.  Rather than comply with the provisions of the stipulated

17  protective order and the Federal Rules of Civil Procedure, which require Plaintiff to destroy or

18  return the inadvertently disclosed material, Plaintiff now seeks to capitalize on this mistake to

19  override a third party's privilege over his confidential mental health communications.  The Court

20  should reject this attempt.

**II.    THE COURT PROPERLY RULED THAT OSUNA'S MENTAL HEALTH
         COMMUNICATIONS ARE PRIVILEGED AND OSUNA DID NOT WAIVE THE PRIVILEGE.**

**A.    Communications Between a Patient and a Psychotherapist in the Course of
         Mental Health Treatment Are Privileged and Protected from Compelled
         Disclosure.**

25       Confidential communications between a licensed psychotherapist, psychiatrist, psychologist, or

26  social worker and their patients or clients, made in the course of diagnosis or treatment, are absolutely

27  privileged and are protected from compelled disclosure.  *See* Fed. R. Evid. 501; *Jaffee v. Redmond*,

28  518 U.S. 1, 10-11, 15-16 (1996).

3

Defs. Opp. to Mot. for Reconsideration  (1:20-CV-00323-LHR-FRS)

1      In *Jaffee,* Defendant Redmond, a police officer, responded to a "fight in progress" call at an

2 apartment complex, and arrived to see multiple men, including decedent Allen, running out of the

3 apartment building. *Id.* at 4-5. Redmond shot Allen, who died at the scene, and the administrator of

4 Allen's estate filed suit in federal court alleging federal and state-law claims. *Id.* After the shooting,

5 Redmond participated in approximately fifty counseling sessions with a clinical social worker. *Id.* at

6 5. In discovery, the plaintiff sought production of the social worker's notes of the sessions, and

7 Redmond objected asserting that "the contents of the conversations between [the social worker] and

8 Redmond were protected against involuntary disclosure by a psychotherapist-patient privilege." *Id.*

9      The district court overruled Redmond's objection, but the Court of Appeals for the Seventh

10 Circuit reversed, finding that the trial court had erred in refusing to afford protection to the

11 communications between Redmond and her therapist, and concluding that "reason and experience, the

12 touchstones for acceptance of a privilege under Rule 501 of the Federal Rules of Evidence,

13 compelled recognition of a psychotherapist-patient privilege." *Id.* at 6-7 (internal citations

14 omitted). The Court of Appeals held that, "Reason tells us that psychotherapists and patients

15 share a unique relationship, in which the ability to communicate freely without the fear of public

16 disclosure is the key to successful treatment. *Id.* at 6 (internal citations omitted). The Court of

17 Appeals "qualified its recognition of the privilege by stating that it would not apply if, "in the

18 interests of justice, the evidentiary need for the disclosure of the contents of a patient's counseling

19 sessions outweighs that patient's privacy interests." *Id.* at 6-7 (internal citations omitted).

20      The Supreme Court granted certiorari to address whether "a privilege protecting

21 confidential communications between a psychotherapist and her patient "promotes sufficiently

22 important interests to outweigh the need for probative evidence." *Id.* at 9-10 (internal citations

23 omitted). The Supreme Court held that "both reason and experience persuade us that it does." *Id.*

24 at 10. The Court found that "the psychotherapist-patient privilege is rooted in the imperative

25 need for confidence and trust." *Id.* While physical ailments can often be successfully treated by

26 an examination, "[e]ffective psychotherapy, by contrast, depends upon an atmosphere of

27 confidence and trust in which the patient is willing to make a frank and complete disclosure of

28

4

facts, emotions, memories, and fears. Because of the sensitive nature of the problems for which individuals consult psychotherapists, disclosure of confidential communications made during counseling sessions may cause embarrassment or disgrace. For this reason, the mere possibility of disclosure may impede development of the confidential relationship necessary for successful treatment."

The Supreme Court further noted that a mental health provider's ability to help patients is "completely dependent upon the patients' willingness and ability to talk freely.  This makes it difficult if not impossible for a psychiatrist to function without being able to assure patients of confidentiality and, indeed, privileged communication. Where there may be exceptions to this general rule, there is wide agreement that confidentiality is a *sine qua non* for successful psychiatric treatment." *Id.* at 10-11 (internal citations omitted).  "The psychotherapist privilege serves the public interest by facilitating the provision of appropriate treatment for individuals suffering the effects of a mental or emotional problem.  The mental health of our citizenry, no less than its physical health, is a public good of transcendent importance." *Id.* at 11.

