**FILED**

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF CALIFORNIA**

MAR 30 2026

CLERK U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY_____
DEPUTY CLERK

Jamie Osuna BD0868
PO Box 8800 CSP-COR
Corcoran, CA 93212
NonParty,

Dora Solares
                    Plaintiff,
        v.
Ralph Diaz, et al,
                    Defendants.

No. 1:20-cv-00323-LHR-FJS

**NONPARTY JAMIE OSUNA'S OPPOSITION TO DEFENDANTS' APPLICATION FOR ORDER TO SHOW CAUSE (ECF NO. 264)**

Jamie Osuna opposes Defendants' application at ECF No. 264.

Defendants mischaracterize March 16 as simple noncompliance. Osuna appeared. The real dispute is that Defendants sought testimony about the same events at issue in his still-pending criminal prosecution, rejected his question-specific Fifth Amendment invocations, did not stop to obtain immediate court guidance, and now seek coercive sanctions on a disputed and incomplete record. On these facts, sanctions should be denied. The proper course is full-record review, preservation of the surrounding evidence, and an order ensuring Osuna's access to the April 7 hearing.

ECF No. 233 required Osuna to appear and to assert privilege with respect to specific questions. Osuna does not dispute that point. But ECF No. 233 did not authorize defense counsel to decide in the deposition room that same-incident Fifth Amendment invocations were invalid and then seek coercive sanctions based on their own summary of what occurred. Nor did ECF No. 233 authorize the process Osuna describes in ECF No. 253: being told there was already a signed extraction order when there was not, being told criminal counsel was present or waiting when he was not, being brought injured and restrained, and then being questioned without the Court being contacted despite an active dispute over the manner of the deposition. ECF No. 253 at 2-4.

**I. ECF No. 233 controlled the process, and Defendants skipped that process.**

The February 13, 2026, order did two things. First, it denied Osuna's request to avoid the deposition altogether and held that, in a civil case, the Fifth Amendment must be asserted question by question. ECF No. 233 at 1-2. Second, it set the enforcement sequence. The Court

1                                                    **Opposition to ECF No. 264**

ordered Osuna to appear in person. It then stated: "If Osuna fails to appear for his deposition, a party may move to hold Osuna in contempt. If a party so moves, Osuna must, by March 19, 2026, show cause for why he should not be held in civil contempt. If Osuna does not show cause for why he should not be held in civil contempt, the court will issue such further orders and sanctions as are necessary to obtain Osuna's appearance, including requiring, by March 26, 2026, that the U.S. Marshals and CDCR make Osuna appear for a deposition." ECF No. 233 at 2. The same order also said that, if review of CDCR's arrangements was needed, "the parties may contact the court to schedule a pre-motion conference." Id.

That sequence matters. There was no preexisting order to show cause before the March 16 extraction, and there was no later written order directing Marshals or CDCR to force transport before the deposition occurred. Yet Osuna stated under penalty of perjury in ECF No. 253 that officers and Osuna were told that Judge Rosenthal had already signed an extraction order and that his criminal attorney was present or waiting; that when he arrived his criminal attorney was not present; and that it was then admitted there was no extraction order. ECF No. 253 at 2-4. Defendants' own application now admits that "when he did appear," Osuna was physically present. ECF No. 264 at 2. The Court should not accept a sanctions request built on a disputed forced-extraction process that bypassed the sequence the Court itself laid out.

Defendants also say the deposition was "suspended to seek further intervention from the Court." ECF No. 264 at 2. Osuna states the opposite: despite the dispute in the room, at no time was the deposition stopped and the Court contacted. ECF No. 253 at 4. If Defendants believed there was a real-time dispute about restraints, the oath, privilege, or the conditions under which the deposition was proceeding, ECF No. 233 told them what to do. They did not do it.

Defendants' application is also procedurally defective under Local Rule 251. Discovery motions under Rules 26 through 37 and 45 ordinarily require twenty-one days' notice, and even the sanctions-only exception requires fourteen days' notice; by the same rule, Local Rule 230 does not govern discovery motions.

**II. Contempt and coercive sanctions should not issue on this disputed and incomplete record.**

**Opposition to ECF No. 264**

**A. Osuna appeared. This is not the clean nonappearance scenario contemplated by ECF No. 233.**

Defendants try to present March 16 as if Osuna simply defied an order to appear. Their own application forecloses that framing. It says that "when he did appear," he was present. ECF No. 264 at 2. The real dispute is what happened after he was brought into the room: whether the appearance itself was procured through false representations; whether he was injured, in a wheelchair, and restrained behind his back; whether the room acknowledged that he could not raise his hand in the ordinary manner; whether he agreed to proceed under oath or a continuing oath; what questions he actually answered; what questions he invoked the Fifth Amendment as to; and why the Court was not contacted while those disputes were occurring. Those are not side issues. They go directly to whether contempt is supportable at all.

