**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF CALIFORNIA**
**FRESNO DIVISION**

| | | |
|---|---|---|
| DORA SOLARES, | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | CIVIL ACTION NO. 1:20-cv-323 |
| | § | |
| RALPH DIAZ, *et al*., | § | |
| | § | |
| Defendant. | § | |

**ORDER**

This case arises out of the gruesome and violent death of Luis Romero, an inmate at Corcoran State Prison, on a night he shared a cell with Jaime Osuna. Romero's mother, Doris Solares, has sued several defendants who were working at the California State Prison at Corcoran at the time of Romero's death. (Docket Entry No. 97). The parties have repeatedly sought Osuna's deposition. Osuna, who is not a defendant in this case, moved for a protective order on the primary basis that the deposition might provide incriminating testimony in the pending California state criminal case charging him with murdering Romero. (Docket Entry Nos. 198, 215). This court denied those motions and ordered Osuna to appear for his deposition, where he could follow the proper procedures for invoking his Fifth Amendment privilege. (Docket Entry No. 233).

On March 16, 2026, Osuna was extracted from his cell and appeared for his deposition. (Docket Entry No. 266 at 1–2). Osuna refused to answer almost all the questions and instead asserted a blanket Fifth Amendment privilege. (Docket Entry No. 264-1 ¶ 4). The defendants then moved to hold Osuna in contempt for failing to properly sit for his deposition and invoke the Fifth Amendment privilege according to the procedures outlined in this court's February 13, 2026, Order. (Docket Entry No. 264). In opposition, Osuna has papered the docket with overlapping

objections and motions for a protective order, asserting that he should not be forced to appear or testify in his deposition, that the prison officials used unnecessary and unreasonable force to procure his appearance, and that contempt is inappropriate. (Docket Entry Nos. 253, 266, 267; *see also* Docket Entry No. 198, 203, 204, 207, 215, 219).

After a careful review of the record, the motions, the oppositions, and the applicable law, and the parties' arguments at the April 7, 2026, contempt hearing, the court denies Osuna's motions for protective orders and grants in part the defendants' motion for contempt.

First, Osuna did not properly invoke his Fifth Amendment privilege at the deposition. The parties have a right to depose Osuna and ask him questions. FED. R. CIV. P. 30(a)(1). This court granted the parties leave to depose Osuna. FED. R. CIV. P. 30(a)(2)(B). Osuna has a right to assert his Fifth Amendment privilege, but he must do so on a question-by-question basis. *Moore v. GileadScis., Inc.*, No. C 07-03850 SI, 2011 WL 5572975, at *7 (N.D. Cal. Nov. 16, 2011) (quoting *United States v. Drollinger*, 80 F.3d 389, 392 (9th Cir. 1996)).

At the deposition, Osuna asserted a blanket Fifth Amendment privilege, hurled insults and disparaging comments at the lawyers, and lodged repeated threats to waive or not waive his psychotherapist-patient privilege, depending on which party in this case he thought would be disadvantaged. (Transcript at 12:16–13:7). Osuna responded to individual biographical questions, including his name, date of birth, age, and where he is currently housed. (*Id.* at 14:1–18). In response to the next question, asking when he first started serving his criminal sentence, Osuna asserted the Fifth Amendment. (*Id.* at 14:19–16:13). That question had no tendency to incriminate Osuna, and his invocation of it was improper. Osuna then reiterated for the remainder of the deposition that he would assert a Fifth Amendment privilege to all questions because he had "a right not to participate in this deposition" at all. (*Id.* at 19:12–14).

At the contempt hearing, Osuna cited case law suggesting that he could refuse to testify at all. He has such a right, but only in *his criminal case*. *See* U.S. CONST. amend. V ("No person . . . shall be compelled in any criminal case to be a witness against himself"). Osuna's right "to refuse to testify against himself at a criminal trial in which he is a defendant," *Minnesota v. Murphy*, 465 U.S. 420, 426 (1984), is different from his privilege "not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings," *id.* (quoting *Lefkowitz v. Turley*, 414 U.S. 70, 77 (1973)); *see, e.g.*, *United States v. Burr*, 25 F. Cas. 38, 39–41 (C.C.D. Va. 1807) (No. 14,692e) (Marshall, C.J.); *see also Vega v. Tekoh*, 597 U.S. 134, 141 (2022). This case is not his criminal case, so Osuna can invoke only the second privilege. As a result, Osuna "must attend his deposition and assert his privilege with respect to specific questions." *Moore*, 2011 WL 5572975, at *7.

