

**FILED**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

APR 20 2026

In re JAMIE OSUNA,
Petitioner,



CLERK U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY_____
DEPUTY CLERK

v.

UNITED STATES DISTRICT COURT FOR THE EASTERN
DISTRICT OF CALIFORNIA, FRESNO,
Respondent,

DORA SOLARES, et al.,
Real Parties in Interest.

No. _____

Underlying D.C. No. 1:20-cv-00323-LHR-FJS

## PETITION FOR WRIT OF MANDAMUS

## STAY REQUESTED

## EMERGENCY MOTION UNDER CIRCUIT RULE 27-3 FOR
## TEMPORARY ADMINISTRATIVE STAY
### Relief needed by: May 8, 2026

**Petitioner:**
Jamie Osuna BD0868
PO Box 8800
California State Prison-Corcoran
Corcoran, CA 93212
Pro Se



**RECEIVED**

APR 20 2026

CLERK U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY_____
DEPUTY CLERK

This petition arises from a materially different posture than petitioner's earlier pre-deposition mandamus petition. After that denial, petitioner was compelled to appear at a March 16, 2026, deposition, where he answered some questions and invoked the Fifth Amendment as to others. Defendants treated those invocations as insufficient, sought sanctions to "coerce" further testimony, and the district court then held petitioner in contempt and entered an order compelling renewed oral and written deposition questioning backed by escalating monetary sanctions. ECF No. 272. The order does not preserve neutral question-by-question invocation; it authorizes compelled answers notwithstanding petitioner's asserted privilege and permits the parties to obtain and "use [those invocations] tactically at trial." Id. at 3–6. Because petitioner is a nonparty, incarcerated, same-incident criminal defendant facing ongoing prosecution arising from the same events, and because ECF No. 272 is presently operative without any redeposition date or notice protection, this case presents immediate and irreparable constitutional harm warranting emergency intervention.

## RELIEF SOUGHT

Petitioner requests the following relief:

1. An immediate temporary administrative stay of enforcement of ECF No. 272 pending the Ninth Circuit's consideration of this petition and stay request.

2. Pending disposition of this mandamus proceeding, a stay of enforcement of ECF No. 272.

3. An order prohibiting any renewed deposition of Petitioner, oral or written, and prohibiting any contempt, sanctions, or enforcement action based on the March 16, 2026, deposition or ECF No. 272.

4. An order prohibiting any use, filing, quotation, summary, characterization, or derivative use of the March 16, 2026, deposition or materials from it in this case pending further order.

5. An order vacating ECF No. 272 and prohibiting any further enforcement based on the March 16, 2026, deposition.

## ISSUE PRESENTED

Whether the district court clearly erred and abused its discretion by holding an incarcerated nonparty same-incident criminal defendant in contempt and compelling renewed oral and written deposition questioning backed by coercive sanctions, where Petitioner answered some questions, invoked the Fifth Amendment as to others, defendants treated those invocations as insufficient and sought sanctions to coerce further testimony, and ECF No. 272 authorizes compelled answers notwithstanding Petitioner's asserted question-by-question invocations.

## FACTS

On January 21, 2026, this Court denied an earlier pre-deposition mandamus petition, holding only that Petitioner had not shown a clear and indisputable right to mandamus. That denial predated the March 16, 2026, deposition and ECF No. 272,

3

and did not address the later contempt-backed order challenged here.

On February 13, 2026, the district court denied Petitioner's motions to quash and for protective relief and ordered him to attend the deposition and assert privilege with respect to specific questions. The later record reflects that this order also set a sequence: if Petitioner failed to appear, a party could move to hold him in contempt; if contempt were then established, the court could issue further orders to obtain his appearance. Petitioner's later district-court opposition quoted that sequence directly.

Before the deposition, defendants argued that the deposition should proceed so the parties could determine "what discovery they can and cannot get with the criminal matter pending," and specifically argued that the Fifth Amendment would not prevent answers about "events leading to the night of March 8-9, 2019."

The court later extended the deadline solely so Petitioner's deposition could occur on March 16, 2026.

