ROB BONTA, State Bar No. 202668
Attorney General of California
JON S. ALLIN, State Bar No. 155069
Supervising Deputy Attorney General
JEREMY DUGGAN, State Bar No. 229854
Deputy Attorney General
DAVID E. KUCHINSKY, State Bar No. 292861
Deputy Attorney General
 1300 I Street, Suite 125
 Sacramento, CA 95814
 Telephone:  (916) 210-7666
 Fax:  (916) 324-5205
 E-mail:  Jeremy.Duggan@doj.ca.gov
*Attorneys for Defendants Burnes, Gamboa,
Garcia, Gallemore, Maytubby, Munoz, and Pena*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

FRESNO DIVISION

| | |
|---|---|
| **DORA SOLARES,**<br><br>Plaintiff,<br><br>v.<br><br>**RALPH DIAZ, et al.,**<br><br>Defendants. | 1:20-CV-00323-LHR-FRS (PC)<br><br>**DECLARATION OF K. MAYTUBBY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**<br><br>Judge:         Hon.  Lee H. Rosenthal<br>Action Filed:  March 2, 2020 |

I, K. Maytubby, hereby declare:

1.      I have personal knowledge of the facts set forth in this declaration.  I am competent to testify to the matters set forth in this declaration, and if called upon by the Court, I would do so.

2.      I worked for the California Department of Corrections and Rehabilitation (CDCR) from 2013 to 2022, first as a Licensed Clinical Social Worker at Kern Valley State Prison.  In 2016, I promoted to Supervising Psychiatric Social Worker in 2016.  I left CDCR in 2022.  I currently work as professor of psychology at Bakersfield College.

3.      In 2018–2019, my name was K. Kyle.  My name is now K. Maytubby.

1

4.    In 2018 and 2019, I worked as Supervising Psychiatric Social Worker at California State Prison, Corcoran, specifically supervising psychologists and social workers in housing unit 4A1.  In addition to supervising other staff, my responsibilities also included seeing patients, typically on a temporary basis, and completing administrative tasks, such as participating in institutional classification committees (ICCs).

5.    When I worked for CDCR, ICCs were committees within a prison that made determinations about an inmate's classification, which determine where an inmate can be housed.  Those factors include security level (I-IV), mental health status, disability factors, and General Population (GP) or Sensitive Needs Yard (SNY).  An ICC also decides whether an inmate has single-cell or double-cell status; that is, whether an inmate can have a cellmate or must be alone in his cell.

6.    When I worked for CDCR, an ICC committee always included three members: a correctional counselor, a captain or acting captain, and the warden or designee.  In addition, a mental health representative was present when the inmate was a participant in CDCR's Mental Health Services Delivery System (MHSDS).

7.    I understand that the Plaintiff in this matter is asserting that I should be found liable for the death of Luis Romero.  I understand that Plaintiff asserts that I knew that Jaime Osuna presented a danger to Luis Romero and that I should have reported that danger to other staff.

8.    I did not know, and did not have any reason to know, that Jaime Osuna presented a danger to Luis Romero at any time before Luis Romero's death.

9.    I did not know Luis Romero and was not aware that Luis Romero and Jaime Osuna were cellmates until after Luis Romero's death, so I was never aware of any danger from Jaime Osuna specific to Luis Romero.

10.    In addition, I did not know, and did not have any reason to know, before Luis Romero died in March 2019, that Jaime Osuna presented a threat to other inmates generally.

11.    Jaime Osuna came to California State Prison, Corcoran in September 2018.  I met with him as his clinician a few times between September 2018 and March 2019.  I also participated in Interdisciplinary Treatment Team (IDTT) sessions for Osuna.  IDTT sessions are

2

sessions where participants from several disciplines, including medical, psychology, and psychiatry, work together to treat a patient's mental health. I am not permitted to describe what Osuna said to me during the clinical sessions because it is protected by psychotherapist-patient privilege. I never believed at any time from September 2018 to March 9, 2019, based on Osuna's confidential communications or anything else, that Osuna presented a threat to other inmates generally.

12. If I had believed that Osuna posed a threat to the safety of an individual (of which custody staff was unaware), I was required to, and would have, reported that threat to custody staff. If the threat posed by Osuna had necessitated a specific type of housing, such as single-cell or double-cell, I would have consulted with Osuna's IDTT and made documented findings to submit to custody staff on a form 128-C.

13. I did not report to custody staff any threat posed by Osuna. I also did not consult with the IDTT to make a documented finding regarding Osuna's cell status. I did not do those things because I did not know of any threat posed by Osuna to other inmates.

14. I understand that the Plaintiff is asserting that I am at fault for Romero's death because two ICCs that I participated in continued Osuna's double-cell status. At an ICC, the mental health representative is not the person that makes the final decision regarding an inmate's classification. Custody staff determines whether past behavior, such as the incarcerated person's crime, rules violations, violence toward other inmates, and violence toward staff, warrants single-cell status. In an ICC, the mental health participant weighs in on single-cell or double-cell status only if the incarcerated person's mental health condition warrants one status or the other. Generalized homicidal ideations, not specific to any person, do not warrant single-cell status.

15. Typically, the role of the mental health participant in an ICC is to confirm to the committee that the inmate understands the proceedings and can participate, and to provide information to the committee regarding the inmate's mental health status and activities of daily living, by speaking in general terms to avoid violating psychotherapist-patient confidentiality.

16. At Osuna's ICC on September 25, 2018, I participated as the mental health representative. Because Osuna did not attend the committee, my main role was to inform the

3

committee of Osuna's mental health status, level of care, and any likelihood of decompensation due to being housed in a restricted housing unit.  I provided the committee with that information. I did not comment on double-cell versus single-cell housing status because Osuna's mental health did not warrant one status or the other.  There was therefore no reason for me to comment on that issue.

17.    The September 25, 2018 ICC noted Osuna's SHU term and mental health treatment level (CCCMS) and continued Osuna's double-cell, general population (GP) status.

18.    I also participated as the mental health representative at Osuna's ICC on January 22, 2019.  Again, because Osuna did not attend the committee, my main role was to inform the committee of Osuna's mental health status, level of care, and any likelihood of decompensation due to being housed in a restricted housing unit.  I provided the committee with that information. I did not comment on double-cell versus single-cell housing status because Osuna's mental health did not warrant one status or the other.  There was therefore no reason for me to comment on that issue.

19.    The January 22, 2019 ICC continued Osuna's double-cell status, but changed him from GP status to SNY.

20.    I understand that Plaintiff may be asserting that I am at fault for Romero's death based on participation in a March 7, 2019 IDTT for Osuna.  I did not participate in an IDTT for Osuna on that date or at any time from March 1–9, 2019.

I declare under penalty of perjury that the foregoing statements are true and correct.

Executed: 7/30____, 2026, at Bakersfield, California.


_____

K. Maytubby

SA2019101902
Solares I MSJ - Maytubby Declaration.docx

4