ROB BONTA, State Bar No. 202668
Attorney General of California
JON S. ALLIN, State Bar No. 155069
Supervising Deputy Attorney General
JEREMY DUGGAN, State Bar No. 229854
Deputy Attorney General
DAVID E. KUCHINSKY, State Bar No. 292861
Deputy Attorney General
 1300 I Street, Suite 125
 Sacramento, CA 95814
 Telephone:  (916) 210-7666
 Fax:  (916) 324-5205
 E-mail:  Jeremy.Duggan@doj.ca.gov
*Attorneys for Defendants Burnes, Gamboa,
Garcia, Gallemore, Maytubby, Munoz, and Pena*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

FRESNO DIVISION

| | |
|---|---|
| **DORA SOLARES,**<br><br>Plaintiff,<br><br>v.<br><br>**RALPH DIAZ, et al.,**<br><br>Defendants. | 1:20-CV-00323-LHR-FRS (PC)<br><br>**DECLARATION OF F. MUNOZ IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**<br><br>Judge:        Hon.  Lee H. Rosenthal<br>Action Filed:  March 2, 2020 |

I, F. Munoz, hereby declare:

1.    I have personal knowledge of the facts set forth in this declaration.  I am competent to testify to the matters set forth in this declaration, and if called upon by the Court, I would do so.

2.    I worked for the California Department of Corrections and Rehabilitation (CDCR) from 1993 until my retirement in 2023.  I started as a correctional officer at North Kern State Prison and promoted to correctional sergeant at California State Prison, Corcoran in approximately 2001, then promoted to correctional lieutenant in 2006.  I then worked as a lieutenant at Corcoran until my retirement.

1

3.      In 2019, I was assigned to facility 4A on second watch (6:00 a.m.–2:00 p.m.).  My responsibilities included supervising the staff assigned to facility 4A during my shift, maintaining safety and security of the institution, and ensuring that inmates received the appropriate food, medical care, yard time, and program time.

4.      I understand that the Plaintiff in this matter is asserting that I am at fault for the death of Luis Romero because, according to Plaintiff, I knew that Osuna presented a danger to Luis Romero but did not stop them from being housed together.

5.      Luis Romero and Jaime Osuna became cellmates at California State Prison, Corcoran on March 7, 2019.

6.      My conduct at all times with regard to housing Osuna and Romero together complied with CDCR policy.  I did not know that Jaime Osuna presented a danger to Luis Romero at any time before Luis Romero's death.  In addition, I did not know, before Luis Romero died in March 2019, that Jaime Osuna was a danger to a potential cellmate generally.

7.      Had I believed, at any time between September 2018 (when Osuna arrived at Corcoran) and March 9, 2019, that Osuna was a danger to a potential cellmate, I would have sent Osuna to an Institutional Classification Committee (ICC) to review Osuna's double-cell status.

8.      In 2018 and 2019, housing unit 4A1R was Long Term Restricted Housing (LTRH), meaning that it was housing for inmates who had committed rules violations in prison and were required to serve terms in restrictive housing because of those violations.  Many of the inmates in LTRH have committed murder or other violent crimes, have assaulted staff in prison, have assaulted other inmates in prison, have used weapons in prison, and have tattoos on their faces.  Those factors do not prevent them from being housed in LTRH, and those factors do not prevent them from having a cellmate in LTRH.

9.      Osuna arrived at California Stated Prison, Corcoran, in September 2018.  Osuna was housed in building 4A1R.  Osuna was cleared for double-cell housing when he arrived at Corcoran based on a determination by an ICC at his previous institution, California State Prison, Sacramento.

2

10. ████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████

11. On March 7, 2019, Romero arrived at California State Prison Corcoran from another prison.

12. When a new inmate arrives at California State Prison, Corcoran, or any CDCR prison, and the new inmate is double-cell cleared, the inmate can, and should, be housed with a compatible cellmate on the same day in order to maximize cell usage.

13. The process for assigning more than one inmate to a cell in a restricted housing unit is described in Department Operations Manual section 54046.7.1. The process is initiated by either a staff recommendation or a request by the inmate. A correctional officer reviews the inmates' central files, speaks with each inmate, and evaluates any security concerns. The officer then fills out a CDCR Form 1882-B and asks the inmate candidates to sign the form indicating their agreement to the double-cell assignment. In Facility 4A, it was our practice to have the two inmates meet and speak to one another before agreeing to cell together by placing them in adjacent holding cells. If both inmate candidates agree, the correctional officer gathers their signatures, and completes the form 1882-B by signing and dating it, and then forwards the signed 1882-B to a correctional lieutenant for review. The factors for the correctional lieutenant to review are described in California Code of Regulations title 15, section 3269 (2019 version).

14. On March 7, 2019, Correctional Officer A. Loza conducted the process outlined above and found that Romero and Osuna were compatible. Romero and Osuna each signed the form 1882-B agreeing to the double-cell assignment. Loza then provided the 1882-B to me for review.

