ROB BONTA, State Bar No. 202668
Attorney General of California
JON S. ALLIN, State Bar No. 155069
Supervising Deputy Attorney General
JEREMY DUGGAN, State Bar No. 229854
Deputy Attorney General
DAVID E. KUCHINSKY, State Bar No. 292861
Deputy Attorney General
 1300 I Street, Suite 125
 Sacramento, CA 95814
 Telephone:  (916) 210-7666
 Fax:  (916) 324-5205
 E-mail:  Jeremy.Duggan@doj.ca.gov
*Attorneys for Defendants Burnes, Gamboa,
Garcia, Gallemore, Maytubby, Munoz, and Pena*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

FRESNO DIVISION

| | |
|---|---|
| **DORA SOLARES,**<br><br>Plaintiff,<br><br>v.<br><br>**RALPH DIAZ, et al.,**<br><br>Defendants. | 1:20-CV-00323-LHR-FRS (PC)<br><br>**DECLARATION OF A. LOZA IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**<br><br>Judge:        Hon.  Lee H. Rosenthal<br>Action Filed:  March 2, 2020 |

I, A.Loza, hereby declare:

1.     I have personal knowledge of the facts set forth in this declaration.  I am competent to testify to the matters set forth in this declaration, and if called upon by the Court, I would do so.

2.     I work for the California Department of Corrections and Rehabilitation (CDCR) as a correctional officer.  I started in as a correctional officer in 2017 at Pelican Bay State Prison.  In 2018, I moved to California State Prison, Corcoran, where I work now.

3.     In 2019, I worked as a correctional officer at California State Prison, Corcoran, specifically assigned to housing unit 4A1R on second watch (6:00 a.m.–2:00 p.m.).  My

1

responsibilities included maintaining safety and security of the institution, and ensuring that inmates received the appropriate food, medical care, yard time, and program time.

4. I understand that the Plaintiff in this matter is asserting that I am at fault for the death of Luis Romero because, according to Plaintiff, I knew that Osuna presented a danger to Luis Romero but did not stop them from being housed together.

5. Luis Romero and Jaime Osuna became cellmates at California State Prison, Corcoran on March 7, 2019. My conduct at all times with regard to housing Osuna and Romero together complied with CDCR policy. I did not know that Jaime Osuna presented a danger to Luis Romero at any time before Luis Romero's death. In addition, I did not know, before Luis Romero died in March 2019, that Jaime Osuna was a danger to a potential cellmate generally.

6. Had I believed, at any time between September 2018 (when Osuna arrived at Corcoran) and March 9, 2019, that Osuna was a danger to a potential cellmate, I would have spoken with my supervisor about evaluating Osuna for single-cell status.

7. In 2018 and 2019, housing unit 4A1R was Long Term Restricted Housing (LTRH) (also sometimes referred to as SHU (Security Housing Unit)). LTRH is housing for inmates who have committed rules violations in prison and are required to serve terms in restrictive housing because of those violations. Many of the inmates in LTRH have committed murder or other violent crimes, have assaulted staff in prison, have assaulted other inmates in prison, have used weapons in prison, and have tattoos on their faces. Those factors do not prevent them from being housed in LTRH, and those factors do not prevent them from having a cellmate in LTRH.

8. Osuna arrived at California Stated Prison, Corcoran, in September 2018. Osuna was housed in building 4A1R. Osuna was cleared for double-cell housing when he arrived at Corcoran based on a determination by an Institutional Classification Committee (ICC) at his previous institution, California State Prison, Sacramento.

9. When a new inmate arrives at California State Prison, Corcoran, or any CDCR prison, and the new inmate is double-cell cleared, the inmate can, and should, be housed with a compatible cellmate on the same day in order to maximize cell usage. A compatible cellmate for

2

Osuna was not located in September 2018, so he was placed in a cell by himself in housing unit 4A1R.

10.    In February or March 2019, Osuna told me that he was requesting a cellmate. The request did not surprise me because inmates in LTRH have told me that it is easier to pass the time when they have a cellmate because there is someone to talk to and share things with as opposed to being alone most of the day.

11.    On March 7, 2019, Luis Romero arrived at California State Prison, Corcoran. He was escorted from Receiving and Release to housing unit 4A1R and placed in one of the two holding cells in the rotunda. The holding cells are small cells without beds where inmates can be temporarily placed and monitored by 4A1R staff from their office. I spoke with Romero, and he told me that he was requesting a cellmate. I therefore started the process to determine whether Romero and Osuna were compatible as cellmates.

