ROB BONTA, State Bar No. 202668
Attorney General of California
JON S. ALLIN, State Bar No. 155069
Supervising Deputy Attorney General
JEREMY DUGGAN, State Bar No. 229854
Deputy Attorney General
DAVID E. KUCHINSKY, State Bar No. 292861
Deputy Attorney General
 1300 I Street, Suite 125
 Sacramento, CA 95814
 Telephone: (916) 210-7666
 Fax: (916) 324-5205
 E-mail: Jeremy.Duggan@doj.ca.gov
*Attorneys for Defendants Burnes, Gamboa,*
*Garcia, Gallemore, Maytubby, Munoz, and Pena*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

FRESNO DIVISION

| | |
|---|---|
| **DORA SOLARES,** | 1:20-CV-00323-LHR-FRS (PC) |
| Plaintiff, | **DECLARATION OF M. GAMBOA IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** |
| v. | Judge:        Hon. Lee H. Rosenthal |
| **RALPH DIAZ, et al.,** | Action Filed:  March 2, 2020 |
| Defendants. | |

I, M. Gamboa, hereby declare:

1.    I have personal knowledge of the facts set forth in this declaration. I am competent to testify to the matters set forth in this declaration, and if called upon by the Court, I would do so.

2.    I work for the California Department of Corrections and Rehabilitation (CDCR). I started as a correctional officer at the Substance Abuse Treatment Facility in Corcoran, California. I promoted to correctional sergeant at San Quentin State Prison in 2005. I moved to California State Prison, Corcoran as a correctional sergeant in 2007, and promoted to lieutenant in 2009, captain in 2013, associate warden in 2018, and chief deputy warden in 2019. In 2020, I promoted to warden at Avenal State Prison.

1

3. In January 2019, I was acting chief deputy warden at California State Prison, Corcoran, which is the position directly below the warden on the organization chart. Among my many responsibilities in that role was to serve as the warden's designee in Institutional Classification Committees (ICCs). Classification of inmates in CDCR prisons is described in California Code of Regulations title 15, section 3375. As stated therein, "Each determination affecting an inmate's placement within an institution/facility, transfer between facilities, program participation, privilege groups, or custody designation shall be made by a classification committee composed of staff knowledgeable in the classification process." (Cal. Code Regs. tit. 15, § 3375(c) (2019 version).) An ICC reviews an inmate's classification factors, such as custody level, disabilities, medical needs, restricted housing, and mental health participation, and makes determinations regarding where within the prison system that inmate can and should be housed.

4. I understand that the Plaintiff in this matter is asserting that I am at fault for the death of Luis Romero because, according to Plaintiff, I was on notice that inmate Jaime Osuna posed a danger to other inmates but approved his clearance to double-cell with another inmate.

5. I was the committee chairperson for Osuna's January 22, 2019 ICC. An ICC consists of three members: (1) a correctional counselor; (2) a captain or acting captain, and (3) the warden or warden's designee, who acts as the chairperson. An ICC can also include additional participants, such as a correctional officer or sergeant and a mental health representative. When an ICC convenes at California State Prison Corcoran, the committee will typically review about 20 to 30 inmates. The time for each inmate varies depending on what, if anything, is being changed. A rough estimate of the average time spent is 10–15 minutes.

6. Before the committee, the correctional counselor reviews the inmates' files and prepares a recommendation of any actions for the committee to take as to each inmate. For each inmate, the correctional counselor gives a presentation, goes over the inmate's history and any key documents, and makes a recommendation to the committee. As the committee chair, I would have a computer in front of me so I can review any part of the inmate's file that is relevant to the committee action.

2

7. At the January 22, 2019 classification committee for Osuna, I was the committee chair, the correctional counselor was E. Moreno, and the Captain was A. Randolph. Osuna's double-cell status was not changed at that ICC. Osuna had been double-cell cleared since a September 6, 2018 ICC at California State Prison, Sacramento. The change that the January 22, 2019 ICC made was to change Osuna's status from double-cell general population (GP) to double-cell sensitive needs yard (SNY).

