ROB BONTA, State Bar No. 202668
Attorney General of California
JON S. ALLIN, State Bar No. 155069
Supervising Deputy Attorney General
JEREMY DUGGAN, State Bar No. 229854
Deputy Attorney General
DAVID E. KUCHINSKY, State Bar No. 292861
Deputy Attorney General
 1300 I Street, Suite 125
 Sacramento, CA 95814
 Telephone:  (916) 210-7666
 Fax:  (916) 324-5205
 E-mail:  David.Kuchinsky@doj.ca.gov
*Attorneys for Defendants Burnes, Loza, Gamboa,
Garcia, Gallemore, Maytubby, Munoz, and Pena*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

FRESNO DIVISION

| | |
|---|---|
| **DORA SOLARES,**<br><br>Plaintiff,<br><br>v.<br><br>**RALPH DIAZ, et al.,**<br><br>Defendants. | 1:20-CV-00323-LHR-FJS (PC)<br><br>**DECLARATION OF JEREMY DUGGAN IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>Date:          September 11, 2026<br>Time:         11:00 a.m. central<br>                  9:00 a.m. pacific<br>Courtroom:  Zoom<br>Judge:       Hon.  Lee H. Rosenthal<br>Trial Date:   Not set<br>Action Filed:  March 2, 2020 |

I, Jeremy Duggan, declare:

1.     I am a member of the California State Bar, admitted to practice before this Court, and employed by the Office of the Attorney General of the State of California as a Deputy Attorney General.  I am the attorney of record for Defendants Burnes, Loza, Gamboa, Garcia, Gallemore, Maytubby, Munoz, and Pena in this matter.

2.     Attached hereto as Exhibit A is a true and correct copy of pages from the 2019 version of the California Code of Regulations title 15 produced in this matter from CDCR records as Bates numbers DEF000124–DEF000156.

1

3.    Attached hereto as Exhibit B is a true and correct copy of pages from the 2019 version of the CDCR Department Operations Manual produced in this matter from CDCR records as Bates numbers DEF000033–DEF000056.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 3rd day of August, 2026, in Sacramento, California.


_____/s/ **Jeremy Duggan**_____
JEREMY DUGGAN

2

# Exhibit A

Case 1:20-cv-00323-LHR-FJS Document 294-16 Filed 08/03/26 Page 4 of 61

Use of Force Interview Findings Report, which are hereby incorporated by reference.

(e) Reviewing Use of Force Requirements.

(1) For reported incidents, a good faith effort must be made at all levels of review in order to reach a judgment whether the staff's actions prior to, during, and subsequent to the force used was in compliance with regulations, procedure and applicable law and determine if follow-up action is necessary.

(2) Use of Force levels of review include the following:

(A) Incident Commander Review, CDCR Form 3010-A (Rev. 9/09), Field: Use of Force Incident-Supervisor Review/ Critique.

(B) First Line Manager Review, CDCR Form 3011-A (Rev. 9/09), Field: Use of Force Incident-Manager Review/Critique, which is hereby incorporated by reference.

(C) Second Line Manager Review, CDCR Form 3012-A (Rev. 9/09), Field: Executive Review of Use of Force Critique and Qualitative Evaluation/Analysis, which is hereby incorporated by reference.

(D) Regional Use of Force Coordinator Review. The Use of Force Coordinator shall normally schedule all logged use of force cases for review within 30 days of their logged occurrence. The Regional Use of Force Coordinator shall document their review on a CDCR Form 3034-A (9/09), Field: Executive Review Committee-Use of Force/Misconduct Allegation, and a CDCR Form 3036-A (9/09), Field: Executive Review Committee Critique and Qualitative Evaluation/Analysis, which are hereby incorporated by reference.

(E) Field Executive Review Committee (FERC). Normally, the FERC is comprised of the following staff:

1. Regional Parole Administrator, Chief, or Assistant Secretary as chairperson and final decision maker,

2. At least one other manager,

3. Supervising Regional Training Coordinator,

4. A Use of Force Coordinator.

5. Other designated supervisors and rank and file staff may also attend, as determined by the Regional Parole Administrator. A representative of the BIR may also attend and monitor FERC meetings.

6. The FERC shall meet to review its cases on at least a monthly basis, or on a schedule to ensure all cases are reviewed within 30 days. The FERC shall document their review on a CDCR Form 3035-A (9/09), Field: Executive Review Committee/Further Action Recommendation-Use of Force/Misconduct Allegation, which is hereby incorporated by reference.

(F) Department Executive Review Committee (DERC).

(f) Investigating Deadly Force and Any Use of Force that could have caused Death or Great Bodily Injury

(1) Deadly Force Investigation Team (DFIT). The following instances shall be referred to the DFIT for investigation:

(A) Every use of deadly force; except the lawful discharge of a firearm during weapons qualifications or firearms training, or other legal recreational uses of a firearm.

(B) Every use of force incident that resulted in death.

(C) Every incident resulting in great bodily injury that could have been caused by a staff use of force.

(2) The Deadly Force Review board (DFRB) is responsible for conducting a full and complete review of all incidents involving a use of deadly force and every death or great bodily injury that could have been caused by a staff use of force, regardless of whether the incident occurs in an institutional or community setting.

(3) Every use of deadly force and every death or great bodily injury that could have been caused by a staff use of force will be investigated by the DFIT and reviewed by the DFRB.

NOTE: Authority cited: Section 5058, Penal Code. Reference: Sections 196, 835a, 2651, 2652 and 5054 Penal Code; and Section 50, Civil Code.

HISTORY:

1. New section filed 8-19-2010; operative 8-19-2010 pursuant to Government Code section 11343.4 (Register 2010, No. 34).

## Article 1.6. Inmate Housing

### 3269. Inmate Housing Assignments.

Inmates shall accept Inmate Housing Assignments (IHAs) as directed by staff. It is the expectation that all inmates double cell, whether being housed in a Reception Center, General Population (GP), an Administrative Segregation Unit (ASU), a Security Housing Unit (SHU), or specialty housing unit. If staff determines an inmate is suitable for double celling, based on the criteria as set forth in this section, the inmate shall accept the housing assignment or be subject to disciplinary action for refusing. IHAs shall be made on the basis of available documentation and individual case factors. Inmates are not entitled to single cell assignment, housing location of choice, or to a cellmate of their choice.

(a) Upon arrival at an institution, facility, or program reception center, a designated custody supervisor shall screen an inmate for an appropriate housing assignment. The screening authority involved in the review and approval of an inmate's housing assignment must evaluate all factors to be considered when completing the Initial Housing Review, including but not limited to:

• Inmate name, CDC number, and Personal Identification number.

• Personal factors such as race, date of birth, age, weight, height, birth place, and whether the inmate is a foreign national.

• Receiving Institution.

• County of commitment.

• Out to court return and escape history.

• Length of sentence.

• Enemies and victimization history.

• Criminal influence demonstrated over other inmates.

• Previous housing status.

• Reason(s) for prior segregation.

• History of "S" suffix determination pursuant to CCR subsection 3377.l(c).

• History of in-cell assaults and/or violence.

• Security Threat Group affiliation.

• Involvement in a race based incident(s).

• Nature of commitment offense.

• Documented reports from prior cellmate(s) that the inmate intimidated, threatened, forced, and/or harassed him or her for sex.

• Documentation that the cellmate(s) refused to return to a cell occupied by the inmate because of fear, threats, or abuse perpetrated by the inmate.

• Documentation that the inmate has been the victim of a sexual assault or was previously single celled.

• Adjudicated Department Rules Violations Reports (RVR) where the inmate was found guilty as a perpetrator in an act of physical abuse, sexual abuse, sodomy, or other act of force against a cellmate.

(b) The screening authority shall complete the Initial Housing Review stating if the inmate is suitable for dorm/cell housing with or without special restrictions. Restrictions are any case factors which may limit the inmate's housing placement options such as, but not limited to:

• Security issues including ASU, Restricted Custody General Population (RCGP), and SHU placement.

• Request for Protective Custody.

• Medical or mental health issues.

• Personal factors such as age, weight, and height.

Solares v. Diaz, E.D. Cal. No. 1:20-cv-00323
DEF 000124

Case 1:20-cv-00323-LHR-FJS  Document 294-16  Filed 08/03/26  Page 5 of 61

• Integrated Housing Code.

Staff shall ensure that the housing policies regarding special category inmates covered under specific litigation remain in place during the housing assignment.

(c) Upon placement in an ASU or SHU, inmates shall be screened for an appropriate cell assignment using the same criteria as inmates being screened for housing in the general population. The reason for ASU or SHU placement shall also be taken into consideration.

Based on available information and the inmate interview, the screening authority shall determine if the inmate is suitable for single or double celled housing, and shall complete a CDC Form 114-Al (rev. 10/98), Inmate Segregation Profile. Unless approved for single cell assignment, an inmate in ASU or SHU is expected to share a cell with another inmate.

(d) Single cell status shall be considered for those inmates who demonstrate a history of in-cell abuse, significant in-cell violence towards a cell partner, verification of predatory behavior towards a cell partner, or who have been victimized in-cell by another inmate. Staff shall consider the inmate's pattern of behavior, not just an isolated incident. An act of mutual combat in itself does not warrant single cell status. The following factors must be considered when evaluating single cell status, noting these factors are not exclusive of other considerations:

(I) Predatory behavior is characterized by aggressive, repeated attempts to physically or sexually abuse another inmate.

(2) Documented and verified instances of being a victim of in-cell physical or sexual abuse by another inmate.

(e) Should the screening authority determine that single cell designation is appropriate, the inmate's case factors shall be reviewed by a classification committee for determination of appropriate housing and designation for an "S" suffix. A classification committee may consider whether an inmate with single cell designation has since proven capable of being double-celled.

(f) In cases where single cell status is recommended by clinical staff due to mental health or medical concerns, a classification committee shall make the final determination of an inmate's cell assignment. The classification committee shall consider the clinical recommendations made by the evaluating clinician with assistance from the clinician who participates in the committee and review the inmate's case factors when determining the housing assignment. Single cell status based upon clinical recommendation is usually a temporary short-term measure and must be periodically reviewed, minimally at an inmate's annual review or more frequently at the inmate's/clinician's request.

(g) Transgender inmates and inmates having symptoms of gender dysphoria as identified and documented in SOMS by medical or mental health personnel within a CDCR institution shall be referred to a classification committee for a determination of appropriate housing at a designated institution, pursuant to Article 10 of Subchapter 4.

**(h)** If an inmate refuses to be housed as determined to be appropriate to this section, the inmate shall be subject to the disciplinary process. Refusal to participate will result in the issuance of a Rules Violation Report **(RVR)** for Conduct, subsection 3005(c), Refusing to Accept Assigned Housing, for the Specific Act of Willfully Resisting, Delaying, or Obstructing any Peace Officer **in** the performance of Duty (CCR subsection 3323(f)(6)). Subsequent acts of the above listed offense will result in the issuance of additional disciplinary reports.

NOTE: Authority cited: Section 5058, Penal Code. Reference: Section 5054, Penal Code; and *Quine v. Beard,* No. C 14-02726 JST.

HISTORY:

1. New section filed 3-18-2008 as an emergency; operative 3-18-2008 (Register 2008, No. 12). Pursuant to Penal Code section 5058.3, a Certificate of Compliance must be transmitted to OAL by 8-25-2008 or emergency language will be repealed by operation of law on the following day.
2. Certificate of Compliance as to 3-18-2008 order, including amendment of subsection (f), transmitted to OAL 8-18-2008 and filed 9-15-2008 (Register 2008, No. 38).
3. Change without regulatory effect amending subsection (a) filed 3-28-2011 pursuant to section 100, title 1, California Code of Regulations (Register 2011, No. 13).
4. Amendment of subsections (a)-(b) filed 6-2-2014; operative 6-2-2014 pursuant to Government Code section 11343.4(b)(3) (Register 2014, No. 23).
5. Amendment of subsection (a) filed 10-17-2014; operative 10-17-2014 pursuant to Government Code section 11343.4(b)(3) (Register 2014, No. 42).
6. Amendment of subsection (g) filed 6-1-2015 as an emergency; operative 6-1-2015 (Register 2015, No. 23). Pursuant to Penal Code section 5058.3, a Certificate of Compliance must be transmitted to OAL by 11-9-2015 or emergency language will be repealed by operation of law on the following day.
7. Certificate of Compliance as to 6-1-2015 order transmitted to OAL 10-19-2015 and filed 12-3-2015 (Register 2015, No. 49).
8. New subsection (g), subsection relettering and amendment of Note filed 4-17-2017 as an emergency; operative 4-28-2017 (Register 2017, No. 16). Pursuant to Penal Code section 5058.3, a Certificate of Compliance must be transmitted to OAL by 10-5-2017 or emergency language will be repealed by operation of law on the following day.
9. New subsection (g), subsection relettering and amendment of Note refiled 10-4-2017 as an emergency; operative 10-6-2017 (Register 2017, No. 40). Pursuant to Penal Code section 5058.3, a Certificate of Compliance must be transmitted to OAL by 1-4-2018 or emergency language will be repealed by operation of law on the following day.
10. Amendment of subsection (b) filed 10-9-2017 as an emergency; operative 10-9-2017 (Register 2017, No. 41). Pursuant to Penal Code section 5058.3, a Certificate of Compliance must be transmitted to OAL by 3-19-2017 or emergency language will be repealed by operation of law on the following day.
11. Editorial correction restoring inadvertently omitted History 9 and adding History 10 (Register 2017, No. 42).
12. New subsection (g), subsection relettering and amendment of Note refiled 1-2-2018 as an emergency; operative 1-5-2018 (Register 2018, No. 1). Pursuant to Penal Code section 5058.3, a Certificate of Compliance must be transmitted to OAL by 4-5-2018 or emergency language will be repealed by operation of law on the following day.
13. Amendment of subsection (b) refiled 3-5-2018 as an emergency; operative 3-19-2018 (Register 2018, No. 10). Pursuant to Penal Code section 5058.3, a Certificate of Compliance must be transmitted to OAL by 8-27-2018 or emergency language will be repealed by operation of law on the following day.
14. Certificate of Compliance as to 1-2-2018 order transmitted to OAL 4-4-2018 and filed 5-15-2018 (Register 2018, No. 20).
15. Editorial correction of subsection (b) (Register 2018, No. 26).
16. Certificate of Compliance as to 3-5-2018 order transmitted to OAL 8-21-2018 and filed 10-3-2018 (Register 2018, No. 40).

**3269.1.  Integrated Housing.**

An inmate's race will not be used as a primary determining factor in housing an institution's inmate population. Inmate housing assignments shall be made on the basis of available documentation and individual case factors to implement an Integrated Housing Policy **(IHP).** Individual case factors include, but are not limited to, such factors as:

(1) History of racial violence.

(2) Commitment offense/time to serve.

(3) Classification score.

Solares v. Diaz, E.D. Cal. No. 1:20-cv-00323

DEF 000125

(4) Custody level.

(5) Education.

(6) Disciplinary history.

The IHP is set forth in these regulations. Housing assignments will be determined in a manner that will ensure that the safety, security, treatment, and rehabilitative needs of the inmate are considered, as well as the safety and security of the public, staff and institutions. Upon adoption of these regulations in 2007, the department will begin to update a computer tracking system to include the assignment of an Integrated Housing Code (IHC) as set forth in subsection (b) that will be used to identify each inmate's ability to integrate. On January 1, 2008, actual implementation of the IHP will commence at designated facilities. On January 1, 2009, the IHP will begin to be implemented at all remaining institutions.

(a) The department's housing protocol will require male inmates to be housed in an appropriate bed, based on each inmate's Integrated Housing Code (IHC) and/or individual case factors. The department will utilize a computer tracking system to identify, track, and monitor an inmate's eligibility to integrate when being housed.

(b) Based on a review of an inmate's individual case factors and a personal interview with an inmate, an IHC will be assigned. The appropriateness of an inmate's IHC will be assessed at least at an inmate's Annual Review, or as case factors may change, and adjusted as necessary. An IHC that may be assigned are detailed as follows:

(1) RE, Racially Eligible. An inmate that has not been a victim or perpetrator of a racially motivated crime and can live with members of any race. It is the expectation of the department that all inmates will be coded RE, unless certain case factors dictate otherwise.

(2) RP, Restricted Partially. An inmate that may be considered ineligible to live with inmates of a particular race. Ineligibility to live with someone of another race could be based on a racially motivated incident, where racial beliefs or attitudes were the cause of the incident.

(3) **RO,** Restricted to Own (Race). An inmate that has been the victim and/or perpetrator of a racially motivated crime. Inmates who are coded RO Restricted to Own will not be precluded from integration in other aspects of institutional operation, such as a school or work assignment. Inmates coded as RO are not precluded from racially integrated housing for the entire duration of their sentence.

(4) RT, Restricted Temporarily by Custody. Inmates with insufficient information or documentation for the designated custody supervisor to make an objective determination shall be coded RT for Restricted Temporarily Restricted by Custody. This code may be used when conflicting information arrives with the inmate or when questionable statements or behavior by the inmate are observed that are not consistent with the inmate's claim of eligibility.

(5) **RR,** Restricted by Refusal. Inmate is otherwise eligible for integrated housing but refuses to participate. Refusal to accept an integrated housing assignment, when all available documentation and information does not preclude such, shall result **in** disciplinary action.

(c) Inmates arriving in a facility Receiving and Release will be interviewed in accordance with the established process for intake. The designated custody supervisor will use the information provided during the interview as well as the supporting documents received to determine the inmate's eligibility for an integrated housing assignment.

(d) New arrivals at a facility or inmates who require a bed assignment change will be housed in the first available and appropriate bed, taking into consideration all relevant case factors. Staff will also consider other available information that would indicate

or present an immediate risk or safety concern for the inmate such as, but not limited to:

(1) Security issues including ASU placement.

(2) SHU.

(3) Request for Protective Custody.

(4) Security Threat Group affiliation.

(5) Medical or mental health issues.

(6) Length of term.

(7) Height, weight, and age.

Staff will continue to ensure that current housing policies regarding special category inmates covered under specific litigation remain in place during the housing process.

(e) If an inmate refuses to be housed in appropriately determined housing, he shall be subject to the disciplinary process. Refusal to participate will result in the issuance of a Rules Violation Report (RVR) for Conduct, section 3005(c), Refusing to Accept Assigned Housing, for the Specific Act of Willfully Resisting, Delaying, or Obstructing any Peace Officer in the Performance of Duty (CCR subsection 3323(f)(6)). At any time during this process the inmate may elect to participate in the IHP.

(f) Disciplinary restrictions will be applied as a result of a disciplinary process where inmates are afforded due process. The suspension of privileges based on a finding of guilt in a disciplinary hearing shall be assessed as set for the in CCR subsections 3315(f)(5)(M)l. and (M)2.

(g) In the event that facility management determines that a temporary suspension of assignments within a unit to integrated beds is warranted, the Warden or designee shall request approval from their mission based Associate Director for a temporary suspension of integrated housing assignments consistent with the lockdown or modified program. Regular housing assignment procedures shall be resumed in accordance with the Integrated Housing policy upon resolution of the incident.

NOTE: Authority cited: Section 5058, Penal Code. Reference: Section 5054, Penal Code; *Johnson v. California* (2005) 543 U.S. 499 [125 S. Ct. 1141], remand of *Johnson v. California,* (9th Cir. 2007) [Dock. No. CV 95-1192 CBM(BQR)].

HISTORY:

1. New article 1.6 (section 3269.1) and section filed 12-28-2007; operative 12-28-2007 pursuant to Government Code section I1343.4 (Register 2007, No. 52).

2. Amendment of subsection (g) filed 6-14-2011; operative 7-14-2011 (Register 2011, No. 24).

3. Amendment of subsection (d)(4) filed 10-17-2014; operative 10-17-2014 pursuant to Government Code section l 1343.4(b)(3) (Register 2014, No. 42).

4. Amendment of subsections (b)(5) and (e) filed 6-1-2015 as an emergency; operative 6-1-2015 (Register 2015, No. 23). Pursuant to Penal Code section 5058.3, a Certificate of Compliance must be transmitted to OAL by 11-9-2015 or emergency language will be repealed by operation of law on the following day.

5. Certificate of Compliance as to 6-1-2015 order transmitted to OAL 10-19-2015 and filed 12-3-2015 (Register 2015, No. 49).

6. Change without regulatory effect amending subsection (e) filed 3-5-2019 pursuant to section 100, title 1, California Code of Regulations (Register 2019, No. 10).

## Article 2. Security

**3270. General Policy.**

The primary objectives of the correctional institutions are to protect the public by safely keeping persons committed to the custody of the Secretary of Corrections and Rehabilitation, and to afford such persons with every reasonable opportunity and encouragement to participate in rehabilitative activities. Consistent effort will be made to insure the security of the institution and the effectiveness

Solares v. Diaz, E.D. Cal. No. 1:20-cv-00323
DEF 000126

of the treatment programs within the framework of security and safety. Each employee must be trained to understand how physical facilities, degree of custody classification, personnel, and operative procedures affect the maintenance of inmate custody and security. The requirement of custodial security and of staff, inmate and public safety must take precedence over all other considerations in the operation of all the programs and activities of the institutions of the department.

Comment: Former DP-4201, policy, general.

NOTE: Authority cited: Section 5058, Penal Code. Reference: Section 5054, Penal Code.

HISTORY:

1. Change without regulatory effect amending section and adding Note filed 3-11-2013 pursuant to section 100, title 1, California Code of Regulations (Register 2013, No. 11).

### 3270.1. Lethal Electrified Fences.

(a) For the purposes of this section, a lethal electrified fence is a high voltage fence installed for the lethal infliction of injury to escaping inmates.

(b) Safety precautions shall be instituted to prevent accidental electrocution. These precautions shall include, but are not limited to, the following:

(1) The posting of warning signs on the inner and outer perimeters of the facility informing staff, inmates, and the public of the presence of a lethal electrified fence.

(2) A visual inspection of the lethal electrified fence area at least once per shift.

(3) Regular inspections by an outside patrol of the perimeter areas.

(4) The presence of a staff person trained in energizing and deenergizing the fence prior to any authorized person entering the lethal electrified fence area.

(5) Inspections of lethal electrified fences as specified by a routine maintenance schedule.

(6) The insulation of lethal electrified fences between two security fences.

NOTE: Authority cited: section 5058, Penal Code. Reference: Sections 2052 and 5054, Penal Code.

HISTORY:

1. New section filed 12-15-93 as an emergency; operative 12-15-93 (Register 93, No. 51). A Certificate of Compliance must be transmitted to OAL by 4-25-94 or emergency language will be repealed by operation of law on the following day.
2. New section refiled 4-15-94 as an emergency; operative 4-25-94 (Register 94, No. 15). A Certificate of Compliance must be transmitted to OAL by 8-23-94 or emergency language will be repealed by operation of law on the following day.
3. Repealed by operation of Government Code section 11346.l(g) (Register 94, No. 37).
4. New section including amendments, refiled 9-15-94; operative 9-15-94 (Register 94, No. 37).

### 3271. Responsibility of Employees.

Every employee, regardless of his or her assignment, is responsible for the safe custody of the inmates confined in the institutions of the department.

Comment: Former DP-4202, responsibility of employees.

### 3272. Custody Classification.

The classification committee at each institution must assign a custodial classification to each inmate, in accordance with the custodial classifications prescribed by the department. The senior custodial officer on duty may temporarily increase the custodial classification of an inmate at any time he or she believes such action is necessary to protect the security and good order of the institution.

Such action is subject to classification committee review at the next regular meeting. Any reduction of an inmate's custody classification must be by classification committee action.

Comment: Former DP-4203, custody classification.

### 3273. Acceptance and Surrender of Custody.

Wardens and superintendents must not accept or surrender custody of any prisoner under any circumstances, except by valid court order or other due process of law.

Comment: Former DP-4204, acceptance and surrender of custody.

### 3274. Inmate Count and Movement.

(a) Inmate count. Every institution head shall maintain a system to account at all times for inmates under their jurisdiction. A physical count of all inmates shall be taken at least four times during each calendar day unless otherwise authorized in writing by the director. No inmate activity shall be scheduled at a time which would disrupt a facility count.

(1) Standing count. At least one daily count shall be a standing count wherein inmates shall stand at their cell door or, in a dormitory, shall sit on their assigned bed during the designated count time.

(2) Emergency count. If staff determines an inmate may be missing, an emergency count shall be conducted to determine whether an escape has occurred and, if so, the identity of the escapee. When an emergency count is announced, inmates shall return to their assigned housing, except in a medical emergency or other exception specifically authorized by the official in charge.

(b) Inmate movement. Each facility shall establish a schedule of routine inmate movement to and from the facility's activities and assignments such as work and education, and the gym or exercise yard.

(1) Appointments. A CDC Form 129 (Rev. 7/88), Inmate Pass, shall be issued to an inmate approved for movement to a scheduled non-routine appointment. Medical service and case work appointments shall not be scheduled during an inmate's work or program hours unless an inmate cannot otherwise obtain the service or case work.

(2) Unscheduled movement. If unscheduled movement of an inmate is necessary, such movement shall not take place unless the inmate is escorted by staff, or a pass has been issued by staff authorizing the movement.

(3) Routine movement. A gate pass shall be maintained for each inmate assigned to work outside a facility's security area. The gate pass shall:

(A) Not be handled by any inmate.

(B) Include the inmate's identification photo, name, CDC number, housing assignment, custody designation, assignment requiring the gate pass, effective date of the pass, times the inmate is authorized to pass through the gate, and the signature of a facility official authorized to approve gate passes.

(C) Be rescinded by staff at the level of correctional lieutenant or higher, pending a classification committee review whenever:

1. A hold or detainer against an inmate's release, or notice thereof, is received by the facility.

2. Staff determines from the inmate's behavior that the inmate may require increased supervision.

3. Staff receives information indicating an inmate's increased escape potential.

(c) Lockdown or Modified Program. Facility procedures governing the restriction of inmate movement during a lockdown or modified program shall be established and updated daily during any lockdown or modified program.

(d) Limited visibility. When visibility at a facility is severely restricted or a state of emergency is declared, inmates shall be

Solares v. Diaz, E.D. Cal. No. 1:20-cv-00323

DEF 000127

Case 1:20-cv-00323-LHR-FJS    Document 294-16    Filed 08/03/26    Page 8 of 61

confined to their housing units, except as otherwise authorized by the official in charge. In such circumstances, all inmate movement shall be under the direct and constant supervision of staff.

NOTE: Authority cited: Section 5058, Penal Code. Reference: Sections 2079 and 5054, Penal Code.

**HISTORY:**
1. Amendment filed 7-29-76; effective thirtieth day thereafter (Register 76, No. 31).
2. Amendment of section filed 12-20-91 as an emergency; operative 12-20-91 (Register 92, No. 4). A Certificate of Compliance must be transmitted to OAL 4-20-92 or emergency language will be repealed by operation of law on the following day.
3. Certificate of Compliance as to 12-20-91 order transmitted to OAL 4-17-92 and filed 6-1-92 (Register 92, No. 23).
4. Amendment of subsection (c) filed 6-14-2011; operative 7-14-2011 (Register 2011, No. 24).

**3275.  Weapons.**

(a)  Only such weaponry as has been approved by the Secretary for department-wide use, or for use only by designated jurisdictions of the department, shall be issued/assigned to an employee or carried/used by an employee while on duty. For the purpose of this section, weaponry includes any offensive or defensive lethal or less lethal device. Employees assigned to facilities or work locations where inmates/parolees are located, or in the supervision of inmates/parolees in the community, shall not have accessible, carry or use any privately owned weaponry while on duty, except as authorized by the Secretary.

(b)  No weaponry of any kind shall be taken into the security areas of an institution where inmates/parolees are located except for emergency use as ordered by the official in charge, or for use in regularly armed posts as prescribed in local procedures or post orders.

(c)  All necessary precautions shall be taken in the storage, use and movement of weaponry to prevent it from falling into the hands of inmates, parolees or other unauthorized persons.

NOTE: Authority cited: Section 5058, Penal Code. Reference: Sections 803.5, 5054, 4574, Penal Code.

HISTORY:
1. Amendment filed 9-24-81; effective thirtieth day thereafter (Register 81, No. 39).
2. Amendment filed 1-3-95 as an emergency; operative 1-3-95 (Register 95, No. 1). A Certificate of Compliance must be transmitted to OAL 6-12-95 or emergency language will be repealed by operation of law on the following day.
3. Amendment of subsection (a) filed 3-28-95 as an emergency; operative 3-28-95 for 160 days pursuant to Penal Code § 5058(e) (Register 95, No. 13). A Certificate of Compliance must be transmitted to OAL by 9-4-95 or emergency language will be repealed by operation of law on the following day.
4. Certificate of Compliance as to orders of 1-3-95 and 3-28-95 including amendment of subsection (a) and Note transmitted to OAL 6-12-95 and filed 7-24-95 (Register 95, No. 30).
5. Change without regulatory effect amending subsection (a) filed 3-11-2013 pursuant to section 100, title 1, California Code of Regulations (Register 2013, No. 11).

**3276.  Firearms.**

(a)  Only peace officers who have satisfactorily completed firearms training and who are currently qualified in the firing of departmental firearms shall be assigned to armed posts or otherwise be authorized to possess, carry or use a departmental firearm. Exceptions are only authorized in extreme emergencies when peace officers are not available in sufficient numbers or in time to stop or control a situation which warrants the immediate use of force, as described in section 3268.

(b)  An employee appointed to a peace officer position wherein the specifications of the position include the carrying and use of firearms shall be given a reasonable time to complete firearms training and to qualify in the firing of departmental firearms. Persistent failure or refusal to satisfactorily complete firearms training and to qualify in the firing of departmental firearms shall be cause for dismissal from employment as a peace officer.

(c)  Employees shall not have accessible, carry or use privately owned firearms or ammunition while on duty, except as authorized by the director or his/her designee. For the purpose of this section "on duty" means any time which is compensable as actual time worked.

(d)  Employees who are ordered to carry a concealable firearm while on duty away from facilities where inmates/parolees are located shall keep the firearm concealed at all times except when use of the firearm is necessary. Employees on duty on the grounds of, and in, facilities where inmates/parolees are located shall not carry a concealed firearm unless ordered to do so by the official in charge.

(e)  Each facility where inmates/parolees are located which maintains an unissued supply of firearms and ammunition, as described in Section 3275, shall provide for its long-term storage in a physically secure armory. Armories shall be located so as to be under 24-hour-a-day coverage of an armed post and away from areas that are open to traffic by unsupervised inmates/parolees and the public. Community Correctional Facility armories shall be exempt from the armed coverage requirement, but they shall be under 24-hour-a-day observation by staff directly, or by video surveillance, and shall be equipped with audible electronic alarms.

(f)  Each facility where inmates/parolees are located shall provide a physically secure locked container, located outside the security areas, for the temporary storage of firearms, ammunition and other weaponry of employees and officials who must come on the grounds or enter the facility in the course of their employment or official business.

(g)  Employees and others who live on the grounds of facilities where inmates/parolees are located, and any guests or visitors of such persons, shall not bring to, maintain, store or keep any firearms or ammunition in such residences at any time. Arrangements shall be made for the use of storage facilities described in subsections (e) and (f).

(h)  Firearms and ammunition shall not be left in an unattended vehicle at any time upon the grounds of facilities where inmates/parolees are located. Exceptions are authorized only when the vehicle is securely locked and under the direct observation of staff who are aware that the vehicle contains firearms or ammunition, or when the vehicle is equipped with a departmentally approved secure container for such equipment. Merely out of sight storage such as in the spare tire well, trunk or glove box does not meet the requirements for a secure container.

(i)  The loss or theft of departmentally issued/authorized firearms/duty weapons or related equipment shall be immediately reported to the responsible employee's supervisor, and through the supervisor to the administrator of the jurisdiction of employment, and/or to the attention of the administrator in which the loss or theft occurred, if in a different jurisdiction. Local law enforcement agencies shall be notified, and a written report shall be made to the deputy director/assistant director within whose jurisdiction the loss or theft occurred.

NOTE: Authority cited: section 5058, Penal Code. Reference: Sections 830, 830.5, 4574, and 5054, Penal Code.

HISTORY:
1. Repealer and new section filed 9-24-81; effective thirtieth day thereafter (Register 81, No. 39).

Solares v. Diaz, E.D. Cal. No. 1:20-cv-00323
DEF 000128

2. Amendment of subsection (a)(6) filed 7-12-82; effective thirtieth day thereafter (Register 82, No. 29).

3. Amendment filed 1-3-95 as an emergency; operative 1-3-95 (Register 95, No. 1). A Certificate of Compliance must be transmitted to OAL 6-12-95 or emergency language will be repealed by operation of law on the following day.

4. Amendment of subsections (b) and (b)(5) filed 3-28-95 as an emergency; operative 3-28-95 for 160 days pursuant to Penal Code section 5058(e) (Register 95, No. 13). A Certificate of Compliance must be transmitted to OAL by 9-4-95 or emergency language will be repealed by operation of law on the following day.

5. Certificate of Compliance as to orders of 1-3-95 and 3-28-95 including amendment of section and Note transmitted to OAL 6-12-95 and tiled 7-24-95 (Register 95, No. 30).

6. Amendment ti led 3-12-99 as an emergency; operative 4-1-99 (Register 99, No. 11). A Certificate of Compliance must be transmitted to OAL by 9-8-99 or emergency language will be repealed by operation of law on the following day pursuant to Penal Code section 5058(e)(l).

7. Editorial correction amending History 6 (Register 99, No. 26).

8. Certificate of Compliance as to 4-1-99 order transmitted to OAL 9-8-99 and filed 10-20-99 (Register 99, No. 43).

9. Amendment of subsections (c) and (i) filed 4-17-2002; operative 5-17-2002 (Register 2002, No. 16).

10. Amendment of subsection (e) filed 5-2-2007; operative 6-1-2007 (Register 2007, No. 18).

### 3277.  Use of Tear Gas. [Repealed]

NOTE: Authority cited: Section 5058, Penal Code. Reference: Section 5054, Penal Code.

HISTORY:

1. Amendment of Subsection (a) filed 5-28-76 as an emergency; designated effective 7-1-76 (Register 76, No. 19).

2. Certificate of Compliance filed 7-29-76 (Register 76, No. 31).

3. Amendment filed 3-22-78; effective thirtieth day thereafter (Register 78, No. 12).

4. Amendment of subsection (a) filed 8-7-80 as an emergency; effective upon filing (Register 80, No. 32). A Certificate of Compliance must be transmitted to OAL within 120 days or emergency language will be repealed on 12-7-80.

5. Certificate of Compliance filed 12-5-80 (Register 80, No. 49).

6. Amendment of subsections (a)(l) and (a)(3), repealer of subsections (a)(4)-(a)(4)(F)5, amendment of subsections (b), (b)(l) and (b)(3)-(4), and repealer l,1· subsection (c) filed 1-3-95 as an emergency; operative 1-3-95 (Register 95, No. 1). A Certificate of Compliance must be transmitted to OAL 6-12-95 or emergency language will be repealed by operation of law on the following day.

7. Certificate of Compliance as to 1-3-95 order including amendment of subsections (a)(3), (b)(l), (b)(3), and (b)(4) transmitted to OAL 6-12-95 and filed 7-24-95 (Register 95, No. 0).

8. Repealer filed 3-12-99 as an emergency; operative 4-1-99 (Register 99, No. 11). A Certificate of Compliance must be transmitted to OAL by 9-8-99 or emergency language will be repealed by operation of law on the following day pursuant to Penal Code section 5058(e)(1).

9. Editorial correction amending History 8 (Register 99, No 26).

10. Certificate of Compliance as to 4-1-99 order transmitted to OAL 9-8-99 and tiled 10-20-99 (Register 99, No. 43).

### 3278.  Control of Inmates and Parolees.

Employees who supervise inmates or parolees must have training in physical controls, use of restraint equipment, and keep themselves in good physical condition. In addition, all employees who supervise inmates must have training designed to give them knowledge of emotional disturbances common to inmates and parolees, and understanding of their own feelings, and the use of such knowledge in ways which will minimize the need for the use of physical force. Batons may be carried only as specifically authorized by the Secretary.

Comment: Former DP-4209, control of inmates.

NOTE: Authority cited: Section 5058, Penal Code. Reference: Section 5054, Penal Code.

HISTORY:

1. Change without regulatory effect amending section and adding Note filed 3-11-2013 pursuant to section 100, title 1, California Code of Regulations (Register 2013, No. 11).

### 3279.  Use of Force. [Repealed]

HISTORY:

1. Repealer filed 3-12-99 as an emergency; operative 4-1-99 (Register 99, No. 11). A Certificate of Compliance must be transmitted to OAL by 9-8-99 or emergency language will be repealed by operation of law on the following day pursuant to Penal Code section 5058(e)(1).

2. Editorial correction amending History 1 (Register 99, No. 26).

3. Certificate of Compliance as to 4-1-99 order transmitted to OAL 9-8-99 and filed 10-20-99 (Register 99, No. 43).

### 3280.  Mechanical Restraint.

NOTE: Authority cited: section 5058, Penal Code. Reference: Sections 2650, 2652 and 5054, Penal Code.

HISTORY:

1. Amendment of subsections (a)(2) and (c) tiled 5-28-76 as an emergency; designated effective 7-1-76 (Register 76, No. 19).

2. Certificate of Compliance filed 7-29-76 (Register 76, No. 31).

3. Amendment of subsection (b) filed 3-22-78; effective thirtieth day thereafter (Register 78, No. 12).

4. Amendment filed 2-8-88; operative 3-9-88 (Register 88, No. 7).

5. Editorial correction of printing errors in subsections (b) and (c) and History (Register 92, No. 5).

6. Change without regulatory effect amending subsection (a)(2) filed 1-20-93 pursuant to section 100, title 1, California Code of Regulations (Register 93, No. 4).

7. Renumbering of former section 3280 to new section 3268.2 filed 3-12-99 as an emergency; operative 4-1-99 (Register 99, No. 11). A Certificate l,f Compliance must be transmitted to OAL by 9-8-99 or emergency language will be repealed by operation of law on the following day pursuant to Penal Code section 5058(e)(l).

8. Editorial correction amending History 7 (Register 99, No. 26).

9. Certificate of Compliance as to 4-1-99 order transmitted to OAL 9-8-99 and filed 10-20-99 (Register 99, No. 43).

### 3281.  Corporal Punishment.

HISTORY:

1. Repealer filed 3-12-99 as an emergency; operative 4-1-99 (Register 99, No. 11). A Certificate of Compliance must be transmitted to OAL by 9-8-99 or emergency language will be repealed by operation of law on the following day pursuant to Penal Code section 5058(e)(1).

2. Editorial correction amending History 1 (Register 99, No. 26).

3. Certificate of Compliance as to 4-1-99 order transmitted to OAL 9-8-99 and filed 10-20-99 (Register 99, No. 43).

### 3282.  Use of Telephones by Inmates.

(a) For purposes of this section:

(I) An "emergency call" means a telephone call regarding the serious illness or injury, or the death of an inmate's immediate family member.

(2) A "confidential call" means a telephone call between an inmate and his/her attorney which both parties intend to be private.

(3) An "inmate telephone" means a telephone designated solely to accommodate inmate-originated nonconfidential personal calls.

(4) An "intrafacility telephone" means a telephone which is not capable of direct-dial connections to telephones outside of the facility.

151

Solares v. Diaz, E.D. Cal. No. 1:20-cv-00323
DEF 000129

(5) A "prison telephone" means a telephone that is capable of outside access and is not monitored or recorded.

(b) Facilities shall provide inmate telephones for use by inmates consistent with their assigned privilege group. Inmates may place collect telephone calls to persons outside the facility at designated times and on designated telephones, as set forth in local procedures. Limitations may be placed on the frequency and length of such calls based on the inmate's privilege group as outlined in section 3044, and to ensure equal access. Telephone calls requiring the use of a Telecommunication Device for the Deaf (TDD) or voice relay service shall have extended time scheduled due to the time delay which results from the TDD relay process.

(c) An inmate shall not:

(I) Use an intrafacility telephone except as specifically required or authorized by staff.

(2) Use a telephone capable of direct-dial connection with a public telephone system, except as authorized by staff.

(3) Charge a call to a credit card.

(4) Place a third party call.

(5) Ask the operator for an emergency interruption.

(6) Place a call to an "800," "900," "976," "911," **"411,"** or other special service number. Inmates that have a verified need to utilize the (1-800) TDD or relay service shall notify the correctional staff to facilitate the (1-800) TDD call.

(7) Place a call to an inmate at any other facility.

(8) Place calls to victims, peace officers, or other persons who have made an official written request not to receive telephone calls.

(9) Knowingly participate in a forwarded, transferred, or three-party call on an inmate telephone.

(d) Except as provided in this section, no limitation shall be placed on the identities or relationships of persons to whom an inmate may place a collect call.

(e) All inmate calls placed on intrafacility and inmate telephones may be subject to monitoring and recording at any time by institution staff.

(f) A conspicuous notice in English and Spanish shall be posted at each inmate telephone capable of recording and monitoring stating in both languages: All numbers dialed and conversations on this telephone may be recorded and may be monitored without any further notice. By using this telephone, you agree to the monitoring and recording. It is your responsibility to notify the person called that their conversation and telephone number may be monitored and will be recorded." Staff who authorize an inmate to use an un-pasted telephone for a nonconfidential call shall inform that inmate before the call is made regarding the notice of monitoring/recording requirement.

(g) If staff designated by the institution head determine that an incoming call concerns an emergency or confidential matter, the caller's name and telephone number shall be obtained and the inmate promptly notified of the situation. The inmate shall be permitted to place an emergency or confidential call either collect or by providing for the toll to be deducted from the inmate's trust account. A confidential call shall not be made on an inmate telephone and shall not be monitored or recorded. Ifa call is determined to be an attorney/inmate confidential phone call, in order for the inmate to place or receive the call it must have already received approval/clearance in accordance with subsections (g)(l), (g)(2) and (g)(4).

(I) Confidential calls may be approved on a case-by-case basis by the institution head or designee, upon written request from an attorney on the attorney's office letterhead stationery. The request shall be made by written request via U. S. Postal Service or facsimile to the Institution Litigation Coordinator or designee. To obtain approval/clearance, the attorney shall provide in writing the following personal and professional information:

(A) Name,

(B) Mailing address,

(C) Date ofBirth,

**(D)** Valid driver's license or state-issued identification card number.

(E) Proof of current registry and good standing with a governing bar association, and

(F) Indication of the jurisdiction(s) licensed to practice law. If the requesting attorney wishes to have a representative conduct the confidential phone call, the attorney representative must provide all applicable information listed above in addition to the attorney submitting their information. Refer to Title 15, subsection 3178(c)(l) for attorney representative criteria.

(2) Requesting attorney/attorney representative shall report any prior felony convictions or pending arrest dispositions, describe and explain any prior suspension or exclusion from a correctional facility, and declare under penalty of perjury one or more of the following:

(A) They are the named inmate's attorney either by appointment by the court or at the inmate's request,

(B) They have been requested by a judge to interview a named inmate for purposes of possible appointment as counsel by the same court,

(C) They are requesting to call a named inmate who may be a witness directly relevant to a legal process, purpose, or proceeding,

(D) They are seeking to interview a named inmate, at the request of the inmate, for the purpose of representation of the inmate in a legal process, for a legal purpose or in a legal proceeding, and

(E) They have been requested by a third party to consult with the named inmate when the inmate cannot do so because of a medical condition, disability or other circumstance.

(3) Any false statement or deliberate misrepresentation of facts specific to the information required in subsection (g)(2) shall be grounds for denying the request or cause for subsequent suspension or exclusion from all institutions/facilities administered by the department.

(4) Upon receipt of the information specified in (g)(l), a California law enforcement telecommunications system (CLETS) check of the attorney/attorney representative through the Department of Justice and verification of the attorney's credential through the governing state bar will be conducted. Once the clearance and state bar verification have been obtained and approved the attorney shall be contacted to schedule the confidential telephone call with the specified inmate. Attorneys and attorney representatives shall immediately report to the Institution Litigation Coordinator any change in personal or professional information, arrest history and or pending dispositions and declarations made in subsections (g)( **1**) and (g)(2) to retain their approval/clearance. In addition, a CLETS check will be conducted at least annually and as needed based on changes provided to the above listed information or information from any source that such changes had occurred.

(5) The date, time, duration, and place where the inmate will make or receive the call, and manner of the call are within the discretion of the institution head, except as restricted herein. A confidential call from an inmate shall be placed as a collect call or by providing for the toll to be deducted from the inmate's trust account and made from a prison telephone or, with appropriate authentication of the caller, may be received from an attorney.

(6) It is within the discretion of the institution head, or his/her designee, to approve or deny a confidential call. As long as the attorney/client communication privilege is not violated, a confidential call may be denied where the institution head, or his/her designee, determines that normal legal mail or attorney visits were appropriate means of communication and were not reasonably utilized by the inmate or attorney. Where demand for confidential

152

Case 1:20-cv-00323-LHR-FJS     Document 294-16     Filed 08/03/26     Page 11 of 61

calls seriously burdens institutional operations, the institution head, or his/her designee, shall prioritize confidential calls.

(7) Emergency calls on prison telephones between an inmate and clergy, other religious advisors, or health care professionals shall be approved or denied on a case-by-case basis by staff designated by the institution head.

(8) Inmates, approved attorneys/attorney representatives and pending approval confidential phone call applicants may appeal any departmental policies, staff decisions and institution/facility procedures related to confidential phone calls by following the appeals process as contained in Title 15, Section 3179. Appeals Related to Visiting. Title 15, Section 3179 applies in its entirety.

(h) Telecommunication Device for the Deaf (TDD) telephones shall be made available to inmates with a documented severe hearing impairment for personal, emergency, and confidential calls, which shall be subject to the provisions of this section.

(!) Assistive device telephones and additional time on telephones may be necessary to provide accommodations for inmates and their callers with disabilities.

(2) The facility shall provide for the procedures necessary to ensure effective telephone communications for inmates with disabilities and/or the disabled person(s) with whom they are communicating.

(i) All calls made on inmate telephones shall have an announcement before and at random intervals during the calls stating that the call is from an inmate at a California state correctional facility and is being recorded.

NOTE: Authority cited: Section 5058, Penal Code. Reference: Section 5054, Penal Code.

HISTORY:
1. Amendment of subsection (d) filed 7-29-76; effective thirtieth day thereafter (Register 76, No. 31).
2. Amendment of subsection (c) filed 2-16-83; effective thirtieth day thereafter (Register 83, No. 8).
3. Amendment filed 7-8-93; operative 8-9-93 (Register 93, No. 28).
4. New subsection (k) filed 6-17-94 as an emergency; operative 6-17-94 (Register 94, No. 24). A Certificate of Compliance must be transmitted to OAL by 10-15-94 or emergency language will be repealed by operation of law on the following day.
5. Certificate of Compliance as to 6-17-94 order transmitted with amendments to OAL 10-17-94 and filed 12-1-94 (Register 94, No. 48).
6. Amendment filed 7-28-97 as an emergency; operative 7-28-97 (Register 97, No. 31). Pursuant to Penal Code section 5058(e), a Certificate of Compliance must be transmitted to OAL by 1-5-98 or emergency language will be repealed by operation of law on the following day.
7. Editorial correction of subsection (c)(6) (Register 98, No. 6).
8. Certificate of Compliance as to 7-28-97 order, including further amendments, transmitted to OAL 12-17-97 and filed 2-2-98 (Register 98, No. 6).
9. Amendment of subsections (g)--(g)(l), including renumbering of portion of subsection (g)(l) to new subsection (g)(5), new subsections (g)(l)(A)--(F), renumbering of former subsections (g)(2)--(3) to new subsections (g)(6}-(7) and new subsections (g)(2)--(4) and (g)(8) filed 1-8-2008; operative 2-7-2008 (Register 2008, No. 2).
10. Amendment of subsection (b) filed 9-24-2013 as an emergency; operative 9-24-2013 (Register 2013, No. 39). Pursuant to Penal Code section 5058.3, a Certificate of Compliance must be transmitted to OAL by 3-3-2014 or emergency language will be repealed by operation of law on the following day.
11. Certificate of Compliance as to 9-24-2013 order transmitted to OAL 2-20-2014 and filed 3-24-2014 (Register 2014, No. 13).

**3283. Unauthorized Persons.**

Persons must not be permitted to be on institution grounds or in community correctional centers without a legitimate purpose for being there, nor shall persons be allowed to contact inmates without authorization to do so.

Comment: Former DP-4214, unauthorized persons.

**3284. Unattended Vehicles.**

Ignition switches must be locked and keys must not be left in any unattended vehicle on institution or community correctional center grounds. Under no circumstances may alcoholic beverages, drugs, firearms, toy guns, ammunition, or other items, which are illegal or threaten the security of the institution be left in any unattended vehicle on institution or community correctional center grounds.

Comment: Former DP-4215, unattended vehicles.

**3285. Association with Inmates.**

Persons who are not department employees, but who work with or near inmates are to be informed of the laws and regulations governing association with prison inmates. Such persons will be given, and be asked to read and acknowledge receipt of, Primary Laws, Rules, and Regulations Regarding Conduct and Association with State Prison Inmates, CDC Form 181.

NOTE: Authority cited: section 5058, Penal Code. Reference: section 5054, Penal Code.

HISTORY:
1. Amendment filed 2-24-77; effective thirtieth day thereafter (Register 77, No. 9).
2. Change without regulatory effect amending section and adding Note filed 5-7-98 pursuant to section 100, title 1, California Code of Regulations (Register 98, No. 19).

**3286. Controlling and Reporting Fights.**

When inmates fight, the participants must be separated at once. The participants will be placed in detention, unless in the judgment of a superior officer circumstances do not warrant such action. Employees who observe the fight will prepare a written report stating clearly everything they observed, and will submit this report to the disciplinary officer. The employee who renders the report should, if possible, state who was the aggressor. The report will include the time, place, names of participants, name(s) of aggressor(s), the reason for the fight if it can be ascertained, weapons used if any, names of witnesses, action taken if any, and recommendations to prevent further recurrences.

Comment: Former DP-4217, controlling and reporting fights.

**3287. Cell, Property and Body Inspections.**

(a) Insofar as possible, a cell, room, or dormitory bed area and locker will be thoroughly inspected immediately upon its vacancy and again, if there is a significant time lapse, before another inmate is assigned to the same cell, room or dormitory bed and locker. Such inspections are required and must be recorded for segregation, isolation and security housing unit cells. The purpose of such inspections is to fix responsibility or the absence of responsibility for security and safety hazards and serious contraband found in the cell, room or dormitory area.

(1) Occupied cells, rooms and dormitory areas, including fixtures and lockers, and any personal and state-issued property of the occupant will be inspected on an infrequent and unscheduled basis. More frequent inspections will be conducted in specialized housing units, depending upon the security requirements of the unit and the risk an individual inmate presents to that security.

(2) Cell and property inspections are necessary in order to detect and control serious contraband and to maintain institution security. Such inspections will not be used as a punitive measure nor to harass an inmate. Every reasonable precaution will be taken to avoid damage to personal property and to leave the inmate's quarters and property in good order upon completion of the inspection.

Solares v. Diaz, E.D. Cal. No. 1:20-cv-00323
DEF 000131

(3) An inmate's presence is not required during routine inspections of living quarters and property when the inmate is not or would not otherwise be present. During special inspections or searches initiated because the inmate is suspected of having a specific item or items of contraband in his or her quarters or property, the inmate should be permitted to observe the search when it is reasonably possible and safe to do so.

(4) The inmate will be given a written notice for any item(s) of personal and authorized state-issued property removed from his or her quarters during an inspection and the disposition made of such property. The notice will also list any contraband picked up or any breach of security noted during the inspection, and the follow-up action intended by the inspecting officer.

(b) An inmate is subject to an inspection of his or her person, either clothed or unclothed, when there is a reasonable suspicion to believe the inmate may have unauthorized or dangerous items concealed on his or her person, or that he or she may have been involved in an altercation of any kind. Such inspections may also be a routine requirement for inmate movement into or out of high security risk areas. Random or spot-check inspections of inmates may also be authorized by the institution head to prevent possession and movement of unauthorized or dangerous items and substances into, out of, or within the institution. Visual daily inspections of inmates shall be made to ensure compliance with departmental grooming standards. All such inspections shall be conducted in a professional manner which avoids embarrassment or indignity to the inmate. Whenever possible, unclothed body inspections of inmates shall be conducted outside the view of others.

**(1)** Correctional employees, other than qualified medical staff, shall not conduct unclothed body inspections of inmates of the opposite sex except under emergency conditions with life or death consequences.

(2) Routine inspections of clothed male inmates may be performed by employees of either sex.

(3) Body inspection of clothed female inmates shall be conducted by female correctional employees only, except in emergency situations requiring the immediate search of inmates to avoid the threat of death, escape, or great bodily injury. In such emergency situations, male correctional employees may conduct clothed body inspections only until sufficient numbers of female correctional employees are available to assume critical body search duties.

(4) Male correctional employees shall not, under any circumstances, perform non-emergency body searches of female inmates.

(5) Any inspection of body cavities, other than visual or metal detector inspections, will be conducted in a medical setting under the direct supervision of a physician. Any physical intrusion into body cavities must be performed by a physician, and then only after all less obtrusive methods have failed to bring the inspection to a conclusion.

(c) Inspections of inmate cell or living areas, property, work areas, and body shall be conducted on an unannounced, random basis as directed by the institution head. Such inspections shall be conducted no more frequently than necessary to control contraband, recover missing or stolen property, or maintain proper security of the institution.

(1) Inmates shall be subject to passive air scan searches by a passive alert canine.

(2) Direct Searches of inmates: The canine handler shall make an announcement informing the inmate(s) that he/she is conducting passive air scan searches using a passive alert canine and that the purpose of the scan is to detect illegal drugs. The inmate does not have the right to refuse the search. An inmate who refuses to be searched may be subject to disciplinary action and subject to additional search and urine testing for the presence of drugs.

(A) While inadvertent contact is a possibility, the handler shall not instruct the canine to contact the inmate.

(B) If the inmate seems excessively nervous, the handler shall attempt to reassure the inmate that the procedure is safe.

(3) Results of a Canine Search. If the canine gives a positive canine alert during a passive air scan search of the inmate, the inmate shall submit to an unclothed body search and urinalysis testing.

(A) Any confiscated controlled substance shall be handled as evidence.

(B) Whenever a Canine handler finds contraband, the find shall be reported to the on duty supervisor. The supervisor shall determine what action shall be taken.

(d) A written record shall be maintained of the disposition of contraband and stolen or missing property confiscated as the result of cell, property, or body inspections.

NOTE: Authority cited: Section 5058, Penal Code. Reference: Sections 5054 and 6402, Penal Code; and *Jordan v. Gardner,* 986 F.2d 1521.

HISTORY:

1. Amendment filed 5-13-77; effective thirtieth day thereafter (Register 77, No. 20).
2. Amendment of subsection (a)(3) filed 2-22-79; effective thirtieth day thereafter (Register 79, No. 8).
3. Amendment of subsection (b)(l) filed 8-22-79; effective thirtieth day thereafter (Register 79, No. 34).
4. Amendment of subsection (b) and new subsection (c) and (d) filed 2-8-88; operative 3-9-88 (Register 88, No. 7).
5. Editorial correction of printing error in subsection (b) (Register 92, No. 5).
6. Amendment of subsections (b) and (c) filed 10-16-97 as an emergency; operative 10-16-97 (Register 97, No. 42). Pursuant to Penal Code section 5058(e), a Certificate of Compliance must be transmitted to OAL by 3-25-97 or emergency language will be repealed by operation of law on the following day.
7. Certificate of Compliance as to 10-16-97 order transmitted to OAL 3-23-98 and filed 5-4-98 (Register 98, No. 19).
8. Amendment of subsection (b)(l), new subsections (b)(2)-(4), subsection renumbering and amendment of Note filed 5-26-2005 as an emergency; operative 5-26-2005 (Register 2005, No. 21). Pursuant to Penal Code section :'i058(e), a Certificate of Compliance must be transmitted to OAL by 11-2-2005 or emergency language will be repealed by operation of law on the following day.
9. Certificate of Compliance as to :'i-26-2005 order transmitted to OAL 9-28-2005 and filed 11-1-2005 (Register 2005, No. 44).
10. Amendment of subsection (b) filed 12-21-2009; operative 1-20-2010 (Register 2009, No. 52).
11. Amendment of section heading and new subsections (c)(**1**)-(c)(3)(8) filed 10-8-2014 as an emergency; operative 10-8-2014 (Register 2014, No. 41). Pursuant to Penal Code section 5058.3, a Certificate of Compliance must be transmitted to OAL by 3-17-2015 or emergency language will be repealed by operation of law on the following day.
12. Amendment of section heading and new subsections (c)(l)-(c)(3)(B) refiled 3-17-2015 as an emergency; operative 3-17-2015 (Register 2015, No. 12). Pursuant to Penal Code section 5058.3, a Certificate of Compliance must be transmitted to OAL by 6-15-2015 or emergency language will be repealed by operation of law on the following day.
13. Certificate of Compliance as to 3-17-2015 order, including amendment of Note, transmitted to OAL 6-15-2015 and filed 7-27-2015; amendments effective 7-27-2015 pursuant to Government Code section 11343.4(b)(3) (Register 2015, No. 31).

**3288.   Notice to Public.**

(a) Warning signs will be posted at the entrance to all public and business roadways onto the grounds of institutions, camps and other department facilities where inmates or parolees are housed, and at all sallyports and pedestrian entrances into such facilities. The signs will be in both English and Spanish and will, at a minimum, display the following information:

154

to Penal Code section 5058.3, a Certificate of Compliance must be transmitted to OAL by 7-31-2013 or emergency language will be repealed by operation of law on the following day.

5. Amendment of subsections (g)(l)(B)-(C) refiled 7-29-2013 as an emergency; operative 7-29-2013 (Register 2013, No. 31). Pursuant to Penal Code section 5058.3, a Certificate of Compliance must be transmitted to OAL by 10-28-2013 or emergency language will be repealed by operation of law on the following day.

6. Certificate of Compliance as to 7-29-2013 order, including further amendment of subsections (g)(l)(B) and (g)(l)(C), transmitted to OAL 10-24-2013 and filed 12-9-2013; amendments operative 12-9-2013 pursuant to Government Code section 11343.4(b)(3) (Register 2013, No. 50).

7. Amendment of subsection (b)(3) and repealer of subsection (b)(3)(A) filed 10-17-2014; operative 10-17-2014 pursuant to Government Code section 11343.4(b)(3) (Register 2014, No. 42).

8. Repealer filed 10-9-2017 as an emergency; operative 10-9-2017 (Register 2017, No. 41). Pursuant to Penal Code section 5058.3, a Certificate of Compliance must be transmitted to OAL by 3-19-2018 or emergency language will be repealed by operation of law on the following day.

9. Repealer refiled 3-5-2018 as an emergency; operative 3-19-2018 (Register 2018, No. 10). Pursuant to Penal Code section 5058.3, a Certificate of Compliance must be transmitted to OAL by 8-27-2018 or emergency language will be repealed by operation of law on the following day.

10. Certificate of Compliance as to 3-5-2018 order transmitted to OAL 8-21-2018 and filed 10-3-2018 (Register 2018, No. 40).

## Article 7.    Segregated Housing

### 3335.    Administrative Segregation.

When an inmate's presence in an institution's General Population (GP) inclusive of the Restricted Custody General Population (RCGP) facility presents an immediate threat to the safety of the inmate or others, endangers institution security or jeopardizes the integrity of an investigation of an alleged serious misconduct, criminal activity, or the safety of any person, the inmate shall be immediately removed from the GP and placed in administrative segregation. Administrative segregation may be accomplished by confinement in a designated Administrative Segregation Unit (ASU) or, in an emergency, to any single cell unit capable of providing secure segregation. CDCR staff shall not place inmates into a SHU, ASU, or the SDP solely on the basis of their validation status.

(a)  Non Disciplinary Segregation.

(1)  Non Disciplinary Segregation (NDS) means temporary segregated housing placement for administrative reasons to include but are not limited to:

(A)  ASU placement for investigation of safety concerns not resulting from misconduct warranting a Rules Violation Report.

(B)  Investigation not related to misconduct or criminal activity.

(C)  Being a relative or an associate of a prison staff member.

(D)  Investigation related to being the victim of a Prison Rape Elimination Act (PREA) incident

1. If the placement in NDS is related to being the victim of a PREA incident, the inmate will be afforded all programs, privileges, and education in accordance with section 3044 and subsection 3190(b)(5)(C), of Title 15 of the CCR. If these are restricted, assigned staff shall document: 1) the opportunities that have been limited; 2) the duration of the limitation; and 3) the reasons for such limitations.

2. The facility shall assign such inmates to NDS only until an alternative means of separation from likely abusers can be arranged, and such an assignment shall not ordinarily exceed a period of 30 days. If the period of segregation exceeds 30 days, reasoning shall

be documented on a CDC Form 128-G (Rev. 10/89), Classification Chrono.

3. Every 30 days, the facility shall afford each such inmate with a review by the assigned custody supervisor to determine whether there is a continuing need for segregation from the general population. The review shall be documented on the CDC Form 128-B (Rev. 4/74), General Chrono. If the custody supervisor determines the need for continued segregation no longer exists, the inmate shall be referred to the Institution Classification Committee for a program review.

(2)  Designation as NDS shall be made by ICC.

(A)  Any case designated as NDS, and included in the MHSDS, shall be transferred to an appropriate institution within 72 hours of initial designation.

(b)  The reasons for ordering an inmate's placement in administrative segregation shall be clearly articulated on an CDC Form 114-D (Order and Hearing on Segregated Housing), by the initial segregating authority.

(1)  The CDC Form 114-D shall include sufficient information and detail to allow the inmate to present a written or verbal defense to the stated reason(s) and circumstances for segregation during the classification hearing.

(2)  The authority to order an inmate's initial placement in segregated housing shall not be delegated below the staff level of Correctional Lieutenant or Correctional Counselor II (CCII), except when a lower level staff member is the highest ranking official on duty.

(3)  A copy of the CDC Form 114-D shall be issued to the inmate at the time of placement in administrative segregation by the official ordering placement or by staff at the level of Correctional Lieutenant, CCII or higher.

(A)  When necessary, the official ordering administrative segregation placement shall document whether there is a need for an accommodation to ensure effective communication as defined in section 3000, and if necessary, how it was provided, how it was achieved, and how they were satisfied effective communication was accomplished.

(4)  Administratively segregated inmate's returning to their endorsed institution from out-to-court or out-to-medical shall not require an updated CDC Form 114-D unless the inmate's next scheduled ICC hearing was missed or the circumstances for segregation have changed.

(c)  In addition to the CDC Form 114-D, the initial segregation authority or designee shall prepare a CDCR Form 114-Al (Rev. 10/98), Inmate Segregation Profile, which is hereby incorporated by reference, for each inmate being placed on administrative segregation status.

(d)  A staff member at the rank of Captain, Correctional Counselor III (CCIII) or higher may rescind the placement and order the release of an inmate in administrative segregation at any time prior to the initial Institution Classification Committee (ICC).

(e)  All classification committee actions shall be documented, including a specific record of the inmate's participation, an explanation of the reason(s), and the information and evidence relied upon for the action taken. The inmate shall be provided copies of the completed forms relied upon in making the decisions affecting the inmate.

NOTE: Authority cited: Section 5058, Penal Code. Reference: Sections 5054 and 5068, Penal Code; 28 CFR Sections 115.42 and 115.43; *Wright v. Enomoto,* (1976) 462 F.Supp. 397; and *Toussaint v. McCarthy* (9th Cir. 1986) 801 F.2d 1080, cert. denied, 481 U.S. 1069.

HISTORY:

1. Repealer of Article 7 (Sections 3340-3357) and new Article 7 (Sections :rn:"i-334:"i) filed 4-18-80; effective thirtieth day thereaf-

Solares v. Diaz, E.D. Cal. No. 1:20-cv-00323
DEF 000133

ter (Register 80 No. 16). For prior history see Registers 76, No. 31; 77, No. 9; 78, No. 25; and 79, No. 34.

2. Amendment of subsection (b) filed 9-24-81; effective thirtieth day thereafter (Register 81, No. 39).

3. Amendment filed 8-7-87 as an emergency; operative 8-7-87 (Register 87, No. 34). A Certificate of Compliance must be transmitted to OAL within 120 days or emergency language will be repealed on 12-7-87.

4. Certificate of Compliance as to 8-7-87 order transmitted to OAL 12-4-87; disapproved by OAL (Register 88, No. 16).

5. Amendment filed 1-4-88 as an emergency; operative 1-4-88 (Register 88, No. 16). A Certificate of Compliance must be transmitted to OAL within 120 days or emergency language will be repealed on 5-3-88.

6. Certificate of Compliance as to 1-4-88 order transmitted to OAL 5-3-88; disapproved by OAL (Register 88, No. 24).

7. Amendment filed 6-2-88 as an emergency; operative 6-2-88 (Register 88, No. 24). A Certificate of Compliance must be transmitted to OAL within 120 days or emergency language will be repealed on 9-30-88.

8. Certificate of Compliance transmitted to OAL 9-26-88 and filed 10-26-88 (Register 88, No. 50).

9. Amendment of article heading and subsection (c), repealer of subsections (c)(l)-(c)(l)(B), new subsections (d)-(i) and amendment of Note filed 6-15-2005 as an emergency pursuant to Penal Code section 5058.3; operative 6-15-2005 (Register 2005, No. 24). A Certificate of Compliance must be transmitted to OAL by 11-22-2005 or emergency language will be repealed by operation of law on the following day.

10. Editorial correction of subsection (d)(3) and History 9 (Register 2005, No. 50).

11. Certificate of Compliance as to 6-15-2005 order transmitted to OAL 10-31-2005 and filed 12-15-2005 (Register 2005, No. 50).

12. Change without regulatory effect amending subsection (d)(3) filed 5-4-2009 pursuant to section 100, title 1, California Code of Regulations (Register 2009, No. 19).

13. Change without regulatory effect amending subsection (g) filed 5-11-2011 pursuant to section 100, title 1, California Code of Regulations (Register 2011, No. 19).

14. New subsections (b)-(b)(3) and subsection relettering tiled 9-24-2013 as an emergency; operative 9-24-2013 (Register 2013, No. 39). Pursuant to Penal Code section 5058.3, a Certificate of Compliance must be transmitted to OAL by 3-3-2014 or emergency language will be repealed by operation of law on the following day.

15. Certificate of Compliance as to 9-24-2013 order, including further amendment of subsections (b)-(b)(1), transmitted to OAL 2-20-2014 and filed 3-24-2014; amendments operative 3-24-2014 pursuant to Government Code section 11343.4(b)(3) (Register 2014, No. 13).

16. Amendment of subsections (e)(2)-(3) and (h) filed 10-17-2014; operative 10-17-2014 pursuant to Government Code section 11343.4(b)(3) (Register 2014, No. 42).

17. Amendment of article heading, repealer of subsections (a)-(i), new first paragraph, new subsections (a)-(d) and subsection relettering filed 6-1-2015 as an emergency; operative 6-1-2015 (Register 2015, No. 23). Pursuant to Penal Code section 5058.3, a Certificate of Compliance must be transmitted to OAL by 11-9-2015 or emergency language will be repealed by operation of law on the following day.

18. Certificate of Compliance as to 6-1-2015 order, including further amendment of subsections (b) and (c), transmitted to OAL 10-19-2015 and filed 12-3-2015; amendments effective 12-3-2015 pursuant to Government Code section 11343.4(b)(3) (Register 2015, No. 49).

19. New subsections (a)(l)(D)-(a)(l)(D)3. and amendment of Note filed 10-20-2016; operative 10-20-2016 pursuant to Government Code section 11343.4(b)(3) (Register 2016, No. 43).

20. Amendment of first paragraph and subsections (a)(l)-(a)(l)(A) filed 10-9-2017 as an emergency; operative 10-9-2017 (Register 2017, No. 41). Pursuant to Penal Code section 5058.3, a Certificate of Compliance must be transmitted to OAL by 3-19-2018 or

emergency language will be repealed by operation of law on the following day.

21. Amendment of first paragraph and subsections (a)(l)-(a)(l)(A) refiled 3-5-2018 as an emergency; operative 3-19-2018 (Register 2018, No. 10). Pursuant to Penal Code section 5058.3, a Certificate of Compliance must be transmitted to OAL by 8-27-2018 or emergency language will be repealed by operation of law on the following day.

22. Certificate of Compliance as to 3-5-2018 order transmitted to OAL 8-21-2018 and filed I0-3-2018 (Register 2018, No. 40).

**3335.5. Exclusions.**

Removal of an inmate from the General Population (GP) for the reasons described in this section is not considered administrative segregation and is specifically excluded from the other provisions of this article.

(a) Medical. When an inmate is removed from the GP for medical or psychiatric reasons by order of healthcare staff and the inmate's placement is in a medical setting or in other housing as a medical quarantine, the inmate will not be deemed as segregated for the purpose of this article. Administratively segregated inmates with healthcare concerns shall remain on administrative segregation status, regardless of housing.

(b) Lay-Over. Newly received inmates in transit or lay-over status may be restricted to assigned quarters for that purpose. Such restrictions should not be more confining than is required for institution security and the safety of persons, nor for a period longer than the minimum time required to evaluate the safety and security factors and reassignment to more appropriate housing. If administrative segregation is used for this purpose, such placement shall be in accordance with the provisions of Subchapter 4, Article 7.

(c) Orientation. Newly received inmates may be restricted to assigned quarters for that purpose. Such restrictions should not be more confining than is required for institution security and the safety of persons, nor for a period longer than the minimum time required to evaluate the safety and security factors and reassignment to more appropriate housing. If administrative segregation is used for this purpose, such placement shall be in accordance with the provisions of Subchapter 4, Article 7.

(d) Disciplinary Detention. Placement in disciplinary detention as an ordered action of a disciplinary hearing is not subject to the provisions of this article.

(e) Confinement to Quarters. Confinement to quarters as an ordered action of a disciplinary hearing is not subject to the provisions of this article.

NOTE: Authority cited: Section 5058, Penal Code. Reference: Section 5054, Penal Code.

HISTORY:
1. Renumbering and amendment of former section 3340 to new section 3335.5 filed 6-1-2015 as an emergency; operative 6-1-2015 (Register 2015, No. 23). Pursuant to Penal Code section 5058.3, a Certificate of Compliance must be transmitted to OAL by 11-9-2015 or emergency language will be repealed by operation of law on the following day.

2. Certificate of Compliance as to 6-1-2015 order transmitted to OAL 10-19-2015 and filed 12-3-2015 (Register 2015, No. 49).

**3336. Administrative Review of Administrative Segregation Unit Placement.**

(a) The purpose of the administrative review is to determine if the reason(s) for administrative segregation placement is appropriate and whether continued administrative segregation status retention is necessary, in accordance with the provisions of this article.

(b) An inmate's administrative segregation placement shall be reviewed for retention or release by staff at the level of Captain,

Solares v. Diaz, E.D. Cal. No. 1:20-cv-00323
DEF 000134

CCIII or higher, on the first business day following such placement. The review shall include: the inmate's case factors, reason(s) for segregation, and an interview with the inmate unless the inmate refuses to participate.

(1) Administrative reviews shall not be conducted by the staff member who authorized initial administrative segregation placement.

(2) An acting Captain may conduct an administrative review; however, in this case, an Associate Warden (AW) shall conduct a subsequent review that same day. If the reviewing AW is also in an acting capacity, their permanent rank shall be no lower than Captain or CCIII.

(3) When required, the Administrative Reviewer shall document the need for effective communication accommodation, how it was provided, how it was achieved, and how they were satisfied effective communication was accomplished.

(4) The inmate shall be released to the GP if the Administrative Reviewer deems continued administrative segregation placement unnecessary.

(5) If administrative segregation placement is deemed appropriate, the Administrative Reviewer shall retain the inmate in administrative segregation and address the appropriate cell status pending the ICC hearing.

(6) The decision rendered shall be documented on the CDC Form 114-D.

(c) The Administrative Reviewer shall ensure the following procedural safeguards are afforded to the inmate in anticipation of the ICC hearing and that any necessary efforts to ensure effective communication are provided and documented.

(1) Staff Assistance. The Administrative Reviewer shall determine the need for a Staff Assistant (SA) in accordance with section 3340 and document on the CDC Form 114-D.

(2) Investigative Employee (IE). If an inmate requests witnesses and/or the assistance of an IE, the Administrative Reviewer may assign an IE in accordance with section 3340 and document on the CDC Form 114-D.

(3) Inmate Waiver. An inmate may waive their right to the 72-hour preparation time in writing by signing and acknowledging the waiver on the CDC Form 114-D, pursuant to subsection 3337(a)(2).

NOTE: Authority cited: Section 5058, Penal Code. Reference: Section 5054, Penal Code.

HISTORY:

1. Change without regulatory effect amending first paragraph filed 3-22-2001 pursuant to section 100, title 1, California Code of Regulations (Register 2001, No. 12).
2. Amendment of section heading and repealer and new section filed 6-1-2015 as an emergency; operative 6-1-2015 (Register 2015, No. 23). Pursuant to Penal Code section 5058.3, a Certificate of Compliance must be transmitted to OAL by 11-9-2015 or emergency language will be repealed by operation of law on the following day.
3. Certificate of Compliance as to 6-1-2015 order transmitted to OAL 10-19-2015 and filed 12-3-2015 (Register 2015, No. 49).

**3337. Classification Hearing of Administrative Segregation Placements.**

(a) The need to retain an inmate in administrative segregation shall be determined by the ICC.

(1) The initial ICC hearing shall be held within 10 calendar days after the date the inmate was initially placed in administrative segregation. Voluntary extension of this time frame by the inmate is not permitted.

(2) The inmate shall be allowed at least 72 hours to prepare for the ICC classification hearing. However, the inmate may waive this procedural safeguard, after the Administrative Reviewer considers the need for SA and the inmate does not require a SA.

(3) In addition to a copy of the CDC Form 114-D, provided to the inmate at the time of placement in administrative segregation in accordance with subsection 3335(b)(3), the inmate shall be provided copies of all additional documentation concerning the reasons for administrative segregation placement at least 24 hours prior to the ICC hearing. Confidential information pertaining to the case shall be afforded to the inmate in accordance with subsection 332l(b)(3).

(4) Inmates not requiring a staff assistant, in accordance with section 3340, may waive the 24-hour period for documentation review. Waivers shall be formally noted in the CDC Form 128-G (Rev. 10/89).

(5) Exceptions to the inmate's physical presence at the hearing shall be permitted in accordance with subsections 3320(g) or 3375(f)(3). The reasons for any hearing conducted without the presence of the inmate shall be recorded within the CDC Form 128-G (Rev. 10/89).

(6) If the inmate refuses or is unable to attend the hearing, a staff member shall query the inmate on behalf of the classification committee and convey all relevant information to the committee to consider in making their decision and shall be recorded within the CDC Form 128-G (Rev. 10/89).

(7) The SA, if one is assigned, shall be at the hearing even if the inmate is not present.

(b) The primary purpose of the initial ICC hearing is to determine the need for continued segregation. Consistent with the criteria set forth in section 3335, the ICC review shall be based on the documented case-specific circumstances of the CDC Form 114-D and any other disciplinary, IE report or other available information that may impact placement. The classification c01mnittee shall ensure that all applicable procedural safeguards are uniformly applied to each inmate placed in administrative segregation and record their findings on a CDC Form 128-G (Rev. 10/89) in accordance with subsection 3375(g), including any evidence or documentation relied upon, with a copy issued to the inmate.

(1) The classification committee shall consider all available information, including inmate comments, when determining the appropriate exercise yard group and any housing restrictions.

(2) The inmate's yard assignment and housing status shall be reviewed at each ICC appearance and modified as necessary.

(c) Any inmate retained in administrative segregation at the initial ICC hearing shall be presented to a CSR within 30 days of the hearing date for review and approval. Subsequent ICC reviews shall proceed in accordance with the following timelines, considering any applicable projected Minimum Eligible Release Date (MERO) as defined in Section 3000, until the inmate is released to the GP:

(1) At intervals of not more than 180-days: when a pending Security Housing Unit (SHU) assessable Rules Violation Report (RVR) is postponed pending a court proceeding or referral to the District Attorney (DA) for possible prosecution. Administrative segregation extension requests specific to pending disciplinary matters shall identify the inmate's intent to postpone the disciplinary hearing, as well as, the status of the pending DA referral. Upon resolution of such matters, an ICC shall review the inmate's case within 14 calendar days. Inmates who have postponed their RVR pending a court proceeding or a referral to the DA shall not be retained in ASU past the anticipated projected MERO unless ICC has reason to believe based on the inmate's disciplinary history and other case factors, including the existence of overwhelming evidence supporting an immediate threat to the security of the institution or the safety of others that referral to the Departmental Review Board is necessary for: 1) assessment of administrative SHU status for the safety and

Solares v. Diaz, E.D. Cal. No. 1:20-cv-00323
DEF 000135

security of the institution or persons, following the adjudication of the RVR; or 2) the inmate's safety needs will require appropriate housing determination. In these cases a new CDC Form 114-D shall be immediately prepared and issued, clearly articulating the reasons for continued retention, in accordance with section 3335.

(2) At intervals of not more than 90 days: when an administrative segregation inmate is pending a GP transfer.

(3) At intervals of not more than 90 days: until a SHU assessable RVR is adjudicated and the matter is not pending referral for prosecution. Upon resolution of such matters, an ICC shall review the inmate's case within 14 calendar days.

(4) At intervals of not more than 90 days: pending completion of an investigation into the safety of any person, institutional security, serious misconduct or criminal activity. Should the completed investigation result in the issuance of a RVR and/or referral to the DA for criminal prosecution, the ICC shall review the case in accordance with the schedule set forth in subsections (1) or (3) above. Upon resolution of such matters, an ICC shall review the inmate's case within 14 calendar days.

(5) At the pre-MERD and at intervals of not more than 90 days: when retention is warranted due to the inmate being assigned to the Security Threat Group (STG) Step Down Program **(SDP)** and transfer to the SHU is pending.

(6) At intervals of not more than 90 days: upon receipt of an inmate's request to initiate the Debrief Process, in accordance with CCR section 3378.5.

(d) Subsequent ICC reviews shall be in accordance with subsection (c) of this section. All cases shall be presented to the CSR prior to the expiration of a previously approved CSR extension.

(e) Inmates in administrative segregation who have an approved SHU term, but are pending other unresolved case considerations, shall be reviewed by the ICC in accordance with subsection 3341.8, Security Housing Unit/Psychiatric Services Unit Classification Hearings.

NOTE: Authority cited: Section 5058, Penal Code. Reference: Section 5054, Penal Code; *Wright v. Enomoto,* (1976) 462 F.Supp. 397; and *Toussaint v. McCarthy* (9th Cir. 1986) 801 F.2d 1080, cert. denied, 481 U.S. 1069.

HISTORY:
1. Amendment of section heading, repealer and new section and amendment of Note filed 6-1-201:'i as an emergency; operative 6-1-2015 (Register 2015, No. 23). Pursuant to Penal Code section 5058.3, a Certificate of Compliance must be transmitted to OAL by 11-9-2015 or emergency language will be repealed by operation of law on the following day.
2. Certificate of Compliance as to 6-1-2015 order, including further amendment of subsections (a)(4)-(6) and (b), transmitted to OAL 10-19-2015 and filed 12-3-2015; amendments effective 12-3-2015 pursuant to Government Code section 1 1343.4(b)(3) (Register 2015, No. 49).
3. Amendment of subsections (c)(l) and (c)(4) and new subsections (c)(5) and (c)(6) filed 10-9-2017 as an emergency; operative 10-9-2017 (Register 2017, No. 41). Pursuant to Penal Code section 5058.3, a Certificate of Compliance must be transmitted to OAL by 3-19-2018 or emergency language will be repealed by operation of law on the following day.
4. Amendment of subsections (c)(l) and (c)(4) and new subsections (c)(:'i) and (c)(6) refiled 3-:'i-2018 as an emergency; operative 3-19-2018 (Register 2018, No. 10). Pursuant to Penal Code section 5058.3, a Certificate of Compliance must be transmitted to OAL by 8-27-2018 or emergency language will be repealed by operation of law on the following day.
5. Certificate of Compliance as to 3-:'i-2018 order, including amendment of subsection (c)(l), transmitted to OAL 8-21-2018 and filed 10-3-2018; amendments effective 10-3-2018 pursuant to Government Code section 1l343.4(b)(3) (Register 2018, No. 40).

### 3338. Amendment to Reasons for Segregation.

(a) When the initial reason(s) for segregation has been resolved, but additional circumstances exist warranting continued administrative segregation placement, a new CDC Fonn 114-D shall be immediately prepared and issued, clearly articulating the reasons for continued retention, in accordance with section 3335.

(I) An CDC Form 114-D issued for purposes of retaining an inmate in segregated housing (ASU/SHU/Psychiatric Services Unit (PSU)) shall not require an Administrative Review.

(2) The official ordering retention shall ensure all procedural safeguards have been provided, in accordance with subsection 3336(c).

(3) The ICC shall be the sole authority permitted to effect a placement decision under the provisions of this section.

(b) For retention purposes, the CDC Form 114-D shall include:

(I) The current reason(s) for segregation, and any resolution of such placement.

(2) The new reason(s) for retention in segregated housing in accordance with section 3335.

(3) When necessary, the official issuing the CDC Form 114-D for administrative segregation retention shall document the need for effective communication accommodation if any, as defined in section 3000, how it was provided, how it was achieved and how they were satisfied effective communication was accomplished.

(c) ICC hearings on CDC Form 114-D's, retaining inmates in ASU/SHU/PSU shall be in accordance with section 3337.

NOTE: Authority cited: Section 5058, Penal Code. Reference: Section 5054, Penal Code; and *Taylor v. Rushen* (N.D. Cal.) L-80-0139 SAW.

HISTORY:
1. Amendment of subsections (a)(2) and (a) (3) filed 3-2-83; effective thirtieth day thereafter (Register 83, No. 12).
2. Change without regulatory effect amending subsections (c) and (g) filed 5-7-96; operative 6-6-96 (Register 96, No. 19).
3. Change without regulatory effect amending subsection (b) filed 7-30-2001 pursuant to section 100, title l, California Code of Regulations (Register 2001, No. 31).
4. Change without regulatory effect amending subsection (b) filed 8-6-2001 pursuant to section 100, title 1, California Code of Regulations (Register 2001, No. 32).
5. Change without regulatory effect amending subsections (c) and (g) filed 3-11-2013 pursuant to section 100, title 1, California Code of Regulations (Register 2013, No. 11).
6. Amendment of section heading, repealer and new section and amendment of Note filed 6-1-2015 as an emergency; operative 6-1-2015 (Register 2015, No. 23). Pursuant to Penal Code section 5058.3, a Certificate of Compliance must be transmitted to OAL by 11-9-2015 or emergency language will be repealed by operation of law on the following day.
7. Certificate of Compliance as to 6-1-2015 order transmitted to OAL 10-19-2015 and filed 12-3-2015 (Register 2015, No. 49).

### 3339. Release from Administrative Segregation.

(a) Release from administrative segregation shall occur at the earliest possible time in keeping with the inmate's case factors and reasons for the inmate's placement in administrative segregation.

(b) When releasing or rescinding an initial administrative segregation placement prior to the initial ICC, prior to release, the releasing authority shall:

(I) Consult with the Captain or designee from the facility where the inmate is to be housed.

(2) Explain the basis and reasoning for the decision on the CDC Form 114-D.

(3) Provide the inmate a copy of the CDC Form 114-D.

(c) Inmates released from administrative segregation are considered GP inmates and are no longer subject to the requirements of this article. If immediate release to the GP is impractical for reasons

identified in section 3335, a new CDC Form 114-D shall be issued and addressed in accordance with sections 3335, 3336 and 3337.

NOTE: Authority cited: Section 5058, Penal Code. Reference: Section 5054, Penal Code; and *Taylor v. Rushen* (N.D. Cal.) L-80-0139 SAW.

**HISTORY:**
1. Repealer and new section filed 3-2-83; effective thirtieth day thereafter (Register 83, No. 12).
2. Editorial correction of printing error in subsection (b)(2) (Register 92, No. 5).
3. Amendment of section heading and repealer and new section filed 6-1-2015 as an emergency; operative 6-1-2015 (Register 2015, No. 23). Pursuant to Penal Code section 5058.3, a Certificate of Compliance must be transmitted to OAL by 11-9-2015 or emergency language will be repealed by operation of law on the following day.
4. Certificate of Compliance as to 6-1-2015 order transmitted to OAL 10-19-201.'i and tiled 12-3-2015 (Register 2015, No. 49).

**3340. Assistance to Inmates for Administrative Segregation Classification Hearings.**

The Administrative Reviewer of the CDC Form 114-D, or official ordering an inmate retained in administrative segregation, shall determine the need for providing assistance to inmates placed or retained in administrative segregation. Such assistance may be in the form of a Staff Assistant (SA) or an Investigative Employee (IE). Only staff trained in the role and responsibilities of a SA or IE may be assigned. The duties and functions of a staff member assigned to assist an inmate in a classification hearing based upon a CDC Form 114-D will be separate from those described in section 3318 for a disciplinary hearing.

(a) A SA shall be assigned if:

(1) The inmate is illiterate.

(2) The inmate has difficulty reading, writing or speaking English. If a SA is necessary for the purpose of language interpretation, but is not fluent in the inmate's language, a certified interpreter shall also be provided.

(3) The issues are sufficiently complex to make it unlikely that the inmate can understand the issues or the ICC hearing process.

(4) The inmate is included in the Mental Health Services Delivery System (MHSDS), is Developmentally Disabled, or the circumstances surrounding administrative segregation placement involve behavior of a bizarre or unusual nature.

(A) The ICC shall assess the ongoing appropriateness for a SA assigned to inmates in the MHSDS Correctional Clinical Case Management System (CCCMS) level of care while housed in administrative segregation. In such cases the ICC shall determine whether the inmate is capable of comprehending the issues being presented based upon a clinical assessment in accordance with subsection 3375(g)(3), and presented at the time of the hearing.

(b) An inmate may refuse to accept the first SA at the time of assignment. If the inmate refuses the SA at the time of initial assignment, a second staff assistant shall be assigned. Any decision to substitute the assigned SA subsequent to the administrative review shall require notification to the inmate in writing.

(c) Inmates may refuse to accept the assignment of a second SA or waive a previous SA assignment unless:

(1) It is determined by the Administrative Reviewer that a fair hearing cannot otherwise be held.

(2) The inmate meets criteria in accordance with subsection (a)(4) of this section.

(d) The assigned SA shall:

(1) Meet with the inmate at least 24 hours prior to the classification hearing, inform the inmate of the role of the SA, explain their rights and the purpose and procedure of the classification hearing.

(2) Address the need for effective communication, how it was provided, how it was achieved and how the SA was satisfied effective communication was accomplished, which shall be documented within the CDC Form 128-G (Rev. 10/89) in accordance to subsection 3375(g)(l)(E).

(3) Provide assistance to the inmate by being present during the IE's interview of the inmate.

(4) Inform the inmate of the following due process rights afforded during the classification hearing process:

A. The right to 72 hours time to prepare response for the ICC hearing;

B. The right to a fair and impartial hearing;

C. The right to request witnesses and documentary evidence;

D. The right to a written decision documenting the evidence or information relied upon for the decision.

(5) Advise and assist in the inmate's preparation for a classification hearing. However, the SA shall refrain from giving legal counsel or specifying the position the inmate should take in the classification hearing.

(6) Keep confidential any information the inmate may disclose concerning the charges for which the SA was assigned.

(7) Inform the inmate that all evidence and information obtained and considered or developed in the classification process may be used in court if the same charges have been or are to be referred to the district attorney for possible criminal prosecution.

(8) If the SA becomes aware that the inmate is contemplating future criminal conduct, the SA shall disclose this information if necessary to protect potential victims and prevent the contemplated crime.

(9) Assist the inmate in presenting the inmate's position, in person, at the hearing.

(10) Make reasonable effort to ensure that the inmate's position is understood.

(11) Make reasonable effort to ensure the inmate understands and comprehends the decision reached.

(12) Perform the above duties for inmates in conjunction with all classification reviews.

(e) The SA assigned and assisting the inmate in the manner described above shall be the same staff member who appears with the inmate at the classification hearing.

(f) Assignment of a SA shall not preclude assignment of an IE.

(g) An IE may be assigned if:

(1) The reasoning for an inmate's placement in administrative segregation is for non-disciplinary reasons and the inmate requests in writing the presence of witnesses or submission of documentary evidence at a classification heming on the reason or need for retention in segregated housing.

(A) When an inmate's administrative segregation placement is for non-disciplinary reasons, the Administrative Reviewer will consider all available evidence or information relating to the validity of the reasons documented for administrative segregation placement. Denial of an IE, witnesses or evidence requested by the inmate shall be on the basis of legitimate penalogical interest and documented on the CDC Form 114-D.

(B) The reason for an inmate's placement in administrative segregation is a serious disciplinary matter resulting in the issuance of a Rules Violation Report and/or a referral to the district attorney for criminal prosecution, the classification committee will assume the alleged misconduct or criminal activity to be factual as documented. In such cases, the services of an IE, witnesses or additional evidence shall be reserved for the disciplinary hearing, but denied for purposes of the initial ICC.

(h) Based upon the findings of the investigative employee, the initial hearing shall permit the inmate to present witnesses and

Solares v. Diaz, E.D. Cal. No. 1:20-cv-00323
DEF 000137

documentary evidence unless the chairperson of the committee determines in good faith that permitting such evidence will be unduly hazardous to the safety and/or security of the institution.

(i) Assignment of an IE shall not preclude assignment of a SA.

U) The inmate may not select the investigative employee, but may object to the one assigned and provide, in writing to the Administrative Reviewer, the reasons for the objection. The Administrative Reviewer shall evaluate the inmate's objection(s) and, if determined to be reasonable, assign an alternate investigative employee to complete the investigation. If the Administrative Reviewer determines that the inmate's objections are not reasonable, the original investigative employee shall complete the investigation. The inmate's objection must be provided prior to the beginning of the investigation. The Administrative Reviewer shall note on the CDC Form 114-D the decision to deny or approve a request, and if denied, explain the reason(s) for denial.

(k) The assigned IE shall:

(1) If applicable, coordinate with the inmate's assigned SA to ensure the SA is present during any questioning by the IE.

(2) Document all effective communication efforts, as necessary; including the need for effective communication, how it was provided, how it was achieved and how they were satisfied effective communication was accomplished.

(3) Interview the inmate, to include the inmate's statement and any relevant questions for witnesses with first-hand knowledge of the circumstances warranting the inmate's segregation. An IE is not subject to the confidentiality provisions of the SA in accordance with subsection 3340(d)(6) and shall not withhold any information received from the inmate. The inmate's submission of questions for witnesses does not preclude the IE from asking other relevant questions of the witnesses that may be of assistance to the classification committee in making decisions regarding the reason(s) for segregation.

(4) It is the inmate's responsibility to provide information to the IE in order to assist in identifying any relevant witness(es) the inmate requests to be interviewed.

(5) Immediately document the investigative findings in a report, including the name of the SA and, if applicable, an interpreter present during interviews; and forward the completed report to the ICC.

(6) Provide the inmate a copy of the IE report, any non-confidential reports and information relevant to the segregation decision and/or administrative segregation placement, within 24 hours prior to the ICC.

(7) Witnesses and Evidence. The authority to grant or deny the appearance of witnesses shall be reserved for the ICC.

(8) When an IE provides assistance to an inmate, in lieu of or in addition to that provided by a SA the IE shall do so as a representative of the official who will conduct the classification hearing rather than as a representative of the inmate.

NOTE: Authority cited: Section 5058, Penal Code. Reference: Section 5054, Penal Code; *Coleman v. Wilson* 912 F. Supp. 1282 (E.D. Cal. 1995); and *Clark v. California* 123 F. 3d 1267 (9th Cir. 1997).

HISTORY:

1. Renumbering of former section 3340 to section 3335.5 and new section 3340 filed 6-1-2015 as an emergency; operative 6-1-2015 (Register 2015, No. 23). Pursuant to Penal Code section 5058.3, a Certificate of Compliance must be transmitted to OAL by 11-9-2015 or emergency language will be repealed by operation of law on the following day.

2. Certificate of Compliance as to 6-1-2015 order, including amendment of subsection (d)(2), transmitted to OAL 10-19-2015 and filed 12-3-2015; amendments effective 12-3-2015 pursuant to Government Code section 11343.4(b)(3) (Register 2015, No. 49).

3. Amendment of subsection (g)(l)(B) filed 6-2-2016 as an emergency; operative 6-2-2016 (Register 2016, No. 23). Pursuant to Penal Code sectil)n 5058.3, a Certificate of Compliance must he

transmitted to OAL by 11-9-2016 or emergency language will be repealed by operation of law on the following day.

4. Certificate of Compliance as to 6-2-2016 order transmitted to OAL 11-7-2016 and filed 12-22-2016 (Register 2016, No. 52).

**3341. Segregated Program Housing Units.**

(a) Segregated Program Housing Units (SPHU) are designated for extended term programming of inmates not suited for housing in the general population. They are specialized programming units with established placement criteria. Placement into these units requires approval by a Classification Staff Representative (CSR) or by the Departmental Review Board (DRB) if the inmate is being assessed an Administrative Security Housing Unit (SHU) term, on the basis of classification committee rec01mnendations and referrals.

(b) With the exception of Protective Housing Unit (PHU) and as otherwise specified in subsections section 3378.3(b)(l) through 3378.3(b)(3), SPHU placement for administrative SHU purposes shall be reviewed by ICC at least every 180 days, or sooner as directed by a CSR. Prior to ICC's annual review, staff shall evaluate the inmate's program participation, current case factors, and his desire to leave administrative SHU housing. Staff will inform the inmate of other housing and program options such as the Restricted Custody General Population (RCGP), Debrief Processing Unit (DPU), or general population, for which his case factors may allow placement. Staff shall document this discussion on a CDC Form 128-B (Rev. 4/74), General Chrono including his interest in other alternative housing options and forward to ICC for consideration at the annual review. ICC's annual review shall result in referral to DRB if continued segregation is deemed appropriate. The DRB shall annually assess the inmate's case factors and disciplinary behavior and shall articulate the basis for continued retention on Administrative SHU status. For determinate SHU inmates, ICC reviews shall be no less frequently than every 180 days following their initial SHU annual review, or sooner as directed by a CSR. The purpose of such reviews is to evaluate the inmate's case factors to determine if specialized housing continues to be the most appropriate and least restrictive placement option commensurate with any existing threat to institutional security or the safety or any person.

(c) Special circumstances or exceptions to the placement criteria for SPHU must be referred to and decided by the DRB in accordance with section 3376.1.

(d) The ICC may release an inmate from PSU/SHU to an available and appropriate bed pending CSR review for alternate placement consideration at another institution. Unless otherwise specified in this section, if the current institution has other available and appropriate non SPHU housing, the ICC may release the inmate to that program pending C&PR review who has local endorsement authority in this circumstance.

(e) When an inmate is removed from the SHU Step Down Program (SDP) due to the need for in-patient medical or mental health treatment and a determination is made that the inmate has completed the required treatment, the inmate shall be referred to the ICC for consideration of return to the SDP. ICC shall award credit for the time spent in this alternate housing, toward completion of the SDP.

NOTE: Authority cited: Section 5058, Penal Code. Reference: Sections 5054 and 5068, Penal Code; *Sandin v. Connor* (1995) 515 U.S. 472; *Toussaint v. McCarthy* (9th Cir. 1990) 926 F.2d 800; and *Toussaint v. Yockey* (9th Cir. 1984) 722 F.2d 1490.

HISTORY:

1. Editorial correction removing extraneous text (Register 97, No. 5).

2. Change without regulatory effect amending section filed 1-29-97 pursuant to section 100, title 1, California Code of Regulations (Register 97, No. 5).

Solares v. Diaz, E.D. Cal. No. 1:20-cv-00323
DEF 000138

3. Repealer and new section filed 6-1-2015 as an emergency; operative 6-1-2015 (Register 2015, No. 23). Pursuant to Penal Code section 5058.3, a Certificate of Compliance must be transmitted to **OAL** by 11-9-2015 or emergency language will be repealed by operation of law on the following day.

4. Certificate of Compliance as to 6-1-2015 order transmitted to OAL 10-19-2015 and filed 12-3-2015 (Register 2015, No. 49).

5. Amendment of subsections (a)-(c) and new subsection (e) filed 10-9-2017 as an emergency; operative 10-9-2017 (Register 2017, No. 41). Pursuant to Penal Code section 5058.3, a Certificate of Compliance must be transmitted to OAL by 3-19-2018 or emergency language will be repealed by operation of law on the following day.

6. Amendment of subsections (a)-(c) and new subsection (e) refiled 3-5-2018 as an emergency; operative 3-19-2018 (Register 2018, No. 10). Pursuant to Penal Code section 5058.3, a Certificate of Compliance must be transmitted to OAL by 8-27-2018 or emergency language will be repealed by operation of law on the following day.

7. Certificate of Compliance as to 3-5-2018 order transmitted to OAL 8-21-2018 and filed 10-3-2018 (Register 2018, No. 40).

### 3341.1. Protective Housing Unit.

Protective Housing Unit (PHU). A PHU houses inmates whose safety would be endangered by general population inmates and provides secure housing and care for inmates with safety concerns of such magnitude, that no other viable housing options are available.

(a) An inmate may be placed in PHU in accordance with the following criteria:

(I) The inmate does not require segregated housing placement for reasons other than protection.

(2) The inmate is not documented as an affiliate of an STG-1.

(3) A classification committee has determined that the inmate does not pose a threat to the safety or security of other inmates similarly housed in the PHU.

(4) The inmate has specific, documented and verified safety and/or enemy concerns, likely to and capable of causing the inrtnate great bodily injury if placed in the general population.

(5) The inmate has notoriety likely to result in great bodily injury to the inmate if placed in general population.

(6) There is no alternative placement available that can both ensure the inmate's safety and provide the level of custody required for the appropriate control of the inmate's movement.

(b) The inmate's uncorroborated personal report, the nature of their commitment offense or a record of prior protective custody shall not be the sole basis for protective housing unit placement.

(c) The DRB shall retain sole authority for the placement and removal of inmates from PHU.

NOTE Authority cited: Section 5058, Penal Code. Reference: Sections 5054 and 5068, Penal Code.

HISTORY:

1. New section tiled 6-1-2015 as an emergency; operative 6-1-2015 (Register 2015, No. 23). Pursuant to Penal Code section 5058.3, a Certificate of Compliance must be transmitted to OAL by 11-9-2015 or emergency language will be repealed by operation of law on the following day.

2. Certificate of Compliance as to 6-1-2015 order transmitted to OAL 10-19-2015 and filed 12-3-2015 (Register 2015, No. 49).

### 3341.2. Psychiatric Services Unit.

Psychiatric Services Unit (PSU). A PSU provides secure housing and care for inmates with diagnosed psychiatric disorders not requiring inpatient hospital care, but who require placement in housing equivalent to Security Housing Unit (SHU), as described in section 3341.3.

(a) An irtnate shall be housed in a Psychiatric Services Unit (PSU), if:

(1) The inmate is included in the MHSDS at the Enhanced Outpatient Program (EOP) level of care and the inmate's conduct has resulted in either a determinate SHU term, administrative SHU term or requires placement in the Security Threat Group (STG) SDP.

(2) The inmate is included in the Developmental Disability Program at DD3 and the inmate's conduct has resulted in either a determinate or administrative SHU term.

(b) Staff shall not postpone a CSR referral for any inmate requiring placement in a PSU.

(c) The CSR shall document any pending issues, such as disciplinary matters, SDP program placement, DA referrals or investigations, on the CDC Form 128-G (Rev. 10/89) identifying the sending institutions responsibility for resolving any outstanding concerns.

(d) inmates assigned to PSU shall be classified pursuant to section 3341.8.

NOTE: Authority cited: Section 5058, Penal Code. Reference: Sections 2933.6, 5054 and 5068, Penal Code; *Madrid v. Gomez* (N.D. Cal. 1995) 889 F.Supp. 1146, 1278; *Coleman v. Wilson* 912 F.Supp. 1282 (E.D. Cal. 1995); and *Clark v. California* 123 F.3d 1267 (9th Cir. 1997).

HISTORY:

1. New section filed 6-1-2015 as an emergency; operative 6-1-2015 (Register 2015, No. 23). Pursuant to Penal Code section 5058.3, a Certificate of Compliance must be transmitted to OAL by 11-9-2015 or emergency language will be repealed by operation of law on the following day.

2. Certificate of Compliance as to 6-1-2015 order, including amendment of subsection (c), transmitted to OAL 10-19-2015 and filed 12-3-2015; amendments effective 12-3-2015 pursuant to Government Code section 11343.4(b)(3) (Register 2015, No. 49).

3. Amendment of subsections (a)(l) and (c) filed 10-9-2017 as an emergency; operative 10-9-2017 (Register 2017, No. 41). Pursuant to Penal Code section 5058.3, a Certificate of Compliance must be transmitted to OAL by 3-19-2018 or emergency language will be repealed by operation of law on the following day.

4. Amendment of subsections (a)(l) and (c) refiled 3-5-2018 as an emergency; operative 3-19-2018 (Register 2018, No. 10). Pursuant to Penal Code section 5058.3, a Certificate of Compliance must be transmitted to OAL by 8-27-2018 or emergency language will be repealed by operation of law on the following day.

5. Certificate of Compliance as to 3-5-2018 order transmitted to OAL 8-21-2018 and filed 10-3-2018 (Register 2018, No. 40).

### 3341.3. Security Housing Unit.

An inmate whose conduct endangers the safety of others or the security of the institution shall be housed in a Security Housing Unit (SHU) to complete an administrative SHU term or for a determinate period of time, if found guilty for serious misconduct pursuant to section 3341.9(e). CDCR staff shall not place inmates into a SHU, Administrative Segregation Unit, or the SDP solely on the basis of their validation status.

(a) CDCR shall not house any inmate within the SHU at Pelican Bay State Prison (PBSP) for more than 5 continuous years. Inmates housed in the PBSP SHU requiring continued SHU placement beyond this limitation will be transferred to another SHU facility. Inmates who have previously been housed in the PBSP SHU for 5 continuous years can only be returned to PBSP SHU if that return has been specifically approved by the DRB and at least 5 years have passed since the inmate was last housed in PBSP SHU.

Inmates may request in writing that they be housed in the PBSP SHU in lieu of another SHU location, but such a request must be reviewed and approved by the DRB. An inmate's request to remain housed in the PBSP SHU shall be documented by the ICC in the CDC Form 128-G, (Rev. 10/89) Classification Chrono, which is incorporated by reference, at each scheduled ICC review.

(b) A break in continual restrictive housing is defined as the inmate being released from the SHU, received in non-restricted

189

Solares v. Diaz, E.D. Cal. No. 1:20-cv-00323
DEF 000139

housing at the assigned institution/facility and has attended his Initial Classification Committee. ln addition, when an inmate is paroled, discharged or otherwise out of CDCR custody, that time shall be considered a break in continual restrictive housing.

(c) Placement in SHU shall be based on the following criteria:

(1) Administrative SHU as defined in Section 3000. An inmate in the following circumstances may be assessed an administrative SHU term by the ORB when the ORB articulates a substantial justification for the need for SHU placement due to the inmate's on-going threat to safety and security of the institution and/or others, and the inmate cannot be housed in a less restrictive environment and:

(A) Upon completion of a determinate SHU term, the ORB determines the inmate's case factors are such that overwhelming evidence exists supporting an immediate threat to the security of the institution or the safety of others.

(B) The inmate who has a substantial disciplinary history consisting of no less than three SHU terms within the past five years and substantial justification for the need for continued SHU placement due to the inmate's on-going threat to safety and security of the institution and/or others, and the inmate cannot be housed in less restrictive housing.

(C) The inmate who is currently serving an administrative SHU term and continued retention is required because 1) the inmate's case factors are such that overwhelming evidence exists supporting an immediate threat to the security of the institution or safety of others; or 2) the inmate has a substantial disciplinary history consisting of no less than three SHU terms within the past five years.

(2) Determinate SHU. An inmate shall be assessed a determinate SHU term when the inmate is found guilty of a Rules Violation Report for an offense specifically listed in subsection 3341.9(e) and ICC has determined the inmate presents a threat to the security of the institution and/or the safety of others.

(A) A determinate SHU term shall be computed using the SHU Term Assessment Chart, pursuant to subsection 3341.9(e), utilizing the SHU Term Assessment Worksheet. All determinate SHU terms shall be assessed at the expected term for the offense, in the absence of mitigating or aggravating factors, as listed in subsections 3341.9(b) & (c).

(B) The SHU term effective date shall be the date of placement in administrative segregation or upon the date of discovery of the information leading to the disciplinary charge, whichever occurs first.

(C) Inmates shall be assessed a determinate SHU term for serious misconduct occuring while on administrative SHU status provided the inmate is found guilty of an offense listed in subsection 3341.9(e). The administrative SHU status shall run concurrently to any/all assessed Determinate SHU terms, whether active or suspended, and upon the MERO the administrative status will continue.

(D) Only rule violations occurring within the past 5 years on an inmate's current CDCR number which warrant a SHU assessment shall be addressed by ICC and reviewed by the CSR. ICC shall assess the appropriate SHU term per 3341.9(e) and one of the following actions:

1. Impose/Re-impose

2. Impose/Re-impose and Suspend

3. Impose/Re-impose and Suspend in Entirety

4. Commute

Re-imposed SHU terms shall be addressed in accordance with section 3341.6.

(3) SOP in SHU

(A) The inmate is a validated STG affiliate and placed in the SOP by ICC or ORB in accordance with the following:

1. STG-I Member, Associate, or Drop-out: the validated affiliate, being found guilty of STG related behavior, as identified in section 3378.4(a), STG Disciplinary Matrix and which is also identified in section 3341.9(e) SHU Term Assessment Chart, within the preceding two (2) years. For the Drop-out affiliate, the behavior must identify the inmate is a STG member or associate of the same STG with which the inmate was previously validated.

2. STG-11 Member, Associate, or Drop-out: the validated affiliate being found guilty of two serious STG related rules violation reports as listed in section 3378.4(a) STG Disciplinary Matrix and which are also identified in section 3341.9(e) SHU Term Assessment Chart within the preceding four (4) years, and upon completion of the most recent expired MERO. For the Drop-out affiliate, the behavior must identify the inmate is a STG member or associate of the same STG with which the inmate was previously validated.

(d) SHU terms shall be served in a depmtmentally approved SHU, or a facility specifically designated for that purpose, except under those circumstances where the term may be served in ASU or PSU. SHU terms may also be served in secure inpatient medical or mental health settings, when deemed clinically necessary. Inmates who are serving a SHU term in ASU shall be reviewed by a classification c01mnittee pursuant to section 3341.8.

(e) SHU classification decisions, including notification of the reasons for a classification hearing, SHU term assessment, housing restrictions, and yard assignment shall be documented on the CDC Form 128-G (Rev. I 0/89), Classification Chrono, with a copy provided to the inmate.

NOTE: Authority cited: Section 5058, Penal Code. Reference: Sections 2933.6, 5054 and 5068, Penal Code; *Sandin v. Connor* (1995) 515 U.S. 472; *Madrid v. Gomez* (N.D. Cal. 1995) 889 F.Supp. 1146; *Toussaint v. McCarthy* (9th Cir. 1990) 926 F.2d 800; *Toussaint v. Yockey* (9th Cir. 1984) 722 F.2d 1490; and *Castillo v. Alameida,* et al., (N.D. Cal., No. C94-2847).

HISTORY:

1. New section filed 6-1-2015 as an emergency; operative 6-1-2015 (Register 2015, No. 23). Pursuant to Penal Code section 5058.3, a Certificate of Compliance must be transmitted to OAL by 11-9-2015 or emergency language will be repealed by operation of law on the following day.

2. Certificate of Compliance as to 6-1-2015 order, including amendment of subsections (a)(2) and (c), transmitted to OAL 10-19-2015 and filed 12-3-2015; amendments effective 12-3-2015 pursuant to Government Code section 11343.4(b)(3) (Register 2015, No. 49).

3. Amendment of subsection (a)(2) filed 6-2-2016 as an emergency; operative 6-2-2016 (Register 2016, No. 23). Pursuant to Penal Code section 5058.3, a Certificate of Compliance must be transmitted to OAL by 11-9-2016 or emergency language will be repealed by operation of law on the following day.

4. Certificate of Compliance as to 6-2-2016 order transmitted to OAL 11-7-2016 and filed 12-22-2016 (Register 2016, No. 52).

5. Amendment filed 10-9-2017 as an emergency; operative 10-9-2017 (Register 2017, No. 41). Pursuant to Penal Code section 5058.3, a Certificate of Compliance must be transmitted to OAL by 3-19-2018 or emergency language will be repealed by operation of law on the following day.

6. Amendment refiled 3-5-2018 as an emergency; operative 3-19-2018 (Register 2018, No. 10). Pursuant to Penal Code section 5058.3, a Certificate of Compliance must be transmitted to OAL by 8-27-2018 or emergency language will be repealed by operation of law on the following day.

7. Certificate of Compliance as to 3-5-2018 order, including amendment of subsections (c)(l)-(c)(l)(C) and repealer of subsection (c)(l)(D), transmitted to OAL 8-21-2018 and filed 10-3-2018; amendments effective 10-3-2018 pursuant to Government Code section 11343.4(b)(3) (Register 2018, No. 40).

Solares v. Diaz, E.D. Cal. No. 1:20-cv-00323
DEF 000140

**3341.4. Security Housing Unit Terms-Initial, Concurrent and Consecutive.**

(a) An initial Security Housing Unit (SHU) term is the first established term that changes the inmate's status from administrative segregation to SHU and shall be calculated using the SHU Term Assessment Worksheet. The initial SHU term shall be the controlling term unless another SHU term is later assessed with a more distant MERD.

(b) Concurrent SHU terms are independent SHU terms running simultaneously to another SHU term(s) and shall be calculated using the SHU Term Assessment Worksheet. Concurrent SHU terms shall be assessed for any offenses eligible for SHU assessment that occur either prior to the initial SHU term and may also be assessed for those offenses eligible for SHU assessment that occur or after the initial SHU term.

(c) Consecutive SHU terms are successive SHU terms that begin following the maximum MERD of an initial or previously assessed SHU term and shall be calculated using the SHU Term Assessment Worksheet. Consecutive SHU terms may be assessed for any offense committed after the assessment of a previous SHU term with an unexpired MERD.

(d) For SHU assessable violations that occur after a previously assessed SHU term, with an unexpired MERD, ICC shall have the discretion to assess either a Concurrent or Consecutive SHU term, in accordance with subsections 3341.4(b) and (c). Any ICC action to assess either a Concurrent or Consecutive SHU term shall clearly articulate substantive justification for the decision on the CDC Form 128-G (Rev. 10/89).

NOTE: Authority cited: Section 5058, Penal Code. Reference: Sections 2933.6, 5054 and 5068, Penal Code; *Sandin v. Connor* (1995) 515 U.S. 472; *Toussaint v. McCarthy* (9th Cir. 1990) 926 F.2d 800; *Toussaint v. Yockey* (9th Cir. 1984) 722 F.2d 1490; and *Castillo v. Alameida, et al.,* (N.D. *Cal.,* No. C94-2847).

HISTORY:
1. New section filed 6-1-2015 as an emergency; operative 6-1-2015 (Register 2015, No. 23). Pursuant to Penal Code section 5058.3, a Certificate of Compliance must be transmitted to OAL by 11-9-2015 or emergency language will be repealed by operation of law on the following day.
2. Certificate of Compliance as to 6-1-2015 order, including amendment of subsection (d), transmitted to OAL 10-19-2015 and filed 12-3-2015; amendments effective 12-3-2015 pursuant to Government Code section 11343.4(b)(3) (Register 2015, No. 49).

**3341.5. Suspending Security Housing Unit Terms.**

(a) Determinate SHU Terms.

(1) ICC may commute or suspend any portion of a Determinate SHU term. Once commuted, the term shall not be re-imposed. ICC may suspend a Determinate SHU term any time it is determined an inmate no longer poses a threat to the safety of any person or the security of the institution. Additionally, ICC may suspend a Determinate SHU term for purposes of inpatient medical or mental health treatment when deemed clinically necessary. Any ICC action to suspend or commute a Determinate SHU term shall clearly articulate substantive justification for the decision on the CDC Form 128-G (Rev. 10/89) Classification Chrono.

(A) ICC shall suspend any portion of a SHU term during any time the inmate was not on segregation status.

(B) The remaining time of the suspended SHU term continues to run while the inmate is no longer in segregated housing as long as the inmate remains in custody.

(C) The ICC action to suspend a SHU term may require CSR review for placement consideration and/or audit. ICC has the authority to release an inmate to a GP or ASU within the same institution pending placement review, as appropriate. If multiple SHU

terms are suspended, the SHU term with the most distant MERD need only be addressed. In this circumstance, any remaining SHU terms with unexpired MERD's shall be considered suspended.

(2) If an inmate paroles while serving a determinate SHU term, the remaining time on the SHU term is automatically suspended and any remaining time stayed. Any remaining SHU time shall be recalculated and assessed should the inmate return to custody, so long as the inmate maintains the same CDCR identification number.

(3) If an inmate paroles prior to assessment of a determinate SHU term, the ICC shall address the unresolved term should the inmate return to CDCR custody with the same CDCR identification number, in accordance with subsection 3341.3(a)(6).

(b) Administrative SHU terms.

(1) ICC may end an Administrative SHU term for purposes of inpatient medical or mental health treatment when deemed clinically necessary.

(2) ICC shall refer the case to DRB if a determination is made that an inmate no longer poses a threat to the safety of any person or the security of the institution. DRB shall assess the inmate's case factors and determine appropriate housing.

(3) ICC shall refer the case to DRB if a determination is made that retention on Administrative SHU status is warranted. DRB shall assess the inmate's case factors and disciplinary behavior and articulate the basis for the need to continue the inmate on Administrative SHU status in accordance with section 3341.3(c).

(4) If an inmate paroles while on an administrative SHU term, the SHU term will be stayed. If the inmate returns to CDCR custody, the administrative SHU term will be addressed in accordance with section 3341.6(c).

NOTE: Authority cited: Section 5058, Penal Code. Reference: Sections 2933.6, 5054 and 5068, Penal Code; *Sandin v. Connor* (1995) 515 U.S. 472; *Madrid v. Gomez* (N.D. *Cal.* 1995) 889 F.Supp. 1146; *Toussaint v. McCarthy* (9th Cir. 1990) 926 F.2d 800; and *Coleman v. Wilson* 912 F. Supp. 1282 (E.D. Cal. 1995).

HISTORY:
1. New section filed 8-7-87 as an emergency; operative 8-7-87 (Register 87, No. 34). A Certificate of Compliance must be transmitted to OAL within 120 days or emergency language will be repealed on 12-7-87.
2. Certificate of Compliance as to 8-7-87 order transmitted to OAL 12-4-87; disapproved by OAL (Register 88, No. 16).
3. New section filed 1-4-88 as an emergency; operative 1-4-88 (Register 88, No. 16). A Certificate of Compliance must be transmitted to OAL within 120 days or emergency language will be repealed on 5-3-88.
4. Certificate of Compliance as to 1-4-88 order transmitted to OAL 5-3-88; disapproved by OAL (Register 88, No. 24).
5. Amendment filed 6-2-88 as an emergency; operative 6-2-88 (Register 88, No. 24). A Certificate of Compliance must be transmitted to OAL within 120 days or emergency language will be repealed on 9-30-88.
6. Certificate of Compliance including amendment transmitted to OAL 9-26-88 and filed 10-26-88 (Register 88, No. 50).
7. Editorial correction of printing errors in subsection (c)(2)(B)l and CDC Forms 629-B and 629-D (Register 92, No. 5).
8. New subsection (c)(6)(H), subsection relettering, and amendment of Note filed 7-29-93 as an emergency; operative 7-29-93 (Register 93, No. 31). A Certificate of Compliance must be transmitted to OAL 11-26-93, or emergency language will be repealed by operation of law on the following day.
9. Certificate of Compliance as to 7-29-93 order transmitted to OAL 11-18-93 and filed 12-31-93 (Register 94, No. 1).
10. Amendment of subsection (c)(2)(B)l. and 4., new subsection (c)(2)(B)5. and subsection renumbering, repealer of form CDC 629-A, and new form CDC 629-A filed 2-8-96 as an emergency per Penal Code section 5058(e); operative 2-8-96 (Register 96, No. 6). A Certificate of Compliance must be transmitted to OAL

191

by 7-18-96 or emergency language will be repealed by operation of law on the following day.

11. Certificate of Compliance as to 2-8-96 order including amendment of form CDC 629-A transmitted to OAL 6-17-96 and filed 7-30-96 (Register 96, No. 31).

12. New subsection (c)(2)(A)l. designator, new subsections (c)(2)(A)2. and (c)(4) and subsection relettering filed 1-21-99 as an emergency; operative 1-21-99 (Register 99, No. 4). Pursuant to Penal Code section 5058(e), a Certificate of Compliance must be transmitted to OAL by 6-30-99 or emergency language will be repealed by operation of law on the following day.

13. Certificate of Compliance as to 1-21-99 order transmitted to OAL 6-30-99 and filed 8-12-99 (Register 99, No. 33).

14. Amendment of subsections (c)(2)(A)l. and 2. and (c)(4), new subsections (c)(5) and (c)(6), subsection renumbering, amendment of newly designated subsection (c)(lO) and amendment of Note filed 8-30-99 as an emergency; operative 8-30-99 (Register 99, No. 36). Pursuant to Penal Code section 5058(e), a Certificate of Cl,mpliance must be transmitted to OAL by 2-8-2000 or emergency language will be repealed by operation of law on the following day.

15. Certificate of Compliance as to 8-30-99 order transmitted to OAL 2-7-2000 and filed 3-21-2000 (Register 2000, No. 12).

16. Change without regulatory effect amending subsection (c)(2)(B)l. filed 10-16-2001 pursuant to section 100, title 1, California Code of Regulations (Register 2001, No. 42).

17. Amendment of subsection (c)(6) and Note filed 5-25-2006; operative 5-25-2006 pursuant to Government Code section 11343.4 (Register 2006, No. 21).

18. Change without regulatory effect amending subsection (b) filed 6-27-2006 pursuant to section 100, title 1, California Code of Regulations (Register 2006, No. 26).

19. New subsections (c)(9)(K)-(c)(9)(K)2., subsection relettering and amendment of Note filed 2-23-2007 as an emergency; operative 2-23-2007 (Register 2007, No. 8). Pursuant to Penal Code section 5058.3, a Certificate 01· Compliance must be transmitted to OAL by 8-2-2007 or emergency language will be repealed by operation of law on the following day.

20. Certificate of Compliance as to 2-23-2007 order, including amendment of subsection (c)(9)(K)l.-2., transmitted to OAL 7-27-2007 and filed 9-5-2007 (Register 2007, No. 36).

21. New subsection (c)(9)(L) and subsection relettering filed 12-28-2007; operative 12-28-2007 pursuant to Government Code section 11343.4 (Register 2007, No. 52).

22. Amendment of subsection (b) filed 9-29-2009; operative 10-29-2009 (Register 2009, No. 40).

23. New subsections (c)(2)(A)3. and (c)(2)(B)8.-9., subsection renumbering, new subsection (c)(2)(C) and amendment of subsection (c)(7) filed 11-14-2011 as an emergency; operative 11-14-2011 (Register 2011, No. 46). Pursuant to Penal Code section 5058.3, a Certificate of Compliance must be transmitted to OAL by 4-23-2012 or emergency language will be repealed by operation of law on the following day.

24. Certificate of Compliance as to 11-14-2011 order transmitted to OAL 2-29-2012 and filed 4-5-2012 (Register 2012, No. 14).

25. Amendment filed 10-17-2014; operative 10-17-2014 pursuant to Government Code section 11343.4(b)(3) (Register 2014, No. 42).

26. Repealer of section and SHU Time Computation Table (CDCR Form 629-D) and new section filed 6-1-2015 as an emergency; operative 6-1-2015 (Register 2015, No. 23). Pursuant to Penal Code section 5058.3, a Certificate of Compliance must be transmitted to OAL by 11-9-2015 or emergency language will be repealed by operation of law on the following day.

27. Certificate of Compliance as to 6-1-2015 order, including amendment of subsection (a), transmitted to OAL 10-19-2015 and filed 12-3-2015; amendments effective 12-3-2015 pursuant to Government Code section 11343.4(b)(3) (Register 2015, No. 49).

28. Repealer and new section filed 10-9-2017 as an emergency; operative 10-9-2017 (Register 2017, No. 41). Pursuant to Penal Code section 5058.3, a Certificate of Compliance must be transmitted to OAL by 3-19-2018 or emergency language will be repealed by operation of law on the following day.

29. Repealer and new section refiled 3-5-2018 as an emergency; operative 3-19-2018 (Register 2018, No. 10). Pursuant to Penal Code section 5058.3, a Certificate of Compliance must be transmitted to OAL by 8-27-2018 or emergency language will be repealed by operation of law on the following day.

30. Certificate of Compliance as to 3-5-2018 order transmitted to OAL 8-21-2018 and filed 10-3-2018 (Register 2018, No. 40).

Solares v. Diaz, E.D. Cal. No. 1:20-cv-00323
DEF 000142

STATE OF CALIFORNIA                                         DEPARTMENT OF CORRECTIONS

## SHU TERM ASSESSMENT WORKSHEET
CDC 629-A (Rev 3/96)

| CDC NUMBER | NAME (LAST, FIRST, MI) | INSTITUTION | UNIT |
|---|---|---|---|
| | | | |

**1. RULE VIOLATION RESULTING IN SHU TERM ASSESSMENT**
(If more than one SHU assessable offense and no SHU term has been established, use most serious as base term and less serious as aggravation.)

     a.      Rule No._____ Date Issued_____ Title _____

     b.      Specific Act_____
               (Must be an offense on SHU Term Assessment Chart.)

     c.      List range of months for the offense using
               SHU Time Computation Table........................................ LOW   EXP   HIGH

     d.      Enter "expected" (mid-range) years, months, days of confinement.................... ___ ___ ___
                                                               YR   MO   DAYS

**2. FACTORS IN MITIGATION AND AGGRAVATION**
(Enter "NONE" for item 2c or indicate amount of time. Describe factors and document sources. Use only factors listed in the DOM 62050 or concurrent offenses.)

     a.      Mitigating Factors. Time subtracted for mitigations........... - ___ ___ ___
         1)                                                 YR   MO   DAYS
         2)
         3)

     b.      Aggravating Factors. Time added for aggravations................ + ___ ___ ___
         1)                                                YR   MO   DAYS
         2)
         3)

     c.      Total time added or subtracted.................................................. = ___ ___ ___
                                                              YR   MO   DAYS

**3. TOTAL SHU CONFINEMENT TIME ASSESSED**........................................ ___ ___ ___
(Subtract or add time for mitigation or aggravation to expected, item 1d plus or minus 2c)   YR   MO   DAYS

**4. DATE OF ADMINISTRATIVE SEGREGATION CONFINEMENT/VIOLATION.....** ___ ___ ___

**5. MAXIMUM DATE OF RELEASE FROM SHU.....** ___ ___ ___
(Add total time assessed to date of confinement, item 3 plus 4)   YR   MO   DAY

**6. MINIMUM SHU CONFINEMENT TIME TO SERVE........................** ___ ___ ___
(Enter 75% of the total SHU time (item 3) using the SHU Time Computation Table)   YR   MO   DAY
     a.      Date of confinement/violation (item 4).................................... ___ ___ ___
                                                      YR   MO   DAYS

**7. MINIMUM ELIGIBLE RELEASE DATE (MERD)........................** ___ ___ ___
(Add the minimum SHU time to the date of confinement, item 6 plus 6a)   YR   MO   DAY
                                                             YR   MO   DAY

**8. FORFEITURE OF GOOD CONDUCT CREDITS FOR SUBSEQUENT MISCONDUCT**
(Enter "NONE" for item 8a or indicate the amount of time lost and describe and document the misconduct for which credit is being forfeited). SHU inmates may forfeit up to 45 days of clean conduct credits for each disciplinary infraction that is not serious enough to warrant the assessment of a subsequent or concurrent SHU term. Such forfeiture may be assessed against credits already earned or future credits.

     a.      Time forfeited for CDC 115 - Dated:_____ .................... ___ ___ ___
         1)                                             YR   MO   DAYS
         2)

     b.      ADJUSTED MERD Cannot Exceed MAXIMUM.................................. ___ ___ ___
         (Add the amount of time forfeited to the prior MERD, item 7 plus 8a)   YR   MO   DAY

| NAME AND TITLE OF STAFF COMPUTING TERM | DATE SIGNED | DATE ICC ESTABLISHED TERM |
|---|---|---|
| | | |

DISTRIBUTION   ORIGINAL - CENTRAL FILE,     YELLOW - INMATE,     PINK - AUDITOR

Solares v. Diaz, E.D. Cal. No. 1:20-cv-00323
DEF 000143

STATE OF CALIFORNIA                  DEPARTMENT OF CORRECTIONS

**ASSESSMENT OF SUBSEQUENT OR REIMPOSED SHU TERM WORKSHEET**

CDC 629-B (9/90)

| CDC NUMBER | NAME (LAST, FIRST, MI) | INSTITUTION | UNIT |
|---|---|---|---|
| | | | |

**1. VIOLATION COMMITTED WHILE SECURITY HOUSING UNIT (SHU) TERM ACTIVE**

a   Rule No _____ Date Issued _____ Title _____

b   Specific Act _____
(Must be an offense on SHU Term Assessment Chart )

**2. CONSECUTIVE SHU TERM CALCULATIONS**

a   Prior maximum SHU expiration date ...............................     YR | MO | DAY
(SHU Term Assessment Worksheet, item 3c)

b.   Enter total additional confinement time assessed............     YR | MO | DAYS
(Expected plus or minus Aggravation/Mitigation in years, months and days)

c.   New maximum expiration of term date.....................     YR | MO | DAY
(Add additional time to expiration date, item 2a plus 2b)

d   **New Minimum Eligible Release Date....** ...............     YR | MO | DAY
(Add 75% of additional time to prior maximum expiration date using the
SHU Time Computation Table, item 2a plus 2b)

**3. CONCURRENT SHU TERM CALCULATIONS**

a.   Date of new violation... ...........................     YR | MO | DAY

b.   Enter total confinement time assessed. . . ..........     YR | MO | DAYS
(Expected plus or minus Aggravation/Mitigation in years, months and days)

c   Expiration date of new violation . . . ..........     YR | MO | DAY
(Add total assessed to violation date, item 3a plus 3b)

d.   Controlling Maximum SHU Expiration Date... ....     YR | MO | DAY
(Enter prior or new expiration date whichever is later)

e.   **Controlling Minimum Eligible Release Date.......**     YR | MO | DAY
(Enter prior date or add 75% of assessed time to violation
date if the new maximum is later, 75% of item 3b plus 3a)

**4. REIMPOSITION OF SHU TERM FROM PAROLE/DISCHARGE**

a.   Maximum SHU expiration date when paroled/discharged. ...............     YR | MO | DAY

b   Date paroled/discharged from SHU .... .... .......................     YR | MO | DAY

c   Maximum confinement time remaining when paroled/discharged... ...........     YR | MO | DAYS
(Subtract date paroled from expiration date, item 4b from 4a)

d   Date of reconfinement in Administrative Segregation .. ...............     YR | MO | DAY

e.   New maximum expiration date... ...........................     YR | MO | DAY
(Add time remaining to reconfinement date, item 4c to 4d)

f   Minimum release time remaining when paroled/discharged....... ... ..........     YR | MO | DAY
(Subtract date paroled, item 4b, from Prior **Minimum Eligible Release Date**)

g.   **New Minimum Eligible Release Date.....** ...........................     YR | MO | DAY
(Add minimum time remaining to date of reconfinement, item 4f plus 4d)

| NAME AND TITLE OF STAFF COMPUTING TERM | DATE | DATE ICC ESTABLISHED TERM |
|---|---|---|
| | | |

DISTRIBUTION. ORIGINAL CENTRAL FILE, YELLOW INMATE. PINK AUDITOR

194

Solares v. Diaz, E.D. Cal. No. 1:20-cv-00323
DEF 000144

**3341.6.   Re-Imposed Security Housing Unit Terms.**

(a) A suspended SHU term may be re-imposed if an inmate is placed in administrative segregation immediately following an RVR for serious misconduct that occurred prior to the expiration of a previously established MERD. In this circumstance, the inmate must be found guilty of the serious misconduct and the ICC determines that the inmate poses a threat to the safety of any person or to the security of the institution. SHU terms re-imposed based on subsequent serious misconduct shall be effective the date of the misconduct. SHU terms suspended based solely on the need for inpatient medical or mental health treatment may be re-imposed without subsequent misconduct if the inmate continues to pose a threat to the safety of others or the security of the institution.

(1) If the SHU term is re-imposed, the ICC shall record the decision and the reasons for the decision on the CDC Form 128-G (Rev. 10/89). If multiple SHU terms are eligible for re-imposition, the SHU term with the most distant MERD need only be addressed. In this circumstance, any remaining SHU terms with unexpired MERD's shall be considered re-imposed.

(2) Upon a guilty finding of subsequent serious misconduct, the ICC may elect to re-impose the current unexpired MERD, impose a forfeiture of clean conduct credits or impose a subsequent SHU term. ICC may impose a forfeiture of clean conduct credit or a concurrent/consecutive SHU term, where appropriate, upon those cases where the subsequent and serious misconduct occurred prior to the expiration of the established MERD; however, adjudication did not occur until after.

(b) If an inmate paroles with an active Determinate SHU term and subsequently returns to CDCR custody under the same CDCR number, ICC shall evaluate the Determinate SHU term for re-imposition. Re-imposed Determinate SHU terms shall be calculated utilizing the SHU Term Assessment Worksheet. Any unexpired SHU term shall be recalculated and addressed by ICC. If multiple CSR approved SHU terms are eligible for re-imposition, the SHU term with the most distant MERD need only be addressed. In this circumstance, any remaining SHU terms with unexpired MERD's shall be considered re-imposed. ICC retains the authority to impose or suspend any remaining time based upon the safety of persons or security of the institution.

(1) If re-imposed, the SHU term shall not exceed the period of time remaining on the original SHU term at the time of parole.

(2) Re-imposition of the SHU term following return to custody shall be documented on the appropriate CDC Form 128-G (Rev. 10/89).

(3) SHU terms reassessed under the provisions of this subsection shall be audited and approved by a CSR.

(c) An inmate who paroles with an active Administrative SHU term and subsequently returns to CDCR custody under the same or a new CDCR number shall be addressed as follows:

(1) An inmate who previously paroled with MAX custody and is returned to CDCR's custody shall be placed in ASU and afforded all procedural safeguards for segregated inmates. ICC shall determine if the criteria for placement on Administrative SHU status is met, in accordance with section 3000. If ICC determines that: 1) safety of others, and substantial justification has been articulated of the need for Administrative SHU placement; or 2) substantial disciplinary history consisting of no less than three SHU terms within the past five years and substantial justification has been articulated of the need for Administrative SHU placement, the inmate shall be referred to the DRB.

(d) A validated STG affiliate who previously paroled or was discharged with MAX custody from the SHU Step Down Program (SDP) or ASU due to high control release and is returned to CDCR's custody shall be addressed as follows:

(1) The inmate will be placed in ASU and afforded all procedural safeguards for segregated inmates.

(2) If the inmate has been discharged/paroled from CDCR for more than 5 years or if he is returning with a new CDCR number, he shall not be required to complete the SDP and will be referred to ICC for appropriate housing.

(3) If the inmate paroled from Steps 1 - 3 of the SDP, has been out of CDCR custody for less than 5 years, and is returning with the same CDCR number, he shall be referred by ICC, as appropriate, to the Classification Staff Representative for transfer endorsement to the SHU SDP. The inmate will be assigned to the beginning of the next successive step from which he left to ensure that he does not spend more than 6 months in the assigned step.

(4) If the inmate paroled from Step 4 of the SDP, he will not be returned to the SDP; instead ICC will determine appropriate housing for the inmate based on current case factors and placement score.

(5) Although the inmate meets the criteria for placement in the SHU SDP, in accordance with CCR sections 3378.2 or 3378.4, ICC maintains discretion in evaluating an affiliate's overall disciplinary record and case factors in determining placement in the SDP or within a general population setting.

NOTE: Authority cited: Section 5058, Penal Code. Reference: Sections 314, 2933.6, 5054 and 5068, Penal Code; *Sandin v. Connor* (1995) 515 U.S. 472; *Madrid v. Gomez* (N.D. Cal. 1995) 889 F.Supp. 1146; *Toussainl v. McCarthy* (9th Cir. 1990) 926 F.2d 800; *Toussaint v. Yockey* (9th Cir. 1984) 722 F.2d 1490; *Coleman v. Wilson* 912 F. Supp. 1282 (E.D. Cal. 1995); and *Castillo v. Alameida,* et al., (N.D. Cal., No. C94-2847).

HISTORY:
1. New section filed 6-1-2015 as an emergency; operative 6-1-2015 (Register 2015, No. 23). Pursuant to Penal Code section 5058.3, a Certificate of Compliance must be transmitted to OAL by 11-9-2015 or emergency language will be repealed by operation of law on the following day.
2. Certificate of Compliance as to 6-1-2015 order, including amendment of subsections (a)(l) and (b)(2), transmitted to OAL 10-19-2015 and filed 12-3-2015; amendments effective 12-3-2015 pursuant to Government Code section 11343.4(b)(3) (Register 2015, No. 49).
3. Amendment of subsection (b), repealer of subsections (c)-(c)(3) and new subsections (c)-(d)(5) filed 10-9-2017 as an emergency; operative 10-9-2017 (Register 2017, No. 41). Pursuant to Penal Code section 5058.3, a Certificate of Compliance must be transmitted to OAL by 3-19-2018 or emergency language will be repealed by operation of law on the following day.
4. Amendment of subsection (b), repealer of subsections (c)-(c)(3) and new subsections (c)-(d)(5) refiled 3-5-2018 as an emergency; operative 3-19-2018 (Register 2018, No. 10). Pursuant to Penal Code section :'i0:'i8.3, a Certificate of Compliance must be transmitted to OAL by 8-27-2018 or emergency language will be repealed by operation of law on the following day.
5. Certificate of Compliance as to 3-5-2018 order, including amendment of subsections (c) and (c)(5), transmitted to OAL 8-21-2018 and filed 10-3-2018; amendments effective 10-3-2018 pursuant to Government Code section 11343.4(b)(3) (Register 2018, No. 40).

**3341.7.   Forfeiture of Clean Conduct Credit.**

(a) Serious misconduct not warranting a SHU term, occurring at any time following the commission of any offense listed in subsection 3341.9(e), but prior to a projected/established MERD, may result in a forfeiture of clean conduct credits.

(1) Up to 45 days of clean conduct credit may be forfeited as a result of a guilty finding for a serious misconduct not listed in subsection 3341.9(e). Such forfeiture shall be calculated utilizing the SHU Term Assessment Worksheet.

(2) If the SHU term has not yet been assessed or has been suspended in accordance with section 3341.5 at the time of the

Solares v. Diaz, E.D. Cal. No. 1:20-cv-00323
DEF 000145

subsequent serious misconduct, the forfeiture of clean conduct credit is permitted should the SHU term be imposed or re-imposed.

(b) For inmates on segregation status, the ICC shall review any serious misconduct which may result in forfeiture of clean conduct credit and clearly articulate in the CDC Form 128-G (Rev. 10/89) the basis for their decision.

(c) Forfeitures of clean conduct credit may be assessed against credits already earned or future clean conduct credits, but shall not be assessed in periods exceeding the maximum MERD for the controlling offense.

NOTE: Authority cited: Section 5058, Penal Code. Reference: Sections 2933.6, 5054 and 5068, Penal Code; *Sandin v. Connor* (1995) 515 U.S. 472; *Madrid v. Gomez* (N.D. Cal. 1995) 889 F.Supp. 1146; *Toussaint v. McCarthy* (9th Cir. 1990) 926 F.2d 800; and *Toussaint v. Yockey* (9th Cir. 1984) 722 F.2d 1490.

HISTORY:
1. New section filed 6-1-2015 as an emergency; operative 6-1-2015 (Register 2015, No. 23). Pursuant to Penal Code section 5058.3, a Certificate of Compliance must be transmitted to OAL by 11-9-2015 or emergency language will be repealed by operation of law on the following day.
2. Certificate of Compliance as to 6-1-2015 order, including amendment of subsection (b), u·ansmitted to OAL 10-19-2015 and filed 12-3-2015; amendments effective 12-3-2015 pursuant to Government Code section 11343.4(b)(3) (Register 2015, No. 49).

**3341.8. Security Housing Unit/Psychiatric Services Unit Classification Hearings.**

The ICC shall conduct all classification hearings of SHU/PSU status inmates.

(a) SHU/PSU Status Reviews. Except as otherwise provided, inmates on Administrative SHU status, shall be reviewed by the ICC no less frequently than every 180 days for release consideration to a GP with referral to the DRB on an annual basis. Inmates on Determinate SHU status shall be reviewed by the ICC no less frequently than every 180 days following their initial SHU annual review for release consideration to a GP. The ICC review shall include, but not be limited to, the availability of alternative housing, demonstrated evidence of behavioral change and expressed willingness to conform to CDCR rules in accordance with California Code of Regulations, Division 3, Title 15. A validated STG affiliate assigned to a security housing unit to participate in the Step Down Program (SDP) shall be reviewed by a classification committee on a schedule that is consistent with section 3378.3(b)(l) through 3378.3(b)(3) for consideration of program participation or movement to the next step of the SDP.

(1) Any inmate expected to be retained on SHU status beyond 360 days shall be provided a CDC Form 114-D documenting the SHU annual review, which shall be issued in accordance with section 3338(a)(l)-(3), 3338(b) and 3338(c), prior to the inmate's SHU annual review.

(2) An inmate shall not be retained on SHU status beyond the expiration of a determinate term or beyond 360 days with an unexpired MERD, unless the ICC has determined that continuance in the SHU is required.

(3) Administrative SHU inmates shall require referral to the DRB for annual assessment of the inmate's case factors and disciplinary behavior. The DRB shall articulate the basis for the need to continue to retain the inmate on Administrative SHU status in accordance with section 3341.3(c).

(4) A validated STG affiliate who is requesting to debrief from his STG shall be considered for release from a SHU, as follows:

(A) If serving an administrative SHU term and DRB did not maintain transfer control, shall be referred to ICC for transfer consideration to the Debrief Processing Unit (DPU) in accordance with section 3378.5.

(B) If serving an administrative SHU term and DRB maintained transfer control, the inmate shall be referred to DRB for transfer consideration to the Debrief Processing Unit (DPU) in accordance with section 3378.5.

(C) If serving a determinate SHU term, the inmate will be retained in SHU. The debrief process will continue and upon resolution of the determinate SHU term, the inmate will be considered for transfer to the DPU in accordance with section 3378.5.

(D) If currently assigned to the SHU SDP, shall be referred to ICC for transfer consideration to the DPU in accordance with 3378.5.

(5) A validated STG affiliate shall be released from SHU upon successful completion of Steps 1 through 4 of the SHU SDP, pursuant to section 3378.3. Inmates shall be transferred to the general population and be housed in a facility consistent with his or her case factors and placement score.

(6) A validated STG affiliate who has not successfully completed Steps 1 through 4 of the SHU SDP shall be transferred to the RCGP pursuant to section 3378.3.

(7) A validated STG affiliate who has been found guilty of: three serious STG related; or five administrative STG related; or a total of five serious and administrative STG related rules violation reports shall be transferred to the RCGP pursuant to section 3378.4.

(b) Pre-MERD Hearing. A Pre-MERD hearing shall be held by ICC 120 days prior to the expiration of the controlling MERD. The ICC review shall include, but not be limited to, the availability of alternative housing, demonstrated evidence of behavioral change and expressed willingness to conform to CDCR rules, as well as determination of the housing and program assignment following completion of the SHU term, or sooner, if appropriate. If the MERD was associated with a SHU term that had a STG nexus and the inmate is validated, the ICC shall consider transferring the inmate to the SHU SDP at the completion of the controlling MERD.

(1) If before the Pre-MERD hearing, there is any indication the inmate may be retained in segregation beyond the MERD for reasons specified in section 3335, the inmate shall be issued an CDC Form 114-D in accordance with section 3338.

(2) If ICC retains the inmate in segregation beyond the expiration of the MERD, the inmate's status then becomes administrative segregation, where future classification hearings shall be conducted in accordance with section 3337.

NOTE: Authority cited: Section 5058, Penal Code. Reference: Sections 2933.6, 5054 and 5068, Penal Code; *Sandin v. Connor* (1995) 515 U.S. 472; *Madrid v. Gomez* (N.D. Cal. 1995) 889 F.Supp. 1146; *Toussaint v. McCarthy* (9th Cir. 1990) 926 F.2d 800; *Toussaint v. Yockey* (9th Cir. 1984) 722 F.2d 1490; *Castillo v. Alameida,* et al., (N.D. Cal., No.C94-2847); *Coleman v. Wilson* 912 F. Supp. 1282 (E.D. Cal. 1995); and *Clark v. California* 123 F. 3d 1267 (9th Cir. 1997).

HISTORY:
1. New section filed 6-1-2015 as an emergency; operative 6-1-2015 (Register 2015, No. 23). Pursuant to Penal Code section 5058.3, a Certificate of Compliance must be transmitted to OAL by 11-9-2015 or emergency language will be repealed by operation of law on the following day.
2. Certificate of Compliance as to 6-1-2015 order transmitted to OAL 10-19-2015 and filed 12-3-2015 (Register 2015, No. 49).
3. Amendment filed 10-9-2017 as an emergency; operative 10-9-2017 (Register 2017, No. 41). Pursuant to Penal Code section 5058.3, a Certificate of Compliance must be transmitted to OAL by 3-19-2017 or emergency language will be repealed by operation of law on the following day.
4. Amendment refiled 3-5-2018 as an emergency; operative 3-19-2018 (Register 2018, No. 10). Pursuant to Penal Code section 5058.3, a Certificate of Compliance must be transmitted to OAL by 8-27-2018 or emergency language will be repealed by operation of law on the following day.

Solares v. Diaz, E.D. Cal. No. 1:20-cv-00323
DEF 000146

5. Certificate of Compliance as to 3-5-2018 order transmitted to OAL 8-21-2018 and filed 10-3-2018 (Register 2018, No. 40).

**3341.9. Security Housing Unit Term Calculation and Assessment.**

(a) The SHU term shall be set at the expected range unless the ICC finds factors exist which warrant the imposition of a lesser or greater period of confinement.

(1) Both aggravating and mitigating factors shall be considered for behavior occurring prior to the current serious rules violation. Aggravating and mitigating factors shall be considered for behavior occurring during an inmate's current term, prior term, discharged term or other verifiable incarcerated period, which have occurred during the past 5 calendar years.

(2) The total period of confinement assessed shall be no less than nor greater than the lowest or highest months listed for the offense in subsection 3341.9(e), the SHU Term Assessment Chart. In setting the term, the ICC shall determine the expected term for the offense, review the circumstances of the disciplinary offense, and consider the inmate's institutional behavior history using the factors below. The ICC shall then determine that either no unusual factors exist, or find that specific aggravating and/or mitigating factors exist which specify a greater or lesser term. The reasons for the specific amount of time assessed or deviation from the expected term shall be clearly documented on a CDC Form 128-G (Rev. 10/89), and SHU Term Assessment Worksheet, with a copy provided to the inmate.

(3) When calculating a SHU term, ICC shall address all aggravating and mitigating factors. Any single aggravating and/or mitigating factor shall be considered. If aggravating or mitigating factors exist, ICC shall adjust the SHU term in consideration of such factors. Should both aggravating and mitigating factors exist, ICC shall adjust the SHU term by uniformly applying each factor.

(b) Factors in Mitigation.

(1) The inmate has no serious RVR's within 12 months of the behavior or no disciplinary history during the first year of CDCR incarceration,

(2) The inmate has not been involved in prior serious misconduct of the same or similar nature, as listed in subsection 3341.9(e), within the last Ii ve calendar years.

(3) The serious misconduct was situational and spontaneous, as documented and referenced.

(4) The inmate was influenced by others to commit the offense, as documented and referenced.

(5) The serious misconduct resulted, in part, from the inmate's fear for safety, as documented and referenced.

(6) The serious misconduct resulted, in part, from the inmate's mental health, as documented and referenced on the CDCR Form 115-MH-A (Rev. 09/15).

(c) Factors in Aggravation.

(1) The inmate has been involved in prior serious misconduct of the same or similar nature, as listed in subsection 3341.9(e), within the last five calendar years.

(2) The serious misconduct was planned and executed, as documented and referenced.

(3) The serious misconduct was committed on behalf of an STG, as documented and referenced.

(4) The inmate influenced others to commit serious misconduct at the time of the offense, as documented and referenced.

(5) The serious misconduct directly resulted in injury to more than one victim, as documented and referenced.

(d) ICC decisions to assess a SHU term and/or referral for segregated housing placement, shall be referred to a CSR for review and approval. In auditing and endorsing cases, the CSR shall ensure that any SHU term assessment is consistent with the specific disciplinary violation that was charged and the subsequent findings as confirmed by the Chief Disciplinary Officer (CDO) and TCC.

(1) CSR review and approval is required for SHU terms with an established STG nexus, as described in section 3378.4(a).

(e) SHU Term Assessment Chart (Calculating determinate confinement to SHU).

(f) Staff shall apply the appropriate amount of time to calculate the maximum and minimum eligible release date of the SHU term, pursuant to subsection 3341.9(e). Both the maximum and minimum eligible release dates from SHU shall be established by assessing the appropriate number of months, followed by any remaining calendar days.

(1) SHU MOS refers to the maximum number of months assessed for a specific determinate term pursuant to subsection 3341.9(e).

(2) MERD TERM means a combination of months, followed by days which represent the minimum amount of time that must pass before a SHU term expires and is also referred to as the MERD. The MERD initially represents 50% or one-half of the maximum SHU term, as it incorporates 50% or one-half clean conduct credit. The MERD may be adjusted based upon subsequent serious misconduct.

(A) Unless previously suspended, the established MERD is the date the SHU term ends and the date on which the inmate is no longer on SHU status. When multiple MERD's exist, the most distant MERD shall be the controlling MERD.

(3) CLEAN CONDUCT CREDIT means a combination of months, followed by days which represent credits that shall be applied to the maximum determinate SHU term, as long as the inmate remains free of any subsequent serious misconduct through the MERD. Clean conduct credit is calculated as one-half or 50% of the assessed maximum SHU term.

NOTE: Authority cited: Section 5058, Penal Code. Reference: Sections 2933.6, 5054 and 5068, Penal Code; *Sandin v. Connor* (1995) 515 U.S. 472; *Madrid v. Gomez* (N.D. Cal. 1995) 889 F.Supp. 1146; *Toussaint v. McCarthy* (9th Cir. 1990) 926 F.2d 800; *Toussaint v. Yockey* (9th Cir. 1984) 722 F.2d 1490; *Castillo v. Alameida,* et al., (N.D. Cal., No.C94-2847); *Coleman v. Wilson* 912 F. Supp. 1282 (E.D. Cal. 1995); and *Clark v. California* 123 F. 3d 1267 (9th Cir. 1997).

HISTORY:

1. New section filed 6-1-2015 as an emergency; operative 6-1-2015 (Register 2015, No. 23). Pursuant to Penal Code section 5058.3, a Certificate of Compliance must be transmitted to OAL by 11-9-2015 or emergency language will be repealed by operation of law on the following day.

2. Certificate of Compliance as to 6-1-2015 order, including amendment of subsections (a)(2) and (b)(6), transmitted to OAL 10-19-2015 and filed 12-3-2015; amendments effective 12-3-2015 pursuant to Government Code section l 1343.4(b)(3) (Register 2015, No. 49).

3. New subsections (d)(l) and (e)(9)-(e)(9)(C) and subsection renumbering filed 10-9-2017 as an emergency; operative 10-9-2017 (Register 2017, No. 41). Pursuant to Penal Code section 5058.3, a Certificate of Compliance must be transmitted to OAL by 3-19-2018 or emergency language will be repealed by operation of law on the following day.

4. New subsections (d)(l) and (e)(9)-(e)(9)(C) and subsection renumbering refiled 3-5-2018 as an emergency; operative 3-19-2018 (Register 2018, No. 10). Pursuant to Penal Code section 5058.3, a Certificate of Compliance must be transmitted to OAL by 8-27-2018 or emergency language will be repealed by operation of law on the following day.

5. Certificate of Compliance as to 3-5-2018 order u·ansmitted to OAL 8-21-2018 and filed 10-3-2018 (Register 2018, No. 40).

Solares v. Diaz, E.D. Cal. No. 1:20-cv-00323

DEF 000147

| Offense | TYPICAL TERM | | |
|---|---|---|---|
| | Low | Expected | High |
| (1) Homicide: | | | |
| (A) Murder, attempted murder, solicitation of murder, or voluntary manslaughter of a non-inmate. | 36 | 48 | 60 |
| (B) Murder, attempted murder, solicitation of murder, or voluntary manslaughter of an inmate. | 24 | 36 | 48 |
| (2) Violence Against Persons: | | | |
| (A) Battery on a non-inmate with a weapon capable of causing serious or mortal injury; caustic substance or other fluids capable of causing serious or mortal injury; or physical force causing serious injury. | 18 | 30 | 42 |
| (B) Assault on a non-inmate with a weapon, capable of causing serious or mortal injury; caustic substance or other fluids capable of causing serious or mortal injury. | 9 | 15 | 21 |
| (C) Rape, sodomy, or oral copulation on a non-inmate, or any attempt. | 18 | 30 | 42 |
| (D) Battery on an inmate with a weapon capable of causing serious or mortal injury; caustic substance or other fluids capable of causing serious or mortal injury or physical force causing serious injury. | 12 | 18 | 24 |
| (E) Assault on an inmate with a weapon capable of causing serious or mortal injury; caustic substance or other fluids capable of causing serious or mortal injury. | 6 | 9 | 12 |
| (F) Rape, sodomy, or oral copulation of an inmate accomplished against the inmate's will, or any attempt. | 12 | 18 | 24 |
| (G) Battery on a non-inmate without serious injury. | 6 | 12 | 18 |
| (H) Assault on a non-inmate. | 3 | 6 | 9 |
| (I) Battery on an inmate without serious injury. (2 or more offenses within a 12 month period or 1 with direct STG nexus) | 2 | 4 | 6 |

198

Solares v. Diaz, E.D. Cal. No. 1:20-cv-00323
DEF 000148

| | | | |
|---|---|---|---|
| (3) Threat to Kill or Assault Persons: | | | |
| (A) To take or use a non-inmate as a hostage. | 18 | 30 | 42 |
| (B) Threat of violence to non-inmate. | 2 | 5 | 8 |
| (4) Possession of a Weapon: | | | |
| (A) Possession of a firearm or possession or manufacturing of an explosive device. | 18 | 30 | 42 |
| (B) Possession or manufacture/manufacturing of a Weapon including materials altered from their original manufactured state or purpose and which can be made into a weapon-other than a firearm or explosive device and which has been manufactured or modified so as to have the obvious intent or capability of inflicting serious injury, and which is under the immediate or identifiable control of the inmate. | 4 | 8 | 12 |
| (5) Distribution of Controlled Substances as defined in Section 3000. | 6 | 12 | 18 |
| (6) Escape: | | | |
| (A) With force or attempted escape with force against a person. | 12 | 24 | 36 |
| (B) Or attempted escape from any departmental prison or institution other than a camp, MSF, or reentry facility. | 6 | 12 | 18 |
| (7) Disturbance , Riot, or Strike: | | | |
| (A) Leading a disturbance, riot, or strike | 6 | 12 | 18 |
| (B) Active participation in a disturbance, riot, or Strike (2 or more offenses within a 12 month period or 1 with direct STG nexus). | 3 | 6 | 9 |
| (C) Inciting conditions likely to threaten institutional security | 3 | 6 | 9 |
| (8) Harassment: a willful course of conduct that terrorizes a specific person, group, or entity either directly or indirectly | 6 | 12 | 18 |

199

Solares v. Diaz, E.D. Cal. No. 1:20-cv-00323
DEF 000149

Case 1:20-cv-00323-LHR-FJS    Document 294-16    Filed 08/03/26    Page 30 of 61

| | | | |
|---|---|---|---|
| (9) STG Disruptive Behavior: | | | |
| (A) Acting in a leadership role by directing or controlling STG behavior that is a behavior listed in this SHU Assessment Chart | 6 | 12 | 18 |
| (B) Recruiting inmates to become an STG affiliate or to take part in STG activities that is a behavior listed in this SHU Assessment Chart. | 3 | 6 | 9 |
| (C) Acting in a leadership role to generate, move, or facilitate assets or proceeds as a result of or in support of prohibited STG business dealings | 3 | 6 | 9 |
| (10) Theft or destruction of State property by any means where the loss or potential loss exceeds $10,000 or threatens the safety of others. | 2 | 8 | 12 |
| (11) Extortion or Bribery: | | | |
| (A) Extortion or bribery of a non-inmate. | 4 | 8 | 12 |
| (B) Extortion or bribery of an inmate. | 2 | 3 | 4 |
| (12) Sexual Misconduct: | | | |
| (A) Indecent Exposure | 3 | 6 | 9 |
| (B) Sexual Disorderly conduct (two or more offenses within a twelve month period). | 3 | 6 | 9 |
| (13) Except as otherwise specified in this section or identified as an assault, proven attempts to commit any of the above listed offenses shall receive one-half (1/2) of the term specified for that offense. | | | |
| (14) Any inmate who conspires to commit or solicits another person to commit any of the offenses above shall receive the term specified for that offense. | | | |

200

Solares v. Diaz, E.D. Cal. No. 1:20-cv-00323
DEF 000150

Case 1:20-cv-00323-LHR-FJS    Document 294-16    Filed 08/03/26    Page 31 of 61

**3342. Case Review.**

(a) The case of every inmate assigned to a segregated housing unit will be continuously reviewed and evaluated by custodial and casework staff assigned to the unit. Staff will confer on each case no less frequently than once a week during the first two months of the inmate's segregated status. Such case reviews will not be necessary during any week in which the inmate's case is reviewed by a regular or special classification committee or by staff who are authorized to take classification actions. Any significant observations, determinations or recommendations, will be documented on the inmate's CDC Form 114-A, Detention/Segregation Record.

(b) Psychological Assessment. A psychological assessment of the inmate's mental health will be included in the case review and classification committee review of inmates assigned to segregated housing units. When any indication of psychiatric or psychological problems exists, the case will be referred to the institution's psychiatrist or psychologist for further evaluation and recommended classification committee actions, if any.

NOTE: Authority cited: Section 5058, Penal Code. Reference: Section 5054, Penal Code.

HISTORY:

1. Amendment of subsection (a) filed 6-1-2015 as an emergency; operative 6-1-2015 (Register 2015, No. 23). Pursuant to Penal Code section 5058.3, a Certificate of Compliance must be transmitted to OAL by 11-9-2015 or emergency language will be repealed by operation of law on the following day.
2. Certificate of Compliance as to 6-1-2015 order, including further amendment of subsection (a), transmitted to OAL 10-19-2015 and filed 12-3-2015; amendments effective 12-3-2015 pursuant to Government Code section 11343.4(b)(3) (Register 2015, No. 49).

**3343. Conditions of Segregated Housing.**

For the purposes of this section, special purpose segregated housing includes, but is not limited to, Administrative Segregation Units (ASU) and Segregated Program Housing Units (SPHU).

(a) Living Conditions. In keeping with the special purpose of an Administrative Segregation Unit (ASU) or Segregated Program Housing Unit (SPHU), the physical conditions of special purpose segregated housing ASU and SPHU will approximate those of the general population, with the exception of the physical layout of the building itself and necessary security measures that must be enforced to provide the level of security, control, and supervision required to serve that special purpose.

(b) Restrictions. Whenever an inmate in ASU or SPHU is deprived of any usually authorized item or activity and the action and reason for that action is not otherwise documented and available for review by administrative and other concerned staff, a report of the action will be made and forwarded to the unit administrator as soon as possible.

(c) Clothing. No inmate in ASU or SPHU shall be required to wear clothing that significantly differs from that worn by other inmates in the unit, except that temporary adjustments may be made in an inmate's clothing as is necessary for security reasons or to protect the inmate from self-inflicted harm. No inmate shall be clothed in any manner intended to degrade the inmate.

(d) Meals. Inmates assigned to ASU or SPHU, shall be fed the same meal and ration as is provided for inmates of the general population, except that a sandwich meal may be served for lunch. Deprivation of food will not be used as punishment.

(e) Mail. Inmates assigned to ASU or SPHU, shall not be restricted in their sending and receiving of personal mail, except that incoming packages may be limited in number, and in content to that property permitted in the segregated unit to which an inmate is assigned.

(f) Visits. Inmates assigned to ASU, SHU and PSU shall be permitted non contact visits, unless otherwise specified in section 3170.1(f), General Visiting.

(g) Personal Cleanliness. Inmate's assigned to ASU or SPHU, shall be provided the means to keep themselves clean and well-groomed. Haircuts will be provided as needed. Showering and shaving shall be permitted at least three times a week. Clothing, bedding, linen and other laundry items shall be issued and exchanged no less often than is provided for general population inmates.

(h) Exercise. Inmates assigned to ASU or SPHU shall be permitted a minimum of one hour per day, five days a week, of exercise outside their rooms or cells unless security and safety considerations preclude such activity. When ASU or SPHU are equipped with their own recreation yard, the yard periods may substitute for other out of cell exercise periods, providing the opportunity for use of the yard is available at least three days per week for a total of not less than 10 hours a week.

(i) Reading Material. Inmates assigned to ASU or SPHU, shall be permitted to obtain and possess the same publications, books, magazines and newspapers as are inmates of the general population, except the quantity may be limited for safety and security reasons. Library services shall be provided and will represent a cross-section of material available to the general population.

U) Telephones. Institutions shall establish procedures for the making of outside telephone calls by inmates in ASU or SPHU. Such procedures will approximate those for the work/training incentive group to which the inmate is assigned, except that individual calls must be specifically approved by the supervisor in charge or the administrator of the unit before a call is made.

(k) Institution Programs and Services. Inmates assigned to ASU or SPHU shall be permitted to participate and have access to such programs and services as can be reasonably provided within the unit without endangering security or the safety of persons. Such programs and services may include, but are not limited to: education, commissary, library services, social services, counseling, religious guidance and recreation.

(/) Visitation and Inspection. Inmates assigned to ASU or SPHU shall be seen daily by the custodial supervisor in charge of the unit and by a physician, registered nurse or medical technical assistant, and, by request, members of the program staff. A timely response should be given to such requests whenever reasonably possible. Any indication of medical or mental health distress, shall be immediately referred for further evaluation.

(m) Disruptive Cases. Inmates assigned to ASU or SPHU who persist in disruptive, destructive, or dangerous behavior and who will not heed or respond to orders and warnings to desist shall be referred for a mental health evaluation.

NOTE: Authority cited: Section 5058, Penal Code. Reference: Sections 2601(d) and 5054, Penal Code.

HISTORY:

1. Amendment of subsections (e), (f) and (j) filed 2-16-83; effective thirtieth day thereafter (Register 83, No. 8).
2. Amendment of subsection (I) filed 8-15-89; operative 9-14-89 (Register 89, No. 33).
3. Amendment filed 6-1-2015 as an emergency; operative 6-1-2015 (Register 2015, No. 23). Pursuant to Penal Code section 5058.3, a Certificate of Compliance must be Htransmitted to OAL by 11-9-2015 or emergency language will be repealed by operation of law on the following day.
4. Certificate of Compliance as to 6-1-2015 order transmitted to OAL 10-19-2015 and filed 12-3-2015 (Register 2015, No. 49).
5. Amendment of subsection (m) filed 3-7-2017; operative 3-7-2017 pursuant to Government Code section 11343.4(b)(3) (Register 2017, No. 10).

Solares v. Diaz, E.D. Cal. No. 1:20-cv-00323
DEF 000151

**3344.  Administrative Segregation Records.**

(a) A CDC Form 114, Isolation Log (rev: 3/03), shall be maintained in each ASU and SPHU. One Isolation Log may serve two or more special purpose units which are administered and supervised by the same staff members.

(b) A separate record shall be maintained for each inmate assigned to administrative segregation, including SHU and PSU. This record shall be compiled on CDC Form 114-A Detention/Segregation Record, including all identifying information required on the form. Additionally, all significant information relating to the inmate during the course of segregation, from reception to release, including, but not limited to, documentation of all programs, activities, and services afforded the inmate while segregated and note any significant staff observations, determinations or recommendations regarding unusual behavior displayed by the inmate during this period shall be entered in chronological order.

NOTE: Authority cited: Section 5058, Penal Code. Reference: Section 5054, Penal Code.

HISTORY:
1. Amendment filed 6-1-2015 as an emergency; operative 6-1-2015 (Register 2015, No. 23). Pursuant to Penal Code section 5058.3, a Certificate of Compliance must be transmitted to OAL by 11-9-2015 or emergency language will be repealed by operation of law on the following day.
2. Certificate of Compliance as to 6-1-2015 order, including further amendment of subsection (b), transmitted to OAL 10-19-2015 and filed 12-3-2015; amendments effective 12-3-2015 pursuant to Government Code section 11343.4(b)(3) (Register 2015, No. 49).

Article  7.5.    Administration of Death Penalty

**3349.  Method of Execution. [Repealed]**

NOTE: Authority cited: Sections 1227, 3604, 3604.1 and 5058, Penal Code. Reference: Sections 190, 1227, 3603, 3604 and 5054, Penal Code.

HISTORY:
1. New article 7.5 and section filed 12-22-92 as an emergency; operative 1-1-93 (Register 93, No. 1). A Certificate of Compliance must be transmitted to OAL 4-22-92 or emergency language will be repealed by operation of law on the following day.
2. Certificate of Compliance as to 1-22-92 order transmitted to OAL 4-9-93 and filed 4-29-93 (Register 93, No. 18).
3. Amendment of section and repealer and new form CDC 1801 filed 12-10-98; operative 1-9-99 (Register 98, No. 50).
4. Amendment of article heading and section, repealer and incorporation by reference of new form CDC 180l and amendment of Note filed 7-30-2010; operative 8-29-2010 (Register 2010, No. 31).
5. Change without regulatory effect amending article heading, section and Note filed 11-5-2015 pursuant to section 100, title 1, California Code of Regulations (Register 2015, No. 45).
6. Amendment of article heading, section and Note filed 3-1-2018; operative 3-1-2018. Exempt from the Administrative Procedure Act pursuant to Penal Code section 3604.1. Submitted to OAL for filing and printing only (Register 2018, No. 9).
7. Repealer of article 7.5 (sections 3349-3349.9) and repealer of section filed 3-18-2019; operative 3-18-2019. Submitted to OAL for filing and printing only. Exempt from Administrative Procedure Act pursuant to Penal Code section 3604.1 (Register 2019, No. 12).

**3349.1.  Definitions. [Repealed]**

NOTE: Authority cited: Sections 1227, 3604, 3604.1 and 5058, Penal Code. Reference: Sections 190, 1227, 3600, 3601, 3602, 3603, 3604, 3605, 3607, 3700.5 and 5054, Penal Code; *Baze v. Rees* (2008) 553 U.S. 35; and *Towery v. Brewer* (2012) 672 F.3d 650.

HISTORY:
1. New section filed 3-1-2018; operative 3-1-2018. Exempt from the Administrative Procedure Act pursuant to Penal Code section 3604.1. Submitted to OAL for filing and printing only (Register 2018, No. 9).
2. Repealer filed 3-18-2019; operative 3-18-2019. Submitted to OAL for filing and printing only. Exempt from Administrative Procedure Act pursuant to Penal Code section 3604.1 (Register 2019, No. 12).

**3349.2.  Recruitment, Selection and Annual Review of Lethal Injection Team Members. [Repealed]**

NOTE: Authority cited: Sections 3604, 3604.l and 5058, Penal Code. Reference: Sections 190, 3600, 3603, 3604, and 5054, Penal Code; Section 19130, Government Code; United States Constitution, Amendment VIII; California Constitution, Art. **1,** Sections **1,** 17, 27; Death-Penalty Case Protective Order dated 4/3/06, *Morales v. Woodford,* U.S. District Court Northern District of California (No. 5:06-cv-00219-JF).

**HISTORY:**
1. New section filed 3-1-2018; operative 3-1-2018. Exempt from the Administrative Procedure Act pursuant to Penal Code section 3604.1. Submitted to OAL for filing and printing only (Register 2018, No. 9).
2. Repealer filed 3-18-2019; operative 3-18-2019. Submitted to OAL for filing and printing only. Exempt from Administrative Procedure Act pursuant to Penal Code section 3604.1 (Register 2019, No. 12).

**3349.3.  Lethal Injection Team Training. [Repealed]**

NOTE: Authority cited: Sections 3604, 3604.l and 5058, Penal Code. Reference: Sections 190, 3603, 3604 and 5054, Penal Code; United States Constitution, Amendment VIII; and California Constitution, Art. 1, Sections 17, 27.

HISTORY:
1. New section filed 3-1-2018; operative 3-1-2018. Exempt from the Administrative Procedure Act pursuant to Penal Code section 3604.1. Submitted to OAL for filing and printing only (Register 2018, No. 9).
2. Repealer filed 3-18-2019; operative 3-18-2019. Submitted to OAL for filing and printing only. Exempt from Administrative Procedure Act pursuant to Penal Code section 3604.1 (Register 2019, No. 12).

**3349.4.  Execution Site Operation. [Repealed]**

NOTE: Authority cited: Sections 3604, 3604.l and 5058, Penal Code. Reference: Sections 190, 3603, 3604, 3605 and 5054, Penal Code; United States Constitution, Amendment VIII; and California Constitution, Art. 1, Sections 17, 27.

HISTORY:
1. New section filed 3-1-2018; operative 3-1-2018. Exempt from the Administrative Procedure Act pursuant to Penal Code section 3604.1. Submitted to OAL for filing and printing only (Register 2018, No. 9).
2. Repealer filed 3-18-2019; operative 3-18-2019. Submitted to OAL for filing and printing only. Exempt from Administrative Procedure Act pursuant to Penal Code section 3604.1 (Register 2019, No. 12).

**3349.5.  Responsibilities and Tasks Upon Receipt and Service of the Execution Warrant. [Repealed]**

NOTE: Authority cited: Sections 636, 1227, 3604, 3604.1, 3605, 3700.5, 3701 and 5058, Penal Code, *Glossip v. Gross* (June 29, 2015, No. 14-7955) 576 U.S. [135 S.Ct. 2726, 2732]; *Thorburn et al. v. Depart. of Corrections et al.* (1998) 66 Cal.App. 4th 1284; *Morales v. Tilton* (2006) 465 F.Supp.2d 972, 983. See also *Heckler v. Chaney* (1985) 470 U.S. 821; *O'Bryan v. McKaskle,* (5th Cir. 1984) 729 F.2d 991; *Abdur'Rahman v. Bredesen,* 181 S.W.3d 292 (Tenn. 2005), cert. denied, 126 S.Ct. 2288, 164 L.Ed.2d 813 (U.S. 2006); *State v. Deputy,* (Del. Super. Ct. 1994) 644 A.2d 411. *Morales v. Hickman,* Case Nos.

Solares v. Diaz, E.D. Cal. No. 1:20-cv-00323
DEF 000152

is listed in subdivision (c) of section 667.5 of the Penal Code, then all convictions and enhancements shall be considered violent for the purpose of Good Conduct Credit.

(2) While an inmate is serving a term for a violent offense as defined in subdivision (c) of section 667.5 of the Penal Code concurrently with a term for a non-violent offense, Good Conduct Credit shall be determined based on the violent offense. Upon completion of the term for a violent offense, Good Conduct Credit shall be determined based on the remaining non-violent offense.

(h) Striking the Strike Allegation. When allegations pursuant to section 1170.12 or subdivisions (b) through (i) of section 667 of the Penal Code are stricken by the sentencing court in accordance with subdivisions (a) or (c) of section 1385 of the Penal Code, Good Conduct Credit will be applied based on the provisions found in section 3043.2(b)(4) of this title.

NOTE: Authority cited: Cal. Const., art. 1, sec. 32(b), Sections 2930, 2931, 2932, 2932.5, 2933, 2933.05, 2933.1, 2933.2, 2933.3, 2933.5, 2933.6, 2934, 2935 and 5058, Penal Code. Reference: Sections 667, 667.5, 1168, 1170, 1170.1, 1170.12, 1192.7, 1203, 2900, 2900.1, 2900.5 and 5054, Penal Code; Section 1782, Welfare and Institutions Code; *In re Thomas* (1982) 132 Cal.App.3d. 779; *People v. Ramos* (1996) 50 Cal.App.4th 810; *In re Pope* (2010) 50 Cal.4th 777; *In re Pacheco* (2007) 155 Cal.App.4th 1439; *in re Reeves* (2005) 35 Cal.4th 765; and *People v. Sengdara* (Super. Ct. Orange County, 2016, No. M-16673XA).

HISTORY:
1. New section filed 12-20-91 as an emergency; operative 12-20-91 (Register 92, No. 4). A Certificate of Compliance must be transmitted to OAL 4-20-92 or emergency language will be repealed by operation of law on the following day.
2. Certificate of Compliance as to 12-20-91 order including amendment of subsection (d)(l) transmitted to OAL 4-20-92 and filed 6-2-92 (Register 92, No. 24).
3. New subsection (h) and amendment of Note filed 12-10-2002; operative 1-9-2002 (Register 2002, No. 50).
4. Change without regulatory effect amending subsection (b)(4) filed 3-11-2013 pursuant to section 100, title 1, California Code of Regulations (Register 2013, No. 11).
5. Amendment of section heading, repealer and new section and amendment of Note filed 12-29-2017 as an emergency; operative 1-1-2018 (Register 2017, No. 52). Pursuant to Penal Code section 5058.3, a Certificate of Compliance must be transmitted to OAL by 6-11-2018 or emergency language will be repealed by operation of law on the following day.
6. Amendment of section heading, repealer and new section and amendment of Note refiled 6-7-2018 as an emergency pursuant to Penal Code section 5058.3; operative 6-12-2018 (Register 2018, No. 23). Pursuant to Penal Code section 5058.3(a) and Government Code section 11346.1(h), a Certificate of Compliance must be transmitted to OAL by 9-10-2018 or emergency language will be repealed by operation of law on the following day.
7. Certificate of Compliance as to 6-7-2018 order, including amendment of section and further amendment of Note, transmitted to OAL 9-5-2018 and filed 10-17-2018; amendments operative 10-17-2018 pursuant to Government Code section l 1343.4(b)(3) (Register 2018, No. 42).

**3371.2.  Credits for Escapee or Parole Violator.**

(a) An escapee or parole violator shall receive credit on their sentence for time in another jurisdiction's custody when they are held on "our hold only" and are available for return to the department's custody. No credit shall be applied for the time they are held on "our hold only" and are resisting extradition.

(b) An escapee or parole violator in local confinement is available except when serving a sentence in lieu of a fine or a sentence expressly ordered to run consecutively to their existing prison term.

(c) An escapee or parole violator in local confinement is available on the date our hold was placed or, if declared at-large and parole was suspended, the date of their arrest.

NOTE: Authority cited: Section 5058, Penal Code. Reference: Sections 2900 and 5054, Penal Code.

HISTORY:
1. New section filed 12-20-91 as an emergency; operative 12-20-91 (Register 92, No. 4). A Certificate of Compliance must be transmitted to OAL 4-20-92 or emergency language will be repealed by operation of law on the following day.
2. Certificate of Compliance as to 12-20-91 order transmitted to OAL 4-20-92 and filed 6-2-92 (Register 92, No. 24).

## Article 10.  Classification

**3375.  Classification Process.**

(a) The classification process shall be uniformly applied, commencing upon reception of a person committed to the custody of the Secretary and shall continue throughout the time the individual remains under the Secretary's jurisdiction. Each inmate shall be individually classified in ac:cordance with this article. Senate Bill 618 Participants, as defined in section 3000 and pursuant to subsection 3077.l(a)(l)(C), shall receive a preliminary classification at a county facility prior to reception at a departmental institution.

(b) The classification process shall take into consideration the inmate's needs, interests and desires, his/her behavior and placement score in keeping with the Department and institution's/facility's program and security missions and public safety.

(c) Each determination affecting an inmate's placement within an institution/facility, transfer between facilities, program participation, privilege groups, or custody designation shall be made by a classification committee composed of staff knowledgeable in the classification process.

(d) The classification of felon inmates shall include the classification score system as established. A lower placement score indicates lesser security control needs and a higher placement score indicates greater security control needs.

(e) When possible, the inmate shall be given sufficient advance written notice of any classification committee hearing to provide the inmate reasonable preparation time to discuss the matter to be considered. An inmate appearing before a classification committee shall be informed of the inmate's next classification committee hearing date when it is known or can be anticipated.

(f) The classification of inmates shall provide the following procedural safeguards:

(1) Inmates shall be given written notice at least 72 hours in advance of a hearing which could result in an adverse effect. Adverse effect is defined as:

(A) Involuntary transfer to a higher security level institution/facility, which is not consistent with the inmate's placement score.

(B) Increase in the inmate's custody designation.

(C) Involuntary placement in segregated housing.

(D) Involuntary removal from an assigned program.

(E) Placement in a reduced work group.

(F) Involuntary transfer to another institution/facility because of the inmate's misbehavior or receipt of new information that may affect staff, inmates, the public, or the safety and security of the institution/facility, whether or not his/her placement score is consistent with the receiving institution's/facility's security level.

(G) Transfer of an inmate to a more restrictive institution or program where the security level is higher.

(2) Except as provided in subsection 3375(f)(3), the inmate shall be present at all initial classification committee hearings and at any other classification committee hearing which could result in an adverse effect upon the inmate.

(3) An in absentia (without inmate's presence) classification hearings may be held only when:

(A) The inmate refuses to appear before the committee.

Solares v. Diaz, E.D. Cal. No. 1:20-cv-00323
DEF 000153

Case 1:20-cv-00323-LHR-FJS    Document 294-16    Filed 08/03/26    Page 34 of 61

(B) The inmate is physically incapable of appearing before the committee, or is determined by a psychiatrist to be mentally incompetent and cannot understand the purpose of the hearing.

(C) The purpose of the hearing is to:

1. Improve the inmate's conditions of confinement by reducing or removing a previously imposed restriction.

2. Approve an action requested in writing by the inmate.

3. Determine the need for scheduling, or to schedule, a future classification committee action.

(4) If the inmate was not previously notified and during the classification committee hearing an unanticipated adverse effect emerges, the hearing shall be postponed for at least 72 hours and the inmate shall be referred to the inmate's counselor for assistance when the inmate is illiterate, or the issues are complex unless:

(A) The hearing cannot be postponed because of safety or security factors.

(B) The inmate waives the 72-hour postponement.

(5) The inmate shall be permitted to contest the preliminary score or placement score in the hearing.

(6) Each inmate appearing before a classification committee shall be:

(A) Introduced to the committee members.

(B) Informed of the purpose of the hearing.

(C) Encouraged to participate in the hearing discussion.

(D) Informed of the committee's decision.

(7) Classification committee decisions shall be based on evaluation of available information and mutual agreement of the committee members.

(g) Every decision of a classification committee shall be documented on a CDC Form 128-G, Classification Chrono (Rev. 10/89).

(1) Each classification committee's documentation shall include, but not be limited to the following:

(A) The reason or purpose for the committee hearing.

(B) The action taken.

(C) The specific reasons for the action including the information upon which the decision was based.

(D) The inmate's stated preferred action, the reasons for the preference, and his/her agreement or disagreement with the committee action.

(E) If applicable, the use of any reasonable accommodation to ensure effective communication.

(F) If during the committee discussion, a member of the committee disagrees with a decision or the basis for a decision reached by the committee, he or she may provide language to the recorder to document his or her opinion for inclusion in the CDC Form 128-G.

(G) The reason(s) for the omission of any of the classification procedural safeguards identified in subsection 3375(t).

(H) If an in absentia hearing is held, reason(s) for the inmate being absent.

(I) The name, title, and signature of the committee's chairperson.

(J) The names and titles of staff who participated in the decision.

(K) The name, title, and signature of the committee's recorder.

(L) The date of the action.

(2) In addition to the preceding, documentation for transfer reviews shall also include the following:

(A) The inmate's requested transfer preference(s) and stated reason(s) for preferring that location.

(B) The institution to which the committee recommends transfer with an alternate recommendation, if different from those requested by the inmate, and the specific reasons for both recommendations.

(C) A statement of the inmate's work group upon transfer based on adverse or non-adverse transfer circumstances.

(D) Where present, the Board of Parole Hearings (BPH) No Later Than (NLT) date and/or next scheduled BPH hearing date.

(3) When the inmate is treated under the Mental Health Services Delivery System (MHSDS) and is at the Enhanced Outpatient Program (EOP) or the Mental Health Crises Bed (MHCB) level of care, regardless of the inmate's housing, a clinician is required as a committee member at all hearings. When the inmate is in segregated housing and treated under the MHSDS at any level of care, a clinician is required as a committee member at all hearings. Documentation shall include, but not be limited to the following:

(A) The inmate's current medical/psychiatric status/level of care.

(B) MHSDS treatment needs.

(C) The inmate's ability to understand and participate in the classification hearing.

(4) In all hearings when the inmate is treated under the MHSDS and is housed in segregated housing, documentation shall include the requirements indicated in subsection 3375(g)(3) as well as the following:

(A) A clinical assessment of the inmate's likelihood of decompensation if retained in segregated housing.

(B) A summary of the clinical information provided by the clinician when an actively decompensating mentally ill inmate is recommended for transfer to a mental health program by the clinician and the decision of the committee is to retain the inmate in segregated housing.

(5) Documentation from each institution's initial classification reviews shall include the following case factors:

(A) Date of birth or age on the date of committee.

(B) Term status (first, second, etc.)

(C) County(ies) of commitment.

(D) Commitment offense(s) (include parole revocation offense(s) resulting in good cause/probable cause findings if a parole violator.)

(E) Length of sentence.

(F) When the inmate was received by the Department for the current incarceration.

(G) County of last legal residence.

(H) Escape related conviction(s).

(I) Current or potential hold(s).

(J) Arson related arrest(s) or conviction(s).

(K) Sex-related arrest(s) or conviction(s) by date.

(L) The current placement score, security level, and custody designation.

(M) The reason(s) the inmate was transferred to the current location.

(N) Current eligibility status for special programs such as camp, minimum support facility, or community correctional facility. If not eligible, the reason for each shall be noted.

(0) Current assignments (including work group and privilege group).

(P) Enemy or STG concerns.

(Q) The existence of, and committee review of, confidential information.

(R) Any medical/psychiatric/disability concerns, including tuberculosis tracking code and date of the most current documentation.

(S) Any other pertinent case information and/or casework follow-up needed.

(6) Documentation for each classification committee review for transfer to the COCF program shall include the case factors listed in 3375(g)(5) and;

(A) Attorney consultation.

(B) Conviction history.

(h) An inmate shall be provided a copy of all non-confidential CDCR staff-generated documentation and reports placed in the

210

inmate's central file unless otherwise requested in writing by the inmate.

(i) An inmate shall not remain at an institution/facility with a security level which is not consistent with the inmate's placement score unless approved by a Classification Staff Representative (CSR) or a staff person designated to serve in that capacity.

(j) A CDCR Form 839, (Rev. 07/12), CDCR Classification Score Sheet, shall be prepared pursuant to section 3375.3 on each newly received felon.

(1) In completing the CDCR Form 839, all relevant documents available during the reception center process shall be reviewed. The inmate shall be interviewed, informed of the purpose of the form, and allowed to contest specific item scores and other case factors on the form. Factors for which documentation is absent or conflicting shall be discussed during the interview.

(2) The inmate is responsible for providing documentation to support their challenge of any information on the CDCR Form 839.

(3) An effort shall be made to obtain verifiable documentation of all items on the CDCR Form 839. The probation officer's report (POR) shall be the document of choice to resolve any conflicting information received. Credit shall be given only upon verifiable documentation and shall not be given based solely on an inmate's statements.

(4) A corrected CDCR Form 839 shall be initiated when the inmate or another party presents verifiable documentation to support the change. When the change results in a placement score which falls into the range for a different facility security level, the inmate's case shall be referred to a CSR for transfer consideration.

(k) A CDCR Form 840 (Rev. 07/12), CDCR Reclassification Score Sheet shall be prepared pursuant to section 3375.4 as part of the regular, continuous classification process. If an inmate's recalculated placement score is not consistent with the institution/facility security level where the inmate is housed, the case shall be presented to a CSR for transfer consideration.

(1) A CDCR Form 840 shall be completed:

(A) Twelve months after the date that the inmate physically arrived in the reception center and annually thereafter.

(B) Any six-month period when favorable points are granted or unfavorable points are assessed which would cause the inmate's placement score to fall outside of the facility security level.

(C) Each time a case is presented to a CSR for placement consideration.

(2) A CDCR Form 841 (Rev. 07/12), CDCR Readmission Score Sheet, shall be completed pursuant to section 3375.5 as part of the readmission process when a parolee is returned to prison.

(l) An automated needs assessment tool that identifies an inmate's criminogenic needs shall be administered pursuant to Section 3375.6.

NOTE: Authority cited: Sections 5058 and 5058.3, Penal Code. Reference: Sections 1203.8, 3020, 5054, 5068 and 11191, Penal Code; Sections 8550 and 8567, Government Code; and Governor's Prison Overcrowding State of Emergency Proclamation dated October 4, 2006; *Wright v. Enomoto* (1976) 462 F.Supp. 397; *Stoneham v. Rushen* (1984) 156 Cal.App.3d 302; and *Castillo v. Alameida, et al.,* (N.D. Cal., No. C94-2847).

HISTORY:

l. Amendment filed 1-4-88 as an emergency; operative 1-4-88 (Register 88, No. 16). A Certificate of Compliance must be transmitted to OAL within 120 days or emergency language will be repealed on 5-3-88. For prior history, see Register 88, No. 8.

2. Certificate of Compliance as to 1-4-88 order transmitted to OAL 5-3-88; disapproved by OAL (Register 88, No. 24).

3. Amendment filed 6-2-88 as an emergency; operative 6-2-88 (Register 88, No. 24). A Certificate of Compliance must be transmitted to OAL within 120 days or emergency language will be repealed on 9-30-88.

4. Amendment of subsection (b) filed 9-19-88 as an emergency; operative 9-19-88 (Register 88, No. 39). A Certificate of Compliance must be transmitted to OAL within 120 days or emergency language will be repealed on 1-17-89.

5. Certificate of Compliance including amendment transmitted to OAL 9-26-88 and filed 10-26-88 (Register 88, No. 50).

6. Certificate of Compliance as to 9-19-88 order transmitted to OAL 1-18-89 and filed 2-2-89 (Register 89, No. 8).

7. Change without regulatory effect amending section filed 10-22-90 pursuant to section 100, title 1, California Code of Regulations (Register 91, No. 4).

8. Editorial correction of typing errors in subsections (b) and (g) (Register 91, No. 11).

9. Editorial correction of printing errors (Register 92, No. 5).

10. New subsection (t)(l)(F) filed 1-16-92; operative 2-17-92 (Register 92, No. 13).

11. Amendment of subsection (c) filed 5-5-95; operative 6-5-95 (Register 95, No. 18).

12. Amendment filed 10-17-97; operative 11-16-97 (Register 97, No. 42).

13. Amendment of section and Note filed 8-27-2002 as an emergency; operative 8-27-2002 (Register 2002, No. 35). Pursuant to Penal Code section 5058.3 a Certificate of Compliance must be transmitted to OAL by 2-4-2003 or emergency language will be repealed by operation of law on the following day.

14. Certificate of Compliance as to 8-27-2002 order, including further amendment of section, transmitted to OAL 1-21-2003 and filed 3-6-2003 (Register 2003, No. 10).

15. Amendment of subsection (h) and Note filed 5-25-2006; operative 5-25-2006 pursuant to Government Code section 11343.4 (Register 2006, No. 21).

16. Change without regulatory effect amending Note filed 12-4-2006 pursuant to section 100, title 1, California Code of Regulations (Register 2006, No. 49).

17. New subsections (g)(6)-(g)(6)(B) and amendment of Note filed 10-30-2008 as an emergency; operative 10-30-2008 (Register 2008, No. 44). Pursuant to Penal Code section 5058.3, a Certificate of Compliance must be transmitted to OAL by 4-8-2009 or emergency language will be repealed by operation of law on the following day.

18. Amendment of subsection (a) and Note filed 2-5-2009 as an emergency; operative 2-5-2009 (Register 2009, No. 6). This filing contains a certification that the operational needs of the Department required filing of these regulations on an emergency basis and were deemed an emergency pursuant to Penal Code section 5058.3. A Certificate of Compliance must be transmitted to OAL by 7-15-2009 or emergency language will be repealed by operation of law on the following day.

19. Certificate of Compliance as to 10-30-2008 order transmitted to OAL 4-1-2009 and filed 5-12-2009 (Register 2009, No. 20).

20. Certificate of Compliance as to 2-5-2009 order transmitted to OAL 6-25-2009 and filed 7-28-2009 (Register 2009, No. 31).

21. New subsection (1) and amendment of Note filed 5-10-2012 as an emergency; operative 5-10-2012 (Register 2012, No. 19). Pursuant to Penal Code section 5058.3, a Certificate of Compliance must be transmitted to OAL by 10-17-2012 or emergency language will be repealed by operation of law on the following day.

22. Amendment of subsections (a)-(c), (g)(l), (g)(2)(C), (g)(3), (g)(5)(A)-(B), (g)(5)(D), (g)(5)(F), (g)(5)(L), (g)(5)(N), (h)-(k)(l) and (k)(2) and new subsection (g)(5)(S) filed 6-26-2012 as an emergency; operative 7-1-2012 (Register 2012, No. 26). Pursuant to Penal Code section 5058.3, a Certificate of Compliance must be transmitted to OAL by 12-10-2012 or emergency language will be repealed by operation of law on the following day.

23. New subsection (1) and amendment of Note refiled 10-17-2012 as an emergency; operative 10-17-2012 (Register 2012, No. 42). A Certificate of Compliance must be transmitted to OAL by 1-15-2013 or emergency language will be repealed by operation of law on the following day.

24. Editorial correction of History 23 providing corrected Certificate of Compliance date (Register 2012, No. 44).

25. Certificate of Compliance as to 6-26-2012 order transmitted to OAL 12-5-2012 and filed 1-17-2013 (Register 2013, No. 3).

26. Certificate of Compliance as to 10-17-2012 order transmitted to OAL 1-15-2013 and filed 2-25-2013 (Register 2013, No. 9).

27. Amendment of subsections (g) and (g)(5)(P) filed 10-17-2014; operative 10-17-2014 pursuant to Government Code section 11343.4(b)(3) (Register 2014, No. 42).

28. New subsection (g)(2)(D) filed 2-9-2017 as an emergency; operative 2-20-2017 (Register 2017, No. 6). A Certificate of Compliance must be transmitted to OAL by 7-31-2017 or emergency language will be repealed by operation of law on the following day.

29. Certificate of Compliance as to 2-9-2017 order transmitted to OAL 7-12-2017 and filed 8-23-2017 (Register 2017, No. 34).

30. Amendment of subsection (g) filed 10-9-2017 as an emergency; operative 10-9-2017 (Register 2017, No. 41). Pursuant to Penal Code section 5058.3, a Certificate of Compliance must be transmitted to OAL by 3-19-2018 or emergency language will be repealed by operation of law on the following day.

31. Amendment of subsection (g) refiled 3-5-2018 as an emergency; operative 3-19-2018 (Register 2018, No. 10). Pursuant to Penal Code section 5058.3, a Certificate of Compliance must be transmitted to OAL by 8-27-2018 or emergency language will be repealed by operation of law on the following day.

32. Certificate of Compliance as to 3-5-2018 order transmitted to OAL 8-21-2018 and filed 10-3-2018 (Register 2018, No. 40).

**3375.1.   Inmate Placement.**

(a) Except as provided in section 3375.2, each inmate shall be assigned to a facility with a security level which corresponds to the following placement score ranges:

(1) An inmate with a placement score of O through 18 shall be placed in a Level I facility.

(2) An inmate with a placement score of 19 through 35 shall be placed in a Level II facility.

(3) An inmate with a placement score of 36 through 59 shall be placed in a Level III facility.

(4) An inmate with a placement score of 60 and above shall be placed in a Level IV facility.

(A) Level IV facilities, as described in section 3377(d), include 180-design and 270-design housing. An inmate with a Level IV placement score may be housed in a Level IV 180-design facility in accordance with the following criteria:

1. Inmates who have an assessed and imposed, suspended, and/ or commuted determinate Security Housing Unit (SHU) term for a Division A-1, A-2, or B offense, which involves assaultive/violent behavior, weapons, or distribution of a controlled substance, pursuant to section 3323, within the last three incarcerated years, shall be excluded from Level IV 270-design housing for three years from the Minimum Eligible Release Date (MERD) or the date of the Institution Classification Committee (ICC) action suspending and/ or commuting the SHU term, whichever comes first. If the inmate was not placed into Administrative Segregation Unit (ASU) for the offense, the inmate is not excluded from 270-design housing.

2. Inmates found guilty of any of the following Rules Violation Reports (RVRs) within the last a twelve months of incarceration shall be excluded from Level IV 270-design housing for one year from the MERD or the date of the ICC action suspending and/or commuting the SHU term for the most current offense, whichever occurs first. If the inmate was not placed into ASU for the offense, the inmate is not excluded from 270-design housing.

(i) One RVR for Inciting a Riot.

(ii) One RVR for Participation in a Riot with a direct Security Threat Group (STG) nexus.

(iii) Two or more RVR's for Participation in a Riot.

(iv) One RVR for Assault on Non-Inmate.

(v) One RVR for Battery on an Inmate with a direct STG nexus.

(vi) Two or more RVRs for Battery on an Inmate.

3. Inmates released from SHU or a Psychiatric Services Unit (PSU) after serving an Administrative SHU Term shall be reviewed by DRB, in accordance with Section 3376.l(d) for appropriate housing.

4. If during Reception Center processing, and inmate is deemed a security concern and is potentially an ongoing threat to institutional safety and security, warranting more direct and constant supervision, the inmate shall be excluded from Level IV 270-design housing for one year from the date of the Classification Staff Representative endorsement.

5. Inmates excluded from Level IV 270-design housing but requiring exceptional placement may be housed in a Level IV 270-design facility. Exceptional placements, for purposes of this subsection, are inmates who are in medical or mental health treatment programs, such as a developmental disability, Americans with Disabilities Act mobility impairment that impacts placement, or in need of specific medical programs which may not be available in Level IV 180-design facilities.

(B) The ICC may temporarily exclude an inmate from Level IV 270-design housing pending adjudication of an RVR listed in subsections 3375.l(a)(4)(A) 1 through 2.

(C) Decisions for placement of inmates into a 180-design or 270-design housing shall be documented pursuant to section 3375(g). Level IV 270-design placement eligibility/exclusion and the reason(s) for such placement shall be clearly articulated. The documentation shall also address the rationale and justification for placement of an inmate in a lesser or more restrictive environment than otherwise consistent with the inmate's case factors.

(D) The ICC may override placement of an inmate into 180-design or 270-design housing based upon: Department and institution's/facility's program security mission; public safety; and the inmate's needs and behavior.

(b) An inmate approved for transfer to a subfacility of a complex may be received and processed through a facility with a security level higher than that which is consistent with the inmate's placement score. Such cases shall be transferred to the subfacility when bed space allows or, when appropriate, recommended for an administrative determinant which prohibits movement to the lower security level facility.

(1) The case shall be presented to a classification staff representative (CSR) for evaluation within 30 days of receipt at the facility unless the inmate is on an approved waiting list maintained by the complex for placement of inmates at the approved subfacility.

(2) The transfer of an inmate for more than 30 days from one subfacility of a complex to another subfacility which has a different security level, shall require a CSR endorsement. When the subfacility's security level is consistent with the inmate's placement score, the classification and parole representative (C&PR) or designated CC III acting as the CSR may endorse a case to the current institution, when appropriate for that subfacility.

NOTE: Authority cited: Sections 5058 and 5058.3, Penal Code. Reference: Sections 3020, 5054 and 5068, Penal Code; *Wright v. Enomoto* (1976) 462 F Supp. 397; and *Stoneham v. Rushen* (1984) 156 Cal. App. 3d 302.

HISTORY:

1. Renumbering and amendment of section 3375(h) to section 3375.1 filed 8-7-87 as an emergency; operative 8-7-87 (Register 87, No. 34). A Certificate of Compliance must be transmitted to OAL within 120 days or emergency language will be repealed on 12-7-87.

2. Certificate of Compliance as to 8-7-87 order transmitted to OAL 12-4-87; disapproved by OAL (Register 88, No. 16).

3. Renumbering and amendment of section 3375(h) to section 3375.1 filed 1-4-88 as an emergency; operative 1-4-88 (Register 88, No. 16). A Certificate of Compliance must be transmitted to

Solares v. Diaz, E.D. Cal. No. 1:20-cv-00323
DEF 000156

# Exhibit B

State of California

California Department of Corrections and Rehabilitation
Adult Institutions, Programs, and Parole

# Operations Manual



*"Public Safety, Public Service"©*

Updated Through
January 1, 2019

Solares v. Diaz, E.D. Cal. No. 1:20-cv-00323
DEF 000033

| Chapter 1 | — | General Administration...…..………………….... | 1 |
|---|---|---|---|
| Article 1 | — | Office of the Secretary.…………..……………….. | 1 |
| Article 2 | — | *Unassigned*……….......…………………….…….. | 1 |
| Article 3 | — | Standing Committees..………………………....…. | 1 |
| Article 4 | — | California Prison Industry Authority.……………… | 3 |
| Article 5 | — | Evacuation and Emergency Management.……….… | 6 |
| Article 6 | — | Regulation and Policy Directives..………………… | 8 |
| Article 7 | — | Conferences and Conventions.……..……………… | 14 |
| Article 8 | — | Correspondence..……………………………….…. | 16 |
| Article 9 | — | Assessment of Threats Against Staff.……..……….. | 17 |
| Article 10 | — | State Business Mail.……..……………………….... | 19 |
| Article 11 | — | Publications.…………..……………………….…. | 20 |
| Article 12 | — | Telephone, Facsimiles, and Cellular Type Telephones.……………………………………….... | 21 |
| Article 13 | — | Public/Media Information..………………………. | 24 |
| Article 14 | — | Community Relations..……………………………... | 29 |
| Article 15 | — | Information Practices.……..……………………..... | 31 |
| Article 16 | — | Public Records.…………..………………………. | 40 |
| Article 17 | — | Motion Pictures, Radio, and Television.…………… | 43 |
| Article 18 | — | Legal Matters..……………………………………. | 45 |
| Article 19 | — | Research.…………..……………………………… | 51 |
| Article 20 | — | Polygraph.…………………………………….…... | 52 |
| Article 21 | — | *Unassigned*……...…………………………….…... | 53 |
| Article 22 | — | Legislation.……………………………………….. | 53 |
| Article 23 | — | Records Management.……..……………………… | 56 |
| Article 24 | — | *Unassigned*.…………………………..…………... | 59 |
| Article 25 | — | *Unassigned*.…………………………..…………... | 59 |
| Article 26 | — | American Correctional Association Standards.......... | 59 |
| Article 27 | — | Division of Adult Institutions.……………………. | 59 |
| Article 28 | — | Division of Adult Parole Operations.……………… | 62 |
| Article 29 | — | Division of Rehabilitative Programs.……………… | 63 |
| Article 30 | — | Division of Health Care Services.……..…………… | 63 |
| Article 31 | — | Division of Facility Planning, Construction and Management.……………………………………..... | 65 |
| Article 32 | — | Office of Correctional Safety.……..……............... | 67 |
| Article 33 | — | Office of Victim and Survivor Rights and Service.……………………………………………. | 67 |
| Article 34 | — | Office of Legal Affairs.…………………………… | 68 |
| Article 35 | — | Division of Internal Oversight and Research.……... | 68 |
| Article 36 | — | Division of Administrative Services.……………..… | 69 |
| Article 37 | — | Enterprise Information Services.……..……………... | 72 |
| Article 38 | — | Office of Labor Relations.……..……………..……. | 74 |
| Article 39 | — | Office of the Ombudsman..………..............………. | 74 |
| **Chapter 2** | **—** | **Fiscal Management.………………………….....** | **75** |
| Article 1 | — | Budget Planning.………. ………………………... | 75 |
| Article 2 | — | Operating Expenses and Equipment..……………… | 77 |
| Article 3 | — | *Unassigned*.…………………………………….... | 77 |
| Article 4 | — | Capitol Outlay.…………………………………… | 77 |
| Article 5 | — | Reimbursements.……………………………..……. | 79 |

| Article 6 | — | *Unassigned*.………………….…………………….. | 81 |
|---|---|---|---|
| Article 7 | — | *Unassigned*.…………………………................... | 81 |
| Article 8 | — | *Unassigned*.……………………………………….. | 81 |
| Article 9 | — | *Unassigned*.……………………………………….. | 81 |
| Article 10 | — | Equipment and Supplies.………………………….. | 81 |
| Article 11 | — | Travel.……..……………………………………..... | 82 |
| Article 12 | — | Materials Management.……………………………. | 87 |
| Article 13 | — | Contracts.……………….……………………..…... | 105 |
| Article 14 | — | Field Offices.……………………………………… | 108 |
| Article 15 | — | Selection of Professional Consulting Services.……… | 109 |
| Article 16 | — | Employee Personal Property.……………………….. | 110 |
| Article 17 | — | Evaluations and Fiscal Control Audits.……………. | 111 |
| Article 18 | — | Fiscal and Administrative Reviews..……………….. | 114 |
| Article 19 | — | DVBE Program for Services, Commodities, and Public Works.………………………………………… | 114 |
| Article 20 | — | Inmate Welfare Fund.……………………………… | 116 |
| **Chapter 3** | | **Personnel, Training, and Employee Relations……** | **119** |
| Article 1 | — | Equal Employment Opportunity.…………………… | 119 |
| Article 2 | — | Health and Safety Program.………………………… | 124 |
| Article 3 | — | Employee Awards Program.………………………… | 141 |
| Article 4 | — | Employee Wellness Programs.……………………… | 146 |
| Article 5 | — | Paraprofessional.…………..……………………….. | 158 |
| Article 6 | — | Appointments.……..……………………………..... | 159 |
| Article 7 | — | Personnel Identification Cards.…………………….. | 171 |
| Article 8 | — | Leave Credit and Overtime Management.…………… | 174 |
| Article 9 | — | Employee Death.…………………………………… | 179 |
| Article 10 | — | Conflict of Interest.……..………………………….. | 184 |
| Article 11 | — | Smoking – Nonsmoking and Tobacco.……………… | 185 |
| Article 12 | — | Staff Meetings.……………………………………… | 186 |
| Article 13 | — | Salary and Compensation.…………………………… | 186 |
| Article 14 | — | Internal Affairs Investigations.……………............... | 189 |
| Article 15 | — | Release of Payroll Warrants.……………………….. | 195 |
| Article 16 | — | Managerial Performance Appraisal System.………… | 197 |
| Article 17 | — | Personnel Examining.……..………………………... | 200 |
| Article 18 | — | General Training.…………………………………… | 204 |
| Article 19 | — | Basic Academy Training.…………………………… | 214 |
| Article 20 | — | Personnel Policies.…………………………………. | 215 |
| Article 21 | — | Uniforms/Employee Grooming Standards.………….. | 227 |
| Article 22 | — | Employee Discipline.……………………………….. | 239 |
| Article 23 | — | Employee Services.…………………………………. | 258 |
| **Chapter 4** | **—** | **Information Technology.……………………….....** | **260** |
| Article 1 | — | Information Technology Definitions and Acronyms… | 260 |
| Article 2 | — | EDP Responsibility.……..…………………………. | 266 |
| Article 3 | — | *Unassigned*.………………………………………... | 268 |
| Article 4 | — | General Information and Policy.…..……………….... | 268 |
| Article 5 | — | IT Standards.…...…………………………………..... | 269 |
| Article 6 | — | Quality Assurance and Quality Control.…….……..... | 270 |
| Article 7 | — | Information Management Planning.…..…………….... | 272 |

Solares v. Diaz, E.D. Cal. No. 1:20-cv-00323
DEF 000034

Case 1:20-cv-00323-LHR-FJS Document 294-16 Filed 08/03/26 Page 40 of 61

| | | | |
|---|---|---|---|
| Article 8 | — | Project Initiation and Approval | 273 |
| Article 9 | — | Project Management | 275 |
| Article 10 | — | Project Review and Basic Policy | 276 |
| Article 11 | — | Project Reporting Requirements | 277 |
| Article 12 | — | Project Evaluation | 279 |
| Article 13 | — | Policy and General Information | 280 |
| Article 14 | — | Methods of Procurement | 281 |
| Article 15 | — | Lease of EDP Equipment | 281 |
| Article 16 | — | Purchase of EDP Equipment | 281 |
| Article 17 | — | General Contract Requirements | 282 |
| Article 18 | — | EDP Maintenance Contracts | 282 |
| Article 19 | — | EDP Personal Services Contracts | 282 |
| Article 20 | — | Consulting Services Contract | 283 |
| Article 21 | — | Inter-Agency Agreements | 283 |
| Article 22 | — | Policy and General Information | 283 |
| Article 23 | — | EDP Equipment Maintenance | 284 |
| Article 24 | — | EDP Equipment Inventory | 285 |
| Article 25 | — | EDP Equipment Maintenance Records | 285 |
| Article 26 | — | Disposal of EDP Equipment | 286 |
| Article 27 | — | Disposal of EDP Supplies | 287 |
| Article 28 | — | Offender Based Information System | 287 |
| Article 29 | — | SCO Systems | 288 |
| Article 30 | — | C.L.E.T.S. | 289 |
| Article 31 | — | Unassigned | 290 |
| Article 32 | — | Public Safety Radio Communications Systems | 290 |
| Article 33 | — | Incident Reports Database | 291 |
| Article 34 | — | Unassigned | 292 |
| Article 35 | — | Computer Room Construction | 292 |
| Article 36 | — | Instant Messaging | 292 |
| Article 37 | — | Classification Tracking System | 294 |
| Article 38 | — | Electronic Mail | 295 |
| Article 39 | — | Unassigned | 297 |
| Article 40 | — | Distributed Data Processing System | 297 |
| Article 41 | — | Departmental Workgroup Computing Policy | 298 |
| Article 42 | — | Departmental Modem Policy | 304 |
| Article 43 | — | Handheld Computing Devices | 305 |
| Article 44 | — | General Information | 306 |
| Article 45 | — | Information Security | 307 |
| Article 46 | — | Information Systems Risk Management | 318 |
| Article 47 | — | Disaster Recovery Planning | 320 |
| Article 48 | — | Electronic Data Processing Auditing | 322 |
| Article 49 | — | Special Security Considerations | 323 |
| **Chapter 5** | **—** | **Adult Custody and Security Operations** | **325** |
| Article 1 | — | Peace Officer Authority | 325 |
| Article 2 | — | Use of Force | 325 |
| Article 3 | — | Incident Report | 338 |
| Article 4 | — | Post Orders | 339 |
| Article 5 | — | Post Assignment Schedule | 340 |
| Article 6 | — | Daily Activity Report | 343 |
| Article 7 | — | Inmate Deaths, Serious Injury, or Illness Notification | 343 |
| Article 8 | — | Inmate Civil Rights | 346 |
| Article 9 | — | Display of the United States and State Flags | 347 |
| Article 10 | — | Unassigned | 353 |
| Article 11 | — | Administrative Officer-of-the-Day | 353 |
| Article 12 | — | Inmate Pay | 354 |
| Article 13 | — | CALPIA Inmate Hiring Requirements and Pay | 357 |
| Article 14 | — | Conservation Camps | 361 |
| Article 15 | — | Controlled Substances | 367 |
| Article 16 | — | Inmate Count and Movement | 370 |
| Article 17 | — | Control of Dangerous and Toxic Chemicals | 375 |
| Article 18 | — | Tool Control | 379 |
| Article 19 | — | Arrest, Search, and Seizure | 383 |
| Article 20 | — | Disposition of Contraband | 398 |
| Article 21 | — | Inmate Use of Telephones | 399 |
| Article 22 | — | Gang Management | 400 |
| Article 23 | — | Inmate Discipline | 406 |
| Article 24 | — | Fire Protection | 416 |
| Article 25 | — | Inmate Indecent Exposure & Sexual Disorderly Conduct Management | 420 |
| Article 26 | — | Air Space Management | 422 |
| Article 27 | — | Terrorism Liaison Officer Program | 423 |
| Article 28 | — | Unassigned | 423 |
| Article 29 | — | Social Services and Counseling | 423 |
| Article 30 | — | Inmate Smoking Policy | 424 |
| Article 31 | — | Unassigned | 424 |
| Article 32 | — | Unassigned | 424 |
| Article 33 | — | Unassigned | 424 |
| Article 34 | — | Unassigned | 424 |
| Article 35 | — | Unassigned | 424 |
| Article 36 | — | Institution Publications | 424 |
| Article 37 | — | Unassigned | 425 |
| Article 38 | — | Inmate Advisory Committees | 426 |
| Article 39 | — | IW/TIP | 429 |
| Article 40 | — | Joint Venture | 438 |
| Article 41 | — | Inmate Mail | 442 |
| Article 42 | — | Visiting | 449 |
| Article 43 | — | Inmate Property | 461 |
| Article 44 | — | Prison Rape Elimination Policy | 468 |
| Article 45 | — | Care, Treatment, & Security of Pregnant Offenders | 478 |
| Article 46 | — | Inmate Housing Assignments | 480 |
| Article 47 | — | Integrated Housing | 483 |
| Article 48 | — | Transitional Housing Unit | 485 |
| Article 49 | — | Inmate Clothing and Laundry Exchange Services | 486 |
| Article 50 | — | Canteen | 488 |

Solares v. Diaz, E.D. Cal. No. 1:20-cv-00323
DEF 000035

Case 1:20-cv-00323-LHR-EJS    Document 294-16    Filed 08/03/26    Page 41 of 61

| | | | |
|---|---|---|---|
| Article 51 | — | Food Service................................................ | 489 |
| Article 52 | — | Request for Interview, Item, or Service.............. | 493 |
| Article 53 | — | Inmate/Parolee Appeals.................................... | 495 |
| Article 54 | — | Investigation of Gassing Incidents..................... | 507 |
| **Chapter 6** | **—** | **Adult Classification....................................** | **510** |
| Article 1 | — | Reception Centers........................................... | 510 |
| Article 2 | — | Case Considerations........................................ | 519 |
| Article 3 | — | Cumulative Case Summary............................... | 543 |
| Article 4 | — | Presentence Diagnostic Study........................... | 546 |
| Article 5 | — | Classification Process...................................... | 547 |
| Article 6 | — | Recall of Commitment..................................... | 554 |
| Article 7 | — | Transfers – DMH............................................ | 555 |
| Article 8 | — | Interstate, Federal, and International Placements....... | 558 |
| Article 9 | — | Special Placements......................................... | 560 |
| Article 10 | — | Behavior Management Unit............................... | 564 |
| Article 11 | — | Temporary Removals....................................... | 566 |
| Article 12 | — | Treatment Categories...................................... | 573 |
| Article 13 | — | Board of Parole Hearings................................. | 576 |
| Article 14 | — | *Reserved...................................................* | 582 |
| Article 15 | — | *Unassigned... ... ... ... ... ... ... ... ... ... ... ...* | 582 |
| Article 16 | — | *Reserved...................................................* | 582 |
| Article 17 | — | Sexually Violent Predators............................... | 582 |
| **Chapter 7** | **—** | **Adult Case Records Information....................** | **586** |
| Article 1 | — | Uniform Case Records Systems........................... | 586 |
| Article 2 | — | Case Records Service Unit................................. | 588 |
| Article 3 | — | Types of Records............................................ | 589 |
| Article 4 | — | Initial Intake Procedure.................................... | 596 |
| Article 5 | — | Central File and Transfer of Records.................... | 599 |
| Article 6 | — | Detainers..................................................... | 601 |
| Article 7 | — | Extraditions.................................................. | 609 |
| Article 8 | — | Notices........................................................ | 610 |
| Article 9 | — | Wanted Persons System.................................... | 612 |
| Article 10 | — | Legal Status Information .................................. | 615 |
| Article 11 | — | *Unassigned..................................................* | 623 |
| Article 12 | — | Time Computations......................................... | 623 |
| Article 13 | — | Court Decisions, Orders, and Releases.................. | 634 |
| Article 14 | — | Releasing Authorities...................................... | 637 |
| Article 15 | — | *Unassigned..................................................* | 638 |
| Article 16 | — | Scheduling Appearances ................................... | 638 |
| Article 17 | — | Preparation of Calendars .................................. | 642 |
| Article 18 | — | *Unassigned..................................................* | 646 |
| Article 19 | — | Pre-Release Referrals....................................... | 646 |
| Article 20 | — | Institution Releases........................................ | 648 |
| Article 21 | — | Parole Procedures........................................... | 652 |
| Article 22 | — | Civil Addict Commitments................................ | 655 |
| Article 23 | — | CYA Wards................................................... | 664 |

| | | | |
|---|---|---|---|
| **Chapter 8** | **—** | **Adult Parole Operations .............................** | **667** |
| Article 1 | — | Release Procedures and Conditions of Parole........... | 667 |
| Article 2 | — | Case Supervision........................................... | 679 |
| Article 3 | — | Search and Arrest........................................... | 678 |
| Article 4 | — | *Reserved....................................................* | 685 |
| Article 5 | — | Special Incident Reports................................... | 685 |
| Article 6 | — | Interstate Procedures....................................... | 687 |
| Article 7 | — | Casework Services.......................................... | 693 |
| Article 8 | — | Discharge and Pardon...................................... | 696 |
| Article 9 | — | Caseload Management...................................... | 699 |
| Article 10 | — | Use of State Vehicles...................................... | 703 |
| Article 11 | — | Parole Grant Release Process............................. | 706 |
| Article 12 | — | *Reserved....................................................* | 708 |
| Article 13 | — | *Reserved....................................................* | 708 |
| Article 14 | — | *Reserved....................................................* | 708 |
| Article 15 | — | *Reserved....................................................* | 708 |
| Article 16 | — | Community-Based Program Overview.................... | 708 |
| Article 17 | — | Alternative Custody Program.............................. | 708 |
| Article 18 | — | Custody to Community Transitional Reentry Program | 711 |
| Article 19 | — | Male Community Reentry Program....................... | 714 |
| Article 20 | — | *Unassigned..................................................* | 717 |
| Article 21 | — | *Unassigned..................................................* | 717 |
| Article 22 | — | *Unassigned..................................................* | 717 |
| Article 23 | — | *Unassigned..................................................* | 717 |
| Article 24 | — | *Unassigned..................................................* | 717 |
| Article 25 | — | Participant Operation of Motor Vehicle.................. | 717 |
| Article 26 | — | Parole Violations and Revocations....................... | 717 |
| Article 27 | — | Notice Agent and Court Agent............................ | 721 |
| Article 28 | — | Warrant Requests........................................... | 723 |
| Article 29 | — | Warrant Unit Contact Procedures......................... | 726 |
| Article 30 | — | Witnesses.................................................... | 727 |
| Article 31 | — | *Reserved....................................................* | 727 |
| Article 32 | — | Remedial Sanctions and Program Referrals.............. | 727 |
| Article 33 | — | *Reserved....................................................* | 728 |
| Article 34 | — | Mentally Disordered Offenders Commitment and Transportation................................................ | 728 |
| Article 35 | — | Supervisor Responsibilities................................ | 731 |
| Article 36 | — | Workload..................................................... | 734 |
| Article 37 | — | Work Week Groups and Work Hours..................... | 735 |
| Article 38 | — | Hostages...................................................... | 739 |
| Article 39 | — | Parole Agent Equipment ................................... | 739 |
| Article 40 | — | Evidence Storage and Disposal............................ | 742 |
| Article 41 | — | Law Enforcement and Investigations..................... | 744 |
| Article 42 | — | Subpoena..................................................... | 745 |
| Article 43 | — | Emergency Action and Employee Protection Plans...... | 747 |
| Article 44 | — | Parole Policy Revisions and Distribution................. | 749 |
| Article 45 | — | Administrative Officer-of-the-Day... ... ... ... ... ... . | 750 |
| Article 46 | — | Firearms and Safety Equipment Policy.................... | 751 |

Solares v. Diaz, E.D. Cal. No. 1:20-cv-00323
DEF 000036

| Article 47 | — | Charge Codes.………………………….……………… | 758 |
| Article 48 | — | Glossary of Parole Terms.……………………….…… | 760 |
| Article 49 | — | Pre-Release Reentry Case Planning.……….………. | 762 |
| Article 50 | — | *Reserved*.….…………………………….…………… | 765 |
| Article 51 | — | Disclosure of Information.…….…………….……..… | 765 |
| Article 52 | — | Access to Parolee Records.…..…………….……..... | 768 |
| Article 53 | — | *Unassigned*.……………..……………….………… | 771 |
| Article 54 | — | Confidential Material.…..……………….…………… | 771 |
| Article 55 | — | Disclosure to Agency or Persons.…………………… | 773 |
| Article 56 | — | *Reserved (Rehabilitation & Pardon)*......................... | 773 |
| Article 57 | — | Work Schedules........................................................ | 773 |
| **Chapter 9** | **—** | **Health Care Services.……………………….……..** | **775** |
| Article 1 | — | *Reserved (Medical Services)*.…..………………..…. | 775 |
| Article 2 | — | Mental Health Services.……………………………… | 775 |
| Article 3 | — | Dental Services.......…………………….…………..... | 778 |
| Article 4 | — | Nursing Services Program.…….............……………. | 778 |
| Article 5 | — | Laboratory Services..................................................... | 781 |
| Article 6 | — | Radiology Services.............….……………………… | 783 |
| Article 7 | — | Health Records.............……………………………… | 784 |
| Article 8 | — | Inmate Tuberculosis Alert System …………….…… | 787 |
| Article 9 | — | Involuntary Psychiatric Medications.…….................. | 793 |
| Article 10 | — | Advanced Directives & Do Not Resuscitate Orders.… | 798 |
| **Chapter 10** | **—** | **Adult Programs................…………………….......** | **802** |
| Article 1 | — | Education Services.............................………..... | 802 |
| Article 2 | — | Division of Addiction and Recovery Services............ | 807 |
| Article 3 | — | Inmate Activity Groups....………..…………………. | 808 |
| Article 4 | — | Recreation and Physical Education Programs…......... | 809 |
| Article 5 | — | Handicraft Programs.…………………….............…. | 811 |
| Article 6 | — | Religious Programs.........…………………..….…..... | 815 |
| Article 7 | — | Marriages..................................…………….……..... | 817 |
| Article 8 | — | Charitable Fund Raising Campaigns......................….. | 818 |
| Article 9 | — | Volunteers............................................................... | 819 |
| Article 10 | — | Grants.......................………………….….……....... | 826 |
| Article 11 | — | Gifts and Donations................................................. | 828 |
| Article 12 | — | Library and Law Library........................................... | 829 |

Solares v. Diaz, E.D. Cal. No. 1:20-cv-00323
DEF 000037

# ACRONYMS AND CROSSWALK

## A

| | |
|---|---|
| **AB**: | Administrative Bulletin |
| **ABE**: | Adult Basic Education |
| **ACA**: | American Correctional Association |
| **ADA**: | Americans with Disabilities Act |
| **AD-SEG**: | Administrative Segregation |
| **AG**: | Attorney General |
| **AIDS**: | Acquired Immune Deficiency Syndrome |
| **AISA**: | Associate Information Systems Analyst |
| **AOD**: | Administrative Officer of the Day |
| **AOJ**: | Abstract Of Judgment |
| **APA**: | Administrative Procedure Act |
| **APB**: | All Points Bulletin |
| **AR**: | Activity Report |
| **ARC**: | AIDs Related Condition |
| **AS**: | Accounting Services (see ASB) |
| **ASB**: | Accounting Services Branch The offices identified as: ASB Bakersfield ASB Corcoran ASB El Centro ASB Paso Robles ASB Rancho Cucamonga ASB Sacramento ASB Stockton |
| **ASD**: | See Division of Administrative Services (DAS) (see ASB) |
| **ASH**: | Atascadero State Hospital |
| **ASP**: | Avenal State Prison |
| **ATO**: | Administrative Time Off |
| **AUS**: | Assistant Unit Supervisor |
| **AW**: | Associate Warden |
| **AWOL**: | Absent Without Leave |

## B

| | |
|---|---|
| **B&PC**: | Business and Professions Code |
| **BCP**: | Budget Change Proposal |
| **BCS**: | Budget Concept Statement |
| **BMB**: | Budget Management Branch |
| **BOC**: | See Victims Compensation and Government Claims Board (VCGCB) |
| **BOE**: | Board Of Equalization |
| **BPH**: | Board of Parole Hearings (formerly Board of Prison Terms) |
| **BSB**: | Business Services Branch (see Office of Business Services OBS) |

## C

| | |
|---|---|
| **C&PR**: | Classification & Parole Representative |
| **CA**: | Correctional Administrators |

| | |
|---|---|
| **CAC**: | Commission on Accreditation for Corrections |
| **CAL**: | Calipatria State Prison |
| **CalHR** | California Department of Human Resources (formerly DPA and SPB) |
| **CALPIA**: | California Prison Industry Authority (formerly PIA) |
| **CAL-OSHA**: | California Occupational Safety and Health Act |
| **CALSTARS**: | California Statewide Accounting and Reporting Systems |
| **CAP**: | Corrective Action Plan |
| **CC**: | Correctional Counselor |
| **CCC**: | California Correctional Center |
| **CCF**: | Community Correctional Facilities |
| **CCI**: | California Correctional Institution |
| **CCCMS**: | Correctional Clinical Case Management System |
| **CCP**: | Code of Civil Procedure |
| **CCR**: | California Code of Regulations |
| **CCRA**: | Correctional Case Records Administrator |
| **CCRC**: | Community Correctional Reentry Centers |
| **CCRM**: | Correctional Case Records Manager |
| **CCRS**: | Correctional Case Records Supervisor |
| **CCWF**: | Central California Women's Facility |
| **CDCR**: | California Department of Corrections and Rehabilitation (formally CDC) |
| **CDD**: | Controlling Discharge Date |
| **CDO**: | Chief Disciplinary Officer |
| **CEA**: | Career Executive Assignment |
| **CEN**: | Centinela State Prison |
| **CHP**: | California Highway Patrol |
| **CI**: | Confidential Informant |
| **CI&I**: | Criminal Identification and Information |
| **CIM**: | California Institution for Men |
| **CIW**: | California Institution for Women |
| **CLETS**: | California Law Enforcement Telecommunications System |
| **CLLR**: | County of Last Legal Residence |
| **CMB**: | See Office of Business Services (OBS) |
| **CMC**: | California Men's Colony |
| **CMF**: | California Medical Facility |
| **CMO**: | Chief Medical Officer |
| **CO-BCP**: | Capitol Outlay Budget Concept Proposal |

| | |
|---|---|
| **COC**: | County Of Commitment |
| **COP**: | Continue On Parole |
| **COR**: | California State Prison, Corcoran |
| **CPU**: | Central Processing Unit |
| **CRC**: | California Rehabilitation Center |
| **CRM**: | Community Resource Manager |
| **CPR**: | Cardiopulmonary Resuscitation |
| **CRS**: | Correctional Case Records Specialist |
| **CRT**: | Crisis Response Team |
| **Crt Ret TFT**: | Court-Return To Finish Term |
| **Crt Ret WNT**: | Court-Return With New Term |
| **CRU**: | Case Records Unit |
| **CS**: | Control Services |
| **CSR**: | Classification Staff Representative |
| **CSU**: | Classification Services Unit |
| **CTB**: | Catastrophic Time Bank |
| **CTF**: | Correctional Training Facility |
| **CTQ**: | Confinement To Quarters |
| **CTS**: | Classification Tracking System |
| **CVSP**: | Chuckawalla Valley State Prison |
| **CYA**: | See Division of Juvenile Justice (DJJ) |

## D

| | |
|---|---|
| **DAC**: | Disabled Advisory Committee |
| **DADP**: | Departmental Alcohol and Drug Programs |
| **DAI**: | Division of Adult Institutions (formerly Institutions Division) |
| **DAPO**: | Division of Adult Parole Operations (formerly P&CSD) |
| **DARS**: | Division of Addictions & Recovery Services (see Division of Rehabilitative Programs) |
| **DAS**: | Division of Administrative Services (see ASB) |
| **DHCS**: | Division of Health Care Services (Formerly Division of Correctional Health Care Services, DCHCS) |
| **DCP**: | Division of Community Partnerships (see DAI) |
| **DDPS**: | Distributed Data Processing System |
| **DEVOP**: | Division of Education, Vocation, and Offender Programs (see Division of Rehabilitative Programs) |
| **DFA**: | Department Food Administrator |
| **DFEH**: | Department of Fair Employment and Housing |
| **DGS**: | Department of General Services |

Solares v. Diaz, E.D. Cal. No. 1:20-cv-00323
DEF 000038

**ACRONYMS AND CROSSWALK**

| | |
|---|---|
| **DHS**: | Department of Health Services |
| **DIR**: | Department of Industrial Relations |
| **DIS:** | Division of Industrial Safety |
| **DJJ**: | Division of Juvenile Justice (formerly CYA) |
| **DMH**: | Department of Mental Health (see Department of State Hospitals DSH) |
| **DMS**: | Daily Movement Sheet |
| **DMV**: | Department of Motor Vehicles |
| **DSH:** | Department of State Hospitals (formerly DMH) |
| **DOB**: | Date Of Birth |
| **DOF**: | Department Of Finance |
| **DOJ**: | Department Of Justice |
| **DOM**: | Department Operations Manual |
| **DOR**: | Department Of Rehabilitation |
| **DOT**: | Labor Dictionary of Occupational Titles |
| **DPA**: | Department of Personnel Administration (see CalHR) |
| **DPP**: | Disability Placement Plan |
| **DPU**: | Detention Processing Units |
| **DRAD**: | Daily Report of Arrivals and Departures |
| **DRB**: | Departmental Review Board |
| **DRD**: | Discharge Review Date |
| **DROA**: | Departmental Restrictions Of Appointment |
| **DRP:** | Division of Rehabilitative Programs |
| **DRPA**: | Deputy Regional Parole Administrator |
| **DSL**: | Determinate Sentence Law |
| **DTC**: | Drug Testing Coordinator |
| **DVBE**: | Disabled Veteran Business Enterprises |
| **DVI**: | Deuel Vocational Institution |
| ***E*** | |
| **E&E**: | Education and Experience |
| **EAP**: | Employee Assistance Program |
| **EAR**: | Employee Action Request |
| **EC**: | Evidence Code |
| **Ed. C**: | Education Code |
| **EDD**: | Employment Development Department |
| **EDP**: | Electronic Data Processing (see IT) |
| **EPTP**: | Employee Post Trauma Program |
| **EEO**: | Equal Employment Opportunity Office (see Office of Internal Affairs) |
| **EEOC**: | U.S. Equal Employment |

| | |
|---|---|
| | Opportunity Commission |
| **EI**: | Early Intervention |
| **EIDL**: | Enhanced Industrial Disability Leave |
| **EIS**: | Enterprise Information Services (formerly Information Services Division) |
| **EKG**: | Electrocardiogram |
| **EOP**: | Enhanced Outpatient Program |
| **EPA**: | Environmental Protection Agency |
| **EPRD**: | Earliest Possible Release Date |
| **ERMS**: | Electronic Records Management System |
| **ERO**: | Employee Relations Officer |
| **ESL**: | English as a Second Language |
| **ETO**: | Excused Time Off |
| ***F*** | |
| **F&BMAU**: | Fiscal and Business Management Audits Unit (see Office of Audits and Court Compliance) |
| **FB**: | Fiscal Bulletin |
| **FBI**: | Federal Bureau of Investigation |
| **FBP**: | Federal Bureau of Prisons |
| **FC**: | Family Code |
| **FCC**: | Federal Communications Commission |
| **FLSA**: | Fair Labor Standards Act |
| **FPCM:** | Facility Planning, Construction, and Management |
| **FPR**: | Formal Project Review |
| **FSB**: | Fiscal Services Branch (see Office of Fiscal Services) |
| **FSP**: | Folsom State Prison |
| **FSR**: | Feasibility Study Reports |
| ***G*** | |
| **GC**: | Government Code |
| **GED**: | General Education Development |
| **GF**: | General Fund |
| **GFE**: | Good Faith Effort |
| **GLU**: | General Legal User |
| **GPS**: | Global Positioning System |
| **GSOP**: | General Services Office of Procurement |
| **GUME**: | General Use Mobile Equipment |
| ***H*** | |
| **H&SC**: | Health and Safety Code |
| **HAM**: | Hiring-Above-Minimum |
| **HASS**: | Headquarters Accounting Services Section (see ASB) |
| **HC**: | High Control |
| **HCSD**: | Health Care Services Division |

| | |
|---|---|
| | (see DCHCS) |
| **HDSP**: | High Desert State Prison |
| **HIV**: | Human Immunodeficiency Virus |
| **HO**: | Hearing Officer |
| **HR**: | Human Resources |
| **HWD**: | Holds/Wants/Detainer |
| ***I*** | |
| **IAB**: | Inmate Appeals Branch (see Office of Appeals OOA) |
| **IAC**: | Institution Advisory Counsel |
| **IB**: | Informational Bulletin |
| **ICC**: | Institution Classification Committee |
| **ICS**: | Institution Contracts Section (see OBS) |
| **ID**: | Institutions Division (see DAI) |
| **IDL**: | Industrial Disability Leave |
| **IDL**: | Inmate Day Labor |
| **IFB**: | Invitation For Bids |
| **IGI**: | Institution Gang Investigator (see STG Investigator) |
| **IM**: | Instructional Memorandum |
| **IMAP**: | Information Management Annual Plan |
| **IPA**: | Information Practices Act |
| **IPO**: | Institutional Personnel Officer |
| **IPTS**: | Interim Parolee Tracking System |
| **IQSS**: | Information Quality Support Section |
| **IRS**: | Internal Revenue Service |
| **IS**: | Information Systems |
| **ISA**: | Information Systems Analyst |
| **ISC**: | Information Security Coordinators |
| **ISD**: | Information Services Division (see EIS) |
| **ISL**: | Indeterminate Sentence Law |
| **ISO**: | Information Security Officer |
| **ISP**: | Ironwood State Prison |
| **ISRS**: | Institutional Staff Recommendation Summary |
| **IST**: | In-Service Training |
| **ISTS**: | In-Service Training Section |
| **ISU**: | Institution Services Unit |
| **IT**: | Information Technology |
| **IV**: | Intravenous |
| **IWF**: | Inmate Welfare Fund |
| **IWTIP**: | Inmate Work Incentive/Training Incentive Program |
| ***J*** | |
| **JVP**: | Joint Venture Program |

Solares v. Diaz, E.D. Cal. No. 1:20-cv-00323
DEF 000039

| **K** | |
|---|---|
| **K-9**: | Canine |
| **KVSP**: | Kern Valley State Prison |

| **L** | |
|---|---|
| **LAC**: | California State Prison, Los Angeles County |
| **LAD**: | Legal Affairs Division (see OLA) |
| **LAN**: | Local Area Network |
| **LC**: | Labor Code |
| **LEAA**: | Law Enforcement Assistance Administration |
| **LEAP**: | Limited Examination and Appointment Program |
| **LEIU**: | Law Enforcement and Investigation Unit (see OCS) |
| **LLO**: | Legislative Liaison (see OOL) |
| **LPS**: | Lanterman-Petris-Short Act |
| **LPU**: | Legal Processing Unit |
| **LRB**: | Labor Relations Branch (see OLR) |
| **LSS**: | Legal Status Sheet |
| **LT**: | Limited Term |
| **LTO**: | Local Testing Offices |
| **LTOP**: | Long Term Offender Program |
| **LVN**: | Licensed Vocational Nurse |
| **LWOP**: | Life Without Possibility Of Parole |

| **M** | |
|---|---|
| **M&VC**: | Military and Veterans Code |
| **MAC**: | Men's Advisory Council |
| **MAR**: | Master Assignment Roster |
| **Max**: | Maximum |
| **MBE**: | Minority Business Enterprises |
| **MCSP**: | Mule Creek State Prison |
| **MDO**: | Mentally Disordered Offender |
| **MERD**: | Minimum Eligible Release Date |
| **MH**: | Mental Health |
| **MIA**: | Missing In Action |
| **MIN**: | Minimum |
| **MIRS**: | Management Information Retrieval System |
| **MIS**: | Management Information Systems |
| **MOD**: | Medical Officer of the Day |
| **MOU**: | Memorandum Of Understanding |
| **MQ**: | Minimum Qualifications |
| **MRA**: | Master Rental Agreement |
| **MRD**: | Max Release Date |
| **MRDT**: | Mandatory Random Drug Testing |
| **MS**: | Minimum Supervision |
| **MSA**: | Merit Salary Adjustment |

| **MSAO**: | Master Service Agreement Order |
|---|---|
| **MSDS**: | Material Safety Data Sheets |
| **MSH**: | Metropolitan State Hospital |
| **MSS**: | Material Services Section |

| **N** | |
|---|---|
| **NAEA**: | Narcotic Addiction Evaluation Authority |
| **NC**: | New Charge |
| **NCDOM**: | Notice of Change to Department Operations Manual |
| **NCIC**: | National Crime Information Center |
| **NCR**: | Notice of Change to Regulations |
| **NDI**: | Non-Industrial Disability Insurance |
| **NFPA**: | National Fire Protection Association |
| **NIC**: | National Institute of Corrections |
| **NICC**: | Not In Custody Case |
| **NKSP**: | North Kern State Prison |
| **NLI**: | No Longer Interested Notification |
| **NMT**: | Negotiations Management Team |

| **O** | |
|---|---|
| **OA**: | Office Assistant |
| **OACC**: | Office of Audits and Court Compliance |
| **OAG**: | Office of the Attorney General |
| **OAL**: | Office of Administrative Law |
| **OBIS**: | Offender Based Information System |
| **OBM**: | Office of Budget Management (see OFS) |
| **OBS**: | Office of Business Services |
| **OCE**: | Office of Correctional Education (see DRP) |
| **OCR**: | Office of Civil Rights (see OIA) |
| **OCS**: | Office of Correctional Safety |
| **OD**: | Officer of the Day |
| **OFEP**: | Office of Fair Employment Practices |
| **OFM**: | Office of Facilities Management (see FPCM) |
| **OFS**: | Office of Fiscal Services |
| **OHRD**: | Office of Human Resources Development |
| **OIA**: | Office of Internal Affairs |
| **OIG**: | Office of the Inspector General |
| **OIP**: | Office of Information Practices |
| **OISB**: | Offender Information Services Branch |

| **OIT**: | Office of Information Technology |
|---|---|
| **OJT**: | On-the-Job Training |
| **OLA**: | Office of Legal Affairs |
| **OLR**: | Office of Labor Relations |
| **OOA**: | Office of Appeals |
| **OOC**: | Office Of Compliance (see OACC) |
| **OOL**: | Office Of Legislation |
| **OPEC**: | Office of Public and Employee Communications |
| **OPD**: | Outpatient Dental Record |
| **OPF**: | Official Personnel File |
| **OPM**: | Office of Personnel Management |
| **OPS**: | Outpatient Status |
| **OR**: | Office of Research |
| **ORC**: | Organizational Review Committee |
| **ORP**: | Operation Recovery Plan |
| **ORWA**: | Off-Reservation Work Assignment |
| **ORWD**: | Off-Reservation Work Detail |
| **OSAP/ DARS**: | Office of Substance Abuse Programs (see DRS) |
| **OSP**: | Office of State Publishing |
| **OT**: | Overtime |
| **OTC**: | Out To Court |
| **OTCP**: | Out-To-Confidential Placements |
| **OVSR&S**: | Office of Victim and Survivors Rights and Services |

| **P** | |
|---|---|
| **P&CD**: | Planning and Construction Division (see FPCM) |
| **P&CSD**: | Parole & Community Services Division (see DAPO) |
| **PA**: | Program Administrator |
| **PAI**: | Parole Agent I |
| **PAII**: | Parole Agent II |
| **PAIII**: | Parole Agent III |
| **PAL**: | Parolee-At-Large |
| **PAR**: | Personnel Action Request |
| **PAR AD**: | Parole Administrator |
| **PBSP**: | Pelican Bay State Prison |
| **PC**: | Penal Code |
| **PCC**: | Public Contract Code |
| **PDA**: | Parole District Administrator |
| **PERB**: | Public Employment Representative Board |
| **PERS**: | Public Employees Retirement System |

Solares v. Diaz, E.D. Cal. No. 1:20-cv-00323
DEF 000040

| | |
|---|---|
| **PFAB**: | Program and Fiscal Audits Branch (see OACC) |
| **PH**: | Parole Hold |
| **PHU**: | Protective Housing Unit |
| **PI**: | Permanent Intermittent |
| **PIA**: | Prison Industry Authority (see CALPIA) |
| **PIB**: | Prison Industry Board |
| **PIC**: | Public Interest Case |
| **PIE**: | Permanent Intermittent Employees |
| **PIER**: | Post Implementation Evaluation Report |
| **PIO**: | Public Information Officer |
| **PIU**: | Project Initiation Unit |
| **PMP**: | Preventive Maintenance Program |
| **PO**: | Purchase Order |
| **POC**: | Parole Outpatient Clinics |
| **POR**: | Probation Officer Report |
| **POS**: | Personnel Operations Section |
| **POSED**: | Peace Officer Selection and Development |
| **PRA**: | Public Records Act |
| **PRRD**: | Projected Revocation Release Date |
| **PRTC**: | Parole Regional Training Coordinator |
| **PSA**: | Parole Services Associate |
| **PSC**: | Parole Services Center |
| **PSU**: | Psychiatric Services Unit |
| **PU**: | Parole Unit |
| **PV**: | Parole Violator |
| **PVRTC**: | Parole Violator Return To Custody |
| **PVSP**: | Pleasant Valley State Prison |
| **PVWNT**: | Parole Violator Returned With New Term |
| **PY**: | Personnel Year |
| ***Q*** | |
| **QA**: | Quality Assurance |
| **QAP**: | Qualification Appraisal |
| **QC**: | Quality Control |
| ***R*** | |
| **R&R**: | Receiving and Release |
| **RAL**: | Release-At-Large |
| **RAO**: | Regional Accounting Offices (see ASB) |
| **RC**: | Reception Centers |
| **RDO**: | Regular Day Off |
| **RFP**: | Request For Proposal |

| | |
|---|---|
| **RFQ**: | Request For Quotations |
| **RJD**: | Richard J. Donovan Correctional Facility at Rock Mountain |
| **RN**: | Registered Nurse |
| **RO**: | Reporting Officer |
| **RPA**: | Regional Parole Administrator |
| **RPMB**: | Regulation and Policy Management Branch |
| **RPS**: | Release Program Study |
| **RRD**: | Revocation Release Date |
| **RRS**: | Records Retention Schedule |
| **RTC**: | Return To Custody |
| **RTO** | Released To a Hold |
| **RTQ**: | Restricted To Quarters |
| **RTW**: | Return To Work |
| **RTWC**: | Return To Work Coordinator |
| ***S*** | |
| **SAC**: | California State Prison, Sacramento |
| **SACCO**: | Sacramento Control Office Unit, Reg. I |
| **SAM**: | State Administrative Manual |
| **SATF**: | California Substance Abuse Treatment Facility & State Prison, Corcoran |
| **SCC**: | Sierra Conservation Center |
| **SCEP**: | Supervisors of Correctional Education Programs |
| **SCIF**: | State Compensation Insurance Form |
| **SCO**: | State Controller's Office |
| **SCS**: | Services Contracts Section |
| **SDLC**: | Systems Development Life Cycle |
| **SDP**: | Step Down Program |
| **SDS**: | Safety Data Sheet |
| **SEERA**: | State Employer Employee Relations Act |
| **SFM**: | State Fire Marshall |
| **SHO**: | Senior Hearing Officer |
| **SHU**: | Security Housing Unit |
| **SISP**: | Strategic Information Systems Plan |
| **SKELLY**: | SPB Rule 61 |
| **SOL**: | California State Prison, Solano |
| **SOMS**: | Strategic Offender Management System |
| **SPB**: | State Personnel Board (see CalHR) |
| **SPR**: | Special Project Reports |
| **SPS**: | State Price Schedule |
| **SQ**: | California State Prison, San |

| | |
|---|---|
| | Quentin |
| **SRC**: | State Records Center |
| **SRN**: | Supervising Registered Nurse |
| **SROA**: | State Restrictions Of Appointment |
| **SSCH**: | State Summary - Criminal History |
| **SSI**: | Supplemental Security Income |
| **SSM**: | Staff Services Manager |
| **SSS**: | Selection Support Section |
| **SSU**: | Special Services Unit |
| **STD**: | Standard Form (DGS) |
| **STG**: | Security Threat Group |
| **STG Investigator**: | |
| **SVP**: | Sexually Violent Predator |
| **SVSP**: | Salinas Valley State Prison |
| ***T*** | |
| **T&D**: | Training and Development |
| **TAC**: | Trade Advisory Committee |
| **TAU**: | Temporary Authorization |
| **TB**: | Tuberculosis |
| **TCL**: | Temporary Community Leave |
| **TCR**: | Temporary Community Release |
| **TD**: | Temporary Disability |
| **TDC**: | Teale Data Center |
| **TDD**: | Telecommunications Device for the Deaf |
| **TEA**: | Travel Expense Advance |
| **TEC**: | Travel Expense Claim |
| **TSB**: | Training Services Branch |
| **TTC**: | Technology Transfer Committee |
| ***U*** | |
| **U.S.**: | United States |
| **UA**: | Urinalysis |
| **US**: | Under Supervisor |
| **UCC**: | Unit Classification Committee |
| **USICE**: | United States Immigration and Customs Enforcement |
| **USINS**: | United States Immigration and Naturalization Service (see USICE) |
| **USPS**: | United States Postal Service |
| ***V*** | |
| **VC**: | Vehicle Code |
| **VCGCB**: | Victim Compensation and Government Claims Board (formerly Board of Control) |
| **VEA**: | Vocational Education Act |
| **VR**: | Vacation Relief |

Solares v. Diaz, E.D. Cal. No. 1:20-cv-00323
DEF 000041

ACRONYMS AND CROSSWALK

| **VSP**: | Valley State Prison |
|---|---|
| ***W*** | |
| **W&IC**: | Welfare and Institutions Code |
| **WAC**: | Women's Advisory Council |
| **WBE**: | Women Business Enterprises |
| **WCAB**: | Workers' Compensation Appeals Board |
| **WCC**: | Workgroup Computing Coordinator |
| **WCTD**: | Workers' Compensation Temporary Disability |
| **WICC**: | Western Interstate Corrections Compact |
| **WLC**: | Women's Liaison Council |
| **WNT**: | With a New Term |
| **WPS**: | Wanted Persons System |
| **WSP**: | Wasco State Prison |
| ***Y*** | |
| **YOPB**: | Youthful Offender Parole Board (see BPH) |

Solares v. Diaz, E.D. Cal. No. 1:20-cv-00323
DEF 000042

- Personally identifiable information such as a person's name in conjunction with the person's social security number, credit or debit card information, individual financial account, driver's license number, state ID number, or passport number, or a name in conjunction with biometric information;
- Personal health information such as any information about health status, provisions of health care, or payment for health care information as protected under the Health Insurance Portability and Accountability Act of 1996 (HIPAA);
- Correctional Offender Record Information as defined in California Penal Code sections 13100-13104;
- Information that if disclosed would reveal vulnerabilities to, or otherwise increase the potential for an attack on, an information technology system of a public agency as specified in GC section 6254.19. Examples include but are not limited to firewall and router configuration information, server names and IP addresses, and other system configuration details;
- Any documentation of information which contains information or data within any Gang Database as defined in the CDCR Department Operations Manual (DOM) sections 52070.22-52070.24;
- Records of investigations, intelligence information, or security procedures as specified in GC section 6254(f); this includes but is not limited to information identifying confidential informants and security procedures contained in DOM section 55000.
- Personnel, medical, or similar files, the disclosure of which would constitute an unwarranted invasion of personal privacy protected under GC section 6254(c) or the Peace Officers Bill of Rights under GC section 3300 et seq.

Encrypted e-mail must be used when HRCI information is sent to non-CDCR e-mail addresses by placing the keywords of "CDCR Encrypted Message" into the subject line of the e-mail without the quotes. This method should be used only when transmitting HRCI, confidential, or sensitive data.

Prior to sending any e-mail, verify the accuracy of the recipient's e-mail address to prevent unintentionally sending it to an unauthorized individual. Once an e-mail is sent outside the Department, it cannot be recalled and/or undone.

**47110.9     Personal Information**

Employees shall not seek out or use personal information maintained by the CDCR for their own private interest or advantage. Personal information shall not be transmitted in e-mail or as attachments to e-mail without appropriate encryption controls.

**47110.10     Unsolicited E-Mail**

Unsolicited e-mail may carry viruses. If the sender's identity and intent cannot be verified, such e-mail should be deleted unopened. Unsolicited e-mail from unknown senders should always be deleted unopened. Do not open attachments or Internet links accompanying such unsolicited e-mail.

**47110.11     Use of Global Distribution Lists**

Use of the global distribution list should be limited to departmental, State, or national emergencies, and information from executive levels or program areas that affect all employees. Distribution of information not required by all employees shall be limited to the affected work groups or physical locations.

**47110.12     E-Mail Administration**

Enterprise Information Services (EIS) shall perform all administration functions including, but not limited to, establishment of server mailboxes, system-wide filters, and virus scanning functions. EIS shall determine the disk space required to ensure correct functionality of the e-mail system.

**47110.13     E-Mail Virus Protection**

EIS shall manage the virus protection program for all workstations, servers, and network devices. All workstations connected to the CDCR Network or that are Internet accessible shall have the most current Virus Protection software, determined by the EIS. CDCR Network workstations shall be configured to automatically update the virus protection software. Staff shall not disable or turn off this feature. Distribution of virus-laden e-mail may result in performance degradation of the CDCR network and the removal from the network of the workstation(s) from which the infected e-mail is sent.

**47110.14     Local E-Mail Usage Guidelines**

Local operating procedures and guidelines may apply to e-mail content and handling. Local guidelines and procedures are in addition to this e-mail policy and may not be in conflict with or contradictory to this policy.

**47110.15     Electronic Document Management**

The CDCR is committed to ensuring that all departmental electronic documents, including e-mail messages used by staff in the course of their employment, are retained efficiently and in compliance with the Records Management Act, GC section 14740, et seq.

**47110.16     E-Mail Retention**

E-mail messages are official records and are subject to State, federal and CDCR rules and policies for retention and deletion. The E-mail Retention Policy defines how long information sent or received by e-mail should be retained. These policy guidelines cover only information that is either stored or shared via e-mail, including e-mail attachments. This policy establishes retention parameters to effectively capture, manage, and retain e-mail messages. All e-mail (e.g., administrative correspondence, fiscal correspondence, general correspondence) is subject to this policy. This policy applies to all individuals using the CDCR e-mail system. All sent and received e-mail from the department's e-mail system shall be retained for a period of three years.

When litigation is pending or future litigation is reasonably probable, the law imposes a duty upon CDCR to preserve all documents and records that pertain to certain issues. A litigation hold directive overrides any retention policy until the litigation hold has been cleared. E-mail for employees that have been placed on litigation hold must be retained by CDCR until the litigation hold is released or 3 years have passed, whichever occurs later.

**47110.17     Enforcement**

Failure to comply with this policy and associated policies, standards, guidelines, and procedures may result in disciplinary action up to and including dismissal from State service for employees or termination of contracts for contractors, partners, consultants, and other entities. Legal action also may be taken for violations of applicable regulations and laws.

**47110.18     Deviation from Policy**

CDCR staff, contractors, volunteers, and agents operating on behalf of CDCR must comply with all applicable policies rules, standards, procedures and guidelines. Variations and exceptions to this policy will be based on instances where the cost to remediate non-compliant systems exceeds the cost and the risk of remaining non-compliant. Deviations to policy requests are reviewed and analyzed by the ISO, and if the request creates significant risks without compensating controls, it will not be approved.

All approved deviations to policy requests shall have an expiration date and must be reviewed prior to that date to ensure that assumptions or business conditions have not changed, and be reapproved if the deviation policy is still valid.

**47110.19     Revisions**

The Director, EIS, or designee shall be responsible for ensuring that the contents of this Article are kept current and accurate.

**47110.20     References**

Government Code §§ 6250-6265.

California Code of Regulations, Title 15 § 3261.2.

California Labor Code § 92.

Civil Code, Information Practices Act § 1798.

California State Administrative Manual § 5320.5.

California Penal Code §§ 13100-13104.

California Civil Codes § 17.

### ARTICLE 39 — UNASSIGNED

### ARTICLE 40 — DISTRIBUTED DATA PROCESSING SYSTEM

*Revised April 10, 1993*

**47130.1     Policy**

It is the policy of the Department that the DDPS be used by facilities to efficiently maintain specified inmate information. This on-line, integrated information system has been established at the facilities to allow information sharing among multiple users within each facility.

**47130.2     Purpose**

The purpose of this policy is to describe DDPS and provide requirements for its use, thereby assisting facility staff to maintain a more efficient and secure environment in facilities.

Solares v. Diaz, E.D. Cal. No. 1:20-cv-00323
DEF 000043

**47130.3　　Responsibility Within DDPS**

Wardens have direct responsibility for the use of DDPS at facilities, and responsibility is delegated to staff who use DDPS applications. Such responsibility includes ensuring the security of the system, and the integrity and accuracy of its data.

Users input information into the DDPS and, in return, are able to access the pooled information data base of the system. Since multiple users access the data base, there is an increased importance for entered information to be timely and accurate since it is relied upon by users throughout the Department.

The facility AISA is responsible for on-site support of DDPS users. This includes user log-on, security, trouble-shooting, producing ad hoc reports using INFORM, personal computer download activities, and headquarters liaison activities. The AISA provides assistance and training to users of the system. Additional training and assistance may be arranged through ISD.

DDPS issues that cannot be resolved at the facility or through ISD should be directed to the Deputy Director, ID.

QA and QC are ongoing concerns. ISD has established controls to ensure the accuracy of technical aspects of DDPS. Periodic monitoring and audits have been established to ensure that QC requirements are met, and assistance is provided to eliminate deficiencies within specified time frames.

**47130.4　　System Overview of DDPS**

DDPS is a system comprised of one or more minicomputers operating in each facility and connected to minicomputers in headquarters by a wide area communications network. Four major applications reside currently on the DDPS. In addition to the requirements of this section, use of each application shall meet general operating specifications regarding policy, purpose, responsibility, QA, and QC.

The four DDPS applications are:

**Inmate Roster System**

The Inmate Roster System is the basis for DDPS and is, therefore, critical for the maintenance of all other DDPS applications. The roster is designed for use by control room staff and provides an automated means for tracking inmate location. This application allows any authorized user to request reports or make inquiries regarding any inmate or housing unit in the facility.

**Inmate Roster Record**

An Inmate Roster Record is created the first time an inmate is admitted. At that time, control room staff enter the inmate's full name, date of birth, ethnicity, arrival date, and location from which the inmate arrived. Once the inmate is admitted, the user must enter only the inmate's CDC number and the first five characters of the last name to enter a movement transaction. Reports on inmate movement may be generated within this application. The Automated Daily Movement Sheet is designed to assist control room staff in their use of the CDC Form 117, Daily Movement Sheet.

In addition to the inmate roster, this application maintains a roster of the housing structure and beds at each facility. Control room staff may use this information to readily identify vacant beds, the identity of the inmate in each bed, and beds that are being held for inmates on temporary leave from the facility (e.g., out to court for the day, in a local hospital). Bed vacancy and empty bed reports may be produced in this application to assist control room staff with the running count process.

Although the inmate roster was designed to serve the needs of control room staff, it has proven to be highly beneficial to other functional areas of the facility. Mailrooms have replaced their card systems with query terminals, and many visitor control areas use either terminals or housing reports to locate inmates within the facility. The inmate assignment office uses the information to make appropriate job assignments. Facility staff can request the preparation of special reports by their AISA using "INFORM" or by ISD using ad hoc reporting capabilities.

**Responsibility**

The Control Room Sergeant is responsible for data integrity and security of this application.

**Time Collection System**

The Time Collection System automates the data entry portion of updating the OBIS work time credit database. The CDC Form 191, Inmate Timecard, is scanned using a Sentry 4000 Optical Scanner. The scanned timecard information is sent to a file on the DDPS at each facility; the file is transferred nightly to Teale Data Center; data is validated; and the OBIS database is updated.

**Responsibility**

The CCRM is responsible for data integrity and security.

**Inmate Classification System**

The Inmate Classification System tracks the results of inmate classification hearings and contains certain descriptors critical to other functional areas of the facility. The privilege group determines an inmate's eligibility for canteen draw, visiting, and other inmate activities. Additionally, the inmate classification system tracks hearing dates and provides a "tickler" to notify counselors of upcoming hearing responsibilities.

Inmate Classification System information is entered after the initial inmate record is created. It is imperative to enter data during or immediately following hearings so that staff have up-to-the-minute information about a inmate's custody level and classification score, thus assisting subsequent program decisions.

**Responsibility**

The CC-II/III is responsible for data integrity and security.

**Inmate Assignment System**

The Inmate Assignment Application tracks inmate job assignments and inmate job waiting lists. It contains descriptive information about each job, including pay grade, dictionary of occupational titles code, Inmate Work Training Incentive Program code, assignment beginning date, job status, work location, site phone number, work schedule including regular days off, the name of the inmate holding the job if assigned, and any restrictions or special job requirements.

When assigning an inmate to a job or a waiting list, this application uses the Inmate Roster Record (including classification information) to draw custody level and suffix, work group, ethnicity, administrative determinants, work qualifiers, and housing data.

Information entered by the assignment lieutenant updates the inmate roster clearance regarding food handling, gate clearance, and other clearances. The Inmate Assignment System maintains a inmate's current work and waiting list status. Job history records provide information (including dates) about all previous jobs held by an inmate in that facility. Location records provide ethnicity counts to assist in maintaining an ethnic balance. Transportation records contain assignment information used for the daily movement sheet.

**Responsibility**

The Inmate Assignment Lieutenant is responsible for data integrity and security.

**Inmate Trust Accounting System**

PC 2085 and 5057 require that the Department establish, as necessary, an accounting and auditing system to accurately account for all inmate money and property. The Inmate Trust Accounting System is designed to:

- Replace outdated bookkeeping machines.
- Automate the bookkeeping functions in the facility's trust office.
- Account for all inmate monies held in trust by the Department. Each facility uses the inmate trust account system to perform trust accounting functions.

This application uses information provided by the Inmate Roster System to identify inmates who have just arrived, transferred out, transferred in, or have been paroled or discharged. For each new arrival, the Inmate Trust Accounting System establishes a trust account in which monies shall be held and deposits and withdrawals posted. An inmate's record is updated when the inmate leaves the facility to reflect the new location so that account information and funds can be transferred.

The Inmate Trust Accounting System produces monthly statements of account, a general ledger, accounts payable, accounts receivable, a daily balance sheet, audit reports, and preprinted canteen cards.

**Responsibility**

The Trust Officer is responsible for data integrity and security.

**47130.5　　Revisions**

The Chief, ISD, or designee shall be responsible for ensuring that the contents of this article are kept current and accurate.

**47130.6　　References**

PC §§ 2085 and 5057.

**ARTICLE 41 — DEPARTMENTAL WORKGROUP COMPUTING POLICY**

*Revised March 21, 1997*

**48010.1　　Policy**

This document is the formal definition of the Department policy regarding the acquisition and use of workgroup computing technologies, including portable,

Solares v. Diaz, E.D. Cal. No. 1:20-cv-00323
DEF 000044

Case 1:20-cv-00323-LHR-FJS   Document 294-16   Filed 08/03/26   Page 50 of 61

## 52010.21    Types of Urinalysis Requests

Staff shall request a Basic Drug Panel analysis of the urine sample unless the inmate's behavior provides reasonable suspicion of other drug use. The Basic Drug Panel will detect the presence of the following substances:

Basic Drug Panel:

- Alcohol.
- Barbiturates (short and long acting).
- Amphetamines.
- Cannabinoids
- Cocaine.
- Codeine.
- Methamphetamines.
- Opiates Morphine (Heroin).
- Phencyclidine (PCP).

Additional urinalysis may be specifically requested to detect the use of the following substances:

- Synthetic Tetrahydrocannabinol (Spice).

The Basic Drug Panel analysis will be conducted on each sample submitted to the laboratory.

## 52010.22    Urine Sample Storage and Transfer

To ensure that the integrity of the sample is not compromised, the chain of custody must be maintained during processing and storage of the samples.

Each institution/facility must maintain a secure box for the storage of test samples. Only designated staff shall have access to the urinalysis lock box keys.

Upon completion of the test, the staff member conducting the test shall secure the sample in the urinalysis lock box.

A urinalysis logbook shall be maintained at each institution, which shall include the inmate's name, CDCR number, date of test and chain of custody of the sample.

Only designated staff shall remove the samples from the urinalysis lock box, and forward the samples to the laboratory for analysis. The date the sample was removed, the name of the staff member who removed the sample, and the date the sample was sent to the laboratory shall be entered into the institution's urinalysis logbook.

Staff must ensure the samples are processed in accordance with the laboratory contract.

## 52010.23    Processing and Documentation of Tests Results

The date that any positive test results are received by the institution/facility shall represent the date of discovery for disciplinary action.

Upon receipt of the laboratory test results, the results shall be logged in the institution's urinalysis logbook.

The DTC shall notify and forward a copy of the laboratory results to the program office where the inmate is currently housed.

The officer who collected the urine sample shall document the results of the positive test on a CDC Form 115 charging the inmate with a violation of CCR 3016, Possession of a Controlled Substance, Drug Paraphernalia and Distribution.

### Medical Review Process

Inmates who test positive during the Mandatory Random Urinalysis Program and contend the positive urinalysis test result may have been caused by their prescribed medication(s), may submit a CDCR 7385, Authorization for Release of Protected Health Information, form to pharmacy staff in order to obtain a copy of his/her MAR at any time. Pharmacy staff shall provide a copy of the MAR to the Drug Testing Coordinator. The Drug Testing Coordinator shall contact the contracted laboratory or consult the contracted laboratory's written guidance to verify whether prescription medications were the cause for the positive test result(s). If it is determined by the contracted laboratory that the positive urinalysis result(s) are consistent with the inmate's prescribed medication(s) no disciplinary action shall be taken and the result shall not be used for any purpose.

If it is determined by the contracted laboratory that the positive urinalysis result(s) are inconsistent with the inmate's prescribed medication(s), the inmate shall be subject to the appropriate disciplinary action.

## 52010.24    Destruction of Controlled Substances

The evidence custodian shall coordinate with a representative from the local police, sheriff's department, or State DOJ to participate in a scheduled destruction of controlled substances.

The ranking staff person of the facility investigative unit shall verify the controlled substances to be destroyed and sign the CDCR Form 1754, Controlled Substances for Destruction, prior to delivery to the destruction site.

All controlled substances scheduled for destruction shall be submitted in sealed containers. Each box or bag shall contain not more than 15 separate pieces of evidence to facilitate random checks by the local enforcement agency coordinator assigned to the destruction site.

One investigative unit supervisor and the evidence custodian shall transport the substances scheduled for destruction to the actual destruction site and witness the destruction.

The officers shall sign the evidence log indicating the date, place and method of destruction.

The evidence custodian shall retain a copy of the court order, as discussed in section 52010.25, and the CDCR Form 1754.

Providing additional security required when transporting large quantities of controlled substances for destruction is the responsibility of the ranking investigating staff person submitting the controlled substances for destruction.

## 52010.25    Obtaining a Court Order for Destruction

Upon completion of the CDC Form 1754, the following documents shall be submitted to the court of jurisdiction to obtain a court order for destruction:

- A declaration that includes the following statements:
  - "I am a peace officer at (facility or parole unit)."
  - The cases are closed.
  - It is necessary that the items be destroyed.
- The actual completed court order to be signed by the judge.

## 52010.26    Controlled Substance Destruction Schedule

Destruction of controlled substances shall be on a semiannual basis.

During the months of January and July, the designated staff member/evidence custodian shall prepare a CDCR Form 1754.

Initiation of the procedure should be made well in advance of anticipated destruction date due to the lengthy process necessary to secure the appropriate court order.

All controlled substances seized during the previous six-month period that are not being held as evidence for a criminal trial or a disciplinary hearing shall be listed on the CDCR Form 1754.

## 52010.27    Revisions

The Director, DAI, or designee shall be responsible for ensuring that the contents of this article are kept current and accurate.

## 52010.28    References

CCR (15) (3) §§ 300, 3016, 3290, 3315, 3323, and 3410.

H&SC §§ 11007, 11014, 11054, 11055, 11056, 11057, 11058, 11473, 11473.5, and 11474.

### ARTICLE 16 — INMATE COUNT AND MOVEMENT

*Revised August 12, 2013*

## 52020.1    Policy

The CCR 3274 permits the institution head to develop a system to physically count inmates under his/her jurisdiction and to accurately account for those inmates at all times.

## 52020.2    Purpose

The purpose of a count is to facilitate inmate control, accountability, and to expedite inmate movement throughout the institution/facility in accordance with the established count schedule as set forth in DOM 52020.4.1.

## 52020.3    Responsibility

The Correctional Captain/Facility Captain is responsible for ensuring that a detailed institution/facility count is accurately conducted at the designated times.

The Correctional Captain/Facility Captain shall establish a system that regulates staff/inmate movement throughout the institution/facility.

All employees shall ensure that inmates are not involved in gathering count information nor allowed access to count records.

## 52020.4    Count Criteria and Number of Counts

A physical count of all inmates shall be performed a minimum of four times each calendar day, unless otherwise authorized in writing by the Director. All inmate movement/activity shall cease when count has been initiated by

Solares v. Diaz, E.D. Cal. No. 1:20-cv-00323
DEF 000045

Central Control. Exception: Emergency medical transports to outside facilities shall not be delayed for the purpose of the count. The staff member escorting the inmate shall confirm with control the inmate's name, CDC number, and housing.

The Strategic Offender Management System (SOMS) automated count process shall be used to:

- Submit tentative out count rosters to Central Control.
- Submit actual positive count totals to Central Control.
- Submit actual negative count totals to Central Control.
- Compile, record, reconcile, clear, and document all Institution counts.
- Print Shift Count Packages for the Central Control Sergeant's and the Watch Commander's signatures.

Individual count totals conveyed to Central Control shall correspond with Central Control's Master Count Record.

### 52020.4.1          Frequency of Counts

The frequency of institution/facility counts shall be determined by the Standard Count Schedule. All institutions/facilities shall make every effort to adhere to the Standard Count Schedule. This is based on the security needs of the individual institutions/facilities and custody designations of assigned inmates. Staff shall ensure that inmate activities are not scheduled to conflict with institution/facility counts.

Standard Count Schedule

| Mandated Times | Type of Count |
|---|---|
| 0030/0100 | Positive Count. |
| 0230/0300 | Negative Count. |
| 0430/0500 | Positive Count. |
| 1100/1200* | Close A Custody Count, Minimum Support Facility and Community Work Crew Count. |
| 1600/1700 | Positive Count. |
| 2100/2300 | Positive Count. |

*This count does not include all inmates housed at the institution/facility; therefore, it is not inclusive of the four required counts.

### 52020.4.2          Method of Count

The count shall be performed by the physical observation of each inmate at his/her assigned housing unit or out counting of inmates at his/her specified work/activity location. Supervisors shall track inmates absent from their assignments. After the count is completed, it shall be entered in the Watch Commander's Daily Activity Log.

### 52020.4.3          Camps' Count Policy

There shall be at least four formal camp counts of all inmates in each 24-hour period.

Inmates shall be counted upon mounting and dismounting vehicles, and going to and returning from any place outside the camp or facility. Agency crew foremen shall make counts of inmates in their custody at frequent intervals, and shall count the inmates before leaving camp and upon returning to camp. Counts are required at least once during the morning, lunch time, between lunch, and the end of the work day, departure from the work area, and at other times recommended by the Camp Commander.

Emergency counts may be necessary at any time to determine if there has been an escape or to identify an escapee(s).

### 52020.5          Positive Count

A positive count is the actual number of inmates that each respective staff member has counted and reported to Central Control. (*Note:* A positive/physical count means to count a living, breathing person and physically see that person.)

The positive count shall be submitted to Central Control using the SOMS automated count process and is automatically populated with the date, time, and the name of the staff member who is logged into the SOMS application. The count total and name of the person who actually conducted the positive count must be entered at the time of submission.

As directed by Central Control for the purpose of verifying unit positive counts, a vacant bed count may be requested.

If Central Control receives an incorrect positive count, a vacant bed count may be requested from the counting employee.

Upon direction from Central Control to perform a vacant bed count, the officer performing the count shall start with the lowest numbered cell/bed in

numerical order, writing down the numbers of each unoccupied bed. Upon completion, the officer shall utilize this list and provide the vacant bed count to Central Control via telephone. Central Control shall substantiate this information, ensure all inaccuracies are corrected, and direct the officer to submit a revised Positive Count into SOMS utilizing the IPTS085D – Re-Enter for Housing Area count screen.

### 52020.5.1          Standing Count

During the 1600/1700 count, inmates housed in cells shall stand upright at their cell door and shall remain standing until counted by the officer conducting the count.

- Inmates housed in dormitories equipped with double tier bunks shall remain seated on their assigned bunk until the count is completed by the officer.
- In dormitories equipped with triple tier bed/bunks, the inmate assigned to the top tier bunk shall be seated on the top bunk, and the inmates assigned to the bottom and middle tier bunks shall be seated on the fold out stools until the count is completed by the officer.

Disabled inmates shall be reasonably accommodated, dependent on their disability.

### 52020.5.2          Negative Count

The Negative Count is the actual accounting of all vacant (unoccupied) beds at a given time whether these beds are assigned or not.

Due to double/triple bunking of inmates, it is necessary to ensure that inmates do not interchange their assigned beds. Each institution/facility shall perform a Negative Count at least once each day.

A Negative Count is the recording of all unoccupied beds in a housing unit. These bed numbers shall be submitted via the SOMS automated process utilizing the IPTS015C – Negative Count Worksheet.

### 52020.5.3          Out Count

To maintain continuity of operations, some inmates may not always be counted in their assigned housing units. These inmates shall be "out counted" by their supervisors and shall remain under direct supervision until the count is cleared.

The SOMS automated count process shall be used to submit tentative out count rosters to Central Control.

When SOMS is not available or the institution's/facility's electrical power fails staff shall manually prepare tentative out count rosters and submit the rosters to Central Control.

The tentative out count roster that is submitted to Central Control shall include cell/bed number, inmate's name and CDC number, and the area where the inmate(s) will be out counted. Staff out counting inmates shall submit their tentative out count roster in SOMS using the automated out count process.

### 52020.5.4          Close Custody Count

SOMS identifies all inmates designated as Close A custody, and compiles them into the Close Custody Count. The Close Custody Count shall be submitted to Central Control using the SOMS automated count process. Close custody counts shall be conducted utilizing a positive picture identification card to count all inmates classified as Close A custody. When inmates present themselves, staff shall ensure that inmates resemble their picture identification card. In accordance with CCR 3017, all inmates classified as Close A Custody are responsible for reporting to the established location(s) designated by each individual institution/facility.

- Close A Custody inmates shall be counted while they are on work assignments, on recreation time, in housing units, or involved in any other activity. Close A Custody counts shall be scheduled in conformity with DOM 52020.4.1.
- The Watch Commander shall be notified and a search shall be initiated when the Close A Custody Count is not cleared 15 minutes after the count has been announced. If the unaccounted for Close A Custody inmate(s) is not located within 15 minutes of initiation of the search, an emergency recall of all inmates may be instituted by the Watch Commander.

### 52020.5.5          Informal Count

An informal count is a physical count and positive identification of inmates who are present at their program/work assignments. Informal counts shall be conducted by all employees supervising inmates.

These informal counts shall be completed on an hourly basis. Any discrepancies shall be reported immediately. Informal counts shall be conducted to ensure inmates are present in their assigned areas, such as housing units, work centers, minimum support facilities, and community work crews.

Solares v. Diaz, E.D. Cal. No. 1:20-cv-00323
DEF 000046

#### 52020.5.6        Emergency Count

An emergency count shall be conducted to establish whether an escape has occurred, or in the event of an obvious escape (inmate seen climbing security fence, dummy in cell, etc.), to determine the exact identity of the inmate(s) involved.  During an emergency count, all inmates shall be returned to their assigned cells/beds.

During business hours, emergency counts shall be approved at a level not less than the Correctional Captain, or in the absence of the Correctional Captain, the Watch Commander.  During non business hours, emergency counts shall be approved by the Watch Commander or highest ranking officer on duty.

#### 52020.5.7        Picture Count

When a positive or negative count or recount does not clear, and the identity of the out-of-place or missing inmate(s) cannot be determined, a picture identification of all inmates shall be performed.  Since an accurate comparison of each inmate against their inmate identification picture card is a prerequisite for the picture count, an up-to-date picture of all inmates shall be maintained on an inmate picture file.  Inmate picture files shall be maintained in Central Control.

Central Control is responsible for ensuring continued maintenance and absolute accuracy of the inmate picture files that are maintained in Central Control.  The inmate picture files shall be maintained in a secured location within Central Control as described in Section 52020.6.4.

- During a picture count, a comparison of each inmate against his/her CDC identification card shall be conducted.  If an inmate(s) cannot present his/her CDC identification card, the IPTR176 – Inmate by Housing Area report with "Include Inmate Photo" selected that is generated by SOMS can be used for a positive visual identification.  In the event that a photo is not available in SOMS, the photo on the Central Control's inmate picture file shall be taken to the housing area and used for a positive visual identification.  During a picture count, all inmates' identities and cell/bed numbers shall be compared to the IPTR176 – Inmate by Housing Area report, with "Include Inmate Photo" selected, that is generated by SOMS.

#### 52020.5.8        Limited Visibility Count

When visibility is severely restricted (due to inclement weather conditions) a recall of all inmates shall be initiated and a limited visibility count shall be completed.

During limited visibility count, inmate workers who are on the critical workers list may be out counted. The critical workers list shall be developed by the Facility Captains and reviewed and approved by a designated Associate Warden.

**Operations**

The Watch Commander shall initiate limited visibility operations whenever severely reduced visibility conditions exist, which afford inmates an increased opportunity to escape.  Limited visibility operations shall be initiated when the outer perimeter tower posts are unable to see one another clearly and distinctly and shall consist of:

- Initiating and clearing a limited visibility count.
- All inmate movement shall be cleared by the Watch Commander or higher and shall be under direct supervision.
- Continuing indoor programs within the facility.
- Terminating yard exercise and outdoor programs within the security perimeter.
- Posting foot patrols inside the security perimeter with designated safety equipment.
- Posting armed foot/vehicle patrols outside the security perimeter (not authorized at institutions with a lethal electrified fence unless the lethal electrified fence becomes nonoperational).
- On duty staff shall be utilized for posting inside and outside security perimeter patrols.

Institutions with a lethal electrified fence may conduct indoor programs (e.g., academic and vocational programs, industries and maintenance) within the security perimeter.

Institutions without a lethal electrified fence shall conduct programs (e.g., academic and vocational programs, industries and maintenance) in accordance with their limited visibility plans and security requirements.

In the event the lethal electrified fence becomes nonoperational during times of limited visibility, institutions are advised to revert to their operational procedures, which were utilized prior to the installation and/or activation of the lethal electrified fence.

**Removal of Limited Visibility Operations**

The Watch Commander shall promptly resume normal institution/facility operations when outer perimeter posts can see one another clearly and distinctly, or when a designated landmark can be seen clearly and distinctly by a designated post.

#### 52020.6        Count Notification

The institution/facility count cannot be cleared until Central Control reconciles the Master Count Sheet.

Inmate movement may resume when the Central Control announces, via the institution/facility public address system or other available means, the institution/facility count is clear.

#### 52020.6.1        Paper Count Slips in place of the SOMS Automated Process

The SOMS automated count process produces electronic count slips that include:

- Date and time of the count.
- Name of the person who is logged into SOMS and submitting the count.
- Count area.
- The reporting employee entered count total.
- The reporting employee entered name of the staff member who conducted the count

This automated process shall be used to submit actual positive and negative count totals to Central Control.  These electronic count slips are permanently electronically attached to the completed Count Package.

When SOMS is unavailable or the institution's/facilities electrical power fails, Central Control staff shall conduct count by using a manual process.  Facility staff shall prepare paper count slips, and or negative count slips, and submit slips to Central Control.

The count slips used for institution/facility positive counts shall be designed by each institution/facility Central Control to match the standardized SOMS count slip for the individual institution/facility design and be approved by the Correctional Captain.  Count slips shall be prepared in blue or black ink and shall include:

- Current date.
- Time count commenced.
- Actual number of inmates counted.
- Housing unit.
- The printed name and signature of the employee who conducted each count.

The negative count slip is a recording of the total number of unoccupied cells/beds counted.  In a unit/dorm utilizing double bunks, the following shall be denoted on the count slip, Upper (U) and Lower (L) or Right (R) and Left (L).  When housing units utilize triple bunks, the following shall be denoted, Upper (U), Middle (M), and Lower (L).  The negative count slip shall be submitted to Central Control and include the following:

- Date and time.
- Negative bed numbers and bed totals.
- Printed name and signature of the staff member conducting the negative count and the responsible Sergeant.

The positive count slips, out count slips, negative count slips, if applicable and adding machine tape shall be secured to the Master Count Sheet as one document and archived for one year unless they reflect evidence of an escape.

If a count slip reflects any kind of alterations, the Central Control shall request the submission of a new count slip.

#### 52020.6.2        Central Control

Central Control shall monitor, reconcile and clear all official institution counts using the SOMS automated count process.  They shall maintain a current, accurate record of all inmates to reflect all inmate movement.  Once Central Control opens a Shift Count all area counts that are submitted to Central Control shall match the tentative count compiled by SOMS and reflected on the Shift Count.

When SOMS is not available or the institution's/facility's electrical power fails, Central Control shall manually prepare a Master Count Sheet.

- On all watches, Central Control shall log times that official counts are received on a manually prepared Master Count Sheet.  They shall maintain a current, accurate record of all inmates to reflect all inmate movement.  Once a tentative count (out counts included) is set up, all areas shall match with the Central Control's Master Count.

**Central Control Security**

Solares v. Diaz, E.D. Cal. No. 1:20-cv-00323
DEF 000047

Central Control shall be staffed on a 24-hour basis. To prevent unauthorized access, the outer sallyport door shall be mechanically operated from inside Central Control. Once the identity of the person(s) being admitted has been determined and the outer sallyport door is secured, the inner door can be opened manually to allow authorized staff access into Central Control.

### Additional Duties/Responsibilities

Central Control duties/responsibilities may also include: monitoring fire and security personal alarm systems; operating electrically controlled doors/gates; monitoring various perimeter mechanical or electrical alarm systems; operating telephone equipment; and storage/issuance of institution/facility keys, radio communication systems, batons, riot helmets, transparent polycaptor riot shields, chemical agents, weapons, and ammunition.

Central Control, on all watches, shall ensure that all information entered into SOMS is accurate by printing a Daily Movement Recap (DMR) report (produced in SOMS) the conclusion of their watch.

### Central Control/Subarmory

Emergency weapons, ammunition, and chemical agents assigned to Central Control for storage/issuance purposes must be stored in a secured location in accordance with DOM 55050. If armed tower coverage is not provided, the Central Control staff shall be armed. All weaponry shall be inventoried in accordance with DOM 55050.

### Telephone Off Hook Alarm System

The main telephone Off Hook Alarm System (OHAS) is normally located in Central Control. However, institutions/facilities may designate another area to install OHAS. When OHAS is activated, responsible staff shall notify the custody complex and the appropriate supervisory staff. Responsible staff shall maintain an OHAS Log to record all enunciated alarms (when this system is not automated), indicating the following information:

- Date and time of the alarm.
- Location of the alarm.

Each Correctional Captain is responsible for ensuring that a plan exists for appropriate staff response to the area wherever OHAS alarms originate. The plan shall include first and secondary response.

*Note*: Prior to canceling an OHAS alarm response, a staff member shall account for the staff/inmates assigned to the affected area.

### Telephone Security Check Calls

For the purpose of verifying employee alertness and accountability, each Correctional Captain is responsible for designating areas that shall be required to make telephone security check calls each half-hour, commencing at 1930 hours and terminating at 0500 hours. Security Housing Units and Administrative Segregation Units may commence check calls earlier than 1930 hours depending on program needs.

Each institution/facility shall establish a central location that shall receive security check calls and maintain a log to record employees/areas that are designated to make security check calls. The watch office or Watch Commander shall be notified when an employee/area fails to make a security check call.

### 52020.6.3 Running Count

Central Control, on each watch, shall maintain a running count. The running count shall be manually updated during the shift any time there is a movement in a reportable count area that affects the institution/facility count. The running count shall be verified by cross-checking with the inmate picture file, and the DMR report.

The running count shall continue to be manually maintained, and shall also be used as a manual method of tracking the affect of inmate movement on the institution count as the movement occurs, during the period when SOMS is unavailable or the institution's/facility's electrical power fails.

### 52020.6.4 Inmate Picture File

Central Control shall maintain an inmate picture file that contains a picture of each inmate and is systematically sorted by the inmate's assigned housing. Central Control shall maintain absolute accuracy of the inmate picture file.

*Note*: When an inmate requires emergency transport out of the institution/facility (i.e., ambulance) and the inmate's CDC identification card cannot be located, the inmate's picture file maintained in Central Control, or the picture in SOMS may be used to positively identify the inmate and process the inmate out of the institution. Upon completion of the emergency transfer or when the inmate is returned to the institution/facility, Central Control staff shall ensure the inmate's picture file is properly returned/replaced by Receiving and Release.

The picture file shall continue to be manually maintained, and shall also be used as a manual method of tracking the affect of inmate movement on the Facility/Housing Unit counts as the movement occurs, during the period when SOMS is unavailable or the institution's/facility's electrical power fails.

### 52020.6.5 Inmate Housing Assignment Changes

The SOMS automated Bed Request Batch assignment process shall be used for:

- Submittal of bed assignment requests by the Housing Unit Correctional Officer or higher classification.
- Housing Unit Correctional Lieutenant/Sergeant or higher classification review and recommendation or denial of the bed assignment requests.
- Central Control Sergeant review and approval or denial of the recommended bed assignment requests.
- Monitoring of the approved or denied bed requests and the entering of the completed bed moves by the Housing Unit Correctional Officer or higher classification.

A permanent record of Bed Request Batches is maintained in SOMS for archival purposes.

When SOMS is unavailable or the institution's/facility's electrical power fails all Inmate housing assignment changes shall be accomplished by staff completing a GA Form 154, Inmate Transfer Form, upon approval of Central Control.

Without exception, Central Control shall not accept a GA Form 154 or SOMS Bed Request Batch that has not been signed\approved by the Facility Lieutenant/Sergeant or a higher classification.

The facility Correctional Lieutenant/Sergeant shall check for accuracy of the information prior to signing the manual GA Form 154 or approving the automated SOMS Bed Request Batch.

In the event that a manual GA Form 154 has to be completed, Central Control shall retain the original GA Form 154. The remaining three copies are distributed as follows and retained until entries appear on DMR:

- The duplicate copy shall be retained by the officer assigned to the housing unit from which the inmate(s) was housed.
- The triplicate copy and inmate's picture(s), if applicable, shall be retained by the housing officer assigned to the housing unit to where the inmate(s) will be housed.
- The quadruplicate copy shall be retained by the appropriate facility/program office.

### 52020.6.6 Inmate Daily Movement Sheet

The DMS is a combination of existing DDPS reports on work assignments, or custody classification changes, and the SOMS generated IPTR151 – DMR report that includes all arrivals, departures, temporary releases, out-to-courts, and family visits during the previous 24-hour period.

To allow for workload impact on assignment operations, DMS shall have an "effective date" listed to reflect the actual date the action is authorized.

For example:

- The inmate DMS is issued on 12-1-97, however, some of the actions are effective on 11-28-97, or will be effective on 12-3-97.
- The date shown in the "effective date" column is the official date of that specific action.
- The inmate DMS shall be completed prior to the conclusion of the first watch. The First Watch Commander shall check the accuracy of information on the DMS, authorize it to be published with their signature, and have sufficient copies distributed to meet the needs and requirements of each institution/facility.

### 52020.6.7 Housing Roster Report

The SOMS report menu can be used to generate a Housing Roster Report in various formats (i.e., IPTR122 – Housing Area Roster, IPTR176 – Inmates by Housing Area).

### 52020.7 General Movement

The following subsections provide for the assignment of responsibility to staff, and for the orderly release and return of inmates to/from their housing units or activities. This shall include the use of schedules and master pass lists. If applicable, these procedures shall provide for inmate movement outside normal traffic patterns, during daylight and night-time hours, limited visibility, or lockdown conditions.

All scheduled work/training program releases shall be announced to the general population. Inmate movement to and from assignments shall be supervised along established routes.

Solares v. Diaz, E.D. Cal. No. 1:20-cv-00323
DEF 000048

Case 1:20-cv-00323-LHR-FJS Document 294-16 Filed 08/03/26 Page 54 of 61

**Personnel Movement Daylight**

Normal staff movement during daylight hours, unless visibility is severely restricted do to inclement weather, does not need to be communicated post to post. Staff movement to any area, such as rooftops, tunnels, Security Housing Unit perimeter, and security fences shall be cleared by the Watch Commander.

**Personnel Movement Night**

Normal staff movement during first watch hours shall be communicated from post to post via the telephone, intercom, or two-way radio system in all areas where movement occurs. The methods of communication shall be designated by each individual institution/facility.

For the purposes of institutional safety and security, as well as staff accountability, off duty staff, vendors, and individuals not recognized attempting to enter the secured perimeter shall not be allowed to proceed until approval is obtained from the Watch Commander.

**52020.8          Inmate Movement Policy**

All uniformed and non-uniformed staff shall account for and ensure that all inmate releases, movement to activities, and return of inmates to the housing units, are approved and regulated by central control under the direction of the Watch Commander.

**52020.8.1          Work/Training Call**

All scheduled work/training releases established by the institution/facility shall be announced to the general population. Each institution/facility shall establish specific/designated controlled routes for all inmate movement during daylight and darkness hours.

**Absent Inmates**

The supervising employee receiving inmates into his/her area shall attempt to locate any inmates absent from work, academic, or vocational assignments.

If the inmate is not located within one-half hour, the supervising employee shall report the absence to the Facility/Program Sergeant and Central Control.

Prior to reporting an inmate absent from the work/training assignment, staff shall ensure that the inmate is not listed on the DMR as reassigned, and/or listed on the Master Pass list to report to a scheduled appointment.

**Inmate Accountability**

Work/training supervisors shall notify the custodial post that governs inmate gate passes, the exact number of inmates received within their areas of responsibility, and the names of the inmates who failed to report.

Work/training supervisors and designated custodial posts that govern inmate gate passes shall attempt to locate any inmate reported absent from their assignments. If the inmate(s) is not located within 30 minutes, the inmate's absence shall be reported to Central Control and the Watch Commander shall be notified.

**52020.8.2          Gate Passes**

The Inmate Assignment Lieutenant is authorized to issue three different types of gate passes. The gate pass shall identify those inmates, authorized by the classification committees, to work:

- Inside the perimeter fence, which requires inmates to pass through a work change area.
- Outside the perimeter fence of the institution/facility.
- Off institution/facility property.

When the inmate's custody is reduced/increased, the Inmate Assignment Lieutenant shall recall the existing gate pass and issue a new gate pass.

**Gate Pass Security**

Gate passes shall be secured in a metal box with a locking device. The gate pass box shall be divided into "in" and "out" sections. The gate passes shall be moved to the appropriate in or out sections of the box and shall immediately be moved when an inmate enters or exits the gate that controls gate passes. The gate officer shall keep the box locked, and shall not allow inmates to have access at any time.

**Work Change Gate Pass**

Work change gate passes shall be printed on "White" paper and shall contain the following information:

- Labeled with the work change gate's name or number.
- Assigned a sequential number.
- Inmate's photo, name, and CDC number.
- Inmate's assigned housing (pencil).
- Inmates custody, work/academic assignment, and activity restriction.
- Effective date, Regular Days Off, and scheduled hours of work.

- Signature of Inmate Assignment Lieutenant.

**Outside Perimeter Fence Gate Pass**

Outside institution/facility perimeter fence gate passes shall be printed on "Blue" paper, laminated, and in addition to the information required for the work change passes contain the following:

- Signature of Correctional Captain.
- Embossed.

**Off Institution/Facility Property Gate Pass**

Off institution/facility property gate passes shall be printed on "Green" paper, laminated, and contain the same information that is required for outside perimeter fence gate passes.

**52020.8.3          Gate Pass Embossing Stamp**

The Correctional Captain/Facility Captain shall obtain and maintain sole custody of an embossing stamp of unique design at all times. To authenticate gate passes, the Correctional Captain's/Facility Captain's signature and embossing stamp shall be affixed to all gate passes, except work change gate passes.

**52020.8.4          Emergency Rescinding of Gate Passes**

The Watch Commander, Facility Lieutenant, Inmate Assignment Lieutenant, or higher authority shall rescind a gate pass when the inmate demonstrates and/or disrupts an operation, or evidence indicates an inmate may attempt to escape.

The rescinding of a gate pass shall be appropriately documented (CDC Form 115, Report of Rules Violation, CDC Form 128B, Chrono-General, memorandum, etc.).

- Gate passes shall be rescinded upon receipt of a felony arrest hold or detainer, or when an inmate is pending adverse classification committee review.

**52020.8.5          Master Pass List**

Scheduled individual inmate movement shall be arranged by submitting a request to the Inmate Assignment Lieutenant's office one day preceding the effective day by the institutional established time.

A Master Pass List shall be prepared, audited, signed, and published from these requests by the Inmate Assignment Lieutenant.

**52020.8.6          CDC Form 129, Inmate Pass**

Staff shall ensure that all inmates listed on the master pass list receive a CDC Form 129, Inmate Pass. This pass shall be issued to individual inmates to authorize movement to specified locations at designated times.

Each institution/facility shall develop precautionary procedures to ensure blank CDC Form 129s are secured in areas not accessible to inmates.

**Issuance to Inmates**

CDC Form 129s shall be issued to inmates by housing unit staff by 2200 hours the day prior to the effective date on the pass. The CDC Form 129 shall contain the following information:

- Inmate's name and CDC number.
- Inmate's assigned housing.
- Date scheduled.
- Time scheduled.
- The destination.
- The arrival and departure time.
- The reason for the pass.

All non-priority pass forms shall be printed on plain white paper.

When unscheduled inmate movement is necessary, staff shall issue inmates a CDC Form 129 prior to allowing inmates to proceed without staff escort (i.e., medical/dental, authorized attorney visit, disciplinary hearing, or to complete Receiving & Release necessities, etc.). Staff shall call to inform other staff if an inmate(s) is expected to arrive at their location.

**Scheduling Priority Appointments**

Except for emergencies, medical services, and casework needs (priority ducats) passes shall not be scheduled during work/program hours. Pass scheduling shall comply with the work incentive law.

- When it is necessary to make casework contacts during an inmate's work hours, a "Priority Ducat Request" shall be initiated including only those inmates who will be on scheduled work assignments. This shall be done separately from nonpriority request.
- The priority request shall require either the approval of the chairperson of a properly constituted classification committee, or the approval of the originator's immediate supervisor. All priority passes shall be

Solares v. Diaz, E.D. Cal. No. 1:20-cv-00323
DEF 000049

distinguished in accordance with DOM 53130.9.2, Priority Ducat System.

#### 52020.8.7     Movement During Nonworking Hours

Inmates may participate in leisure activities during nonworking hours. Participation is based upon the inmate's privilege group. Movement to inmate activities shall be coordinated by the Watch Commander. Nonworking hour's activities include, but are not limited to, the following:

- Self-help groups.
- Recreational functions.
- Library.
- Canteen.
- Hobby programs.
- Entertainment from the outside community.

#### 52020.8.8     Lockdown Movement

All movement of inmates during a lockdown shall be coordinated by the Watch Commander. Movement shall be restricted to those inmates cleared to perform essential or emergency services. Inmate movement shall be under direct staff supervision and/or escort.

**Feeding**

If controlled feeding is initiated during lockdown conditions, inmates shall be released in small manageable groups and shall be under constant supervision to and from dining halls.

**Medical Appointments or Care**

Inmates who require medical care, or have scheduled medical appointments, shall be under direct staff supervision and/or escort.

**Daily Procedures**

Daily institution/facility procedures governing movement of staff and inmates during lockdown conditions shall be published and distributed to all affected areas.

#### 52020.8.9     Controlled Movement/Close Custody Movement

Inmates, designated as close custody, shall be supervised in accordance with CCR 3377.1.

**Inmate Escorts**

Inmate escorts shall be conducted as security and custody classification dictate. The following are examples to be used as guidelines for escorting inmates:

- The escorting staff member should be approximately 12 to 18 inches diagonally behind the inmate or inmates.
- The inmate may be in restraints (depending on custody classification and behavior).
- The escorting staff member may hold on to the restraints of the inmate (depending on the inmate's behavior or history of behavior).
- The escorting staff member may draw his/her baton for escorting restrained inmates in a general population setting if the staff member deems it necessary.
- For mass escorts, the first escorting staff member should be positioned beside the inmates being escorted, while the second escorting staff member is positioned 12 to 18 inches diagonally behind the last inmate being escorted.

#### 52020.9     Revision

The Director, DAI, or designee shall ensure the contents of this Section are reviewed annually and make changes as necessary.

#### 52020.10     References

PC § 2079.

CCR § 3274.

ACA §4-4188 and 4-4189.

### ARTICLE 17 — CONTROL OF DANGEROUS AND TOXIC CHEMICALS

*Revised January 26, 2015*

#### 52030.1     Policy

All units of the Department shall meet or exceed the requirements of all rules, regulations and laws applicable to identification, training, use, storage, handling and disposal of hazardous chemicals; including those established in the Guidelines for the Control and use of Flammable, Toxic and Caustic Substances, and the Hazardous Substances Information and Training Act, Labor Code, Division 5, Chapter 2.5.

The Department shall provide a working and living area that is as free as possible from unsafe and unhealthy exposure which could lead to personal injury or illness.

#### 52030.2     Purpose

This policy shall establish a method for the identification, receipt, training, issue, handling (or use), inventory and disposal of hazardous chemicals, which is in compliance with all federal, state, and local laws or ordinances.

#### 52030.3     Definitions

The following sections shall define language usage in this section.

#### 52030.3.1     Access

The right and opportunity to examine and/or copy.

#### 52030.3.2     Legislative Act

Hazardous Substances Information and Training Act, Chapter 2.5 commencing with § 6360 of Part 1 of Division 5 of the LC.

#### 52030.3.3     Acute Health Effects

Health effects which are manifested immediately or shortly after, and as a result of, an exposure to a hazardous substance.

#### 52030.3.4     Analysis Using Exposure or Medical Records

Any compilation of data, or any research, statistic or other study based at least in part on information collected from health insurance claims records, provided that either the analysis has been reported to the employer or no further work is currently being done by the person responsible for preparing the analysis.

#### 52030.3.5     Chemical Abstract Service (CAS) Number

The unique identification number assigned by the Chemical Abstract Service (CAS) to specific chemical substances.

#### 52030.3.6     Caustic

A substance that can burn, eat away, or destroy man-made materials and animal tissue by chemical action; corrosive.

#### 52030.3.7     Chemical Name

The scientific designation of a substance in accordance with the nomenclature system developed by the International Union of Pure and Applied Chemistry or the system developed by the Chemical Abstracts Service.

#### 52030.3.8     Common Name

Any designation or identification such as code name, code number, trade name, or brand name used to identify a substance other than by its chemical name.

#### 52030.3.9     Designated Representative

Any individual or organization to whom an employee gives written authorization to exercise a right of access shall be treated as the employee's designated representative for the purpose of access to his/her exposure records.

#### 52030.3.10     Employee

A current employee, a former employee, or an employee being assigned or transferred to work where there will be exposure to toxic substances or harmful physical agents. Also, a deceased or legally incapacitated employee's legal representative may exercise all of the employee's rights under this interpretation.

#### 52030.3.11     Emergency

Includes, and is not limited to, equipment failure, rupture of containers, or failure of control equipment, which could or does result in a release of a hazardous substance in the work place.

#### 52030.3.12     Employee Exposure Records

A record containing any of the following information about employee exposure to toxic, hazardous chemicals (Title 8, CCR, Section 3204).

- Environmental monitoring or measuring, including person, area, grab, wipe, or other form of sampling; as well as related collection and analytical methodologies, calculations, and other background data relevant to interpretation of the results obtained.
- Biological monitoring results which directly assess the absorption of a substance or agent by body systems (e.g., the level of chemical in the blood, urine, breath, hair, fingernails, etc.) but not including results which assess the biological effect of a substance or agent.
- Material Safety Data Sheets (MSDS) and/or Safety Data Sheets (SDS).
- In the absence of the above records, any other record which reveals the identity; e.g., chemical name, common name, or trade name of a hazardous chemical.

Solares v. Diaz, E.D. Cal. No. 1:20-cv-00323
DEF 000050

**54030.15    Escapees' Property**

The Department shall not assume responsibility for property abandoned by an escapee until such time as the escape is discovered and the property is inventoried.

All personal property of escapees shall be inventoried and transferred to the investigating lieutenant. In accordance with PC Section 5062 tangible property shall be stored for a period of one year. Intangible property shall be maintained for a period of three years. Final disposition of property shall be in accordance with PC Sections 5062 and 5063.

**54030.16    Deceased Inmate Property**

All personal property of a deceased inmate shall be inventoried on a CDCR Form 1083 and stored in a location designated by the Warden. The deceased inmate's Central File shall be reviewed for written directions of the decedent as to the next-of-kin. The deceased inmate's property shall be shipped to the next of kin as designated on the SOMS – Notification in Case of Death, Serious Injury, or Serious Illness, at the inmate's expense. If funds are not available in the inmate's trust account, the property shall be shipped to the person designated on the SOMS – Notification in Case of Inmate Death, Serious Injury, or Serious Illness only after contact and willingness to receive property is established.

If no willing recipient can be identified or previously mailed property is returned as undeliverable, all tangible property shall be placed in storage for a period of one year. Intangible property shall be maintained for a period of three years. If no claim is made on the property after expiration of time frames, final disposition shall be in accordance with PC Sections 5062 and 5063.

**54030.17    Revisions**

The Deputy Director, DAI, or designee shall ensure the contents of this Section are current.

**54030.18    References**

PC §§ 2085, 2600, 2601, 5054, 5058, 5061, 5062, 5063.

CCR (15) (3) §§ 3002, 3006, 3010, 3011, 3044, 3064, 3092, 3101, 3102, 3151, 3152, 3161, 3164, 3175(l), and (m), 3190, 3191, 3193, 3287, 3331(c), 3343(g).

ACA Standards 4-4292 through 4-4294.

Case No. 117925, In the Superior Court of the State of California for the County of Marin.

### ARTICLE 44 — PRISON RAPE ELIMINATION POLICY

*Revised May 15, 2018*

**54040.1    Policy**

The California Department of Corrections and Rehabilitation (CDCR) is committed to providing a safe, humane, secure environment, free from offender on offender sexual violence, staff sexual misconduct, and sexual harassment. This will be accomplished by maintaining a program to address education/prevention, detection, response, investigation, and tracking of these behaviors and to address successful community re-entry of the offender. CDCR shall maintain a zero tolerance for sexual violence, staff sexual misconduct and sexual harassment in its institutions, community correctional facilities, conservation camps, and for all offenders under its jurisdiction. All sexual violence, staff sexual misconduct, and sexual harassment is strictly prohibited. This policy applies to all offenders and persons employed by the CDCR, including volunteers and independent contractors assigned to an institution, community correctional facility, conservation camp, or parole.

Retaliatory measures against employees or offenders who report incidents of sexual violence, staff sexual misconduct or sexual harassment as well as retaliatory measures against those who cooperate with investigations shall not be tolerated and shall result in disciplinary action and/or criminal prosecution. Retaliatory measures include, but are not limited to, coercion, threats of punishment, or any other activities intended to discourage or prevent a staff or offenders from reporting the incident(s) or cooperating with investigation of an incident(s).

**54040.2    Purpose**

The purpose of this policy is to ensure compliance with Public Law 108-79, the Prison Rape Elimination Act of 2003 (PREA), California Assembly Bill 550 (Chapter 303, Statutes of 2005), the Sexual Abuse in Detention Elimination Act, and 28 Code of Federal Regulations, Part 115, National Standards to Prevent, Detect, and Respond to Prison Rape. It will provide guidelines for the prevention, detection, response, investigation, and tracking of sexual violence, staff sexual misconduct and sexual harassment against CDCR offenders. A further purpose of this policy is to provide guidelines for the successful community re-entry of offenders.

Lastly, this policy informs staff of their responsibility and liability as specified in the law.

**54040.3    Definitions**

**Aggressor**

A person who attempts to commit, or commits sexual violence, staff sexual misconduct or sexual harassment.

**Bisexual**

A person who is sexually attracted to both sexes.

**Coercion**

A threat, however communicated, to commit an offense; to inflict bodily injury in the future on the person threatened or another, to accuse a person of any offense, to harm the credit or business reputation of any person, to take or withhold action as a public servant, or to cause a public servant to take or withhold action.

**Cross-Gender**

Of the opposite biological sex. Example: Male Custody Staff patting down female Inmates is cross-gender searching.

**Gay**

A male person who is attracted to people of the same gender.

**Gender Expression**

A person's expression of his/her gender identity, including appearance, dress, mannerisms, speech, and social interactions.

**Gender Identity**

Distinct from sexual orientation and refers to a person's internal, deeply felt sense of being male or female.

**Gender Non-conforming**

Gender characteristics and/or behaviors that do not conform to those typically associated with a person's biological sex.

**Intersex**

An individual born with external genitalia, internal reproductive organs, chromosome patterns, and/or endocrine systems that do not seem to fit typical definitions of male or female.

**Lesbian**

A female person who is attracted to people of the same gender.

**LGBTI**

An acronym that refers to sexual minorities, including lesbian, gay, bisexual, transgender and intersex.

**Locally Designated Investigator (LDI)**

The Investigative Services Unit Investigator or other designated institutional staff who have been trained to conduct investigations into allegations of sexual violence and/or staff sexual misconduct.

**"Need to Know" basis**

When the information is relevant and necessary in the ordinary performance of that employee or contractor's official duties.

**Non-consensual**

Not giving permission for or consent to an action being taken by another person.

**Offender**

Any inmate, ward, parolee, or other person currently under the jurisdiction of the CDCR.

**PREA Compliance Manager (PCM)**

Institutional employee with sufficient time and authority to coordinate the institutions efforts to comply with the CDCR Prison Rape Elimination Policy.

**PREA Coordinator**

Agency wide Coordinator with sufficient time and authority to develop, implement, and oversee agency efforts to comply with the PREA standards in all institutions.

**Rape**

Refer to PC Section 261.

**Sexual Violence (committed by offenders) will Encompass:**

Abusive Sexual Contact

Solares v. Diaz, E.D. Cal. No. 1:20-cv-00323
DEF 000051

Contact of any person without his or her consent, or by coercion, or contact of a person who is unable to consent or refuse AND intentional touching, either directly or through the clothing, of the genitalia, anus, groin, breast, inner thigh, or buttocks of any person.

**Nonconsensual Sex Acts**

Contact of any person without his or her consent, or by coercion, or contact of a person who is unable to consent or refuse AND contact between the penis and vagina or the penis and the anus including penetration, however slight; or contact between the mouth and the penis, vagina, or anus or penetration of the anal or genital opening of another person by the hand, finger, or other object.

**Sexual Assault Response Team (SART)**

A coordinated interdisciplinary team of law enforcement, prosecution, contract medical, and advocacy experts collaborating to meet the forensic needs of the criminal justice system, and the medical and emotional needs of the victim of sexual violence or staff sexual misconduct.

In the CDCR, unless an institution has been previously authorized for contracted on-site SART exams, they will utilize the resources available via contract at the local community hospital for SART examination of the victim and offender-suspect.

**Sexual Harassment by an Offender (towards an offender)**

Repeated and unwelcome sexual advances, requests for sexual favors, or verbal comments, gestures, or actions of a derogatory or offensive sexual nature by an offender toward another offender.

**Staff Sexual Harassment (towards an offender)**

Repeated verbal comments or gestures of a sexual nature to an offender by a staff member, contractor, or volunteer, including demeaning references to gender, sexually suggestive or derogatory comments about body or clothing, or obscene language or gestures.

**Staff Sexual Misconduct**

Any threatened, coerced, attempted, or completed sexual contact, assault or battery between staff and offenders.

Any sexual misconduct by staff directed toward an offender, as defined in California Code of Regulations (CCR), Title 15, Section 3401.5 and Penal Code (PC) Section 289.6. The legal concept of "consent" does not exist between staff and offenders; any sexual behavior between them constitutes sexual misconduct and shall subject the staff member to disciplinary action and/or to prosecution under the law.

**Staff**

Any person employed by the CDCR, including employees, volunteers, and independent contractors assigned to an institution, community correctional facility, conservation camp, parole, or headquarters. Employee refers to those individuals who are appointed through civil services employment laws and assigned to a CDCR institution.

**Transgender**

Means a person whose gender identity is different from the person's assigned sex at birth.

**Transgender Man**

A person whose birth sex was female but who understands oneself to be, and desires to live life as a male.

**Transgender Woman**

A person whose birth sex was male but who understands oneself to be, and desires to live life as a female.

**Victim**

For purposes of this policy, a victim is an offender who has been subjected to inmate sexual violence, staff sexual misconduct, or sexual harassment.

**Victim Advocate**

An individual typically employed by a Rape Crisis Center whose primary purpose is the rendering of advice or assistance to victims of sexual assault and who has received a certificate evidencing completion of a training program in the counseling of sexual assault victims issued by an approved counseling center. The Victim Advocate will be summoned to assist the alleged victim of an in-custody sexual assault including rape, sodomy, oral copulation, or forcible acts of sexual penetration for the SANE exam and interview process. The victim advocate will also be summoned for in-custody abusive sexual contact allegations when appropriate. In cases where an outside Victim Advocate is not available, a designated employee will be summoned, if available; an employee who has been certified by a rape crisis center as trained in counseling of sexual assault victims and who either:

(1) A psychiatrist, psychologist, licensed clinical social worker, psychiatric mental health registered nurse, staff person with a master's degree in counseling, or others listed in Evidence Code section 1010; or

(2) Has the 40 hours of specialized training listed in Evidence Code section 1035.2 and is supervised by a staff member in subsection (1) above.

If a designated employee is utilized as a Victim Advocate proof of required training must be on file in their personnel or IST file.

**Victim Support Person**

Any person of the alleged victim's choosing which could include another offender, personal friend, or family member including registered domestic partner.

**54040.4   Education and Prevention**

**Staff Training**

All staff, including employees, volunteers, and contractors, shall receive instruction related to the prevention, detection, response, and investigation of offender sexual violence, staff sexual misconduct, and sexual harassment. This training will be conducted during new employee orientation, annual training, and will be included in the curriculum of the Correctional Training Academy. The training will be gender specific based on the offender population at the assigned institution. Participation in the training will be documented on a CDCR 844, Training Participation Sign-in Sheet.

Employees shall also be trained in how to conduct cross-gender pat-down searches, transgender pat-down searches, and unclothed body cavity searches. When conducting these types of searches, employees shall ensure that these searches are conducted in a professional, respectful manner, and in the least intrusive manner possible consistent with security needs. Searches shall be conducted in accordance with policy, procedure and training as per CCR, Title 15, Section 3287(b).

Institutions shall train all staff on how to communicate professionally with inmates, including inmates who identify themselves as Lesbian, Gay, Bi-Sexual, Transgender, Intersex, and Gender Non – Conforming in accordance with Inmate/Staff Relations Training, on file with the Peace Office Selection and Employee Development (POSED).

Specialized training may be offered to employees who volunteer to act as victims' advocates. This training includes certification by a rape crisis center as trained in the counseling of sexual assault victims. For any employee volunteer who is not a psychiatrist, psychologist, licensed clinical social worker, psychiatric mental health RN, staff person with a master's degree in counseling, or other's listed in Evidence Code section 1010, this specialized training also includes the 40 hours of specialized training listed in Evidence Code 1035.2. Only employees who voluntarily agree to act as a victim advocate shall be utilized in that capacity. Employees who volunteer will be subjected to background clearance to ensure no prior history of violence.

All employees who are assigned to investigate sexual violence and/or staff sexual misconduct will receive specialized training per PC Section 13516 (c). The curriculum utilized in the class must be POSED approved. The Hiring Authority or PREA Compliance Manager (PCM) shall ensure employees investigating incidents of sexual violence and/or staff sexual misconduct are properly trained.

**Offender Education**

Verbal and written information shall be provided to offenders which will address:

- Prevention/Intervention.
- Reporting.
- Treatment and Counseling.

Initial offender orientation on PREA will be provided to the offender population in reception centers (RC) via either written or multi-media presentation on a weekly basis in both English and Spanish.

Approved PREA posters which contain departmental policy and the sexual violence, staff sexual misconduct, and sexual harassment reporting telephone numbers shall be posted in designated locations throughout the institution and parole offices. At a minimum, these areas shall include all housing units, medical clinics, law libraries, visiting rooms, program offices, and offender work areas.

The PREA Brochure entitled "Sexual Violence Awareness" and the PREA booklet entitled "Sexual Abuse/Assault – Prevention and Intervention" will be distributed during initial processing in RC institutions. Both the brochure and booklet shall be available through Receiving and Release or the correctional counselors at each institution, and the information will also be included in each institution's offender orientation handbook.

Solares v. Diaz, E.D. Cal. No. 1:20-cv-00323
DEF 000052

Appropriate provisions shall be made to ensure effective communication for offenders not fluent in English, those with low literacy levels, and those with disabilities.

Institutions may consider the use of offender peer educators to enhance the offender population's knowledge and understanding of PREA and sexually transmitted diseases.

PREA offender education shall be documented on a CDC Form 128-B, General Chrono. The offender shall be asked to sign the CDC Form 128-B indicating they received the training. Refusal to sign will be noted by staff on the CDC Form 128-B. The CDC Form 128-B shall be forwarded to Inmate Records for appropriate scanning into the Electronic Records Management System (ERMS).

### Preventative Measures

Each institution shall enable offenders to shower, perform bodily functions, and change clothing without non-medical staff of the opposite biological sex viewing their breast, buttocks, or genitalia, except in exigent circumstances or when such viewing is incidental to routine cell checks. Except in circumstances where there would be an impact to safety and security, modesty screens shall be placed strategically in areas that prevent incidental viewing.

Per 28 CFR, Standard §115.42, upon request, transgender and intersex inmates shall be given the opportunity to shower separately from other inmates.

In order to minimize cross gender exposure, staff of the opposite biological sex shall announce their presence when entering the housing unit. This announcement is required at the beginning of each shift and/or when the status quo within the housing unit changes.

This policy shall be included in each institution's orientation handbook. This will allow the inmate to take into consideration that staff of the opposite gender may be present when performing bodily and bathing functions.

### Security Rounds

A custody supervisor assigned to each facility or unit shall conduct weekly unscheduled security checks to identify and deter sexual violence, staff sexual misconduct, and sexual harassment of any kind. These security checks shall be documented in the Unit Log Book in red pen. The Unit Log Book shall indicate the date, time, and location that the security check was conducted.

Staff is prohibited from alerting other staff members that these security rounds are occurring, unless such announcement is related to the legitimate operational functions of the facility.

### 54040.4.1 Communication and Pronoun Usage with Transgender Inmates

The language used by staff toward inmates helps to create a culture of safety and respect and can impact the emotional well-being of inmates, including transgender inmates.

When communicating with a transgender inmate, there are acceptable methods for addressing the transgender inmate. These are:

- Use of Gender-neutral language which means referring to them by the legal last name such as "inmate Jones" or "inmate Smith" or simply by the term "inmate".
- Use of the preferred pronoun, if staff is aware of the preference of the inmate. These pronouns would be "she" and "her" for a transgender woman and "he" and "him" for a transgender man.

The type of prohibited discriminatory, harassing, or retaliatory behavior which may be found to constitute a violation of CDCR's PREA policy includes, but is not limited to:

- Bullying or abusive conduct, including repeated infliction of verbal abuse and use of derogatory remarks, insults, and epithets.
- Repeatedly calling a transgender inmate by the wrong pronouns or name, after the transgender inmate has provided notice of his or her gender identity to staff.

### 54040.5 Searches

Institutions shall document all cross-gender strip searches and cross-gender visual body cavity searches in accordance with DOM Section 52050.16.5, and shall document all cross-gender pat-down searches of female inmates in accordance with DOM Section 52050.16.4 utilizing the Notice of Unusual Occurrence (NOU). Completed NOU forms shall be reviewed by the supervisor and routed to the institutional PCM to retain for audit purposes. If the search is incidental to an emergency or crime that constitutes a CDC Form 837, Crime Incident Report, the search shall also be documented within the incident report.

### 54040.6 Offender Housing

Offenders at high risk for sexual victimization, as identified on the PREA Screening Form, shall not be placed in segregated housing unless an assessment of all available alternatives has been completed, and a determination has been made that there is no available alternative means of separation from likely abusers.

Offenders at high risk for sexual victimization shall have a housing assessment completed immediately or within 24 hours of placement into segregated housing. If temporary segregation is required, the inmate shall be issued an Administrative Segregation Placement Notice, explaining the reason for segregation is the need to complete a housing assessment based on the high risk for sexual victimization. If a determination is made at the conclusion of the assessment that there are no available alternative means of separation from likely abusers, the inmate will be retained in segregated housing and issued an Administrative Segregation Placement Notice, explaining the reason for retention. The assigned counseling staff shall schedule the offender for appearance before the Institution Classification Committee for discussion of his/her housing needs. The offender's retention in segregation should not ordinarily exceed 30 days. If retention is continued beyond 30 days, staff shall ensure compliance with DOM Section 54040.14.1, PREA Victims-Non-Disciplinary Segregation.

### Single Cell Status

The process of review and evaluation for single cell status shall be initiated during RC processing as part of initial screening. This process will include completion of the PREA Screening Form, which includes questions related to sexual violence and victimization. Upon the offender's arrival at his/her assigned institution, this information will again be assessed and a PREA Screening Form will be updated as necessary. Offenders will not be disciplined for refusing to answer, or not disclosing complete information related to mental, physical, or developmental disabilities, their sexual orientation, sexual victimization or perception of vulnerability.

The offender shall be referred to a classification committee for determination of single cell status in accordance with CCR Section 3377.1(c), based on documented evidence that the offender may not be safely housed in a double cell or dormitory situation. An offender's need for single cell status shall be reviewed as part of initial/annual classification, or any time an offender is referred for transfer or placement consideration.

### 54040.7 Detection, Notification, and Reporting

Offenders may report violations of this policy to any staff member verbally or in writing, utilizing the Inmate Appeals Process, through the sexual assault hotline, or through a third party.

The department shall not rely on offender interpreters, offender readers, or other types of offender assistants except in limited circumstances where an extended delay in obtaining an effective interpreter could compromise the offender's safety, the performance of first-response duties, or the investigation of the offender's allegations.

CDCR employees have a responsibility to protect the offenders in their custody. All staff are responsible for reporting immediately and confidentially to the appropriate supervisor any information that indicates an offender is being, or has been the victim of sexual violence, staff sexual misconduct, or sexual harassment. In addition to reporting, employees have a responsibility to assist the offender and refer him/her to medical/mental health for evaluation. Staff shall ensure the reporting of information is done as soon as possible and in a confidential manner. A CDCR Form 837, Crime Incident Report, shall be submitted for each allegation of Sexual Violence against an offender by an offender in compliance with DOM Section 51030.3, except as described in DOM Section 54040.7.3.

An offender may report sexual violence, staff sexual misconduct, or sexual harassment that occurs under the jurisdiction of the CDCR to any staff member. If the staff who receives the report is non-custody, he/she shall immediately notify his/her supervisor and the Watch Commander. Each employee who observes the incident or is provided a report by the victim must complete required reports.

Any information related to sexual victimization or abusiveness that occurred in an institutional setting shall be strictly limited to medical and mental health practitioners and other staff, as necessary, to inform treatment plans and security and management decisions, including housing, bed, work, and program assignments, or as otherwise required by Federal, State, or local law.

An offender may also report sexual violence, staff sexual misconduct, or sexual harassment that occurs under the jurisdiction of the CDCR, to the Ombudsman for Sexual Abuse in Detention Elimination in the Office of the Inspector General. In addition, offenders being retained solely for civil

Solares v. Diaz, E.D. Cal. No. 1:20-cv-00323
DEF 000053

access to a breast pump and refrigerator/freezer to store the pumped milk. The breast pump shall be a manual pump able to be cleaned with soap and water. Coordination for the milk to be picked-up by the child's care giver shall be arranged prior to pumping and storing the milk.

### 54045.20 Community Treatment Programs

Any offender who gives birth after her receipt by the CDCR shall be provided notice of and written application for the Community Prisoner Mother Program (CPMP) and declared eligible to participate upon meeting the criteria. The notice shall contain the guidelines for qualification, the timeframe for application, the program, and the process for appealing a denial of admittance.

Family Foundations Program (FFP) is an alternative sentencing program in which mothers are recommended for placement by the sentencing court. When an offender who meets the criteria for FFP placement is received in prison, staff shall refer the offender's case back to the sentencing judge recommending placement into the FFP program.

Any community treatment program shall include, but is not limited to:

- Prenatal Care.
- Access to prenatal vitamins.
- Childbirth education.
- Infant care.

### 54045.21 Revisions

The Associate Director, Female Offender Programs and Services, or designee, shall ensure the contents of this Section are current.

### 54045.22 References

Assembly Bill 478 (Lieber) (chapter 608, Statutes of 2005).

PC §§ 5007.7.

CCR §§ 3074.3

Inmate Dental Services, Chapter 2.5, Periodontal Preventive Program for Pregnant Inmates.

Inmate Medical Services, Volume 4, Chapter 24.

*Redesignated as DOM 93052 and 93053 on June 18, 1995*

### ARTICLE 46 — INMATE HOUSING ASSIGNMENTS

*Effective April 13, 2009*

### 54046.1 Policy

It is departmental policy and therefore the expectation that inmates accept Inmate Housing Assignments (IHA) as directed by staff. Additionally, it is the expectation all inmates double cell when instructed to do so by staff and this policy is adhered to in the General Population (GP), an Administrative Segregation Unit (ASU), or a Security Housing Unit (SHU). The procedures for GP shall also apply to inmates who are housed in specialty program housing units such as a Protective Housing Unit, Transitional Housing Units, etc. If staff determines an inmate is suitable for double-cell housing, the inmate shall be expected to accept the housing assignment. Inmates shall be held accountable and responsible for their actions, and be subject to disciplinary action and consideration for placement in more restrictive housing for refusing a double-cell housing assignment. All IHA's shall be made on the basis of available information, individual case factors, and objective criteria necessary to assign appropriate housing for all inmates. The IHA policy will ensure housing practices are made consistent with the safety, security, and treatment of the inmate, as well as the safety and security of the public, staff, and institutions.

### 54046.2 Purpose

The purpose of the IHA policy is to establish the procedures for determining the initial and subsequent housing assignments of inmates. This policy informs staff and inmates of their responsibility, provides details of the double-cell housing process and the expectation for all inmates to accept double-cell housing, and explains the ramifications for noncompliance.

### 54046.3 Responsibility

The Warden/Administrator of the institution/facility shall be responsible for maximizing proper bed utilization, ensuring inmates are appropriately housed at the institution, implementing departmental policy in accordance with prison design and institution safety and security. Staff must use correctional experience and training, correctional awareness, and a sense of correctional reasonableness to determine suitability for dormitory, celled, and single-celled housing.

### 54046.4 Review of Inmate's Case Factors

All staff involved in the review and approval of an inmate's housing assignment must be cognizant of all available factors to be considered prior to determining an inmate housing assignment.

When evaluating compatibility, the approving authority shall consider each inmate candidate's background and make a discretionary decision based on case factors that include, but are not limited to, the following:

- Length of sentence.
- Enemies and victimization history.
- Criminal influence demonstrated over other inmates.
- Vulnerability of the inmate due to medical, mental health, and disabilities.
- Reason(s) for segregation.
- History of "S" suffix determination.
- History of in-cell assaults and/or violence.
- Prison gang or disruptive group affiliation and/or association.
- Nature of commitment offense.

Staff involved in the review of an inmate's case factors must be particularly aware of case factors that indicate an inmate has been either the victim of, or the perpetrator of, a sexual assault, and must screen for appropriate housing pursuant to Chapter 5, Article 44.

A classification committee and/or the screening authority shall review the Central File (C-file) and other available information to determine if the inmate has a history of in-cell assaultive, abusive, or predatory behavior towards a cellmate, or has been the victim of a sexual assault. A staff member at the level of a correctional supervisor or above shall be designated as the screening authority. Staff shall weigh circumstances documented in the C-file such as:

- Documented reports from a prior cellmate(s) the inmate intimidated, threatened, forced, and/or harassed him or her for sex.
- Documentation the cellmate(s) refused to return to a cell occupied by the inmate because of fear, threats, or abuse perpetrated by the inmate.
- Documentation the inmate has been the victim of a sexual assault.
- Adjudicated Department Rules Violations Reports (RVR) where the inmate was found guilty as a perpetrator in an act of physical abuse, sexual abuse, sodomy, or other act of force against a cellmate.

### 54046.5 Initial Screening

*Revised September 6, 2013*

Upon arrival at an institution reception center, a program institution, or an ASU or SHU, an inmate shall be screened for an appropriate housing assignment. The screening authority shall review the C-file and other available information, interview the inmate, and complete the Strategic Offender Management System (SOMS) Initial Housing Review (IHR).

Based on available information, including an interview with the inmate, the screening authority shall determine if the inmate is suitable for dorm/cell housing with or without restrictions. Restrictions are any case factors which may limit the inmate's placement options at the institutions, such as, but not limited to:

- Security issues including ASU and SHU placement.
- Request for Protective Custody.
- Medical or mental health case factors.
- Integrated Housing Code.

Staff will continue to ensure current housing policies regarding special category inmates such as *Coleman, Plata, Madrid, Armstrong*, and *Clark*, covered under specific litigation, remain in place during the housing process. Staff will also ensure those inmates in need of effective communication will be provided appropriate accommodation during the process.

Additionally, the screening authority shall review prior in-cell behavior towards cell partners. Verification an inmate is or has been predatory towards a cell partner, has a history of in-cell sexual abuse, is or has been assaultive towards a cell partner, has been the victim of in-cell physical or sexual abuse, or demonstrates any significant in-cell violence against a cell partner, shall require the inmate be referred to a Unit Classification Committee (UCC) and/or an Institution Classification Committee (ICC) for single-cell status consideration.

The screening authority shall document the placement concerns which require single-cell assignment on the IHR. If the information is derived from the inmate interview, the screening authority shall document the interview information on a CDC Form 128-B, General Chrono, and reference it as supporting documentation by date on the IHR. If single-cell status is

Solares v. Diaz, E.D. Cal. No. 1:20-cv-00323
DEF 000054

recommended by a screening authority at the level of Correctional Sergeant, an approving authority at the level of Correctional Lieutenant or above will document their approval, or disapproval, on the IHR/Single Cell approval.

#### 54046.5.1    Initial    Screening    –    Administrative    Segregation Unit/Security Housing Unit

Upon placement in an ASU or SHU, inmates shall be screened for an appropriate cell assignment. The segregation authority shall be a designated staff member at the level of Correctional Lieutenant or above. The segregation authority shall review the C-file and other available information, interview the inmate, and shall be responsible for ensuring the completion of CDC Form 114A-1, Inmate Segregation Profile.

Based on the available information, including an interview with the inmate, the segregation authority shall determine if the inmate is suitable for single-/double-cell housing.

Verification an ASU or SHU inmate is or has been predatory towards a cell partner, has a history of in-cell sexual abuse, is or has been assaultive towards a cell partner, has been the victim of in-cell physical or sexual abuse, demonstrates any significant in-cell violence against a cell partner, or has a history of propensity for victimization, shall require the inmate be single celled pending administrative review and subsequent ICC review and approval.

The segregation authority shall document placement concerns which require single-cell assignment on the CDC Form 114A-1. If the information is based on the inmate interview, then the segregation authority shall document the interview information on a CDC Form 128-B, and reference it as supporting documentation by the date on the CDC Form 114A-1. In cases where the segregation authority temporarily approves an inmate for double-cell assignment pending Administrative Review, the decision shall be based upon an evaluation of the inmate's case factors through review of the C-file or completed CDC Form 114A-1, consideration of reasons for ASU placement, and the interview with the inmate. The segregation authority shall complete a CDCR Form 1882-B, Administrative Segregation Unit/Security Housing Unit Double-Cell Review, and sign the CDC Form 114A-1, Inmate Segregation Profile, in the Special Information section, in the Double Cell/Pending Administrative Review box.

During the first workday following an inmate's placement in ASU, the Administrative Reviewer shall review the screening authority's cell determination and confirm or amend the screening authority's temporary cell assignment.

The Administrative Reviewer decision shall be based on:
- Interview with the inmate.
- Review of the C-file and/or completed CDC Form 114A-1.
- Circumstance of ASU/SHU placement.
- Any medical issues and/or mental health clinical staff input.

The Administrative Reviewer shall note the decision for double cell or single cell assignment on the CDC Form 114-A, Inmate Segregation Record, in the Daily Activity section, CDC Form 114A-1, and the CDC Form 114-D, Order for Placement/Retention ASU. The case shall be referred to ICC to review the inmate's long-term housing assignment.

ICC shall review the inmate's housing and safety concerns. ICC shall determine if the inmate is compatible with the other inmate assigned to the cell, if double celled. If the inmate is the only inmate assigned to the cell, ICC shall evaluate if the inmate is cleared for double-cell occupancy, or designate the inmate as being on single-cell status.

If ICC confirms single cell assignment, an "S" suffix shall be applied to the inmate's custody designation. This information shall be documented as a committee action on the CDC Form 128-G, Classification Chrono, entered in the Distributed Data Processing System (DDPS), and noted on the CDC Forms 114A, 114A-1, and 262, Custody Classification Assigned. Additionally, at each subsequent ASU/SHU review, ICC shall determine the suitability for double-/single-cell occupancy.

#### 54046.6    Documentation
##### Revised September 6, 2013

The decision regarding inmate housing and determination of suitability for dormitory or celled housing, eligibility for double housing, or designation of single-cell status, shall be documented as follows:
- IHR.
- CDCR Form 1882-B.
- In the Evaluation section of the Institutional Staff Recommendation Summary for Reception Center inmates.
- On the CDC Form 128-G during the following actions:

- Initial Review.
- Annual Review.
- Housing Review (including reasons for segregation).
- Referral to the Classification Staff Representative.
- Referral to the Departmental Review Board.

The designation of an "S" suffix shall be documented and affixed to the inmate's custody on the following documents and data:
- CDC Form 262.
- Distributed Data Processing System.
- CDC Form 128-G.
- IHR.
- Temporary Single Cell Status Request.

##### Affixing and removing Single Cell and Temporary Single Cell Designation in SOMS

SOMS can accommodate the two types of Single Cell designations, **Temporary Single Cell** and **Single Cell** status ("S" suffix that has been affixed by Classification Committee).

The Temporary Single Cell is designed to appropriately house an inmate pending confirmation by Classification Committee and affixing an "S" suffix. A Temporary Single Cell is affixed in SOMS via SOMS screens IPTT105-Initial Housing Review or IPTS028B-Temporary Single Cell Status Request.

An "S" suffix must be entered in the Distributed Data Processing System (DDPS) via the Counselor entry screen. Once the entry is made in DDPS the "S" suffix is automatically transferred to SOMS within an hour of entry. Once SOMS has received the "S" suffix designation it is reflected in the Inmate Header and SOMS prevents the "S" suffix inmate from being housed with another inmate.

##### Review and Approval/Denial of Temporary Single Cell Status on the SOMS IHR

Temporary Single Cell requests must be approved by a staff member at the level of Correctional Lieutenant or higher. The Approving staff member shall note the Approval or Denial of the Temporary Single Cell in SOMS.

##### Confirmation/Denial of Temporary Single Cell requests at Classification Committee review in SOMS.

If as a result of Committee decision the Temporary Single Cell inmate will be given an "S" suffix, the approval will be entered on SOMS screen IPTS028B and the "S" will be entered in the Counseling entry screen of the DDPS. Once the "S" is entered in DDPS it will automatically update SOMS and the "S" will be displayed in the inmate's SOMS Header.

If Committee elects to disapprove the "S" suffix no entry will be required in DDPS. However, the decision to remove the Temporary Single Cell must be entered in SOMS in order to remove the Temporary Single Cell status from the inmate.

If an inmate has been incorrectly identified as single-cell status after a UCC/ICC action, a subsequent UCC/ICC action shall be required to remove/correct the "S" suffix.

To reduce the possibility of housing single-cell status inmates with another inmate or non-designated single-cell housing status inmate, staff shall review the housing status of all inmates being processed for a bed cell move via SOMS prior to authorization.

#### 54046.7    Double-Cell Assignments in General Population
##### Revised September 6, 2013

Unless approved for single-cell assignment, inmates are expected to share occupancy of living quarters, either in a dormitory setting or within an individual cell. The day of arrival at an institution, or a reception center, an IHR shall be completed, and if the screening authority determines there are no double-cell prohibitions, the inmate shall be expected to double cell. If the inmate refuses to double cell, progressive discipline shall be initiated, and the inmate will be considered for alternative and more restrictive housing.

#### 54046.7.1    Double-Cell Assignments in ASU or SHU

In an ASU or SHU, determining double-cell assignment shall be based upon an evaluation of the involved inmate's case factors through a review of the C-file, the reason for ASU or SHU placement, and an interview with the affected inmate(s). In these cases, the segregation authority shall complete a CDCR Form 1882-B, and sign the CDC Form 114A-1, Special Information section, in the Double-Cell/Pending Administrative Review box. The segregation authority shall note the decision for single or double-cell assignment on the CDC Form 114-A, Daily Activity section, and CDC Form 114A-1. The case shall be referred to ICC to review the inmate's long-term housing assignment.

Solares v. Diaz, E.D. Cal. No. 1:20-cv-00323
DEF 000055

Unless approved for single-cell assignment, an inmate in ASU or SHU is expected to share a cell with another inmate. The process for assigning more than one inmate to the same cell in ASU and/or SHU shall be initiated by a staff recommendation or per request by the inmate candidate. The documentation of the process shall be recorded on the CDCR Form 1882-B.

Approval of double-cell assignments shall be based upon a review of the C-file, an interview with each inmate candidate, consideration of each inmate's signature affirming compatibility, and an evaluation of security concerns. Each inmate candidate who agrees to the assignment is expected to sign the CDCR Form 1882-B to indicate compatibility prior to double celling the inmates. If an inmate refuses to sign the agreement, then this shall also be documented in the designated section of the CDCR Form 1882-B.

A staff member at the level of Correctional Officer, CC-I, or above shall complete parts 1 and 2 of the CDCR Form 1882-B by identifying the initiator of the request, interviewing each inmate candidate, and having the inmate candidates sign the form to indicate their placement in the same cell is a compatible assignment. The staff member performing this function shall also provide his or her printed name and signature as the staff witness, and date the CDCR Form 1882-B.

The staff witness shall then forward the CDCR Form 1882-B to a staff member at the level of Correctional Lieutenant, CC-II, or above. The approving authority shall be responsible for considering each inmate's case factors and deciding whether to approve or disapprove the proposed cell assignment. An approving authority may determine there is no information available to indicate the inmates are incompatible, but there are other circumstances that lead the evaluator to believe approving the assignment would be contrary to legitimate penological interests or may threaten institution safety and security.

### 54046.8 Single-Cell Criteria

Single-cell status shall be considered for those inmates who demonstrate a history of in-cell abuse, significant in-cell violence towards a cell partner, verification of predatory behavior towards a cell partner, or who have been victimized in-cell by another inmate. Staff shall consider the inmate's pattern of behavior, not just an isolated incident. Staff must weigh information in the inmate's C-file with correctional awareness and knowledge of the inmate population, facility environment, and the level of supervision in the housing unit. The following factors must be considered when evaluating single-cell status:

- An act of mutual combat in itself does not warrant single-cell status.
- Predatory behavior is characterized by aggressive, repeated attempts to physically or sexually abuse another inmate.
- Documented and verified instances of being a victim of in-cell physical or sexual abuse by another inmate.

Staff shall consider whether the inmate has since proven capable of being double celled.

The classification committee shall consider the circumstances of a prior assault, length of time in general population without disciplinary violations, precipitating factors, or new issues affecting the inmate's behavior.

When confidential information is relied upon to designate single-cell status, the reliability of the source shall be determined in accordance with the California Code of Regulations (CCR), Title 15, Section 3321, and shall be properly disclosed to the inmate via the CDC Form 1030, Confidential Information Disclosure.

### 54046.8.1 Single-Cell Assignments in ASU or SHU

In cases where an inmate on single-cell status is being referred for transfer to the General Population, the ICC is required to address the removal or the retention of the single-cell status as part of the referral for transfer review. The committee shall document the specific reason(s) on a CDC Form 128-G supporting the removal or retention of the single-cell status.

### 54046.9 Classification Review

The UCC/ICC shall review and determine an inmate's need for single-cell status as part of the Initial and the Annual Classification Review. If upon review a UCC determines the "S" suffix is no longer warranted and an ICC imposed the "S" suffix, the UCC shall refer the case to ICC for review and final determination.

As it is the expectation all inmates will double cell, the determination of single-cell status shall be documented as part of the ICC review and updated at the inmate's annual classification committee review. Prior to referral for transfer or placement consideration, the UCC or ICC shall determine the inmate's need for continued single-cell status. A classification committee's decision regarding involuntary cell assignments or housing status reevaluations shall be documented on a CDC Form 128-G.

### 54046.10 Recommendation for Double Cell or Single Cell Due to Mental Health Concerns

In cases where single-cell status is recommended by clinical staff due to mental health or medical concerns, a classification committee shall make the final determination of an inmate's cell assignment. The classification committee shall consider the clinical recommendations made by the evaluating clinician with assistance from the clinician who participates in the committee and review the inmate's case factors when determining the housing assignment. Single-cell status based upon clinical recommendation is usually a temporary short-term measure and must be periodically reviewed, minimally at an inmate's annual review or more frequently at the UCC/ICC or clinician's request.

### 54046.11 Disciplinary Factors

If an inmate refuses to be housed in appropriately determined housing, they shall be subject to the disciplinary process, with the potential to be housed in alternative and more restrictive housing. Refusal to participate will result in the issuance of a RVR for Conduct, CCR subsection 3005(c), Refusing to Accept Assigned Housing, for the specific act of Willfully Resisting, Delaying, or Obstructing any Peace Officer in the Performance of Duty (CCR subsection 3323(f)(6)), and shall be considered after the first RVR for placement in more restrictive housing such as an ASU or a SHU.

Violation of Refusing to Accept Assigned Housing of subsections 3005(c), 3323(f)(6), and 3323(g)(8) shall result in:

- First offense violation shall result in placement in Privilege Group C for up to 90 days.
- Second offense and subsequent offense violation(s) within a 12-month period shall result in placement on Privilege Group C for up to 180 days and a referral as a program failure to classification committee for placement on Work Group C and Privilege Group C. An inmate who is deemed a program failure by a classification committee is subject to having their personal property/appliances disposed of in accordance with procedures outlined in Section 3191.

Following the completion of the disciplinary process and a finding of guilt, security precautions and disciplinary restrictions may remain in effect for a period of time designated by the Senior Hearing Officer consistent with this policy. If a finding of not guilty results, the security precautions shall be removed.

### 54046.11.1 Placement in more Restrictive Housing

Any inmate charged with Refusing to Participate in the IHA shall be considered for placement in an ASU and reviewed by the ICC to determine the appropriateness of ASU retention, pending disciplinary matters and/or future housing considerations. At each ICC review, the inmate's case factors shall be reviewed for the appropriateness of the double cell or dormitory approval status, and to determine if the inmate will participate in the IHA if case factors do not preclude such.

### 54046.11.2 Assessment of SHU Term

A determination period of confinement in a SHU may be established for an inmate when found guilty of Refusing to Participate in an IHA. The term shall be established by an ICC utilizing the standards set forth in the SHU Term Assessment Chart in CCR Section 3341.5.

### 54046.12 Revisions

The Director, Division of Adult Institutions or designee shall be responsible for ensuring the contents of this Article are kept current and accurate.

### 54046.13 References

CCR, Title 15, Division 3, Sections 3000, 3005(c), 3191, 3269, 3269.1, 3321, 3323(f)(6), 3323(g)(8), and 3341.5.

DOM, Chapter 5, Article 44.

### ARTICLE 47 — INTEGRATED HOUSING

*Effective January 18, 2008*

### 54055.1 Policy

It is the policy of the California Department of Corrections and Rehabilitation (CDCR) that race will not be used as a primary determining factor in housing its inmate population. All inmate housing assignments shall be made on the basis of available information and individual case factors necessary to implement an integrated housing plan. This policy will ensure that housing practices are made consistent with the safety, security, treatment, and rehabilitative needs of the inmate, as well as the safety and security of the public, staff, and institutions.

Solares v. Diaz, E.D. Cal. No. 1:20-cv-00323
DEF 000056