**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF CALIFORNIA**
**FRESNO DIVISION**

| | | |
|---|---|---|
| DORA SOLARES, | § | |
| | § | |
| Plaintiff, | § | |
| | § | CIVIL ACTION NO. 1:20-CV-00323- |
| v. | § | LHR-BAM |
| | § | |
| RALPH DIAZ, *et al.*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND OPINION**

This case arises out of the murder of Luis Romero, an inmate at Corcoran State Prison, by his cellmate, Jamie Osuna.  Romero's mother, Doris Solares, has sued several defendants who were working at the prison at the time of Romero's murder.  (Docket Entry No. 97).  One of the defendants, K. Maytubby, a psychotherapist, had sessions with Osuna and allegedly influenced the classification committee's decision that resulted in Osuna being double-celled with Romero.  (*See* Docket Entry No. 97 ¶¶ 7, 17).  Solares has requested the production of Osuna's mental-health records, which are relevant to determining the extent of the defendants' knowledge of Osuna's violent tendencies when they decided to put Romero and Osuna together.  (Docket Entry Nos. 206, 213).  This court held that the psychotherapist-patient privilege, *see Jaffee v. Redmond*, 518 U.S. 1, 8 (1996), covered Osuna's mental-health records and "that Osuna did not waive his psychotherapist-patient privilege," (Docket Entry No. 213).  Solares has moved for reconsideration of that ruling.  (Docket Entry No. 242).  For the following reasons, the motion for reconsideration is denied.

Rule 501 of the Federal Rules of Evidence authorizes federal courts to define and enforce evidentiary privileges. *Jaffee*, 518 U.S. at 8.  The "psychotherapist-patient privilege" is one such privilege.  *Id.*  It "covers confidential communications made to licensed psychiatrists and

psychologists," as well as "confidential communications made to licensed social workers in the course of psychotherapy." *Id.* The federal psychotherapist-patient privilege incorporates no "balancing component"; its "promise of confidentiality" is not "contingent upon a trial judge's later evaluation of the relative importance of the patient's interest in privacy and the evidentiary need for disclosure." *Id.*

The privilege applies when: (1) the communication was with a psychotherapist; (2) the communication was confidential; and (3) the communication was made in the course of diagnosis or treatment. "[T]he privilege applies only when a therapist practices his craft, not whenever a therapist and a patient communicate." *United States v. Romo*, 413 F.3d 1044, 1049 (9th Cir. 2005).

There is no dispute that Osuna's mental-health records, including his statements that the psychotherapist recorded in them and his clinicians' diagnoses and notes, are within the scope of the privilege. *See Jaffee*, 518 U.S. at 18 (applying the privilege to both "conversations between Officer Redmond and Karen Beyer and the notes taken during their counseling sessions"). Courts do not distinguish between statements that a psychotherapist includes in the patient's medical records and the psychotherapist's impressions and notes that are also in those records. *See, e.g.*, *In re Sims*, 534 F.3d 117, 142 (2d Cir. 2008) (discussing mental-health records); *United States v. Hayes*, 227 F.3d 578, 579 (6th Cir. 2000) (same); *see also Walters v. New Mexico State Police*, No. CV 02-1462 WDS/LFG, 2004 WL 7337648, at *3 (D.N.M. May 14, 2004) ("There is no dispute that the psychotherapist's records are privileged.").

Based on an *in camera* review, this court found and concluded that most of the mental-health records and their contents were based on Osuna's communications with mental-health professionals in confidential counseling sessions held for the purpose of his diagnosis and treatment. (*See* Docket Entry No. 213). This court permitted the production of heavily-redacted

versions of Osuna's mental-health records that displayed only non-privileged information, such as the date and times of Osuna's appointments.

Solares's motion for reconsideration argues primarily that Osuna's communications were not confidential. Solares argues that the privilege does not apply or that Osuna waived the privilege. Solares argues that "CDCR officials (who are not mental health staff) can request mental health assessments and Mental Health will share such assessments, even the direct words of a patient." (Docket Entry No. 242 at 7). Solares also argues that, under California law, mental-health professionals have a duty to "disclose to authorities or intended victims the existence of a dangerous patient." (*Id.* at 9). Because Osuna made statements showing he was dangerous, Solares argues, Osuna had "no reasonable expectation that they would remain confidential," (*id.* at 10), or that they were made for the purpose of diagnosis or treatment, (*see id.* at 12).

