Justin E. Sterling, State Bar No. 249491
LAW OFFICES OF JUSTIN STERLING
Justin@SterlingDefense.com
15760 Ventura Blvd. Suite 700
Encino, CA 91436
Tel. (818) 995-9452/Fax. (818) 824-3533

Erin Darling, State Bar No. 259724
LAW OFFICES OF ERIN DARLING
Erin@ErinDarlingLaw.com
3435 Wilshire Blvd. Suite 2910
Los Angeles, CA 90010
Tel. (323) 736-2230

Attorneys for Plaintiff Dora Solares

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DORA SOLARES, an individual,<br><br>             Plaintiff,<br><br>      v.<br><br>RALPH DIAZ, in his individual capacity, KENNETH CLARK, in his individual capacity, JOSEPH BURNS, in his individual, and DOES 1 TO 15, in their individual capacities<br><br>             Defendants. | Case No. 1:20-cv-00323-LHR<br><br>**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO EXCLUDE PLAINTIFF'S EXPERT WITNESSES**<br><br>**Judge:**    Hon. Lee H. Rosenthal |

        Plaintiff Dora Solares hereby opposes Defendants Burnes, Loza, Gamboa, Garcia, Gallemore, Maytubby, Munoz, and Pena ("Defendants") Motion to Exclude Plaintiff's Witnesses. (Dkt. No. 289)

                        Respectfully submitted,

Dated:  August 13, 2026          LAW OFFICES OF ERIN DARLING

                        By: _____/s/ Erin Darling_____
                             Erin Darling,
                             Attorneys for Plaintiff Dora Solares

## I.      INTRODUCTION

Defendants ask this Court to impose a drastic evidentiary sanction based on a handful of sentences drawn from a memorandum that Defendants themselves produced. This motion overreaches at every step. Moreover, the timing of its filing betrays that it is a tactical effort to jam Plaintiff as she opposes defendants' summary judgment motions, not a good-faith effort to protect a privilege.

Defendants' motion is not made in good faith. Plaintiff served the rebuttal reports of Dr. Morgan Deal and Dorothy L. Smith on May 22, 2026. The parties met and conferred on this supposed pressing matter on May 28, 2026. Then, for more than two months, defendants did nothing. Defendants did not seek a pre-motion conference with the Court, which has been the well-trodden way the parties have ventilated disputed issues in this case. Nor did defendants take the depositions of Dr. Deal or Ms. Smith. Instead, they waited until July 30, 2026. The timing of this means that this opposition is due four days before Plaintiff's oppositions to dispositive summary judgment motions. The oppositions are a massive undertaking for a case that has been litigated for over six years and has nine defendants. The substance of this present motion means that defendants seek to sweep out every mental-health-related opinion Plaintiff has disclosed. This nuclear option is not serious. A party genuinely concerned about privileged material does not sit on its hands for nine weeks after a meet and confer; it moves promptly, or at a minimum raises the issue with the Cour informally. This would have been especially here, where the Court has consistently opened its doors to informal teleconference hearings, often on less than one week's notice.

Defendants' motion is also fundamentally overbroad. Defendants would have the Court believe that the opinions of Dr. Deal, Ms. Smith, and Ms. Parker rest on a few unredacted lines from Warden Santoro's January 22, 2020, file-review memorandum. They do not. Each expert's conclusions rest on thousands of pages of unprivileged and unchallenged discovery material, as well as publicly available materials. Yet oddly, the effect of their motion would be to exclude expert opinions drawn from these very materials. Consider this information, obtained independent from the now-redacted privileged materials:

Also considered by the experts are: Osuna's twenty-eight serious Rules Violations Reports, accumulated in the twenty-two months preceding the homicide; Sergeant Barajas's September 1, 2018,informational chrono documenting Osuna's violence, weapons and blood-writing; nearly two years of classification chronos in which multiple committees found a "propensity for violence" requiring single-cell housing; the unredacted September 27, 2018,"Danger to Others" Interdisciplinary Plan of Care designation in Special Agent Aronsen's November 25, 2019, memorandum; Maytubby's own deposition testimony; and regulations and policy manuals and program guides that bind CDCR actions.

