Justin E. Sterling, State Bar No. 249491
LAW OFFICES OF JUSTIN STERLING
Justin@SterlingDefense.com
15760 Ventura Blvd. Suite 700
Encino, CA 91436
Tel. (818) 995-9452/Fax. (818) 824-3533

Erin Darling, State Bar No. 259724
LAW OFFICES OF ERIN DARLING
Erin@ErinDarlingLaw.com
3435 Wilshire Blvd. Suite 2910
Los Angeles, CA 90010
Tel. (323) 736-2230

Attorneys for Plaintiff Dora Solares

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DORA SOLARES, an individual,<br><br>Plaintiff,<br><br>v.<br><br>RALPH DIAZ, in his individual capacity, KENNETH CLARK, in his individual capacity, JOSEPH BURNS, in his individual, and DOES 1 TO 15, in their individual capacities<br><br>Defendants. | Case No. 1:20-cv-00323-LHR<br><br>**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>**Date:** **September 11, 2026**<br>**Time:** **11:00 a.m. CST/9:00 a.m. PST**<br>**Dept.:** **Zoom**<br>**Judge:** **Hon. Lee H. Rosenthal** |

Plaintiff Dora Solares hereby opposes the Motion for Summary Judgment filed by Defendants Burnes, Loza, Gamboa, Garcia, Gallemore, Muñoz, and Peña. *See* ECF Dkt. No. 294, Motion for Summary Judgment. Plaintiff requests that the Court deny this motion.

Respectfully submitted,

Dated: August 17, 2026

LAW OFFICES OF ERIN DARLING

By: */s/Erin Darling*
Erin Darling,
Attorneys for Plaintiff Dora Solares

# TABLE OF CONTENTS

**I. INTRODUCTION .......... 1**

**II. STATEMENT OF FACTS .......... 1**

A. Jaime Osuna's Documented History .......... 1

[redacted]

D. Double-Cell Review Defendants (Loza and Muñoz) .......... 12

E. Mandatory Standards Applicable to Defendants Silva, Gallemore, Peña and Garcia .......... 14

1. Cal. Code Regulations, Title 15 and CDCR's Operations Manual (DOM) .......... 14
2. Operational Procedure 226 .......... 14
3. Allison Memorandum Re: Removal of Window Coverings .......... 15
4. Allison Memorandum Re: Inmate Count Expectations .......... 15
5. Post Orders Applicable to Defendants Silva, Gallemore, Peña and Garcia .......... 16

[redacted]

**TABLE OF CONTENTS**


I. Time of Death is a Disputed Issue of Fact .......... 24

[redacted]

**III. LEGAL STANDARD ON SUMMARY JUDGMENT .......... 28**

**IV. GENUINE ISSUES PRECLUDE SUMMARY JUDGMENT .......... 28**

A. Defendants Burnes, Kyle and Gamboa Violated Romero's Constitutional Rights .......... 30

1. Intentional Decision .......... 30

[redacted]

# TABLE OF CONTENTS

D. Gallemore and Garcia Violated Romero's Eighth Amendment Rights ............ 37

1. Intentional Decision ............ 37
2. Substantial Risk of Serious Harm ............ 37
3. Deliberate Indifference ............ 37
4. Causation ............ 38

E. Defendants Are Not Entitled to Qualified Immunity ............ 38

1. ICC and Double-Cell Review Defendants are Not Entitled to Qualified Immunity ............ 40
2. Defendants Peña, Gallemore and Garcia Are Not Entitled to Qualified Immunity ............ 42

**V. GENUINE ISSUES AS TO WRONGFUL DEATH (FIFTH CLAIM) ............ 44**

A. Supplemental Jurisdiction ............ 45

**VI. CONCLUSION ............ 45**

# TABLE OF AUTHORITIES

**CASES**


*Admiralty Fund v. Tabor*, 677 F.2d 1297 (9th Cir. 1982) ........ 28

*Ashcroft v. al-Kidd*, 563 U.S. 731 (2011) ........ 39

*Berg v. Kincheloe*, 794 F.2d 457 (9th Cir. 1986) ........ 29, 40

*Castro v. County of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016) (en banc) ........ passim