The Supreme Court ruled that "[i]f the privilege were rejected, confidential conversations between psychotherapists and their patients would surely be chilled," and that "[d]enial of the federal privilege would therefore frustrate the purposes of the state legislation that was enacted to foster these confidential communication." *Id.* at 12.

Noting the unanimous acceptance of the privilege at the state level, the Supreme Court ruled:

> Because we agree with the judgment of the state legislatures and the Advisory Committee that a psychotherapist-patient privilege will serve a "public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth, **we hold that confidential communications between a licensed psychotherapist and her patients in the course of diagnosis or treatment are protected from compelled disclosure under Rule 501 of the Federal Rules of Evidence**."

*Id.* at 14-15 (emphasis added, internal citations omitted).

Importantly, the Supreme Court explicitly rejected the balancing test imposed by the Court of Appeals.  *Id.* at 17.  **"Making the promise of confidentiality contingent upon a trial judge's later evaluation of the relative importance of the patient's interest in privacy and**

5

1  **the evidentiary need for disclosure would eviscerate the effectiveness of the privilege. As we**
2  **explained in *Upjohn*, if the purpose of the privilege is to be served, the participants in the**
3  **confidential conversation 'must be able to predict with some degree of certainty whether**
4  **particular discussions will be protected. An uncertain privilege, or one which purports to be**
5  **certain but results in widely varying applications by the courts, is little better than no**
6  **privilege at all.'"**  *Id.* at 17-18 (emphasis added).  The Supreme Court concluded, "The
7  conversations between Officer Redmond and [the social worker] and the notes taken during their
8  counseling sessions are protected from compelled disclosure under Rule 501 of the Federal Rules
9  of Evidence."  *Id.* at 18.

10      An Eastern District court applied the privilege where a plaintiff sought documents from a
11  non-party inmate's mental health records, including documents generated in the course of a
12  doctor's treatment of the non-party inmate.  *Crane v. Rodriguez*, No. 2:15-cv-0208-TLN-KJN-P,
13  2020 WL 1317344, at *4-5 (E.D. Cal. Mar. 20, 2020).  The California Department of Corrections
14  and Rehabilitation (CDCR) objected to production of the mental health records, asserting that the
15  documents were protected from disclosure by the psychotherapist-patient privilege."  *Id.* at 5.
16  The court reiterated the United States Supreme Court rule that "confidential communications
17  between a licensed psychotherapist and [ ] patients in the course of diagnosis or treatment are
18  protected from compelled disclosure under Rule 501 of the Federal Rules of Evidence."  *Id.* at 6
19  (citing *Jaffee, supra*, 518 U.S. at 15.)  "After *Jaffee*, a court cannot force disclosure of
20  psychotherapist-patient communications solely because it may be extremely useful to the finder
21  of fact.  Giving weight to the usefulness of the evidence as a factor in a decision regarding the
22  scope of the privilege would be a balancing exercise that was barred by *Jaffee.*" *Id.* at 6.  The
23  court found that the mental health records were not discoverable absent a waiver by the non-party
24  inmate and denied the plaintiff's motion to compel.  *Id.*
25  ///
26  ///
27  ///
28

6

**B.** ***U.S. v. Romo* Is Inapplicable Because the Communications Here Were Made in the Course of Mental Health Treatment and Were Not Shared with Any Non-Mental Health Staff Members.**

Plaintiff has repeatedly cited to *U.S. v. Romo* for the proposition that the communications are not privileged, but *Romo* contemplates a situation in which communications were made outside of the mental health treatment context and where the patient was explicitly told the statements were not confidential and would be reported, and the patient continued to make the statements anyway. *U.S. v. Romo*, 413 F.3d 1044, 1045-46 (9th Cir. 2005). The Ninth Circuit found that the statements were not privileged, because "we are without any evidence suggesting that the session was related to therapy or diagnosis." *Id.* It was the circumstances in which the statement was made, not the inculpatory or confessional nature of the statements, that made the privilege inapplicable to that particular statement. *Id.*

No such circumstances are present here, where CDCR has provided a privilege log showing that all the communications, and all access to the communications, were made to the mental health treatment team and not disclosed to any non-mental health staff members. (*See* CDCR Privilege Log, ECF No. 166.) The Court has already reviewed both the privilege log and the documents in-camera and found that the statements were privileged. (*See* Minute Entry for Discovery and Status Conference, ECF No. 213.)

Despite this finding, Plaintiff continues to make the wholly unsupported assertion that "mental health routinely shared documents with CDCR officials making administrative decisions." (Mot. for Reconsideration at 6, ECF No. 242.) This is untrue. As demonstrated in the privilege log, Osuna's mental health communications were not shared or accessed by anyone outside of the mental health treatment team. (ECF No. 166.)