That point is reinforced by ECF No. 253. Osuna there states that he was injured during extraction, denied access to his inhaler and needed medical care, removed from medical, brought in a wheelchair, and questioned with multiple officers within hearing range. ECF No. 253 at 2-4. He also states that counsel indicated further orders would be sought after he asserted his Fifth Amendment rights. Id. The Court should not impose coercive sanctions against a pro se incarcerated nonparty on such a contested record without first reviewing the whole deposition and the surrounding evidence.

**B. If Defendants disputed particular invocations, the proper route was question-specific court review, not blanket contempt.**

Rule 30(c)(2) provides that objections are made on the record and that examination proceeds, except when an instruction not to answer is necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3). Rule 30(d)(3) then provides that a deponent may move to terminate or limit a deposition being conducted in bad faith or in a manner that unreasonably annoys, embarrasses, or oppresses the deponent, and that "[i]f the objecting deponent or party so demands, the deposition must be suspended for the time necessary to obtain an order." Rule 37(a)(3)(B)(i) authorizes a motion to compel when "a deponent fails to answer a question asked under Rule 30." Rule 37(b)(1) addresses contempt

when the court orders a deponent to be sworn or to answer and the deponent then fails to obey. Fed. R. Civ. P. 30(c)(2), 30(d)(3), 37(a)(3)(B)(i), 37(b)(1). That is the ordinary sequence for a deposition dispute over specific questions.

Defendants did not follow that sequence. They did not stop and contact the Court. They did not attach the full transcript. They did not lodge any audio or video. They did not provide the Rule 30(f)(1) officer's certificate. Instead, they ask the Court to impose contempt first and sort out the privilege dispute later. That is backwards.

Their use of the phrase "if appropriate" makes the same problem plain. ECF No. 264-1 says sanctions should coerce Osuna to testify and assert privilege, "if appropriate," with respect to specific questions. But ECF No. 233 did not delegate to defense counsel the power to decide in the room whether a Fifth Amendment invocation was "appropriate." The point of question-specific invocation is so that the Court can decide any dispute. It remains "for the court to say whether his silence is justified," and the privilege must be sustained unless it is "perfectly clear" that the witness is mistaken and the answer cannot possibly tend to incriminate. *Hoffman v. United States*, 341 U.S. 479, 486-87 (1951). Defendants do not get to convert their own view of what is non-privileged into contempt.

The oath issue only confirms why the whole record must be reviewed. Defendants say Osuna "refused to take the oath." ECF No. 264-1. Osuna states that he was restrained behind his back, injured, in a wheelchair, that the room acknowledged he could not raise his hand normally, and that he agreed to proceed under oath or a continuing oath. If Defendants truly believed there was no valid oath or affirmation at all, questioning should have ceased and the Court should have been contacted. If they instead accepted a continuing oath or affirmation despite the restraints, their current presentation is materially incomplete. Either way, contempt should not be decided on counsel's summary.

**C. Defendants' own filings show the target subjects were same-incident criminal-case facts, not harmless background.**

This was not a neutral background deposition. Defendants told the Court in ECF No. 200 that Osuna's testimony about "what happened in that cell, and in the days beforehand," was

**Opposition to ECF No. 264**

"crucial." ECF No. 200 at 2. In ECF No. 217, they argued that the deposition should proceed so the parties could determine "what discovery they can and cannot get with the criminal matter pending," and specifically asserted that the Fifth Amendment would not prevent answers about "events leading to the night of March 8-9, 2019." ECF No. 217 at 2-3. In ECF No. 264-1, they identify the subjects as "the events and circumstances leading to Osuna's placement in the housing unit, his and Romero's prior interactions and assent to celling together, and the events and circumstances leading up to and including Romero's death." ECF No. 264-1 at 4-5. The same memorandum then says the deposition will show what information is unavailable solely because of a "temporary assertion of privilege" that would expire when the criminal case is resolved, and asks the Court to hold a hearing on sanctions "to coerce Osuna to testify." Id. at 5-7.

Those statements cannot be reconciled the way Defendants suggest. If these subjects truly had nothing to do with the pending criminal case, there would be no reason to describe the privilege as something that would "expire" with the criminal proceedings. Their own wording acknowledges the present overlap.