The court recognizes that Osuna may invoke the privilege to nearly every question that the parties will ask. That may make for a long, tedious, and seemingly unproductive deposition. But that is the process the law requires, and for good reason: in civil cases, juries may draw inferences from witnesses' invocations of the Fifth Amendment privilege. *See Doe ex rel. Rudy-Glanzer v. Glanzer*, 232 F.3d 1258, 1264 (9th Cir. 2000). The parties in this case have a right to obtain specific assertions of the privilege from Osuna and use them tactically at trial. Osuna may not subvert the process required by law or the litigants' rights by asserting a blanket Fifth Amendment privilege. He must in good faith assert the privilege against each question asked. Osuna can refuse to answer a specific question only if his answer "might establish a direct link in a chain of evidence leading to his conviction." *United States v. Stringer*, 535 F.3d 929, 938 (9th Cir. 2008) (citing *Hoffman v. United States*, 341 U.S. 479, 486 (1951)). He must "reasonably believe[] that his disclosures could be used in a criminal prosecution, or could lead to other evidence that could be used in that

manner." *Glanzer*, 232 F.3d at 10.  Osuna must be "confronted by substantial and real, and not merely trifling or imaginary, hazards of incrimination." *United States v. Rubio-Topete*, 999 F.2d 1334, 1338 (9th Cir. 1993) (quoting *United States v. Apfelbaum*, 445 U.S. 115, 128 (1980)); *see Hoffman*, 341 U.S. at 486 ("The witness is not exonerated from answering merely because he declares that in so doing he would incriminate himself-his say-so does not of itself establish the hazard of incrimination. It is for the court to say whether his silence is justified.").

Second, the court will impose monetary sanctions on Osuna for violations of this court's February 13, 2026, order compelling his deposition.  (Docket Entry No. 233).  The only sanction available against nonparties for failure to comply with a deposition subpoena is a contempt citation.  *Martinez v. Antique & Salvage Liquidators, Inc.*, No. C 09-cv-00997 HRL, 2011 WL 798707, at *2 (N.D. Cal. Feb. 8, 2011).  Courts may impose monetary sanctions on nonparty inmates who are "necessary and material witness[es]" to compel their appearance at a deposition. *Lopez v. Lee*, No. 23-CV-03660-HSG, 2025 WL 3248750, at *2 (N.D. Cal. Nov. 21, 2025).  Osuna has failed to comply with this court's previous rulings on the appropriate procedure for invoking the Fifth Amendment privilege, warranting sanctions.  *See Highlander Holdings, Inc. v. Fellner*, No. 3:18-CV-1506-AHG, 2020 WL 3498174, at *11 (S.D. Cal. June 29, 2020).

CDCR prisoners may have trust or other monetary accounts.  *Cf. Hampton v. Carrillo*, No. 2:23-CV-1056 TLN AC P, 2024 WL 2304874, at *1 (E.D. Cal. May 21, 2024).  Defense counsel represented that Osuna has and uses such an account, although this court lacks details about the amount of funds in the account.  As a result, the court does not impose a specific monetary sanction at this time.  But, if Osuna does not appear and answer questions in a manner consistent with this court's orders at his next duly noticed deposition, the court will impose a monetary sanction of up to 75% of the value of his account, which will increase by 5 percentage points for each day

following Osuna's failure to appear or to answer questions in a manner consistent with this court's orders. This monetary sanction may ultimately exceed 100% of the value of Osuna's account depending on the length of Osuna's contempt.

Third, Osuna has raised issues about the way prison officials extracted him from his cell and compelled his appearance at his March 16 deposition. (Docket Entry Nos. 253, 266). Those issues are outside the scope of this case, and any relief he seeks arising out of those allegations must be sought in a separate matter. The court's February 13, 2026, order did not require CDCR to forcibly compel his appearance at his deposition; it contemplated that the court would enter such an order if Osuna failed to appear again at his deposition and was held in contempt. (Docket Entry No. 233 at 2). Osuna appeared without incident at several hearings, and the order gave him one more opportunity to do the same at his deposition. The order deferred to the CDCR, however, on "how to safely make Osuna available for deposition"—that is, how to ensure Osuna that all the parties would be safe from Osuna. (*Id.*). To the extent Osuna was required to be restrained to ensure others' safety, the court had to defer to the CDCR.

For Osuna's next deposition, there is no extraction order. He should be allowed to appear voluntarily at the deposition. Again, the court defers to the CDCR on how to ensure the safety of all those who will attend Osuna's deposition. Although force is not permitted to compel Osuna's appearance in the deposition room, it may be appropriate to retrain Osuna if he chooses to appear. If Osuna chooses not to appear, or chooses to appear but does not answer questions in a manner consistent with this order, the court will impose the previously discussed monetary sanctions.

Lastly, given concerns about the fruitfulness of another oral deposition, the parties, in addition to noticing another oral deposition, may depose Osuna by written questions. FED. R. CIV. P. 31(a)(2)(B). If Osuna does not appear for his deposition, or chooses to appear but does not

answer questions in a manner consistent with this order, the court will impose a monetary sanction on Osuna, but may reduce it if he responds adequately to the parties' written questions.

For these reasons, the court holds Osuna in contempt for violating this court's February 13, 2026, order; compels his appearance at his next duly noticed deposition; requires him to respond to the parties' questions in a manner consistent with this order; and will impose the previously-discussed monetary sanctions unless he complies with this order. Osuna's motions for protective order and objections, (Docket Entry Nos. 253, 266, 267; *see also* Docket Entry No. 198, 203, 204, 207, 215, 219), are denied.

SIGNED on April 15, 2026, at Houston, Texas.

_____
Lee H. Rosenthal
Senior United States District Judge