On March 19, 2026, Petitioner filed ECF No. 253, swearing that before and during extraction he was told a judge had already signed an extraction order and that his criminal attorney was present or waiting; that when he arrived, his criminal attorney was not present and parties admitted there was no extraction order; that he was injured, denied access to medical care and inhaler/required medical devices, brought in a wheelchair, and

4

restrained; that the deposition nevertheless proceeded; and that at no time was the deposition stopped and the court contacted.

On March 26, 2026, defendants moved for an order to show cause re contempt. They described March 16 as a refusal to be sworn and a blanket Fifth Amendment assertion, including refusal to answer questions they characterized as non-incriminating. At the same time, they argued that the only way to litigate the privilege issue was to allow the questions to be asked; that the deposition was needed to determine what information Petitioner would testify to "either now or at any point in the case"; and that sanctions should "coerce" Petitioner to testify and assert privilege, "if appropriate," with respect to specific questions. They also identified the target subjects as the events and circumstances leading to Petitioner's housing placement, his and Romero's prior interactions and assent to celling together, and the events and circumstances leading up to and including Romero's death.

On March 30, 2026, Petitioner opposed the contempt request, stating under penalty of perjury that he had appeared, answered some questions, repeatedly invoked the Fifth Amendment as to same-incident questions, and that the deposition was never stopped so the court could be contacted for real-time guidance. He also argued that the proper route for disputed invocations was question-specific court review, not contempt first.

On March 25, 2026, the court set an April 7, 2026 hearing on Petitioner's motion for a protective order and defendants'

contempt application, and ordered that Petitioner "must appear at the hearing."

On April 15, 2026, the district court entered ECF No. 272. The court acknowledged that Petitioner answered individual biographical questions before invoking the Fifth Amendment. The court nevertheless held Petitioner in contempt, compelled his appearance at the "next duly noticed deposition," authorized oral and written questions, required answers "in a manner consistent with this order," and stated that if Petitioner did not appear and answer questions in that manner, the court would impose a monetary sanction of up to 75% of the value of his account, increasing by 5 percentage points for each day following noncompliance. The order also stated that the parties have a right to obtain specific Fifth Amendment assertions from Petitioner and "use them tactically at trial."

The current scheduling orders set case deadlines but do not specify any redeposition date. Petitioner is incarcerated, is not an ECF user, and has documented notice and service problems in this case. ECF No. 265 states that as of that filing Petitioner still had not received formal notice the court had directed plaintiff to provide and had instead learned of the hearing informally from the public docket. ECF Nos. 268 and 271 also show that the case schedule continued to be adjusted while no redeposition date was set.

## REASONS THE WRIT SHOULD ISSUE

Mandamus is an extraordinary remedy, but it is available to correct clear legal error and judicial overreach when the

6

*Bauman* factors justify intervention. The third factor, clear error, carries the greatest weight. This petition satisfies those standards.

ECF No. 272 is presently operative. It holds Petitioner in contempt now, compels his appearance at the "next duly noticed deposition," authorizes written questions, states that the parties may obtain specific Fifth Amendment assertions and "use them tactically at trial," and threatens monetary sanctions if Petitioner does not answer "in a manner consistent with this order." The order sets no redeposition date. Because Petitioner is an incarcerated non-ECF filer who has already documented notice and service failures, relief is needed no later than May 8, 2026 to prevent renewed compelled questioning or enforcement under an already-effective contempt order before meaningful appellate review can occur.

No other adequate means exist to prevent the harm in time. Even assuming some later appellate route may ultimately exist from ECF No. 272, it is not an adequate remedy here. The immediate harm is renewed compelled same-incident testimony before meaningful review, backed by coercive sanctions, on a schedule Petitioner may learn of only after ECF users receive notice. The current scheduling orders set deadlines but no redeposition date. Petitioner is incarcerated, is not an ECF user, and has already documented service and notice problems. A short-notice redeposition, written-question demand, or sanctions step could defeat meaningful review before Petitioner can respond from prison.

The prejudice is irreparable. Once same-incident testimony is compelled, the injury cannot be undone. The Fifth Amendment protects not only answers that would themselves be incriminating, but also answers that would furnish a link in the chain of evidence. Petitioner remains a pending criminal defendant in the same underlying matter, and defendants' own filings identify the target topics as the lead-up to his housing placement, prior interactions with Romero, assent to celling together, and the events leading up to and including Romero's death. Defendants also described the privilege obstacle as "temporary" and said the deposition would show what information Petitioner might testify to "either now or at any point in the case." Nothing in ECF No. 272 grants immunity, use immunity, or non-use protection. To the contrary, the order states that the parties have a right to obtain specific Fifth Amendment assertions and "use them tactically at trial." Petitioner had specifically sought interim non-use relief in ECF No. 253, and that relief was denied.