15. I conducted my review of Osuna's and Romero's files and confirmed that they appeared to be compatible as cellmates. They had similar crimes (both had murdered a female), were the same race, ███████████████████████████████████████

███████████████████████████████

16. As part of my review, I reviewed both inmates' central files and disciplinary history to confirm that their double-cell status was correct. Under CDCR policy, inmates are presumed to be assigned to double-cell status unless they have certain factors that warrant consideration of single-cell status. Those factors are described in California Code of Regulations title 15, section 3269(d), as follows: "a history of in-cell abuse, significant in-cell violence towards a cell partner, verification of predatory behavior towards a cell partner, or who have been victimized in-cell by another inmate." (Cal. Code Regs. tit. 15, § 3269(d) (2019 version).)

17. Osuna did not have a history of in-cell assaults or in-cell violence toward a cell partner or a history of in-cell sexual abuse, or any verified predatory behavior toward a cell partner. In addition, Osuna did not have a history of being victimized by cell partners, and did not have other factors, such as incontinence or gender dysphoria, which would increase the risk of victimization by a cell partner. Romero had an in-cell fight in 2016, but there were only minor injuries and no weapon used, so multiple ICCs had retained Romero's double-cell status after the fight. Romero did not have a history of in-cell sexual abuse or a history of being victimized by cell partners. I therefore found that both inmates' double-cell clearance was correct, and that there was no need for an ICC to do further evaluation of their double-cell status.

18. ████████████████████████████████████████████
████████████████████████████████████████ ██████████
████████████████████████████████████████
████████████████████████████████████████████
██████████

19. ████████████████████████████████████████
██████ ████████████████████████████████████
████████████████████████████████████████████

4

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████

20.     In my review I also saw a photograph of Osuna and saw that he had tattoos on his face.  Face tattoos are common in CDCR prisons, especially in Long Term Restricted Housing.  Face tattoos do not prevent an inmate from being double-cell cleared under CDCR policy.

21.     In my review I also saw that Osuna's commitment offense was a 2011 murder of a woman in a Bakersfield hotel room.  Romero's commitment offence was a 1992 murder of a 15-year-old girl in Compton, California.  Those commitment offenses did not prevent either Osuna or Romero from being double-cell cleared under CDCR policy.

22.     ████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████

████████████

23.     All of Osuna and Romero's factors, taken together, showed that they were compatible to be housed together.  Neither inmate's factors warranted a further single-cell evaluation.

████████████████████████████████████████████████████

████████████████████████████████████████████

████     For both inmates, prior Institutional Classification Committees had reviewed the same factors I saw and had double-cell cleared Osuna and Romero.  The inmates had agreed to be housed together and communicated no safety concerns.  On March 7, 2019, I signed the form 1882-B approving Osuna and Romero to cell together.  I understand that Romero was placed in the cell with Osuna later that day.

24.    A true and correct copy of the form 1882-B form is attached hereto as exhibit A.

I declare under penalty of perjury that the foregoing statements are true and correct.

Executed: 7-30, 2026, at ___TULARE___, California.

_____
F. Munoz

SA2019101902
Solares I MSJ - Munoz Declaration.docx

6

Decl. of F. Munoz in Support of Mot. for Summ. J.  (1:20-CV-00323-LHR-FRS (PC))

# Exhibit A

STATE OF CALIFORNIA
CDC 1882-B

DEPARTMENT OF CORRECTIONS

## ADMINISTRATIVE SEGREGATION UNIT/SECURITY HOUSING UNIT
## DOUBLE CELL REVIEW

| Name of Inmate (Last, First, MI) | CDC Number | Housing |
|---|---|---|
| OSUNA | BD 0868 | 4AIR 46 |
| Name of Inmate (Last, First, MI) Romero, @ L | CDC Number H56733 | Housing |

The above-listed inmates are being processed for occupancy of the same cell.

1. The request is being initiated per:

    ☐ Administrative assignment by staff.

    ☐ Request from one ☐  or both ☒  inmates to be assigned to the same cell.

2. During the interview with:

| Staff Witness Printed Name A LOZA | Signature |
|---|---|

   ☒ Both inmates stated agreement to the cell assignment and signed below to indicate compatibility.

   Signature of Inmate X _____  Signature of Inmate X _____

    ☐ Both inmates stated agreement, but one or both refused to sign the acknowledgment of compatibility.

    ☐ One or both inmates refused the cell assignment.

3. After a review of the inmates' statements and the case factors in each inmate's C-file, it has been determined that:

    ☒ There is no information available to indicate that the inmates are incompatible.

    ☐ There is information which leads to the belief that the assignment of these inmates to the same cell is contrary to legitimate penological interests, or may threaten institution security or the safety of others.

4. Based on this evaluation, the double cell occupancy request is:  ☒ APPROVED   ☐ DISAPPROVED

| APPROVING AUTHORITY | |
|---|---|
| Signature: | |
| Printed Name: | |
| Title: | |
| DATE: 3/7/2015 | |

DISTRIBUTION:
C-File
Facility Captain
Housing Unit
Correctional Counselor I(s)
Inmate

Solares v. Diaz, E.D. Cal. No. 1:20-cv-00323
DEF 000112