12.    The process for assigning more than one inmate to a cell in a restricted housing unit is described in Department Operations Manual section 54046.7.1 (2019 version). The process is initiated by either a staff recommendation or a request by the inmate. A correctional officer reviews the inmates' central files, speaks with each inmate, and evaluates any security concerns. The officer then fills out a CDCR Form 1882-B and asks the inmate candidates to sign the form indicating their agreement to the double-cell assignment. In Facility 4A, it was our practice to have the two inmates meet and speak to one another before agreeing to cell together by placing them in the two holding cells in the rotunda where they can see one another and talk. If both inmate candidates agree, the correctional officer gathers their signatures and completes the form 1882-B by signing and dating it, and then forwards the signed 1882-B to a correctional lieutenant for review.

13.    On March 7, 2019, after confirming that Romero was requesting a cellmate, I reviewed the central files of Osuna and Romero to confirm they were compatible. They had similar crimes (both had murdered a female), were the same race, ▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Both inmates had been to ICC within the previous two months where their double-cell status was continued. In my

3

review, I did not see any information indicating that there was a security concern from housing the two together. Because they were compatible based on their central files, I moved on to the next step and placed Osuna in the holding cell next to Romero's holding cell so that the two could talk.

14. While Osuna and Romero talked, I was nearby in the office, where I could see the inmates talking but could not hear what they were saying. After Osuna and Romero spoke for about half an hour, I walked over to them and they confirmed that they had agreed to be housed together in the same cell. I handed them the 1882-B form to sign, they both signed, and I completed my section and signed the document myself. I then provided the 1882-B form to Lieutenant F. Munoz for his review. I do not remember whether I brought the document to Munoz personally or someone else delivered it. A true and correct copy of the 1882-B form is attached hereto as exhibit A.

15. I left work for the day at 2:00 p.m. when my shift ended. At that time Romero was still in the holding cell waiting for his housing to be approved.

16. I returned to Corcoran at approximately 6:00 a.m. the next day, March 8, 2019. That morning, I noted that Osuna and Romero had been approved to house in the same cell together. That morning at approximately 8:00 a.m., I was assaulted by another inmate in 4A1R and went to an outside hospital for treatment. I did not return to work at Corcoran for two weeks. I was not at the prison on the night of March 8-9, 2019, when Luis Romero was murdered, and I was not at the prison when Luis Romero's body was discovered.

I declare under penalty of perjury that the foregoing statements are true and correct.

Executed: 7/29, 2026, at ___Corcoran___, California.

_____

A. Loza

4

# Exhibit A

STATE OF CALIFORNIA
CDC 1882-B

DEPARTMENT OF CORRECTIONS

## ADMINISTRATIVE SEGREGATION UNIT/SECURITY HOUSING UNIT
## DOUBLE CELL REVIEW

| Name of Inmate (Last, First, MI) OSUNA | CDC Number BD 0868 | Housing 4AIR 46 |
|---|---|---|
| Name of Inmate (Last, First, MI) Romero, B L | CDC Number H56733 | Housing |

The above-listed inmates are being processed for occupancy of the same cell.

1. The request is being initiated per:

   ☐ Administrative assignment by staff.

   ☐ Request from one ☐    or both ☒    inmates to be assigned to the same cell.

2. During the interview with:

| Staff Witness Printed Name A LOZIA | Signature |
|---|---|

☒ Both inmates stated agreement to the cell assignment and signed below to indicate compatibility.

   Signature of Inmate X _____    Signature of Inmate X _____

   ☐ Both inmates stated agreement, but one or both refused to sign the acknowledgment of compatibility.

   ☐ One or both inmates refused the cell assignment.

3. After a review of the inmates' statements and the case factors in each inmate's C-file, it has been determined that:

   ☒ There is no information available to indicate that the inmates are incompatible.

   ☐ There is information which leads to the belief that the assignment of these inmates to the same cell is contrary to legitimate penological interests, or may threaten institution security or the safety of others.

4. Based on this evaluation, the double cell occupancy request is:  ☒ APPROVED   ☐ DISAPPROVED

| APPROVING AUTHORITY |
|---|
| Signature: |
| Printed Name: E. Mun-z |
| Title: |
| DATE: 3/7/2015 |

DISTRIBUTION:
C-File
Facility Captain
Housing Unit
Correctional Counselor I(s)
Inmate