8. SNY status is used for inmates who cannot program in general population because of their crimes, former occupation, or because they are gang dropouts. ███████████████

█████████████████████████████████████

█████████████████████████████████████

9. When Osuna was changed from GP to SNY, that did not change where Osuna was housed. In January 2019, Osuna was housed in long term restrictive housing (LTRH) in housing unit 4A1R. Inmates in LTRH do not have contact with one another apart from their cellmates. In LTRH, yard time is taken outside individual modules, with only cellmates allowed to share a module. Therefore, both GP and SNY inmates can be housed in LTRH, although GP inmates and SNY inmates cannot be celled together.

10. LTRH is housing for inmates who have committed rules violations in prison and are required to serve disciplinary terms in restrictive housing because of those violations. Many of the inmates in LTRH have committed murder or other violent crimes, have assaulted staff in prison, have assaulted other inmates in prison, have used weapons in prison, and have tattoos on their faces. Under CDCR policy, those factors do not prevent them from being housed in LTRH, and those factors do not prevent them from having a cellmate in LTRH.

11. Osuna was not present for the January 22, 2019 ICC. It is common for inmates not to appear for their ICCs, especially where the inmate already knows what the ICC is likely to do. The inmate declining to appear does not affect the committee's authority to act.

12. As with all ICCs, the January 22, 2019 for Osuna included a cell review to look at Osuna's double-cell or single-cell status. Under CDCR policy, inmates are presumed to be assigned to double-cell status unless they have certain factors that warrant consideration of single-

3

cell status. Those factors are described in California Code of Regulations title 15, section 3269(d), as follows: "a history of in-cell abuse, significant in-cell violence towards a cell partner, verification of predatory behavior towards a cell partner, or who have been victimized in-cell by another inmate." (Cal. Code Regs. tit. 15, § 3269(d) (2019 version).) When single-cell status is granted, it is not permanent and can be reevaluated at the inmate's next committee.

13. The January 22, 2019 ICC reviewed Osuna's factors and kept Osuna's double-cell status in place. That decision was proper under CDCR policy. After reviewing Osuna's disciplinary history and file, that committee found that Osuna did not have any of the factors listed above warranting single-cell status. A true and correct copy of the document recording the January 22, 2019 ICC (referred to as a chrono) is attached hereto as Exhibit A.

14. The factors Osuna did have did not warrant single-cell status under CDCR policy. ███████████████████████████████████████████████████████████████████████████████████████

15. ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████—███████████████████████████████████████████████████████████████████████████████████████████

16. Osuna has tattoos on his face. Face tattoos are common in CDCR prisons, especially in Long Term Restricted Housing. Face tattoos do not prevent an inmate from being double-cell cleared under CDCR policy.

17. Osuna's commitment offense was a 2011 murder of a woman in a Bakersfield hotel room. That commitment offense did not prevent Osuna from being double-cell cleared under CDCR policy.

18. ███████████████████████████████████████████████████████

4

19. ███████████████████████████████████████

███████████████████████████████████████

██████

20.    All of Osuna's factors, taken together, did not warrant a further single-cell evaluation.

███████████████████████████████████████

██████████████████████████████████████

████████████████████████████████████ At the time, in January 2019, Osuna was not a high-notoriety person at California State Prison, Corcoran, and did not stand out from other inmates.

21.    After Romero was killed, CDCR performed an evaluation of the January 22, 2019 ICC's actions, and found that the actions were in compliance with CDCR policy.

22.    I did not know that Jaime Osuna presented a danger to Luis Romero at any time before Luis Romero's death. In addition, I did not know, before Luis Romero died in March 2019, that Jaime Osuna was a danger to other inmates generally.

23.    Had I believed, at any time between September 2018 (when Osuna arrived at Corcoran) and March 9, 2019, that Osuna was a danger to a potential cellmate, I would have raised the issue with Osuna's counselor, and an Institutional Classification Committee would have convened to review Osuna's double-cell status.

I declare under penalty of perjury that the foregoing statements are true and correct. Executed: July 31 , 2026, at Avenal, California.

_____
M. Gamboa
SA2019101902
Solares I MSJ - Burnes Declaration.docx

5

# Placeholder

# Exhibit A to Declaration of M. Gamboa dated 7/31/26

# Document Subject to Request to File Under Seal