The Ninth Circuit has rejected a very similar argument. In *United States v. Chase*, the en banc court overruled a panel decision affirming a district court's ruling that the psychotherapist-patient privilege did not protect a criminal defendant's threats of harm made during a counseling session. 340 F.3d 978 (9th Cir. 2003) (en banc). The Ninth Circuit held that "there is no dangerous-patient exception to the psychotherapist-patient privilege." *Id.* at 985 (citing *Hayes*, 227 F.3d at 585–86). The en banc court distinguished between a mental-health professional's general duty of confidentiality that covers psychotherapist-patient communications under state law and the federal testimonial privilege that, under the Federal Rules of Evidence, protects such communications from production and use at trial. *See id.* at 985–86. When a patient makes threats of harm to others, state-law confidentiality lifts—and a mental-health professional hearing such threats in a treatment session has a duty to report it. *See id.* at 992–93. However, the testimonial privilege continues to apply. *See id.* Solares implicitly concedes that her dangerous-patient argument fails because she relies on a Fifth Circuit decision that expressly rejected the Ninth

3

Circuit's approach.  (*See* Docket Entry No. 242 at 11 (citing *United States v. Auster*, 517 F.3d 312, 319 (5th Cir. 2008))).  The elements of the psychotherapist-patient privilege are met under governing Ninth Circuit case law.

Solares's strongest arguments for reconsideration are factual distinctions and public policy. Solares emphasizes that she is not seeking Osuna's communications but "documents that a social worker on a classification committee either reviewed, generated, or was obligated to share with non-clinical correctional officials as part of a housing assignment decision that directly resulted Romero's death."  (Docket Entry No. 242 at 10).  Solares argues that unlike *Chase*, which was a criminal prosecution against the patient, she seeks Osuna's mental-health records that "were already shared with correctional decision-makers for administrative purposes," "in *a civil rights action* brought by the mother of the man whom CDCR officials permitted to be killed."  (*Id.* at 12).  Solares asks the court to limit *Chase* to its facts—a criminal-defendant patient—and to hold that this case is a "situation[] in which the privilege must give way" to prevent a serious threat of harm that could have been "averted only by means of a disclosure by the therapist."  *Jaffee*, 518 U.S. at 18 n.19.

The core of Solares's argument is that the privilege does not apply because it defeats the ability to hold mental-health providers and prison officials accountable for knowingly or recklessly disregarding a substantial risk of serious injury or death to an inmate.  *See Castro v. County of Los Angeles*, 833 F.3d 1060, 1068, 1071 (9th Cir. 2016) (en banc).  Because Solares's claims depend on whether "a reasonable officer in the circumstances would have appreciated the high degree of risk involved," *id.* at 1071, she asserts that she must be able to discover and place into evidence the statements or documents material to the defendants' knowledge of the high degree of risk posed by locking another inmate in the same cell as Osuna, *see* FED. R. EVID. 501 (explaining that privileges give way when the "United States Constitution" or "a federal statute" "provides

4

otherwise"). According to Solares, the defendants' constitutional duty would be unenforceable if the privilege barred her and the finder of fact in her lawsuit against prison officials for their acts and omissions that caused her son's murder by Osuna from learning of his statements in his mental-health records about his violent tendencies.

*Chase* precludes Solares's arguments. First, the Ninth Circuit's reasoning makes the factual distinctions that Solares raises immaterial. The Ninth Circuit explained that the psychotherapist-patient privilege is not coterminous with a duty to warn, including common-law tort duties. *See Chase*, 340 F.3d at 985–86

California's Supreme Court, in the country's seminal case on the issue, imposed tort liability on a psychotherapist and abrogated the privilege in the victim's wrongful-death lawsuit against the psychotherapist. *See Tarasoff v. Regents of Univ. of Cal.*, 551 P.2d 334, 340 (Cal. 1976) (holding that the privilege did not apply in a wrongful-death claim brought by a victim or her parents against the psychotherapist). Liability under *Tarasoff* is similar to the liability sought here. The plaintiff has asserted a wrongful-death claim, under the Eighth and Fourteenth Amendments and 42 U.S.C. § 1983, against prison officials who (like in *Tarasoff*) had access to the patient's mental-health communications and records. The *Chase* court understood that the question was whether it "should recognize a dangerous-patient exception to the federal testimonial privilege arising out of, or coextensive with, the dangerous-patient exceptions to states' rules of confidentiality." *Chase*, 340 F.3d at 985 (emphasis omitted). The Ninth Circuit declined to treat the federal testimonial privilege and state-confidentiality rules as coextensive because, ordinarily, the "*Tarasoff* duty does not abrogate the testimonial privilege in state courts." *Id.* at 985 (emphasis omitted). "Of the states in the Ninth Circuit, only California has an evidentiary dangerous-patient exception." *Id.* at 985–86. The Ninth Circuit surveyed the laws of the states in the circuit and

concluded that, under the majority rule, a patient's dangerous comments create an exception to the psychotherapist's confidentiality duties but does not abrogate the evidentiary privilege.