The Court may contrast the impressive breadth of materials on which Dr. Deal, Ms. Smith and Ms. Parker base their opinions with the now-redacted materials at issue here: four sentences on page three of the Santoro memorandum, which are identically included at CDCR (OIG) 6 and CDCR OIG) 10. Defense counsel Jeremy Duggan confirmed by email on August 12 that the replacement pages are for Bates numbers CDCR (OIG) 6 and CDCR OIG 10. This confirms the size of the molehill of Defendants' purported mountain: fours sentences on one page, duplicated.  The four sentences at issue show can easily be excised from the experts' opinions, and the experts' references to Osuna and subsequent opinions are drawn from materials independent to these four sentences.

Last, Dr. Deal and Ms. Smith are paradigmatic rebuttal witnesses. Defendants' expert Dr. Andrea Grey opined that "[n]on-specific expressions of homicidal ideation by themselves would not constitute a reportable threat or warrant single-cell status"; that a clinician's silence at classification committee "is normal and appropriate" where the patient's conditions did not require a particular housing status; and that the chronos from September 25, 2018, and January 22, 2019, show that defendant Kyle/Maytubby provided information that her role required and made no housing recommendation. (Dr. Grey Report at 4-6). Those opinions, taken together, effectively clear Kyle/Maytubby of any wrongdoing. Dr. Deal and Smith contradict those opinions. That is not an improper new theory, it is the very definition of rebuttal. *Huawei Techs., Co. v. Samsung Elecs. Co.*, 340 F. Supp. 3d 934, 996 (N.D. Cal. 2018). Defendants' motion should be denied.

## II.    FACTUAL BACKGROUND

The action arises from the in-cell murder of Luis Romero by Jaime Osuna at CSP-Corcoran, two days after staff placed Romero in Osuna's cell. Osuna had not shared a cell with anyone for over a year and had only recently been approved to be "single-celled." The propriety of that decision to single-cell has been a focus of discovery. In response to a subpoena to CDCR's Office of Inspector General ("OIG"), Plaintiff received 1,297 pages subject to a stipulated protective order (ECF Dkt. No. 76). Plaintiff received these materials approximately January 20, 2026, including Bates pages "CDCR(OIG) 1-1297." Included in these pages was Warden Kelly Santoro's January 22, 2020, file-review memorandum. This four-page memo was produced twice, in consecutive pages (Bates Numbers (CDCR (OIG) 4-7, and 8-11). Some of the pages were partially redacted but left unredacted was a passage summarizing a March 7, 2019, treatment plan note, and a July 5, 2018, treatment note. (Kuchinsky Decl. ¶ 2) At issue are four sentences on page three of the Santoro memorandum, which are identically included at CDCR (OIG) 6 and CDCR OIG) 10.

On February 26, 2026, after Plaintiff referenced the passage in a pre-motion conference statement, defense counsel asserted for the first time that the passage should have been redacted. The Court agreed and ruled: "The document discussed at the hearing is privileged and was inadvertently disclosed; the plaintiff may not reference it on the public record and may not disseminate or disclose it." (ECF No. 236) The underlying issue, whether Osuna did not waive his psychotheraptist-patient privilege was the subject of Plaintiff's motion for reconsideration. (ECF Dkt. Nos. 242, 251) The Court ruled on Plaintiff's motion on August 6, 2026. (ECF Dkt. No. 299)[1]

Plaintiff served Ms. Parker's initial report on March 2, 2026, and her supplemental report on May 8, 2026. Defendants served Dr. Andrea Grey's report (the Chief Psychologist at CDCR's California's Men's Colony, testifying for her own employer) on April 17, 2026. On May 22, 2026, Plaintiff served the rebuttal reports of Dr. Deal (a board-certified forensic psychiatrist) and Ms. Smith (a former CDCR

---

[1] Plaintiff's counsel Erin Darling has instructed experts Dr. Deal, Ms. Smith, and Ms. Parker to destroy the two pages at issue. Mr. Darling currently still possesses the two original unredacted pages because they are being produced (under seal) to the Court as exhibits so that the Court can review the material at issue. For purposes of this motion, Plaintiff needs to show the Court that only four sentences are at issue, and that the three experts relied on a mountain of other materials to come to their opinions. After submission of the two pages and the resolution of this motion Mr. Darling will destroy them.