*City of Chicago v. International College of Surgeons*, 522 U.S. 156 (1997) ........ 45

*Clark v. Capital Credit & Collection Services*, 460 F.3d 1162 (9th Cir. 2006) ........ 28

*Clem v. Lomeli*, 566 F.3d 1177 (9th Cir. 2009) ........ 28, 31, 40, 43

*Cortez v. Skol*, 776 F.3d 1046 (9th Cir. 2015) ........ 36

*Delong v. Carrillo*, No. 2:2-cv-190-TLN, 2021 U.S. Dist. LEXIS 173249 (E.D. Cal. 2021) ........ 42

*Estate of Ford v. Ramirez-Palmer*, 301 F.3d 1043 (9th Cir. 2002) ........ 41, 42

*Estate of Yates v. County of San Diego*, No. 25-cv-410-W, 2025 U.S. Dist. LEXIS 166613 (S.D. Cal. Aug. 21, 2025) ........ 42

*Farmer v. Brennan*, 511 U.S. 825 (1994) ........ passim

*Giraldo v. California Department of Corrections & Rehabilitation*, 168 Cal. App. 4th 231 (2008) ........ 44

*Hampton v. California*, 83 F.4th 754 (9th Cir. 2023) ........ 39, 43

*Hearns v. Terhune*, 413 F.3d 1036 (9th Cir. 2005) ........ 40, 41

*Hope v. Pelzer*, 536 U.S. 730 (2002) ........ 38

*Johnson v. Duffy*, 588 F.2d 740 (9th Cir. 1978) ........ 30

*Labatad v. Corrections Corp. of America*, 714 F.3d 1155 (9th Cir. 2013) ........ 29, 35

*Ladd v. County of San Mateo*, 12 Cal. 4th 913 (1996) ........ 44

*Lattimore v. Dickey*, 239 Cal. App. 4th 959 (2015) ........ 44

*Lemire v. California Department of Corrections & Rehabilitation*, 726 F.3d 1062 (9th Cir. 2013) ........ passim

*Miles v. County of Alameda*, 2023 U.S. Dist. LEXIS 58363 (N.D. Cal. Apr. 3, 2023) ........ 42

*Novak v. Continental Tire North America*, 22 Cal. App. 5th 189 (2018) ........ 44

*Phillips v. County of Fresno*, No. 1:13-cv-0538-AWI, 2016 U.S. Dist. LEXIS (E.D. Cal. June 14, 2016) 42

*Redman v. County of San Diego*, 942 F.2d 1435 (9th Cir. 1991) (en banc) ........ 40

*Robinson v. York*, 566 F.3d 817 (9th Cir. 2009) ........ 38

*Saucier v. Katz*, 533 U.S. 194 (2001) ........ 38

*Scott v. Henrich*, 39 F.3d 912 (9th Cir. 1994) ........ 28

*Serrano v. Francis*, 345 F.3d 1071 (9th Cir. 2013) ........ 38

*Shelley v. County of San Joaquin*, 996 F. Supp. 2d 921 (E.D. Cal. 2014) ........ 27

*Solis v. County of Los Angeles*, 514 F.3d 946 (9th Cir. 2008) ........ 43

# TABLE OF AUTHORITIES

*Tamayo v. Fisher*, No. 12-cv-510-LJO, 2015 U.S. Dist. LEXIS 46694 (E.D. Cal. Apr. 9, 2015) ..........32