Plaintiff also argues that "CDCR officials (who are not mental health staff) can request mental health assessments and Mental Health will share such assessments, even the direct words of a patient." (Mot. for Reconsideration at 7.) Plaintiff provides no evidence for this bald assertion, and it is contradicted by the record before the Court. Plaintiff claims that subject communications "were already shared with correctional decision-makers for administrative purposes" and that "CDCR inmate mental health records are routinely shared with non-mental

7

1   health officials for purposes of making administrative decisions, such as punishment,

2   classification, or housing." (*Id.* at 12-13.)  Again, this is untrue, and Plaintiff provides no

3   evidentiary support at all for this assertion.  Plaintiff attaches some non-privileged documents

4   from Osuna's central file to the motion for reconsideration (Exhibits B-D, subject to sealing

5   request), apparently asserting that because those documents touch on Osuna's mental health, all

6   of Osuna's core mental health records are not privileged.  The privilege log provided by CDCR

7   shows that the privileged communications were not shared or accessed by anyone outside of the

8   mental health treatment team.  (ECF No. 166.)

9       Despite these untrue assertions, Plaintiff's own argument concedes that the

10  communications sought in this case were not shared outside of the mental health team.  (Mot. for

11  Reconsideration at 3-4, ECF No. 242.)  Indeed, the premise for Plaintiff's argument that a change

12  in circumstances justifies reconsideration is that Plaintiff has learned that mental health

13  communications were *not* disclosed at the classification committee by Defendant Maytubby, the

14  mental health representative.  (*See* Mot. for Reconsideration at 3.)   There is simply no basis to

15  support Plaintiff's claim that mental health records are disclosed to individuals outside the mental

16  health treatment team.

17      **C.    There Is No Dangerous Patient Exception to the Privilege.**

18      Plaintiff also attempts to convince the Court to apply a dangerous-patient exception that has

19  been explicitly rejected by the Ninth Circuit.  *U.S. v. Chase*, 340 F.3d 978, 985-987 (9th Cir.

20  2003).  Plaintiff misconstrues the holding in *U.S. v. Chase* by conflating confidentiality and

21  testimonial privilege.  While psychotherapists may have a duty under very limited circumstances

22  to disclose credible specific threats to law enforcement in the moment, that duty is separate and

23  distinct from the testimonial privilege, which protects such communications from disclosure in

24  subsequent proceedings.  Though completely omitted from Plaintiff's explanation of *Chase*, the

25  Ninth Circuit made this distinction clear.  Quoting Oregon's supreme court, *Chase* distinguished

26  between the evidentiary privilege claimed by a patient, or a psychotherapist on their behalf, in a

27  civil lawsuit and the ethical obligation that a psychotherapist may have to notify the police in

28

1    order to aid a victim or warn of future dangerousness:  "The public interest to be served by

2    notifying the police, in most cases, could be achieved by divulging only that information needed

3    to show why a clear and immediate danger is believed to exist. It would rarely justify the full

4    disclosure of the patient's confidences to the police, and never justify a full disclosure in open

5    court, long after any possible danger has passed." *Id*. at 986.  The Ninth Circuit went on to

6    explain, "Had Defendant been prosecuted in state court, [the psychotherapist] could not have

7    testified about what Defendant told her during therapeutic sessions, notwithstanding her

8    permissible disclosure of threats to the authorities." *Id*.  The Court further held, "analytically

9    there is little connection between a psychotherapist's state-imposed obligation to report a

10   dangerous patient at the time the patient makes a threat, on the one hand, and the later operation

11   of the federal testimonial privilege on the other." *Id.* at 987.

12       The Ninth Circuit found that "the confidentiality laws, and the testimonial privilege, are

13   designed to assist the individual patient who has sought help, and, on a larger scale, to improve

14   public health." *Id.* at 990.  A conviction or adverse finding, "with the help of a psychotherapist's

15   testimony is almost sure to spell the end of any patient's willingness to undergo further treatment

16   for mental health problems." *Id.* at 991.

17       The Ninth Circuit concluded, "A dangerous-patient exception to the federal

18   psychotherapist-patient testimonial privilege would significantly injure the interests justifying the

19   existence of the privilege; would have little practical advantage; would encroach significantly on

20   the policy prerogatives of the states; and would go against the experience of all but one of the

21   states in our circuit, as well as the persuasive Proposed Rules. We therefore decline to recognize a

22   dangerous-patient exception to the federal psychotherapist-patient privilege.  [The

23   psychotherapist] testified about some of her conversations with Defendant during therapeutic

24   sessions. Because Defendant's statements were made for the purpose of obtaining treatment, and

25   because there is no dangerous-patient exception to the federal privilege that otherwise applies, the

26   admission of [the psychotherapist]'s testimony about Defendant's communications to her was

27   erroneous. *Id.* at 992.