The Fifth Amendment applies in civil proceedings whenever an answer may tend to be used in a criminal prosecution or may lead to other evidence that might be so used. *Maness v. Meyers*, 419 U.S. 449, 461, 464-66 (1975). It protects not only direct admissions, but also answers that would furnish "a link in the chain of evidence" needed to prosecute. *Hoffman*, 341 U.S. at 486. Osuna is not a neutral bystander. He is the same-incident criminal defendant. When questioning is aimed at what happened in the cell, the days beforehand, the events leading to the night of March 8-9, 2019, and the events leading up to and including Romero's death, the overlap with the pending prosecution is obvious.

Defendants also minimize the duration of the risk by calling the privilege "temporary." At minimum, that is misleading. The Supreme Court has made clear that the privilege survives well beyond the filing of charges and remains in place through sentencing. *Mitchell v. United States*, 526 U.S. 314, 325-30 (1999). Whatever the outer edge of the privilege may be in every circumstance, it plainly does not evaporate on defense counsel's preferred timetable while the same-incident prosecution is still pending pretrial.

**Opposition to ECF No. 264**

There is no automatic stay of a civil case because a criminal case exists, but that does not help Defendants. The Ninth Circuit requires the Court to weigh the particular circumstances and competing interests, with the extent of Fifth Amendment exposure at the center of the analysis. *Keating v. Office of Thrift Supervision*, 45 F.3d 322, 324-25 (9th Cir. 1995). And the Supreme Court has recognized that a stay or protective relief may be appropriate where civil process threatens to furnish evidence for the criminal case or where other special circumstances make simultaneous proceedings unfair. *United States v. Kordel*, 397 U.S. 1, 8-9 & n.27 (1970). That is exactly the danger here.

**D. Defendants seek coercion, but coercive sanctions are not reasonable or appropriate on this record.**

Defendants repeatedly use the word "coerce." ECF No. 264-1 at 6-7. On this record, that is not a fair answer to a disputed privilege dispute involving an unrepresented incarcerated nonparty who has already been granted leave to proceed in forma pauperis. ECF No. 246. Civil contempt sanctions must be genuinely coercive or compensatory, not punitive in substance. *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 827-29 (1994). Open-ended coercive sanctions aimed at forcing the same-incident criminal defendant to keep answering until defense counsel is satisfied are not appropriate before the Court reviews the full record and resolves what actually happened on March 16.

If the Court believes further relief is needed, it should be protective and record-based: require the full deposition to be lodged under seal, preserve all surrounding evidence, and resolve any future privilege dispute question by question after actual review. It should not impose coercive sanctions first and sort out the Fifth Amendment later.

**III. The full March 16 record should be reviewed, preserved, and not used unless and until the Court finds the deposition was fairly obtained and conducted.**

Rule 30(f)(1) requires the officer to certify that the witness was duly sworn and that the deposition accurately records the testimony. Rule 32(a)(6) forbids a misleading use of deposition excerpts by requiring that additional parts be considered with any part offered. Fed. R. Civ. P. 30(f)(1), 32(a)(6). At present, the Court has only defense counsel's characterization of the March

**Opposition to ECF No. 264**

16 deposition, while Osuna states that the deposition lasted about an hour or longer, that he answered some questions, that he explained on the record why the process used to bring him there was improper, and that the room acknowledged the absence of criminal counsel and the circumstances surrounding the extraction and restraints.

Before any ruling on contempt or any later use of the deposition, the Court should order the following to be lodged under seal for in camera review: the full transcript; any audio or video recording; the reporter's or officer's certificate; reporter notes; and any notes or summaries made by counsel or staff regarding refusals, invocations, or non-answers.

The Court should also order immediate preservation of all related evidence identified in ECF No. 253, including: body-worn camera and institutional video of the approach, extraction, transport, holding, deposition room, and return; transport, use-of-force, incident, and housing records; medical, triage, medication, inhaler, wheelchair, and other relevant medical records for March 16; and communications concerning the claimed extraction order and the representation that criminal counsel was present or waiting. ECF No. 253 at 2-4. Osuna cannot preserve those materials from prison without Court intervention.

The Court should further issue a written order to CDCR and CSP-Corcoran ensuring Osuna's video access to the April 7 hearing. Given the disputes already presented about transport and institutional interference, a direct order is warranted.

**IV. If the Court finds bad faith, misrepresentation, or oppression, any sanctions inquiry should be directed to defense counsel and responsible custodial personnel, not to Osuna.**

Rule 30(d)(2) authorizes sanctions against a person who impedes, delays, or frustrates the fair examination of the deponent. Rule 45(d)(1) imposes an affirmative duty on the party and attorney issuing a subpoena to avoid imposing undue burden or expense on the person subject to the subpoena. The Court also has inherent authority to sanction bad-faith litigation conduct. Fed. R. Civ. P. 30(d)(2), 45(d)(1); *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43-46 (1991); *Fink v. Gomez*, 239 F.3d 989, 992-94 (9th Cir. 2001).