The order is clearly erroneous as a matter of law. This case reaches the Court in a materially different posture from the earlier pre-deposition petition. The public record now shows that Petitioner appeared, answered some questions, and then invoked the Fifth Amendment as to others; that defendants treated those invocations as insufficient and sought sanctions to "coerce" further testimony; and that the district court held Petitioner in contempt, compelled renewed oral and written deposition questioning, and ordered Petitioner to answer in the manner the

8

court prescribed. Whatever justified denial of extraordinary relief before the deposition no longer exists now. The present petition challenges not a speculative future deposition, but a contempt-backed order that converts nominal question-by-question invocation into compelled same-incident testimony whenever the court deems the privilege inapplicable.

Defendants' own contempt papers show that the March 16 dispute was not simple nonparticipation. They described the deposition as a refusal to be sworn and a blanket Fifth Amendment assertion, including refusal to answer questions they characterized as non-incriminating. But those same papers also argued that questioning had to proceed so the court could determine what Petitioner "must testify to," sought sanctions to "coerce" compliance, and asserted that the deposition would establish what information Petitioner would testify to "either now or at any point in the case." The later April 15 order, however, acknowledged that Petitioner answered some biographical questions before invoking the Fifth Amendment. Thus, contempt and renewed compelled testimony rested not on a clean refusal to participate, but on defendants' rejection of Petitioner's invocations and their insistence that he answer the questions they regarded as proper.

That distinction matters because the Rules provide a different sequence. Petitioner's March 30 filing accurately laid out that Rule 30(c)(2) permits privilege objections on the record, Rule 30(d)(3) permits suspension so the court can be contacted when a live privilege or oppression dispute arises, and Rule

37(a)(3)(B)(i) provides the motion-to-compel mechanism when a deponent fails to answer a specific question. Petitioner swore in ECF Nos. 253 and 266 that the deposition was never stopped so the court could be contacted for guidance. Instead, defendants continued under conditions Petitioner swore were coercive, then later sought contempt and sanctions on their own characterization of what occurred. On this record, contempt first and judicial resolution later was backwards.

ECF No. 272 did not merely preserve neutral question-by-question invocation. Defendants' own filings show that they sought testimony about the events and circumstances leading to Petitioner's housing placement, his and Romero's prior interactions and assent to celling together, and the events leading up to and including Romero's death; asked the court to "coerce" testimony; and argued that the deposition would establish what Petitioner may testify to "either now or at any point in the case." ECF No. 272 adopted that framework. It held that Petitioner could refuse to testify altogether only "in his criminal case"; stated that, in this civil case, the parties have "a right to obtain specific assertions of the privilege from Osuna and use them tactically at trial"; found one specific invocation improper because the question had "no tendency to incriminate"; compelled another deposition; authorized written questions; and threatened escalating monetary sanctions if Petitioner does not answer "in a manner consistent with this order." What is labeled "question-by-question" thus operates here as contempt-backed compelled testimony on the very subjects defendants themselves

identified, together with compelled production of specific Fifth Amendment assertions for later tactical use.

Question-by-question invocation ceased to function as a safeguard once defendants took the position that Petitioner had to answer so the court could decide what he "must testify to," and ECF No. 272 then rejected specific invocations and compelled further answers "in a manner consistent with this order.

The coercive circumstances reinforce the error. Petitioner swore that before and during extraction he was told there was a signed extraction order and criminal counsel present or waiting when there was not; that he was removed from medical and denied further treatment until after the deposition; that he was injured during extraction, brought to the deposition in a wheelchair, and restrained behind his back; that he answered some questions and invoked the Fifth Amendment as to others; Petitioner swore that the deposition was never stopped so the court could be contacted. If defendants truly believed there was no valid oath, questioning should have ceased and the court should have been contacted. If they believed there was a live privilege dispute, their own theory required question-specific judicial review. Their later papers instead sought contempt and more coercion.