The Ninth Circuit's distinction between state-created disclosure duties and the scope of the federal privilege is necessary to *Chase*'s holding and therefore binds this court. *See Andrew v. White*, 604 U.S. 86, 92 (2025) ("When this Court relies on a legal rule or principle to decide a case, that principle is a 'holding' of the Court."); *Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22, 39 (2025) (declining to give precedential effect to language in an opinion that "is extraneous to the Court's holding and reasoning"). *Chase*'s rejection of *Tarasoff*'s rule that the scope of tort liability determines the scope of the privilege, *see Chase*, 340 F.3d at 985–86, is not a simple statement that "with the benefit of hindsight . . . swept a bit too broad," *Olivier v. City of Brandon*, 607 U.S. 552, 565 (2026). The Ninth Circuit surveyed the state courts and found that "the *Tarasoff* duty [to disclose] does not abrogate the testimonial privilege in state courts." *Chase*, 340 F.3d at 985 (emphasis omitted). From that premise, the *Chase* court concluded "that there is no dangerous-patient exception to the psychotherapist-patient privilege." *Id.* (citing *Hayes*, 227 F.3d at 585–86).

Even if the Ninth Circuit's assessment of the state of the states' laws was incorrect at the time or outdated today, and Solares urges both,[1] this court is still bound by *Chase*'s reasoning and

---

[1] Solares's argument appears to follow the majority rule. Across the states today, the scope of a defendant psychotherapist's common-law tort liability determines the scope of the psychotherapist-patient privilege. If the state favors the privilege, then the psychotherapist cannot be held liable in tort. *See, e.g.*, *Boynton v. Burglass*, 590 So. 2d 446, 451 (Fla. 3rd DCA 1991) (en banc) (declining to create a duty to warn because it would "undermine the very goals of psychiatric treatment"); *Pollack v. Cruz*, 296 So. 3d 453, 460 (Fla. 4th DCA 2020) (same). If the state favors tort liability, then the privilege does not apply. *See, e.g.*, *Tarasoff*, 551 P.2d at 347–48 (framing the tort liability and the privilege as mutually exclusive and favoring the common-law duty); *Peck v. Counseling Serv. of Addison Cnty., Inc.*, 499 A.2d 422, 426–47 (Vt. 1985) (same); *Schuster v. Altenberg*, 424 N.W.2d 159, 170–72 (Wisc. 1988) (same); *Emerich v. Philadelphia Ctr. for Hum. Dev., Inc.*, 720 A.2d 1032, 1042 (Pa. 1998) (same); *Munstermann ex rel. Rowe v. Alegent Health-Immanuel Med. Ctr.*, 716 N.W.2d 73, 85 (Neb. 2006) (same); *Volk v. DeMeerleer*, 386 P.3d 254, 269–70 (Wash. 2016) (same). This connection between tort liability and the privilege does not always control in criminal proceedings against a defendant patient. For example, in Oregon, which provides a "state-court testimonial privilege," *Chase*, 340 F.3d at 982, its Supreme Court considered material to a wrongful-death claim that the defendant medical center's therapist "communicated with [the patient] by telephone and was

decision unless and until the Ninth Circuit reverses itself en banc or the Supreme Court overturns the Ninth Circuit's rule. *See Hart v. Massanari*, 266 F.3d 1155, 1171 (9th Cir. 2001) ("Once a panel resolves an issue in a precedential opinion, the matter is deemed resolved, unless overruled by the court itself sitting en banc, or by the Supreme Court."); *see also Rodriguez de Quijas v. Shearson/American Express, Inc.*, 490 U.S. 477, 484 (1989); *Mallory v. Norfolk S. Ry. Co.*, 600 U.S. 122, 136 (2023); *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 406 (2024). *Chase*'s reasoning and holding protect Osuna's mental-health records, full stop.