Classification Staff Representative). It must be noted that all three experts (Dr. Deal, Ms. Smith, and Ms. Parker) signed the protective order (ECF Dkt. No. 76). On May 28, 2026, the parties met and conferred. Defendants did not file their motion until July 30, 2026. In that two-month-plus window defendants did not depose Dr. Deal or Ms. Smith.

## III.    ARGUMENT

### A.    The Court Should Not Hold Counsel in Contempt or Impose Exclusionary Sanctions

#### 1    Contempt Requires a Clear and Unambiguous Order, Proof of a Clear and Convincing Violation, and the Absence of Good-Faith, Reasonable Interpretation

Civil contempt is a "severe remedy" and "should not be resorted to where there is a fair ground of doubt as to the wrongfulness" of the conduct. *Taggart v. Lorenzen*, 139 S. Ct. 1795, 1802 (2019). The Ninth Circuit standard for finding a party in civil contempt "is well settled: The moving party has the burden of showwring by clear and convincing evidence that the contemnors violated a specific and definite order of the court." *In re Dyer*, 322 F.3d 1178, 1190-91 (9th Cir. 2003)(citation omitted). A person should not be held in contempt if his action "appears to be based on a good faith and reasonable interpretation of the court's order." *Go-Video, Inc. v. Motion Pictures Ass'n of America*, 10 F.3d 693, 695 (9th Cir. 1993). Furthermore, "[s]substantial compliance with the court order is a defense to civil contempt." *Id.* at 695.

The Court's Text-Only Minute Entry order states: "the plaintiff may not reference it on the public record and may not disseminate or disclose it." (ECF Dkt. No. 236) This expresses the concern that Plaintiff reference the material publicly or do anything for its public spread. Plaintiff's counsel understood that this language prohibits public disclosure and dissemination outside the litigation. No public disclosure or dissemination has been made. Instead, retained experts subject to the stipulated protective order referenced the now-privileged materials in three expert reports that are themselves not part of the public record, and that have never been filed. (Up until today.) In order to oppose the motion Plaintiff will submit the reports under seal for the Court's review to show how little the experts relied on the now-privileged materials). Defendants do not contend that the expert reports have been made part of the public record. That "dissemination" and "disclosure" refer to the release of materials beyond the circle of persons the protective order already authorizes is clear, as the harm is reference "on the public record." However, the sharing of the two identical pages with the redacted portions (which were part of a PDF of over 1,000 pages) with

experts subject to the protective order was unclear and overlooked. Plaintiff's counsel's interpretation may or may not align with the Court's. However, contempt does not turn on whether Plaintiff's counsel's interpretation does align. Rather, it turns on whether the order was so clear that no reasonable reading permitting the conduct, and whether the violation is proven by clear and convincing evidence. Civil contempt is a "severe remedy" and "should not be resorted to where there is a fair ground of doubt as to the wrongfulness" of the conduct. *Taggart*, 139 S. Ct. at 1802. Simply put, there is no clear and convincing evidence of a violation where experts subject to the protective order received the offending page, barely used it in their reports, and the reports were never publicly filed

The extent of the privilege itself was in dispute. Indeed, the Court issued its ruling on Plaintiff's Motion for Reconsideration only on August 6, 2026. In it the court ordered that Solares and her counsel "must return or destroy all privileged documents – and documents containing unredacted privileged information – in their custody and control." (ECF Dkt. No. 299) Thus, it was not until August 6 that there was finality on the documents at issue. Since then, the three experts have destroyed the offending materials.