*Taylor v. Barkes*, 675 U.S. 822 (2015) ..........39

*Taylor v. List*, 880 F.2d 1040 (9th Cir. 1989) ..........28

*Thomas v. Ponder*, 611 F.3d 1144 (9th Cir. 2010) ..........29, 34

*Vickers v. United States*, 288 F.3d 944 (9th Cir. 2000) ..........35

*Wallis v. Baldwin*, 70 F.3d 1074 (9th Cir. 1995) ..........32

*Wilk v. Neven*, 956 F.3d 1143 (9th Cir. 2020) ..........31, 34, 40

*Wilson v. Layne*, 526 U.S. 603 (1999) ..........38

**STATUTES**

28 U.S.C. § 1367(a) ..........45

Cal. Gov't Code § 19990(g) ..........14

**REGULATIONS**

Cal. Code Regs. tit. 2, § 172 ..........14

Cal. Code Regs. tit. 15, § 3269(e) ..........6, 34

Cal. Code Regs. tit. 15, § 3270 ..........14

Cal. Code Regs. tit. 15, § 3271 ..........6, 37, 44

Cal. Code Regs. tit. 15, § 3377.1(c) ..........6

Cal. Code Regs. tit. 15, § 3391 ..........14

**OTHER AUTHORITIES**

CACI No. 3921 ..........44

CDCR Department Operations Manual § 52020 ..........14

CDCR Department Operations Manual § 52020.4.2 ..........14

CDCR Department Operations Manual § 52020.5 ..........14, 15, 44

Ninth Circuit Model Civil Jury Instruction 9.31 ..........28

Ninth Circuit Model Civil Jury Instruction 9.32 ..........28

Restatement (Second) of Torts ..........44

**MEMORANDUM OF POINTS & AUTHORITIES**

## I. INTRODUCTION

On March 9, 2019, at 7:22 a.m., Luis Romero's decapitated, mutilated corpse was found in Cell 46 at California State Prison (CSP) – Corcoran. Mr. Romero was murdered by his cellmate, Jaime Osuna. Osuna had gone twenty-two months without a cellmate and had been classified as "single-cell" for twenty-one of those. Once placed in Osuna's cell, Mr. Romero could not survive 48 hours. Plaintiff Dora Solares is the mother of Mr. Romero. She fights to hold accountable the prison officials who failed to protect her son from Mr. Osuna's predictable violence. These prison officials fall into two distinct categories. First, are those who allowed Osuna to be classified as "double-cell" ("the ICC Defendants" – Sergeant Burnes, LCSW Kyle and Associate Warden Gamboa) and those who approved him to share a cell with Mr. Romero ("the Double-Cell Review Defendants" – Correctional Officer Loza and Lieutenant Muñoz). Second, are the defendants who worked as floor and control booth officers, sworn to protect inmates, but who failed to supervise Cell 46 in the two shifts prior to Mr. Romero's body being found.

## II. STATEMENT OF FACTS

### A. Jaime Osuna's Documented History

[redacted]

[redacted]

[1] *See e.g.* https://www.bakersfield.com/news/murderer-mocks-victims-family-as-hes-sentenced-to-life-without-parole/article_4503e4b2-a37f-5425-bf68-23556b9072cc.html

**4. Osuna Returns to CDCR Custody and Commits More Violence**

[redacted]

[redacted]

[redacted]

[redacted]

**B. The January 22, 2019, ICC Decides to Single-Cell Osuna**

The three ICC member defendants (Burnes, Kyle and Gamboa) did not apply the correct classification standard, ignored prior ICC determinations, and ignored Osuna's history of violence despite personal, subjective awareness of the threat he posed. Instead, they applied a standard based on circular reasoning that was impossible to ever meet.

**1. Classification Framework ICC Required to Follow**

On January 22, 2019, defendants Burnes, Maytubby (nee Kyle[2]) and Gamboa, served on the ICC that considered Osuna's housing assignment. (PMF 251) The ICC is the highest committee at the institution, chaired by the warden or the warden's designee. (PMF 251) The pertinent California Code of Regulations section states: "Staff shall consider the incarcerated person's pattern of behavior, not just an isolated incident…Factors that must be considered when evaluating single-cell status include: (1) Predatory behavior characterized by repeated attempts to physically or sexually abuse another incarcerated person." Cal. Code Regs. tit. 15, § 3269(e). A classification committee to affix a single-cell "S" suffix upon "documented evidence that the incarcerated person may not be safely housed in a double cell . . . based on a recommendation by custody staff or a health care clinician." Cal. Code Regs. tit. 15, § 3377.1(c). Every CDCR employee "regardless of their assignment, is responsible for the safe custody of the incarcerated persons confined in the institutions of this department." Cal. Code Regs. tit. 15, § 3271.