28

9

1    Further confusing the issue, Plaintiff advances a nonsensical distinction between

2    testimony about communications and records containing those communications.  (Mot. for

3    Reconsideration at 9-10.)  Requiring disclosure of records containing confidential statements has

4    the same effect of breaching the patient's privilege as requiring Defendant Maytubby to testify to

5    the statements at a deposition or trial.  It is the disclosure of the communications that the privilege

6    protects, not the specific evidentiary form in which it is presented.  And as a practical matter the

7    records alone would be inadmissible without testimony authenticating their content.

8    There is no dangerous-patient exception to the psychotherapist-patient privilege.  Plaintiff

9    falls back on the previous line of argument, urging the Court to again adopt a balancing test and

10   abrogate the privilege on the basis of the potential probative value to Plaintiff.  "If LCSW Kyle

11   breached that duty, then the records demonstrating what she was on notice of … are necessary to

12   establish Plaintiff's claims of deliberate indifference." (Mot. for Reconsideration at 9.)  The

13   Supreme Court and the Ninth Circuit have clearly and explicitly rejected this balancing approach.

14   The potential probative value of communications has no bearing whatsoever on whether they are

15   privileged or whether a privilege was waived.

16   **D.    Osuna's Mental Health Records Are Privileged, and Osuna Has Not Waived
         the Privilege.**

17

18   Here, the court has reviewed the communications in-camera and found that the

19   communications are privileged and that the privilege has not been waived.  (ECF No. 213.)

20   Plaintiff's made-up claims that mental health records are shared with non-mental health staff

21   members is contradicted by the evidence the Court has already reviewed.  And Osuna has

22   repeatedly and consistently stated in his filings that he has not waived his privilege and is

23   invoking it over his mental health communications.  Plaintiff's new arguments are unavailing and

24   do not show that the Court committed any error in its ruling.  Communications between a

25   psychotherapist and patient made in the course of treatment are protected from compelled

26   disclosure.  Plaintiff does not show that any disclosure of these communications was ever made

27   by mental health to any non-mental health treatment member or to law enforcement, still less that

28

1  such a hypothetical disclosure could somehow waive the privilege, which is solely within the

2  control of the patient.

3       There is no basis to reconsider or reverse the Court's sound ruling that the subject

4  communications are privileged and protected from disclosure.

5                                          **CONCLUSION**

6       Third-party Osuna's communications with his mental health providers in the course of

7  mental health treatment are protected from compelled disclosure, based on the absolute privilege

8  announced by the United States Supreme Court.  This Court has already reviewed the subject

9  records in-camera, heard extensive argument from the parties, and recognized that Osuna did not

10  waive this privilege, and denied Plaintiff's request to circumvent the privilege.  Plaintiff's motion

11  for reconsideration presents no new facts or legal authority, and no error by the Court, that would

12  justify reconsideration or overturning of that ruling.  There is no authority to support Plaintiff's

13  position that these privileged communications should be disclosed, and the Court should deny

14  Plaintiff's request for reconsideration.

15

16

17  Dated:  March 13, 2026                    Respectfully submitted,

18                                            ROB BONTA
                                             Attorney General of California
19                                            JON S. ALLIN
                                             Supervising Deputy Attorney General
20

21

22                                            */s/ David E. Kuchinsky*
                                             DAVID E. KUCHINSKY
23                                            Deputy Attorney General
                                             *Attorneys for Defendants Burnes,*
24                                            *Pena, Gamboa, Garcia, Gallemore,*
     SA2019101902                             *Maytubby, and Munoz*
25   39702531

26

27

28

                                               11

# CERTIFICATE OF SERVICE

Case Name:    **Dora Solares v. Ralph Diaz, et al.**            No.    **1:20-CV-00323-LHR-FRS**

I hereby certify that on <u>March 13, 2026</u> I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

- **DEFENDANTS' OPPOSITION TO PLAINTIFF'S APPLICATION FOR RECONSIDERATION**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on <u>March 13, 2026</u> at Los Angeles, California.

<table>
<tr><td>J. Sissov</td><td>*/s/ J. Sissov*</td></tr>
<tr><td>Declarant</td><td>Signature</td></tr>
</table>

SA2019101902