If the Court credits Osuna's sworn account, then the March 16 deposition was procured

7

**Opposition to ECF No. 264**

through false representations about a signed extraction order and the presence of criminal counsel, conducted after injury and interruption of medical care, continued despite disputed oath and restraint issues, and then presented to the Court through a materially incomplete account. At minimum, before any contempt finding against Osuna, the Court should require sworn declarations from Mr. Kuchinsky, the court reporter or officer who administered or attempted to administer the oath, and the responsible CDCR personnel.

If the Court finds bad faith, misrepresentation, or other interference with the fair administration of justice, it may proceed under Local Rules 110, 180(e), and 184(a).

**V. Defendants' contrary position in Osuna v. Burnes further undermines their claim of necessity here.**

In this case, Defendants say Osuna is the only person with personal knowledge of the events and circumstances leading to housing placement and Romero's death, and that defense counsel cannot adequately represent the clients without deposing him. ECF No. 264-1 at 4-7. In Osuna v. Burnes, however, the Attorney General's office argued the opposite way when it suited them. There, they argued that the pre-death classification manipulation, double-cell clearance, and housing decisions alleged to have "set up" the cell placement did not make those lead-up events conduct "relating to" the charged March 2019 offense for Government Code section 945.3 purposes. ECF No. 50 at 4-5.

Osuna does not rely here on formal estoppel. The narrower point is that Defendants should not be permitted to minimize the connection between the lead-up events and the charged homicide in one case, while maximizing that same connection here in order to justify coercive deposition pressure against the same-incident criminal defendant. That inconsistency does not decide the motion by itself, but it does undercut the claimed necessity and urgency of contempt relief.

### VI. Conclusion

Defendants' application, ECF No. 264, should be denied. In the alternative, the Court should continue the hearing until the full March 16 record is lodged and reviewed; prohibit any use, quotation, summary, characterization, or derivative use of the March 16 deposition unless

8

**Opposition to ECF No. 264**

and until the Court finds it was fairly obtained and conducted; order immediate preservation of the body-worn camera, institutional video, transport, holding, deposition-room, and medical materials identified above; require the full transcript, any audio or video, the officer's certificate, and all related notes to be lodged under seal for in camera review; direct CDCR and CSP-Corcoran to ensure Osuna's video access to the April 7 hearing; deny any coercive sanctions against Osuna; and, if the Court finds bad faith, misrepresentation, or oppression, issue an order to show cause why sanctions should not be imposed on defense counsel and responsible custodial personnel instead.

Dated: March 27, 2026

Respectfully submitted,

p.p. Jamie Osuna

Nonparty, Pro Se

### DECLARATION OF JAMIE OSUNA

I, Jamie Osuna, declare:

1. I am the nonparty deponent in this action and am incarcerated at California State Prison, Corcoran. I have personal knowledge of the facts stated here.

2. On March 16, 2026, I was extracted from my cell for the deposition in this case.

3. Before and during that extraction, I was told that a judge had already signed an extraction order and that my criminal attorney was present or waiting. When I arrived, my criminal attorney was not present, and it was admitted there was no extraction order.

4. I was injured, brought to the deposition in a wheelchair, and restrained behind my back. It was acknowledged in the room that, because of the restraints and my condition, I could not really raise my hand in the ordinary manner.

**Opposition to ECF No. 264**

5. I agreed that the proceedings were under oath, or continuing oath, and that I was expected to tell the truth.

6. I answered some questions during the deposition. I also repeatedly invoked the Fifth Amendment as to questions bearing on the same incident that is the subject of my still-pending criminal case.

7. During the deposition I explained that the way I had been brought there was improper. After I made that point, Mr. Kuchinsky told or indicated to me that I could "just be quiet then."

8. At no time, to my knowledge, was the deposition stopped so that the Court could be contacted for real-time guidance.

9. I request that the Court review the entire March 16 deposition, which lasted about an hour or longer; require preservation and lodging of the full transcript and any audio or video; require preservation of all body-worn camera and institutional footage, transport and holding records, and medical records; and enter an order ensuring that CDCR and CSP-Corcoran permit me to attend the April 7 hearing by video.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on March 27, 2026

p.p. Jamie Osuna

Nonparty, Pro Se

**Opposition to ECF No. 264**