ECF No. 272 also did not resolve the sworn March 16 procurement dispute. The order states that complaints about the extraction and force used to obtain Petitioner's appearance are "outside the scope of this case" and must be pursued separately. But the same order also states that the February 13 order "did

11

not require CDCR to forcibly compel his appearance at his deposition" and only contemplated such an order later if Petitioner again failed to appear and was held in contempt. The court thus used the March 16 deposition as the basis for a contempt adjudication while expressly declining to resolve the sworn allegations that the appearance had been procured through false representations, injury, interruption of medical care, and restraints.

The sanctions analysis is also flawed. Defendants expressly sought sanctions to "coerce" testimony, and the April 15 order threatened escalating monetary sanctions tied to Petitioner's account while also authorizing a further oral deposition and written questions afterward. On this disputed record, against an incarcerated and unrepresented nonparty facing a pending criminal case arising from the same events, the order crossed from ordinary case management into unconstitutional compulsion.

The fourth and fifth *Bauman* factors also support review. Within this case, ordinary procedural protections repeatedly broke down as to this prisoner nonparty. Defendants argued from the start that the deposition should proceed so they could determine what discovery they could obtain while the criminal matter was pending. Petitioner documented that the March 16 deposition was not suspended so the court could be contacted despite a live Fifth Amendment dispute; documented notice and service failures; and the petition raises an important issue concerning the limits of coercive civil discovery against an

12

unrepresented nonparty who is simultaneously the pending criminal defendant in the same underlying matter, where the district court compelled renewed testimony, authorized written questions, and threatened escalating sanctions after a disputed deposition episode in which Petitioner answered some questions but invoked the Fifth Amendment as to others.

Immediate interim relief is therefore warranted. A temporary administrative stay would preserve the status quo, prevent renewed oral or written deposition questioning, prevent contempt and monetary coercion from taking hold before review, and prevent any use of the March 16 materials until this Court decides whether ECF No. 272 was lawfully entered.

## CONCLUSION

The petition should issue. At a minimum, this Court should enter an immediate temporary administrative stay and order that, pending further order, there shall be no renewed oral or written deposition of Petitioner, no contempt, no sanction, collection, turnover, deduction, or restraint against his account, no use, filing, quotation, summary, characterization, or derivative use of the March 16 materials, and no enforcement step directed at Petitioner without at least 30 days' advance written notice by United States mail to Petitioner, with the 30-day period running from actual delivery to Petitioner at CSP-Corcoran rather than from any CM/ECF entry or mailing date.

April 16, 2026

p.p. Jamie Osuna

13

## DECLARATION OF JAMIE OSUNA

I, Jamie Osuna, declare:

1. I am the Petitioner and the nonparty deponent in the underlying district-court action. I am incarcerated at California State Prison, Corcoran. I have personal knowledge of the facts stated in this declaration.

2. During the March 16, 2026, deposition, I attempted to invoke the Fifth Amendment on a question-by-question basis. The Deputy Attorney General did not permit me to proceed in that manner and instead challenged my invocations, then terminated the deposition without contacting the court for guidance. I was also told that additional "orders" would be sought as a result of my attempted invocations.

3. On April 7, 2026, I appeared by video at the hearing the district court had ordered me to attend regarding my motion for a protective order and defendants' contempt application.

4. During that hearing, the court repeatedly stated words to the effect that I was not a party to the case and referred to me as "this guy."

5. During that hearing, the court also stated words to the effect that it would decide what was related to my pending criminal case and what questions I could invoke the Fifth Amendment as to.

14

6. During that hearing, I raised the misconduct and injury surrounding the March 16, 2026, deposition and extraction.

7. During that hearing, the Deputy Attorney General did not deny those misconduct allegations.

8. During that hearing, the court and Deputy Attorney General discussed structuring contempt or sanctions in a manner that would prevent or limit my ability, as an unrepresented nonparty inmate deponent, to seek appellate review.

9. I submit these hearing facts because the hearing transcript is unavailable to me for attachment to this petition, and because those statements bear directly on the emergency nature of the relief requested and on whether the district court converted nominal question-by-question invocation into compelled same-incident testimony backed by contempt and sanctions.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

April 16, 2026

p.p. Jamie Osuna