Second, *Chase* forecloses Solares's argument that the evidence sought is material to determining if the defendants violated a constitutional duty.[2] In *Chase*, the defendant patient allegedly violated a federal criminal law because he made threatening statements in a counseling session. *See* 340 F.3d at 981–82. The three judges who did not join the *Chase* majority argued that Federal Rule of Evidence 501 should abrogate the psychotherapist-patient privilege when federal statutes or the Constitution so require. *See id.* at 994 (Kleinfeld, J., concurring in the

---

kept abreast of [the patient's] current symptoms" and that "therapist had at least a limited opportunity to evaluate [the patient's] mental condition." *Cain v. Rijken*, 717 P.2d 140, 148 (Or. 1986); *see id.* at 148–49 (considering that the patient "did not threaten to harm any person or threaten to drive so as to injure persons" and that the patient "told" the medical center about his "deteriorated mental condition," including "that he feared he was losing control and was losing touch with the outside world" and "that he was suffering from visual and color distortions and was experiencing auditory hallucinations"). If the Ninth Circuit adopted the majority rule, then the privilege would not apply in this case against defendant officials who allegedly breached their constitutional duty to protect Romero from risks of which Osuna's mental-health communications and records informed them. But *Chase* appears to depart from the majority approach to the privilege. The Ninth Circuit rejected *Tarasoff*, which abrogated the privilege in favor of a common-law tort duty, as an outlier and found no dangerous-patient exception. *Chase*, 340 F.3d at 985–86. *Chase* considered and rejected the distinction that Solares draws. This court is bound by its reasoning, however imprecise.

[2] *Jaffee* does not foreclose Solares's argument. In *Jaffee*, the defendant officer, who was the patient, was not alleged to have breached his constitutional duty to use only reasonable force *because* he made statements to a psychotherapist. The defendant officer allegedly breached his constitutional duty because he unjustifiably shot and killed the plaintiff-decedent. 518 U.S. at 4–5. In this case, the defendants allegedly breached their constitutional duty to Romero *because* they knew or should have known about Osuna's mental-health communications that suggested he may harm others. *See Castro*, 833 F.3d at 1073.

judgment).  These judges emphasized that a federal statute criminalized the very threats that Chase

had made and that Congress's decision to criminalize such conduct abrogated the privilege.  *See*

*id.* at 994, 997–98 (Kleinfeld, J., concurring in the judgment).  The *Chase* majority rejected that

argument, ruling that the privilege applied even though "the charged crime was completed" once

Chase "finished uttering the threats."  *Id.* at 982.  As the Ninth Circuit saw it, the benefits of a

confidential psychotherapist-patient relationship outweighed the increased likelihood "that

patients who have threatened others will be convicted."  *Id.* at 990–91.  The policy arguments for

favoring the imposition of liability over protecting the privilege in *Chase* do not readily apply to

the facts of this case.[3]  But it is difficult to read the Ninth Circuit's rejection of the concurring

---

[3] The Ninth Circuit relied heavily on the disconnect between state-disclosure duties and the federal privilege.  *Chase*, 340 F.3d at 987.  First, the court explained that there was no connection between the need to protect life from imminent harm, which creates the disclosure duty, and the need to prove a defendant's crime.  "[B]y the time of trial the patient is stable and harmless" and "the protection rationale that animates the exception to the states' confidentiality laws no longer applies."  *Id.*  Second, the court noted that "different states have different standards regarding when a psychotherapist must (or may) breach confidentiality by disclosing a patient's threats," undermining the uniformity needed for the Federal Rules of Evidence.  *Id.* at 987–88.  The first rationale depends on a distinction that is not relevant here; the mental-health records in this case are needed to enforce the Constitutional duty to protect inmates.  Tort liability helps ensure that those with access to information material to an inmate's safety will act to prevent imminent harm to the inmate.  *See Hayes*, 227 F.3d at 584 (explaining that the case of a criminal defendant who made threats is different from "the situation presented in *Tarasoff*").  The second rationale does not apply because federal law supplies the substantive duty to warn and to act, *see Castro*, 833 F.3d at 1068, 1071, so there is a uniform substantive rule and exception to the privilege.  *Chase*'s reasoning, motivated by the posture of a criminal prosecution against the patient, does not apply in a civil case like *Tarasoff* and this case against the psychotherapist and other state officials.