## 2.    Defendants Cite Authority Involving Conduct Nothing Like This Case

The cases that Defendants rely upon underscore how far the conduct is this case from sanctionable misconduct in other cases. In *Mayorga v. Ronaldo*, 606 F. Supp. 3d 1003 (D. Nev 2022), counsel solicited and used stolen attorney-client communications, concealed his possession of them, and relied on largely hacked internal emails. Such facts are so far afield from this case. Defendants also rely on *Knox v. City of Fresno*, No. 1:14-cv-00799-EPG, 2016 WL 10647198, 2016 U.S. Dist. LEXIS 78359 *E. D. Cal. June 2, 2016), in which counsel and an expert imported protected information from *a different, concluded case* into a new case. This was in violation of a protective order requiring destruction of material at the close of the litigation. Here, by contrast, the material was produced by Defendants themselves in this very case, and the experts are subject to the protective order. Most importantly, the materials at issue have never been placed on the public record since the Court's February 26 order. It is helpful to remember what is at issue here (four sentences of one page). Defendants have no dispute with plaintiff using non-redacted portions of the very page at issue, it is just the redacted four sentences. Quite frankly, the material at issue is not that important to the experts' reports, there was so many other sources of information about Osuna's homicidal actions and desires. None of this is bad faith or willful misconduct.

Defendants' own conduct further negates any claim of urgency or prejudice. Defendants possessed the full contents of Plaintiff's experts' reports on May 22, 2026, and the issues as they defined it were identified at the May 28 meet and confer. If Defendants believed a court order was being flouted and privileged materials were being inappropriately spread, the obvious course of conduct was an immediate application to the Court, or a request of a pre-motion conference. None of that happened. Instead, defendants waited over two months, took Ms. Parker's deposition, and filed only after positioning the motion for maximum tactical effect, as Plaintiff prepares her oppositions to multiple summary judgment motions. A party's own delay cannot justify the drastic remedy of exclusion.

**3.      Any Remedy Must Be Proportionate: Redaction of Specific References, Not Exclusion of Witnesses**

The proportionate remedy is targeted: strike or redact the discrete references in the experts' reports. Each of the three experts has provided their reports with the references to the privileged materials highlighted. Outright exclusion of these reports, when a more tailored remedy is available, would be like trying to kill a fly with an elephant gun. Moreover, a review of the reports reveals the broad swath of materials the experts rely on, and what a small role the privileged materials play in them. This is especially the case with the myriad other materials concerning Osuna.

**III.   THE EXPERTS' OPINIONS REST ON INDEPENDENT, UNPRIVILEGED SOURCES SO NO NEED TO BE EXCLUDED TO PROTECT ANY PRIVILEGE**

Defendants contend that the experts' opinions could not have been formed without a few now-redacted lines in the Santoro memorandum. This is false. The Court can review in greater deal the three expert reports and see the range of material on Osuna. Not only did the experts not have to rely on the now-redacted lines and their reports should not be excluded, but the Court can better see the extent to which mental health representative on the ICC failed to meet her responsibilities. These non-privileged materials include:





In *Knox*, the entirety of the tainted material was protected information from another case, and the court's remedy was tailored to that information. Here, the overwhelming majority of each expert's sources are concededly proper, and the experts' conclusions are independently derived from those sources. Where an opinion is supported by independent, unprivileged evidence, striking the discrete privileged reference fully protects the privilege. Wholesale exclusion protects nothing and only strips Plaintiff of her experts.

**IV.    DR. DEAL AND SMITH ARE PROPER REBUTTAL WITNESSES BECAUSE THEY DIRECTLY CONTRADICT DR. GREY'S OPINIONS ON THE SAME SUBJECT**

**A.    Dr. Grey Opines that Maytubby's Conduct Was Appropriate**

Defendants' argument depends on an artificially cramped characterization of Dr. Grey's report. Defendants describe Grey as having offered only two neutral, descriptive opinions: the role of mental health at ICCs, and the process for reporting threats. (Mot. at 16.) But Dr. Grey's report does far more. It applies those standards to the facts of this case and to Defendant Maytubby's conduct specifically, and it does so in exculpatory terms:



A Chief Psychologist for a CDCR institution offers opinions that Maytubby's silence at the ICCs was consistent with her role. This exonerates a defendant: Maytubby did what mental health committee members are supposed to do, and Osuna's homicidal ideations[2] were not the kind of threat a clinician must report. Grey thus opined, in substance, that Maytubby committed no wrongdoing. Defendants cannot serve an expert report that effectively exonerates their client and then insist that Plaintiff's experts may respond only to an abstract description of committee procedure. The ICC committee's conduct, Maytubby specifically, must be addressed in full, including the information about Osuna that she knew, or should have known about. The scope of Plaintiff's rebuttal is measured by the substance of the report, not by the sponsoring party's characterization of it after-the-fact.