[2] In 2019, defendant Kristen Maytubby used her maiden name and went by Kristen Kyle. Accordingly, Plaintiff uses "Kyle" when describing actions that occur in 2019 but uses "Maytubby" when that name started to be used, for instance, at her deposition.

Various CDCR policy memoranda described a multi-factor inquiry, not a single factor rule when determining whether to single- or double-cell an inmate. The memorandum issued closest in time to 2019 was titled, "Inmate Housing Assignment Considerations During the Screening and Housing Process," dated January 19, 2016, by Secretary Scott Kernan (hereinafter referred to as "the Kernan Memo"). (PMF 258) This reads in pertinent part:

> The screening authority weighs many factors regarding the inmate's custodial history and needs when considering housing assignments. During housing reviews, staff must use correctional experience and training, correctional awareness, and a sense of correctional reasonableness to determine an inmate's suitability for dormitory, celled, and single-celled housing**. All staff are to be cognizant of <u>all</u> available factors when determining an inmate's housing assignment.** Typically, factors thar are weighed during the review process include, but are not limited to: Length of sentence; Enemies and victimization history; Criminal influence demonstrated over other inmates; Vulnerability of the inmate due to medical, **mental health**, and disabilities; **Reason(s) for segregation; History of "S" suffix determination**; History of in-cell assaults **and/or violence**; Security Threat Group affiliation and/or association; **Nature of commitment offense**; Adaptive support needs listed on the CDCR Form 128 C-2.

(PMF 259) The Kernan Memo goes on to state explicitly: "**It is not necessary that the inmate also demonstrate a history of in cell abuse in order to be approved for single-cell status**." (PMF 260)

Issued on April 23, 2003, "Double-Cell Housing Policy," by Deputy Director W.A. Duncan ("Duncan Memo") states: "Staff are reminded to use correctional experience, correctional awareness, a sense of reasonableness, knowledge of the inmate population, facility environment, and the level of supervision in the housing unit when determining an inmate's need for single-cell housing." (PMF 261)

> Predatory behavior depicts aggressive, repeated attempts to physically or sexually abuse another inmate. The classification committee shall consider the circumstances of a prior in-cell physical or sexual battery against a cell partner, length of time in General Population without disciplinary violations, precipitating factors, or new issues affecting the inmate's behavior…**Staff shall consider the inmate's pattern of behavior, not just an isolated incident**.

(PMF 262)

The "Housing Criteria for Single Cell Status" memorandum issued on August 21, 1998, by Deputy Director David Tristan ("Tristan Memo") stated:

> [S]taff are directed to review and determine an inmate's need for Single Cell status as part of Initial and Annual Classification Review. An inmate referred for placement or transfer consideration shall be reviewed for Single Cell Status if there is any indication that the inmate has a history…or verification of predatory behavior towards a cell **partner or dormitory partner**."

(PMF 263)

A memorandum issued on January 6, 2006, "Clarification of Staff Responsibilities Relative to Inmate Double--Celling," by Deputy Director D.L. Runnels ("Runnels Memo") clarifies that "the absence of an 'S' suffix does not automatically qualify an inmate for double-cell placement." (PMF 264)

**2. Defendant Burnes Knew More About Osuna Than Anyone Else On ICC, Said Nothing, Then Chose Romero for Osuna's Cellmate**

**a. Initial Housing Review put Osuna's entire history before Burnes**

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

**2. Expert Witnesses**

Officer Silva's expert forensic pathologist, Dr. Bennett Omalu, wrote a "Medico-Legal Report," dated April 3, 2026. (PMF 541) Dr. Omalu opined: "These prevailing evidentiary finding, therefore,

[redacted]

[redacted]