In addition, the production of Osuna's mental-health records would not threaten his motivation to seek mental-health counseling because he would not face liability for statements made in his counseling sessions.  Both the Ninth and Sixth Circuits recognized this distinction.  In *Hayes*, the Sixth Circuit acknowledged that advice to a patient about the therapist's "duty to protect the intended victim[] may have a marginal effect on a patient's candor in therapy sessions," but the court cautioned that "an additional warning that the patient's statements may be used against him in a subsequent criminal prosecution would certainly chill and very likely terminate open dialogue."  *Hayes*, 227 F.3d at 585.  The Ninth Circuit explained "that a patient will retain significantly greater residual trust when the therapist can disclose only for protective, rather than punitive, purposes."  *Chase*, 340 F.3d at 990.  Recognizing that the privilege does not apply in this case, where the patient is a non-party, has only a marginal effect on the patient's motivation to seek mental-health counseling.  Using mental-health records in this case would not abrogate the privilege in the patient's criminal proceedings, expose the patient to criminal or civil liability, and undermine the privilege

8

judges' arguments—and their reasoning that "Congress ultimately chose to enact" a "more open-ended Rule 501" that did not include a dangerous-patient exception, *id.* at 989–90—as anything other than a ruling that the privilege prevails over the "right to every man's evidence" relevant to violations of federal statutes, including criminal statutes and § 1983, *see id.* at 997 (Kleinfeld, J., concurring in the judgment) (quoting 8 Wigmore, EVIDENCE IN TRIALS AT COMMON LAW § 2192, at 70 (John T. McNaughton rev., 1961)).  Under *Chase*, the privilege applies notwithstanding Solares's claim under § 1983.

Lastly, Solares asks the court to distinguish Osuna's psychotherapist's testimony and his mental-health records that she created from the information the psychotherapist repeated in administrative records.[4]  Solares argues that prison officials reviewed these administrative records to determine whether Osuna could be celled with others.[5]  Solares argues that, because these records were used for administrative purposes (that is, for purposes other than mental-health treatment) and were presented to third parties, they are not privileged.  *See Romo*, 413 F.3d at 1047.  Solares's final argument is not persuasive.

Solares is correct that administrative records themselves are not privileged because they were not created for the purpose of mental-health treatment.  But it does not follow that the

---

in those settings.  *See id.* at 985–86 (holding that disclosure under state reporting laws does not waive the federal testamentary privilege).

[4] Solares argue that documents from the Interdisciplinary Treatment Team (IDTT) fall into the latter category of unprotected records.  The court reviewed the IDTT records *in camera*.  They are mental-health records protected under *Jaffee*.  It is apparent from the face of the records that they were created for Osuna's mental-health treatment and involved other prison officials to further his mental-health treatment.

[5] The defendants conceded that several of the documents that the plaintiff filed under seal for consideration in connection with the reconsideration motion are not privileged because they were created for administrative purposes and contain only statements from Osuna that were made for administrative, rather than mental-health counseling, purposes.  To the extent the plaintiff seeks an additional class of documents that were created for administrative purposes but incorporate by reference privileged statements, the plaintiff's request is denied.

privileged communications in those records lose their protection when they are communicated by the therapist to a third party. To be sure, the rule Solares advocates is not novel. *See State v. Expose*, 872 N.W.2d 252, 260 (Minn. 2015) ("If a therapist discloses information to a third party in an out-of-court setting, as occurred here, the privilege statute does not require a court to exclude the third party's testimony."). But it is still incompatible with *Chase*. The *Chase* court held that there was no dangerous-patient exception even though the record made clear that other witnesses besides Chase's psychotherapist knew of and could possibly testify to Chase's threats. *See Chase*, 340 F.3d at 981 (acknowledging that "Dr. Dieter properly disclose[d] the threats to law enforcement personnel"). There is little basis to prevent a psychotherapist from testifying about a patient's privileged statements that were disclosed to third parties but to permit the third party to testify to those statements. Such a rule would favor hearsay testimony over direct testimony on the same subject matter.[6] Fidelity to *Chase* requires rejecting the distinction Solares advocates.

Solares's motion for reconsideration, (Docket Entry No. 242), is denied. Solares and her counsel must return or destroy all privileged documents—and documents containing unredacted privileged information—in their custody or control. *See Doe v. Fitzgerald*, No. 20-cv-10713, 2022 WL 4596557, at *10 (C.D. Cal. Sept. 21, 2022).

SIGNED on August 6, 2026, at Houston, Texas.

_____
Lee H. Rosenthal
Senior United States District Judge

---

[6] Osuna's statement to Maytubby is relevant for the non-hearsay purpose of proving Maytubby's knowledge, so, absent the privilege, Maytubby could testify to Osuna's statements. Third-party evidence about what Maytubby said Osuna told her would be hearsay, because Maytubby's knowledge could only be established if her statement about what Osuna told her is true. *But see* FED. R. EVID. 801(d)(2) (excluding party-opponent statements from the rule against hearsay).