---

[2] The many sources showing Osuna had homicidal ideations are many and exist independent of the now-privileged and redacted lines.

**B.      Dr. Deal and Smith's Opinions Contradict Dr. Grey's Opinions**

"The proper function of rebuttal evidence is to contradict, impeach or defuse the impact of the evidence offered by an adverse party." *Huawei Techs.,*340 F. Supp. 3d at 996 (internal citation omitted). Dr. Grey opined that non-specific homicidal ideation is not reportable and does not warrant single-cell status. It is no shock that such opinion serves to exonerate Maytubby. Dr. Deal's report responds to this, that under CDCR's own confidentiality policy and *Tarasoff*, Osuna's documented conduct and statements triggered a mandatory disclosure obligation, and that no reasonable clinician would have supported double-celling him. Smith's report responds that CDCR's disclosure guidance does not require a specifically named victim where a history of violence, expressed intent, and foreseeable targets combine. These are classic rebuttal opinions.



Defendants' reliance on *Hyundai Motor Co. v. Hyundai Technology Group, Inc.*, 2025 WL 1711440, 2025 U.S. Dist. LEXIS 121697 (C.D. Cal. May 14, 2025), is misplaced. There, the plaintiff's expert addressed only the plaintiff's own adherence to industry standards, and the defense "rebuttal" expert opined on an entirely different "emissions" standard. Here, Dr. Grey herself opined on Maytubby's conduct at the two ICCs at issue, and that her silence was appropriate. Dr. Deal and Smith address exactly that conduct at exactly those committees and reach the opposite conclusion. Nor does the fact that rebuttal experts marshal additional record evidence transform their reports into affirmative opinions. After all, rebuttal reports

"necessitate a showing of facts supporting the opposite conclusion of those at which the opposing party's experts arrived in their responsive reports." *Matthew Enter v. Chrysler Grp. LLC*, No. 13-CV-04236-BLF, 2016 U.S. Dist. LEXIS 10694, at *5 (N.D. Cal. Aug. 15, 2016). Dr. Deal and Ms. Smith offer medical and classification expertise, respectively. Each contradict Dr. Grey. Specifically, that Osuna's risk was reportable, that the clinician's role required disclosure, and that Maytubby's treatment of the chronos does not stand scrutiny. Any aspect of Dr. Deal's or Smith's reports beyond the four corners of Dr. Grey's is traceable to Dr. Grey's own application of her standards to Maytubby's conduct. These are not new theories, they are rebuttals to Dr. Grey's opinions.

In addition, wholesale exclusion is unavailable when the information is substantially justified or harmless. Fed. R. Civ. P. 37(c)(1). Defendants received the reports of Dr. Deal and Smith and declined to depose them. Instead, they waited two months and now seek a maximalist remedy. No prejudice exists, other than the Plaintiff's experts pointing out how defense expert is wrong.

## IV.    CONCLUSION

For the foregoing reasons defendants' motion should be denied.

Respectfully submitted,

Dated:  August 13, 2026                    LAW OFFICES OF JUSTIN STERLING

By:  _____/s/ Justin Sterling_____
Justin E. Sterling,
Attorneys for Plaintiff
Dora Solares

LAW OFFICES OF ERIN DARLING

By:  _____/s/Erin Darling_____
Erin Darling,
Attorneys for Plaintiff
Dora Solares

10

**DECLARATION OF COUNSEL**

I, Erin Darling, hereby declare as follows:

1.     I am an attorney permitted to practice in the Eastern District of California, and I represent Dora Solares, mother of decedent Luis Rodriguez, in the above-entitled action.