## III. LEGAL STANDARD ON SUMMARY JUDGMENT

"Summary judgment is only appropriate if, viewing the evidence in the light most favorable to the party opposing the motion, the court finds that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law." *Taylor v. List*, 880 F. 2d 1040, 1044 (9th Cir. 1989). After drawing inferences most favorable to the non-moving party, summary judgment may be granted only if all reasonable inferences defeat the non-movant's claims. *See, e.g.*, *Admiralty Fund v. Tabor*, 677 F. 2d 1297, 1298 (9th Cir. 1982). When the opposing parties present conflicting accounts of what happened, there is a triable issue of material fact that presents credibility issues that should be determined by a jury. *See Clark v. Capital Credit & Collection Servs.*, 460 F.3d 1162, 1172-73 (9th Cir. 2006). Evidence examined must include "any expert testimony proffered by the plaintiff," to determine whether the official's story is internally consistent and consistent with other known facts. *Scott v. Henrich*, 39 F.3d 912, 915 (9th Cir. 1994).

## IV. GENUINE ISSUES PRECLUDE SUMMARY JUDGMENT

"'[A] prison official may be held liable under the Eight Amendment if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it.'" *Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1067 (9th Cir. 2016) (quoting *Clem v. Lomeli*, 566 F.3d 1177, 1182 (9th Cir. 2009) Ninth Circuit Model Jury Instruction 9.32 sets for the elements for an Eighth Amendment failure-to-protect claim: First, defendant made an intentional decision with respect to the conditions under which plaintiff was confined; Second, those conditions put the plaintiff in substantial risk of suffering serious harm; Third, the defendant did not take reasonable measures to abate that risk, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved; Fourth, by not taking such measures, the defendant caused plaintiff's injuries. *See* Ninth Circuit Model Jury Instruction 9.32. "Eighth Amendment – Convicted Prisoner's Claim of Failure to Protect." The Ninth Circuit Model Jury Instruction for Conditions of Confinement (Plaintiff's First Claim) contains three elements, which are identical to the second, third and fourth element for Instruction 9.32. *See* Ninth Circuit Model Jury Instruction 9.31. "Eighth Amendment – Convicted Prisoner's Claim Re Conditions of Confinement." Thus, triable issues of fact for the former apply to the latter. The elements are as follows:

**First, "intentional decision":** "In a failure-to-protect case where a defendant actually knew of a substantial risk of serious harm and consciously took no action, one would expect a jury to find that the defendant made an intentional decision." *Castro*, 1071 n.4.

**Second, "substantial risk of serious harm"**: The "sufficiently serious" prong, is an "objective question" whether the official's actions have exposed an inmate to a "substantial risk of serious harm." *Lemire v. Cal. Dep't of Corr. & Rehab.*, 726 F.3d 1062, 1075-6 (9th Cir. 2013) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)) "The objective question of whether a prison officer's actions have exposed an inmate to a substantial risk of serious harm is a question of fact, and as such must be decided by a jury if there is any room for doubt." *Lemire*, 726 F.3d at 1075–76.

**Third, "deliberate indifference":** This is a subjective test whether "the official knows of and disregards an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 834, 847, 837.) This inquiry "involves two parts. First, Plaintiff[] must demonstrate that the risk was obvious or provide other circumstantial evidence that the prison officials were aware of the substantial risk." *Lemire*, 726 F.3d at 1078. The obvious requirement does not necessitate a showing that an individual prison official had "specific knowledge that harsh treatment of a particular inmate, in particular circumstances, would have a certain outcome. Rather, we measure what is 'obvious' in light of reason and the basic general knowledge that a prison official may be presumed to have obtained regarding the type of deprivation involved." *Thomas v Ponder*, 611 F.3d 1144, 1151 (9th Cir. 2010). Second, plaintiff must show that there was no reasonable justification for exposing the inmates to the risk. *Id.*; *see also Labatad v. Corr. Corp. of Am.*, 714 F.3d 1155, 1160 (9th Cir. 2013)(quoting *Farmer*, 511 U.S. at 837) (A prison official must know "that inmates face a substantial risk of serious harm and disregard[] that risk by failing to take reasonable measures to abate it.") The official need not "believe to a moral certainty that one inmate intends to attack another at a given place at a time certain"; the standard requires only "more than a mere suspicion that an attack will occur." *Berg v. Kincheloe*, 794 F.2d 457, 459 (9th Cir. 1986). As officials rarely concede their own knowledge, subjective awareness may be proven "in the usual ways, including inference from circumstantial evidence," and "a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Farmer*, 511 U.S. at 842; *accord Lemir.*, 726 F.3d at 1078. "In