2.     The action arises from the in-cell murder of Luis Romero by Jaime Osuna at CSP-Corcoran, two days after staff placed Romero in Osuna's cell. Osuna had not shared a cell with anyone for over a year and had only recently been approved to be "single-celled." The propriety of that decision to single-cell has been a focus of discovery. In response to a subpoena to CDCR's Office of Inspector General ("OIG"), Plaintiff received 1,297 pages subject to a stipulated protective order (ECF Dkt. No. 76). Plaintiff received these materials approximately January 20, 2026, including Bates pages "CDCR(OIG) 1-1297." Included in these pages was Warden Kelly Santoro's January 22, 2020, file-review memorandum. This four-page memo was produced twice, in consecutive pages (Bates Numbers (CDCR (OIG) 4-7, and 8-11).

3.     Plaintiff served Ms. Parker's initial report on March 2, 2026, and her supplemental report on May 8, 2026. Defendants served Dr. Andrea Grey's report (the Chief Psychologist at CDCR's California's Men's Colony, testifying for her own employer) on April 17, 2026. On May 22, 2026, Plaintiff served the rebuttal reports of Dr. Deal (a board-certified forensic psychiatrist) and Ms. Smith (a former CDCR Classification Staff Representative). It must be noted that all three experts (Dr. Deal, Ms. Smith, and Ms. Parker) signed the protective order (ECF Dkt. No. 76). On May 28, 2026, the parties met and conferred. Defendants did not file their motion until July 30, 2026. In that two-month-plus window defendants did not depose Dr. Deal or Ms. Smith.

4.     Not only did Plaintiff's experts not have to rely on the now-redacted lines and their reports should not be excluded, but the Court can better see the extent to which mental health representative on the ICC failed to meet her responsibilities. These non-privileged materials include:

11



5.      Dr. Grey opined also that clinician silence at ICC is "normal and appropriate" and that housing is custody's domain. (Dr. Grey report at 5) Smith responds that Grey's account omits the express duties the MHSDS Program Guide (12-8-5), Title 15 §§ 3271 and 3377.1(c), and DOM § 54046.10 impose on the mental health committee member. This includes assessing "suitability for single or double celling" and "risk assessment for . . . assaultive behavior." (Smith report at 5) Dr. Grey analyzed the September 25, 2018, and January 22, 2019, chronos and found no issue. (Dr. Grey report at 6). Smith analyzed the same chronos and found them riddled with contradictions, mischaracterizations of in-cell violence, and an unexplained erosion of repeated prior single-cell findings. (Smith report at 8) Each of these is a direct clash on the same subject matter that Dr. Grey addressed: the role of mental health at the ICCs concerning Osuna and the process for reporting the threat he posed.

6.    The Court may contrast the impressive breadth of materials on which Dr. Deal, Ms. Smith and Ms. Parker base their opinions with the now-redacted materials at issue here: four sentences on page three of the Santoro memorandum, which are identically included at CDCR (OIG) 6 and CDCR (OIG) 10. Defense counsel Jeremy Duggan confirmed by email on August 12 that the replacement pages are for Bates numbers CDCR (OIG) 6 and CDCR OIG 10. This confirms what is at issue: fours sentences on one page, duplicated.  The four sentences at issue show can easily be excised from the experts' opinions, and the experts' references to Osuna and subsequent opinions are drawn from materials independent to these four sentences.

7.    Attached as Exhibit A is a true and correct copy of pages CDCR (OIG) 6 and CDCR (OIG) 10, without the subsequent redactions of the four sentences.  Attached as Exhibit B is a true and correct copy of pages CDCR (OIG) 6 and CDCR (OIG) 10, with the subsequent redactions of the four sentences. That is the extent of the material at issue.

8.    Attached as Exhibit C is a true and correct coy of Dr. Andrea Grey's report.

I declare under the penalty of perjury that the foregoing is true and correct. Executed on August 13, 2026.

By  */s/ Erin Darling*
ERIN DARLING
Attorney for Dora Solares

# Exhibit A





# Exhibit B





# Exhibit C

## <u>EXPERT WITNESS REPORT</u>

**Dr. Andrea Grey**

**Solares v. Diaz et al.**

**E.D. Cal. No. 1:20-cv-00323**

**April 17, 2026**













# EXHIBIT A

