other words, the official must demonstrate a subjective awareness of the risk of harm." *Castro*, 833 F.3d at 1068 (citation omitted).

**Fourth, causation:** Causal connection "can be established not only by some kind of direct personal participation in the deprivation, but also by setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury." *Johnson v. Duffy*, 588 F.2d 740, 743-44 (9th Cir. 1978). "If reasonable persons could differ on the question of causation then summary judgment is inappropriate and the question should be left to a jury." *Lemire*, 726 F.3d at 1080.Below, Plaintiff applies each of these elements to defendants.

[redacted]

[redacted]

[redacted]

[3] *Also available at* https://cchcs.ca.gov/wp-content/uploads/sites/60/2021-Program-Guide-2.1.22.pdf at 204-211 of 646.

[redacted]

**B. Loza and Muñoz Violated Romero's Eighth Amendment Rights When They Approved Double-Celling with Osuna**

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

**E. Defendants Are Not Entitled to Qualified Immunity**

Qualified immunity presents two questions: "(1) whether, taken in the light most favorable to the party asserting the injury, the facts alleged show the official's conduct violated a constitutional right; and (2) if so, whether the right was established in light of the specific context of the case." *Robinson v. York*, 566 F.3d 817, 821 (9th Cir. 2009)(citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). The first question is answered above, the second factor is discussed here.

A right is clearly established when "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he [is] doing violates that right." *Wilson v. Layne*, 526 U.S. 603, 614-15 (1999) That does not mean an official action is protected "unless the very action in question has previously been held unlawful'; it means only that "in the light of pre-existing law the unlawfulness must be apparent." *Id.* Prior authority need not present "identical or even 'materially similar' facts," it need only have provided defendants fair warning that their conduct was unlawful. *Serrano v. Francis*, 345 F.3d 1071, 1077 (9th Cir. 2013); *see also Hope v. Pelzer*, 536 U.S. 730, 741 (2002)("officials can still be on

notice that their conduct violates established law even in novel factual circumstances.") The touchstone is whether "every reasonable official would have understood that what he is doing violates th[e] right." *Taylor v. Barkes*, 675 U.S. 822, 825 (2015). No "case directly on point" is required, though "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741. The doctrine "protects all but the plainly incompetent or those who knowingly violate the law." *Id.*

The Ninth Circuit applied that framework to Eight Amendment claims in *Hampton v. California*, 83 F.4th 754, 769 (9th Cir. 2023). Binding caselaw, the court held, "need not catalogue every way in which" prison conditions can be constitutionally inadequate "for us to conclude that a reasonable official would understand that his actions violated" an inmate's rights. *Id.* (quoting *Castro*, 833 F.3d at 1067. The plaintiff was "not required to point to a prior case holding that prison officials can violate the Eighth Amendment by transferring inmates from one prison to another during a global pandemic." *Id.* Instead, *Castro* supplied "a useful guide for articulating the right at issue here at the proper level of generality." *Id.* This was the right of an inmate beaten by his cellmate as the "right to be free from violence at the hands of other inmates." *Id.* Following that contour, *Hampton* articulated the right at issue as "an inmate's right to be free from exposure to a serious disease." *Id.* The contrast drawn in *Hampton* is enlightening. The right is not so narrow as to be exclusive to the facts of any other case ("transferring inmates form one prison to another during a global pandemic") but at the "proper level of generality" ("an inmate's right to be free from exposure to a serious.") *Id.*

*Castro* is binding and supplies the level of generality here. Sitting en banc, Ninth Circuit reiterated that the right to be free from violence at the hands of other inmates has been established "for decades," and denied immunity to officials who placed a vulnerable detainee with a combative one. *Castro*, 833 F.3d at 1067. "'[A] prison official may be held liable under the Eight Amendment if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it.'" *Id.* (quoting *Farmer*, 511 U.S. at 847). The court rejected the argument that the right so described was too general to apply. "The contours of the right required only that the individual defendants take reasonable measures to mitigate the substantial risk to [the plaintiff]. Accordingly, we reject the individual defendants' argument that the law…was not clearly established at the time of the incident." *Id.*

*Wilk* confirms this point. Reversing summary judgment, the Ninth Circuit held that any reasonable official who learned at a classification committee of the risk posed by an inmate would know not to house that inmate in a cell adjoining the victim's cell. *Wilk*, 956 F.3d at 1148-50. The court did not require a published decision with near identical facts. Rather, it was enough that the facts were "materially similar" to *Farmer* and *Castro*. *Id.* at 1150. Plaintiff does not rely on Wilk as the clearly established authority, but point to Wil because is confirms that Farmer and Castro established the following applicable right: "Once an official is subjectively aware of a substantial risk of serious harm, 'clearly established' law requires 'only that the [official] take reasonable measures to mitigate the substantial risk." *Id.* at 1148-49 (citing *Castro*, 833 F.3d at 1067). After *Farmer* and *Castro*, "[n]one of the defendants can claim ignorance of a prisoner's right to be protected from violence at the hands of other inmates." *Id.*

*Castro* sits within a long line of authority where the Ninth Circuit recognized the right and imposed liability on officials who disregard that risk.

Prison officials violate the Eighth Amendment when they act with "deliberate indifference" to the threat of serious harm by another prisoner. *Berg v. Kincheloe*, 794 F.2d 457, 459 and 462 (9th Cir. 1986)(official on notice an inmate's life was in danger and failed to act not entitled to summary judgment). *Redman v. County of San Diego*, 942 F.2d 1435, 1442-46 (9th Cir. 1991) (en banc) located this right in the classification and housing context where "officials knew of [plaintiff's] vulnerability that resulted in his initial placement in the 'young and tender' unit.") In *Hearns v. Terhune*, 413 F.3d 1036, 1040–42 (9th Cir. 2005), the Ninth Circuit held prison officials aware of the danger posed by a group of specific Muslim inmates who had orchestrated prior attacks could be held liable for allowing them in a chapel unsupervised. *Clem* rounds out this principle, as it held an official's act *or an omission* may violate the Eighth Amendment where he is deliberately indifferent to known "conditions posing a substantial risk of serious harm." *Clem*, 566 F.3d at 1181-82. "I]t is well settled that deliberate indifference occurs when an official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 1181.

**1. ICC and Double-Cell Review Defendants are Not Entitled to Qualified Immunity**

*Castro* and *Hearns* gave these defendants fair warning. In *Castro*, the plaintiff was brutally assaulted after deputies placed him in a sobering cell with an inmate they knew was "combative," when separate cells were available. *Castro*, 833 F.3d at 1073. In *Hearns*, officials knew that specific inmates had attacked

the plaintiff and other Muslim inmates, yet permitted those same inmates in the chapel, unsupervised, while Hearns was teaching Arabic. *Hearns*, 413 F.3d at 1041. Those "inmates turned off the chapel lights, attacked Hearns from behind, and stabbed him numerous times." *Id.* Even though these inmates had been barred from the chapel unsupervised, "no correctional officer was present." *Id.* at 1039. The Ninth Circuit held that Hearns could be "entitled to relief" on the failure-to-protect claim. *Id.* at 1041.

The rule those cases establish is straightforward. Officials on notice that a particular inmate poses an ongoing threat may not place that inmate, unsupervised, in a confined space with another inmate.

[redacted]

District Courts in California have repeatedly made these same distinctions and denied qualified immunity. In *Estate of Yates v. Cnty. of San Diego*, No. 25-cv-410-W, 2025 U.S. Dist. LEXIS 166613 (S.D. Cal. Aug. 21, 2025) the District Court considered *Estate of Ford* and denied defendants' qualified immunity because the predatory inmate "had not been double-celled successfully in the past," and officials had observed his "violent outbursts on multiple occasions." *Id.* at *20, *10. Likewise, in *Delong v. Carrillo*, No. 2:2-cv-190-TLN, 2021 U.S. Dist. LEXIS 173249 (E.D. Cal. 2021), the district court in the Eastern District distinguished *Estate of Ford*, because the plaintiffs alleged that defendants knew of the predatory inmate's violent propensity, and the inmates had not been successfully housed together, nor was the predatory inmate medicated. *Id.* at *14. Likewise, in *Miles v. Cnty. of Alameda* 2023 U.S. Dist. LEXIS 58363 (N.D. CAL. APR. 3, 2023) the court rejected defendants' heavy reliance on *Estate of Ford*, defined "the contours" of the right in a failure to protect claim under *Castro* as the "right to be free form violence at the hands of other inmates," and distinguished *Estate of Ford* becasue two cellmates had "previously celled together without any problems." *See also Phillips v. Cnty. of Fresno*, No. 1:13-cv-0538-AWI, 2016 U. S. Dist. LEXIS at *31 (E.D. Cal. June 14, 2016) (denying qualified immunity since the officers in *Estate of Ford* had successfully been co-housed together and had requested to be housed together again). Defendants may not slice up clearly established authority into an unrecognizably narrow fact pattern when the Ninth Circuit has made the standard's application plain.

**2. Defendants Peña, Gallemore and Garcia Are Not Entitled to Qualified Immunity**

Since 2013 it has been clearly established that prison officials may not leave inmates in specialized housing unsupervised for hours. Defendants define the right at issue with extreme specificity (the purported right to visual cell checks) but the contours of the authority are clear. In *Lemire v. California Department of Corrections and Rehabilitation*, 726 F.3d 1062 (9th Cir. 2013) the Ningh Circuit applied *Farmer* to prison officials responsible for direct supervision of inmates. Prison policy required regular security checks "at least once an hour during daytime watches" for the purpose of checking "the welfare of the inmates, both looking for crime occurring and their welfare." *Id.* at 1070. Individual defendants included floor officers, left the specialized housing unit "without any floor supervision, without security checks, and without any prison official (other than the control booth officer) able to respond to an emergency call, for as much as three and a half hours." *Id.* at 1071. The court held that a triable issue existed whether

individual defendants "were deliberately indifferent to the risks that an inmate would be seriously harmed during a three-hour-plus period without supervision." *Id.* at 1081.

[redacted]

Peña's failure to act despite his knowledge of a substantial risk of serious harm is not conduct that qualified immunity protects.

## V. GENUINE ISSUES AS TO WRONGFUL DEATH (FIFTH CLAIM)

[redacted]

[redacted]

**A. Supplemental Jurisdiction**

Federal courts “shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy.” 28 U.S.C. § 1367(a). Original jurisdiction over federal questions "carries with it jurisdiction over state law claims that derive from a common nucleus of operative fact." *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 165 (1997) (internal quotation marks omitted). Should any individual defendant prevail on Plaintiff's federal claims, the Court may retain jurisdiction over the wrongful death claim, which derives from the common nucleus of operative fact surrounding Romero's murder.

Plaintiff will dismiss her failure to supervise claim (Third Claim) and her failure to summon medical care claim (Sixth Claim).

**VI. CONCLUSION**

For the foregoing reasons, Defendants’ summary judgment motion should be denied.

Respectfully submitted,

Dated: August 17, 2026

LAW OFFICES OF JUSTIN STERLING

By: *\/s/ Justin Sterling*
Justin E. Sterling,
Attorneys for Plaintiff
Dora Solares

LAW OFFICES OF ERIN DARLING

By: */s/ Erin Darling*
Erin Darling,
Attorneys for Plaintiff
Dora Solares